**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| NEONODE SMARTPHONE LLC, | Civil Action No. 6:20-cv-00507 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO. LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Neonode Smartphone LLC ("Neonode"), by and through its attorneys, hereby alleges the following:

**I.      NATURE OF THE ACTION**

1.      This is a patent infringement action for damages and other appropriate remedies for Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc.'s ("SEA's") (collectively, "Samsung" or "Defendants") unauthorized and infringing manufacture, use, sale, offering for sale, and/or importation of products incorporating Plaintiff's patented inventions.

2.      Neonode is the owner of all right, title, and interest in and to United States Patent Nos. 8,095,879 (the "'879 Patent"), issued January 10, 2012 and titled "User Interface for Mobile Handheld Computer Unit."  A true and correct copy of the '879 Patent is attached hereto as Exhibit A.

3.     Neonode is also the owner of all right, title, and interest in and to United States Patent Nos. 8,812,993 (the "'993 Patent"), issued August 19, 2014 and titled "User Interface."  A true and correct copy of the '993 Patent is attached hereto as Exhibit B.

4.     Samsung manufactures, provides, sells, offers for sale, imports, and/or distributes products that directly infringe the '879 and '993 Patents.  Further, Samsung indirectly infringes the '879 and '993 Patents by inducing and contributing to infringement by others, including users of Samsung devices.

5.     Neonode seeks monetary damages, prejudgment interest, injunctive relief, and other relief for Samsung's past and continuing infringement of the '879 and '993 Patents.

## II.     PARTIES

6.     Plaintiff Neonode is a Wyoming limited liability company having a principal place of business at 30 N. Gould St., Suite R, Sheridan, WY 82801.

7.     Upon information and belief, Defendant SEC is a corporation organized under the laws of South Korea, with its principal place of business at 129 Samsung-Ro, Maetan-3dong, Yeongtong-gu, Suwon, 443-742, South Korea.

8.     Upon information and belief, SEA is a wholly owned subsidiary of SEC and is a corporation organized under the laws of the State of New York, with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

## III.     JURISDICTION AND VENUE

9.     This is an action for patent infringement, which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 282, 284, and 285.  The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has personal jurisdiction over Samsung because Samsung has committed acts giving rise to this action within Texas and within this judicial district.

Defendants regularly do business or solicit business in this District and in Texas, engage in other persistent courses of conduct and derive substantial revenue from products and services provided in this District and in Texas, and have purposefully established substantial, systematic, and continuous contacts within this District and should reasonably expect to be sued in a court in this District.  For example, Samsung has offices within this district.  The website www.samsung.com solicits sales of infringing products to consumers in this District and in Texas.  Given these contacts, the Court's exercise of jurisdiction over Samsung will not offend traditional notions of fair play and substantial justice.

11.     Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b), (c) and l400(b) because Samsung has regular and established places of business in this District, including at 12100 Samsung Boulevard, Austin, Texas, has committed acts within this judicial district giving rise to this action, and continues to conduct business in this judicial district, including multiple acts of making, selling, using, importing and/or offering for sale infringing products in this District.

### IV.     THE PATENTS-IN-SUIT

12.     Magnus Goertz, the named inventor of both the '879 and '993 Patents, co-founded Neonode AB in or about 2001.  Neonode AB and its affiliated and successor entities developed and commercialized the Neonode N1 and N2 mobile phones.  The N1 and N2 incorporated the company's zForce and Neno touchscreen and interface technologies, which enabled production of a phone small enough to fit in the palm of your hand and allowed the user to navigate menus and functions with simple finger-based taps and swipes.  Patents covering these technologies were later issued in the United States to Neonode Inc.  As of 2020, the zForce technology had been incorporated into at least 73 million products worldwide.

13.     The '879 and '993 Patents relate to the Neno technology for presenting and interacting with a user interface of a mobile handheld computer unit that includes a touch sensitive display.

14.     The specification common to both the '879 Patent and the '993 Patent identifies technical problems in the prior art and discloses solutions to these problems.  For instance, the specification explains that there was a recognized problem in the prior art as of 2002, the priority date of both patents, providing an interface on mobile handheld computers that was "adapted to handle a large amount of information and different kinds of traditional computer-related applications on a small handheld computer unit."  ('879 Patent, col. 1:49-52; '993 Patent, col. 1:59-62)  It was also "a problem to provide a small handheld computer unit with an easily accessible text input function."  ('879 Patent, col. 1:56-57; '993 Patent, col. 1:66-67)  It was "also a problem to provide a simple way to make the most commonly used functions for navigation and management available in the environment of a small handheld computer unit." ('879 Patent, col. 1:58-61; '993 Patent, col. 2:1-4)

15.     In order to overcome these problems, the '879 and '993 Patents taught, among other things, that a mobile device with a touch sensitive display could be configured to provide a user interface presenting multiple representations of predefined functions, each of which could be activated when the device detects a particular type of movement of an object on the display, such as, for example, a user's finger touching the display and gliding away from the touched location.  This teaching was novel, and, among other things, enabled more effective use of the limited space available on the touch sensitive display of a mobile computer unit such as a smartphone.

## V.    SAMSUNG'S KNOWLEDGE OF THE PATENTS-IN-SUIT

16.    On information and belief, Samsung has known of the '879 Patent since shortly after it issued, on January 10, 2012.

17.    On or about July 13, 2005, Neonode Sweden AB entered into a Research & Development and License Agreement with Samsung Electronics Co., Ltd. ("the Samsung Agreement").  Pursuant to this agreement, Neonode Sweden AB licensed certain patent applications "and the patents into which they may mature" in the zForce and Neno portfolios to Samsung; one of those applications, specifically identified in the Samsung Agreement, was U.S. Application No. 10/315,250, which later issued as the '879 Patent.  On information and belief, the Samsung Agreement terminated according to its terms by no later than early 2009.

18.    On or about February 8, 2012, Apple Inc. filed a complaint against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC, entitled *Apple Inc. v. Samsung Electronics Co., Ltd.*, et al., in the U.S. District Court for the Northern District of California, Case No. 12-CV-00630-LHK ("the *Apple v. Samsung* litigation").  In the *Apple v. Samsung* litigation, Apple alleged that the defendant Samsung entities had infringed and were infringing a number of Apple patents.  Among the Apple patents asserted in this action were U.S. Patent No. 8,046,721, entitled "Unlocking a device by performing gestures on an unlock image."  On information and belief, this patent became widely known as the "swipe to unlock" or "slide to unlock" patent.

19.    On information and belief, Samsung and/or its litigation counsel regularly monitored industry press relating to the subject matter of the litigation against Apple and undertook substantial research and investigative efforts to obtain information pertinent to the subject matter of the litigation against Apple, on an ongoing basis from at least February 2012 forward.

- 5 -

20.     On or about February 22, 2012, an article entitled "Neonode Beat Apple By Three Years With The Swipe-To-Unlock Patent" was published in the online journal The Tech Journal, https://thetechjournal.com/tech-news/industry-news/neonode-beat-apple-by-three-years-with-the-swipe-to-unlock-patent.xhtml.  The article stated, among other things, that "[a] small but feisty Swedish company, Neonode figured out how to integrate a slide to unlock feature in its phones, long before Apple even considering making an iPhone."  The article further stated:

> Apparently, in July 2004, Neonode introduced to the market a small phone called N1 that had the unlock feature. Neonode already had patented a slide to unlock feature, without the associated graphics and obtained the patent in December 2002 (the US patent number: 8095879).

*Id.*  The article included images of Figures 11 and 12 from the '879 Patent.  On information and belief, Samsung became aware of this article shortly after it was published.

21.     On or about February 27, 2012, an article entitled "A Swedish Company Claims It Owns A Swipe Patent Used By Apple" was published in the online journal Tech Crunch, https://techcrunch.com/2012/02/27/a-swedish-company-claims-it-owns-a-swipe-patent-that-is-used-by-apple/.  The article stated, among other things:

> Another front has opened in the multi-faceted story of patent battles: Neonode, an  optical touchscreen tech company based in Sweden, says that it has been granted a patent in the U.S. that covers the touch-and-glide gesture that it claims is used on devices like the iPhone and iPad.
>
> The patent is notable not only because Neonode says the patent covers functions like the horizontal touch gesture that Apple uses between screens on its iOS devices, as well as in the slide-to-unlock feature. But also because slide-to-unlock is the same feature that

Apple has been citing in its own patent lawsuits against Android device makers Motorola and Samsung.

*Id*.  The article identified the patent by number – "number 8,095,879 from the U.S. Patent and Trademark Office."  *Id*.  On information and belief, Samsung became aware of this article shortly after it was published.

22.     On or about February 28, 2012, an article entitled "Swedish company claims rights to 'slide to unlock' with new UI patent" was published in the online journal "appleinsider,"

https://appleinsider.com/articles/12/02/28/swedish_company_claims_rights_to_slide_to_unlock_with_new_ui_patent.  The article stated, among other things, that "Neonode says it was issued U.S. Patent No. 8,095,879 which covers gesture-based interaction with a touch sensitive surface, a description that is similar to Apple's "slide to unlock" patent," and that:

> If Apple is indeed sued over the '879 patent, it wouldn't be the first time the company has seen Neonode in a court hearing. In August 2011, Samsung trotted out a relatively obscure device made by the Swedish company in defense of an Apple suit regarding "slide to unlock" functionality.

*Id*.  The article included images of Figures 10-12 from the '879 Patent.  On information and belief, Samsung became aware of this article shortly after it was published.

23.     On March 19, 2012, Joseph Shain, Neonode Inc.'s Vice President of Intellectual Property, and well as Bjorn Thomas Eriksson, CEO of Neonode Technologies AB and Neonode Inc., were deposed by counsel for Apple and Motorola Mobility, Inc. in the action entitled *Motorola Mobility, Inc. v. Apple, Inc*., in the U.S District Court for the Southern District of Florida, Case No. 1:10cv023580-Civ-UU.  In the course of this deposition, the '879 Patent was

marked as an exhibit, and counsel for both Apple and Motorola asked Mr. Shain numerous questions relating to the patent. The law firm of Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") served as counsel for Motorola in this action and appeared on behalf of Motorola at this deposition; Quinn Emanuel also served as counsel for Samsung in the concurrently-pending *Apple Inc. v. Samsung* litigation.

24.     On information and belief, Samsung has known of the '993 Patent since shortly after it issued, on August 19, 2014.

25.     On or about July 8, 2013, Samsung filed "Samsung's Reduction of Invalidity References," Dkt. No. 671, in the *Apple v. Samsung* litigation. Samsung's Reduction of Invalidity References identified "Neonode N1 Quickstart Guide V0.5" as a reference against Apple's "swipe to unlock" patent. On information and belief, to the extent that Samsung was not already aware of the '879 Patent, the process of undertaking research and investigation regarding prior art references pertinent to Apple's "swipe to unlock" patent, in combination with articles previously published concerning the '879 Patent, as well as the interrogation by Samsung's counsel at the March 19, 2012 deposition, caused Samsung to become aware of the existence of the '879 Patent prior to submitting this filing.

26.     After a 13-day trial in the *Apple v. Samsung* litigation, the jury found the asserted claims of Apple's "swipe to unlock" patent infringed and not invalid. Samsung appealed the finding that the patent was not invalid. In an opinion issued on or about February 26, 2016, the Federal Circuit held that Apple's "swipe to unlock" patent would have been obvious over a combination that included the Neonode N1 Quickstart Guide. In a second opinion issued on or about October 7, 2016, the Federal Circuit, sitting en banc, held that there was substantial

evidence to support the jury's finding that Apple's "swipe to unlock" patent was not obvious over the cited combination, and affirmed and reinstated the district court judgment.

27.     On information and belief, to the extent that Samsung was not already aware of the '879 and '993 Patents, Samsung's reliance on the Neonode N1 Quickstart Guide as a principal prior art reference over several years of litigation that included a jury trial, an appeal to the Federal Circuit and two issued Federal Circuit opinions on the merits, combined with Samsung's knowledge of the '879 Patent – from which the '993 Patent descended as a continuation – from at least early 2012, caused Samsung to become aware of the '993 Patent as a result of, inter alia, the work of its counsel in connection with the *Apple v. Samsung* litigation.

28.     Samsung was again made aware of the '879 and '993 Patents on or about September 24, 2015, when Mr. Shain informed Claude Stern, an attorney with Quinn Emanuel, that John Quinn was authorized to explore Samsung's interest in Neonode Inc.'s patent portfolio. On or about October 22, 2015, Stern informed Mr. Shain that Samsung had told Quinn that it was uninterested.

## VI.     THE INFRINGING SAMSUNG DEVICES

29.     The Samsung Galaxy S line of smartphones was released for sale in the United States in or about June 2010.  Although the Galaxy S line ran the Android operating system, from the beginning the devices used a proprietary user interface designed and developed by Samsung, initially called TouchWiz, later rebranded as Samsung Experience and still later as One UI.  The code for executing Samsung's proprietary interface was also loaded onto Samsung's Galaxy Note, Galaxy Tab, and Galaxy A series devices, among others.

30.     **Swipe Typing**.  On information and belief, beginning in or about October 2012, Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices running version 4.2 and later versions of the Android operating system provided users a functionality that Samsung

branded as "Continuous Input."  Continuous Input was a "swipe typing" functionality that provided users the ability to enter text on a keyboard by gliding an object (such as the user's finger) across the keys on a keyboard rather than tapping each key individually:



31.     On information and belief, Samsung believed that its Continuous Input functionality favorably differentiated Samsung's mobile devices from competing devices sold by Apple Inc., which for several years following the introduction of Continuous Input lacked a native keyboard with swipe-typing functionality:



32.   **Incoming Call Interface**.  On information and belief, since at least around 2013, Samsung Galaxy S and Galaxy A devices, Galaxy Note devices, and at least some models of Galaxy Tab devices have presented the user with an "Incoming call" interface that requires the user to, e.g., accept an incoming voice call by touching a green "phone" icon and swiping away from the icon, or decline an incoming voice call and send the caller to voicemail by touching a red "phone" icon and swiping away from that icon:



33. **Lock Screen**. On information and belief, since at least around 2014, Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices have included code for presenting the user with a Lock Screen that includes the legend "Swipe to unlock" or "Swipe to open" in the lower center portion of the display. For example, the Lock Screen interface on a Galaxy S10 with the "Screen lock type" set to PIN and biometric security not enabled presents this display:



Following execution of a swiping gesture across the display, the Lock Screen as displayed above

transitions to, e.g., a passcode or PIN entry screen.

34.     On information and belief, since at least around 2014, the Lock Screen presented

by Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices has included one or

more Lock Screen shortcuts, typically depicted as one or more icons in the lower portion of the

display.  For example, the Lock Screen shortcuts in the screen shot of the Galaxy S10 shown

above are for the phone application (in the lower left corner of the display) and the camera

application (in the lower right corner of the display).  Lock Screen shortcuts are activated by a swiping gesture that begins at the location of the icon and glides away from the icon along the display.

35.     On information and belief, in or about April 2017, Samsung released the Galaxy S8 and Galaxy S8+ devices in the United States.  One of the new features touted for the devices was the incorporation of facial recognition security.  This feature was incorporated into subsequent models of Samsung Galaxy S devices, as well as into Galaxy Note, Galaxy A, and Galaxy Tab devices.  In order to prevent accidental unlocking of the devices that included the new feature, they were configured to stay on the Lock Screen following use of the facial recognition feature to unlock the device, presenting an "opened padlock" graphic across the upper center of the display, until the user executes a swiping gesture across the display.  For example, the Lock Screen interface on a Galaxy S10 with the "Screen lock type" set to PIN and facial recognition security enabled presents this display:

:



36.     Following execution of a swiping gesture across the display, the display transitions to the Home Screen.  With facial recognition security configured for use on the devices, executing a swipe downward from the location where the "opened padlock" graphic is presented will not cause the display to transition to the Home Screen until after the "opened padlock" graphic has been instantiated on the display.

**COUNT I:     INFRINGEMENT OF THE '879 PATENT**

37.     Neonode incorporates paragraphs 1 through 36 herein by reference.

38.     Samsung has been and is presently directly infringing at least claim 1 of the '879 Patent by making, using, selling, or offering for sale within the United States, and/or importing into the United States, Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices (collectively, "the Samsung Galaxy Devices.").

39.     As one non-limiting example of the claims of the '879 Patent that are infringed by the Samsung Galaxy Devices, claim 1 of the '879 Patent recites:

> 1. A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:
> a touch sensitive area in which a representation of a function is provided, wherein the representation consists of only one option for activating the function and wherein the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location, wherein the representation of the function is not relocated or duplicated during the gliding.

40.     The Samsung Galaxy Devices are mobile handheld computer units, and include a memory storing code which, when read by a processor, allows the devices to present a user interface as described below.

41.     The Samsung Galaxy Devices include a display that is touch sensitive, in which one or more representations of functions are provided.

42.     **Direct Infringement – Lock Screen:**  The Samsung Galaxy Devices present a Lock Screen, from which a user may transition to, e.g., a passcode entry screen:



43.     In the display as set forth above, the "Swipe to unlock" legend is a representation of a function, the representation consists of only one option for activating the function, and the function is activated by a multi-step operation comprising (i) an object (such as a user's finger) touching the display at the location of the "Swipe to unlock" representation and (ii) gliding along the display away from the touched location.  The "Swipe to unlock" representation is not relocated or duplicated during the gliding.

44.     By way of additional example, the Samsung Galaxy Devices present a Lock

Screen from which a user may transition to the Home Screen:



45.     In the display as set forth above, the "Swipe to open" legend is a representation of

a function, the representation consists of only one option for activating the function, and the

function is activated by a multi-step operation comprising (i) an object (such as a user's finger)

touching the display at the location of the "Swipe to open" representation and (ii) gliding along

the display away from the touched location.  The "Swipe to open" representation is not relocated

or duplicated during the gliding.

46.     By way of additional example, the Lock Screen shortcut icons depicted on the Lock Screen display of the Samsung Galaxy Devices are representations of functions, each of which consists of only one option for activating the function, and the functions are activated by a multi-step operation comprising (i) an object (such as a user's finger) touching the display at the location of the icon and (ii) gliding along the display away from the touched location.  The icons are not relocated or duplicated during the gliding.

47.     **Direct Infringement – Swipe Typing:**  By way of additional example, the Samsung Galaxy Devices present a "keyboard" display enabling text entry into a text field:





48.     In the display as set forth above, each of the "key" icons of the virtual keyboard is a representation of a function, each of the key icons consist of only one option for activating the function (i.e., one letter), and the function may be activated by a multi-step operation comprising (i) an object (such as a user's finger) touching the display at the location of the key and (ii) gliding along the display away from the touched location.  Keys are not relocated or duplicated during the gliding.

49.     **Direct Infringement – Incoming Call:**  By way of additional example, the Samsung Galaxy Devices present the following display when the device receives an incoming call:



50.     Each of the two "telephone" icons (one green, one red) in the lower portion of the display is a representation of a function, each of them consist of only one option for activating the function, and the function is activated by a multi-step operation comprising (i) an object (such as a user's finger) touching the display at the location of the icon and (ii) gliding along the display away from the touched location.  The telephone icons are not relocated or duplicated during the gliding.

51.     Samsung has never been, and is not now, licensed under the '879 Patent, and has never been authorized by any owner of the '879 Patent to engage in the acts alleged herein.

52.     Samsung's infringement of the '879 Patent has been and continues to be willful. On information and belief, based on at least the facts alleged at paragraphs 16-28 above, Samsung has known of the '879 Patent since at least February 22, 2012.  Samsung is a large corporation with a large and experienced legal department, and highly sophisticated in-house and outside intellectual property counsel.  Samsung knew or should have known that its conduct in making, using, selling, offering for sale, and/or importing the Samsung Galaxy Devices has infringed and does infringe the '879 Patent, yet proceeded to engage in such conduct despite a high likelihood that a court would find the products to be infringing.

53.     The '879 Patent is not invalid and is enforceable.

54.     Neonode has sustained significant damages as a direct and proximate result of Samsung's infringement of the '879 Patent.

## COUNT II:    INFRINGEMENT OF THE '993 PATENT

55.     Neonode incorporates paragraphs 1 through 54 herein by reference.

56.     **Direct Infringement:**  Samsung has been and is presently directly infringing at least claim 1 of the '993 Patent by making, using, selling, or offering for sale within the United States, and/or importing into the United States, Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices that include or included code for enabling the device to stay on the Lock Screen following use of facial recognition security (collectively, "the Infringing '993 Devices").

57.     As one non-limiting example of the claims of the '993 Patent that are infringed by the Infringing '993 Devices, claim 1 of the '993 Patent recites:

1. A non-transitory computer readable medium storing instructions, which, when executed by a processor of an electronic device having a touch-sensitive display screen, cause the processor to enable a user interface of the device, the user interface comprising at least two states, namely, (a) a tap-present state, wherein a plurality of tap-activatable icons for a respective plurality of pre-designated system functions are present, each system function being activated in response to a tap on its respective icon, and (b) a tap-absent state, wherein tap-activatable icons are absent but an otherwise-activatable graphic is present in a strip along at least one edge of the display screen for transitioning the user interface from the tap-absent state to the tap-present state in response to a multi-step user gesture comprising (i) an object touching the display screen within the strip, and (ii) the object gliding on the display screen away from and out of the strip.

58.    The Infringing '993 Devices are electronic devices having a touch sensitive display screen and include a memory storing code which, when executed by a processor, causes the processor to present a user interface as outlined below.

59.    The user interface of the Infringing '993 Devices includes at least one tap-present state, in which a plurality of tap-activatable icons for a plurality of pre-designated system functions are present, each system function of which is activated in response to a tap on its respective icon, including at least the following.

60.    The Home Screen interface of the Infringing '993 Devices includes tap-activatable icons for a plurality of pre-designated system functions, such as a telephone function, an email function, a browser function and a camera function.  For example, the Home Screen interface on a Galaxy S10 presents multiple such tap-activatable icons:



61.     The user interface of the Infringing '993 Devices includes a Lock Screen in which tap-activatable icons are absent, but in which at least one otherwise-activatable graphic is present, consisting of an "opened padlock" graphic in the upper center of the display.  For example, the Lock Screen interface on a Galaxy S10 presents this otherwise-activatable graphic:



Neither the telephone icon in the lower left, nor the camera icon in the lower right, nor any of the icons in the upper right corner of the display, of the Lock Screen are tap-activatable.

62.     When setting up facial recognition security on an Infringing '993 Device, the user is presented with an option to "Stay on Lock Screen," which configures the device to stay on the Lock Screen after the device has been unlocked with facial recognition until the user swipes across the display.  This option is enabled by default.  With facial recognition security configured for use on an Infringing '993 Device, and with the "Stay on Lock screen" option enabled, the interface will transition from the Lock Screen to the Home Screen after, e.g., the

user touches the location where the "opened padlock" graphic is presented and glides downward on the display.

63.     The instructions that cause the processor to enable configuration of the Infringing '993 Devices to use facial recognition security, and to stay on the Lock Screen following unlocking of the device using facial recognition security until the user has executed a swipe across the display, is present on the devices when they are made, used, sold, or offered for sale within the United States, and/or imported into the United States, by or for Samsung.

64.     **Indirect Infringement:**  Samsung has been and is presently indirectly infringing at least claim 1 of the '993 Patent, including by inducing users of Samsung devices to use devices that infringe the '993 Patent.

65.     Samsung has induced and continues to induce users of Samsung devices to use products that infringe the '993 Patent by, among other things, prompting and encouraging users of Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices to enable facial recognition security, and setting "Stay on Lock screen" as enabled by default.  For example, Samsung's website, at https://www.samsung.com/us/support/answer/ANS00062630/ and https://www.samsung.com/us/support/answer/ANS00083151/, provides detailed instructions to users of Infringing '993 Devices concerning how to enable facial recognition security and unlock their devices using facial recognition security.

66.     Users of the Infringing '993 Devices have committed and continue to commit acts of direct infringement by way of their past and ongoing configuring of the devices for facial recognition security and their use of the devices to perform the functionality alleged above.

67.     On information and belief, based on at least the facts alleged at paragraphs 16-28 above, Samsung has known of the '993 Patent since shortly after it issued on August 19, 2014.

68.     On information and belief, Samsung has intended, and does intend, that users of Infringing '993 Devices use the devices to perform the functionality alleged above.  On information and belief, Samsung has known and knows that, or has acted and acts with willful blindness to the likelihood that, the acts of users of Samsung devices in using the devices to perform the functionality alleged above constitutes infringement of the '993 Patent.

69.     Samsung has never been, and is not now, licensed under the '993 Patent, and has never been authorized by any owner of the '993 Patent to engage in the acts alleged herein.

70.     Samsung's infringement of the '993 Patent has been and continues to be willful. On information and belief, based on at least the facts alleged at paragraphs 16-28 above, Samsung has known of the '993 Patent since shortly after it issued.  Samsung is a large corporation with a large and experienced legal department, and highly sophisticated in-house and outside intellectual property counsel.  Samsung knew or should have known that the Infringing '993 Devices infringe the '993 Patent, yet proceeded to engage in such conduct despite a high likelihood that a court would find the products to be infringing.

71.     The '993 Patent is not invalid and is enforceable.

72.     Neonode has sustained significant damages as a direct and proximate result of Samsung's infringement of the '993 Patent.

## DEMAND FOR JURY TRIAL

73.     Neonode demands a trial by jury of all issues triable of right before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Neonode respectfully requests that the Court enter judgment as follows:

A.      That Samsung has infringed and continues to infringe the '879 Patent and the '993 Patent;

B.      Awarding Neonode damages adequate to compensate it for Samsung's infringement of the '879 Patent and the '993 Patent, in an amount to be determined at trial, but in no event less than a reasonable royalty for the use made of the claimed inventions by them;

C.      Awarding a preliminary and permanent injunction restraining and enjoining Samsung, and its officers, agents, servants, employees, attorneys, and any persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from any further manufacture, use, sales, offers to sell, or importations of any and all of the products and services identified above;

D.      Trebling all damages awarded to Neonode under the '879 Patent and the '993 Patent;

E.      Finding this case exceptional and awarding Neonode its reasonable attorneys' fees and non-taxable costs incurred in prosecuting its claims;

F.      Awarding Neonode pre-judgment and post-judgment interest at the maximum rate permitted by law;

G.      Awarding Neonode its taxable costs;

H.      Such further and additional relief as the Court determines to be just and proper.

DATED:  June 8, 2020                    Respectfully submitted,


By:  */s/ Craig D. Cherry*_____
Craig D. Cherry
State Bar No. 24012419
ccherry@haleyolson.com
Justin W. Allen
State Bar No. 24081977
jallen@haleyolson.com
**HALEY & OLSON, P.C.**
100 N. Ritchie Road, Suite 200
Waco, Texas 76712
913 Franklin Ave., Suite 201
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile: (254) 776-6823

Philip J. Graves (CA State Bar No. 153441) (pro hac vice pending)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7147
Facsimile: (213) 330-7152
Email: philipg@hbsslaw.com

Greer N. Shaw (CA State Bar No. 197960) (pro hac vice pending)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: greers@hbsslaw.com

*Counsel for Plaintiff Neonode Smartphone LLC*