# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

## WACO DIVISION

| | |
|---|---|
| NEONODE SMARTPHONE LLC,<br><br>               Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO. LTD.<br>and SAMSUNG ELECTRONICS<br>AMERICA, INC.,<br><br>               Defendants. | Civil Action No. 6:20-cv-00507-ADA<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS OF WILLFUL INFRINGEMENT AS TO BOTH PATENTS-IN-SUIT AND PLAINTIFF'S CLAIMS OF INDIRECT INFRINGEMENT AND DIRECT INFRINGEMENT AS TO U.S. PATENT NO. 8,812,993**

I.    INTRODUCTION ................................................................................. 1

II.   NEONODE'S ALLEGATIONS ............................................................ 2

      A.    Samsung's Pre-Suit Knowledge of the '879 Patent. ..................................... 2

      B.    Samsung' Pre-Suit Knowledge of the '993 Patent. ........................................ 4

III.  ARGUMENT .................................................................................... 6

      A.    Neonode's Willful Infringement Allegations Are Sufficient. ...................... 7

            1.    Neonode's Allegations of Pre-Suit Knowledge Are Sufficient .......... 7

            2.    Neonode Need Not Allege "Egregious" Conduct ........................... 11

      B.    Neonode Adequately Alleges Indirect Infringement of the '993 Patent. .... 14

      C.    Neonode Adequately Alleges Direct Infringement of the '993 Patent. ........ 18

IV.   CONCLUSION ................................................................................ 20

## Cases

*APS Tech. Inc. v. Vertex Downhole Inc.*,
  C.A. No. 19-1166 (MN), 2020 WL 4346700 (D. Del. Jul. 29, 2020) ............................ 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................ 6

*Bean v. John Wiley & Sons, Inc.*,
  No. CV 11-08028-PCT-FJM, 2012 WL 1078662 (D. Ariz. Mar. 30, 2012) ..................... 9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 6

*Boston Scientific Corp. v. Nevro Corp.*,
  415 F. Supp. 3d 482 (2019) ........................................................................................... 20

*Canon, Inc. v. TCL Elecs. Holdings Ltd.*,
  No. 2:18-CV-00546-JRG, 2020 WL 1478356 (E.D. Tex. Mar. 25, 2020) ............... 16, 18

*Cywee Group Ltd. v. Huawei Device Co. Ltd.*,
  No. 2:17-CV-495-WCB, 2018 WL 3819392 (E.D. Tex. Aug. 10, 2018) ....................... 15

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
  888 F.3d 1256 (Fed. Cir. 2018) ............................................................................... 19, 20

*Dresser, LLC v. VRG Controls, LLC*,
  No. 18 C 1957, 2018 WL 10426611 (N.D. Ill. Nov. 28, 2018) ................................. 11, 12

*Dynamic Data Techs., LLC v. Dell Inc.*,
  18 Civ. 10454 (AKH), 2019 WL 10248834 (S.D.N.Y. Apr. 23, 2019) ......................... 14

*Erickson v. Pardus*,
  551 U.S. 89 (2007) .......................................................................................................... 6

*Fernandez-Montez v. Allied Pilots Assoc.*,
  987 F.2d 278 (5th Cir. 1993) .......................................................................................... 6

*Finjan, Inc. v. Juniper Networks, Inc.*,
  No. C 17-05659 WHA, 2018 WL 905909 (N.D. Cal. Feb. 14, 2018) ............................ 10

*Frac Shack Inc. v. AFD Petroleum (Texas) Inc.*,
  7:19-cv-00026-DC, 2019 WL 3818049 (W.D. Tex. June 13, 2019) ........................... 9, 14

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
  136 S. Ct. 1923 (2016) .................................................................................................. 11

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
  634 F.3d 787 (5th Cir. 2011) .......................................................................................... 7

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012)...............................................................................passim

*Lexington Luminance LLC v. Lowes Home Centers LLC*,
4:18-cv-301-ALM-KPJ, 2019 WL 1417440 (E.D. Tex. Mar. 13, 2019).........................15

*Lexington Luminance LLC v. TCL Multimedia Tech. Holdings, Ltd.*,
No. 16-cv-11458-DJC, 2017 WL 3795769 (D. Mass. Aug. 30, 2017)............................12

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ...........................................................................................7

*Meetrix IP, LLC v. Cisco Systems, Inc.*,
NO. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018)...................12, 13

*Memory Integrity LLC v. Intel Corp.*,
144 F. Supp. 3d 1185 (D. Or. 2015) ...............................................................................17

*Motiva Patents LLC v. Sony Corp.*,
408 F. Supp. 2d 819 (E.D. Tex. 2019) ..................................................................7, 17, 18

*Panoptis Patent Mgmt., LLC v. Blackberry Corp.*,
No. 2:16-CV-00059-JRGRSP, 2017 WL 780885 (E.D. Tex. Feb. 10, 2017) ............16, 18

*Parity Networks, LLC v. Cisco Sys., Inc.*,
NO. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. 2019)..............................7, 12

*Script Security Solutions L.L.C. v. Amazon.com, Inc.*,
170 F. Supp. 3d 928 (E.D. Tex. 2016)............................................................................15

*Välinge Innovation AB v. Halstead New England Corp.*,
No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018).........................7, 12

*Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*,
887 F.3d 1117 (Fed. Cir. 2018)......................................................................................16

*Videx, Inc. v. TriTeq Lock & Sec., LLC*,
No. 6:11-cv-6384, 2014 WL 2040745 (D. Or. May 8, 2014)..........................................20

*ZitoVault, LLC v. International Bus. Mach. Corp.*,
No. 3:16-cv-0962-M, 2018 WL 2971131  (N.D. Tex. Mar. 28, 2019)............................11

**Treatises**

Robert A. Matthews, Jr. 2 Matthews Annotated Patent Digest § 10:62 (2019) ..........................16

I.   **INTRODUCTION**

The Court should deny Samsung's motion to dismiss in its entirety, because it ignores the factual allegations of Neonode's complaint, elides any inferences that may reasonably be drawn from those allegations, and demands a level of specificity that is neither possible nor required at the pleading stage.

Samsung first argues that the Court should dismiss Neonode's willful infringement claim as to both United States Patent No. 8,095,879 (the "'879 Patent") and United States Patent No. 8,812,993 (the "'993 Patent") because Neonode purportedly does not adequately allege Samsung's pre-suit knowledge of the patents. However, Neonode alleges that Samsung licensed Neonode's technology in 2005, was aware of Neonode's patents from communications with Neonode, and used Neonode's patented technology as prior art in patent litigation with Apple. These allegations, and others, are more than sufficient to support an inference of pre-suit knowledge.

Samsung next argues that Neonode's indirect infringement claim as to the '993 Patent is deficient because Neonode fails to plead "specific intent" to cause infringement. This argument also fails. Neonode pled facts showing Samsung's knowledge of the patents and their infringement, as well as Samsung's active efforts to instruct and encourage others to use the infringing products. Nothing more is required to plead "intent" for indirect infringement.

Finally, Samsung argues that Neonode has not adequately pled direct infringement of the '993 Patent. Once again, Samsung's argument lacks merit. Neonode need only provide fair notice of infringement. Here, the text and illustrations in Neonode's complaint detail how Samsung's products meet the claim limitations, including the "present in a strip" element. Samsung's contrary – and conclusory – arguments appear to rest on unspecified constructions of certain claim terms. *Markman* briefing, not a motion to dismiss, is the appropriate place to raise such issues.

For these reasons, among others, the Court should deny Samsung's motion.

## II.    NEONODE'S ALLEGATIONS

### A.  Samsung's Pre-Suit Knowledge of the '879 Patent.

The '879 Patent issued from U.S. Application No. 10/315,250 ("'250 Application"), filed on December 10, 2002. (Doc. 1-1 at 2 of 11). The '250 Application discloses a user interface for a mobile device with a touch screen. (Doc. 1-1, col. 1:65-3:6)[1] The touch screen displays a representation (e.g., an icon) of a function. (Doc. 1-1, col. 2:5-7; col. 4:1-3) The user can activate the representation by touching it and then moving in a sliding or swiping gesture on the touch screen. (Doc. 1-1, col. 2:11-15; col. 4:7-12; Fig. 2) Activating the representation causes the touch screen to display icons representing services, functions, or settings of active applications or of the operations system of the device. (Doc. 1-1, col. 4:13-33) The user may then activate a given service, function, or setting by tapping the associated icon. (Doc. 1-1, col. 4:34-35; Fig. 4) One application of this technology is a swipe-to-unlock feature, whereby the user may transition a device from a locked state, which displays an activatable graphic in a strip along an edge of the display screen but no tap-activatable icons, to an unlocked state, which displays tap-activatable icons. Transition is achieved by a multi-step gesture comprising touching the display screen within the strip (such as with a fingertip) and then gliding on the display screen away from and out of the strip. (Doc. 1-1, col. 3:57-4:42; Figs. 1-3)

In July 2005, Samsung took a license to the '250 Application "and the patents into which [it] may mature." (Doc. 1, ¶ 17) It is reasonable to infer that Samsung took a license to the '250 Application because it was interested in using, and it ultimately did use, the user interface

---

[1] The '250 Application later issued as the '879 Patent, so Neonode refers the Court to the patent as indicative of the '250 Application's disclosures.

technology disclosed in that application and claimed in patents that directly or indirectly issued from the '250 Application. The license terminated by no later than early 2009. (Doc. 1, ¶ 17)

The '879 Patent issued from the '250 Application on January 10, 2012. (Doc. 1, ¶ 17; Doc. 1-1 at 2 of 11)

On February 8, 2012, Apple filed *Apple Inc. v. Samsung Electronics Co., Ltd., et al.,* in the U.S. District Court for the Northern District of California, Case No. 12-CV-00630-LHK. (Doc. 1, ¶ 18) Apple accused Samsung of infringing Apple's U.S. Patent No. 8,046,721, entitled "Unlocking a device by performing gestures on an unlock image," widely known as Apple's "swipe to unlock" or "slide to unlock" patent. (Doc. 1, ¶ 18) Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") defended Samsung in that litigation. (Doc. 1, ¶ 23)

Within weeks after Apple filed the lawsuit, various online industry journals published articles describing how Neonode's touch-and-glide user interface technology pre-dated Apple's claimed technology. (Doc. 1, ¶¶ 19-22) The articles, some of which reprinted figures from the '879 Patent, noted that Neonode's "slide to unlock" technology was covered by the '879 Patent and was implemented in Neonode's N1 model phone. (Doc. 1, ¶¶ 19-22) According to one of the articles, at a court hearing in August 2011, Samsung used a Neonode device in defending itself against another suit involving Apple's "slide to unlock" technology. (Doc. 1, ¶ 22)

As is commonly the case in high-stakes patent litigation, it may reasonably be inferred (and Neonode alleged on information and belief) that Samsung and/or its litigation counsel, on an ongoing basis from at least February 2012 forward, regularly monitored industry press relating to the subject matter of the litigation against Apple and undertook substantial research and investigative efforts to obtain information pertinent to the subject matter of the litigation against Apple. (Doc. 1, ¶ 19) Particularly given that Samsung was already aware of Neonode and its user

interface technology – because Samsung had earlier licensed the '250 Application and because Samsung had used a Neonode device against Apple in a 2011 court hearing – it may reasonably be inferred that Samsung became aware of one of more of the journal articles in or about February 2012 and learned of the '879 Patent shortly after it issued on January 10, 2012. (Doc. 1, ¶ 16).

Moreover, Quinn Emanuel, Samsung's counsel in the *Apple* lawsuit, knew of the '879 Patent by at least March 19, 2012. (Doc. 1, ¶ 23) On that date, Quinn Emanuel deposed executives of Neonode Inc. in *Motorola Mobility, Inc. v. Apple, Inc.,* in the U.S District Court for the Southern District of Florida, Case No. 1:10cv023580-Civ-UU. (Doc. 1, ¶ 23) Quinn Emanuel represented Motorola Mobility in that case, at the same time that it represented Samsung in the co-pending *Apple* case. (Doc. 1, ¶ 23) In the course of the deposition, Quinn Emanuel marked the '879 Patent as an exhibit and asked Neonode, Inc.'s Vice President of Intellectual Property numerous questions about it. (Doc. 1, ¶ 23) It is reasonable to infer that Quinn Emanuel brought the '879 Patent to the attention of its other client, Samsung, around this time for potential use to defend Samsung in the *Apple* case.

Based upon the foregoing allegations and reasonable inferences, Neonode alleged, on information and belief, that Samsung has known of the '879 Patent since shortly after it issued on January 10, 2012. (Doc. 1, ¶ 16)

**B. Samsung' Pre-Suit Knowledge of the '993 Patent.**

The '993 Patent issued from an application that was filed on December 4, 2011 and published on April 19, 2012. (Doc. 1-2 at 2 of 11) The application is a continuation of the '250 Application and therefore shares the same specification as the '879 Patent. (Doc. 1-2 at 2 of 11)

As noted above, at a court hearing in August 2011, Samsung had used a Neonode device in defending itself against another suit involving Apple's "slide to unlock" technology. (Doc. 1, ¶ 22) Also, Samsung's counsel had used the '879 Patent at a March 2012 deposition of a Neonode

Inc. executive. (Doc. 1, ¶ 23) Given Samsung's familiarity with Neonode's technology, stemming from its license to the '250 Application, and given Samsung's motivation to defend itself against Apple's claims using Neonode's technology as prior art, it is reasonable to infer the Samsung was monitoring Neonode's patent activity at least during the latter half of 2011 and into the first half of 2012. It is reasonable to infer that Samsung learned of the application from which the '993 Patent issued shortly after that application published on April 19, 2012.

Moreover, on or about July 8, 2013, Samsung filed a list of invalidity references in the *Apple v. Samsung* litigation. (Doc. 1, ¶ 25) Samsung identified the "Neonode N1 Quickstart Guide V0.5" as a reference against Apple's "swipe to unlock" patent. (Doc. 1, ¶ 25) Neonode's N1 mobile phone incorporated Neonode's "Neno" touchscreen and interface technologies disclosed in the '879 and '993 Patents. (Doc. 1, ¶¶ 12-13, 20) Given Samsung's reliance upon the Neonode guide as prior art against Apple's patent, and the alleged facts discussed above, it is reasonable to infer that Samsung at this time was aware of both the '879 Patent and the published application that would later issue as the '993 Patent.

Based upon the foregoing allegations and reasonable inferences, Neonode alleged, on information and belief, that Samsung has known of the '993 Patent since shortly after it issued, on August 19, 2014. (Doc. 1, ¶ 24)

In addition, on or about September 24, 2015, Neonode Inc.'s Vice President of Intellectual Property communicated with Quinn Emanuel about Samsung's potential interest in Neonode Inc.'s patent portfolio. (Doc. 1, ¶ 28) About a month later, on October 22, 2106, Quinn Emanuel responded that Samsung was uninterested. (Doc. 1, ¶ 28) It is reasonable to infer that, if it was not already aware of the '879 and '993 Patents by that time, Samsung during that month became aware of the '879 and '993 Patents in the process of assessing Neonode's portfolio. The inference is

particularly strong given Samsung's 2005 license to use Neonode's user interface technology described in the '250 Application in its own products, Samsung's counsel's use of the '879 Patent at a 2012 deposition of Neonode Inc.'s Vice President of Intellectual Property, Samsung's repeated reliance upon Neonode's patented user interface technology as prior art against Apple's slide-to-unlock patent, and Samsung's actual use of Neonode's technology in its products.

Finally, Samsung became aware of the '879 and '993 Patents upon service of Neonode's complaint in this action shortly after it was filed on June 8, 2020, which complaint included the patents as exhibits. (Doc. 1-1; Doc. 1-2)

## III.   **ARGUMENT**

When considering a motion to dismiss under Rule 12(b)(6), a court takes as true all well-pleaded factual allegations and construes them in the light most favorable to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). The plaintiff need only plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. But "[a]sking for plausible grounds *does not* impose a probability requirement at the pleading stage...." *Twombly*, 550 U.S. at 556 (emphasis added). Nor does the plausibility standard authorize courts "to look behind [a complaint's] allegations and independently assess the

likelihood that the plaintiff will be able to prove them at trial." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011). A plaintiff need not "prove its case at the pleading stage." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). The Court may not "choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible." *Id.*; *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) (noting that courts "are not authorized or required to determine whether the plaintiff's plausible inference ... is equally or more plausible than other competing inferences....").

"[P]articularly where the relevant information is beyond the access of the plaintiff, courts should generally permit discovery to proceed unless the complaint recites no more than sheer speculation about the plaintiff's entitlement to relief." *Motiva Patents LLC v. Sony Corp.*, 408 F. Supp. 2d 819, 827 (E.D. Tex. 2019).

### A.  Neonode's Willful Infringement Allegations Are Sufficient.

"To state a claim for willful infringement, 'a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.'" *Parity Networks, LLC v. Cisco Sys., Inc.*, NO. 6:19-CV-00207-ADA, 2019 WL 3940952 at *3 (W.D. Tex. 2019) (quoting *Välinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018)).

### 1.  Neonode's Allegations of Pre-Suit Knowledge Are Sufficient

Samsung argues that "Neonode does not point to facts sufficient to allege pre-suit knowledge of the '879 and '993 Patents." (Doc. 12 at 2) According to Samsung, "Neonode cobbles

together random facts from which it speculates that Samsung had such knowledge." (*Id.*) Samsung's assertions are meritless.

First, that Samsung took a license to the '250 Application "and the patents into which [it] may mature" (Doc. 1, ¶ 17) is not a "random" fact. It establishes that Samsung knew about and valued Neonode's user interface technology and also knew that the technology was subject to a patent application. It is reasonable to infer that Samsung's agreement to pay for the technology at a time when it was subject only to a patent application indicates Samsung's belief that one or more patents would eventually issue. It requires no "speculation" to reasonably infer that Samsung took the license because it was interested in using the user interface technology disclosed in that application and claimed in patents that directly or indirectly issued from the '250 Application, including the '879 and '993 Patents. Indeed, Samsung did use Neonode's patented technology, as detailed in Neonode's complaint. (Doc. 1, ¶¶29-72)

Second, that Samsung, at a court hearing in August 2011, used a Neonode device to defend itself against a lawsuit suit involving Apple's "slide to unlock" technology (Doc. 1, ¶ 22) is not "random." It establishes that Samsung knew that Neonode's user interface technology, which was the subject of the '250 Application Samsung had licensed, was embodied in Neonode's phone. It also establishes that Samsung appreciated the defensive value of Neonode's technology.

Third, the fact that various online industry journals published articles in February 2012 describing how Neonode's touch-and-glide user interface technology disclosed in the '879 Patent pre-dated Apple's claimed technology (Doc. 1, ¶¶ 19-22) is not "random." Particularly given that Apple had sued Samsung just weeks earlier for infringing Apple's slide-to-unlock patent, it requires no "speculation" to reasonably infer that Samsung was monitoring the industry and learned of the articles and their content (including that Neonode's "slide to unlock" technology was

covered by the '879 Patent, was implemented in Neonode's N1 model phone, and was prior art to the patent that Apple had just asserted against Samsung). (Doc. 1, ¶¶ 19-22) *Cf. Frac Shack Inc. v. AFD Petroleum (Texas) Inc.*, 7:19-cv-00026-DC, 2019 WL 3818049, at *5 (W.D. Tex. June 13, 2019) (denying motion to dismiss willful infringement claim because, among other things, it was plausible to infer that "counsel … most certainly were monitoring the actions of the opposing parties (or were likely to have been doing so)").

Fourth, that Quinn Emanuel, Samsung's counsel in the *Apple* lawsuit, used the '879 Patent at a March 19, 2012 deposition of Neonode, Inc.'s Vice President of Intellectual Property (Doc. 1, ¶ 23) is not "random." Particularly given that Apple had sued Samsung just weeks earlier for infringing Apples' slide-to-unlock patent, it requires no "speculation" to reasonably infer that Samsung learned though its counsel of the '879 Patent and its potential use to defend against Apple's claims.[2] Nor does it require "speculation" to reasonably infer that Samsung learned of the application from which the '993 Patent issued shortly after that application published on April 19, 2012, which was only a month after the deposition, particularly given Samsung's familiarity with and interest in Neonode's technology, Samsung's actual use of Neonode's technology in its products, and Samsung's motivation to defend itself against Apple's claims using Neonode's technology as prior art.

---

[2] Samsung cites *Bean v. John Wiley & Sons, Inc.*, No. CV 11-08028-PCT-FJM, 2012 WL 1078662 (D. Ariz. Mar. 30, 2012), in support of its argument that Quinn Emanuel's knowledge of the '879 Patent may not be "imputed" to Samsung. (Doc. 12 at 4) The reliance is misplaced. As a threshold matter, the procedural context in *Bean* was summary judgment, not a 12(b)(6) motion. Beyond that, the legal viability of Neonode's claim does not rest upon an "imputation" theory; i.e., that Quinn Emanuel's knowledge should be "imputed" to Samsung as a matter of law. Rather, Neonode alleges that, given the circumstances alleged in its complaint, including that both Samsung and Quinn Emanuel's other client were being sued by Apple, it is *reasonable to infer* that Quinn Emanuel informed Samsung of information pertinent to Samsung's defense of the *Apple* case. Unlike in *Bean*, *see id.* at *3, the subject information – the existence of the '879 patent and its pertinence as prior art to Apple's patent – was not confidential or subject to a protective order that precluded Quinn Emanuel from disclosing it to Samsung.

Fifth, that Samsung identified the Neonode N1 user guide as prior art in the *Apple v. Samsung* litigation in a court filing dated July 8, 2013 (Doc. 1, ¶ 25) is not "random." It establishes that Samsung appreciated the value of Neonode's technology as prior art to Apple's patent. It requires no "speculation" to reasonably infer that, in developing its invalidity defenses in the *Apple* case based upon Neonode's technology, Samsung learned of both the '879 Patent and the application that would later issue as the '993 Patent, which application had been published on April 19, 2012.

Finally, that Neonode Inc. and Samsung (via its counsel, Quinn Emanuel) communicated in late 2015 about Samsung's potential interest in Neonode's patent portfolio is not "random." It requires no "speculation" to reasonably infer that, if it was not already aware of the '879 and '993 Patents by that time, Samsung became aware of the '879 and '993 Patents in the process of assessing Neonode's portfolio. The inference is particularly strong given (a) Samsung's 2005 license to use Neonode's user interface technology described in the '250 Application in its own products, (b) Samsung's counsel's use of the '879 Patent at a 2012 deposition of Neonode Inc.'s Vice President of Intellectual Property, (c) Samsung's repeated reliance upon Neonode's patented user interface technology as prior art against Apple's slide-to-unlock patent, and (d) Samsung's actual use of Neonode's patented technology in its products.[3]

In sum, Neonode's allegations, together with inferences reasonably drawn therefrom, are sufficient to establish that Samsung became aware of the '879 and '993 Patents shortly after they

---

[3] Citing *Finjan, Inc. v. Juniper Networks, Inc.*, No. C 17-05659 WHA, 2018 WL 905909 (N.D. Cal. Feb. 14, 2018), Samsung argues that its "alleged *lack* of interest in potentially licensing Neonode's entire patent portfolio certainly does not establish knowledge of any individual patent, let alone the asserted patents in this case." (Doc. 12 at 4) *Finjan* is distinguishable because there were not allegations in that case "that [defendant] had pre-suit knowledge of the *patents-in-suit*, as opposed to [plaintiff's] patent portfolio or the [plaintiff's] non-asserted" patent. *Id.* at *3. Here, in contrast, Neonode's allegations and the reasonable inferences that may be drawn therefrom establish that Samsung had pre-suit knowledge of the specific patents in suit.

issued and, in any event, before Neonode filed its complaint in this case. But even if the Court were to determine otherwise, Neonode's willful infringement claim remains viable – and should not be dismissed – to the extent of Samsung's post-complaint infringement. Neonode's complaint provided Samsung with notice of the patents. *E.g.*, *ZitoVault, LLC v. International Bus. Mach. Corp.*, No. 3:16-cv-0962-M, 2018 WL 2971131, at *3 (N.D. Tex. Mar. 28, 2019) ("The Complaint notifies Defendants of the [] patent and lists some of their infringing products. [T]he Complaint states a claim for direct and indirect infringement. The Complaint further states that despite these allegations, Defendants have not ceased their infringing activities. The Court can reasonably infer that if Defendants infringe, then they are deliberately continuing to do so despite notice in the Complaint. Accordingly, Plaintiff has stated a claim for post-suit willful infringement against both Defendants.").

2.      Neonode Need Not Allege "Egregious" Conduct

Citing *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1932 (2016), Samsung argues that "[a] claim of willful infringement also requires that the plaintiff show that a defendant's infringement is an 'egregious case[ ] of culpable behavior,' conduct that has been described as 'willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.'" (Doc. 12 at 4-5) Samsung conflates the pleading requirements for willful infringement with the standard of proof for enhancement of damages. "Willful infringement and enhancement flowing from that willfulness are separate inquiries." *APS Tech. Inc. v. Vertex Downhole Inc.*, C.A. No. 19-1166 (MN), 2020 WL 4346700, at *7 (D. Del. Jul. 29, 2020). Although some district courts require "egregious" conduct to be alleged, numerous others have held that a plaintiff need not "plead acts of egregiousness" in order to plead a viable willful infringement claim. *Id.*; *see also, e.g.*, *Dresser, LLC v. VRG Controls, LLC*, No. 18 C 1957, 2018

11

WL 10426611, at *4 (N.D. Ill. Nov. 28, 2018) ("'At the pleading stage' … 'it is not necessary to show that the case is egregious.'" (citation omitted)); *Lexington Luminance LLC v. TCL Multimedia Tech. Holdings, Ltd.*, No. 16-cv-11458-DJC, 2017 WL 3795769 at *6 (D. Mass. Aug. 30, 2017) ("Whether [plaintiff] can ultimately show that it is entitled to enhanced damages for Defendants' 'egregious infringement behavior' is not relevant to the Court's consideration of a motion to dismiss. At this juncture, a plaintiff is not required to allege more than knowledge of the patent and of infringement." (citation omitted)).

In *Välinge Innovation*, the District of Delaware carefully analyzed *Halo* as well as post-*Halo* decisions of various district courts and of the Federal Circuit. 2018 WL 2411218, at *6-9. Based upon this analysis, the court concluded that "'egregiousness' should not be a part of the calculus for determining whether a patentee has set out a plausible claim of willful infringement," *id.* at *6, and so, "in considering whether a patentee has successfully pleaded willful infringement, [the court] should [not] require that the patentee plead facts plausibly evidencing 'egregious' infringement conduct," *id.* at *9. Rather than requiring allegations of "egregious" conduct, the *Välinge Innovation* court held that, "in order to sufficiently plead willful infringement, a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Id.* at *13. Citing and quoting *Välinge Innovation*, this is the test the Court set forth in *Parity Networks*. *See* 2019 WL 3940952 at *3. Contrary to Samsung's argument, Neonode need not plead "egregious" conduct in order to sufficiently plead willful infringement.[4]

---

[4] Samsung cites Judge Yeakel's decision in *Meetrix IP, LLC v. Cisco Systems, Inc.*, NO. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018) for the proposition that a willful infringement claim should be dismissed "based on failure to articulate an allegation of egregiousness." (Doc. 12 at 5) Although it is true that Judge Yeakel agreed with Cisco that

Here, Neonode's "knowledge" allegations are sufficient, as discussed above. Regarding post-knowledge infringement, Neonode's allegations, together with inferences reasonably drawn therefrom, are sufficient to establish that Samsung infringed the patents. It is reasonable to infer that Samsung licensed Neonode's user interface technology disclosed in the '250 Application because Samsung desired to use, and eventually it did use, that technology in Samsung's products. Samsung entered into that license knowing that Neonode had applied for patent protection and intending that the license would extend to "the patents into which [the '250 Application] may mature." (Doc. 1, ¶ 17) Once the license terminated in or around 2009, Samsung's use of Neonode's technology was unauthorized. After the '879 Patent issued in 2012, Samsung's unauthorized use of Neonode's technology constituted infringement of the '879 Patent. After the '993 Patent issued in 2014, Samsung's unauthorized use of Neonode's technology constituted infringement of the '993 Patent. Samsung's use of the patented technology is detailed in Neonode's complaint. (Doc. 1, ¶¶29-72)

It is also reasonable to infer that Samsung knew or should have known that its conduct amounted to infringement. By virtue of the fact that Samsung originally licensed Neonode's technology, Samsung knew that the technology was proprietary. The license identified the '250 Application, so Samsung knew at that time that Neonode was seeking patent protection. That Samsung agreed to pay to use Neonode's technology at a time when it was subject only to a patent application reveals Samsung's belief and expectation that patents would eventually issue. Samsung knew that the license terminated in 2009 and that any use of Neonode's technology thereafter was

---

"Meetrix's complaint fail[ed] to state a claim for willful infringement because the complaint d[id] not allege any facts raising a plausible inference of the egregious behavior," *id.* at *3, it is clear that the willful infringement claim in that case was fatally deficient because plaintiff failed to allege defendant's pre-suit knowledge of the patents. *Id.* Here, unlike the plaintiff in *Meetrix*, Neonode has sufficiently alleged pre-suit knowledge.

unauthorized. Samsung knew or should have known that unauthorized use of Neonode's technology after the '879 and '993 Patents issued infringed those patents. Moreover, Samsung's defense to Apple's assertion of its "slide-to-unlock" patent was to point to Neonode's technology as invalidating prior art; i.e., that Apple's patent claims were that same as, or only an obvious variations from, Neonode's technology. If Samsung was practicing Apple's patent, then Samsung knew or should have known that it was also practicing Neonode's prior art patented technology.

Even if Neonode were required to plead "egregious" conduct, which it is not, Neonode's indirect infringement allegations (discussed below) are sufficient to plead "egregious" conduct at this stage. *E.g.*, *Dynamic Data Techs., LLC v. Dell Inc.*, 18 Civ. 10454 (AKH), 2019 WL 10248834, at * 4 (S.D.N.Y. Apr. 23, 2019) (noting that plaintiff had adequately pled "egregiousness" because "the FAC adequately alleges Defendant's knowledge of the Accused Patents and intent with respect to the alleged inducement. Accordingly, the FAC's allegations as to willfulness likewise are sufficient to withstand a motion to dismiss.").

Finally, if, notwithstanding Neonode's arguments, the Court perceives Neonode's allegations of knowledge of the asserted patents to be insufficient, any dismissal of Neonode's willful infringement theory at this stage should be without prejudice to Neonode's ability to amend its complaint. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *see also Frac Shack*, 2019 WL 3818049, at *5 ("Ordinarily the Court would dismiss an allegation of willfulness *without prejudice* absent a specific allegation of pre-suit knowledge of the asserted patents." (emphasis added)).

### B.  Neonode Adequately Alleges Indirect Infringement of the '993 Patent.

Samsung argues that the Court should dismiss Neonode's indirect infringement claim as to the '993 Patent because "Neonode fails to allege that Samsung had pre-suit knowledge of either the '993 Patent or the alleged infringement of the '993 Patent" and that "Neonode fails to plead

14

facts plausibly supporting a conclusion that Samsung had the required 'specific intent' to induce infringement." (Doc. 12 at 6) These contentions, too, are meritless.

First, as discussed above, Neonode's allegations, and the inferences reasonably drawn therefrom, adequately plead that Samsung knew of the '993 Patent and knew or should have known of its infringement of that patent before service of Neonode's complaint. Moreover, even if Neonode's allegations of pre-suit knowledge of the patent were insufficient, which they are not, Neonode's complaint still alleges a viable claim for post-complaint indirect infringement because Neonode's complaint put Samsung on notice of the patents and their infringement. *E.g.*, *Cywee Group Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-CV-495-WCB, 2018 WL 3819392 at *2 (E.D. Tex. Aug. 10, 2018) (denying motion to dismiss indirect infringement claim, finding plaintiff's allegations that defendant "provides" instructional materials to customers "indicates that [defendant], with knowledge of infringement no later than the time of the filing of the complaint, continues to provide those instructions. Even if [defendant] did not have knowledge of the asserted patents before this action was filed, that knowledge and [defendant's] continued distribution of the instructions is sufficient to establish post-suit infringement."); *Script Security Solutions L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 937 (E.D. Tex. 2016) ("[A] complaint provides sufficient notice of the existence of the patent-in-suit to support a claim of indirect infringement as to conduct following the filing of the initial complaint in the case.").

Second, regarding intent, there is a "low bar required at the pleading stage." *Lexington Luminance LLC v. Lowes Home Centers LLC*, 4:18-cv-301-ALM-KPJ, 2019 WL 1417440, at *2 (E.D. Tex. Mar. 13, 2019). "Intent" can be sufficiently pled by allegations that an accused product or system infringes a patent, the accused infringer is aware of the patent, and that the accused infringer instructs and encourages its customers to use that product or system. *See Bill of Lading*,

681 F.3d at 1341-45 (Fed. Cir. 2012) (holding that plaintiff sufficiently pled the "intent" element of induced infringement claim with allegations that defendants, with knowledge of the patents, encouraged and instructed third parties to use patented invention); *Canon, Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:18-CV-00546-JRG, 2020 WL 1478356, at *5 (E.D. Tex. Mar. 25, 2020) (denying motion to dismiss induced infringement claim premised upon allegations that defendant "disseminat[ed]" accused products and "creat[ed] and disseminat[ed] … promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products with knowledge and the specific intent that their efforts will result in the direct infringement" of the asserted patents, and that defendants "also induced and are continuing to induce infringement" of the asserted patents by "encouraging, instructing, and/ or directing third parties, including end users, to use" the products); *Panoptis Patent Mgmt., LLC v. Blackberry Corp.*, No. 2:16-CV-00059-JRGRSP, 2017 WL 780885, at *5 (E.D. Tex. Feb. 10, 2017) ("PanOptis alleges that BlackBerry 'provide[d] manuals and support to resellers and end-use customers regarding the use and operation of [the accused] products,' including 'through its website ... by telephone, and through other means of communication.' Given that BlackBerry allegedly had knowledge of the patents, PanOptis's allegations are sufficient."); Robert A. Matthews, Jr. 2 Matthews Annotated Patent Digest § 10:62 (2019) ("Evidence that a defendant provided advertisements, marketing, materials and efforts, or otherwise promoted using a product in an infringing manner can support a finding of inducing infringement."); *see also Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018) ("Circumstantial evidence can support a finding of specific intent to induce infringement.").

In *Motiva Patents*, the court considered the adequacy of plaintiff's induced infringement claim premised upon allegations that the defendant provided "instruction manuals" for using the

accused products in an infringing manner, "directions" to customers and end-users for using the accused products in an infringing manner, and "advertisements and promotional materials" for infringing uses of the accused products. 408 F. Supp. 3d at 830. The court rejected defendant's argument that the plaintiff was required to identify specific excerpts from instruction manuals, specific instructions to customers, and specific content of advertisements. *Id.* at 832. Finding that "'[t]here is no requirement for [a patentee] to 'prove its case at the pleading stage,'" the court denied defendant's motion to dismiss because it was sufficient for plaintiff to identify "classes of information relevant to induced infringement." *Id.* (citation omitted).[5]

Here, Neonode pled sufficient facts to support a reasonable inference of Samsung's intent required for indirect infringement. Neonode alleges that "Samsung has been and is presently directly infringing at least claim 1 of the '993 Patent by making, using, selling, or offering for sale within the United States, and/or importing into the United States, Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices that include or included code for enabling the device to stay on the Lock Screen following use of facial recognition security …." (Doc. 1, ¶ 65) Neonode's complaint details how use of the accused Samsung devices in this configuration directly infringes the '993 Patent. (Doc. 1, ¶¶ 57-63) Neonode alleges that "Samsung indirectly infringes the '879 and '993 Patents by inducing and contributing to infringement by others, including users of Samsung devices." (Doc. 1, ¶ 4) Neonode further alleges that "Samsung has induced and continues

---

[5] Samsung cites *Memory Integrity LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1195 (D. Or. 2015), for the proposition that, "[w]here defendants have not touted the benefits of the accused products in ways that track the asserted patents, courts generally do not infer specific intent." (Doc. 12 at 8) But the Federal Circuit has rejected such a strict requirement for indirect infringement. *See Bill of Lading*, 681 F.3d at 1341-42 (rejecting defendant's argument that plaintiff had "not provided statements from [defendant] which specifically instruct [defendant's] customers to perform all of the steps of the patented method," because "[defendant] is essentially arguing that, at the pleading stage, [plaintiff] must allege facts that prove all aspects of its claims, or at the very least make those claims probable. But that is not what is required.").

to induce users of Samsung devices to use products that infringe the '993 Patent by, among other things, prompting and encouraging users of Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices to enable facial recognition security, and setting 'Stay on Lock screen' as enabled by default. For example, Samsung's website, at https://www.samsung.com/us/support/answer/ANS00062630/ and https://www.samsung.com/us/support/answer/ANS00083151/, provides detailed instructions to users of Infringing '993 Devices concerning how to enable facial recognition security and unlock their devices using facial recognition security." (Doc. 1, ¶ 65) These allegations are sufficient to state a claim for indirect infringement. *E.g.*, *Bill of Lading*, 681 F.3d at 1341-45; *Canon*, 2020 WL 1478356, at *5; *Motiva Patents*, 408 F. Supp. 3d at 830-833; *Panoptis*, 2017 WL 780885, at *5.

### C.  Neonode Adequately Alleges Direct Infringement of the '993 Patent.

Finally, Samsung contends that the Court should dismiss Neonode's direct infringement claim as to the '993 Patent because, according to Samsung, "Neonode's allegations do not address how Samsung may infringe the 'strip' and 'edge' limitations of claim 1 of the '993 Patent." (Doc. 12 at 8) This argument is specious.

The pertinent claim limitations alleged in the complaint are that "an otherwise-activatable graphic is present in a strip along at least one edge of the display" and the user may transition the user interface from the tap-absent state to the tap-present state by "touching the display screen within the strip, and … gliding on the display screen away from and out of the strip." (Doc. 1, ¶ 57) Neonode alleges that the "Lock Screen" of the accused Samsung devices depicts "at least one otherwise-activatable graphic," namely, an "opened padlock" graphic. (Doc. 1, ¶ 61) Neonode alleges in text that the graphic is "in the upper center of the display." (Doc. 1, ¶ 61) In addition, Neonode alleges graphically – using a screen shot of an accused Samsung device – that the opened padlock graphic is present in a strip along the top edge of the display:

18



(Doc. 1, ¶ 61) This image of an accused product constitutes an allegation of the Complaint, just as would any textual description. *E.g.*, *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (considering both textual allegations and photographs of accused products, attached to complaint, in determining that complaint adequately stated infringement claim).

"[T]here is no requirement that the facts alleged mimic the precise language used in a claim …." *Bill of Lading*, 681 F.3d at 1343. Thus, to state a viable direct infringement claim, Neonode need not use the terms "strip" and "edge" in its infringement allegations. A complaint is sufficient if it provides a textual and visual identification of the accused products coupled with an allegation that "the accused products meet 'each and every element of at least one claim of the [asserted] Patent, either literally or equivalently." *Disc Disease*, 888 F.3d at 1260. Neonode provides that here. The text and illustrations in Neonode's complaint provide Samsung with "fair notice of infringement" of the '993 Patent, including how its products meet the "strip" and "edge"

19

claim limitations. *Id.* This is not a case where Samsung is "required to guess what components are accused and how those components allegedly infringe."[6] (Doc. 12 at 9)

Samsung contends that the image in Neonode's complaint is "contrary" to the "present in a strip" element of claim 1. (Doc. 12 at 10) Samsung backs this up with no explanation or support; just the ipse dixit of counsel. To the extent that there is a dispute regarding whether the "open padlock" graphic is displayed within a "strip" along an "edge" of Samsung's display, Samsung will have an opportunity to argue for constructions of these claims terms, and to try to persuade a jury that its opened padlock graphic is not "present in a strip along at least one edge of the display." Deciding these issues on a motion to dismiss would be inappropriate.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Samsung's motion to dismiss.

DATED:  October 23, 2020                    Respectfully submitted,

By: <u>*/s/ Greer N. Shaw*</u>

Philip J. Graves (CA State Bar No. 153441)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7147
Facsimile: (213) 330-7152

---

[6] On this point, Samsung's cited authorities are easily distinguishable. In *Videx, Inc. v. TriTeq Lock & Sec., LLC*, No. 6:11-cv-6384, 2014 WL 2040745 at *4-5 (D. Or. May 8, 2014), plaintiff failed to identify specific claims alleged to be infringed and failed to allege how the accused products embodied or practiced any claims of the asserted patent. Although plaintiff had previously been ordered to amend its complaint "to identify and/or clarify the specific claims of infringement that survived reexamination and the bases for plaintiff's claims," plaintiff "proffer[ed] only vague, conclusory and formulaic allegations that [defendant's] products 'embody the patented invention ... in a matter that infringes the [asserted] Patent.'" *Id.* at *5. In *Boston Scientific Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 490 (2019), the patentee asserted three patents against multiple products but made "no attempt to connect specific components of the accused systems to elements of the asserted claims." And, although the patentee cited to 144 pages of linked materials, it did not explain how any of the materials show[ed] such a connection." *Id.* These cases bear no resemblance to this case; Neonode's complaint specifies both infringed claims and infringing products, and details with words and images how the products infringe. (Doc. 1, ¶¶ 56-72)

Email: philipg@hbsslaw.com

Greer N. Shaw (CA State Bar No. 197960)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: greers@hbsslaw.com


Craig D. Cherry
State Bar No. 24012419
ccherry@haleyolson.com
Justin W. Allen
State Bar No. 24081977
jallen@haleyolson.com
**HALEY & OLSON, P.C.**
100 N. Ritchie Road, Suite 200
Waco, Texas 76712
913 Franklin Ave., Suite 201
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile: (254) 776-6823

*Counsel for Plaintiff Neonode Smartphone LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of October 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(b)(1).  Any other counsel of record will be served by a facsimile transmission and/or first class mail.

*/s/ Greer N. Shaw*
Greer N. Shaw