```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 2                    WACO DIVISION

 3  NEONODE SMARTPHONE, LLC  ) Docket No. WA 20-CA-505 ADA
                             )
 4  vs.                      ) Waco, Texas
                             )
 5  APPLE, INC.              ) October 23, 2020
    _____
 6              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 7                    WACO DIVISION

 8  NEONODE SMARTPHONE, LLC  ) Docket No. WA 20-CA-507 ADA
                             )
 9  vs.                      ) Waco, Texas
                             )
10  SAMSUNG ELECTRONICS CO., )
    LTD., SAMSUNG ELECTRONICS)
11  AMERICA, INC.            ) October 23, 2020

12
                  TRANSCRIPT OF TELEPHONIC CONFERENCE
13            BEFORE THE HONORABLE ALAN D. ALBRIGHT

14

15  APPEARANCES:

16  For the Plaintiff:       Mr. Philip J. Graves
                             Hagens, Berman, Sobol,
17                           Shapiro, LLP
                             301 North Lake Avenue, Suite 920
18                           Pasadena, California 91101

19                           Mr. Craig D. Cherry
                             Haley & Olson, P.C.
20                           100 North Ritchie Road, Suite 200
                             Waco, Texas 76712
21

22  For Apple, Inc.:         Ms. Betty H. Chen
                             Fish & Richardson, PC
23                           111 Congress Avenue, Suite 810
                             Austin, Texas 78701
24

25
```

1  **(Appearances Continued:)**

2  For Samsung Electronics:  Mr. John M. Guaragna
                             DLA Piper, LLP
3                            401 Congress Avenue, Suite 2500
                             Austin, Texas 78701

4

5  Court Reporter:           Ms. Lily Iva Reznik, CRR, RMR
                             501 West 5th Street, Suite 4153
6                            Austin, Texas 78701
                             (512)391-8792

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Proceedings reported by computerized stenography,
    transcript produced by computer-aided transcription.

*LILY I. REZNIK, OFFICIAL COURT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)*

| | | |
|---|---|---|
| 13:29:54 | 1 | THE COURT:  Good afternoon.  It's Alan Albright. |
| 13:30:00 | 2 | Ms. Miles, would you call the case, please. |
| 13:30:02 | 3 | THE CLERK:  Sure. |
| 13:30:03 | 4 | Telephonic scheduling conference in Civil Action |
| 13:30:05 | 5 | 6:20-CV-505, styled, Neonode Smartphone, LLC vs. Apple, |
| 13:30:10 | 6 | Incorporated; and Case No. 6:20-CV-507, styled, Neonode |
| 13:30:17 | 7 | Smartphone, LLC vs. Samsung Electronics Company, Limited |
| 13:30:20 | 8 | and Samsung Electronics America, Incorporated. |
| 13:30:25 | 9 | THE COURT:  Welcome, everyone. |
| 13:30:26 | 10 | If I could hear announcements from counsel, |
| 13:30:27 | 11 | please, starting with the plaintiff. |
| 13:30:31 | 12 | MR. CHERRY:  Your Honor, this is Craig Cherry |
| 13:30:33 | 13 | with Haley & Olson on behalf of plaintiff, and Philip |
| 13:30:35 | 14 | Graves of the Hagens Berman law firm.  And Mr. Graves will |
| 13:30:39 | 15 | be speaking on behalf on all points this afternoon, your |
| 13:30:43 | 16 | Honor. |
| 13:30:43 | 17 | THE COURT:  Welcome.  Thank you. |
| 13:30:49 | 18 | MR. GRAVES:  Good afternoon, your Honor. |
| 13:30:50 | 19 | This is Philip Graves on behalf of plaintiffs. |
| 13:30:53 | 20 | THE COURT:  And for defendant? |
| 13:30:58 | 21 | MS. CHEN:  Good afternoon, your Honor -- |
| 13:30:59 | 22 | MR. GUARAGNA:  John Guaragna -- |
| 13:31:02 | 23 | MS. CHEN:  Hi, John. |
| 13:31:03 | 24 | This is Betty Chen of Fish & Richardson on behalf |
| 13:31:07 | 25 | of Apple. |

13:31:08  1          THE COURT:  Okay.  And are there any issues we

13:31:10  2  need to take up?

13:31:13  3          MR. GUARAGNA:  Your Honor, John Guaragna, just in

13:31:15  4  case I was cut off there, for Samsung Defendants.

13:31:18  5          THE COURT:  Okay.

13:31:23  6          MR. GUARAGNA:  At least from the defendants, your

13:31:25  7  Honor, we do have a couple of issues we'd like to take up

13:31:27  8  with respect to some pre-Markman items.

13:31:30  9          THE COURT:  Okay.

13:31:33  10          MR. GUARAGNA:  And speaking for Samsung, your

13:31:35  11  Honor, there are a couple of areas of third-party

13:31:40  12  discovery that we'd like leave to commence prior to the

13:31:44  13  Markman hearing.  And I'm going to address one of those

13:31:47  14  issues, and I think Ms. Chen's going to address another

13:31:49  15  one.

13:31:50  16          With respect to the first issue, your Honor, we

13:31:53  17  believe that there are material prior art references

13:32:00  18  located with Sony, and we would like leave to commence

13:32:04  19  that third-party discovery of Sony to identify and

13:32:10  20  hopefully obtain the evidence with respect to those

13:32:14  21  third-party products that we think are going to be

13:32:18  22  important pieces of prior art in this case.  We'd like to

13:32:20  23  commence that discovery as soon as possible.

13:32:24  24          We're hopeful but, unfortunately, we think there

13:32:26  25  may be a need to seek some of the discovery from Sony

| | | |
|---|---|---|
| 13:32:31 | 1 | overseas.  And as your Honor obviously has experience, |
| 13:32:36 | 2 | that can take some time and will take likely even longer |
| 13:32:39 | 3 | during the pandemic.  So with your Honor's permission, |
| 13:32:43 | 4 | we'd like to commence that discovery of Sony.  Hopefully |
| 13:32:45 | 5 | we won't need to go through the Hague and go overseas, but |
| 13:32:47 | 6 | it looks like that is probably the case; but we'll avoid |
| 13:32:51 | 7 | it if we can. |
| 13:32:53 | 8 | But, in essence, we'd just like to get those |
| 13:32:56 | 9 | documents, no deposition.  Just simply documents and get |
| 13:32:59 | 10 | that perhaps started now so we'll have it because it will |
| 13:33:01 | 11 | matter in the litigation. |
| 13:33:03 | 12 | THE COURT:  Yeah.  Let me tell you what I'm |
| 13:33:05 | 13 | trying -- and, Mr. Guaragna, as part of my committee, this |
| 13:33:09 | 14 | is an issue I think we're going to try and address on a |
| 13:33:12 | 15 | more permanent basis because it's coming up a good bit, |
| 13:33:15 | 16 | especially worse with the COVID situation and the |
| 13:33:20 | 17 | inability to travel. |
| 13:33:22 | 18 | So I am absolutely fine with you commencing |
| 13:33:26 | 19 | anything that is going to make the case go more smoothly. |
| 13:33:32 | 20 | If you are subpoenaing things for -- I'm not sure exactly |
| 13:33:37 | 21 | what format you're using to try and obtain what it is |
| 13:33:41 | 22 | you're trying to obtain from Sony, the only thing I would |
| 13:33:44 | 23 | suggest that you do is, make sure that the plaintiffs are |
| 13:33:52 | 24 | given a chance to -- if there's something they also need |
| 13:33:55 | 25 | from Sony or anyone else you're going to be sending a |

13:33:59  1  request to, that they be able to cross-subpoena -- or if

13:34:03  2  they choose to.  They can do whatever they want.  But

13:34:07  3  we've got a couple of cases recently where one side was

13:34:10  4  concerned because the other side had subpoenaed some

13:34:14  5  things, but not everything.

13:34:15  6          So I'm actually fine for you to do that.  Also,

13:34:19  7  just at a more macro level that may or may not apply to

13:34:24  8  what y'all are doing here, I think what I'm going to start

13:34:27  9  doing is -- and encouraging, actually.  And, of course,

13:34:31 10  with lawyers of y'all's caliber, I probably don't need to

13:34:35 11  encourage, that you're probably going to do it without

13:34:37 12  that.

13:34:37 13          But, you know, anything that you can do in terms

13:34:41 14  of either documents, possible art, or inventors for sure

13:34:48 15  that are foreign, I'm going to allow those efforts to take

13:34:53 16  place immediately in terms of trying to get them arranged.

13:35:00 17  But I don't think I'm going to allow the discovery, for

13:35:04 18  example, the deposition to take place until, you know,

13:35:09 19  after the Markman.

13:35:10 20          But anything that a party wants to do to

13:35:16 21  accelerate the process of getting discovery done once the

13:35:19 22  Markman has taken place, I'm probably going to be okay

13:35:22 23  with.

13:35:25 24          MR. GUARAGNA:  Thank you, your Honor.

13:35:27 25          I think to your point about collaboratively

| | | |
|---|---|---|
| 13:35:33 | 1 | approaching this, I think the parties have already agreed |
| 13:35:35 | 2 | to coordinate discovery in this case generally.  And so, |
| 13:35:38 | 3 | we would certainly welcome an opportunity to make it as |
| 13:35:42 | 4 | easy as possible on Sony.  And to the extent the plaintiff |
| 13:35:44 | 5 | has any issues it intends to seek doing that in |
| 13:35:48 | 6 | conjunction or doing that collaboratively, I think, is |
| 13:35:51 | 7 | certainly fine with us and makes a lot of sense.  So we |
| 13:35:53 | 8 | appreciate that, your Honor. |
| 13:35:56 | 9 | We will -- we do intend to issue subpoenas. |
| 13:35:59 | 10 | Hopefully we can issue them just to the U.S. entity and |
| 13:36:05 | 11 | obtain any information we need.  If we don't, we will move |
| 13:36:07 | 12 | forward with the overseas efforts.  And we will hold off |
| 13:36:10 | 13 | on any depositions until after the Markman hearing, as |
| 13:36:13 | 14 | your Honor has indicated. |
| 13:36:13 | 15 | THE COURT:  Now, of course, if -- and that -- and |
| 13:36:16 | 16 | by the way, that is sort of a generic concern.  If you |
| 13:36:21 | 17 | were to find out, for some reason, that you needed to take |
| 13:36:26 | 18 | some -- actually take some kind of discovery because it |
| 13:36:31 | 19 | might not still exist, you know, if there's a person that |
| 13:36:34 | 20 | might no longer be with Sony, for example, or I guess |
| 13:36:41 | 21 | worse situation.  But if there's any need to take |
| 13:36:42 | 22 | discovery because there's no -- it may not be available |
| 13:36:44 | 23 | after the Markman, just, you know, try and work that out |
| 13:36:48 | 24 | yourselves.  But if you can't, certainly bring it to my |
| 13:36:50 | 25 | attention, and on a micro level, I'm happy to deal with |

```
13:36:54  1  any issues you all have of whether or not to allow
13:36:57  2  discovery.  But I will probably always err on the side of
13:37:01  3  making sure that the discovery is able to be taken.
13:37:04  4          But for the generic discovery that, Mr. Guaragna,
13:37:08  5  you're talking about, hopefully my plan works.  If you
13:37:12  6  find, by the way, that there is some problem that's kind
13:37:17  7  of baked in that I'm just missing, please let me know
13:37:22  8  because, as I think everyone on the call knows, my goal is
13:37:26  9  to make this as user or lawyer-friendly as possible, and
13:37:32 10  if something I'm not allowing you to do or allowing you to
13:37:37 11  do, or we need to do it some other way that's more
13:37:39 12  efficient for you all, that is my ultimate goal.
13:37:43 13          So that was Mr. Guaragna.  Does Ms. Chen need to
13:37:51 14  take up anything for her client?
13:37:53 15          MS. CHEN:  Yes.  Thank you, your Honor.
13:37:54 16          So I think here, we have the exact situation that
13:37:59 17  you're talking about where it is a unique situation, and
13:38:03 18  we would ask to take discovery and depositions before
13:38:07 19  Markman for certain foreign entities and the foreign
13:38:13 20  inventor.
13:38:13 21          And so, if I can give you some of the facts so
13:38:15 22  you understand the situation here, we have an entity
13:38:20 23  called Neonode, Inc., and that entity was original
13:38:25 24  assignee of the patents when they were issued.  Neonode,
13:38:29 25  Inc. is located in Sweden, and it still has profit-sharing
```

13:38:33  1    rights with monetization of these patents.  So Neonode has

13:38:37  2    at least six foreign subsidiaries and various joint

13:38:42  3    ventures.  They range from places in Japan and South

13:38:45  4    Korea, Taiwan and Sweden.

13:38:47  5          And from looking at the public documents so, for

13:38:50  6    example, Neonode, Inc.'s 10-K, it looks like some of these

13:38:54  7    entities have rights to develop and license touchscreen

13:38:58  8    technologies.  But to be honest, it's just a hodgepodge of

13:39:01  9    foreign entities, and we can't figure out who does what

13:39:04  10   from just looking at the public documents.

13:39:05  11         And so, what we had is this multiple layer of

13:39:11  12   entity -- foreign entity discovery.  We have to first

13:39:14  13   conduct the discovery to figure out which entities are --

13:39:18  14   have which rights.  And then, we have the second layer of

13:39:21  15   foreign discovery to obtain licensing assignment and

13:39:29  16   conception, valuation documents.  And so, if we were to

13:39:31  17   start in April on the depositions, I just don't think we

13:39:36  18   have enough time within a seven-month period of discovery.

13:39:40  19         So for the entities, we would ask to take the

13:39:43  20   depositions and collect documents in advance.  So

13:39:49  21   separately, we also have --

13:39:51  22              THE COURT:  Let me --

13:39:53  23              MS. CHEN:  -- the coinventor -- okay.

13:39:54  24              THE COURT:  Let me hear if there's any objection

13:39:56  25   to that from the plaintiff.

| | | |
|---|---|---|
| 13:40:02 | 1 | MR. GRAVES:  Yes.  Thank you, your Honor. |
| 13:40:03 | 2 | This is Phil Graves. |
| 13:40:05 | 3 | We do object for several reasons.  First, it's |
| 13:40:09 | 4 | not accurate to suggest that Neonode, Inc. is a foreign |
| 13:40:15 | 5 | entity.  It's actually a Delaware corporation with a place |
| 13:40:19 | 6 | of business in San Jose, California.  Second, you know, |
| 13:40:25 | 7 | the ownership -- it's a little unclear what bearing any |
| 13:40:30 | 8 | information concerning ownership or licensing would have |
| 13:40:33 | 9 | on any issues that need to be addressed prior to the |
| 13:40:37 | 10 | Markman. |
| 13:40:38 | 11 | We're fine with Apple commencing the process of |
| 13:40:43 | 12 | obtaining foreign discovery against, you know, whatever |
| 13:40:45 | 13 | foreign Neonode-affiliated entities they think may have |
| 13:40:51 | 14 | discoverable information.  But we just don't think it's |
| 13:40:54 | 15 | efficient to conduct depositions and undertake, you know, |
| 13:40:59 | 16 | significant intensive discovery on these issues prior to |
| 13:41:04 | 17 | the Markman. |
| 13:41:05 | 18 | So we do object to this request, but, you know, |
| 13:41:08 | 19 | we're fine commencing the process as Samsung has |
| 13:41:14 | 20 | requested, right, but we just don't think it's efficient. |
| 13:41:17 | 21 | And we don't think it's going to yield anything useful for |
| 13:41:21 | 22 | Apple to be, you know, running all over the world, taking |
| 13:41:23 | 23 | depositions of a bunch of entities that really are |
| 13:41:26 | 24 | unlikely to have any material information or evidence in |
| 13:41:31 | 25 | any event. |

13:41:31  1          THE COURT:  Well, let me ask this.  It sounds to

13:41:37  2   me like maybe the place to jump off on this is to allow

13:41:45  3   Apple to take a 30(b)(6) deposition of the United States

13:41:52  4   entity and we can -- and that person should be prepared to

13:41:57  5   tell us whether or not the information that they're

13:42:03  6   seeking with regard to licensing, and the other

13:42:05  7   assignments, and the other issues is available from

13:42:09  8   someone in the United States or whether or not everyone

13:42:13  9   will have to go to a foreign country to do that.

13:42:19  10         And then, it seems to me, we can make a more

13:42:23  11  informed decision at that point, the extent of dis --

13:42:26  12  whether or not we actually need to do discovery right now

13:42:29  13  or whether or not we just need to allow -- I need to allow

13:42:33  14  the defendant to lay the predicate, as it were, to get the

13:42:39  15  discovery done once the Markman takes place.

13:42:41  16         So, Ms. Chen, is there a downside to that I'm

13:42:47  17  missing?

13:42:48  18         MS. CHEN:  I don't see a downside.  That works

13:42:50  19  for us.

13:43:00  20         THE COURT:  What is the relationship -- and I'm

13:43:02  21  not asking a legal relationship.  Just if I were to allow

13:43:05  22  the deposition of that entity to take place, does the

13:43:07  23  plaintiff's counsel have the ability to coordinate that

13:43:12  24  kind of deposition or does -- or are they a pure third

13:43:17  25  party that -- what's the situation there?

13:43:19  1          MR. GRAVES:  Yes, your Honor.

13:43:22  2          Neonode, Inc. is a third party.  We are not

13:43:25  3  representing -- we are not counsel for Neonode, Inc.

13:43:29  4          THE COURT:  Okay.  Well, in that case, I'll allow

13:43:33  5  -- I will allow that discovery to take place.  I assume

13:43:40  6  that they will cooperate with what I'm asking to be done;

13:43:45  7  if not and if Apple needs to come back to the Court for

13:43:49  8  some kind of order, I'm happy to do that, as well.  Just

13:43:51  9  let me know.

13:43:52  10         So does that resolve that issue as far as

13:43:55  11 everyone's concerned?

13:43:58  12         MS. CHEN:  From Apple's side, yes, your Honor.

13:44:03  13         MR. GRAVES:  Yes, your Honor.

13:44:03  14         THE COURT:  Okay.  And, Ms. Chen, I interrupted

13:44:05  15 you earlier.  What is the next issue?

13:44:09  16         MS. CHEN:  Sure.

13:44:10  17         So it's similar in that the sole inventor of the

13:44:14  18 patent, someone named Magnus Goertz, is located in Sweden.

13:44:20  19         THE COURT:  Okay.

13:44:21  20         MS. CHEN:  And Neonode in this case has claimed a

13:44:25  21 priority date of May 25th, 2000.  The first patent in the

13:44:29  22 case was filed on December 10th, 2002.  And as far as

13:44:34  23 we've seen so far, Neonode hasn't produced any conception

13:44:38  24 or reduction to practice documents dating back to the May

13:44:42  25 25th, 2000 date.  We've asked Neonode to confirm that it's

13:44:47  1   produced all conception, reduction to practice documents,

13:44:50  2   and it says it has, but Mr. Goertz might have more.

13:44:55  3        So here, you know, again, we feel like we're put

13:44:59  4   in a distinct disadvantage by not being able to conduct

13:45:04  5   discovery of Mr. Goertz before the Markman, and we'd ask

13:45:08  6   to be able to take a deposition of him and be able to

13:45:12  7   collect documents because we need to prepare invalidity

13:45:16  8   contentions and understand this purported priority date

13:45:20  9   that goes back to 2000.

13:45:22 10        THE COURT:  Well, I'm not sure if the plaintiffs

13:45:26 11   have given you that date and they've acted in good faith,

13:45:29 12   in other words, if you have a lawyer on their side who is

13:45:33 13   -- who has represented to you what that date is, it seems

13:45:38 14   to me that you do your invalidity contentions based on

13:45:40 15   that, and if it turns out that in -- there wasn't a

13:45:44 16   good-faith basis for that to be made, then you can raise

13:45:47 17   that with me again.

13:45:48 18        Here's the only reason I say that is basically,

13:45:54 19   you know, I think you should get -- you're going to get

13:45:57 20   one opportunity to speak through deposition to the

13:46:02 21   inventor.  And so, you know, if you -- if I were to allow

13:46:06 22   you to take the deposition of the inventor now, that would

13:46:10 23   be your -- you know, your one opportunity.  And that may

13:46:13 24   be fine with you, and if it is -- and it sounds to me like

13:46:19 25   you'll probably be doing it by Zoom, then I'm open to

13:46:22  1    hearing that, as well.

13:46:24  2         But with the understanding that this would be the

13:46:30  3    only deposition that would be allowed of the inventor,

13:46:32  4    what would -- what would your preference be?

13:46:37  5         MS. CHEN:  Well, with that understanding, that

13:46:38  6    what I would ask for is for the May 25th, 2000 date to be

13:46:48  7    -- to be stricken, quite honestly, because we don't have

13:46:50  8    any of the documents, any documents at all from the

13:46:52  9    plaintiff to support that date.

13:46:55 10         And they've said that they've provided us with

13:46:57 11    all documents, but I believe the document that goes back

13:47:00 12    the farthest is May 2001.  And so, without any documents

13:47:05 13    that support that early date, then it's really hard for us

13:47:10 14    to be able to prepare our case and our defense with a date

13:47:13 15    that has no support.

13:47:16 16         THE COURT:  Well, how about -- how about this.

13:47:21 17    My recollection was that -- my recollection is that it was

13:47:28 18    a legitimate 30(b)(6) topic to -- a legitimate 30(b)(6)

13:47:37 19    topic for someone to ask for that they -- the plaintiff

13:47:41 20    produce someone who would testify and bind the company

13:47:44 21    with respect to the date of conception.  What if I allowed

13:47:48 22    you to have a deposition of a 30(b)(6) witness -- I can't

13:47:53 23    imagine it would take longer than an hour -- of the

13:47:56 24    plaintiff who you would then have a 30(b)(6)

13:48:00 25    representative who would be telling you what they believe

13:48:03  1  the date of conception to be, and we would go from there.

13:48:07  2          MS. CHEN:  That works for us.  Thank you, your

13:48:09  3  Honor.

13:48:09  4          MR. GRAVES:  Your Honor, might I respond?

13:48:12  5          THE COURT:  Yes, sir.

13:48:13  6          MR. GRAVES:  So the -- so, first of all, the date

13:48:18  7  that we've provided in our disclosure of preliminary

13:48:22  8  infringement contentions and priority date does have a

13:48:25  9  good-faith basis.  We have informed defense counsel that

13:48:31  10  the plaintiff here, Neonode Smartphone, has produced all

13:48:36  11  materials in its possession, custody or control that

13:48:40  12  evidence conception or reduction to practice.  That has

13:48:45  13  been done.

13:48:45  14          But Neonode Smartphone does not control the

13:48:52  15  inventor, Mr. Goertz.  So we've also informed defense

13:48:56  16  counsel, Mr. Goertz may have additional materials that

13:49:03  17  bear on conception or reduction to practice and obviously

13:49:06  18  has information along those lines.  But again, since

13:49:11  19  Neonode Smartphone does not control Mr. Goertz and can't

13:49:16  20  necessarily obtain information from him, complete or

13:49:22  21  otherwise, that would enable it to respond to an inquiry

13:49:25  22  at a 30(b)(6) deposition, you know, it doesn't appear to

13:49:30  23  me that that would be, you know, the most effective way to

13:49:35  24  get at these issues.  I mean, we're --

13:49:39  25          THE COURT:  Well, don't you have -- you just said

13:49:43  1  you had provided to defendants a good-faith basis.  And my

13:49:48  2  sense of what you would be saying, if I were in your

13:49:51  3  shoes, is that we've given them the best date we have, but

13:49:56  4  it could very well be that they get -- that when the

13:50:01  5  inventor talks, it could be an even earlier date because

13:50:04  6  he might be able to say -- to have additional information.

13:50:07  7       Is that what you're saying?

13:50:09  8       MR. GRAVES:  That's certainly one aspect of what

13:50:13  9  I'm saying.  Yes, your Honor.

13:50:15  10       THE COURT:  Well, in that case, you know, it

13:50:21  11  seems to me that we probably ought to allow the defendant

13:50:25  12  to take a deposition, if they could get one arranged, with

13:50:28  13  the inventor to find out what he's going to say about the

13:50:33  14  invention date.  Because if the only thing the plaintiff

13:50:36  15  is able to do is give a good-faith effort and I'm forcing

13:50:42  16  the defendants to give invalidity contentions, it seems to

13:50:48  17  me that they ought to have the benefit of that information

13:50:49  18  from the inventor.

13:50:51  19       And by the way, I understand what you're saying

13:50:53  20  about the 30(b)(6) and I wouldn't want someone -- I

13:50:57  21  wouldn't want to force you to have a 30(b)(6) from a

13:50:59  22  witness who, you know, really would feel uncomfortable

13:51:03  23  because he doesn't have any better information than what

13:51:06  24  y'all have.

13:51:06  25       So what is your proposal for a solution to this

| | | |
|---|---|---|
| 13:51:10 | 1 | before I tell you what mine is? |
| 13:51:16 | 2 | MR. GRAVES:  Well, your Honor, so -- you know, |
| 13:51:19 | 3 | it's plaintiff's perspective that, you know, that |
| 13:51:25 | 4 | testimony regarding the conception and reduction to |
| 13:51:27 | 5 | practice doesn't really bear on the issues to be addressed |
| 13:51:30 | 6 | at claim construction.  The claim construction should just |
| 13:51:33 | 7 | go forward, construing the claims based on the intrinsic |
| 13:51:37 | 8 | and whatever extrinsic evidence bears on those issues. |
| 13:51:42 | 9 | But with respect to, you know, the issue of a |
| 13:51:45 | 10 | 30(b)(6) versus a declaration or a deposition, rather, of |
| 13:51:48 | 11 | Mr. Goertz, you know, it would be our position that a |
| 13:51:51 | 12 | 30(b)(6) would be fundamentally unfair to the plaintiffs |
| 13:51:57 | 13 | due to constraints on the plaintiff's ability to obtain |
| 13:52:01 | 14 | complete information regarding the evidence -- |
| 13:52:04 | 15 | THE COURT:  Well, let me interrupt you because |
| 13:52:06 | 16 | maybe I wasn't clear. |
| 13:52:07 | 17 | I'm not going to make -- I get that.  I'm not |
| 13:52:10 | 18 | going to make you do a 30(b)(6).  So I'm trying to figure |
| 13:52:12 | 19 | out -- I'm trying to figure out what an alternate method |
| 13:52:15 | 20 | is because I do think that -- I do think that the |
| 13:52:23 | 21 | defendants ought to have a reliable date.  And if you've |
| 13:52:29 | 22 | given them a date, but you can't provide them in good |
| 13:52:34 | 23 | faith -- I'm going to assume it is.  But if you can't |
| 13:52:36 | 24 | provide to them any information -- unless you have and you |
| 13:52:42 | 25 | could tell me if you have -- that backs that date up, then |

13:52:46  1   it seems to me that the person -- only person that really

13:52:50  2   has that information is the inventor, and we might need to

13:52:53  3   have him -- if he will make himself available, we might

13:52:57  4   need to have him deposed.

13:53:00  5          MR. GRAVES:  And, your Honor, we or plaintiff

13:53:02  6   would not oppose, you know, efforts to obtain a deposition

13:53:08  7   of Mr. Goertz, of course, as long as, you know, all

13:53:12  8   parties are provided an opportunity to ask some questions

13:53:19  9   at that deposition.

13:53:20  10          THE COURT:  Well, I think that's -- you know,

13:53:23  11   maybe I've been off the bench too long, but that's my

13:53:26  12   recollection of how these things work.  So -- unless they

13:53:31  13   changed the rules and I missed it.  So yes.  If we're

13:53:35  14   going to go the deposition route, yes, everyone would get

13:53:40  15   to ask questions.

13:53:44  16          So it sounds to me like we have a suggestion from

13:53:48  17   the defendant and no opposition from the plaintiff.  And

13:53:52  18   so, that being said, I'm not sure exactly, Ms. Chen, how

13:53:56  19   you go about arranging this deposition of the inventor,

13:54:01  20   but I will tell you that, as far as I'm concerned, you are

13:54:04  21   free to do so.

13:54:06  22          MS. CHEN:  Thank you, your Honor.

13:54:07  23          One clarification.  So with that, are we still

13:54:12  24   limited to just the one deposition of the inventor?

13:54:16  25          THE COURT:  You know, number one, I'm not sure

13:54:18  1  that you'll be able to persuade this guy to give you one,

13:54:21  2  to begin with.  And so, what I would suggest you do is

13:54:29  3  make this a full deposition of him, since he's -- unless

13:54:34  4  -- let me start over.

13:54:35  5       If you could get in agreement that you think you

13:54:39  6  could trust and rely on that he would make himself

13:54:43  7  available again -- I'm assuming this will be by Zoom.  If

13:54:46  8  you can get an agreement from him that you're sanguine

13:54:50  9  with that he would appear again, then I would limit the

13:54:54  10  deposition to just the issues of -- you're worried about

13:55:00  11  with the date of conception.

13:55:03  12       If you have a legitimate concern that he might

13:55:08  13  not voluntarily appear again, then you are free to ask him

13:55:12  14  whatever questions you can ask, and then, we'll just deal

13:55:15  15  -- I will not say right now that I'm going to prohibit you

13:55:18  16  from taking the deposition.  All I'm saying is, you know,

13:55:24  17  you may or may not -- you know, he may or may not agree to

13:55:26  18  do it.  But I would allow in this situation another

13:55:28  19  deposition.

13:55:29  20       MS. CHEN:  Thank you, your Honor.

13:55:33  21       THE COURT:  Any other issues we need to take up?

13:55:37  22       MS. CHEN:  Yes, your Honor.  Sorry.  If I could

13:55:38  23  indulge you with one more issue.

13:55:41  24       So --

13:55:43  25       THE COURT:  Okay.

13:55:44  1      MS. CHEN:  -- the issue is this.  So these

13:55:46  2  patents in the suit are user interface patents.  So, for

13:55:50  3  example, one of the patents, the 879 patent, Neonode has

13:55:58  4  accused glide or swipe typing, and the Apple iPhone, the

13:56:01  5  feature's called QuickPath.  And what happens is when you

13:56:04  6  open up the keyboard, you can create words by moving your

13:56:07  7  finger across the keyboard without ever lifting your

13:56:11  8  finger up.

13:56:12  9      So that's a feature that Apple developed and

13:56:14  10  created.  It's native to the phones when you buy them.

13:56:18  11  Neonode has accused and allegedly charted this.  But what

13:56:22  12  Neonode has also done is it's accused ten apps that are

13:56:28  13  entirely created by third parties, and it hasn't charted a

13:56:32  14  single one of them.

13:56:33  15      So all it's done is, it's included one screen

13:56:35  16  shot for one app keyboard, and that's for one single

13:56:40  17  limitation; and then, it just concludes that the program

13:56:44  18  code for all third parties' swipe-typing apps cause the

13:56:48  19  accused devices -- and I'm reading here -- to function in

13:56:50  20  the same manner.  And that's really just not enough for us

13:56:54  21  to understand what they're accusing here.

13:56:58  22      Before this call, I downloaded one of the

13:57:03  23  third-party apps that's called FancyKey, and it gives me

13:57:05  24  all these cute-colored keyboards with emojis, but they're

13:57:09  25  twelve keyboards and I can't tell how Neonode would accuse

13:57:13  1    this at all without any charts.

13:57:15  2          So in our meet-and-confer and in the papers that

13:57:17  3    we filed this morning, Neonode'a saying that even if it

13:57:21  4    supplements, the charts would all be the exact same for

13:57:25  5    all the various apps.  But all the various apps have

13:57:27  6    different keyboards, different user interfaces.  And so,

13:57:30  7    if Neonode is saying that even if it supplements, it would

13:57:36  8    still be the same, then we would argue that the

13:57:39  9    supplementation would be futile, and we'd ask to strike

13:57:42  10   the contentions accusing the third-party apps.

13:57:46  11          THE COURT:  Well, let me say -- let me address

13:57:49  12   that.  It's rare -- it's rare that I ever, in advance, say

13:57:58  13   that I'm going to strike something that hasn't been seen

13:58:02  14   yet.  So if the plaintiff has offered to provide you with

13:58:07  15   those infringement contentions and as officers of the

13:58:12  16   court, they are going to rely on them, they can send you

13:58:17  17   those infringement contentions.

13:58:19  18          If we get further down the road in the litigation

13:58:24  19   and, for some reason, you have -- you have -- if you

13:58:26  20   develop some reason to believe those infringement

13:58:29  21   contentions were not done in good faith, then we'll take

13:58:34  22   it up at that point.

13:58:37  23          The point here being this is one where I do agree

13:58:40  24   with the plaintiff, which is, these are, number one,

13:58:43  25   preliminary claim constructions and, number two, they

13:58:47  1  don't have anything really to do with the Markman process.

13:58:53  2  I mean, whether or not something infringes, I know the

13:58:58  3  lawyers like to have it so that they can cobble together

13:59:02  4  issues to be taken up at the Markman so they can come up

13:59:08  5  with possible claim constructions that might or might not

13:59:11  6  get them out of infringement.  That's all fine, but that's

13:59:15  7  really not the reason we do Markmans.

13:59:18  8        But if the plaintiff has volunteered to give you

13:59:22  9  infringement contentions for the accused apps, I'm going

13:59:28  10 to let them, and then, we'll see what happens, whether or

13:59:33  11 not they're done in good faith or not.  At this time, I'm

13:59:35  12 certainly going to assume that they will be.

13:59:37  13       Is there anything else?

13:59:42  14       MR. GUARAGNA:  Not from Samsung, your Honor.

13:59:45  15       MS. CHEN:  Not from Apple --

13:59:48  16       MR. GRAVES:  Not from --

13:59:48  17       THE COURT:  I just had a --

13:59:51  18       MR. GRAVES:  Not from the plaintiff.

13:59:51  19       THE COURT:  I heard someone give a very loud

13:59:54  20 sigh, so that must mean we're close to being done.

13:59:59  21       So it sounds like we're done.  For purposes of

14:00:04  22 the people who I'm currently talking to, I hope you have a

14:00:07  23 wonderful weekend.  Be safe out there.  I'm going to stay

14:00:10  24 on this call because I think we have another call at 2:00.

14:00:13  25 But everyone who has been involved in this current hearing

| | | |
|---|---|---|
| 14:00:17 | 1 | is welcome to drop off.  And I hope I get to see at least |
| 14:00:21 | 2 | some of you in person in the very near future.  Take care. |
| 14:00:25 | 3 | MR. GRAVES:  Thank you, Judge. |
| 14:00:26 | 4 | MS. CHEN:  Thank you, your Honor. |
| 14:00:27 | 5 | MR. GUARAGNA:  Thank you, your Honor. |
| 14:00:27 | 6 | (Proceedings concluded.) |
| 14:00:27 | 7 | |
| | 8 | |
| | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1                          *  *  *  *  *  *

2

3   UNITED STATES DISTRICT COURT  )

4   WESTERN DISTRICT OF TEXAS)

5

6       I, LILY I. REZNIK, Certified Realtime Reporter,

7   Registered Merit Reporter, in my capacity as Official

8   Court Reporter of the United States District Court,

9   Western District of Texas, do certify that the foregoing

10  is a correct transcript from the record of proceedings in

11  the above-entitled matter.

12      I certify that the transcript fees and format comply

13  with those prescribed by the Court and Judicial Conference

14  of the United States.

15      WITNESS MY OFFICIAL HAND this the 30th day of October,

16  2020.

17

18                                  /s/Lily I. Reznik
                                    LILY I. REZNIK, CRR, RMR
19                                  Official Court Reporter
                                    United States District Court
20                                  Austin Division
                                    501 W. 5th Street,
21                                  Suite 4153
                                    Austin, Texas 78701
22                                  (512)391-8792
                                    SOT Certification No. 4481
23                                  Expires:  1-31-21

24

25