# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **NEONODE SMARTPHONE LLC,**<br>　　*Plaintiff,* | §<br>§<br>§ | |
| *v.* | §<br>§ | 6-20-CV-00505-ADA |
| **APPLE INC.,**<br>　　*Defendant.* | §<br>§<br>§<br>§ | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Apple Inc.'s ("Apple") Motion to Transfer venue (ECF No. 27) to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). After careful consideration of the parties' briefs and the applicable law, the Court **DENIES** Apple's motion.

## **I. BACKGROUND**

Plaintiff Neonode Smartphones LLC ("Neonode") filed this lawsuit against Apple on June 8, 2020, alleging infringement of U.S. Patent Nos. 8,095,879 and 8,812,993 (the "Asserted Patents"). ECF No. 1. On the same day, Neonode filed another lawsuit against Samsung Electronics Co. Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung), asserting the same two patents. *See Neonode Smartphone LLC v. Samsung Elecs. Co. Ltd*., No. 6-20-cv-00507-ADA, Dkt. #1 (Jun. 8. 2020). Apple filed the instant Motion to Transfer under 28 U.S.C. § 1404(a), requesting that this case be transferred from the Western District of Texas ("WDTX") to the NDCA. ECF No. 27. The Motion has been subsequently fully briefed by the parties. ECF Nos. 52 (Response) and 59 (Reply).

1

Neonode is a Wyoming limited liability company with its principal place of business also in Wyoming. ECF No. 1 at ¶ 6. Apple is a California corporation headquartered in Cupertino, California, which is in the NDCA. ECF No. 27 at 3. Apple also has one of its largest corporate campuses in Austin, Texas, within the WDTX, "with approximately 7,000 employees in the City" as of November 20, 2019.[1] *See also* ECF No. 1 at ¶ 7.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a

---

[1] https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/

2

case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *In re Vistaprint Ltd.,* 628 F.3d at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III. ANALYSIS

The threshold determination under the Section 1404 analysis is whether this case could initially have been brought in the transferee venue—here, the NDCA. Neither party contests that

3

venue is proper in the NDCA and that this case could have been brought there. Thus, the Court proceeds with its analysis of the private and public interest factors as provided in *Volkswagen I*.

**A. Private Interest Factors**

*i. The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). Witnesses are not sources of proof to be analyzed under this factor; rather, analyses pertaining to witnesses are assessed under the second or third private factors. *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020) ("This factor relates to the ease of access to non-witness evidence, such as documents and other physical evidence."); *Netlist, Inc. v. SK hynix Inc. et al*, No. 6:20-cv-00194-ADA, Dkt. #87 at 11 (W.D. Tex. Feb. 2, 2021) ("The first private factor, ease of access to sources of proof, considers 'documents and physical evidence' *as opposed to witnesses.*") (emphasis added).

Although the physical location of electronic documents does affect the outcome of this factor under current Fifth Circuit precedent (*see Volkswagen II*, 545 F.3d at 316), this Court has stressed that the focus on physical location of electronic documents is out of touch with modern patent litigation. *Fintiv*, 2019 WL 4743678, at *8; *Uniloc 2017 LLC v. Apple Inc.,* 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020) ("[A]ll (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party [can] produce[] these documents" and make them available at almost any location.). Other courts in the Fifth Circuit similarly found that access to documents that are

4

available electronically provides little benefit in determining whether a particular venue is more convenient than another. *See, e.g., Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-642-JRG, 2017 U.S. Dist. LEXIS 229560, at *17 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms."); *see also LBS Innov'ns LLC v. Apple Inc*., 2020 WL 923887, at *5 (E.D. Tex. Feb. 26, 2020).

Apple contends that the research, design, and development of the accused technology in the accused products took place in the NDCA and the relevant key documents were generated in the NDCA. ECF No. 27 at 9-10. Apple does not contend that those documents are electronically stored and can be accessed outside the NDCA, including in the WDTX. Instead, Apple contends that its "electronically-stored information is only accessible to employees 'with the proper credentials' on a need-to-know basis." ECF No. 59 at 1. However, Apple does not show that the "proper credentials" have not been or cannot be given to Apple employees located in Austin, Texas for the purpose of this litigation or in general. If anything, cooperating in discovery in a litigation would be a good "need-to-know" basis to provide the proper credentials to Apple's employees located in this District.

Apple further contends that its relevant employees are all based in the NDCA and "likely witnesses . . . concerning the marking, sales and financial information for the Accused Products" are located there. ECF No. 27 at 10. However, Courts have made it clear that analyses related to witnesses are not proper under this factor and should instead be considered in the second and third

5

private factors. *See, e.g., In re Apple Inc.*, 979 F.3d at 1339. In view of the above, the Court finds that this factor is neutral.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

For this factor, the Court considers particularly non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316); *Uniloc*, 2020 WL 3415880, at *10. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014). Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). As party witnesses almost invariably attend trial willingly, "[w]hen no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-cv-00513 (W.D. Tex. Mar. 17, 2020) (citation omitted).

Apple generally contends that "most of the key relevant third parties" are located in NDCA, including those from Neonode's parent company Aequitas Technologies, its prosecution counsel Soquel Group, and Neonode Inc., the original assignee of the Asserted Patents. ECF No. 27 at 10. Neonode counters that none of the pertinent personnel associated with these entities works or resides in NDCA—they all reside outside of the United States, with the only exception of Anuj Arora, Aequitas' Director of Engineering, who resides in the Central District of California

6

("CDCA") and is willing to travel to WDTX for this case. ECF No. 52 at 5. Further, the sole inventor of the Asserted Patents, Magnus Goertz, resides in Sweden and is outside of the subpoena power of either the NDCA or WDTX. *Id*. at 6. Apple does not dispute these facts. Instead, Apple further asserts that GBoard and Swype, the two third-party apps name in Neonode's Complaint, are offered by Google Inc. (which is headquartered in the Mountain View, California, in the NDCA) and Nuance Communications (which is based in Boston, Massachusetts but has offices in the CDCA and NDCA), respectively, and that "Neonode will be required to subpoena Google and Nuance." ECF No. 27 at 6 and 11; No. 59 at 3. First, just as the convenience of a plaintiff's willing witnesses should be given little weight, the plaintiff's choice of seeking evidence from third parties should also be given little weight. *See Netlist*, No. 6:20-cv-00194-ADA, Dkt. #87 at 13. When Neonode chose to file this case in the WDTX, it has already taken into consideration that it would need to seek evidence from third parties outside of this District, such as Google and Nuance.

Second, Apple identifies no specific Google or Nuance witnesses other than making a general allegation that "compulsory process over Google and Nuance is available in NDCA, but not in WDTX." ECF No. 59 at 3. However, such general allegations are not enough. *See, e.g., Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*, No. 6:12-cv-100 LED-JDL, 2013 WL 682849, at *3 (E.D. Tex. Feb. 22, 2013) ("The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum."); *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.,* 2010 WL 1170976, at *3 (W.D. Tex. Mar. 23, 2010) ("A party seeking a transfer of venue must do more than make general allegations that key witnesses are unavailable or are inconveniently located."); 15 Wright, A. Miller & E. Cooper, Fed. Prac. & Proc. § 3851 (3d ed. 2007) ("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without

7

identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the application for transferring the case should be denied."). Therefore, the Court finds that this factor is also neutral.

### iii. The Cost of Attendance for Willing Witnesses

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 WL 4743678, at *6. "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist*, No. 6:20-cv-00194-ADA, Dkt. #87 at 13; *see also Moskowitz Family LLC v. Globus Med., Inc.*, No. 6:19-cv-00672-ADA, 2020 WL 4577710, at *4 (W.D. Tex. Jul. 2, 2020).

As a preliminary matter, given typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in Section 1404(a) briefing will testify at trial. *Fintiv*, 2019 WL 4743678, at *6. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial. *Id.* Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor. *Id.*

Apple's main argument for this factor is that its employee witnesses are located in NDCA and provides a list of its employees as potential witnesses who might testify at trial. ECF No. 27 at 3-4 and 11-12. In response, Neonode provides a competing list of Apple employees located in WDTX that might testify at trial for the same aspects of the accused products at a trial. ECF No. 52. As this Court has made clear, "the convenience of party witnesses is given little weight." *SynKloud Techs., LLC v. Dropbox, Inc.*, No. 6:19-CV-00526-ADA, 2020 WL 2528545, at *5 (W.D. Tex. May 18, 2020); *see also Turner v. Cincinnati Ins. Co.*, 2020 WL 210809, at *4 (W.D. Tex. Jan. 14, 2020) ("[Defendant] cannot cite inconvenience of its employee witnesses as the basis

8

for transfer."). Further, when party witnesses located in this District are equally qualified and available to testify as witnesses located in a different district, the party cannot say that this District is inconvenient for its employee witnesses simply because it "choses" to call those witnesses outside of this District.

As for non-party witnesses, whose convenience should be given relatively more weight than party witnesses, Apple does not dispute that potential third-party witnesses from Aequitas, Neonode Inc, and Soquel Group all reside outside of the Unites States, with the sole exception of Mr. Arora, who resides in the CDCA. *See* ECF No. 52 at 5-6 and 10. Among those, the sole inventor of the Asserted Patents, Mr. Goertz, resides in Sweden, and the patent agent who prosecuted the Asserted Patent, Marc Berger, resides in Israel. *Id*. Apple contends that NDCA would be "more or equally convenient" for third-party witnesses since at least flights from Stockholm to San Francisco are fasters than Stockholm to Waco. ECF No. 27 at 12. The Court is not persuaded that traveling from Sweden or Israel to San Francisco would be cheaper or more convenient than to Waco, Texas. Any differences between the travel time and costs to the two destinations would be insignificant compared to the actual time and effort required for the international travels. If anything, hotels in Waco are significantly cheaper on average than those in San Francisco. *See Netlist*, No. 6:20-cv-00194-ADA, Dkt. #87 at 13 (finding no significant difference between traveling from South Korea to Santa Ana, California and from South Korea to Waco, Texas). Accordingly, this Court finds that this factor is also neutral.

### *iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may

9

create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

Neonode contends that this factor weighs heavily against transfer because of the co-pending Samsung case involves the same two asserted patents and very similar accused technologies. ECF No. 52 at 10-11. Neonode also points out that while Apple has moved to transfer this case to the NDCA, Samsung has not.[2] Apple counters that this case and the Samsung case are separate cases and "the only issue that can truly be jointly decided is claim construction." ECF No. 27 at 13 and No. 59 at 3-4. The Court's disagrees with Apple's downplay of how much judicial resources could have been saved if this case and the Samsung cases are decided together in this Court. First, claim construction is one of the most important issues in a patent infringement case and can potentially determine the outcome of a case and guide the parties in determining whether to settle or bring the case to trial. Both the parties and the Court would spend a significant amount of time and money on the claim construction briefing, hearing, and order. For the claim construction issue alone, a significant amount of judicial resources can be saved if the two cases are decided together. Further, if the Apple case is transferred to NDCA and the Samsung case remains in this Court, the parties would face the risk of inconsistent constructions of the same claim terms from two district courts, which could unfairly prejudice the parties. Second, since the

---

[2] The Court notes that while Samsung has not filed a motion to transfer the Samsung case out of the WDTX, it filed a notice on May 4, 2021 in the Samsung case that it does not oppose to Apple's Motion to Transfer in this case. *Neonode Smartphone LLC v. Samsung Elecs. Co. Ltd.*, No. 20-cv-00507-ADA at Dkt. #47. The Court does not think the notice filed in the Samsung case affects the Section 1404(a) analysis in this case.

10

same two patents are asserted, the invalidity issue of the two patents will significantly overlap, if not identical, in the Apple and Samsung cases. Lastly, as a general practice, this Court customarily requires parties in related cases to coordinate all aspects of the cases until pre-trial, which would further save judicial resources and facilitate expeditious resolution of both cases. *See* ECF No. 52 at 12.

Therefore, the Court finds that this factor strongly weighs against transfer. This is in accordance with the Supreme Court's observation that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960); *see also In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("Judicial economy is served by having the same district court try … cases involving the same patents."); *In re Vistaprint*, 628 F.3d at 1346 (noting that "co-pending litigation before the trial court involving the same patent and underlying technology" provides "substantial justification" for denying transfer).

**B. Public Interest Factors**

*i. Administrative Difficulties Flowing from Court Congestion*

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). A faster average time to trial means a more efficient and economical resolutions of the claims at issue. Thus, this factor "generally favors a district that can bring a case to trial faster." *Found. Med., Inc. v. Guardant Health, Inc.*, 2017 WL 590297, at *3 (E.D. Tex. Feb. 14, 2017).

Apple alleges that patent cases in the NDCA "have a slightly shorter time to trial than W.D. Tex. – since 2008, a median of 2.39 versus 2.59 years," and that "this Court has a large (and rapidly

11

increasing) number of patent cases currently pending in Waco," while judges in the NDCA have far fewer. ECF No. 27 at 14. However, more recent data shows that "for patent cases since 2016, the average time to trial in NDCA was 34.1 months." *Demaray LLC v Samsung Electronics Co., et al.*, No. 6-20-cv-636-ADA, Dkt. #115 at 11 (W.D. Tex. Jul. 1, 2021). By contrast, this Court's Order Governing Proceedings – Patent Case ("OGP") sets patent cases for trial at 52 weeks after *Markman* hearings. Despite the large number of cases pending before this Court, the Court has been able to bring patent cases to trial approximately in accordance with its guidance in the OGP. *See, e.g., CloudofChange, LLC v. NCR Corporation*, No. 6-19-cv-00513 (W.D. Tex., filed Aug. 30, 2019) (20.3 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No. 6-21-cv-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-cv-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-cv-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial). Therefore, the time to trial for patent cases in the Waco Division is almost 12 months shorter on average than in the NDCA.

Further, the trial backlog in NDCA caused by courthouse closures due to the COVID-19 pandemic beginning in March 2020 would make the time to trial for patent cases, and all cases in general, even longer. As Apple points out, civil trials have been temporarily suspended in NDCA due to COVID-19, and jury trials would not resume until at least June 3, 2021—after more than one year since the COVID-19 pandemic began. ECF No. 59 at 5. By contract, this Court conducted its first patent jury trial during the COVID-19 pandemic in October 2020, and has since conducted at least seven jury trials, six of which are patent jury trials. In the first half of 2021 alone, this Court has already conducted five patent jury trials in the Waco courthouse. Taken these into

consideration, the differences in average time to trial in this Court and the NDCA could be much longer than 12 months.

Considering the relative court congestion in NDCA and in the Waco Division, the Court finds that this factor weighs strongly against transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015).

Apple argues that NDCA has a strong local interest in this matter because the research, design, development, and operation of the accused technology took place there, Apple is headquartered there, and all of its likely witnesses are there. ECF No. 27 at 15. On the other hand, Neonode points out that Apple also has significant presence in the WDTX, with over 6,000 employees in the Austin area and five retail stores located in this District. ECF No. 52 at 14. Although both districts have a significant interest in this matter, the Court finds that this factor slight favors transfer given Apple's relatively bigger presence in the NDCA.

### iii. Remaining Public Factors are Neutral

Both parties agree that the remaining two public factors are neutral. ECF No. 27 at 15; ECF No. 52 at 15. The Court also finds that these two factors are neutral.

13

## IV. CONCLUSION

Having considered the Section 1404(a) factors, the Court finds that Apple has not met its significant burden to demonstrate that the NDCA is "clearly more convenient" than this District. Therefore, the Court **DENIES** Apple's Motion to Transfer.

SIGNED this 19th day of July, 2021.

**ALAN D ALBRIGHT**
**UNITED STATES DISTRICT JUDGE**