**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| NEONODE SMARTPHONE LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 6:20-cv-00507-ADA |
| | § | |
| SAMSUNG ELECTRONICS CO. LTD, and | § | |
| SAMSUNG ELECTRONICS AMERICA, | § | **JURY TRIAL DEMANDED** |
| INC., | § | |
| Defendants. | § | |

## SAMSUNG'S OPENING CLAIM CONSTRUCTION BRIEF

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ................................................................................................................1

II. OVERVIEW OF THE ASSERTED PATENT .....................................................................1

III. LEVEL OF ORDINARY SKILL ........................................................................................3

IV. DISPUTED CLAIM TERMS ..............................................................................................3

    **A.** The preamble of claim 1 .........................................................................................3

    **B.** "the representation consists of only one option for activating the function" (claim 1) ...................................................................................................................5

        **1.** The claim language has at least three possible meanings. ..........................6

        **2.** The specification provides insufficient guidance. .....................................7

        **3.** The original prosecution history confirms the claims are indefinite. ..........8

        **4.** Plaintiff Neonode Smartphone increased the uncertainty over what this claim limitation means during the Google IPR. ..................................10

    **C.** "gliding" (claims 1, 12) / "the object gliding along the touch sensitive area" (claim 1) / "gliding the object along the touch sensitive area" (claim 12) ........................................................................................................................12

        **1.** Neonode's IPR statements render the claim terms indefinite. ..................13

        **2.** There is no basis in the intrinsic evidence to exclude a "drag and drop operation" from the "gliding" terms. .................................................17

    **D.** "tapping" / "selection of a preferred service or setting is done by tapping" (claim 3) ...................................................................................................................18

    **E.** "a shell upon an operating system" (claim 15) ....................................................19

V. CONCLUSION..................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
   672 F.3d 1335 (Fed. Cir. 2012)...................................................................................3, 4

*Aylus Networks, Inc. v. Apple Inc.*,
   856 F.3d 1353 (Fed. Cir. 2017).......................................................................................10

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
   289 F.3d 801 (Fed. Cir. 2002)...........................................................................................4

*Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*,
   958 F.3d 1348 (Fed. Cir. 2020)..........................................................................................4

*Infinity Computer Prod., Inc. v. Oki Data Americas, Inc.*,
   987 F.3d 1053 (Fed. Cir.), *cert. denied*, 211 L. Ed. 2d 364, 142 S. Ct. 585
   (2021)...............................................................................................................8, 10, 11, 12

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014).................................................................................5, 6, 14

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*,
   800 F.3d 1366 (Fed. Cir. 2015)................................................................................6, 7, 12

*Multilayer Stretch Cling Film Holdings, Inc. v. Barry Plastics Corp.*,
   831 F.3d 1350 (Fed. Cir. 2016)........................................................................................18

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014).............................................................................................. *passim*

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc).....................................................................8, 19

*Rowe v. Dror*,
   112 F.3d 473 (Fed. Cir. 1997)............................................................................................4

*Symantec Corp. v. Computer Assoc. Int'l, Inc.*,
   522 F.3d 1279 (Fed. Cir. 2008)..........................................................................................4

*TomTom, Inc. v. Adolph*,
   790 F.3d 1315 (Fed. Cir. 2015)..........................................................................................4

**Statutes**

35 U.S.C. § 112(d) ...............................................................................................................5

ii

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION | BATES Range |
|---|---|---|
| 1 | U.S. Patent No. 8,095,879 ("'879 patent") | NEONODE0002435-44 |
| 2 | Decl. of Andy Cockburn in Support of Defendants' Op. Cl. Constr. Brief | |
| 3 | '879 patent File History ("'879 FH"), 6/30/2010 Amendment | NEONODE0000534-44 |
| 4 | U.S. Patent App. Pub. No. 2002/0027549 ("Hirshberg") | 507SAM_00039805-24 |
| 5 | IPR2021-01041, Paper 29 ("POR") | 507SAM_00062040-126 |
| 6 | IPR2021-01041, Paper 50 ("Record of Oral Hearing") Excerpts | 507SAM_00065058-130 |
| 7 | IPR2021-01041, Paper 44 ("PO Sur-Reply") | 507SAM_00063004-43 |
| 8 | '879 FH, 8/23/2007 Amendment | NEONODE0000148-66 |
| 9 | IPR2021-00144, Paper 49 ("PO Sur-Reply") | 507SAM_00054418-58 |
| 10 | IPR2021-01041, EX1031 ("Rosenberg Tr.") Excerpts | 507SAM_00063686-742 |
| 11 | IPR2021-00144, EX2007 ("Rosenberg Decl.") | |
| 12 | '879 FH, 9/3/2008 Applicant Letter to Examiner | NEONODE0000273-95 |
| 13 | '879 FH, 2/22/2010 Amendment | NEONODE0000490-500 |
| 14 | IPR2021-01041, EX1044 ("Goertz Tr.") Excerpts | 507SAM_00061641-806 |
| 15 | '879 FH, 12/23/2008 Search Notes | NEONODE0000375-83 |
| 16 | '879 FH, 7/8/2009 Search Notes | NEONODE0000443-53 |
| 17 | IPR2021-00144, EX1053 ("Rosenberg Tr.") Excerpts | 507SAM_00054249-394 |
| 18 | U.S. Patent No. 7,240,296 ("Matthews") | 507SAM_00087822-50 |
| 19 | IPR2021-00144, Paper 55 ("Record of Oral Hearing") Excerpts | 507SAM_00052367-419 |

WEST/302382920

## I.     INTRODUCTION

Plaintiff Neonode seeks to impermissibly alter the scope of its claimed invention through claim construction.  The sole asserted patent, U.S. Patent No. 8,095,879 ("'879 patent"), recites one independent claim and 10 asserted dependent claims.  Neonode identified all five disputed claim terms for construction, with Samsung also identifying two of those same terms.  Neonode's attempt to "fix" its asserted claims to read them on the accused Samsung products while at the same time avoiding invalidating prior art should be rejected because: (1) only a portion of the preamble, not all of it, is limiting; (2) two of the claim terms should be afforded their plain meaning rather than the needlessly complex and improperly limiting constructions urged by Neonode; and (3) Neonode's inconsistent statements to the PTO regarding what its claims mean underscore the clearly indefinite nature of its claims.  Neonode is not entitled to now modify its claims through rehabilitating claim construction.

## II.    OVERVIEW OF THE ASSERTED PATENT

The '879 patent relates to a user interface for a mobile handheld computer that comprises a touch sensitive area that allows a user to navigate among simultaneously running applications.  Ex. 1 ('879 patent) at 1:6-12.  The '879 patent recognizes that mobile handheld computers "are known" and include mobile phones, personal digital assistants and laptop computers.  *Id.* at 1:24-33.  The patent also recognizes that touch sensitive displays are not inventive "and that the present invention does not depend on what kind of touch sensitive display is used."  *Id.* at 3:54-58.  The patent further acknowledges that running applications simultaneously is not inventive "and that the present invention does not depend on how this is realised."  *Id.* at 3:59-67.

The '879 patent instead asserts that the "user interface" is itself inventive.  *Id.* at Abstract; 3:50-58.  The annotated version of Figure 1 of the '879 patent reproduced below illustrates a "user interface" with "a touch sensitive area 1, which is divided into a menu area 2 and a display

1

area 3." *Id.* at 3:51-54.  Menu area 2 is "adapted to present <u>a representation</u> of a first 21, a

second 22 and a third 23 predefined <u>function</u>." *Id.* at 4:1-3 (emphasis added).



"FIG. 2 [below] shows that any one of these three functions 21, 22, 23 can be <u>activated</u>

when the touch sensitive area 1 detects <u>a movement</u> of an object 4 [*e.g.*, a finger] with its starting

point A <u>within the representation</u> of a function <u>on the menu area</u> 2 and <u>with a direction B from

the menu area 2 to the display area 3</u>." *Id.* at 4:7-11 (emphasis added), FIG. 2 (annotated).



The "object 4 can be a finger" or "a pen or other pointing device." *Id.* at 6:11-15.

In the embodiment described in the patent, the activated "first function 21 is a general

application dependent function" (*see* FIG. 3), the second function 22 is a keyboard function (*see*

2

FIG. 5), and the third function 23 is a task and file manager (*see* FIG. 6).  *Id.* at 4:4-6.  Using

Figure 3 as an example, once first function 21 is activated by touching the representation of that

function (the "+" icon in FIG. 1) with an object and moving the object away from the menu area

into the display area, "then the display area 3 is adapted to display icons 211, 212, 213, 214, 215,

216 representing services or functions."  *Id.* at 4:12-14.  The user then selects a particular service

or function by <u>tapping</u> on the icon, such as icon 213 in Figure 3.  *Id.* at 4:34-35.



*Id.* at FIGs. 3, 5, 6.

## III.    LEVEL OF ORDINARY SKILL

A person of ordinary skill in the art ("POSITA") would have had at least a bachelor's

degree in computer science or computer engineering, or the equivalent education, and at least

two years of experience in user interface design and development.  Additional years of

experience could substitute for formal education, and vice versa.  Ex. 2, Decl. of Andy Cockburn

in Support of Defendants' Op. Cl. Constr. Brief  ("Cockburn Decl.") at ¶ 35.

## IV.    DISPUTED CLAIM TERMS

### A.    The preamble of claim 1

| Defendants' Proposal | Neonode's Proposal |
|---|---|
| Preamble is limiting as to the term "a user interface," otherwise preamble is not limiting | Preamble is limiting as to the entirety of the preamble |

"[A]s a general rule preamble language is not treated as limiting."  *Aspex Eyewear, Inc. v.*

*Marchon Eyewear, Inc.*, 672 F.3d 1335, 1347 (Fed. Cir. 2012).  Instead, a preamble only "limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim," such as providing antecedent basis for the body of the claim.  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quotation marks omitted); *Symantec Corp. v. Computer Assoc. Int'l, Inc.*, 522 F.3d 1279, 1288 (Fed. Cir. 2008).

The preamble of claim 1 reads:

> A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, <u>the user interface comprising</u>:

Ex. 1 ('879 patent) at claim 1 (6:45-49) (emphasis added).

The entire preamble is not limiting because not every part of the preamble recites essential structure and because the entire preamble does not need to be limiting to give meaning to the claims.  Rather, as described above, the claimed invention is "the user interface" recited in the body of claim 1 and the preamble simply "state[s] a purpose or intended use" for that invention, which means the preamble is not limiting.  *Catalina*, 289 F.3d at 808 (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)).

The parties agree "a user interface" is limiting because it is the alleged invention. However, that does not mean the rest of the preamble is limiting.  *See Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348, 1355 (Fed. Cir. 2020) ("A conclusion that some preamble language is limiting does not imply that other preamble language, or the entire preamble, is limiting."); *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015) ("That the phrase in the preamble 'destination tracking system of at least one mobile unit' provides a necessary structure for claim 1 does not necessarily convert the entire preamble into a limitation, particularly one that only states the intended use of the invention.").

4

Notably, the claim 1 preamble terms "non-transitory computer readable medium" and "computer program" do not later appear in the body of any dependent claim.  And while the claim 1 preamble terms "mobile handheld computer unit" and "computer program code" appear in the bodies of dependent claims 6 and 15, respectively, the patentee's decision to recite those added requirements in only those two dependent claims rather than in claim 1 is consistent with the role of dependent claims, which is to <u>add</u> requirements not already imposed by an independent claim.  35 U.S.C. § 112(d) (a dependent claim "shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed").

**B.**     **"the representation consists of only one option for activating the function" (claim 1)**

| Defendants' Proposal | Neonode's Proposal |
| --- | --- |
| Indefinite. | "Plain meaning." |

This claim phrase is indefinite because a POSITA can read it to mean at least three conflicting things—and thus impose three different sets of requirements on accused products and prior art—and the intrinsic evidence fails to advise a POSITA with reasonable certainty which meaning is correct.  Indeed, Neonode itself has advanced at least two of these three meanings before the PTO—during original prosecution of the claims and during *inter partes* review ("IPR")—in order to circumvent different prior art.  It is therefore unsurprising that Neonode now suggests a "plain meaning" construction rather than articulate what this phrase means.

A claim is indefinite if its language, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).  Notably, "a patent does not satisfy the definiteness requirement of § 112 merely because 'a court can ascribe *some* meaning to a patent's claims.'"  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d

1364, 1371 (Fed. Cir. 2014) (quoting *Nautilus*, 134 S. Ct. at 2130) (emphasis in original).

Rather, the claims "must provide objective boundaries for those of skill in the art." *Id.*  Here,

claim 1 fails the definiteness requirement because the disputed claim language—which goes to

the heart of the claimed "interface"—"'might mean several different things and no informed and

confident choice is available among the contending definitions.'"  *Media Rights Techs., Inc. v.*

*Capital One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015) (quoting *Nautilus*, 134 S. Ct. at

2130 n. 8).

### 1.    The claim language has at least three possible meanings.

The phrase "the representation consists of only one option for activating the function" has

at least the following three possible meanings to a POSITA based upon the claim language:

(1) The representation represents a **single function** and there is only a **single option** to
    activate that function (*e.g.*, only one specific input gesture will activate that function);

(2) The representation may represent **multiple functions** but there is only a **single option**
    to activate one particular function (*e.g.*, only one specific input gesture will activate
    one function, but a different input gesture activates a second function); and

(3) The representation represents a **single function** and the claim allows **multiple
    options** to activate that function (*e.g.*, any input gesture will activate that function).

Ex. 2 (Cockburn Decl.) at ¶¶ 42-44.  These three possible meanings are illustrated below (where

"R" refers to representation, "f" refers to a function and "g" refers to a type of gesture):



The entire claim phrase reads: "a touch sensitive area in which a representation of a

function is provided, wherein the representation consists of only one option for activating the

WEST/302382920

function." Ex. 1 ('879 patent) at 6:50-52.  This claim language supports **meaning (1)** because: (a) the claim recites "the function" (in the singular) and a POSITA could read that language as referring to a single function; and (b) a POSITA could read the "only one option" language to require that only one specific gesture may activate the one function.  '879 patent, claim 1; Ex. 2 (Cockburn Decl.) at ¶¶ 42-44.

The claim language supports **meaning (2)**—a reading Neonode advocated to the PTO— because: (a) a POSITA recognizes the antecedent basis of "the function" is "a function" and knows the use of the "a" could be read by a POSITA to permit one or more functions; and (b) a POSITA could read the "only one option" language to require that only one specific gesture may activate any given function.  '879 patent, claim 1; Ex. 2 (Cockburn Decl.) at ¶¶ 42-44.

The claim language also supports **meaning (3)**—another reading Neonode advocated to the PTO—because a POSITA could read the "only one option" language as limiting "the representation" to one function (rather than limiting the number of activating gestures), in which case the claim recites a single function that may be activated by any input gesture.  '879 patent, claim 1; Ex. 2 (Cockburn Decl.) at ¶¶ 42-44.

The scope of claim 1 varies significantly depending on which of these three meanings applies, and no informed and confident choice is available among the contending definitions. Ex. 2 (Cockburn Decl.) at ¶¶ 42-44.  Moreover, as discussed below, the specification provides insufficient guidance, and the patentee took contradictory positions regarding what this phrase means before the PTO, all further confirming the indefiniteness of the claim.  The claim is thus invalid.  *Media Rights*, 800 F.3d at 1366.

## 2.    The specification provides insufficient guidance.

The specification provides scant disclosure of anything even remotely relating to the meaning of this claim phrase.  For example, the word "option" does not appear in the

specification (much less the broader phrase "only one option for activating the function").

Rather, the specification merely says that the menu area "present[s] a representation" of a first,

second and third function" (Ex. 1 ('879 patent) at 2:5-7, 4:1-3)—without ever explaining what

that representation consists of—and also says "that any one of these three functions" "can be

activated" when the touch sensitive area "detects a movement of an object" (*id.* at 2:10-14, 4:7-

11)—without ever addressing the "only one option for activating the function" claim

requirement. Accordingly, the specification fails to allow a POSITA to make an informed and

confident choice among the contending definitions. Ex. 2 (Cockburn Decl). at ¶ 45.

### 3. The original prosecution history confirms the claims are indefinite.

During the original prosecution of the patent application that issued as the '879 patent,

the applicant, Neonode Inc., made highly relevant statements about this claim limitation to the

PTO to circumvent invalidating prior art. Those statements, which constitute intrinsic evidence

to be considered by the Court, are contradictory regarding the meaning of this claim limitation

and confirm that it is indefinite. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005)

(en banc) (the court should consider the prosecution history). More specifically:

> The public-notice function of a patent and its prosecution history requires that
> we hold patentees to what they declare during prosecution. *Teva*, 789 F.3d at
> 1344. But holding Infinity to both positions results in a flat contradiction,
> providing no notice to the public of "what is still open to them." *Nautilus*, 572
> U.S. at 909, 134 S. Ct. 2120.

*Infinity Computer Prod., Inc. v. Oki Data Americas, Inc.*, 987 F.3d 1053, 1060 (Fed. Cir.), *cert.*

*denied*, 211 L. Ed. 2d 364, 142 S. Ct. 585 (2021).

During prosecution, applicant Neonode Inc. added the disputed claim limitation to

distinguish the claims from the prior art Hirshberg reference. Ex. 3 ('879 patent file history

("'879 FH"), 6/30/2010 Amendment) at 2, 8-9. In attempting to distinguish Hirshberg, Neonode

stated that "Hirshberg teaches a touch and glide operation only for keys that comprise several

characters" and that, "[i]n distinction, the claimed invention uses a multi-step touch-and-glide operation for representations that consist of only one option for activating a function." *Id*. at 8-9 (emphasis in original).  This statement was made to distinguish the patent's claims from Hirshberg on the ground that while the claimed "representation" corresponds to only one function, each of the individual keys represented in Hirshberg could perform multiple functions (*i.e.*, the entry of different characters depending upon what gesture the user performed on the key).  Ex. 2 (Cockburn Decl.) at ¶¶ 46-47.[1]  Neonode Inc. similarly stated, with respect to the specification, that elements 22 and 23 (two of the three exemplary "representations" used in the specification at col. 4:1-6) each "consists of the one option" of opening their respective functions, again indicating that the "one option" claim language refers to the correspondence between a representation and its corresponding one function.  Ex. 3 ('879 FH, 6/30/2010 Amendment) at 10; Ex. 2 (Cockburn Decl.) at ¶¶ 47-48.

These were not Neonode Inc.'s only statements to the PTO about this limitation.  In identifying support in the specification for its amendment, Neonode Inc. also told the PTO that "each representation … consists of only one option for activating its corresponding function." Ex. 3 ('879 FH, 6/30/2010 Amendment) at 10 (emphasis in original).  In contrast to the above-discussed distinction—which focuses on the claimed representation corresponding to only one function—this statement instead appears to also assert there is only one option (gesture) to activate a representation's corresponding function.  Ex. 2 (Cockburn Decl.) at ¶¶ 49-50.

Neonode Inc.'s statements regarding the meaning of this claim limitation during original

---

[1] Hirshberg discloses multifunction keys, where each key corresponds to multiple characters, with the selection of a particular character depending upon which gesture is performed.  For example, the user could enter "H" by contacting a key and moving it up, while the user could enter an "I" by contacting the same key and moving it right.  Ex. 4 (U.S. Patent App. Pub. No. 2002/0027549 ("Hirshberg")) at Abstract, FIGs. 1, 2 (trace 508 ("H"), trace 506 ("I")), [0059].

9

prosecution resulted in further uncertainty rather than clarity, and certainly does not enable a POSITA to ascertain its meaning, much less do so with confidence. *Id.* at ¶ 50. Plaintiff must be held to these statements. *Infinity*, 987 F.3d at 1060.

###### 4. Plaintiff Neonode Smartphone increased the uncertainty over what this claim limitation means during the Google IPR.

Plaintiff Neonode Smartphone created further uncertainty about what the claim means during the IPR proceeding initiated by Google on the '879 patent (IPR2021-01041) ("Google IPR"). Plaintiff's contradictory statements during the IPR should be considered in evaluating the meaning of the claim and Plaintiff must be held to those statements. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360-61 (Fed. Cir. 2017); *Infinity*, 987 F.3d at 1060.

During the Google IPR, Plaintiff initially explained that the "representation presents the user with one option of <u>what to activate</u>," indicating that the "one option" claim language relates to the correspondence between <u>the representation and one function</u>. Ex. 5 (IPR2021-01041, Paper 29 ("POR")) at 5 (emphasis added); Ex. 2 (Cockburn Decl.) at ¶¶ 51-52. Plaintiff also argued the "one-option limitation" should <u>not</u> be interpreted to "require that each function associated with the representation of the function can be activated <u>only by one gesture</u>." Ex. 5 (IPR2021-01041, POR) at 52 (emphasis added). During the IPR hearing, Plaintiff double downed on this, asserting that it was "not proposing that the representation of a function can only be activated with one gesture." Ex. 6 (IPR2021-01041, Paper 50 ("Record of Oral Hearing")) at 48:2-3.

But Plaintiff also stated during the IPR hearing that "<u>we are not arguing that the representation must only have one function</u>. That's not what we're arguing." *Id.* at 72:23-24 (emphasis added); *see also* Ex. 7 (IPR2021-01041, Paper 44 ("PO Sur-Reply")) at 10 ("Neonode does not argue that the representation must represent 'only one function'").

Plaintiff further argued that "a representation can at different times have <u>multiple functions</u>" so long as "at any given time, the user is given <u>only one option in terms of what gesture</u> to put in <u>and what action to take</u>."  Ex. 6 (IPR2021-01041, Record of Oral Hearing) at 73:1-6 (emphasis added); Ex. 7 (IPR2021-01041, PO Sur-Reply) at 10-11 ("even if the representation may represent <u>different functions</u> depending on the context, the user is provided with <u>only one option on what action to initiate</u> in that context") (emphasis added).  Thus, here, Plaintiff argued that the claim limitation may encompass <u>multiple functions</u>, but only permits <u>one function to be activated</u> at a time and that activation must result from <u>a single specified gesture</u>. Ex. 2 (Cockburn Decl.) at ¶ 54.

In short, Plaintiff managed, during a single IPR proceeding, to inconsistently argue that the "one option" claim language:

- <u>Does require</u> that the <u>representation</u> have one corresponding <u>function</u>;

- <u>Does not require</u> that the <u>representation</u> have only one corresponding <u>function</u>;

- <u>Does require</u> that each <u>function</u> be activated by a single <u>gesture</u>; and

- <u>Does not require</u> that each <u>function</u> be activated by a single <u>gesture</u>.

Thus, rather than provide reasonable certainty of meaning, Plaintiff instead substantially amplified the indefiniteness of the claim during the IPR through its contradictions.  *Id.* at ¶ 55.

Plaintiff should be held to the contradictory statements that it made to the PTO—both during original prosecution and during the IPR—which confirm the indefiniteness of the claim. *See Infinity*, 987 F.3d at 1059, 1062 ("Indefiniteness may result from inconsistent prosecution history statements where the claim language and specification on their own leave an uncertainty that, if unresolved, would produce indefiniteness.").  Like the facts here, the patentee in *Infinity Computer* offered different claim interpretations during prosecution and re-examination.  *Id.* at

11

1056-59.  The Court found that "holding [Plaintiff] to both positions results in a flat

contradiction, providing no notice to the public . . . [such] that the intrinsic evidence leaves an

ordinarily skilled artisan without reasonable certainty as to [the claim term]."  *Id.* at 1060.

In summary, because this claim limitation has multiple potential meanings, because the

claims and specification do not identify which meaning is correct, and because the patentee took

inconsistent positions as to what this limitation does and does not require, the claim is indefinite

because "no informed and confident choice is available among the contending definitions."

*Media Rights*, 800 F.3d at 1371.

Neonode's "plain meaning" construction should be rejected because, as established

above, there is no such plain meaning.  Indeed, Neonode has not articulated what the supposed

plain meaning is, or identified any supporting intrinsic evidence.

**C.    "gliding" (claims 1, 12) / "the object gliding along the touch sensitive area" (claim 1) / "gliding the object along the touch sensitive area" (claim 12)**

| Defendants' Proposal | Neonode's Proposal |
|---|---|
| Indefinite. | "Plain meaning, not including a drag and drop operation." |

This claim term is indefinite because Neonode's statements in the IPRs leave a POSITA

unable to determine what does and what does not constitute "gliding."  While Neonode told the

PTAB that the claimed "gliding" is different from a "drag" or a "flick," and that the cited prior

art references are distinguishable on that basis, Neonode never explained how a "glide," drag" or

flick" are in fact distinct in any meaningful way.  Indeed, as discussed below, the little

explanation that Neonode provided increased (not decreased) the uncertainty over the meaning of

the claims. In this regard, the public has the right to rely on a patent owner's affirmative

statements regarding the scope of its claims, including where, as here, such statements result in

indefiniteness.  *Infinity*, 987 F.3d at 1059-60.

The Court should not adopt the "plain meaning" portion of Neonode's construction because "glide" does not have a plain meaning to a POSITA and there is no intrinsic evidence that allows a POSITA to determine either the boundaries of that term, or whether a given user gesture is a "glide," a "drag" or a "flick." Ex. 2 (Cockburn Decl.) at ¶¶ 56-74.   Nor should the Court adopt Neonode's unjustified negative limitation ("not including a drag and drop operation"), both because Neonode has not articulated any meaningful distinction between a "drag" and a "glide" (much less one based upon intrinsic evidence), and because Neonode's construction incorrectly conflates a user gesture (a drag) with one potential action the computer may take as a result of the user performing that gesture (a drop).  *Id.* at ¶¶ 75-77.

### 1.    Neonode's IPR statements render the claim terms indefinite.

In Samsung's IPR on the '879 patent (IPR2021-00144) ("Samsung IPR"), Neonode asserted in its briefing that "The Plain Meaning Confirms 'Gliding' And 'Dragging' Are Distinct," but failed to actually articulate what aspect of a "glide" makes it distinct from a "drag." Ex. 9 (IPR2021-00144, Paper 49 ("PO Sur-Reply")) at 7-9.  During oral argument at the hearing, when Plaintiff was asked by one of the PTAB Administrative Patent Judges ("APJ") to explain how to distinguish between the two, Neonode asserted—without any supporting intrinsic evidence to support its attorney assertion—that "dragging is much more intensive, harder and laborious, whereas a glide is much more seamless and effortless."  Ex. 19 (IPR2021-00144, Paper 55 ("Record of Oral Hearing")) at 46:1-4.  When Plaintiff asked the APJ whether that answered the APJ's question, the APJ responded in part: "I guess it doesn't answer mine because I still don't know how to look at the description of the actual movement in the [prior art] reference and determine whether it's a slider or a glide or not . . . Well, it could just be that they mean the same thing, that the description of the glide that is a movement of something along the touchscreen is a glide. That seems like the plain and ordinary meaning. I mean, you're telling me

that's a drag and I'm trying to figure out, well, how is that not a glide?"  *Id.* at 46:14-47:2; *see also id.* at 40:1-45:2 (Plaintiff's counsel repeatedly failing to substantively respond to the APJs' earlier requests that Plaintiff explain the differences, if any, between a drag and a glide); 52:20-53:20 (Plaintiff, in responding to additional APJ questioning, indicating that an alleged difference between a glide and a drag is the amount of effort, and that a glide "is a much more generic movement").

Accordingly, while Plaintiff told the PTAB during the Samsung IPR hearing that a glide and a drag are different, the purported differences identified by Plaintiff—a glide allegedly requiring "less effort" and being "more generic"—are themselves indefinite in scope because they fail to advise a POSITA where one begins and the other ends in an actual device.  Ex. 2 (Cockburn Decl.) at ¶ 58.  *Nautilus*, 134 S. Ct. at 2124 (a claim term is indefinite if it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.").

In the Google IPR, Plaintiff sought to distinguish the cited prior art by arguing that the prior art disclosed a "flick and argued that interpreting a 'flick' gesture as a 'glide' is "contrary to the plain meaning . . . ." Ex. 5 (IPR2021-1041, POR) at 35.  Plaintiff asserted in the Google IPR that a "glide" refers to "a longer, continuous and effortless motion."  *Id.* at 44.

Nothing in intrinsic evidence provides any objective guidelines that would allow a POSITA to distinguish among the "glide," "flick" and "drag" labels used by Plaintiff during the IPRs.  Ex. 2 (Cockburn Decl.) at ¶¶ 56-74; *Interval Licensing*, 766 F.3d at 1371 ("The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art.").  Because those distinctions cannot be objectively identified, the claims are indefinite.  *Nautilus*, 134 S. Ct. at 2124.

Claim 1 recites "activating the function . . .  by a multi-step operation comprising . . . (ii)

14

the object gliding along the touch sensitive area away from the touched location." Ex. 1 ('879

patent) at 6:52-57.  Importantly, the specification never uses the words "glide," "flick" or "drag,"

or any variations thereof.  Instead, the specification recites activating a function by detecting the

"movement of an object" as shown in Figure 2.  *See id.*, 4:7-9, 2:10-12 (emphasis added).  The

specification thus provides no information that would allow a POSITA to distinguish between a

"glide" and a "flick" or "drag."  Ex. 2 (Cockburn Decl.) at ¶¶ 57, 64, 66.  For example, a

POSITA recognizes that the action of the finger in Figure 2 is the same for a "glide" and for

what Neonode calls a "flick" and a "drag."  *Id.* at ¶¶ 57, 64.  Neonode's IPR expert agrees.  Ex.

10 (IPR2021-01041, EX1031 ("Rosenberg Tr.")) at 21:4-22:6, 36:2-12 (admitting that flick and

glide gestures both start at a touched location and move away from the touched location while

continuing to touch the screen); Ex. 11 (IPR2021-00144, EX2007 ("Rosenberg Decl.")) at ¶ 65

(stating a "glide" and a "drag" "may have overlapping movements").

During original prosecution, Neonode Inc. equated "gliding" with "swiping," "rubbing"

and "sliding."  Ex. 12 ('879 FH, 9/3/2008 Applicant Letter to Examiner) at 1.  Neonode did not

distinguish any of these terms from a "flick" or "drag."  Indeed, the applicant instead equated

"dragging" with "gliding" (Ex. 13 ('879 FH, 2/22/2010 Amendment) at 8 (characterizing the

prior art Hoshino's "drag" movement as a "glide"), and the sole named inventor of the '879

patent describes the claimed "glide" movement as a "drag."  Ex. 14 (IPR2021-01041, EX1044

("Goertz Tr.")) at 41:8-41:15.  Moreover, when the examiner was looking for potentially

applicable prior art during prosecution, he searched for "flick," "drag," "glide" and "swipe."  Ex.

15 ('879 FH, 12/23/2008 Search Notes) at 2, 5-7; Ex. 16 ('879 FH, 7/8/2009 Search Notes) at 3,

6-10.  Again, none of this allows a POSITA to distinguish a glide from a flick or a drag as

Neonode urged during the IPRs.  Ex. 2 (Cockburn Decl.) at ¶¶ 69-70.

15

Although Neonode failed to articulate in the Samsung IPR what aspect of a "glide" makes it distinct from a "drag," Neonode argued in the Google IPR that a "glide" can be distinguished from a "flick" based upon on parameters such as speed, distance, effort, jerkiness and smoothness. However, none of these parameters is discussed in the '879 patent, much less in a way that allows a POSITA to distinguish the two terms. Ex. 2 (Cockburn Decl.) at ¶¶ 58-60. For example, the patent does not say or suggest what speed, if any,  would distinguish a "glide" from  a "flick," how much distance must be traversed for a "glide" to be distinguished from a "flick," or what amount of greater or lesser "effort" (however that would be measured) needs to be made for a movement to be a "glide" as opposed to a "flick."

When the '879 patent specification does mention "speed of the movement . . . of the object 4," it is not in the context of function activation, but instead relates to marking the name of an application or file at a speed "lower than the speed of the movement . . . of the object." Ex. 1 ('879 patent) at 5:29-35, FIG. 8; Ex. 10 (IPR2021-01041, Rosenberg Tr.)  at 34:24-35:17. This operation is unrelated to the claimed touch and glide motion that activates a function that is recited in the disputed claim limitation. Ex. 2 (Cockburn Decl.) at ¶ 67. A POSITA would understand from this different discussion of speed that the specification identifies speed as a relevant factor where appropriate, and that the lack of any such discussion regarding function activation informs a POSITA that speed is not relevant to that operation. *Id.*

Moreover, Neonode's expert agrees that the "movement" disclosed in the specification is a genus or "superset" of types of object movements for function activation. Ex. 17 (IPR2021-00144, EX1053 ("Rosenberg Tr.")) at 45:25-47:8 ("'movement' . . . is a superset that represents many types of movements"); Ex. 10 (IPR2021-1041, Rosenberg Tr.) at 17:17-18:8, 20:1-8 (agreeing "movement is like a genus"). However, Neonode has not cited any evidence that a

POSITA in December 2002—when the '879 patent application was filed—understood whether or how any alleged "species" within that genus could be distinguished in a way relevant to the '879 patent claims.  And it was not until September of 2008—nearly six years after the '879 patent application was filed and after much of the industry development of touch user interface and gesture recognition technology had occurred—that the applicant introduced new matter to the application in the form of adding the "gliding" claim term (without amending the specification to discuss it).  Ex. 12 ('879 FH, 9/3/2008 Applicant Letter to Examiner) at 2, 5 (proposed amendment adding "gliding"); Ex. 2 (Cockburn Decl.) at ¶¶ 71-72.  However, the applicant never differentiated, during original prosecution, the newly claimed "gliding" from prior art based on parameters such as speed, distance, jerkiness, or smoothness.

Because "glide" does not have a plain and ordinary meaning and because the intrinsic record fails to provide clear notice with reasonable certainty between what is claimed, *i.e.*, a "glide," and what Neonode alleges is open to the public, *e.g.*, a "flick" and a "drag," the claims are indefinite.  *Nautilus*, 134 S. Ct. at 2129.  Indeed, the vague and unsupported distinctions Neonode cites would result in the very "innovation-discouraging 'zone of uncertainty' against which [the Supreme Court] has warned.  *Id*. at 2130 (internal citation omitted).

### 2.    There is no basis in the intrinsic evidence to exclude a "drag and drop operation" from the "gliding" terms.

Neonode's proposed construction seeks to exclude a "drag-and-drop operation" from the scope of the disputed "gliding" terms.  There are two major defects in this request.

First, as discussed above, there is nothing in the intrinsic evidence that allows a POSITA to distinguish between a "glide" and a "drag" within the meaning of claim 1.

Second, nothing in the patent excludes a "drag" operation that results in a "drop."  Ex. 2 (Cockburn Decl.) at ¶¶ 75-77.  A "drag-and-drop operation" may have a multitude of

characteristics depending on the designer, none of which are addressed in the '879 patent.  *Id.*
The claimed "gliding" operation, by contrast, only describes the movement of the object along
the touch sensitive area, which is an action that the user takes to interact with the touch sensitive
area.  Ex. 2 (Cockburn Decl.) at ¶¶ 75-76; *see also* Ex. 1 ('879 patent) at FIG. 2, 4:7-11.  In
contrast, a POSITA understands that at least the "drop" part of a "drag-and-drop operation"
refers to actions performed by the user interface, not the user, following the drag.  Ex. 2
(Cockburn Decl.) at ¶¶ 76-77.  While the "drag" might refer to visually moving something on the
display, the "drop" typically refers to a specifically programmed interaction between a selected
source item (such as a file or other icon) and a target.  *Id.* at ¶¶ 75-77.

Accordingly, the action of the user "gliding" a finger or pen "along the touch sensitive
area" does not preclude a "drag-and-drop" operation from the user interface since (1) there is
nothing in the intrinsic evidence that distinguishes a drag from a glide, and (2) neither the claims
nor the specification precludes a subsequent "drop" following a glide in this "comprising" claim.
*Id.*; *Multilayer Stretch Cling Film Holdings, Inc. v. Barry Plastics Corp.*, 831 F.3d 1350, 1358
(Fed. Cir. 2016) (the term "comprising" creates a presumption that the recited elements are only
part of a device and that the claim does not exclude additional, unrecited elements).

### D.     "tapping" / "selection of a preferred service or setting is done by tapping" (claim 3)

| Defendants' Proposal | Neonode's Proposal |
|---|---|
| No construction necessary; plain and ordinary meaning. | "Selection of a preferred service or setting is done by completion of a gesture that involves the input device touching a screen followed directly and immediately by lifting off the screen from the same location." |

The term "tapping" / "selection of a preferred service or setting is done by tapping" has a
well-understood meaning to a POSITA and need not be narrowed by Neonode's several
additional, unsupported limitations.  First, there is no lexicography or disclaimer that justifies

Neonode's limiting construction.  *See Phillips*, 415 F.3d at 1316.  Second, the phrase "directly and immediately" finds no support in the term's plain meaning or the patent's specification. Third, a POSITA would not understand the term to require the precision of lifting off exactly "from the same location" or why that aspect of the gesture is relevant to the claims.  Fourth, Neonode's construction refers to a "screen," but the claim language merely requires a "touch sensitive area," not a display screen.  Thus, Neonode's construction should be rejected and the term instead should be afforded its plain and ordinary meaning.

> ### E. "a shell upon an operating system" (claim 15)

| Defendants' Proposal | Neonode's Proposal |
|---|---|
| No construction necessary; plain and ordinary meaning. | "A software interface between the user and an operating system." |

The term "a shell upon an operating system" has a plain and ordinary meaning that would have been understood by a POSITA such that no construction of this term is necessary.  Ex. 2 (Cockburn Decl.) at ¶ 91.  Moreover, there is no basis for Neonode's narrowing construction.

First, the broader claim limitation merely requires that the "computer program code is *adapted to function as* a shell upon an operating system."  Ex. 1 ('879 patent) at 8:27-28 (emphasis added).  Thus, the claim is broader than computer program code that *is itself* a shell and would include code that provides the functions of a shell.  Ex. 2 (Cockburn Decl.) at ¶ 91.

Second, the specification uses this term only once, and merely parrots the language of the claim without further explanation:  "the computer program product is adapted to function as a shell upon an operations system."  Ex. 1 ('879 patent) at 6:35-37.  Thus, nothing in the specification provides a special definition for or otherwise limits the term to something different than its plain meaning.  Ex. 2 (Cockburn Decl.) at ¶ 92.

Third, the import of Neonode's construction is unclear.  If Neonode intends to apply its

WEST/302382920

construction to preclude a software interface that is integrated or otherwise associated with the operating system because it is not "between the user and an operating system," then that is contrary to the plain meaning of the term because some shells are considered part of their corresponding operating system.  For example, contemporaneously filed U.S. Patent No. 7,240,296 ("Matthews") describes a system where "[t]he navigation system 60 includes a shell component 64 associated with the shell user interface 62."  Ex. 18 (Matthews) at 6:11-12. Matthews confirms that the shell may be either integrated with or external to the operating system.  *Id*. at 6:12-14 ("[S]hell component 64 is <u>integrated into (or alternatively is external to and associated with) the operating system</u> 35.") (emphasis added).  Ex. 2 (Cockburn Decl.) at ¶¶ 94-95.  Moreover, contemporaneous dictionary definitions are agnostic regarding the orientation of the shell to the operating system.  *Id*. at ¶¶ 96-97. Thus, to the extent Neonode intends to exclude software integrated or associated with the operating system, such a construction is inconsistent with the breadth of the term's plain meaning.  *Id*. at ¶¶ 92-97.

## V.      CONCLUSION

Defendants respectfully request that the Court adopt its claim constructions for the reasons addressed above.

Dated: April 14, 2023                                  Respectfully submitted,

                                                       DLA PIPER LLP (US)

                                                       By: */s/ John M. Guaragna*
                                                       John M. Guaragna
                                                       Texas Bar No 24043308
                                                       **DLA PIPER LLP (US**)
                                                       303 Colorado Street, Suite 3000
                                                       Austin, TX 78701-4653
                                                       Tel: 512.457.7125
                                                       Fax: 512.457.7001
                                                       john.guaragna@dlapiper.com

                                                       Mark K. Fowler (Pro hac vice)

Bar No. 124235
mark.fowler@dlapiper.com
Erik Fuehrer (Pro hac vice)
Bar No. 252578
Erik.fuehrer@dlapiper.com
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel: 650.833.2000
Fax: 650.833.2001

Tiffany Miller (Pro hac vice)
Tiffany.miller@dlapiper.com
**DLA PIPER LLP (US)**
401 B St., Ste. 1700
San Diego, CA 92101
Tel: 619.699.2700
Fax: 619.699.2701

Zachary Loney (Pro hac vice)
**DLA Piper LLP (US)**
303 Colorado St., Suite 3000
Austin, TX 78701
Tel: 512.457.7000
Zachary.loney@us.dlapiper.com

Benjamin Mueller (Pro hac vice)
Benjamin.mueller@dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.4000
Fax: 312.236.7516

***ATTORNEYS FOR SAMSUNG
ELECTRONICS CO. LTD. and SAMSUNG
ELECTRONICS AMERICA, INC.***

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on April 14, 2023 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail on this same date.

*/s/ John M. Guaragna*
John M. Guaragna

22