# Appendix G



29 Aharoni Street, Suite #13 • Rechovot 76287 • Israel • Phone: 972-8-9315207 • Fax: 972-8-9315208

BY E-MAIL
September 27, 2021

Examiner Conrad R. Pack, AU 2174
**United States Patent & Trademark Office**
Alexandria, VA
USA

Dear Examiner Pack,

> RE: Interview agenda for US Serial No. 16/796,880
> TOUCH SCREEN ELECTRONIC DEVICE
> AND ASSOCIATED USER INTERFACE
> Filed on February 20, 2020

This letter regards our telephone interview scheduled for 12:00 PM Eastern Time on Wednesday, September 29, 2021, with reference to the subject patent application.

I would like to express my appreciation for your fast turnaround on this case.

I would like to focus on the 112, first paragraph, and 103 rejections of claim 21 in the current Office action of 08/30/2021.

Regarding the 112 rejection, it appears to me that the Office action did not address the arguments on pages 22 and 23 of the response that I filed on July 25, 2021, explaining why the drawings of the 10/315250 application satisfy the written description requirement.

The Office action, at Paragraphs 24 – 29, appears to be applying a rule that drawings cannot be used as a show of support for negative claim limitations. However, the Office action does not cite a source for this rule. The only citation provided, MPEP §2173.05(i), does not relate to drawings. I found some other rulings, namely,
- *Ex parte Parks*, 30 USPQ2d 1234, 1236 (Bd. Pat. App. & Inter. 1993)
- *Inphi Corp. v. Netlist, Inc.*
- *Santarus, Inc. v. Par Pharm., Inc.*

These rulings appear to imply that a lack of literal basis in the specification for a negative limitation may not be sufficient to establish a *prima facie* case for lack of descriptive support. Moreover, if the specification describes a reason to exclude the relevant limitation, then this is sufficient basis for a negative limitation.

In the case at hand, the specification of the 10/315250 application describes a reason to have a tap absent state in order to provide a simple way to make the most commonly used functions for navigation and management available in the environment of a small handheld computer unit (US 8095879/ col. 1, lines 38 – 43).

www.soquelgroup.com

      Regarding the 103 rejection, attached is my brief discussion of why I believe claim 21 is patentable over the prior art.

      I appreciate your courtesy of granting the interview, and I look forward to speaking with you.

                                       Sincerely yours,

                                       Marc A. Berger
                                       Reg. No. 44,029

Encl.

## CLAIM 21

21.     A portable handheld wireless computer device, comprising:
        a top surface comprising a touch sensitive display, the display having a maximum width of such length as to enable a user to hold the device in one hand and simultaneously provide input to the device by touching the display and gliding on the display away from the touched location by a distance of up to the maximum width using the thumb of the same hand;
        a processor;
        a transceiver for sending and receiving wireless signals over a communications network;
        a solid-state memory storing computer instructions configured to:
                enable the portable handheld wireless computer device to run at least two applications simultaneously, the applications selected from a group consisting of a telephone, chat or SMS, a camera, a music player, and email;
                cause the portable handheld wireless computer device to present a selected application on top of another application previously presented in said display;
                cause the portable handheld wireless computer device to present at least two communication options on said display for given text, wherein the communication options comprise two or more of call, email, and chat or SMS;
                enable the portable wireless computer system to present a user interface, the user interface comprising at least two states, namely: (a) a tap-present state, wherein tap-activatable icons for activating a plurality of corresponding pre-designated applications, functions, services or settings are present, each of the plurality of pre-designated applications, functions, services or settings configured to be activated in response to a tap on its corresponding icon, and wherein the tap-activatable icons are not enclosed by a window frame, and (b) a tap-absent state, wherein no tap-activatable icons are present, the tap-absent state configured to be transitioned to the tap-present state in response to a multi-step user gesture comprising a user's thumb or finger: (i) touching a graphic located in an edge area of said display, and then (ii) gliding on said display away from the edge area, wherein neither the direction nor the final destination of the gliding determines the content or format of such content presented on said display as a result of the transition to the tap-present state, and wherein the graphic does not move to a different location on said display after the transition; and
                cause the portable handheld wireless computer device to register input to said display from contact between (a) the user's thumb or finger, and (b) said display; and
        a housing surrounding said display and enclosing said processor, said transceiver, and said solid-state memory.

Interview Agenda for US Serial No. 16/796,880                                      September 27, 2021

## Brief Arguments –103 Rejection

At ¶39 and ¶40 of the Office action, the 103 rejection relies on Robertson to teach the feature that neither a direction nor a final destination of the gliding determines content or a format of such content presented on said display as a result of the transition to the tap-present state.

I believe that Robertson fails to teach the above feature of the claimed invention, for at least the following reasons.

1. The Office Action indicates that "a flick gesture as described can be viewed as a gliding interaction in which neither a direction nor a final destination of the gliding determines content or the format of such content presented on a display at least in the sense that various directions and final destinations are all interpreted as the same flick gesture." I believe that Robertson's flick gesture is different than the claimed glide away gesture. Robertson (page 39, col. 1, paragraph 3 and FIG. 1) distinguishes between a flick gesture and a drag gesture. In fact, the verb to "flick" means to strike or propel (something) with a sudden quick movement of the fingers, and is different than a glide. A person of ordinary skill in the art would not look to Robertson's flick gesture, nor to the miniscule amount of gliding involved in a flick, to derive a feature for a gesture of gliding on a display.

2. Robertson's flick right gesture would not work within the setting of the claimed invention, namely, a smartphone with a mobile handheld touch screen using a finger. A flick right gesture of a finger would be so small a movement that would be difficult recognize on such a touch screen, and at best would represent poor user interface/design.

3. The above feature of the claimed invention refers specifically to content presented as a result of a transition to a tap present-state. In distinction, Xbuttons are used solely for triggering actions, and are unrelated to transitioning from one state to another. Robertson fails to show or suggest a state of a user interface in terms of overall screen layout/interaction, nor any transition to another state upon flick right. Further, regarding the phone button cited by the Office action, Robertson does not discuss what happens to the user interface after a flick right gesture, so one cannot assume it changes to another state.

Finally, there is no teaching/suggestion/motivation to combine Robertson and Hisatomi. At ¶41, the Office Action asserts that "At the time of the invention, it would have been obvious to a person of ordinary skill in the art to combine the teachings of Simon, Frank, Hisatomi, and Robertson ... in order to allow a user to access various user interface functionality by means of easily differentiated gestures." However, Robertson's flick gesture would not work on the Hisatomi device, since it would be interpreted as a pen up movement prior to exceeding the minimum x/y length to be registered as a gliding gesture. See, e.g., Hisatomi ¶52 and Fig. 11, S108, 109, S115, S116. Moreover, even if combined *arguendo*, the combination would not work, for the reason outlined at point #2 above, and would require many major changes from a desktop with a large screen using a high-precision mouse with flick right, to a smartphone with a handheld screen using a larger finger with touch and glide. There was no design need or market pressure, or any other motivation, that would have suggested that a person of ordinary skill in the art should denigrate the Robertson device with an inferior interface. In fact, Robertson's flick gesture

www.acqisgroup.com

507SAM_00085556

could easily be performed inadvertently by movement of the handheld device in a pocket or purse. Therefore, a person of ordinary skill in the art would be motivated to avoid replacing Hisatomi's gesture with Robertson's flick right gesture in the claimed invention, namely, a portable handheld wireless computer device.

Similarly, there is no teaching/suggestion/motivation to combine Robertson and Simon. Robertson's flick gesture would not work on Simon, for the reason outlined at point #2 above.