# EXHIBIT 7

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

GOOGLE LLC,
Petitioner,

v.

NEONODE SMARTPHONE LLC,
Patent Owner,

_____

Case IPR2021-01041
Patent 8,095,879

_____

**PATENT OWNER'S SUR-REPLY**

507SAM_00063004

# TABLE OF CONTENTS

I.    PETITIONER'S ROBERTSON-GROUNDS FAIL FOR FIVE
      INDEPENDENTLY SUFFICIENT REASONS. ...........................................1

      A.    Petitioner Fails To Prove That Its Robertson-Grounds Render
            Obvious The "Gliding … Away" Limitation. ......................................1

            1.    Petitioner Does Not Attempt To Prove That A "Flick" Is A
                  "Glide." ...................................................................................1

            2.    Petitioner Arguments Rely On "Gliding … Away" Meaning
                  Any "Movement." .....................................................................4

                  a.    Petitioner Disregards The Prosecution History. ...............4
                  b.    Petitioner's Written Description Argument Is Irrelevant
                        And Incorrect. ...................................................................6

            3.    Petitioner's Reliance On Robertson's "Insert" Gesture Fails.....8

      B.    Petitioner Fails To Prove The Robertson-Grounds Disclose
            "Wherein The Representation Consists Of Only One Option For
            Activating The Function." ...................................................................10

      C.    Petitioner Fails To Show That Its Robertson-Grounds Disclose Or
            Render Obvious The Preamble's Computer Program Code Being
            "Read By A Mobile Handheld Computer Unit." ................................13

      D.    Petitioner's Robertson-Grounds Fail To Disclose Or Render
            Obvious The Preamble's "Mobile Handheld Computer Unit." ..........14

      E.    Petitioner's Belated Attempt To Show Robertson Is Analogous Art
            Fails......................................................................................................17

II.   THE TARPENNING GROUNDS FAIL.............................................................19

III.  PETITIONER FAILS TO REFUTE NEONODE'S EVIDENCE OF
      SECONDARY CONSIDERATIONS.............................................................22

IV.   CONCLUSION...................................................................................................28

i

507SAM_00063005

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CIRCUIT DECISIONS**

*Biogen Idec. Inc. v. GlaxoSmithKline LLC,*
  713 F.3d 1090 (Fed. Cir. 2013) ...................................................................18

*Blue Calypso, LLC v. Groupon, Inc.,*
  815 F.3d 1331 (Fed. Cir. 2016) .....................................................................7

*Fox Factory, Inc. v. SRAM, LLC,*
  944 F.3d 1366 (Fed. Cir. 2019) ...................................................................26

*Henny Penny Corp. v. Frymaster LLC,*
  938 F.3d 1324 (Fed. Cir. 2019) ...................................................................12

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
  358 F.3d 898 (Fed. Cir. 2004) .......................................................................7

*PAR Pharm, Inc. v. TWI Pharms, Inc.,*
  773 F.3d 1186 (Fed. Cir. 2014) ...................................................................21

*Personal Web Techs., LLC v. Apple, Inc.,,*
  848 F.3d 987 (Fed. Cir. 2017) .....................................................................16

*Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.,*
  806 F.3d 1356 (Fed. Cir. 2015) .....................................................................6

*TQ Delta, LLC v. CISCO Sys., Inc.,*
  942 F.3d 1352 (Fed. Cir. 2019) ...................................................................16

*Trimed, Inc. v. Stryker Corp.,*
  608 F.3d 1333 (Fed. Cir. 2010) ...................................................................22

*Wang Labs., Inc. v. Toshiba Corp.,*
  993 F.2d 858 (Fed. Cir. 1993) .....................................................................19

*Wasica Fin. GmbH v. Cont'l Auto. Sys.,*
  853 F.3d 1272 (Fed. Cir. 2017) ...................................................................12

**BOARD DECISIONS**

*Apple Inc. v. OpenTV, Inc.,*
  IPR2015-00969, Paper 30 (Sept. 20, 2016) .......................................................6

*Samsung Elecs. Co., Ltd. v. Elm 3DS Innovations, LLC,*
  IPR2016-00393, Paper 62 (PTAB Jun. 23, 2017).................................................1

507SAM_00063006

*Samsung Elecs. v. Neonode Smartphone*,
   IPR2021-00145, Paper 71 (PTAB July 6, 2022)..................................................26

**STATUTES**

35 U.S.C. § 311 ........................................................................................................6

507SAM_00063007

| EXHIBIT LIST | |
|---|---|
| 2001 | Declaration of Craig Rosenberg, Ph.D. [Rosenberg-Decl.] |
| 2002 | CV of Craig Rosenberg, Ph.D. [Rosenberg CV] |
| 2003 | Mobile Application Distribution Agreement (Android) between Google Inc. and Samsung Electronics Co., Ltd. dated January 1, 2011 [Mobile-Application-Distribution-Agreement] |
| 2004 | Complaint (June 8, 2020), in the matter of *Neonode Smartphone, LLC* v. *Apple Inc.,* Dkt. #1, Case No. 6:20-cv-00505, United States District Court for the Western District of Texas, Waco Division [Neonode-Apple-Complaint] |
| 2005 | Declaration of William Stevens in Support of Patent Owner's Preliminary Response  [Stevens-Decl.] |
| 2006 | Microsoft Press Computer Dictionary, p. 243 (3d ed. 1997) [Microsoft-Dictionary] |
| 2007 | Declaration of Ulf Martensson in Support of Patent Owner's Preliminary Response [Martensson-Decl.] |
| 2008 | Declaration of Joseph Shain in Support of Patent Owner's Preliminary Response [Shain-Decl.] |
| 2009 | Declaration of Marcus Backlund in Support of Patent Owner's Preliminary Response [Backlund-Decl.] |
| 2010 | Excel Spreadsheet documenting Neonode sales [Neonode-Sales] |
| 2011 | Declaration of Per Bystedt in Support of Patent Owner's Preliminary Response |
| 2012 | Neonode Confidential Investment Memorandum, Jan.2004 [Neonode-Investment-Memo] |

507SAM_00063008

| 2013 | "Pen Computing Magazine: The NeoNode Nl" (https://pencomputing.com/WinCE/neonode-nl-review.html last accessed October 15, 2021) [Pen-Computing-Magazine-N1-Phone-Review] |
| 2014 | Research & Development and License Agreement between Neonode and Samsung Electronics Co., Ltd., effective July 13, 2005 [Samsung-License-Agreement] |
| 2015 | Defendant Apple Inc.'s Motion to Transfer Venue to the Northern District of California, Dkt. #27, Case No. 6:20-cv-00505, United States District Court for the Western District of Texas [Motion-to-Transfer-Venue] |
| 2016 | Apple Inc.'s Petition for Writ of Mandamus, Dkt. #2-1, Case No. 21-181, United States Court of Appeals for the Federal Circuit [Petition-for-Writ-of-Mandamus] |
| 2017 | Complaint (June 8, 2020), in the matter of *Neonode Smartphone, LLC* v. *Samsung Electronics Co. Ltd., et al.,* Dkt. #1, Case No. 6:20- cv-00507, United States District Court for the Western District of Texas, Waco Division [Neonode-Samsung-Complaint] |
| 2018 | Deposition Transcript of Petitioner's Expert, Dr. Jacob O. Wobbrock, Mar. 25, 2022 [Wobbrock-1st-Depo] |
| 2019 | Second Declaration of Craig Rosenberg, Ph.D. [Rosenberg-2nd-Decl.] |
| 2020 | N2 Advertisement Video (uploaded Oct. 18, 2007) (available at https://www.youtube.com/watch?v=Hq3S8Crxf2s) [N2-Advertisement-Video] |
| 2021 | Reserved |
| 2022 | Apple Developer, Human Interface Guidelines, Gestures [Gestures] |

507SAM_00063009

| 2023 | Bryan M. Wolfe and Rene Ritchie, *iPhone 12 and iPhone 12 Pro Tricks: 17 ways to do more, faster!*, iMore, Oct. 23, 2020 [iMore-Website] |
|------|---|
| 2024 | Conrad H. Blickenstorfer, *Neonode N2, A New Version Of The Phone That Pioneered Touchscreens*, Pen Computing Magazine, Nov. 4, 2007 [Pen-Computing-Magazine-N2-Phone-Review] |
| 2025 | Android Developer, Test Android apps for cars [Test-Android-apps-for-cars] |
| 2026 | Android Developer, Ice Cream Sandwich [Ice-Cream-Sandwich] |
| 2027 | Android Developer, Scroller [Scroller] |
| 2028 | Android Developer, Navigation [Navigation] |
| 2029 | Apple Developer, Human Interface Guidelines, Terminology [Terminology] |
| 2030 | U.S. Publication No. 2002/0027549 [Hirshberg] |
| 2031 | Bill Hennessy, *The Neonode N2*, Trend Hunter, Aug. 18, 2008 [Trend-Hunter-Article] |
| 2032 | Trend Hunter, About page [Trend-Hunter-About] |
| 2033 | Neonode N1m First Impression [tnkgrl-Media-post] |
| 2034 | Tnkgrl About Page [tnkgrl-Media-About] |
| 2035 | *Hunting The iPhone Killer; Swedish Neonode Generates Buzz For Device*, RCR Wireless, Apr. 7, 2007 [iPhone-Killer] |
| 2036 | Wikipedia, *iPhone* [Wikipedia-iPhone-Release-Dates] |

507SAM_00063010

| 2037 | Wikipedia, *Android (operating system)* [Wikipedia-Android-Operating-System] |
| 2038 | Neonode the only original, Sep. 13, 2007 (available at https://www.youtube.com/watch?v=D9N3H1rSxHk) [User-Video] |
| 2039 | Jurek Breuninger PhD Dissertation, Nov. 13, 2019 [PhD-Dissertation] |
| 2040 | Andreas Hollatz Dissertation, Oct. 2015 [Hollatz-Dissertation] |
| 2041 | Neonode N1m review, Jun. 29, 2007 (available at https://www.youtube.com/watch?v=Tj-KS2kfIr0) [Neonode N1m video-review] |
| 2042 | Timothy B. Lee, *If Android Is A "Stolen Product," Then So Was The Iphone*, Ars Technica, Feb. 23, 2012 [Ars-Technica-Article] |
| 2043 | User Online Comments of Neonode N2 Overview [Neonode-Comments-2] |
| 2044 | User Online Comments of Neonode N2 instructions film [Neonode-Comments-1] |
| 2045 | User Online Comments of Neonode N2 unbox and review video [Neonode-Comments-3] |
| 2046 | Euro Dollar Exchange Rate (EUR USD) - Historical Chart (available at https://www.macrotrends.net/2548/euro-dollar-exchange-rate-historical-chart) [Euro-Dollar-Exchange-Rate] |
| 2047 | US Inflation Calculator (available at https://www.usinflationcalculator.com/) [Inflation-Calculator] |
| 2048 | Smartphone Shipments Declined in the Fourth Quarter But 2021 Was Still a Growth Year with a 5.7% Increase in Shipments, According to IDC, Jan. 27, 2021 (available at https://www.idc.com/getdoc.jsp?containerId=prUS48830822) [Smartphone-Shipments] |

507SAM_00063011

| 2049 | Paperback Oxford English Dictionary, Seventh Edition, p. 273, 306 (7th ed. 2012) [Oxford-English-Dictionary] |
|---|---|
| 2050 | The American Heritage College Dictionary, p. 520, 579 (3rd ed. 1997) [The-American-Heritage-College-Dictionary] |
| 2051 | U.S. Publication No. 2004/0021643 [Hoshino] |
| 2052 | Merriam-Webster's Collegiate Dictionary, p. 445-446, 495 (10th ed. 1993) [Merriam-Webster's-Collegiate-Dictionary] |
| 2053 | Declaration of Parham Hendifar |
| 2054 | Second Declaration of Ulf Martensson [Martensson-Decl.] |
| 2055 | Refiled Declaration of Per Bystedt [Bystedt-Decl.] |
| 2056 | Refiled Declaration of Marcus Backlund [Backlund-Decl.] |
| 2057 | Concise Oxford English Dictionary, Revised Tenth Edition, p. 542, 602 (2002) [Oxford-English-Dictionary] |
| 2058 | Redline of Default Protective Order |
| 2059 | Joint Proposed Protective Order |
| 2060 | Patent Owner's Response – Public Redacted Copy |
| 2061 | Exhibit 2055 – Public Redacted Copy |
| 2062 | Second Deposition Transcript of Petitioner's Expert, Dr. Jacob O. Wobbrock, Sep. 8, 2022 [Wobbrock-2nd-Depo] |

507SAM_00063012

# I.  PETITIONER'S ROBERTSON-GROUNDS FAIL FOR FIVE INDEPENDENTLY SUFFICIENT REASONS.

## A.  Petitioner Fails To Prove That Its Robertson-Grounds Render Obvious The "Gliding … Away" Limitation.

The claims concern activating a representation of a function by "gliding … away."  Petitioner contends that the claimed "gliding" is satisfied by Robertson's "flick" gesture but fails to prove that a "flick" is a "glide."  *See* Section I.A.1, *infra*.  Instead, Petitioner seeks to erase the "gliding ... away" limitation, arguing instead that ***any*** movement is "gliding ... away" in contravention of the plain meaning and the intrinsic record.  *See* Section I.A.2, *infra*.  Relying upon this same errant interpretation, Petitioner similarly fails to prove that Robertson's "insert gesture" is "gliding ... away."  *See* Section I.A.3, *infra*.

### 1.  Petitioner Does Not Attempt To Prove That A "Flick" Is A "Glide."

The POR demonstrated that Robertson's "flick" does not disclose "gliding ... away" under the plain meaning and the intrinsic record.  POR, 31-44.  Petitioner's Reply does not even attempt to prove otherwise.  Critically, Petitioner's expert elected not to address the meaning of "gliding" and "flicking" even in his second declaration.  *See Samsung Elecs. Co., Ltd. v. Elm 3DS Innovations, LLC*, IPR2016-00393, Paper 62, 37 (PTAB Jun. 23, 2017) ("We also note the absence of further declaration testimony ... in support of Petitioner's Reply .... Such untethered

1

507SAM_00063013

reference to conclusory attorney-argument are insufficient ... [to show obviousness]").

And even Petitioner's attorney argument evades Neonode's evidence. Petitioner does not address the fact that "gliding" and "flicking" connote entirely different motions.  POR, 37-38 (comparing images of "flicks" versus "gliding").  A picture is worth a thousand words and, yet, Petitioner has nothing to say about those images.  Nor does Petitioner identify *any* instance wherein a "flick" refers to a "gliding" movement.

Petitioner provides no dictionary definitions in support of its position but quibbles with Neonode's numerous dictionary definitions as being "unavailing because they are either after-arising or improperly contradict the intrinsic record." Reply, 10.  Neither is true.  Neonode provided dictionary definitions from approximately the time of Robertson in the early 1990s (Ex. 2052, 2050) to '879's filing date (2002) (Ex. 2057) to a decade later in 2012 (Ex. 2049), all consistently showing the same distinction between a "flick" and a "glide."  POR, 36. Furthermore, none of those definitions "contradict" the intrinsic record.  As explained, the Applicant, by words and video, described the claimed "gliding" as a "swipe" gesture, which is entirely consistent with the dictionary definitions of "gliding."  *See* Section I.A.2, *infra*.

2

Petitioner also claims that the undisputed evidence of leading manufacturers such as Apple and Petitioner Google itself distinguishing between a "flick" and a "swipe" is "irrelevant because they do not describe the terms in 2002." Reply, 10 n. 2. But Petitioner presents no evidence for the insinuation that these terms were used differently in 2002.

Petitioner also disingenuously asserts that Neonode's expert "admitted" that the distinction between "flick" and "glide" is "arbitrary because [their] classification depends [on] how the system is configured." Reply, 8, 11. Dr. Rosenberg made no such admission. Rather, he explained that "one number" would not suffice to distinguish between a "flick" and a "glide" since it would depend on various factors such as screen size, resolution of the screen, whether a stylus or finger is used. Ex. 1031 [Rosenberg-Decl.] 28:16-29:6. For example, whether a given movement is considered long or short, or "smooth" and "sharp," may depend on whether the screen on which it is being performed is, for example, 3" or 50." That does not make the distinction between the two gestures "arbitrary." In fact, Petitioner Google itself is able to distinguish between a swipe and a flick in its own documents outside of this litigation. POR, 40-41.

Accordingly, Petitioner fails to show that Robertson's "flick" discloses "gliding … away."

3

2.  <u>Petitioner Arguments Rely On "Gliding … Away" Meaning Any "Movement."</u>

As discussed, Petitioner failed to prove a "flick" discloses a "glide" based on the plain meaning or by proffering any construction.  Instead, Petitioner's Reply confirms that Petitioner is simply arguing that a "glide" is ***any*** movement.  Reply, 7-8.  Neonode demonstrated that this notion is refuted by the plain meaning and prosecution history.  POR, 32-35.  Petitioner's Reply fails to rebut that demonstration.

a.  *Petitioner Disregards The Prosecution History.*

Petitioner neglects the prosecution history, which confirms that "gliding" is not just any "movement."  POR, 33-35.  Petitioner argues that the Applicant "never distinguished 'gliding' from other gestures or movements generally."  Reply, 8.  This is false.  The Applicant expressly amended the claims from "moving-from-to" to "gliding ... away," after a video demonstration and an examiner interview, to "properly claim the present invention."  POR, 34-35.  This change informs a POSITA that a "glide" is not just any movement, *Ajinimoto*,[1] and forecloses Petitioner's suggestion to the contrary.

Petitioner also asserts that the Applicant "equated other gestures," such as a "***drag***," with a "glide."  Reply, 8.  Even were this true, it would have no bearing on

_____

[1] Notably, Petitioner does not even attempt to distinguish *Ajinomoto*.  POR, 35.

4

507SAM_00063016

whether a "*flick*" is a glide.  And it is not true.  The Applicant explained that Hoshino's drag-and-drop operation did *not* meet the "gliding … away" limitation (*see* Ex. 1002 [Prosecution-History] 498; *see also* Section II, *infra*) and in the pages cited by Petitioner (Reply, 8, *citing* Ex. 1002, 496-497), the Applicant *repeatedly* described Hoshino's movement as a drag and distinguished its conventional "drag-and-drop" from the claimed "novel touch-and-glide":

| Some distinctions between claimed invention and Hoshino | | |
|---|---|---|
| | **Claimed invention** | **Hoshino** |
| **Objective** | Novel touch-and-glide user interface operation | Discriminate between two conventional operations; namely, (1) touch, and (2) drag-and-drop |

Ex. 1002, 497.  In another figure, the Applicant highlighted the different *ordering* of actions between the claimed invention and Hoshino.  *Id*.  In Hoshino, the movement happens after activation, but in the claimed invention, the movement happens before activation.  *Id*.

　　　Conversely, where the Applicant did address the meaning of "gliding," it equated "gliding" to, *e.g.*, "swiping," "rubbing," or "sliding," but *not* to a flick (or drag).  Ex. 1002, 273, 390.

　　　Petitioner also claims that Neonode's video demonstration is not relevant to the meaning of "gliding," because it was supposedly submitted to show that the representation of the function is not relocated or duplicated.  Reply, 8-9.  Not so. At the time the Applicant "encouraged" the Examiner to "watch the video

5

demonstration," and after the Examiner acknowledged the invention, the claims were amended from "moving" to "gliding." POR, 33-34. The Applicant did not make any arguments regarding "duplication or relocation" of the representation of the function in connection with the video demonstration, and this language was not added to the claim until later.

b. *Petitioner's Written Description Argument Is Irrelevant And Incorrect.*

The thrust of Petitioner's argument is that the proper construction of "gliding" as being distinct from any generic movement "renders all claims invalid for lack of written description and cannot be correct." Reply, 7. Petitioner's argument is improper and wrong.

First, "compliance with the written description requirement of Section 112, Paragraph 1, is not an issue that Petitioner is permitted to raise in the Petition." *Apple Inc. v. OpenTV, Inc.*, IPR2015-00969, Paper 30, 19 (PTAB Sept. 20, 2016) (*citing* 35 U.S.C. § 311(b)). Thus, where the applicant makes the meaning of a claim term clear in prosecution, the Board adopts that construction ***even if*** it may raise written description issues. *Id.*, 19-20; *see also Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1363 (Fed. Cir. 2015) ("written-description and enablement challenges were not, and could not have been, part of the inter partes review that is now before us. ... Sipnet's arguments about insufficient support for

6

507SAM_00063018

the claims if they are given their plain meaning ... do not alter our conclusion about claim construction.").

Second, the "axiom of construing claims to preserve their validity" (*Apple*, IPR2015-00969, Paper 30, 19) does not apply here because it is a last resort if the claim is "still ambiguous" after "applying all the available tools of claim construction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 911 (Fed. Cir. 2004) (citations omitted). Here, as explained above, the prosecution history clearly and unambiguously informs a POSITA that the claimed "gliding ... away" is distinct from "moving-from-to." POR, 34-35. More significantly, Petitioner does not make any attempt to show that "gliding"—a particular and familiar type of movement—encompasses ***any*** "movement." Thus, Petitioner's entire discussion on this point is simply irrelevant.

Petitioner's assertion that "gliding" lacks written support is also incorrect. *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1346 (Fed. Cir. 2016) (finding "the Board placed undue weight on the absence of the terms in the specification," as figures and diagrams may provide necessary written support).

507SAM_00063019

Figure 2 clearly shows a finger movement consistent with a "glide."  It does ***not*** show a "flick."  *See also* POR, 36-38.[2]

>    3.    Petitioner's Reliance On Robertson's "Insert" Gesture Fails.

Neonode explained that Petitioner failed to show that Robertson's "insert" gesture disclosed "gliding … away."  POR, 47-49.  Petitioner has no response other than again arguing that "gliding" encompasses any movement.  Reply, 11.  Indeed, Petitioner expressly relies upon its deficient "flick" argument for the "insert" gesture as well.  Reply, 11.  Petitioner further does not dispute Neonode's showing that the Petition provided a misleading depiction of Robertson's insert gesture.  POR, 49-50.  Nor did Petitioner respond to Neonode's detailed showing that the "insert gesture" does not resemble a gliding … away/swiping gesture (POR, 48 (*citing* Ex. 2019 [Rosenberg-2nd-Decl.] ¶ 100)).  Thus, because Petitioner's underlying premise that "gliding" is any movement is wrong, and because Petitioner does not show why an "insert" gesture discloses "gliding … away," its reliance on the "insert" gesture fails.

---

[2] Moreover, there is ample evidence, including the N1 protype and the testimony of Mr. Goertz, establishing that the inventor was in possession of the concept of "gliding" as of the '879's priority date.  *See, e.g.*, Ex. 1044 [Goertz-Depo.] 66:8-12; 91:7-12.

507SAM_00063020

Neonode also explained that Robertson's "insert" gesture fails for the second reason that it does not activate a "represented function."  POR, 45-47.  This is because Robertson's insert gesture has nothing to do with the function of any icon; rather, it is a generic gesture that allows editing of any icon similar to how a right-click of a mouse allows editing of a Microsoft Word icon, unrelated to the icon's word-processing function.  *Id*.

In response, Petitioner argues that "Neonode does not explain why Robertson's phone button cannot represent more than one function," and that "Neonode's arguments appears to be that the button must visibly show or identify the function."  Reply, 12.  Both statements misapprehend Neonode's argument.  The function of the icon may be, *e.g.*, emailing or printing.  Editing the icon, *e.g.*, changing its size or position on the screen does not perform the icon's function.  By analogy, the function of a car is to drive.  That a car can be painted different colors is not a function of the car.  Thus, the issue is not that a Robertson button cannot have more than function or that the function must be visible; rather, editing an icon is not a "function" of the icon at all.  While Petitioner now argues that the editor is a function of Robertson's phone button (Reply, 12), it argued just the opposite in the Petition:

> The location of the "Phone" button (representation) includes ***only a phone function*** and not touch functionality for a different function, e.g., printing.

507SAM_00063021

Pet., 46.  Thus, Petitioner's reliance on the insert gesture to disclose "gliding …

away" fails.

### B. Petitioner Fails To Prove The Robertson-Grounds Disclose "Wherein The Representation Consists Of Only One Option For Activating The Function."

The limitation "the representation consists of only one option for activating

the function" was added during prosecution to overcome Hirshberg's disclosure of

providing the user with multiple options for what action to take depending on the

input gesture.  POR, 51.  As Neonode explained, Robertson is just like Hirshberg

in that respect.  POR, 52-53.  For example, Robertson's phone button gives users

the options of showing the telephone number by clicking or dialing the telephone

number by right-flick.  *Id.*  Petitioner's expert did not "recall" analyzing the

prosecution history in this regard for his opening declaration, Ex. 2018

[Wobbrock-1st-Depo.] 98:16-20, and did not address it in his second declaration

either.  The Reply's attorney arguments fail.

Petitioner misapprehends Neonode's position as requiring "that the

representation represents *only one function*" (Reply, 13).  Petitioner then aims its

fire at that misapprehension, arguing that it contradicts the specification and is

rebutted by claim differentiation.  Reply, 13.  But Neonode does not argue that the

representation must represent "only one function."  Rather, Neonode argues that

even if the representation may represent different functions depending on the

507SAM_00063022

context, the user is provided with only one option on what action to initiate in that context.

Neonode's understanding is confirmed by the same portion of the '879's specification cited by Petitioner.  Reply, 13 (*citing* Ex. 1001, 4:4-5, 4:12-15).  The '879 explains that "the first function 21" is application dependent and may represent different functions depending on the context.  Ex. 1001, 4:4-5, 4:12-15.  However, the user is not provided with those different options to choose from; rather, as the user "glide[s] … away," there is only a single option with respect to the representation of the function in a particular context regardless of the direction of "gliding."  Ex. 2019 [Rosenberg-2nd-Decl.] ¶ 105.  Petitioner does not rebut this interpretation of the claim, but only its misapprehension of Neonode's position.

Petitioner also argues that the Applicant distinguished Hirshberg on the basis that it activated a function by "both glide and 'conventional touch'" depending "on whether the device is in a single or multi-function mode."  Reply, 14 (*citing* Ex. 1002, 541-542).  In fact, the Applicant explained Hirshberg teaches that single-character keys in ***both*** the single and multi-function modes were activated the same way: upon touch.  Thus, different activations based on the single or multi-function modes was not the issue.  Ex. 1002 [Prosecution-History] 542 (*quoting* Hirshberg, [0055], [0074]).  Rather, the Applicant explained that Hirshberg teaches a touch-and-glide activation only for keys that comprise several characters, and for those

11

507SAM_00063023

keys, the user had multiple options of what letter to activate depending on the direction of the glide.  Ex. 1002 [Prosecution-History] 541-542.  "In distinction" to Hirshberg's operation providing multiple options to the user for multi-character keys, the Applicant explained that "the claimed invention uses a multi-step touch-and-glide operation for representations that consist of only one option for activating the function."  *Id.*, 542.

Finally, Petitioner presents a new theory of unpatentability for claim 1, arguing that a POSITA would have been motivated to modify Robertson's buttons "to representing only one function," as supposedly discussed in the Petition in connection with claim 17.  Reply, 14.  Petitioner's untimely argument should not be considered.  *Wasica Fin. GmbH v. Cont'l Auto. Sys.*, 853 F.3d 1272, 1286-1287 (Fed. Cir. 2017); *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1330-1331 (Fed. Cir. 2019).  Petitioner's argument is also incorrect.  As Dr. Rosenberg explained, Robertson trumpets its multi-action buttons as a major improvement and as "[an] additional goal[]."  Ex. 2019 [Rosenberg-2nd-Decl.] ¶¶ 110-111 (*quoting* Ex. 1005 [Robertson] 37).  Petitioner provides no reason why a POSITA would undo Robertson's "additional goal."  There is also no basis for Petitioner's assertion that even if a POSITA would, contrary to Robertson's teaching, assign a single function to XButtons, she would use a flick gesture over the much faster and simpler tap in order to avoid "accidental activation."  Pet., 46.  There is no

12

507SAM_00063024

indication that Robertson, which is intentionally a complex, multi-gesture button system, has any "accidental activation" problems, or any evidence that flicks were less accident prone or were a known method of preventing accidental activation. *See also* Ex. 2019 [Rosenberg-2nd-Decl.] ¶ 146.

Thus, Petitioner fails to show that Robertson discloses the "one-option" limitation.

### C.   Petitioner Fails To Show That Its Robertson-Grounds Disclose Or Render Obvious The Preamble's Computer Program Code Being "Read By A Mobile Handheld Computer Unit."

The POR explained why, as the Petition conceded, Robertson does not disclose that the program code for its user interface be on the same device as the display unit, and why Petitioner's proffered motivation to modify Robertson to so operate was inadequate.  POR, 62-64.[3]

In response, Petitioner attempts to re-write the Petition, stating that "Neonode wrongly argues that Robertson uses a client-server architecture that does not store the computer program code on the same device displaying the user interface," and claiming that "[t]he Petition explains" why that is not true.  Reply, 18-19.  But the Reply does not cite the Petition for what it supposedly explained.

---

[3] Petitioner does not present any argument challenging Neonode's showing that the preamble is limiting.  POR, 55 n.3; Reply, 15.

507SAM_00063025

Nor does it cite Robertson for how it supposedly operates. It cites to its expert declaration (Ex. 1003, ¶ 115) for the different claim 2, but that cannot override the Petition's and its expert's express allegation relating to claim 1 that "it would have been obvious" to modify Robertson because doing so would "provide a unitary system." Ex. 1003 [Wobbrock-Decl.] ¶ 86; Pet, 14.

Thus, the Robertson-Grounds all fail.

### D. Petitioner's Robertson-Grounds Fail To Disclose Or Render Obvious The Preamble's "Mobile Handheld Computer Unit."

Petitioner argues that the combination of Robertson and Maddalozzo renders the preamble's "mobile handheld computer unit" obvious. Pet., 12 n.1. The premise behind Petitioner's argument is that Robertson is silent on the type of system that it utilizes, and a POSITA would have been motivated to import Robertson's X-Button in Maddalozzo's mobile handheld computer unit. Pet., 14-15. As Neonode explained, however, Robertson's system is not intended for a "mobile handheld computer unit. POR, 56-58. Thus, the premise of Petitioner's combination is incorrect.[4]

---

[4] Petitioner asserts that Neonode "does not challenge" the Institution Decisions' finding that a "mobile handheld computer unit" may encompass laptops. Reply, 16. But that does not mean that *any* laptop, regardless of size and

507SAM_00063026

Moreover, regardless of whether Robertson allows implementation in a "mobile handheld computer unit," Neonode explained why a POSITA would not have been motivated to implement it in Maddalozzo's system.  POR, 58-61. Petitioner responds that its combination "does not rely on Maddalozzo's interface, but rather Maddalozzo's disclosure of mobile computers running on the same Unix and X-based systems."  Reply, 18.  In essence, Petitioner argues that it is not really relying on Maddalozzo's device, and is not really combining Maddalozzo with Robertson, but it is merely using Maddalozzo as a prop for some undefined, generic "mobile handheld computer unit" with no provided specification or user-interface for Neonode to respond to or analyze.  What functions are available on the display?  How are the icons arranged and what is their spacing?  What are the technical specification and processing power of the device?  Without this and additional information, it is impossible to assess, and for Neonode to address, how or why a POSITA would have been motivated and able to import Robertson's X-Buttons into another system with an unknown user interface.

-----

form factor, is a "mobile handheld computer unit."  Ex. 2062 [Wobbrock-2nd-Decl.] 12:6-13:8; 14:13-15:9.  Laptop or not, the type of system implementing Robertson's interface would not be a "mobile handheld computer unit."

15

507SAM_00063027

In its Preliminary Response, Neonode explained that, to the extent Petitioner attempts to rely on a black-box device with no specification, its combination fails. Paper 15 [Preliminary-Response] 26-27; Ex. 2001 [Rosenbert-1st-Decl.] ¶ 48.  The Board, in instituting trial, rejected that understanding of the Petition, and instead proceeded to address the Petition as to why "an ordinarily skilled artisan would have used Robertson's XButtons *in Maddalozzo's mobile handheld devices*." Paper 19, 35-36.  And in fact, a combination that uses Maddalozzo only as a prop for some undefined device should be rejected for failing to show how the combined system is supposed to work, or what the combined system even is. *Personal Web Techs., LLC v. Apple, Inc.,*, 848 F.3d 987, 994 (Fed. Cir. 2017) ("the Board nowhere clearly explained, or cited evidence showing, how the combination of the two references was supposed to work."); *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1359-63 (Fed. Cir. 2019).

Petitioner's ambiguity concerning how it is using Maddalozzo's device further confirms that a POSITA would not have been motivated to implement Robertson's X-Buttons in a "mobile handheld computer unit."  This is because even though the Reply asserts that X-Window was supposedly routinely used in "mobile handheld computer units," (*see, e.g.*, Reply, 16), Petitioner does not rely on any such reference, but instead relies on Maddalozzo, attempting to make it a black-box without a known interface or specifications, in order to evade challenge.

16

### E.     Petitioner's Belated Attempt To Show Robertson Is Analogous Art Fails.

The Petition fails as a matter of law because it failed to even allege, let alone prove, that Robertson is analogous.  The phrases "analogous art," "field of endeavor," and "problem" are not even used in the Petition.  As the Petition was required to make this showing in the Petition (POR, 18-19 (citing cases)), the Reply's belated attempt to remedy this deficiency is untimely.  In any event, Petitioner's belated effort fails to meet its burden.

The Reply does not dispute that the field of the '879 is "user interfaces for mobile handheld computer units," but instead alleges Robertson's field is broad enough to encompass it.  Reply, 2.  The Reply (at 2-3) alleges that Robertson's use of the word "desktop" may refer to a generic operating environment in any device, not just desktop computers.  Reply, 3.  Critically, that does not rebut Neonode's showing that Robertson's system, published in 1991, does not disclose X-Buttons in "a mobile handheld computer unit," much less make that its field of endeavor.  Ex. 2019 [Rosenberg-2nd-Decl.] ¶¶ 60-64, 130-131.  Instead, Robertson is a desktop of 1991, even though it may use a "light pen" for gesture input (*id.*, 37 (discussing "light pen"):

17



Even though Petitioner points to small devices that implemented some elements of X-Window (Reply, 16), that does not change the nature of Robertson's system and its multi-action X-Buttons as a desktop.  Ex. 2019 [Rosenberg-2nd-Decl.] ¶ 131.

Petitioner cites *Biogen Idec. Inc. v. GlaxoSmithKline LLC,* 713 F.3d 1090 (Fed. Cir. 2013) for the proposition that Robertson is analogous art because the applicant in a different application did not challenge an examiner finding that it is. Reply, 3.  *Biogen* is inapposite because there, the issue was prosecution disclaimer, and the applicant had affirmatively adopted and used the same language used by the examiner to describe the scope of the invention.  *Biogen*, 713 F.3d, 1096.  No such facts are present here.

18

507SAM_00063030

Petitioner also argues, without any expert support, that Robertson is reasonably pertinent to the problems with which the inventors were concerned. Reply, 4.  Petitioner relies on Robertson's use of generic phrases such as "simple" or "familiar," but makes no showing that what is considered "simple" or "familiar" in the context of Robertson's "first class Desktop objects" has any bearing on the problems with which the '879's inventors were concerned in mobile handheld computer units.  The use of broad terminology that can mean different things in different contexts is not indicative that art is analogous.  *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 864-65 (Fed. Cir. 1993) (memory module for industrial controller not analogous art to memory module for personal computers).

## II.     THE TARPENNING GROUNDS FAIL.

As Neonode explained (POR, 65-73), Petitioner's Tarpenning grounds fail because Petitioner does not show why a POSITA would have been motivated to import the concept of "gliding … away," which appears nowhere in Tarpenning, into Tarpenning, and then substitute it for Tarpenning's own touch activation. POR, 66.

The Reply first argues that activation by "gliding … away" is present in Tarpenning because it discloses a drag-and-drop operation to assign a function to the hot key.  Reply, 19.  But as Neonode explained, both the plain meaning and prosecution history make clear that "drag-and-drop" is not the same as "gliding …

507SAM_00063031

away," which the Applicant explained is a "swipe."  POR, 68-69.  Petitioner does not proffer any responsive expert testimony to either the prosecution history, or why a drag-and-drop is a swipe gesture.  Instead, it makes the attorney argument that "gliding" and drag-and-drop are the same because the Applicant supposedly called Hoshino's "drag" a "glide" action.  Reply, 20-21.  As discussed in Section I.A.2.a, *supra*, that is not accurate.[5]

Petitioner also claims that Applicant's statement at Ex. 1002 [Prosecution-History] 498:

> Hoshino does not teach gliding a finger away from an icon.  Instead, Hoshino teaches a drag-and-drop operation for moving an icon.  In

merely relates to "moving an icon."  Reply, 21.  But if the only distinction were that the icon is moved, there would have been no need to mention, and underline, that Hoshino is a "drag-and-drop operation."  *Hulu LLC v. DivX LLC*, IPR2021-01418, Paper 15, 24 (Mar. 15, 2022) ("Critically, the very next sentence begins with the word *instead* ….").  Nor does Petitioner's argument rebut that the

_____

[5] Although an examiner amendment of "wherein the representation of the function is not relocated or duplicated during the gliding" was entered for clarity, it was made after the claims were already allowed and does not affect "gliding" not being a "drag-and-drop."  Ex. 1002 [Prosecution-History] 565-569; 610-613.

507SAM_00063032

Applicant distinguished its "novel" "touch-and-glide" from Hoshino's "conventional" drag-and-drop operation.  Ex. 1002 [Prosecution-History] 497.

Petitioner next argues that Dr. Rosenberg "testified that a 'drag' is the same as a 'glide.'"  Reply, 19.  Not so.  In the context of Robertson (not Tarpenning), Dr. Rosenberg explained that in Robertson, the way its system is disclosed to operate, if Robertson's "flick" were a "glide" so that it would, *inter alia*, have to move for longer distances, Robertson's system at the outset would have difficulty distinguishing the flick from a drag-and-drop because the pen would be moving beyond the distance for a flick.  Ex. 2019 [Rosenberg-2nd-Decl.] ¶ 90.  Nothing there suggests that a "glide" is generally the same as a "drag."

With respect to Petitioner's failure to proffer any legally sufficient motivation to modify Tarpenning to activate functions by "gliding … away," the Reply fails to offer anything new, including any new expert testimony.  All of the claims stated in the Reply, 21-23 are already rebutted (POR, 69-74).  Thus, the Board's initial rejection of this ground should stand.  Paper 19, 42.  The Reply's only new citation to authority is to *PAR Pharm, Inc. v. TWI Pharms, Inc.*, 773 F.3d 1186 (Fed. Cir. 2014) for the proposition that "Neonode disagrees whether the modification is a better option, but that does not obviate obviousness."  Reply, 23.  However, while *PAR Pharm* states that the modification does not have to be "the best option," nowhere does *PAR Pharm* state that there is motivation to modify a

21

507SAM_00063033

reference so as to *deteriorate* its existing operation—as Petitioner's modification would do to Tarpenning.

The Board should confirm its rejection of the Tarpenning ground.

## III.   PETITIONER FAILS TO REFUTE NEONODE'S EVIDENCE OF SECONDARY CONSIDERATIONS.

Petitioner fails to rebut Neonode's showing that its innovative, swipe-based user interface was effusively praised by industry observers, academia and the users.  POR, 3-17.  Petitioner's expert declined to address secondary considerations in either of his two declarations, even though the Federal Circuit has "repeatedly held that evidence of secondary considerations ***must be considered*** if present."  *Trimed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010).  As discussed below, Petitioner's attorney argument for lack of nexus fails.

Petitioner fails to rebut Neonode's showing of industry praise and commercial success.  Petitioner incorrectly alleges that a nexus does not exist because the N1/N2 phones lack "at least two claim elements."  Reply, 24.  First, based upon the N2 video, Petitioner alleges that the N1/N2 phones activate a function via either a "flick" or a "glide" and, consequently, do not activate the icons "*only* on a 'glide.'"  *Id*, 24-25.  But the video shows no "flick," only a smooth, effortless, swipe motion.  *See, e.g.*, Ex. 2020 [N2-Advertisement-Video] 00:24-00:28.  Moreover, Petitioner's argument rests upon the errant assumption the

507SAM_00063034

claims also do not require the representation "only" be activated by "gliding …
away."  *See* POR, 50-53; Section I.B, *supra*.

Second, Petitioner alleges the N1/N2 did not practice the "representation of
the function is not relocated or duplicated during the gliding" limitation.  Reply,
25.  This too is incorrect.  The N1/N2 both "presented three icons in a strip along
the lower edge of the display" and "[n]one of the icons were relocated or
duplicated during the swiping gesture."  Ex. 2008 [Shain-Decl.] ¶ 6; Ex. 1044
[Goertz] 151:20-152:7 (N1 and N2 each have three printed icons).  These icons are
readily visible:



Three icons that are not relocated or duplicated

Ex. 2039 [PhD-Dissertation] 9; Ex. 2040 [Hollatz-Dissertation ] 8.

Even if the printed icons were to be ignored, the arrows, contrary to
Petitioner's contention, likewise are not "duplicated ***during*** the gliding motion."
Reply, 25.  The video provided to the Examiner confirms that additional arrows

23

appear upon touching without regard to whether a swipe later occurs.  Ex. 2020
[N2-Advertisement-Video] 0:00:15, 0:00:25-26, 0:00:34-35.



Ex. 2008, 0:00:40

*Id.*, 0:00:41

*Id.*, 0:00:43

The arrows, like lights on a runway, are meant to show a potential pathway
for swiping.  Indeed, the additional arrows may appear in a direction orthogonal to
the ensuing sweep, further indicating the arrows are not duplicated ***during*** the
sweep.  For instance, at 0:01:03-1:05, the arrows multiply vertically upon a touch
despite a later horizontal swipe:

24



| *Id.*, 0:01:04 | *Id.*, 0:01:05 |

Petitioner also claims that Neonode only alleges industry praise and commercial success, but not "unexpected results, copying, skepticism, unresolved need, or failure of others."  Reply, 23.  But Neonode presented evidence concerning the iPhone's imitation of Neonode's swipe-based user interface and of unresolved need and failure of others.  POR, 7-8, 11-12; Ex. 2024 [Pen-Computing-Magazine-N2-Phone-Review] 1 ("[I]t must be vexing to see Apple essentially claim ownership of concepts the Neonode phone has been using for at least five years."); Ex. 2038 [User-Video] (calling iPhone "the copycat"); Ex. 2013 [Pen-Computing-Magazine-N1-Phone-Review] 2-3 ("If [Neonode's swipe] sounds like the dreaded 'gestures' that never really caught on in pen computing, it's not."); 2031 [Trend-Hunter-Article] 1 ("[The N2] has the most advanced touchscreen available ….").

Petitioner argues that because Neonode's zForce technology was "required" to implement the N1/N2 user interface, there cannot be "a presumption of nexus

507SAM_00063037

because the N1/N2 are covered by multiple patents."  Reply, 25 (*citing Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1377-78 (Fed. Cir. 2019)).  But Neonode does not rely on any "presumption" of nexus, and thus Petitioner's argument is irrelevant.  For the same reason, Petitioner's reliance (Reply, 24) on *Samsung Elecs. v. Neonode Smartphone*, IPR2021-00145, Paper 71, 40-50 (July 6, 2022), concerning a different patent is misplaced because there, unlike here, Neonode relied on a presumption of nexus.

Petitioner further argues that "[m]uch of Neonode's alleged 'praise' comes from internet commenters, not persons knowledgeable in user interface design." Reply, 26.  This misses the mark.  First, Neonode did include substantial evidence from industry observers and technical magazines.  POR, 3-16.  Second, the '879 is directed at achieving a user-friendly, intuitive user interface, and *users* are ideally suited to comment on the *user* interface.

Petitioner next selectively quotes from various articles of praise cited by Neonode to claim that the praise was for Neonode's "user interface generally" or something other than swiping.  Reply, 26-28.  However, while the commentators were impressed by many features of the N1/N2 phones, there is substantial praise specifically directed at swiping.  *See, e.g.*, Ex. 2013, 2-3 ("Swipe, swipe, swipe"); Ex. 2035, 2 (praising "intuitive passage of the finger over the screen"); Ex. 2024, 1 ("if the iPhone's swipes and taps seem futuristic, they are not," referencing the

26

507SAM_00063038

Neonode's interface); Ex. 2040, 8 (Neonode was "the first mobile to use swipe gestures"). Even the single 2008 article that Petitioner has been able to find that is not unqualified praise ((Reply, 26 (*citing* Ex. 1048))—which came out after the iPhone—still praises Neonode phone's swiping gesture as "the cool factor of using finger swipes to navigate the phone." Ex. 1048, 5. The criticism was due to the "steep price of about $860" and the fact that there were numerous swipes available on the screen, resulting in a "steep learning curve." *Id.*, 3-4.

Petitioner attempts to downplay Samsung's licensing of the '879's application, arguing that the '879 Patent had not yet issued, and that the license included the zForce technology. Reply, 29. But this was no bundled license to hundreds of patents/applications. Rather, the ***exclusive*** license concerned ***two*** specifically identified and complimentary applications, the zForce application (concerning the light beam controlled touch-screen) and the '879's application (concerning the Neno user interface software). Ex. 2014 [Samsung-Agreement] 1-2. Moreover, the '879 application was named "Neno" (*id.*) and was specifically referenced in the Background of the agreement:

> The [Neonode] mobile handsets are based on ... ***software for interaction with the operating system of the device, "Neno".*** Neonode is in possession of technology, - including ... ***Neno*** – intellectual property rights ....

27

Ex. 2014, 2.  Samsung was clearly interested in, and exclusively licensed, both zForce and Neno for a joint product development program.  *Id.*, 4.  Nor was the agreement prompted by a threat of litigation, a prior business relationship or other economic reason that might discount Samsung's undeniable interest.  Petitioner further makes the evidence-free assertion that "[n]o royalties appear to have been paid," but that is contradicted by the Agreement.  Ex. 2014, 5 (section 7).  Petitioner also claims the license's "abandonment" contradicts a claim of non-obviousness but ignores the unchallenged testimony explaining that the license's non-renewal was due to a public corruption scandal at Samsung.  Ex. 2055 [Bystedt] ¶¶ 7, 13-15; Ex. 2009 [Backlund-Decl.] ¶ 15.  Finally, Petitioner alleges that Mr. Bystedt's testimony regarding Samsung's praise is "not trustworthy" because supposedly "Samsung spoke in Korean, which Mr. Bystedt does not understand."  Reply, 28.  Even if Samsung's executives had a sidebar in Korean, it does not change what they said to Mr. Bystedt (Ex. 1058 [Eriksson-Depo.] 75:25-76:2) or the fact that they eagerly entered into an exclusive license to Neno.

Thus, Petitioner fails to rebut the strong evidence of secondary indicia.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner has failed to demonstrate that any of the claims are unpatentable.

507SAM_00063040

Respectfully submitted,

_____ / Kenneth J. Weatherwax / _____

Kenneth J. Weatherwax, Reg. No. 54,528
Nathan Lowenstein (*pro hac vice*)
Parham Hendifar, Reg. No. 71,470
Lowenstein & Weatherwax LLP

Date:  September 20, 2022

29

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITS**

This Patent Owner Sur-Reply (the "Sur-Reply") consists of 5,597 words, excluding table of contents, table of authorities, certificate of service, this certificate, or table of exhibits.  The Sur-Reply complies with the type-volume limitation of 5,600 words as mandated in 37 C.F.R. § 42.24.  In preparing this certificate, counsel has relied on the word count of the word-processing system used to prepare the paper (Microsoft Word).

Respectfully submitted,

/ Parham Hendifar /

Date:  September 20, 2022

1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the following documents were served by electronic service, by agreement between the parties, on the date signed below:

### PATENT OWNER'S SUR-REPLY

### EXHIBIT 2062

The names and address of the parties being served are as follows:

| | |
|---|---|
| Erika Harmon Arner | erika.arner@finnegan.com |
| Kevin D. Rodkey | kevin.rodkey@finnegan.com |
| Yi Yu | yi.yu@finnegan.com |
| | Google-Neonode-IPR@finnegan.com |

Respectfully submitted,

/ Keith Moore /
_____

Date:  September 20, 2022

507SAM_00063043