# EXHIBIT 10

1

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

GOOGLE LLC,

Petitioner,

v.

NEONODE SMARTPHONE LLC,

Patent Owner.

_____

Case No. IPR2021-01041

US Patent No. 8,095,879

REMOTE DEPOSITION OF CRAIG ROSENBERG, PhD

Thursday, July 7, 2022

12:11 p.m. EDT

REPORTED BY:  Deanna Dean, RDR, CRR

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063686

IPR2021-01041

Rosenberg, Ph.D., Craig                                    July 7, 2022

2

1

2                                Thursday, July 7, 2022

3                                12:11 p.m. EDT

4

5

6            Deposition of CRAIG ROSENBERG, PhD, held

7      via Zoom videoconference, before Deanna J. Dean,

8      a Registered Professional Reporter, Registered

9      Diplomate Reporter, Certified Realtime Reporter,

10     and licensed court reporter of the state of New

11     Hampshire.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063687

IPR2021-01041

Rosenberg, Ph.D., Craig                                    July 7, 2022

3

```
1              A P P E A R A N C E S

2

3    Representing the Petitioner:

4    FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP

5         271 17th Street, NW Suite 1400

6         Atlanta, GA 30363-6209

7         (404) 653-6484

8    BY: KEVIN D. RODKEY, ESQ.

9         kevin.rodkey@finnegan.com

10

11   FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP

12        1875 Explorer Street

13        Reston, VA 20190-6023

14        (571) 203-2479

15   BY: YI YU, PHD, ESQ.

16        yi.yu@finnegan.com

17

18   Representing the Patent Owner:

19   LOWENSTEIN & WEATHERWAX LLP

20        1880 CENTURY PARK EAST

21        LOS ANGELES, CA 90067

22        (310) 307-4510

23   BY: PARHAM HENDIFAR, ESQ.

24        hendifar@lowensteinweatherwax.com

25
```

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063688

IPR2021-01041

Rosenberg, Ph.D., Craig                                      July 7, 2022

17

1          ATTORNEY RODKEY:  Okay.

2     **A.    Okay.  It's downloading now.**

3            **Okay.  I have Exhibit 2019 open on my**

4     **screen.**

5     Q.    Okay.  Would you please take a moment to

6     look through Exhibit 2019 and just confirm that

7     it's the second declaration that you submitted in

8     this proceeding.

9     **A.    Yes, it appears to be so.**

10    Q.    And just for formality, if you'll flip to

11    the very last page, which would be page 71, is that

12    your signature there?

13    **A.    Yes, it is.**

14    Q.    If you would, please, could you turn to

15    paragraph 71 of Exhibit 2019.

16    **A.    Okay, I'm looking at paragraph 71.**

17    Q.    Okay.  And if you look in paragraph 71, in

18    the fourth line, about halfway across, there's a

19    sentence that says "While 'gliding' is a particular

20    type of 'movement,' it does not follow that any

21    'movement' is 'gliding,' particularly in the

22    context of touch-based user interfaces."

23           Did I read that right?

24    **A.    You did.**

25    Q.    What do you mean by that statement?

Henderson Legal Services, Inc.

**GOOGLE EXHIBIT 1031**
**GOOGLE v. NEONODE**
**IPR2021-01041**

507SAM_00063702

IPR2021-01041

Rosenberg, Ph.D., Craig                                    July 7, 2022

18

1     A.    Just simply that there are various forms

2  of movement, and gliding is one form of movement.

3          In the next sentence, I sort of described

4  the subset/superset relationship, using the analogy

5  of a chicken is a type of bird but not every bird

6  is a chicken.  Gliding is a type of movement,

7  flicking is a type of movement, but they are not

8  the same.

9     Q.    Would you consider them distinct types of

10 movement?

11         ATTORNEY HENDIFAR:  Objection.  Form.

12    A.    I would.  Distinct from each other, yes.

13    Q.    Are there other types of movements that

14 can be used in touch-based user interfaces?

15    A.    I would say so, yes.

16    Q.    Are there a lot of different types of

17 movements that can be used?

18         ATTORNEY HENDIFAR:  Objection.  Form,

19    scope, and relevance.

20    A.    I guess I would need to think about all

21 the different kinds, but, I mean, tap or touch

22 would be two other kinds of movement.

23         So I think there's -- there's a variety of

24 different kinds.  Whether one would consider it to

25 be a lot or just, you know, more than three or

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063703

IPR2021-01041

Rosenberg, Ph.D., Craig                                    July 7, 2022

19

1   four, there are a number of different kinds of

2   movements, and computer programmers and designers

3   can classify those movements and gestures to enact

4   different outcomes associated with the computer

5   program, to recognize different movements and

6   gestures.

7       Q.   So you mentioned gestures.  Other than

8   flick and glide, what other kind of gestures can be

9   used in touch-based user interfaces?

10          ATTORNEY HENDIFAR:  Objection.  Form,

11      scope, relevance.

12      A.   Well, I just mentioned clicking, which

13  could be just a tap, so down and up; or it could be

14  a touch, which is just down; or it could be -- I'm

15  just -- this is -- by no means is this fully

16  exhaustive, this list.  This is just me giving some

17  examples.

18          There's long press.  There's harder

19  presses, if the input can detect the amount of

20  pressure.  There's drag-and-drop movements.  There

21  can be a variety of different kinds of movements.

22      Q.   So if I'm understanding you right, then,

23  movement is like a -- sorry.  I'm going to go back

24  to basic science class here with, you know,

25  kingdom, phylum, genus, species, all like that.

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063704

IPR2021-01041

Rosenberg, Ph.D., Craig                                    July 7, 2022

20

1        Movement is like a genus; it's like a
2   superset.  And then gliding or flicking would be a
3   species; it's a subset of that genus of movement.
4   Right?
5        ATTORNEY HENDIFAR:  Objection.  Form.
6        A.   Yes.  Like I testified earlier, movement
7   is a superset and gliding is a subset.  I agree
8   with that.
9        Q.   And for gliding and flicking, if the user
10  is using a pen, which I believe is an example that
11  you have in your declaration, do both of those
12  movements involve dragging the pen across the
13  screen for some distance?
14       ATTORNEY HENDIFAR:  Objection.  Form.
15       A.   Well, I wouldn't characterize it as
16  dragging.  I wouldn't say that, because I would --
17  it's important to distinguish between a flick and a
18  drag-and-drop, or even a swipe and a drag-and-drop.
19       But there -- I would really need to think
20  about this and analyze this carefully, and I do
21  talk about in my declaration the differences
22  between flick and swipe.
23       So if your question -- is your question
24  does a flick require at least some minimal distance
25  on the screen?  Is that -- I want to be responsive

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063705

IPR2021-01041

Rosenberg, Ph.D., Craig                                July 7, 2022

21

1    to your question.

2        Q.    Sure.  So let me break it down a little

3    bit.

4            So for a flick gesture, does the object

5    performing the flick gesture need to -- and I'll

6    use a different word -- need to contact the screen

7    for some distance before it's lifted off?

8            ATTORNEY HENDIFAR:  Objection.  Form.

9        A.    Well, I haven't fully analyzed this.  This

10   isn't something that the petitioner's expert, that

11   I'm aware of, had opinions on that, that I needed

12   to respond to.

13           But if -- as a programmer, I -- as a

14   programmer, if it didn't travel any distance at

15   all, then that would be equivalent to a touch or a

16   tap.  If it went down on one pixel and went up on

17   the same pixel, or just stayed down on the one

18   pixel and there was no lateral, you know, vertical

19   or horizontal movement at all, I would need more

20   time analyzing it.

21           But my initial thought is I don't believe

22   that that could be detected as a flick.  However,

23   if it traveled just one additional pixel in any

24   direction, then the computer could recognize that

25   as a flick.

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063706

IPR2021-01041

Rosenberg, Ph.D., Craig                              July 7, 2022

22

1           So I guess your question said some
2    distance.  I would think -- and, again, this is a
3    very preliminary analysis here on the fly,
4    unrelated to what I understand is what Dr. Wobbrock
5    has opined on -- that there would likely need to be
6    at least one pixel worth of movement, at a minimum.
7        Q.   Didn't you testify in your declaration
8    that gliding is a "relatively slower, smoother, and
9    longer motion, while flick is a sharper, faster and
10   shorter movement"?
11       A.   I believe that's correct.  If you want to
12   point me to the paragraph where I said that, I can
13   read from it.  But that sounds accurate.
14       Q.   Sure.  And I'll point you to the paragraph
15   just so you can confirm.  It's paragraph 84.  It's
16   the last sentence of that paragraph.
17       A.   Yes.  Yes, I've read that.
18       Q.   So you are drawing some distinction based
19   on the length of the movements.  Correct?
20           ATTORNEY HENDIFAR:  Objection.  Form.
21       A.   That is correct.
22       Q.   What is the maximum length that a flick
23   can be?
24           ATTORNEY HENDIFAR:  Objection.  Form.
25       Scope and relevance.

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063707

Rosenberg, Ph.D., Craig                          July 7, 2022

27

1   did you draw the boundary between a flick and a

2   glide?

3          ATTORNEY HENDIFAR:  Objection.  Form,

4      scope, and relevance.

5      A.   I believe this is the fourth time you've

6   asked the same question where you're trying to

7   elicit a certain number, at what length, you know,

8   what's the distance.  And I'm politely saying for

9   the fourth time it's not my role to on the fly to

10  do -- I haven't done that analysis because it

11  wasn't required of me.  What was required of me was

12  to be responsive to Dr. Wobbrock and to apply the

13  plain -- analysis of plain and ordinary, which is

14  what I did.

15     Q.   So, to be clear, although you said you did

16  an analysis of the plain and ordinary meaning of

17  flick and glide, used the meanings of flick and

18  glide to distinguish a prior art reference from the

19  '879 patent in your opinion, you cannot offer the

20  delineation between flick and glide in terms of

21  distance moved.  Correct?

22     A.   I guess that's one way to put it, but I

23  wouldn't put it that way.  The way I would put it

24  is the way that I've said a few times now, which is

25  I have been responsive to Dr. Wobbrock and

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063712

IPR2021-01041

Rosenberg, Ph.D., Craig                                      July 7, 2022

28

1    Dr. Wobbrock did not offer any opinions himself on
2    the distance between flick and glide.  I would have
3    been happy to read his opinion, go through his
4    analysis, point out where I agree with
5    Dr. Wobbrock, where I might disagree with
6    Dr. Wobbrock.
7           But that wasn't done.  My understanding is
8    just to do an analysis of what one of skill in the
9    art, a POSITA, would understand when reading the
10   terms "flick" or "glide" or "swipe."  And I've done
11   that analysis in the various paragraphs that I
12   pointed you to.  I think it was 40, 77, and 84, at
13   least in those -- those paragraphs.  So I don't
14   have a number for you how many meters per second,
15   how many pixels per second.
16          And, by the way, that one number in my
17   analysis would also depend.  It would probably
18   depend on many different things.  It would depend
19   on the screen size.  It would depend on the
20   resolution of the screen.  It would probably depend
21   on the input device, whether you're using a stylus,
22   whether you're using a light pen, whether you're
23   using a finger.  It would probably depend on the
24   task.
25          So it's -- the question, I think, is -- I

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063713

Rosenberg, Ph.D., Craig                                   July 7, 2022

29

1    don't want to say your question is flawed because I

2    certainly don't want to be disrespectful.  But I

3    think that one number doesn't suffice to answer

4    that question what the difference between a flick

5    and a glide.  It would really depend on so many

6    attributes of both systems anyway.

7        Q.   So in some cases, depending on different

8    systems, what's considered in one system might be

9    considered a glide in another, depending on all the

10   factors that you just listed?

11           ATTORNEY HENDIFAR:  Objection.  Form,

12       scope, and relevance.

13       A.   I can't answer that.  I think really the

14   difference between a flick and a glide are -- are

15   best -- my opinions related to that, the plain and

16   ordinary meaning, which is what controls -- to my

17   understanding, "control" might not be the best,

18   accurate word -- but what's appropriate in this

19   case is on paragraphs 77, 40, and -- I'm sorry --

20   40, 77, and 84, with the dictionary definitions

21   being on 77.  So, there, you can see -- see the

22   differences.

23           I also have a number of graphics on

24   page 35 and 36 of my report.  A POSITA would

25   understand the difference between a flick and a

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063714

IPR2021-01041

Rosenberg, Ph.D., Craig                                    July 7, 2022

34

1   of the original claims as filed?

2           ATTORNEY HENDIFAR:  Objection.  Form.

3       A.   Again, I'd need to review the prosecution

4   history, but I believe the -- at a high level, the

5   term was "movement" or "move," and that that was

6   narrowed to "glide" or "gliding away," after

7   discussions with the applicant, after reviewing the

8   video, to properly distinguish between this

9   superset, which is movement, to a subset, a more

10  narrowed claim, which is gliding or gliding away.

11          I do talk about that in my declaration if

12  you'd like me to find the paragraph numbers.

13      Q.   No, that's fine.  I just want your general

14  understanding for now.

15          To be clear, the '879 patent doesn't

16  describe the speed of movement of the thumb or the

17  finger moving across the screen when activating the

18  icons at the bottom.  Correct?

19      A.   Well, there are four references in the

20  '879 that talk about the speed of movement, or the

21  speed of the movement.  If you want me to point

22  those out, basically the bottom of column 2 talks

23  about speed of movement.  And --

24      Q.   So let's go in order here.

25          So the speed of movement in column 2 is

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063719

IPR2021-01041

Rosenberg, Ph.D., Craig                                   July 7, 2022

35

1    referring to the marking on a list.  Correct?

2        A.   According to the present invention,

3    navigation in the list is performed by moving the

4    object in a direction toward the top of the list or

5    toward the bottom of the list.  This will cause the

6    marking to move in the same direction.  The speed

7    of movement of the marking is lower than the speed

8    of movement of the object with the purpose of

9    making navigation easier.  That's correct, yes.

10       Q.   So that's not the activation of the icons

11   at the bottom of the screen shown in Figure 1?

12       A.   Yes, I agree with that.

13       Q.   Okay.  And you said speed was somewhere

14   else?

15       A.   No.  Column 5, around lines 33, and

16   they're talking about the same thing as we just

17   discussed previously there.

18            So the fact that the '879 also didn't

19   describe a single number, if you will,

20   corresponding to -- well, I mean, I don't want to

21   anticipate your question, so I'll just let you

22   speak.  I think it sounded like to me you were

23   trying to ask if the '879 had anything to

24   distinguish between a flick or a swipe.  But like I

25   said, the '879 patent is all about swipe.  It's all

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063720

IPR2021-01041

Rosenberg, Ph.D., Craig                                    July 7, 2022

36

1    about moving away.

2        Q.    Doesn't a flick also move away from a

3    touched point?

4        A.    Well, it's gliding away.  Let me be more

5    precise.  Gliding away.

6             We spoke about how movement is a superset,

7    and swipe and glide are subsets, and even the

8    patent office agrees that movement was too general.

9    So it's -- it was narrowed to be a gliding away.

10            And so, yes, gliding is moving, and, yes,

11   flicking is moving, but they are distinct from one

12   another and moving is too broad.

13       Q.    And flicking is moving away from a touched

14   point.  Correct?

15       A.    As I just said, flick is a kind of

16   movement and swipe is a kind of movement, but both

17   of those, the patent office thought were too broad

18   and unpatentable in that previous form of the

19   claim.  So the claim was narrowed to be more

20   specific to gliding.

21            Yes, basically, to use the analogy, a

22   glide is a bird and a flick is a bird -- I'm sorry.

23   A glide is a move -- to get my analogy straight

24   here, chicken and bird.  Chicken is the subset.

25            So you've got a chicken and you have a

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063721

IPR2021-01041

Rosenberg, Ph.D., Craig                                    July 7, 2022

45

1    understanding of what a function is.

2        Q.   So what definition of "function" did you

3    apply when you wrote your declaration?

4            ATTORNEY HENDIFAR:  Objection.  Form,

5        scope, and relevance.

6        A.   I think -- I don't intend, unless you want

7    me to -- which I would think you would not want me

8    to -- to go through each of the 77 occurrences.

9            But just to start at the first couple of

10   them, in the abstract of the '879 patent, it says

11   the menu area 2 is adopted to present a

12   representation of a first item 21 and a second item

13   22 and a third predefined function.

14           And we -- you can see -- I guess, let me

15   go to the most appropriate figure for you.

16           In Figure 1, we see elements 21, 22, and

17   23, and there's three different icons that bring up

18   three different user interfaces.

19           So at a high level, the function in '879

20   is bringing forward for the user the appropriate

21   user interface associated with the icon that was --

22   that was swiped on, the icon that was glided away

23   from, to use the term that's in the claim.

24       Q.   So the definition of "function" that you

25   applied was bringing forth the appropriate user

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063730

IPR2021-01041

Rosenberg, Ph.D., Craig                                          July 7, 2022

46

1    interface associated with the icon that was glided

2    away from?

3          ATTORNEY HENDIFAR:  Objection.  Form,

4       scope, relevance.

5       A.   Well, in general, like I said, I also --

6    by plain and ordinary meaning, "function" can be

7    broad function and computer programming could be

8    like a method.  A function is a method.  So there's

9    data and there's functions.  It's an operation.

10   It's an algorithm.  It can be called.  It can have

11   arguments.

12          So if one were to look at the code to

13   bring up the user interface associated with a given

14   icon by gliding away from it, one would find a

15   function call or a function, oftentimes with

16   arguments.  So it can be broader than the narrow --

17   what's described in the abstract.

18          I think the abstract is -- is important.

19   The abstract of '879 is -- is important and

20   relevant because they talk about that function of

21   displaying the appropriate interface.  But one of

22   skill in the art wouldn't say that a function --

23   you know, dialing a phone number is a function in

24   Robertson.  Displaying a phone number is a

25   different function in Robertson.  So there are

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063731

IPR2021-01041

Rosenberg, Ph.D., Craig                                July 7, 2022

47

1    functions in Robertson, too.

2            Function is broader than just bringing up

3    a user interface, but that's how it's used at least

4    in part of the '879 patent.

5        Q.   So can a representation, then, in the '879

6    patent have different functions associated with it?

7            ATTORNEY HENDIFAR:  Objection.  Form,

8        scope, and relevance.

9        A.   Say -- please say the question one more

10   time.

11       Q.   Yeah.

12           Can a representation in the '879 patent

13   have different functions, or have more than one

14   function associated with it?

15       A.   Yeah.  I believe you asked that --

16           ATTORNEY HENDIFAR:  Objection.

17           THE WITNESS:  I'm sorry, Parham.  Go ahead

18       with any objection.

19           ATTORNEY HENDIFAR:  Objection.  Form,

20       scope, and relevance.

21       A.   I believe I answered that question.  I'm

22   not sure if it was just before the break or just

23   after the break.  But that's not something that

24   Dr. Wobbrock opined on.  So my role, being

25   responsive to Dr. Wobbrock, I have not considered

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063732

IPR2021-01041

Rosenberg, Ph.D., Craig                                    July 7, 2022

48

1    that.  Yeah, I think that was the same question you

2    asked earlier.

3        Q.   All right.  I'm still -- you gave kind of

4    a long rambling answer, so I'm still trying to

5    understand if you can do it more succinctly.

6             What is your general understanding of what

7    a function is?

8             ATTORNEY HENDIFAR:  Objection.  Scope,

9        relevance, and form.

10       A.   In general or in the context of this

11   patent?

12       Q.   Let's start with in general.

13       A.   In general and in software engineering, it

14   would be a method, a procedure.  Sometimes it takes

15   the form of an algorithm.  It usually invokes some

16   action.  Sometimes it's visible to the user.

17   Sometimes it may not be visible to the user.

18            Just in general, functions are one of the

19   basic building blocks of computer programming.  You

20   have data and you have functions, and functions can

21   take data in terms of arguments.  They can

22   manipulate data.  They can return data.  Functions

23   can call other functions.  Functions can even have

24   functions as their argument.

25            So it's a -- it's very broad in terms of

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063733

IPR2021-01041

Rosenberg, Ph.D., Craig                                    July 7, 2022

49

1    computer programming and what you can do with

2    functions, and it's a big part of programming, both

3    procedural as well as object-oriented programming.

4        Q.    Speaking of objects, what's a first-class

5    object in a user interface?

6            ATTORNEY HENDIFAR:  Objection.  Form.

7        A.    Well, in general, or in -- as Robertson

8    defines it?

9        Q.    In general.

10       A.    Okay.  So, in general, the first-class

11   object can appear in expressions.  They can be

12   assigned to variables.  It can be used as arguments

13   in functions.  Functions can return them.  They can

14   encapsulate data or behaviors.  It's kind of like a

15   standalone computer class -- I don't know how much

16   you know about computer programming; I assume

17   some -- that you can think of a class that may have

18   attributes associated in the class, and you can

19   pass that class to another function.  You can save

20   it to disk and return it.  It's -- it's a lot more

21   portable.  You can assign it to variables.  It just

22   gives the programmer much more flexibility than

23   something that's more temporary and not a

24   first-class object.

25            In Robertson, they equate a first-class

Henderson Legal Services, Inc.

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063734

IPR2021-01041

Rosenberg, Ph.D., Craig                                    July 7, 2022

57

```
 1              C E R T I F I C A T E

 2

 3        I, Deanna J. Dean, a New Hampshire Licensed

 4   Court Reporter, Registered Diplomate Reporter, and

 5   Certified Realtime Reporter, do hereby certify that

 6   the foregoing, to the best of my knowledge, skill,

 7   and ability, is a true and accurate transcript of

 8   my computer-aided electronic stenographic notes of

 9   the deposition of CRAIG ROSENBERG, PhD, who was

10   duly sworn, taken at the place and under the

11   circumstances present on the date hereinbefore set

12   forth.

13        I further certify that present on behalf

14   of the Petitioner, Attorney KEVIN D. RODKEY, ESQ.

15   and YI YU, PHD, ESQ. of FINNEGAN, HENDERSON, FARABOW,

16   GARRETT & DUNNER LLP, and on behalf of the Patent

17   Owner: NEONODE SMARTPHONE LLC, was PARHAM HENDIFAR, ESQ.

18   of LOWENSTEIN & WEATHERWAX LLP.

19        I further certify that I am neither attorney

20   or counsel for, nor related to or employed by any
     of the parties to the action in which this
21   deposition was taken, and further that I am not a
     relative or employee of any attorney or counsel
22   employed in this case, nor am I financially
     interested in this action.
23   _____
              Deanna J. Dean, RDR, CRR
24            NH LCR No. 87 (RSA 310-A)

25        Signed this 14th day of July, 2022
```

GOOGLE EXHIBIT 1031
GOOGLE v. NEONODE
IPR2021-01041

507SAM_00063742