# EXHIBIT 17

UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE PATENT TRIAL AND APPEAL BOARD
U.S. PATENT NUMBER 8,095,879

SAMSUNG ELECTRONICS CO., §
LTD., SAMSUNG ELECTRONICS §
AMERICA, INC., AND APPLE, §
INC., §
 §
   Petitioners, §
 §
vs. § CASE NO. IPR 2021-00144
 §
NEONODE SMARTPHONE LLC, §
 §
   Patent Owner. §

EXPERT ORAL DEPOSITION

DR. CRAIG S. ROSENBERG

May 20, 2022

EXPERT ORAL DEPOSITION OF DR. CRAIG S. ROSENBERG, produced as a witness at the instance of the Petitioner and duly sworn, was taken in the above-styled and numbered cause on the 20th day of May, 2022, from 11:06 a.m. to 4:30 p.m., before Michelle Hartman, Certified Shorthand Reporter in and for the State of Texas and Registered Professional Reporter, reported by computerized stenotype machine via Zoom videoconference, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

1

EXHIBIT 1053
Samsung et al. v. Neonode
IPR2021-00144

507SAM_00054249

2

```
 1                        APPEARANCES

 2   FOR THE PETITIONER:

 3        Ms. Tiffany C. Miller
          DLA PIPER LLP
 4        401 B Street
          Suite 1700
 5        San Diego, California 92101-4297
          Telephone: 619-699-2700
 6        E-mail: tiffany.miller@dlapiper.com

 7   FOR THE PATENT OWNER:

 8        Mr. Parham Hendifar
          LOWENSTEIN & WEATHERWAX LLP
 9        1880 Century Park East
          Suite 815
10        Los Angeles, California 90067
          Telephone: 310-307-4510
11        E-mail: hendifar@lowensteinweatherwax.com

12   ALSO PRESENT:

13        Mr. Philip Graves, NeoNode in-house counsel

14

15

16

17

18

19

20

21

22

23

24

25
```

1  systems are designed so that swipe has a distinct
2  meaning from drag and drop, and that is where the
3  similarities essentially begin and end.
4           In terms of if you're just looking at
5  what that finger is doing, it is really cutting out
6  so much more of what the user's intention is, the
7  state of the system, what's shown on the display.
8           Q.  Does Figure 2 provide any information
9  about the state of the system?
10          MR. HENDIFAR:  Objection:  Form.
11          THE WITNESS:  Like I said, when a
12 person of skill in the art reads a patent, they are
13 not looking at just one figure, they are looking at
14 the entire specification.  The figure is supportive
15 of the words in the specification.  So the
16 specification talks about when the action of Figure 2
17 is used, what's shown before that action happens,
18 what's shown after that action happens.  So this is
19 just one part of the description of the -- of the
20 invention.
21          Q. (BY MS. MILLER)  I'm going to restate my
22 question, which I think is a pretty narrow question.
23          You would agree that the action of the
24 user shown in Figure 2 is consistent with how a user
25 would perform a drag gesture, correct?

```
 1                  MR. HENDIFAR:  Objection:  Form.
 2                  THE WITNESS:  If you're just looking
 3  at what the finger is doing, and I believe I have
 4  testified to this earlier, so you're looking at that
 5  in isolation, finger down on a touch-sensitive area,
 6  finger sliding along a touch-sensitive area and
 7  finger up, I would agree that those finger motions
 8  are similar between swipe and drag and drop.
 9                  But it just can't be ignored that the
10  patent owner, the applicant, if you will, during the
11  course of the prosecution of this patent is -- you
12  know, it may rise to the level of a prosecution bar
13  or a prosecution disclaimer that they are saying this
14  invention does not cover drag and drop.  We are not
15  talking about drag and drop here.
16                  I think I pointed you to the figure on
17  page 170 of the prosecution history.  If you look at
18  paragraphs 54 and 55 of my declaration, and 56 and 57
19  talk about how this invention is not talking about
20  drag and drop, then for the last 15 minutes, your
21  questions -- your questions seem to be directed to
22  admissions of this is essentially drag and drop,
23  but -- but I don't think that is proper given the
24  intrinsic evidence.
25                  Q.  (BY MS. MILLER)  So given your testimony
```

1  over the last 15 minutes, is it fair to say that it
2  is important to understand how the system operates in
3  order to determine whether the gesture in Figure 2 is
4  a swipe or a drag?
5              MR. HENDIFAR:  Objection:  Form.
6              THE WITNESS:  In general, yes.  In
7  general, I do feel that the difference -- because
8  there can be similarities in terms of if you're just
9  looking at what the finger is doing, you do need to
10 look at the behavior of the system.  In the same way
11 in Ren, the slide touch and the slide off, you need
12 to look at, well, what's happening in this system
13 as -- because there are similarities.  So -- so, yes,
14 I would agree with that.
15         Q.  (BY MS. MILLER)  Does Figure 2 provide
16 any information about the speed of the finger as it's
17 moving in direction B?
18         A.  I am just looking through some other
19 places in the patent where speed is mentioned and a
20 few other places.  And your question again, please?
21         Q.  Does Figure 2 provide any information
22 about the speed of the finger as it moves in
23 direction B?
24         A.  Figure 2 does not talk about the speed
25 of the finger, but there is -- there are some

45

1  function 21 in the menu area and moves their finger
2  to the display area to activate the function,
3  correct?
4             A.   Are you reading from a specific place
5  in the patent so I can follow along?
6             Q.   I was not, but I was using the language
7  that's at column four, lines seven through 11, which
8  uses the word "movement."
9             A.   Column four, lines seven through 11?
10            Q.   Correct.
11            A.   Yeah, a movement is a superset.  You
12 know, and anything can be a movement.  In the
13 prosecution history, the patentees have -- if you
14 look at paragraph 51 of my report, the pending claims
15 originally cited moving and that got changed to
16 gliding away, which in the prosecution history is
17 tied to -- synonymously with swiping.
18                 So movement is -- is -- you know,
19 walking, jogging or running are all forms of
20 movement, but gliding is a subset, if you will, a
21 subset of a certain type of movement.  So I think it
22 is important to be precise and specific when you're
23 talking about what's required by this patent and it
24 would be a gliding away.
25            Q.   But the patent describes the function

45

46

1   as activated in response to movement of the object 4,
2   correct?  "Movement" is the word used in the patent?
3                    MR. HENDIFAR:  Objection:  Form.
4                    THE WITNESS:  In this specification --
5   and did you -- you were pointing me to -- was it
6   column two or four?
7                    Q.  (BY MS. MILLER)  Four.
8                    A.  Column four, yes, I see it, around line
9   nine.  My understanding in -- in patents is that the
10  specification, it is the claims that are controlling.
11  It is the -- the invention is embodied in the claim
12  itself and the specification may be a little more
13  general.  Is a swipe a form of movement?  Yes, it is.
14  Are all movements swipes?  No.
15                    The movement is a superset.  So I
16  don't think that column four, lines roughly seven
17  through 12 are incorrect.  They are just not as
18  specific as what's claimed in this patent in claim
19  one.
20                    And it is the patentee -- if you go
21  back, I think it was 50 -- I'm sorry.  Is it 51?
22  Yeah.  In 51 in my declaration, I talk about this and
23  how originally the word "moving" was in the claim,
24  moving in a direction from a starting point, you
25  know, dot dot dot, to a display area; and according

1   to the prosecution history, that became more specific
2   after the examiner watched a video from NeoNode and
3   the -- and the explanations that ensued from that to
4   become more specific.
5               So, again, I don't think "movement" is
6   necessarily wrong because it is a superset that
7   represents many kinds of movements, but it is not as
8   specific as what is claimed in this patent.
9        Q.   You would agree that the specification
10  uses the word "movement," correct, to describe the
11  action to activate the functions 21, 22, and 23?
12       A.   I am not going to disagree that the
13  word -- and let me get the form of the word exact --
14  that the word "movement" -- the word "movement" is in
15  the patent.  I just think all of my previous
16  explanations about how movement is a superset and the
17  back and forth between the Patent Office and the
18  patentee are applicable here, but of course, I'm not
19  going to disagree that that word "movement" is
20  present in the specification.
21       Q.   And you would agree that the
22  specification does not use the word "glide" or
23  "gliding" to describe the gesture to activate
24  functions 21, 22 and 23, correct?
25       A.   To answer your, you know, very specific

```
 1  question, gliding is just in the claims.
 2          Q.  Is there anything in Figure 2 that
 3  informs the reader whether that is a glide versus a
 4  swipe or a drag?
 5              MR. HENDIFAR:  Objection:  Form.
 6              THE WITNESS:  A glide versus a swipe
 7  versus a drag?  Yeah, I think we spoke about this a
 8  little before the break and that I don't believe that
 9  a person skilled in the art would just look at
10  Figure 2 to understand what's taught in the patent.
11  They are not looking at Figure 2 in isolation.  So I
12  am not sure where to go with your question.
13              Is your question if someone only had
14  Figure 2 and nothing else could they determine?  Was
15  that -- was that your question?  I'm not --
16          Q.  (BY MS. MILLER)  Yes.
17          A.  If you could ask it again, I really
18  will try to be responsive to it.
19          Q.  Is there anything in Figure 2 that
20  informs the reader whether this is a glide versus a
21  swipe versus a drag?
22              MR. HENDIFAR:  Objection:  Form.
23              THE WITNESS:  Because the action of
24  the thumb or the stylus is similar in terms of being
25  in the air, down on a dis -- down on the display,
```

507SAM_00054296

1  moving along the display, and potentially lifting up,
2  although Figure 2 is not showing that part of it,
3  those parts would be similar; but as we spoke pretty
4  extensively prior to the break, that's where the
5  similarities end, and swipe gestures are different
6  gestures than drag gestures.
7          Q. (BY MS. MILLER)  So to reset, in order
8  to activate function 21, for example, the user
9  touches their finger down on the representation of
10 the function 21 and glides their finger into the
11 display area, correct?
12         A.  That is correct.
13         Q.  If the user touches down on function --
14 representation of function 21 and glides their finger
15 to the right along that black strip towards the file
16 folder, would that activate function 21?
17         MR. HENDIFAR:  Objection:  Form and
18 scope.
19         THE WITNESS:  Well, I have not
20 analyzed that specifically.  I don't think that was
21 an issue that the Petitioners or Dr. Bederson raised,
22 but given my read of the patent, I suspect that it
23 would not, as I suspect that you need to move into
24 the display area 3 in order to activate the function,
25 given the description in the specification.

```
                                                              145
 1   STATE OF TEXAS
 2   COUNTY OF HARRIS
 3
 4                    REPORTER'S CERTIFICATE
 5                      ORAL DEPOSITION OF
 6                     DR. CRAIG ROSENBERG
 7                        May 20, 202
 8
 9            I, Michelle Hartman, the undersigned
10   Certified Shorthand Reporter in and for the State of
11   Texas and Registered Professional Reporter, certify
12   that the facts stated in the foregoing pages are true
13   and correct.
14            I further certify that I am neither
15   attorney or counsel for, related to, nor employed by
16   any parties to the action in which this testimony is
17   taken and, further, that I am not a relative or
18   employee of any counsel employed by the parties
19   hereto or financially interested in the action.
20            That the deposition transcript was duly
21   submitted on _____ to the witness or to
22   the attorney for the witness for examination,
23   signature, and returned to me by _____.
24
25
```

507SAM_00054393

```
                                                              146
 1           SUBSCRIBED AND SWORN TO under my hand and
 2    seal of office on this _____ day of June, 2022.
 3
 4
           _____Michelle Hartman_____
 5
 6         Michelle Hartman, CSR, RPR
           Texas CSR 7093
 7         Expiration:  12/31/23
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```