**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| NEONODE SMARTPHONE LLC., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 6:20-cv-00507-ADA |
| | § | |
| SAMSUNG ELECTRONICS CO. LTD. | § | JURY TRIAL DEMANDED |
| AND SAMSUNG ELECTRONICS | § | |
| AMERICA, INC., | § | |
| *Defendants*. | § | |

<u>**NEONODE SMARTPHONE LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**</u>

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................1

II.  ARGUMENT ....................................................................................................2

    A.  The Preamble .............................................................................................2

    B.  "the representation consists of only one option for activating the function" (Claim 1) ...........................................................................5

        1.  The Intrinsic Evidence ...............................................................5

            a.  The Claim..........................................................................5

            b.  The Specification .............................................................7

            c.  The Prosecution File .......................................................7

        2.  The IPRs......................................................................................9

        3.  Samsung Fails to Prove that Limitation 1[b] Renders Claim 1 Indefinite ..............................................................10

    C.  "gliding" (claims 1, 12) / "the object gliding along the touch sensitive area" (Claim 1) / "gliding the object along the touch sensitive area" (Claim 12) ...................................................................12

        1.  "The Claims, Specification, and Prosecution File Clearly Inform a POSITA as to the Meaning of "Gliding" .................................12

        2.  Neonode's Arguments in the IPRs Were Entirely Consistent with the Intrinsic Record....................................................16

        3.  Samsung's Remaining Scattershot Arguments Also Fail .........................18

III.  CONCLUSION.................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*01 Communique Lab., Inc. v. LogMeIn, Inc.*,
    687 F.3d 1292 (Fed. Cir. 2012)...........................................................................6, 7

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
    967 F.3d 1353 (Fed. Cir. 2020).............................................................................4

*Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*,
    334 F.3d 1294 (Fed. Cir. 2003).............................................................................5

*Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002)...........................................................................2, 5

*Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*,
    838 F.3d 1224 (Fed. Cir. 2016).............................................................................5

*Data Engine Techs. LLC v. Google LLC*,
    10 F.4th 1375 (Fed. Cir. 2021) ............................................................................2

*Deere & Co. v. Bush Hog, LLC*,
    703 F.3d 1349 (Fed. Cir. 2012)........................................................................3, 4

*Hearing Components, Inc. v. Shure Inc.*,
    600 F.3d 1357 (Fed. Cir. 2010).............................................................................4

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
    424 F.3d 1374 (Fed. Cir. 2005)...........................................................................12

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*,
    933 F.3d 1345 (Fed. Cir. 2019)...........................................................................15

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
    175 F.3d 985 (Fed. Cir. 1999)............................................................................20

*Mannesmann Demag Corp. v. Engineered Metal Prods. Co., Inc.*,
    793 F.2d 1279 (Fed. Cir. 1986).............................................................................6

*Nautilus Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014).........................................................................................5, 12

*Novartis Vaccines & Diagnostics, Inc. v. Wyeth*,
    2011 WL 1576935 (E.D. Tex. Apr. 26, 2011) .....................................................6

*One-E-Way, Inc. v. International Trade Comm'n,*
   859 F.3d 1059 (Fed. Cir. 2017)..............................................................12, 19

*Pacing Techs., LLC v. Garmin Int'l, Inc.,*
   778 F.3d 1021 (Fed. Cir. 2015)..............................................................3

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) (en banc)..............................................7

*Saffran v. Johnson & Johnson,*
   712 F.3d 549 (Fed. Cir. 2013)................................................................15

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.,*
   983 F.3d 1367 (Fed. Cir. 2021)..............................................................3

*Skinmedia, Inc. v. Histogen Inc.,*
   727 F.3d 1187 (Fed. Cir. 2013)..............................................................12

*Solomon v. Kimberly-Clark Corp.,*
   216 F.3d 1372 (Fed. Cir. 2000)..............................................................18

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.,*
   844 F.3d 1370 (Fed. Cir. 2017)..................................................5, 10, 12, 19

*TomTom, Inc. v. Adolph,*
   790 F.3d 1315 (Fed. Cir. 2015)..............................................................4

## I.   <u>INTRODUCTION</u>

The '879 Patent, filed in 2002 with claims directed towards a gliding-based user interface, is not just any patent. The patent covered user interface technology embodied in the Neonode N1, an early touchscreen phone released by a Swedish company named Neonode AB several years prior to either Apple's iPhone or Samsung's Galaxy, which was widely recognized as the first smartphone to use swipe gestures.  Subsequently, the '879 Patent survived not one but **two inter partes** review proceedings, including one instigated by Samsung. In upholding the '879 Patent over Samsung's challenge, the Patent Trial and Appeal Board ("PTAB") cited, among other things, substantial "industry praise . . . directed largely to the user interface's swiping gestures, which allowed a user to control the device in an intuitive way using just a thumb," in contrast to "'drag-and-drop" gestures in the prior art." Ex. 3 at 50. The PTAB also found significant that Samsung, in 2005, took a license to the application that later issued as the '879 Patent. *Id.* at 51. As the PTAB correctly concluded, "Samsung's interest in taking a license related to the intuitive, swipe-based gestures" claimed in the '879 Patent. *Id.* at 52. While Samsung now denigrates the patent that it previously licensed, its own actions manifest the novelty of the invention claimed in the patent.

Samsung now attempts to distort the claimed invention, contending that only a portion of the preamble is limiting and two terms are indefinite. In so doing, Samsung ignores relevant case law, which establishes that the preamble here is limiting in its entirety. With respect to indefiniteness, Samsung premises its arguments on purported "inconsistent statements to the PTO," but relies on incomplete transcript excerpts, out-of-context citations to the intrinsic record, and arguments rejected by the PTAB. The intrinsic record, including from the IPR, is entirely consistent and provides a POSITA clear guidance as to the meaning of the challenged phrases. For

these reasons, discussed in detail below, the Court should adopt Neonode's construction of the preamble and should reject Samsung's indefiniteness arguments.[1]

## II.   <u>ARGUMENT</u>

### A.   The Preamble

| Neonode's Proposal | Defendants' Proposal |
|---|---|
| Preamble is limiting as to the entirety of the preamble | Preamble is limiting as to the term "a user interface," otherwise preamble is not limiting |

"In general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim," as opposed to merely stating a purpose or intended use for the invention. *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). Some "guideposts" to when the preamble is limiting include (i) when the claims "depend[] on a particular disputed preamble phrase for antecedent basis," (ii) when the preamble "is essential to understand limitations or terms in the claim body," (iii) when the preamble recites "additional structure or steps underscored as important by the specification," and (iv) when there was "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art." *Id*. In addition, reliance upon a preamble during a prior proceeding to overcome a validity challenge may "ascribe[] patentable weight to the preamble . . . ." *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1381 (Fed. Cir. 2021). All of these factors apply here.

First, the dependent claims rely on the preamble for antecedent basis. Claim 1's preamble recites: "A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to

---

[1] The Parties agree that the Court should give the claim terms "tapping" / "selection of a preferred service or setting is done by tapping" (claim 3) and "a shell upon an operating system" (claim 15) their plain and ordinary meanings.

present a user interface for the mobile handheld computer unit, the user interface comprising: . . . ." Ex. 1 at 6:45-49. Samsung, as it must, does not dispute that the **"*user interface*"** is limiting, since numerous claims reference "the user interface" recited in the preamble. Ex. 1, cls. 2-4, 6-13. In addition, claim 6 cites back to the preamble's "***mobile handheld computer unit***," and claim 15 cites back to the preamble's "***computer program code***." *Id.*, 7:7-10, 8:26-28 (emphasis added). Nearly the entire preamble is cited as antecedent basis for the claims and is therefore limiting. *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015).

Second, Samsung's concession that the preamble's **"*user interface*"** is limiting is fatal to Samsung's argument that the remainder of the preamble is not limiting, because the remainder of the preamble recites structure—including "non-transitory computer readable medium storing a computer program with computer program code" and "mobile handheld computer unit"—that is required to present the "user interface" recited in the claims. *Cf. SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1375–76 (Fed. Cir. 2021) (finding preamble limiting because it contained "the only language in the claim that identifies physical components" of the claimed invention, and "the body identifies nothing but functional properties"). The preamble also supplies essential structure providing context for "the user interface" (generated by the "code" stored on the "computer readable medium") and "the touch sensitive area" (of the "mobile handheld computer unit") recited in the claims. *See id.*; *see also Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1357-58 (Fed. Cir. 2012).

Third, the preamble recites structure underscored as important by the specification. The specification repeatedly refers to the invention as a user interface for a "mobile handheld" device. Ex. 1, Title, Abstract, 1:6-14, 24-33, 38-43, 49-61, 1:65-2:1, 3:50-51, 6:4-13, Fig. 13. The patent, entitled "User Interface for Mobile Handheld Computer Unit," states in its specification that "the

present invention relates to a user interface for a hand held mobile unit that preferably can be manageable with one hand." *Id.*, 6:4-8. Because the "mobile handheld" form factor is an important element of the invention, its recitation in the preamble renders the preamble limiting. *E.g.*, *Deere*, 703 F.3d at 1357-58.

Fourth, the applicant relied on the preamble during prosecution. Claim 1 as initially filed recited: "User interface for a mobile handheld computer unit, where said computer unit comprises . . . ." Ex. 5 (Pros. History) at 734. The examiner issued a non-statutory subject matter rejection, which the applicant overcame by amending the preamble as follows: "A <u>computer readable medium storing a computer program with computer program code, which code, when read by a mobile handheld computer unit, allows the computer to present a</u> user interface for <u>the</u> mobile handheld computer unit, <u>the user interface</u> comprising: . . . ." *Id.* at 570, 577-78. In addition, the applicant pointed to the preamble's recitation of "a user interface for a hand held computer unit," having certain characteristics, to overcome an obviousness rejection. *Id.* at 579. This reliance on the preamble during prosecution supports finding the preamble to be limiting. *E.g.*, *Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1366 (Fed. Cir. 2010).

Samsung relies on *TomTom, Inc. v. Adolph*, 790 F.3d 1315 (Fed. Cir. 2015), to parse the preamble and characterize only portions as limiting. But unlike in *Tom-Tom*, the preamble here cannot be "neatly packaged" into "separate portions." *Id.* at 1324. Indeed, the preamble's limiting terms cannot be "read separately from the remainder of the preamble" because, among other things, "[t]he language relied upon for antecedent basis in the preamble [is] intertwined with the rest of the preamble." *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1371 (Fed. Cir. 2020) (distinguishing *TomTom*).

As discussed above, nearly every word in the preamble satisfies one or more of the *Catalina Marketing* "guideposts." The entire preamble is therefore limiting.

**B.** **"the representation consists of only one option for activating the function" (Claim 1)**

| Neonode's Proposal | Defendants' Proposal |
|---|---|
| Plain meaning | Indefinite |

Samsung contends that this term has multiple inconsistent meanings, which renders claim 1 indefinite. "[T]he dispositive question in an indefiniteness inquiry is whether the 'claims,' not particular claim terms, 'read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1231 (Fed. Cir. 2016) (quoting *Nautilus Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 901 (2014)). "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd*., 844 F.3d 1370, 1377 (Fed. Cir. 2017). Samsung has not proven its case. Nor could it, given that the claim, the specification, the prosecution file, and the IPR record collectively provide clear guidance as to the meaning of this limitation: ***the representation consists of only one option for activating one of the one or more functions at any given time***. Ex. 24, ¶¶34-65. Claim 1 is, therefore, not indefinite.

**1.** **The Intrinsic Evidence**

**a.** **The Claim**

A phrase must be construed within the context of the claim as a whole. *Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc*., 334 F.3d 1294, 1299 (Fed. Cir. 2003). Claim 1 recites:

5

The invention claimed is:
1. A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:
a touch sensitive area in which a representation of a function is provided, wherein the representation consists of only one option for activating the function and wherein the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location, wherein the representation of the function is not relocated or duplicated during the gliding.

> Limitation 1[a]
>
> Limitation 1[b]
>
> Limitation 1[c]

Ex. 1 (annotations added). Limitation 1[a] recites a representation of a function. Limitation 1[b] states a ***characteristic of*** the recited representation ("the representation consists of . . ."). Limitation 1[c] recites ***how the function is activated***.

When used within the body of a claim, "consists of" typically limits the clause for which it acts as a transition to only what is expressly set forth. *See Mannesmann Demag Corp. v. Engineered Metal Prods. Co., Inc.*, 793 F.2d 1279, 1282 (Fed. Cir. 1986); *Novartis Vaccines & Diagnostics, Inc. v. Wyeth*, 2011 WL 1576935, at *7 (E.D. Tex. Apr. 26, 2011). Here, "consists of" limits "the representation." "Consists of" neither limits the number of functions that may be represented—addressed in limitation 1[a]—nor limits the number of ways to activate the represented function—addressed in limitation 1[c]. Ex. 24, ¶37.

This conclusion is reinforced by the fact that "the function" of limitation 1[b] relates back to a representation of "a function" in limitation 1[a]. The use of "a" carries a strong presumption that the claim covers "one or more" of the recited thing. *E.g.*, *01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012). So, limitation 1[a] reads as "a touch sensitive area in which [one or more] representation[s] of [one or more] function[s] is[/are] provided." And the use of "the" in limitation 1[b], referring to "the" represented function, connotes "the [one or

6

more] function[s]." *Id.* Limitations 1[a] and 1[b], read together, inform a POSITA that, while a "representation" may represent more than one "function," it presents to the user only one option for activating one of those multiple functions at any given time. Ex. 24, ¶38.

### b.     The Specification

The specification "is always highly relevant to the claim construction analysis." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (quotation omitted). Here, the specification discloses a user interface with an area that presents representations of functions 21-23, which can be activated by a touch and glide operation. Ex. 1, 4:1-12, Fig. 1. These represent, respectively, a function that is "application dependent," a keyboard function, and a task and file manager function. *Id.*, 4:1-7. If the "application dependent" function of representation 21 is activated, the touchscreen will display icons for "the current active application" or, if there is no application running, it will display icons for services or settings of the operating system. *Id.*, 4:13-34. Samsung contends that the specification fails to explain what the representations "consist of," but Samsung is wrong—the specification provides examples of the representations, which are depicted as graphical elements on the touch sensitive display. *Id.*, 4:1-7; Fig. 1.

### c.     The Prosecution File

The prosecution file is also part of the intrinsic record. *Phillips*, 415 F.3d at 1317. Samsung correctly notes that the "only one option" phrase was added during prosecution in order to overcome the Hirshberg reference, but Samsung obfuscates the applicant's arguments. As depicted in its Fig. 1, Hirshberg disclosed a multifunction keypad on a touchscreen that included "thirteen 4-way soft keys (*e.g.* keys 100, 102 and



Figure 1

104), one 3-way soft key 106 and one regular one function soft key 108." Ex. 4, ¶ 54. Hirshberg

taught two ways of interacting with the keys:

> The keys in the keypad can be a mix of regular one-function keys like key 108 with other multi function keys. ***In the case of one function*** a regular touch operation activate [sic] the function. ***In multi-function key*** [sic] the first touch on the key activate the key and the relative trace created by the movement or the tilt on the touch with respect to the initial touch point is selecting the appropriate function among the functions that associated with the selected key.

Ex. 4, ¶ 55 (emphasis added).

    In response to the examiner's rejection based on Hirshberg, the applicant explained that

Hirshberg disclosed: (1) multifunction keys presenting ***multiple options*** for activatable functions,

in which a function to activate was selected by a directional touch and glide operation; and (2) keys

for which a single function is selected on contact with the key, which were activated by a touch

operation. Ex. 5 at 199-209. To overcome the rejection, the applicant added the "only one option"

language, which narrowed claim 1 to a combination that was ***not*** disclosed by Hirshberg: a

representation that presents ***only one option*** for an activatable function at a given time

("representation [that] consists of only one option for activating a function"), which function is

activatable by a touch and glide operation.

    The applicant's description of the support for "only one option" confirms this. The

applicant explained that the specification discloses that each of representations 21-23 "consists of

the one option of" activating a corresponding function. The explanation did not look to ***how*** the

functions were activated, but rather to ***how many*** functions could be activated at a given time. Ex.

4 at 208. The applicant's reliance on representation 21—corresponding to an "application

dependent" function that can cause the display to present different sets of icons to the user

depending on context, such as whether a currently active application is running—makes it clear

that the representation presents one option for activating a function ***at any given time*** (*e.g.*,

"displaying icons as appropriate for a **currently active** application."). *Id.*; *see also id.* at 427 ("**At any given time**, may be used for activating whichever function is touched, from among a plurality of functions." (emphasis added)). The final sentence of the explanation, in which the applicant characterized representations 21-23 as "these one-option elements" **before** stating that they were activated by a touch-and-glide operation, reinforces that "only one option" addresses **how many** functions could be activated at any given time rather than **how** a function is activated.

Samsung contends that these statements "assert there is only one option (gesture) to activate a representation's corresponding function," Dkt. 71, p. 9, but that is incorrect. The applicant neither made that argument nor distinguished Hirshberg on that basis. Even Samsung admits that its characterization of the file history "contrasts" with how the applicant actually distinguished Hirshberg. *Id.* The applicant's prosecution arguments were not "contradictory," nor would a POSITA see them as such. Ex. 24, ¶¶42-47.

### 2.    The IPRs

Samsung claims that Neonode took inconsistent positions concerning limitation 1[b] in IPR2021-01041 ("the Google IPR"). Samsung notes that Neonode informed the PTAB that the "representation presents the user with one option of what to activate," but argues that this is inconsistent with Neonode's statement that "we are not arguing that the representation must only have one function." Dkt. 71, p. 10. These statements are not inconsistent. Rather, they reflect the claim as a whole: a representation may represent multiple functions (as expressed in limitation 1[a]), but the user is presented with only one option among those multiple functions to activate at any given time. Ex. 6 (Google IPR Sur-Reply) at pp. 10-12. Ex. 24, ¶¶49-50.

In contending that Neonode took conflicting positions, Samsung relies on incomplete transcript excerpts. Samsung claims that Neonode first argued that limitation 1[b] does not require that each function be activated by only one gesture, but then "inconsistently" argued that each

function must *only* be activated by a single gesture. The first is true, but the second is plainly false. In the portion of the Google IPR transcript to which Samsung points, Neonode argued that, while "a representation can at different times have multiple functions," at any given time "the user is given only one option in terms of what to activate and what option to take." Ex. 7 (Google IPR Hr'g Tr.) at 73:1-24. Slide 65 of Neonode's demonstrative exhibits, to which Neonode directed the PTAB judges, made the same point. Ex. 8 (Google IPR PO Demo Exhs.) at slide 65 ("A Representation May Represent Multiple Functions At Different Times, But Always Provides One Option To The User At Any Time"). Here again, the focus is not on ***how*** the user activates a function, but on ***how many*** functions could be activated at any given time (only one). And Neonode reiterated this point in several other slides presented to the PTAB. These include slide 61, in which Neonode characterized as "incorrect" the assertion that limitation 1[b] requires that "each function is activated by only a single gesture." *Id*., slide 61. And in slide 66, Neonode criticized as incorrect Google's position that "Hirshberg was distinguished because it activated the same function by multiple gestures." *Id*., slide 66. Ex. 24, ¶¶51-56.

In sum, contrary to Samsung's assertions, Neonode's arguments during the Google IPR were consistent with one another and with the arguments made during prosecution.

### 3.    Samsung Fails to Prove that Limitation 1[b] Renders Claim 1 Indefinite

As discussed above, the claim language, specification, prosecution file, and IPR record provide clear guidance as to the meaning of the limitation, *i.e.*, that ***the representation consists of only one option for activating one of the one or more functions at any given time***. Ex. 24, ¶65. Because Samsung relies on purported inconsistencies in what is actually a clear intrinsic record, Samsung fails to prove that limitation 1[b] renders claim 1 indefinite. *Sonix*, 844 F.3d at 1377.

Samsung's argument that limitation 1[b] is indefinite because it purportedly has three "possible meanings" is meritless. Neither the applicant nor Neonode ever advanced any of these

"meanings" to the patent office. Beyond that, they fail on their own terms. Each of them focuses on **what** the representation "represents" (either a single function or multiple functions) and **how** a represented function is activated. Yet limitation 1[b] does **not** address whether the representation "represents" either a single function or multiple functions. That concept is addressed in limitation 1[a], which encompasses one or more functions. And the intrinsic record consistently indicates that limitation 1[b] does not address **how** a represented function is activated. That element is addressed by limitation 1[c]. Samsung's proffered "meanings" are unsupported. Ex. 24, ¶¶57-60.

Moreover, each of them fails for additional reasons. Samsung's "first meaning" (single function/only one specific gesture) fails because limitation 1[b] does not require that the representation represent a single function (that is addressed in limitation 1[a], which permits representation of multiple functions). Nor does it require that there be only "one specific input gesture" that will activate the function. Samsung's "second meaning" (multiple functions/one specific gesture per function) fails because limitation 1[b] does not recite that "only one specific input gesture will activate one function, but a different input gesture activates a second function." Nothing in the claim or specification supports this reading, which limitation 1[b] was added expressly to overcome. This interpretation also does not meaningfully address the actual language of limitation 1[b], which restricts the options that may be activated by the user. And Samsung's "third meaning" (single function/multiple gestures) fails because (again) limitation 1[b] does not require that the representation represent a single function. For the reasons discussed above, a POSITA would not have read "only one option" to refer to the activation gesture. And in any event, a POSITA would not have read "only one" to include "multiple." Ex. 24, ¶61.

Finally, the opinions proffered by Andrew Cockburn, Samsung's expert, are little more than attorney argument disguised as expert testimony, and consistently focus on snippets of the

intrinsic record in isolation rather than examining the intrinsic record as a whole. Ex. 24, ¶¶57-64. They are therefore conclusory and entitled to little or no weight. *Skinmedia, Inc. v. Histogen Inc*., 727 F.3d 1187, 2110 (Fed. Cir. 2013) (holding expert testimony "inconsistent with the intrinsic patent record" entitled to no weight).

For all of these reasons, Samsung fails to prove that claim 1 is indefinite.

**C.**     **"gliding" (claims 1, 12) / "the object gliding along the touch sensitive area" (Claim 1) / "gliding the object along the touch sensitive area" (Claim 12)**

| Neonode's Proposal | Defendants' Proposal |
|---|---|
| Plain meaning, not including a drag and drop operation | Indefinite |

**1.**     **"The Claims, Specification, and Prosecution File Clearly Inform a POSITA as to the Meaning of "Gliding"**

Samsung contends that "gliding" is indefinite because it is purportedly impossible to specify a precise demarcation between a glide and a "flick" or a "drag." This argument is meritless. The Federal Circuit has made it clear that a term is not indefinite simply because it cannot be bounded with absolute precision. *See One-E-Way, Inc. v. International Trade Comm'n*, 859 F.3d 1059, 1062-63 (Fed. Cir. 2017). Because "absolute precision is unattainable," *Nautilus*, 572 U.S. at 910, *Sonix*, 844 F.3d at 1377, "'a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.'" *Sonix*, 844 F.3d at 1377 (quoting *Invitrogen Corp. v. Biocrest Mfg., L.P*., 424 F.3d 1374, 1384 (Fed. Cir. 2005)). Claim language employing a term lacking a precise boundary has "long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Id*.

Here, the intrinsic record provides a POSITA with ample guidance as to what "gliding" means. Ex. 24, ¶¶66-84. First, the claims use "gliding" according to its ordinary meaning: a smooth, continuous movement across or along a surface. Ex. 9 (Concise Oxford Eng. Dict.) at 602; Ex. 10 (Merriam-Websters Coll. Dict.) at 495; Ex. 11 (Oxford Eng. Dict.) at 306; Ex. 12 (Am.

Heritage Coll. Dict.) at 579; Ex. 24, ¶¶67-68. This does not include a "flicking" gesture, which is a sharp, quick movement. Ex. 9 at 542; Ex. 10 at 445-46; Ex. 11 at 273; Ex. 12 at 520; Ex. 24, ¶¶67-68. A POSITA would also understand that "gliding" does not include a "drag"/"drag-and-drop" gesture, which connotes a logical and (typically) visual dragging of a target across a display in order to drop it into a specific area. Ex. 24, ¶70.

Consistently with the plain meaning, the specification describes the gesture used to activate functions 21-23 as follows:



> FIG. 2 shows that any one of these three functions 21, 22, 23 can be activated when the touch sensitive area 1 detects a movement of an object 4 with its starting point A within the representation of a function on the menu area 2 and with a direction B from the menu area 2 to the display area 3.

Ex. 1, 4:8-12. Figure 2 illustrates an example of the movement required to activate the functions as being across a material portion of the display.

*Fig. 2.*

Ex. 1, Fig. 2. The user's finger remains on the display from starting point A to the end point indicated by arrow B. This informs a POSITA that the "gliding" movement disclosed in the specification is a continuous movement across an appreciable portion of the display, which is consistent with the plain meaning of "gliding." This is more than sufficient to distinguish a "flick." *See* Exs. 9-12; Ex. 24, ¶¶72-73.

Moreover, nothing in the specification suggests that representations 21-23 are "dragged" into the display area and then "dropped," as in a conventional drag-and-drop operation. To the contrary, the specification makes it clear that they are not: in one preferred embodiment, the handheld mobile device is "covered with an enclosure" and the representations are "***printed*** on top of the enclosure . . . ." Ex. 1, 6:17-21 (emphasis added). As such, they could not be dragged. Ex. 24, ¶74. Samsung, relying on a declaration of Prof. Cockburn, asserts that the "gliding operation"

only describes the movement of an object along the display, and that a "drop" refers to actions performed by the interface. Prof. Cockburn asserts that "[n]othing in the intrinsic evidence distinguishes a drag from a glide, for example, and nothing in the claims preclude a subsequent 'drop' following the 'glide' of the claim." Dkt. 71-2, ¶ 75. But this ignores the specification, which teaches an embodiment in which the representations are printed onto the enclosure and therefore could not possibly be either "dragged" or "dropped."

The prosecution file provides further guidance. At one point, application claim 1 recited "moving in a direction from a starting point that is the representation [of a function] . . . to said display area . . . ." Ex. 5 at 507. To demonstrate the novelty of the invention, the applicant provided the Examiner with a link to Neonode's promotional video for a commercial embodiment, the Neonode N2 phone. *Id.* at 520-21; Ex. 14 (N2-Advertisement-Video. The video showed a user activating functions by touching a thumb to locations that map to representations 21-23 and then smoothly moving the thumb from the icon upward along the display:



Ex. 14 (screenshots from 00:26-00:27). This movement of the user's thumb embodies the movement depicted in Figure 2. No touched icon moves with the user's thumb, as would typically be the case in a drag-and-drop operation. And, as shown by the video, the movement is a smooth glide. It in no way resembles a "flick." Ex. 24, ¶¶75-76.

After reviewing the video, the examiner stated that he could "now see the difference between the prior art of record and the present application," but that the claims were "still too

broad to suggest without research what was shown in the video demonstration." Ex. 5 at 498. In response, the applicant narrowed the claim from "moving" to a specific type of movement: "gliding . . . away from the location [of the representation of a function]." *Id.*, 405. The applicant explained that "[t]he subject claimed invention teaches 'rubbing', 'touch-and-glide' movements to operate a user interface, whereby the thumb touches a touch-sensitive screen and rubs, or glides, along the screen without lifting the thumb," as illustrated in Figure 2. *Id.*, 425-26. Subsequently, the applicant again equated the "gliding" motion with swiping or rubbing, stating that the gesture is conducted "without lifting the finger" from the display. *Id.*, 348.

In response to another rejection based on a combination including a published patent application to Hoshino, the applicant stated that the claimed "gliding" gesture is different from a "conventional" drag-and-drop operation: "Hoshino does not teach gliding a finger away from an icon. Instead, Hoshino teaches a drag-and-drop operation for moving an icon." *Id.*, 250. (emphasis in original). In a table, the applicant summarized the distinction between Hoshino's "conventional" "drag-and-drop" "operation" and the invention's "novel" "touch-and-glide" operation:

| Some distinctions between claimed invention and Hoshino | | |
|---|---|---|
| | **Claimed invention** | **Hoshino** |
| **Objective** | Novel touch-and-glide user interface operation | Discriminate between two conventional operations; namely, (1) touch, and (2) drag-and-drop |

*Id.*, 249 (annotations added). The applicant's repeated statements distinguishing "gliding" from a "drag-and-drop" operation demonstrate that Neonode disavowed the meaning Samsung now advances. *E.g.*, *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013). At a minimum, these statements inform a POSITA that the claimed "gliding" is distinct from, and does not encompass, a "drag-and-drop." *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345, 1352-53 (Fed. Cir. 2019).

In sum, the intrinsic record provides more than sufficient guidance to a POSITA that the claimed "gliding" includes neither a "flick" nor a "drag-and-drop."

### 2. Neonode's Arguments in the IPRs Were Entirely Consistent with the Intrinsic Record

Samsung contends that Neonode's statements in the IPRs leave a POSITA unable to determine what constitutes "gliding." Samsung first complains that Neonode asserted that gliding and dragging are distinct, but failed to articulate what makes a glide distinct from a drag. This is false; in fact, in its Patent Owner's Response, in the accompanying declaration of Neonode's expert, Dr. Craig Rosenberg, and in its Sur-Reply filed in IPR2021-00144 ("the Samsung IPR"), Neonode repeatedly explained what distinguished the claimed "gliding" from the "drag-and-drop" operation of Samsung's Hirayama reference. For example Neonode explained that

> Hirayama-307's user *drags* an application icon 43 *from* its location within *the hatched area 45* into the non-hatched area, and then *drops it into the non-hatched area* at the specific location where the user wants the application icon 41, by then "enlarged" into window 43, to be placed.

Ex. 15 (Samsung IPR POR), p. 26 (emphasis in original); Ex. 16 (Samsung IPR Rosenberg Decl.) at ¶¶50-67; Ex. 24, ¶¶85-91. As Neonode further explained, visual feedback is typical but is not a necessary element of a drag-and-drop operation. What is important is that, "[f]rom the perspective of the user, some form of Hirayama-307's dialing application is logically dragged (and behaves as if it is being logically dragged) with the movement of the stylus, and is dropped at the location where the stylus leaves the screen." Ex. 15, p. 27; Ex. 24, ¶89. This was "the very thing [the applicant] made clear did not constitute 'gliding . . . away.'" *Id.*, p. 26. Similarly, in its Sur-Reply, Neonode explained that Hirayama entails "a 'dragging operation' in which an icon is dropped at a specific, user-chosen, location," and that this gesture "has nothing to do with swiping or gliding."

Ex. 17 (Samsung IPR Sur-reply), pp. 16, 18. Samsung's assertion that a POSITA would be confused by this is meritless. Ex. 24, ¶91.

Samsung next complains that Neonode failed to "substantively respond" to questions from one of the PTAB judges concerning how to distinguish "gliding" from a "drag-and-drop." Even if true, this is irrelevant. A purported failure to respond to questions cannot create an invalidating "inconsistency." It is also wrong. As Neonode explained, "gliding" could be distinguished from a drag-and-drop both in terms of the nature of the movement and in terms of the operation performed by the computer as a result of the movement. One "aspect" of the distinction is that, "in a drag-and-drop operation you're saying that the beginning and ending point is significant, whereas in a glide operation the endpoint is not significant," and in a drag-and-drop operation "you're selecting an icon then you're moving it to a precise location." Ex. 18 (Samsung IPR Hr'g Tr.) at 44:6-17; 46:1-8. In addition, Neonode repeatedly referred the PTAB judges to the demonstration video in order to understand the differences between gliding and dragging-and-dropping. *Id*. at 44:10-45:25. Neonode's demonstrative exhibits further elucidated the distinctions. Ex. 19, slides 38, 43, 48-49. In sum, Neonode provided abundant explanation as to how "gliding" differed from Hirayama's drag-and-drop operation. Ex. 24, ¶¶92-94.

Samsung asserts that Dr. Rosenberg "agree[d]" that the action of a finger is the same for a glide, flick, and drag. Yet again, Samsung provides the Court with an incomplete citation. In fact, Dr. Rosenberg said the opposite—that while a flick may require "at least one pixel worth of movement," "gliding is a relatively slower, smoother, and longer motion, while flick is a sharper, faster and shorter movement." Ex. 20, 21:21-22:21; Ex. 24, ¶95. And while Dr. Rosenberg did say that a glide and a drag may have overlapping movements, he prefaced that statement by noting that the "distinction between 'gliding . . . away' and a drag-and-drop gesture is material," and he

provided several paragraphs of explanation as to why Hirayama's drag-and-drop operation was different from the '879 Patent's "gliding." Ex. 16, ¶¶57-65; Ex. 24, ¶95.

During the Google IPR, the PTAB also rejected the same argument that Samsung now advances regarding distinguishing a drag-and-drop operation from the scope of "gliding." In particular, the PTAB noted:

> [W]e agree with Neonode that during prosecution of the '879 patent, the applicant **clearly intended** the claims as a whole, and particularly limitation 1c, to cover what is known today as a "swipe" gesture, particularly but not exclusively **as distinguished from a prior-art drag-and-drop operation**.
>
> [. . . .]
>
> [I]t appears from the record that when the Examiner was considering the submitted video of Neonode's N2 phone, the main issue was how to capture the swiping gestures shown in the video while **distinguishing from drag-and-drop operations** known in the prior art. *See* Ex. 1002, 258. Thus, **we agree with Neonode** that a person of ordinary skill in the art would have interpreted the phrase *gliding . . . away* to reflect a swiping gesture that is more specific than merely an on-screen movement from one location to another.

Ex. 21 (Google IPR Final Written Decision) at pp. 26 (emphasis added).

### 3.    Samsung's Remaining Scattershot Arguments Also Fail

Samsung's grab-bag of additional arguments fare no better. For example, Samsung points to the testimony of the inventor, Magnus Goertz, to support its argument that "glide" means "drag." However, Goertz was not asked whether a "glide" was equivalent to a "drag." In addition, the colloquy to which Samsung cites pertained to a design document for an early version of the Neonode phone rather than to the invention described in the '879 Patent. Ex. 22 (Goertz Depo. Tr.) at 34:14-35:18. And in any event, "inventor testimony, obtained in the context of litigation, should not be used to invalidate issued claims [as indefinite]." *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377-80 (Fed. Cir. 2000). So Goertz's testimony is immaterial here.

Samsung also complains that the patent does not precisely delineate the speed, distance, and "effort" parameters that differentiate a glide from a flick. But the Federal Circuit has repeatedly instructed that a patentee need not delineate the bounds of its claims with mathematical precision, *e.g., Sonix Tech.*, 844 F.3d at 1377, and a POSITA would see no such need here in any event. Ex. 24, ¶96.

Samsung also contends that the patent's teaching concerning a ***different*** aspect of the invention—involving scrolling through a list of files or applications—would cause a POSITA to conclude that "speed is not relevant" to "gliding." Dkt. 71, p. 16. This contention fails because (i) discussion of speed of movement in one aspect of the invention says nothing about whether it is material to a different aspect of the invention, and (ii) the intrinsic record, including the video submitted to the examiner, informs a POSITA of the parameters of "gliding."  Ex. 24, ¶97.

Samsung also contends that Neonode "has not cited any evidence that a POSITA in December 2002 . . . understood whether or how" gliding, flicking, or dragging could be distinguished. Dkt. 71, p. 17. This is a red herring; it is Samsung's burden to prove indefiniteness, not Neonode's burden to prove the opposite. In any event, the decisive question is whether the term "gliding," in view of the intrinsic record, informs a POSITA as to the scope of the claims with reasonable certainty. *One-E-Way,* 859 F.3d at 1062-63. As shown above, it clearly does. The specification describes and illustrates the touch-and-glide gesture and uses the term "gliding" consistently with its ordinary meaning. The prosecution file provides further guidance as to what "gliding" means. And in both IPRs, Neonode submitted additional evidence concerning how a POSITA would understand "gliding" to be distinct from "flicking" or "dragging." Ex. 24, ¶98.

Finally, it is notable that, when Google made essentially the same argument Samsung makes here—that Neonode could not "delineate the boundary between" a glide and a flick—the

PTAB rejected it. Ex. 23 (Google IPR Pet.'s Reply to POR) at p. 8; Ex. 21 at pp. 26-27 & n.8. The

PTAB noted that, "[t]o the extent there is any ambiguity in the term, it does not rise to the level

that 'the term or terms chosen by the patentee so deprive the claim of clarity that there is no means

by which the scope of the claim may be ascertained from the language used.'" Ex. 21 at pp. 26-27

(quoting *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999)).

The PTAB further recognized that a flick and a glide are distinct:

> The evidence suggests that the distinction between a "flick" and a
> "glide" may involve a number of considerations such as the size of
> the screen and whether the pointing object is a finger or stylus.
> Ex. 1031, 27:15–29:6. This does not mean that a person of ordinary
> skill in the art, applying those considerations, would have been
> unable to distinguish between a "flick" and a "glide" or that the
> distinction is arbitrary.

*Id.* at 26 n.8. The PTAB also expressly rejected Samsung's argument that that there is no

evidence of how "a POSITA in December 2002 . . . understood whether or how" gliding,

flicking, or dragging could be distinguished:

> We also find persuasive Neonode's dictionary definitions, spanning
> from 1993 to 2012, which consistently indicate that the word flick
> describes a movement that is "light," "sharp" or "quick," and
> "jerky" or "sudden," as opposed to definitions of "glide" referring
> to a movement that is "smooth," "continuous," and possibly "quiet"
> or "effortless."

*Id.* at 28. A POSITA would consider this in arriving at a construction. Ex. 24, ¶¶99-102.

Thus, Samsung's contention that "gliding" is indefinite is meritless.[2] Ex. 24, ¶¶103-04.

## III.   <u>CONCLUSION</u>

The Court should reject Samsung's meritless indefiniteness arguments and construe the

terms at issue as requested by Neonode.

---

[2] Samsung submits seven additional pages of declaration "testimony" from its expert that it does
not cite to support any arguments made in its brief. Ex. 2, ¶¶78-90. This is a clear evasion of the
Court's page limit claim construction briefing.

Dated: May 19, 2023

Respectfully submitted,

By: /s/ Philip J. Graves
Philip J. Graves (Pro Hac Vice)
CA State Bar No. 153441
Greer N. Shaw (Pro Hac Vice)
CA State Bar No. 197960
**GRAVES & SHAW LLP**
355 S. Grand Ave., Suite 2450
Los Angeles, CA 90071
Telephone: (213) 204-5101
Email: pgraves@gravesshaw.com
Email: gshaw@gravesshaw.com

Brian D. Melton, **Attorney-in-charge**
(TX Bar #24010620)
Kalpana Srinivasan (CA Bar # 237460)
Rocco Magni (TX Bar # 24092745)
Bryce T. Barcelo (TX Bar # 24092081)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 653-7807
Facsimile: (713) 654-6666
bmelton@susmangodfrey.com
ksrinivasan@susmangodfrey.com
rmagni@susmangodfrey.com
bbarcelo@susmangodfrey.com

Craig D. Cherry (TX Bar No. 24012419)
ccherry@cjsjlaw.com
Mark D. Siegmund (TX Bar No. 24117055)
msiegmund@ cjsjlaw.com
**CHERRY JOHNSON SIEGMUND
JAMES, PLLC**
400 Austin Ave., 9th Floor
Waco, Texas 76701
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

**COUNSEL FOR PLAINTIFF NEONODE
SMARTPHONE LLC**

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on this 19th day of May, 2023.

\s\ Philip Graves

Philip Graves
