# Exhibit 5

Trials@uspto.gov                                                    Paper 52
571-272-7822                                           Entered: January 11, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

GOOGLE LLC,
Petitioner,

v.

NEONODE SMARTPHONE LLC,
Patent Owner.

IPR2021-01041
Patent 8,095,879 B2

Before KARA L. SZPONDOWSKI, CHRISTOPHER L. OGDEN, and
SCOTT B. HOWARD, *Administrative Patent Judges.*

OGDEN, *Administrative Patent Judge.*

JUDGMENT
Final Written Decision
Determining No Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

IPR2021-01041
Patent 8,095,879 B2

# I. INTRODUCTION

Petitioner Google LLC ("Google") filed a Petition (Paper 6, "Pet.") for *inter partes* review of claims 1–7, 9, 12, 13, and 15–17 of U.S. Patent No. 8,095,879 B2 (Ex. 1001, "the '879 patent"). Based on the Petition and preliminary filings, the Board instituted trial. (Paper 19). Patent Owner Neonode Smartphone LLC ("Neonode") then filed a Patent Owner Response under seal (Paper 29, "PO Resp."; public redacted version as Ex. 2060), Google filed a Reply to the Patent Owner Response (Paper 35, "Pet. Reply"), and Neonode filed a Sur-reply (Paper 44, "PO Sur-reply").

We held an oral hearing on October 17, 2022, and the transcript is entered on the record. Paper 50 ("Tr.").

This is a final written decision under 35 U.S.C. § 318(a) as to whether the claims challenged in the *inter partes* review are unpatentable. For the reasons below, we conclude that Google has not shown that any claims of the '879 patent are unpatentable.

# II. BACKGROUND

A.    RELATED PROCEEDINGS

The parties identify the following as related matters: *Neonode Smartphone LLC v. Apple Inc.*, No. 6:20-cv-00505 (W.D. Tex. filed June 8, 2020); and *Neonode Smartphone LLC v. Samsung Electronics Co.*, No. 6:20-cv-00507 (W.D. Tex. filed June 8, 2020). Pet. 106; Paper 3, 2.

The Board has issued a previous final written decision addressing the '879 patent. *See Samsung Electronics Co. v. Neonode Smartphone LLC*, IPR2021-00144, Paper 59 (PTAB Dec. 15, 2022); Pet. 106, Paper 3, 2.

IPR2021-01041
Patent 8,095,879 B2

B.    THE '879 PATENT (EX. 1001)

The '879 patent relates to a user interface on a mobile handheld computer device that has a touch-sensitive display screen divided into a menu area and a display area. *See* Ex. 1001, 1:6–9, code (57). The user interface is "specifically adapted to be used with a small computer unit where the size of the touch sensitive area is in the order of 2–3 inches" and the interface can "be operated by one hand." *Id.* at 3:1–6.

Figure 1 of the '879 patent, reproduced below, illustrates such a user interface:



*Fig. 1.*

Figure 1 depicts touch-sensitive area 1 on a mobile handheld device. Ex. 1001, 3:22–23, 3:51–53. It is divided into menu area 2 and display area 3. *Id.* at 3:53–54. Menu area 2 is a narrow strip along the lower part of touch-sensitive area 1 that contains predefined functions 21 (a general application-dependent function), 22 (a keyboard), and 23 (a task and file manager). *Id.* at 4:1–6; *see also id.* at 2:7–10.

Functions 21, 22, and 23 in menu area 2 "can be activated when the touch sensitive area detects a movement of an object with its starting point within the representation of the function on the menu area and with a

3

IPR2021-01041
Patent 8,095,879 B2

direction from the menu area to the display area." Ex. 1001, 1:65–2:5, 2:11–

14. This method of activation is shown in Figure 2, reproduced below:



*Fig. 2.*

Figure 2, above, illustrates a touch gesture by which a user may activate

functions 21, 22, or 23 in area 2. *See* Ex. 1001, 3:24–25. This gesture begins

when object 4 (a thumb as shown in Figure 2, but it could be any finger, a

pen, or another pointing device, *id.* at 6:11–15) touches the display at point A

within representation 21, 22, or 23, and moves in direction B away from

menu area 2 into display area 3. *Id.* at 4:7–11.

When a user activates the first function, display area 3 displays icons

representing services or settings, depending on the current active application.

Ex. 1001, 2:18–20. Figure 3, reproduced below, illustrates the touch screen

after function 21 has been activated:

IPR2021-01041
Patent 8,095,879 B2



*Fig. 3.*

Ex. 1001, 3:26. Figure 3, above, shows that after a user activates function 21 with the gesture as illustrated in Figure 2, display area 3 displays icons 211–216, which each represent services or functions depending on the currently active application. *Id.* at 4:12–15. If, for example, the active application handles a picture, then the icons showing on display area 3 after a user activates the first function can include services such as "save to disk," "send as SMS," or "delete," or settings such as "resolution," "colour," or "brightness." *Id.* at 4:24–28.

Analogously, selecting function 22 activates a keyboard, and selecting function 23 activates a library of available applications and files on the device. Ex. 1001, 4:36–38, 4:63–65, Figs. 5–6. If there is no currently active application, the icons may "represent services or settings of the operations system of the computer unit, such as background picture, clock alarm 215, users 213, help 211, etc." *Id.* at 4:29–33.

IPR2021-01041
Patent 8,095,879 B2

C.    CHALLENGED CLAIMS AND GROUNDS

Claim 1, the only independent claim, is as follows:

1. A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:

[a]   a touch sensitive area in which a representation of a function is provided,

[b]   wherein the representation consists of only one option for activating the function and

[c]   wherein the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location,

[d]   wherein the representation of the function is not relocated or duplicated during the gliding.

Ex. 1001, 6:45–59 (Google's reference letters added).

Google argues six grounds for *inter partes* review, as shown in the following table:

IPR2021-01041
Patent 8,095,879 B2

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1–5, 13, 15–17 | 103(a)[1] | Robertson,[2] Maddalozzo[3] |
| 6, 7, 9 | 103(a) | Robertson, Maddalozzo, Vayda[4] |
| 12 | 103(a) | Robertson, Maddalozzo, Bedford-Roberts[5] |
| 1, 4–6, 13, 15–17 | 103(a) | Tarpenning[6] |
| 2, 3, 7, 9 | 103(a) | Tarpenning, Vayda |
| 12 | 103(a) | Tarpenning, Bedford-Roberts |

Pet. 1–2.

D.    DECLARATORY TESTIMONY

Google submits two declarations of Dr. Jacob O. Wobbrock as expert testimony. Exs. 1003, 1032; *see also* Ex. 1004 (curriculum vitae). Google also relies on a declarations of Rachel J. Watters (Ex. 1018) and Kelley M. Hayes Greenhill (Ex. 1019) as to Robertson's public availability.

Neonode submits a declaration of Dr. Craig Rosenberg. Ex. 2019; *see also* Ex. 2002 (curriculum vitae). Neonode also submits declarations of

---

[1] 35 U.S.C. § 103(a) (2006), *amended by* Leahy–Smith America Invents Act, Pub. L. No. 112-29 § 103, sec. (n)(1), 125 Stat. 284, 287, 293 (2011) (effective Mar. 16, 2013). The '879 patent issued from an application filed on December 10, 2002, which is before the effective date of this amendment to section 103. *See* Ex. 1001, code (22).

[2] George G. Robertson et al., *Buttons as First Class Objects on an X Desktop*, UIST: Proceedings of the ACM Symposium on User Interface Software and Technology: Hilton Head, South Carolina, USA, 35–44 (Nov. 11–13, 1991) (Ex. 1005).

[3] Maddalozzo et al., US 7,768,501 B1, issued Aug. 3, 2010 (Ex. 1006).

[4] Vayda et al., US 5,745,717, issued Apr. 28, 1998 (Ex. 1007).

[5] Bedford-Roberts, US 5,870,092, issued Feb. 9, 1999 (Ex. 1008).

[6] Tarpenning et al., US 6,181,344 B1, issued Jan. 30, 2001 (Ex. 1009).

IPR2021-01041
Patent 8,095,879 B2

Joseph Shain (Ex. 2008), Ulf Mårtensson (Ex. 2054), Per Bystedt (Ex. 2055 under seal; public redacted copy as Ex. 2061), and Marcus Bäcklund (Ex. 2056) relating to alleged objective indicia of non-obviousness and the early development of touch-screen phones that, according to Neonode, embody the challenged claims.

## III. GROUNDS OF THE PETITION

For the reasons below, we determine that Google has not shown, by a preponderance of the evidence, that claims 1–7, 9, 12, 13, and 15–17 of the '879 patent are unpatentable under the grounds of the Petition. Before analyzing these grounds in detail, we address two matters that will underlie our analysis: the level of ordinary skill in the art and the construction we will apply to the claim terms.

### A.   LEVEL OF ORDINARY SKILL IN THE ART

The level of ordinary skill in the pertinent art at the time of the invention is a factor in how we construe patent claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). It is also one of the factors we consider when determining whether a patent claim would have been obvious over the prior art. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

To assess the level of ordinary skill, we construct a hypothetical "person of ordinary skill in the art," from whose vantage point we assess obviousness and claim interpretation. *See In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998). This legal construct "presumes that all prior art references

IPR2021-01041
Patent 8,095,879 B2

in the field of the invention are available to this hypothetical skilled artisan." *Id.* (citing *In re Carlson*, 983 F.2d 1032, 1038 (Fed. Cir. 1993)).

For Google, Dr. Wobbrock testifies that a person of ordinary skill in the art at the time of the invention, would have had "at least a bachelor's degree in Computer Science, Human-Computer Interaction, Symbolic Systems, or related engineering disciplines, and at least two years of experience designing and programming graphical user interfaces," but that "[r]elevant work experience can substitute for formal education and advanced degree studies could substitute for work experience." Ex. 1003 ¶ 49.

Testifying for Neonode, Dr. Rosenberg states that for his declaration, he "will apply the same definition of the level of skill of a [person of ordinary skill in the art]" as Dr. Wobbrock. Ex. 2019 ¶ 27.

We find Dr. Wobbrock's uncontested articulation to be reasonable in light of the subject matter involved in the '879 patent and the asserted prior art. *See, e.g.*, Ex. 1001, 1:49–61 (stating that the '879 patent addresses technical problems including "to provide a user-friendly interface . . . on a small handheld computer unit"). Thus, we adopt it for our decision.

B.    CLAIM CONSTRUCTION

In an *inter partes* review, we construe a patent claim "using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b)." 37 C.F.R. § 42.100(b) (2020). This generally includes "construing the claim in accordance with the ordinary and customary meaning of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent." *Id.* The ordinary

IPR2021-01041
Patent 8,095,879 B2

and customary meaning of a claim term "is its meaning to the ordinary artisan after reading the entire patent," and "as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313, 1321. There are only two circumstances in which a construction departs from the ordinary and customary meaning: "1) when a patentee sets out a definition and acts as [their] own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Any such special meaning of a term "must be sufficiently clear in the specification that any departure from common usage would be so understood by a person of experience in the field of the invention." *Multiform Desiccants Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998).

To construe the claim terms, "we look principally to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006).

Google does not propose any explicit claim constructions in its Petition. *See* Pet. 4. Neonode does not propose any explicit constructions either, but in its Response, Neonode raises a number of claim construction arguments regarding the term *gliding . . . away* as it appears in limitation 1c, to which Google responds in its Reply. *See* PO Resp. 31–50, 66–69; Pet. Reply 7–12, 19–21; *see also* PO Sur-reply 1–10, 19–21. We do not need to construe this term explicitly for our decision, and to the extent we need to interpret this or any other terms, we address the terms below in the context of the prior art. *See Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) ("[W]e need only construe terms

IPR2021-01041
Patent 8,095,879 B2

'that are in controversy, and only to the extent necessary to resolve the controversy' . . . ." (quoting *Vivid Techs., Inc. v. Am. Sci & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999))).

C.   GROUNDS BASED ON ROBERTSON

In the first ground of the Petition, Google argues that claims 1–5, 13, and 15–17 are unpatentable under 35 U.S.C. § 103(a) as obvious over Robertson in view of Maddalozzo. Pet. 5–64. For this ground, we focus on Google's challenge to sole independent claim 1 and particularly limitation 1c (Pet. 25–29), after which we address the remaining claims and the remaining grounds.

A claim is unpatentable under § 103(a) for obviousness if the differences between the claimed subject matter and the prior art are "such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). When a ground in a petition is based on a combination of references, we consider "whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *Id.* at 418 (citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)).

We base our obviousness inquiry on factual considerations including (1) the scope and content of the prior art, (2) any differences between the claimed subject matter and the prior art, (3) the level of skill in the art, and (4) any objective indicia of obviousness or non-obviousness that may be in evidence. *See Graham*, 383 U.S. at 17–18.

IPR2021-01041
Patent 8,095,879 B2

Considering these factors, we determine for the reasons below that Google has not shown, by a preponderance of the evidence, that claim 1 is unpatentable under 35 U.S.C. § 103(a) as obvious over Robertson in view of Maddalozzo.

### 1.    Overview of Robertson (Ex. 1005)

Robertson describes a high-level user interface toolkit, called "XButtons," which supports on-screen buttons as first-class objects on an X Window system desktop. Ex. 1005, 35. According to Robertson, XButtons typically appear as small rectangular screen objects, usually have some text that indicates what their action is, and may include a field for editable text. *Id.* at 38. A group of XButtons is shown in Figure 1, which we reproduce below.



Figure 1: Sample Set of XButtons.

12

IPR2021-01041
Patent 8,095,879 B2

Figure 1, above, illustrates a sample set of XButtons including one for a "Phone" function. Ex. 1005, 38–39. XButtons can have multiple associated actions, each selected by simple mouse or pen gestures such as "flick left," "flick right," "flick up," "flick down," "click," "rubout," "check," or "insert." *Id.* at 39. For example, "[t]he 'Phone' button will let you type the name of someone, then pop up a window with their phone number (by clicking) or dial the number (with the flick right gesture)." *Id.*

"If the user is unfamiliar with the action of a particular button, a menu can be popped up to reveal which gestures are supported (and what they do)," using a particular gesture. Ex. 1005, 39. The menu associated with the "Phone" XButton is shown in Figure 2, which we reproduce below.



Figure 2: Sample Button Menu.

Figure 2, above, illustrates a sample menu for an XButton. Ex. 1005, 39–40. The menu shows all potential user manipulations of the XButton; for

IPR2021-01041
Patent 8,095,879 B2

example, it shows that the "Click" gesture is associated with "Get phone #"
and the "Flick Right" gesture is associated with "Dial phone #." *Id.*

XButtons may also have associated with them a button editor, as
shown in Figure 3, which we reproduce below.



Figure 3: Structured Button Editor.

Figure 3 shows a button editor for the "Phone" XButton whose menu is
shown in Figure 2. Ex. 1005, 40–41. The button editor is a structured
property-sheet editor designed specifically for editing an XButton. *Id.* at 40.
The editor fields at the top specify the appearance of the button. *Id.* The

middle of the editor specifies the action language, the various actions, and the text to appear in the menu for each action. *Id.* Toward the bottom of the editor are fields ("Attribute" and "Value") that allow the user to view and replace user-defined properties. *Id.*

### 2. *Limitation 1c*

Because we find that Google has not shown that the combination of Robertson and Maddalozzo teaches or suggests limitation 1c, we need only address that limitation in our decision. Moreover, because Google relies only on Robertson for limitation 1c, we need not address Google's arguments concerning Maddalozzo. *See* Pet. 25–29 (not referring to Maddalozzo in the context of limitation 1c).[7]

Limitation 1c recites "wherein the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location." Ex. 1001, 6:52–57. An example of this operation is the gesture illustrated in Figure 2 of the '879 patent, which we discuss above. *See supra* Section II.B.

Google contends that Robertson discloses this recited multi-step operation by disclosing that a user can activate a "dialphone" function to call a phone number by "placing a pen on the phone button, then sliding the pen to the right along the touch-sensitive interface to perform a 'flick right' gesture." Pet. 25 (citing Ex. 1005, 38–39; Ex. 1003 ¶ 107). Google contends

---

[7] For claim 1, Google relies on Maddalozzo solely for teaching the preamble. *See* Pet. 12–19.

IPR2021-01041
Patent 8,095,879 B2

that, according to Robertson, "'gesture[s] must start in an XButton,' but 'can move outside the XButton' while performed." *Id.* (alteration in original) (quoting Ex. 1005, 43) (citing Ex. 1005, 39; Ex. 1003 ¶ 106). Thus, Google depicts this operation with an annotated version of Robertson's Figure 1, which we reproduce below:



Pet. 26. In the above figure, Google annotates Robertson's Figure 1 by highlighting the "Phone" XButton (in which has been entered a particular phone number) in blue and showing an orange pen and a path it would allegedly make starting on the phone number and ending outside the XButton. *See* Pet. 25–26.

Alternatively, Google contends that Robertson discloses activating an "xbedit" function to open the "Phone" button's button editor by "touching a pen (or finger) to the phone button, then sliding the pen away from the initial touched location in the shape of a caret to perform an 'Insert gesture.'"

16

IPR2021-01041
Patent 8,095,879 B2

Pet. 26–27 (citing Ex. 1005, 39–40; Ex. 1003 ¶ 108). Google depicts this operation with another annotated version of Robertson's Figure 1, which we reproduce below:



Pet. 27. Shown above is Robertson's Figure 1 that Google has annotated to highlight the "Phone" XButton (in which has been entered a particular phone number) in blue and showing an orange pen and a path it would allegedly make starting on the phone number, moving diagonally upward and to the right outside the XButton, and then moving diagonally downward and to the right. *See id.*

In its Response, Neonode contends that Google has failed to support its contention that Robertson's "flick-right" and "insert" gestures reflect the stylus performing an operation that comprises "gliding . . . away." *See* PO Resp. 31. First, Neonode contends that based on the prosecution history and

17

IPR2021-01041
Patent 8,095,879 B2

extrinsic evidence, the term *gliding* means more than simply any movement along the touch sensitive area. *See id.* 32–35.

In particular, Neonode notes that during prosecution of the '879 patent, the original language describing the gesture in limitation 1c was "*moving* in a direction *from* a starting point that is the representation [of a function] . . . *to* said display area." PO Resp. 33 (alterations in original) (quoting Ex. 1002, 201). Neonode argues that, after the Examiner rejected claims with the above language, "[i]n further prosecution and in explaining the gesture the Applicant sought to claim," the applicant encouraged the Examiner to watch a video (Ex. 2020) demonstrating the gesture on Neonode's N2 mobile device. *Id.* (citing Ex. 1002, 214–15). Neonode contends that this video depicts a gesture that is "similar to what today's systems refer to as a 'swipe' gesture, where, e.g., the thumb is placed on a representation of a function (menu item with an arrow) and through a swiping motion, the menu screen opens." *Id.* at 32–34 (citing Ex. 2020, time codes 00:26–00:27).

Then, according to Neonode, "[i]n the subsequent office action, the Examiner acknowledged the 'swiping' gesture of the claims, but recognized that the then drafted claims[] simply required 'moving' the object, and were thus too broad to limit the claims to a swipe/glide gesture." PO Resp. 34 (citing Ex. 1002, 258 ("[T]he Examiner feels that the limitations, as claimed, . . . are still too broad to suggest without research what was shown in the video demonstration.")). Then, Neonode argues that after an examiner interview "to properly claim the present invention," the applicant amended the claim to its current form, "*gliding* along the touch sensitive area *away* from the location." *Id.* (quoting Ex. 1002, 334; then quoting *id.* at 317–18).

IPR2021-01041
Patent 8,095,879 B2

Thus, Neonode contends that a person of ordinary skill in the art would have understood from the prosecution history that the word *gliding* as recited in limitation 1c carries a more specific meaning than mere movement. PO Resp. 35 (citing *Ajinomoto Co. v. ITC*, 932 F.3d 1342, 1351 (Fed. Cir. 2019)).

Next, Neonode argues that Google has failed to show that a person of ordinary skill in the art would have understood Robertson's "flick" gesture to comprise "gliding." PO Resp. 35. Neonode first points to dictionary definitions in which the word *flick* denotes a sharp or jerky motion, whereas the word *glide* denotes a smooth, continuous motion. *Id.* at 35–38 (citing Exs. 2049, 2052, 2050, 2057; Ex. 2019 ¶¶ 78–79). Neonode also points to more recent developer guidelines to show that leading smart phone developers Apple and Google have distinguished between "flick" and "swipe" gestures. *Id.* at 39–40 (citing Ex. 2022, 4; Ex. 2023, 6; Ex. 2029, 2; Ex. 2019 ¶¶ 80–81). According to Dr. Rosenberg, in Google's Android operating system, a "flick" gesture simulates a fast spinning motion, and in later Android releases, the gesture "creates a momentum effect where the scroller initially moves at a given velocity, and gradually slows down," whereas "a 'swipe' gesture is used to close an application." Ex. 2019 ¶¶ 82–83 (citing Ex. 2025, 21; Ex. 2026, 5; Ex. 2027, 8 (calling the gesture "fling"); Ex. 2028, 1).

Neonode argues that the difference between "glide" ("swipe") and "flick" gestures is analogous to the difference between "walking and running," which are distinct movements. PO Resp. 41 (citing Ex. 2019 ¶ 84). In the context of operating a touchscreen with a pen on a 1991 desktop (allegedly consistent with how the term is used today), Dr. Rosenberg

IPR2021-01041
Patent 8,095,879 B2

testifies that "[i]n a flick gesture, the pen would touch the screen, but only moves on the screen for a very short distance and is quickly lifted from the screen in a 'jerky' motion." Ex. 2019 ¶¶ 85–86.

Thus, Neonode disagrees with how Google depicts a "flick right" gesture in its annotated version of Robertson's Figure 1, reproduced above. PO Resp. 42. According to Neonode, neither Google nor Dr. Wobbrock have explained why the gesture would have been a several-inches-long continuous movement, as depicted, which does not reflect the plain meaning of *flick* as a "short, jerky motion." *Id.* at 42–43. Although Neonode acknowledges that Robertson's system is capable, in general, of recognizing gestures that begin within an XButton and extend outside of it, Neonode disagrees that this would necessarily be the case for the "flick right" gesture, unless the gesture began close to the edge of the XButton. *Id.* at 43–44 (citing Ex. 2019 ¶ 89).

Dr. Rosenberg also states that Robertson "discloses that a drag-and-drop operation can be performed on its XButtons," so "[i]f Robertson's 'flick' was really a glide," then if the user performed a gesture as depicted in Google's annotated version of Figure 1, "Robertson's system would not know whether the movement of a mouse/pen was a drag-and-drop operation or a glide gesture." Ex. 2019 ¶ 90 (citing Ex. 1005, 39, 40, 42). On the other hand, "a 'flick' gesture is readily recognizable due to its higher speed and shorter distance—which, as Robertson indicates, is not intended to (even if it 'can') go outside of the XButton itself." *Id.*

Neonode also disputes that a person of ordinary skill in the art would have interpreted Robertson's "insert" gesture—which Robertson describes as "like an editor's caret"—to comprise a "gliding . . . away" movement.

20

IPR2021-01041
Patent 8,095,879 B2

PO Resp. 45 (quoting Ex. 1005, 40). According to Neonode, "[a]n editor's caret—'^'—has a sharp angle and is usually smaller than the text." *Id.* at 47–48 (citing Ex. 2019 ¶ 99). According to Dr. Rosenberg, forming this gesture would involve "two jerky movements connected together," or "drawing a first sharp, short line, and then sharply changing direction and drawing a second sharp, short line." Ex. 2019 ¶ 100. Thus, Neonode disagrees with Google's depiction of two large lines that extend outside the XButton and even over neighboring XButtons. PO Resp. 49–50 (citing Ex. 2019 ¶¶ 101–102). Rather, according to Dr. Rosenberg, Robertson's "insert" gesture would more closely resemble the depiction shown in Neonode's own annotated version of Figure 1, which we reproduce below:



Ex. 2019 ¶ 102. Neonode's annotated version of Robertson's Figure 1 depicts an orange caret roughly on the same scale as the text that would appear in the "Phone" XButton, and a pen "with the correct approximate

IPR2021-01041
Patent 8,095,879 B2

scale of the size of the pen compared to a typical desktop of 1991." PO
Resp. 49 (citing Ex. 2019 ¶¶ 101–102).

In its Reply, Google contends that we should decline to construe
*gliding . . . away* as Neonode contends because doing so would render claim
1 unpatentable for lack of written description, because the original disclosure
of the '879 patent only described general movements, not specifically a
gliding gesture. Pet. Reply 7–8 (citing *Ruckus Wireless, Inc. v. Innovative
Wireless Sols., LLC*, 824 F.3d 999, 1004 (Fed. Cir. 2016); *Novozymes A/S v.
DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1346 (Fed. Cir. 2013); *D
Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1050–51 (Fed. Cir.
2018)).

Neonode counters in its Sur-reply that the "gliding . . . away"
language in limitation 1c finds support in Figure 2 of the original disclosure
leading to the '879 patent, which depicts a gliding motion and not a flick.
PO Sur-reply 7–8 (citing *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d
1331, 1346 (Fed. Cir. 2016)). But in any event, Neonode argues that
construing terms to preserve validity is only "a last resort if the claim is 'still
ambiguous' after 'applying all the available tools of claim construction.'" *Id.*
at 7 (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 911 (Fed.
Cir. 2004)). Neonode contends that this is not the case here, because "the
prosecution history clearly and unambiguously informs a [person of ordinary
skill in the art] that the claimed 'gliding . . . away' is distinct from 'moving-
from-to.'" *Id.*

Next, Google contends that on cross-examination, Dr. Rosenberg
could not delineate the boundary between a "flick" and a "glide," and
admitted that "both flick and glide gestures start at a touched location and

22

IPR2021-01041
Patent 8,095,879 B2

move away from the touched location while continuing to touch the screen" and "that the distinction is arbitrary." Pet. Reply 8, 9–10, 11 (citing Ex. 1031, 27:15–29:6, 31:15–32:12, 34:24–35:17; Ex. 1001, 2:61–67, 5:33–35). Google also argues that "Neonode's citations to general-purpose dictionaries [or development guides] are unavailing because they are either after-arising or improperly contradict the intrinsic record, which describes only 'movement' without regard to speed or distance." *Id.* at 10 (footnote omitted) (citing *Eon Corp. IP Holdings v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1320–21 (Fed. Cir. 2016); *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1380 (Fed. Cir. 2016); *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021)).

Neonode disagrees that Dr. Rosenberg admitted that the distinction between "flick" and "glide" is arbitrary; according to Neonode, he merely testified "that 'one number' would not suffice to distinguish between a 'flick' and a 'glide' since it would depend on various factors such as screen size, resolution of the screen, [and] whether a stylus or finger is used." PO Sur-reply 3 (citing Ex. 1031, 28:16–29:6). Neonode contends that this does not make the distinction arbitrary, and that Google has been able to distinguish between "flick" and "swipe" gestures in its own documentation for the Android operating system. *Id.* (citing PO Resp. 40–41).

Neonode also contends that Google's arguments in its Reply that Robertson's "flick" falls within the scope of the recited "gliding . . . away" gesture are conclusory and untethered to any further testimony, including by Dr. Wobbrock. PO Sur-reply 1–2. And according to Neonode, while Google criticizes Neonode's dictionary definitions, Google provides none of its own. *Id.* at 2. Neonode disagrees that its dictionary evidence is irrelevant because

23

IPR2021-01041
Patent 8,095,879 B2

it is "after-arising," because Neonode provides dictionary definitions from the early 1990s as well as later definitions to show consistency over time. *Id.* (citing Exs. 2049, 2052, 2050, 2057). As to the Apple and Google development guides, Neonode acknowledges that they are from after 2002, the earliest priority date of the '879 patent, but contends that Google "presents no evidence for the insinuation that these terms were used differently in 2002." *Id.* at 3.

Next, Google contends that (1) during prosecution, the applicant "never distinguished 'gliding' from other gestures or movement generally, and in fact equated other gestures with a glide," and "[t]he examiner also continued to search 'flick' as relevant after the amendment," Pet. Reply 8 (citing Ex. 1002, 381, 482, 496–497, 585); and (2) "Neonode's citation [during prosecution] to its after-arising N2 advertisement . . . is not relevant because it was used to distinguish 'the representation of the function is not relocated or duplicated during the gliding' limitation [1d], not between 'gliding' and another movement type," *id.* at 8–9 (citing Ex. 1002, 258, 611–612).

Neonode disagrees that the applicant never distinguished "gliding" from other gestures, because that is what was happening when the applicant amended the claims from the original language describing the gesture as "moving" from one point to another. PO Sur-reply 4. Neonode also disagrees that the applicant equated a "glide" with a distinct "drag" operation (or that this is relevant to the distinction between "glide" and "flick"), because in the cited passages of the prosecution history, the applicant was clearly distinguishing between what it described as its "[n]ovel touch-and-glide user interface operation" and a "conventional . . . drag-and-drop" operation in a

24

prior art reference. *Id.* at 4–5 (quoting Ex. 1002, 297) (citing Ex. 1002, 496–498). Neonode also contends that the applicant compared "gliding" to "swiping," "rubbing," or "sliding," but never to a "flick" or a "drag." *Id.* at 5 (citing Ex. 1002, 273 ("I would like to discuss the touch-and-glide thumb movement, variously referred to as 'swiping,' 'rubbing,' gliding' and 'sliding.'"), 390 ("One such movement is a 'rubbing'/'swiping'/'touch-and-glide' movement, whereby a finger touches a touch-sensitive screen at a location where an icon for a function is displayed, and then rubs/swipes/glides, along the touch screen away from the location without lifting the finger.")).

Neonode also disagrees that the applicant referred the Examiner to the N2 video to distinguish limitation 1d rather than 1c. PO Sur-reply 5–6. According to Neonode, "[t]he Applicant did not make any arguments regarding 'duplication or relocation' of the representation of the function in connection with the video demonstration, and this language was not added to the claim until later." *Id.* at 6.

Finally, Google contends that "Robertson discloses that the 'flick' gesture starts by touching inside a button and moving away from the touched location, as described in the '879 patent," and "does not place any boundary on the speed or duration of its gestures." Pet. Reply 10–11 (citing Ex. 1003 ¶¶ 105–110; Ex. 1005, 43 (teaching that Robertson's system can recognize gestures that extend outside an XButton)); *see also id.* at 11 (arguing that the size of a gesture is irrelevant "because neither Robertson nor the '879 patent is size-constrained").

Having considered the arguments and evidence of record, we determine that Petitioner has not met its burden to show that Robertson's

IPR2021-01041
Patent 8,095,879 B2

"flick" gestures comprise "gliding along the touch sensitive area away from the touched location" as recited in limitation 1c.

Because Google has the burden of persuasion, Neonode has no obligation to precisely define the term *gliding . . . away* or explain how the term differs from the term *flick* in Robertson. *See* 37 C.F.R. § 42.104(b)(3) (2020); 35 U.S.C. § 316(e). Nevertheless, we agree with Neonode that during prosecution of the '879 patent, the applicant clearly intended the claims as a whole, and particularly limitation 1c, to cover what is known today as a "swipe" gesture, particularly but not exclusively as distinguished from a prior-art drag-and-drop operation. *See* Ex. 1002, 201, 214–15, 258, 273, 297, 317–18, 334, 390, 496–97; Ex. 2020. In particular, it appears from the record that when the Examiner was considering the submitted video of Neonode's N2 phone, the main issue was how to capture the swiping gestures shown in the video while distinguishing from drag-and-drop operations known in the prior art. *See* Ex. 1002, 258. Thus, we agree with Neonode that a person of ordinary skill in the art would have interpreted the phrase *gliding . . . away* to reflect a swiping gesture that is more specific than merely an on-screen movement from one location to another.

We disagree with Google that we should factor any potential lack of written-description support into our interpretation of *gliding . . . away.* To the extent there is any ambiguity in the term,[8] it does not rise to the level that

---

[8] The evidence suggests that the distinction between a "flick" and a "glide" may involve a number of considerations such as the size of the screen and whether the pointing object is a finger or stylus. Ex. 1031, 27:15–29:6. This does not mean that a person of ordinary skill in the art, applying those considerations, would have been unable to distinguish between a "flick" and

IPR2021-01041
Patent 8,095,879 B2

"the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used." *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999); *see also Liebel-Flarsheim*, 358 F.3d at 911 ("[U]nless the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous, the axiom regarding the construction to preserve the validity of the claim does not apply.").

The next question is whether a person of ordinary skill in the art would have understood Robertson's "flick" gesture to comprise "gliding . . . away" as we interpret that term. Robertson says very little about the "flick" gestures themselves, other than using the word *flick. See, e.g.*, Ex. 1005, 39. Robertson teaches that its gestures should be "easily differentiated," and in addition to "flick" gestures, Robertson also teaches "drag and drop" operations. *Id.* at 36 ("[Y]ou can drag a document icon and drop it into a printer icon to print the document . . . ."). We credit Dr. Rosenberg's testimony that, for the XButton system to immediately distinguish between dragging and flicking, there must be some distinction between a "flick" and a "drag," and that the most plausible difference is in terms of their speed, distance, or both. *See* Ex. 2019 ¶ 90.

Although Robertson discloses that its system is capable of recognizing gestures that start on an XButton and extend outside it (*see* Ex. 1005, 43),

---

a "glide" or that the distinction is arbitrary. *Cf. Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1360 (Fed. Cir. 2014) ("Descriptive words . . . are commonly used in patent claims, to 'avoid[] a strict numerical boundary to the specified parameter.'" (alteration in original) (quoting *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1217 (Fed. Cir. 1995)))

IPR2021-01041
Patent 8,095,879 B2

the only gesture for which Robertson specifically indicates this would be necessary is a "circling gesture[] for grouping, moving, and copying graphical objects" (*id.* at 39). Thus, we disagree with Google that Robertson's teaching in this regard is relevant to what Robertson means by a "flick" gesture.

We also find persuasive Neonode's dictionary definitions, spanning from 1993 to 2012, which consistently indicate that the word *flick* describes a movement that is "light," "sharp" or "quick," and "jerky" or "sudden," as opposed to definitions of "glide" referring to a movement that is "smooth," "continuous," and possibly "quiet" or "effortless." Exs. 2049, 2050, 2052, 2057.[9] And although the evidence postdates Robertson, we find relevant the supporting evidence that modern Apple and Google developers maintain a meaningful distinction between "flick" and "swipe" gestures. *See* Ex. 2022, 4; Ex. 2023, 6; Ex. 2025, 21; Ex. 2026, 5; Ex. 2029, 2; Ex. 2019 ¶¶ 80–81. We further credit Dr. Rosenberg's opinion that in the relevant time frame, a person of ordinary skill in the art would have interpreted a "flick" gesture as one in which "the pen would touch the screen, but only moves on the screen for a very short distance and is quickly lifted from the screen in a 'jerky' motion." Ex. 2019 ¶¶ 85–86.

---

[9] The earliest dictionary definitions (Ex. 2052) are from 1993, which is roughly contemporary with Robertson (1991), and are sufficiently close in time to be relevant. Google does not present any evidence suggesting that the meaning of *flick* had changed between 1991 and 1993. *See* PO Sur-reply 2.

IPR2021-01041
Patent 8,095,879 B2

Thus, we agree with Neonode that Google has not shown that Robertson's "flick" gesture comprises "gliding . . . away," and thus falls within the scope of claim 1.

Finally, we also agree with Neonode that Google has not established that Robertson's "insert" (caret) gesture comprises "gliding . . . away." Although Robertson does not provide much information about this gesture, we find Dr. Rosenberg's interpretation and annotated version of Figure 1 (Ex. 2019 ¶¶ 99–102) more credible than those of Dr. Wobbrock (Ex. 1003 ¶ 108). We credit Dr. Rosenberg's testimony that a person of ordinary skill in the art would have understood the "insert" gesture to be similar to the way a person would draw a caret to indicate an insertion within existing text. *See* Ex. 2019 ¶ 99. Thus, we agree it would involve two brief, connected movements with a sharp peak, neither of which would be a continuous gliding or swiping motion. *Id.* ¶¶ 100–102.

### 3. Conclusion as to Claim 1

For the above reasons, we determine that Google has not established that Robertson teaches or suggests limitation 1c, either alone or in combination with Maddalozzo. Thus, Google has not shown that claim 1 is unpatentable under § 103(a) as obvious over Robertson in view of Maddalozzo.

### 4. Dependent Claims 2–7, 9, 12, 13, and 15–17

As part of its first ground, Google argues that dependent claims 2–5, 13, and 15–17 are unpatentable under 35 U.S.C. § 103(a) as obvious over Robertson in view of Maddalozzo. Pet. 30–47. In its second ground, Google challenges dependent claims 6–7 and 9 as obvious over Robertson in view of

29

IPR2021-01041
Patent 8,095,879 B2

Vayda. Pet. 47–61. In its third ground, Google challenges claim 12 as obvious over Robertson in view of Bedford-Roberts. Pet. 61–64.

These claims depend from claim 1, and Google's arguments regarding those claims address the specific limitations added to claim 1 without specifically revisiting the issues we discuss above as to limitation 1c. *See* Pet. 30–64. Google does not further address the dependent claims in its Reply. *See* Pet. Reply 23.

Thus, the above considerations as to claim 1 are also applicable to the challenged dependent claims, and we determine that Google has not shown, by a preponderance of the evidence, that any of claims 2–7, 9, 12, 13, and 15–17 are unpatentable under § 103(a) as obvious over the respective prior art combinations.

D.   GROUNDS BASED ON TARPENNING

In the fourth ground of the Petition, Google argues that claims 1, 4–6, 13, and 15–17 are unpatentable under 35 U.S.C. § 103(a) as obvious over Tarpenning. Pet. 65–97. For this ground, we focus on Google's challenge to sole independent claim 1 and particularly limitation 1c (Pet. 25–29), after which we address the remaining claims and the remaining grounds.

Considering the *Graham* factors, we determine for the reasons below that Google has not shown, by a preponderance of the evidence, that claim 1 is unpatentable under 35 U.S.C. § 103(a) as obvious over Tarpenning.

1.   *Overview of Tarpenning (Ex. 1009)*

Tarpenning describes a hand-held reader device that includes a touch-sensitive display and graphical user interface, where the user accesses various software-implemented features associated with the display and

IPR2021-01041
Patent 8,095,879 B2

management of the content. Ex. 1009, code (57). A perspective view of the hand-held reader device is shown in Figure 2, which we reproduce below.



FIG. 2

Figure 2, above, illustrates a hand-held computing device adapted to be used as a portable reading device allowing a user to read literary titles and other types of content via a touch sensitive display 34. Ex. 1009, 3:42–48. The housing 33 has an increased width and depth and a rounded configuration along its base to form an extended gripping area 50 for holding the device. *Id.* at 4:10–13.

　　As illustrated in Figure 2, the portion of the touch screen 74 that extends beyond the perimeter 76A of the LCD display 76 has four fixed icons displayed thereon to form four respective function keys: an orientation

31

IPR2021-01041
Patent 8,095,879 B2

key 80, a user-definable "hotkey" 82, a book menu key 85, and a library
menu key 86. Ex. 1009, 6:9–14. The hand-held computing device includes a
user interface feature which allow a user to designate a hotkey function, as
shown in Figures 6 and 7, which we reproduce below.



FIG. 6

IPR2021-01041
Patent 8,095,879 B2



FIG. 7

Figures 6 and 7, above, illustrate an example of a hotkey assignment feature of a hand-held computing device's user interface. Ex. 1009, 3:3–4, 7:39–42. With reference to Figure 6, a user initially  brings up a menu or sub-menu that contains the target hotkey function. *Id.* at 7:42–44. The menu or sub-menu item that is currently defined as the hotkey function is denoted as such by a hotkey icon 90. *Id.* at 7:30–32. In this example, the hotkey icon 90 appears next to the "Goto Bookmarks" item of the book menu. *Id.* at 7:32–34.

33

IPR2021-01041
Patent 8,095,879 B2

As depicted in Figure 7, the user then touches the hotkey 82 with the stylus 92 (or the user's finger), drags the stylus to the target item, and then removes the stylus from the touch screen 74. Ex. 1009, 7:44–48. During the dragging process, the hotkey icon 90 is displayed next to the menu item (if any) that is currently touched. *Id.* at 7:49–51. In Figure 7, the hotkey icon 90 is displayed next to the "Highlight" item since the stylus 92 is currently over that item. *Id.* at 7:51–53.

2.    *Limitation 1c*

Limitation 1c recites, in part, "wherein the function is activated by a multi-step operation." Ex. 1001, 6:52–53. Because we find that Google has not shown that Tarpenning teaches this aspect of limitation 1c, we need only address that part of limitation 1c in our decision.

Google contends that a user may activate Tarpenning's book menu key 84 or library menu key 86 using a touch gesture. Pet. 76–77 (citing Ex. 1009, 6:9–14, 6:41–43, Figs. 2, 6; Ex. 1003 ¶¶ 214–220). Google also argues that Tarpenning separately discloses a "multi-step touch-then-glide gesture operation to active hotkey 82's 'assignment' function," in which, according to Google, the user "[i] touches the hotkey 82 with the stylus 92 (or the user's finger),' and then [ii] 'drags [glides] the stylus to the target item.'" Pet. 78 (alterations in original) (quoting Ex. 1009, 7:44–48) (citing Ex. 1009, 6:35–40, Fig. 7; Ex. 1003 ¶ 216). According to Google, "[t]he assignment is completed when the user lifts the stylus at the desired operation to be assigned." Pet. 78–79 (citing Ex. 1009, 7:44–48, Fig. 7; Ex. 1003 ¶ 216).

Google contends that a person of ordinary skill in the art "would have found it obvious to replace Tarpenning's touch operation to activate the

IPR2021-01041
Patent 8,095,879 B2

menu display functions of book menu key 84 and library menu 86 with the disclosed multi-step touch-then-glide activation gesture." Pet. 80 (citing Ex. 1003 ¶ 217). This is because, according to Google, a person of ordinary skill in the art would have wanted "to prevent accidental activation of the menu functions resulting from accidentally touching the icon" and to more accurately open sub-menus without lifting the stylus or the finger off the screen. *Id.* at 82 (citing Ex. 1003 ¶¶ 219–221; Ex. 1017, 10:14–16). Google contends that the ordinarily skilled artisan would have expected success because Tarpenning's mobile handheld computer already uses both touch and touch-then-glide operations to activate key functions and those operations were well known. *Id.* at 83–84.

In its Response, Neonode argues that Tarpenning's hotkey-assignment operation on hotkey 82 does not actually activate any function as recited in limitation 1c. PO Resp. 67. As Dr. Rosenberg puts it, "this assignment procedure does not 'activate' anything—it merely assigns the desired function to hotkey 82, which is then activated by the user by pressing the key, not by 'gliding . . . away.'" Ex. 2019 ¶ 139 (alteration in original). According to Dr. Rosenberg, "Tarpenning never refers to its drag-and-drop operation as 'activating' anything, but as, for example, 'defining a function' for the hotkey." *Id.* (citing Ex. 1009, 7:39–41, 8:1–3).

Google counters that the hotkey-assignment gesture "activates the *assignment* function (the system starts determining whether a new function has been assigned) *because* of the touch-then-glide gesture." Pet. Reply 19–20 (citing Ex. 1031, 45:24–47:4 (Dr. Rosenberg stating on cross-examination that the word *function* in claim 1 is broader than simply bringing up a user interface associated with an icon)). In other words, as

IPR2021-01041
Patent 8,095,879 B2

Google's counsel explained in oral argument, when the user touches hotkey 82 and begins moving the pointing device toward a potential function, the function "determining whether a new function has been assigned" has already been activated, and continues until the user lifts up from the device. *See* Tr. 37:17–39:16.

We find Google's argument unpersuasive.[10] Tarpenning's assignment operation for hotkey 82 is in the nature of a drag-and-drop operation, where the user drags the pen from hotkey 82 to the intended menu item to which hotkey 82 will be assigned. But Google identifies the "function [to be] activated"—not as the actual assignment of hotkey 82 to the menu item when the user lifts from the intended menu item—but as the underlying software process that looks to see whether the user has lifted yet from the selected menu item. *See* Pet. Reply 19–20; Tr. 37:17–39:16. Essentially, Google asserts that the recited *function* is part of processing the gesture itself, which we do not find persuasive. As counsel for Neonode argued at the hearing, unless the user lifts off from a menu item, no assignment to hotkey 82 has been made and nothing has actually been done. *See* Tr. 80:4–13.

---

[10] We also consider this argument untimely, as it appears to contradict Google's original theory of obviousness in the Petition, which states that the "'assignment' function" is "completed when the user reaches the target item to be assigned." Pet. 79; *see also* Tr. 80:2–3 (counsel for Neonode arguing, "I submit that's not only a new point they're making, it's unsupported and . . . incorrect."); 37 CFR § 42.23(b) ("A reply may only respond to arguments raised in the corresponding . . . patent owner response[] or decision on institution.").

IPR2021-01041
Patent 8,095,879 B2

We also find unpersuasive Google's original argument in the Petition that the recited "function" is activated when the user reaches the target menu item being assigned to hotkey 82. *See* Pet. 79. This is essentially a traditional drag-and-drop operation. But we credit Dr. Rosenberg's testimony that when the user lifts from the intended menu item, no function has actually been activated. *See* Ex. 2019 ¶ 139. Rather, at this point a function has merely been assigned to the hotkey for future activation by touching the hotkey. *See id.*

Thus, we determine that Google has not identified any disclosure in Tarpenning in which any "function is activated by a multi-step operation" as recited in limitation 1c. Absent that teaching or suggestion, Google's argument (Pet. 80–82) does not adequately articulate why a person of ordinary skill in the art would have modified Tarpenning's book menu key 84 or library menu key 86 to achieve limitation 1c, and we find Google's obviousness argument unpersuasive as to claim 1.

### 3.      *Dependent Claims 2–7, 9, 12, 13, and 15–17*

As part of its fourth ground, Google argues that dependent claims 4–6, 13, and 15–17 are unpatentable under 35 U.S.C. § 103(a) as obvious over Tarpenning. Pet. 84–97. In its fifth ground, Google challenges dependent claims 2–3, 7, and 9 as obvious over Tarpenning in view of Vayda. Pet. 98–102. In its sixth ground, Google challenges claim 12 as obvious over Tarpenning in view of Bedford-Roberts. Pet. 102–103.

These claims depend from claim 1, and Google's arguments regarding those claims address the specific limitations added to claim 1 without specifically revisiting the issues we discuss above as to limitation 1c. *See*

IPR2021-01041
Patent 8,095,879 B2

Pet. 84–103. Google does not further address the dependent claims in its Reply. *See* Pet. Reply 23.

Thus, the above considerations as to claim 1 are also applicable to the challenged dependent claims, and we determine that Google has not shown, by a preponderance of the evidence, that any of claims 2–7, 9, 12, 13, and 15–17 are unpatentable under § 103(a) as obvious over the respective prior art combinations.

## IV. CONCLUSION

For the reasons above, Google has not shown by a preponderance of the evidence that any challenged claim of the '879 patent is unpatentable under any ground of the Petition.

## V. ORDER

In consideration of the foregoing, it is

ORDERED that claims 1–7, 9, 12, 13, and 15–17 of the '879 patent have not been shown to be unpatentable; and

FURTHER ORDERED that parties to this proceeding seeking judicial review of our decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

IPR2021-01041
Patent 8,095,879 B2

In summary:

| Claim(s) | 35 U.S.C. § | Reference(s)/Basis | Claims Shown Unpatentable | Claims Not Shown Unpatentable |
|---|---|---|---|---|
| 1–5, 13, 15–17 | 103(a) | Robertson, Maddalozzo | | 1–5, 13, 15–17 |
| 6, 7, 9 | 103(a) | Robertson, Maddalozzo, Vayda | | 6, 7, 9 |
| 12 | 103(a) | Robertson, Maddalozzo, Bedford-Roberts | | 12 |
| 1, 4–6, 13, 15–17 | 103(a) | Tarpenning | | 1, 4–6, 13, 15–17 |
| 2, 3, 7, 9 | 103(a) | Tarpenning, Vayda | | 2, 3, 7, 9 |
| 12 | 103(a) | Tarpenning, Bedford-Roberts | | 12 |
| **Overall Outcome** | | | | 1–7, 9, 12, 13, 15–17 |

IPR2021-01041
Patent 8,095,879 B2

For PETITIONER:

Erika Arner
Kevin Rodkey
Yi Yu
Wei Yuan
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
erika.arner@finnegan.com
kevin.rodkey@finnegan.com
yi.yu@finnegan.com
wei.yuan@finnegan.com


For PATENT OWNER:

Parham Hendifar
Kenneth Weatherwax
Nathan Lowenstein
LOWENSTEIN & WEATHERWAX LLP
hendifar@lowensteinweatherwax.com
weatherwax@lowensteinweatherwax.com
lowenstein@lowensteinweatherwax.com

Philip Graves
GRAVES & SHAW LLP
pgraves@gravesshaw.com

Trials@uspto.gov                                          Paper 26
571-272-7822                                   Entered: December 3, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

SAMSUNG ELECTRONICS CO. LTD, SAMSUNG ELECTRONICS
AMERICA, INC., and APPLE INC.,
Petitioner,

v.

NEONODE SMARTPHONE LLC,
Patent Owner.

———————

IPR2021-00144
Patent 8,095,879 B2

———————

Before MICHELLE N. ANKENBRAND, KARA L. SZPONDOWSKI, and
CHRISTOPHER L. OGDEN, *Administrative Patent Judges*.

ANKENBRAND, *Administrative Patent Judge*.

DECISION
Granting Petitioner's Request on Rehearing
*37 C.F.R. § 42.71(d)*
Granting Institution of *Inter Partes* Review
*37 C.F.R. § 314*

IPR2021-00144
Patent 8,095,879 B2

## I.    INTRODUCTION

On November 6, 2020, Samsung Electronics Co. Ltd., Samsung Electronics America, Inc. and Apple Inc. (collectively, "Petitioner") filed a petition requesting an *inter partes* review ("Petition") of claims 1–6 and 12–17 ("challenged claims") of U.S. Patent No. 8,095,879 B2 ("the '879 patent," Ex. 1001).

We issued a Decision Denying Institution of *Inter Partes* Review on June 15, 2021 (Paper 24, "Decision" or "DI"). Specifically, we determined that Petitioner failed to establish a reasonable likelihood of prevailing with respect to at least one of the challenged claims under the following asserted grounds:

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 14–17 | 103(a) | Ren,[1] Tanaka[2] |
| 2–5 | 103(a) | Ren, Tanaka, Hirayama307[3] |
| 3 | 103(a) | Ren, Tanaka, Hirayama307, Hirayama878[4] |
| 6, 13 | 103(a) | Ren, Tanaka, Allard[5] |
| 12 | 103(a) | Ren, Tanaka, Henckel[6] |
| 1, 2, 4, 5, 14–17 | 103(a) | Hirayama307, Ren |
| 3 | 103(a) | Hirayama307, Ren, Hirayama878 |
| 6, 13 | 103(a) | Hirayama307, Ren, Allard |
| 12 | 103(a) | Hirayama307, Henckel |

---

[1] Xiangshi Ren & Shinji Moriya, *Improving Selection Performance on Pen-Based Systems: A Study of Pen-Based Interaction for Selection Tasks*, 7 ACM Transactions on Computer-Human Interaction 384–416 (2000) (Ex. 1004).
[2] U.S. Patent No. 5,249,296, issued Sept. 28, 1993 (Ex. 1005).
[3] U.S. Patent No. 5,406,307, issued Apr. 11, 1995 (Ex. 1006).
[4] U.S. Patent No. 6,100,878, issued Aug. 8, 2000 (Ex. 1009).
[5] U.S. Patent No. 5,615,384, issued Mar. 25, 1997 (Ex. 1010).
[6] U.S. Patent No. 5,463,725, issued Oct. 31, 1995 (Ex. 1013).

IPR2021-00144
Patent 8,095,879 B2

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 14, 15 | 103(a) | Jermyn[7] |

DI 2, 7, 27.

On July 15, 2021, Petitioner filed a Request for Rehearing (Paper 25, "Rehearing Request" or "Reh'g Req.") of our Decision regarding the grounds relying on Hirayama307 as the primary reference. Reh'g Req. 1 & n.1. Petitioner contends that we misapprehended Hirayama307's teachings with respect to claim 1's limitation "wherein the representation of the function is not relocated or duplicated during the gliding." *See generally id.*; Ex. 1001, 6:57–59; *see also* DI 6 (reproducing claim 1).

Specifically, Petitioner contends that we misapprehended the claim language by (1) equating Hirayama307's icon 41 with window 43, Reh'g Req. 1, and (2) relying on portions of Hirayama307 that illustrate actions that occur after and not "during the gliding," as recited in claim 1.[8] *Id.*

We have considered Petitioner's arguments and conclude that we misapprehended the teachings of Hirayama307 and that the Petition sets forth sufficient arguments and evidence to establish a reasonable likelihood that Petitioner will prevail on its Hirayama307 related grounds. We, therefore, grant Petitioner's Rehearing Request and institute an *inter partes* review of claims 1–6 and 12–17 of the '879 patent.

---

[7] Ian Jermyn et al., *The Design & Analysis of Graphical Passwords*, in Proceedings of the 8th USENIX Security Symposium (1999) (Ex. 1014).
[8] Petitioner does not present arguments relating to either the grounds relying primarily on Ren or the ground relying on Jermyn. Thus, this decision does not address those grounds.

IPR2021-00144
Patent 8,095,879 B2

## II.   ANALYSIS

### A.   *Standard of Review*

A request for rehearing must identify specifically all matters the party believes the Board misapprehended or overlooked, and the place where each matter was previously addressed in a motion, an opposition, or a reply. 37 C.F.R. § 42.71(d). Petitioner, as the party challenging the Decision, has the burden of showing that we should modify the Decision. *Id.* When rehearing a decision on a petition, we review the decision for an abuse of discretion. *Id.* § 42.71(c). "An abuse of discretion occurs if the decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record that contains no evidence on which the Board could rationally base its decision." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 442 (Fed. Cir. 2015).

### B.   *Obviousness over Hirayama307*

In the Decision, we determined that Petitioner failed to show sufficiently that Hirayama307 discloses claim 1's limitation "wherein the representation of the function is not relocated or duplicated during the gliding." DI 18–19. We further determined that Petitioner failed to show a reasonable likelihood of prevailing in its assertions as to claims 2–6 and 12–17 based on our determination as to claim 1. *Id.* at 20–21 (finding that Petitioner failed to meet its burden as to claims 2, 4, and 14–17 because these claims ultimately depend from claim 1, and that Petitioner's additional asserted art for its challenges to claims 3, 6, 12, and 13 does not remedy the deficiencies with respect to claim 1). Below, we first address claim 1 and then turn to claims 2–6 and 12–17.

4

IPR2021-00144
Patent 8,095,879 B2

### 1.    Claim 1

Petitioner's arguments on rehearing are solely directed to our analysis
of the limitation "wherein the representation of the function is not relocated
or duplicated during the gliding" (the "limitation at issue") as it relates to
Hirayama307.[9]  In the Decision, we found that Petitioner failed to make a
sufficient showing that Hirayama307 discloses the limitation at issue
"because Hirayama307 appears to disclose either relocating or duplicating
the icon on the screen's display." DI 18.  In reaching our determination, we
primarily relied upon Hirayama307's Figures 3B, 4A, and 4B, as well as
Hirayama307's disclosure regarding icon 41 and large icon or window 43.
*Id.* at 18–19 (citing Ex. 1006, 5:3–12, 6:22–31).  We reproduce Figure 3B
below, as it is relevant to our discussion of Petitioner's arguments on
rehearing.



FIG. 3B

---

[9] Although Petitioner argued in the Petition that the limitation at issue was
alternatively obvious over the combination of Hirayama307 and Ren,
Petitioner does not challenge our findings regarding that combination in the
Rehearing Request, and we do not address that alternative argument in this
decision.

5

IPR2021-00144
Patent 8,095,879 B2

Figure 3B illustrates a display screen of Hirayama307's device. Ex. 1006,
2:48–51. Hirayama307 explains that, after the user moves the pen point
from icon 41 to display portion 3, "an icon (hereinafter . . . referred to as a
window) enlarged in the form of the processing display mode of the desired
icon 41 is automatically displayed on the display portion 1 as shown in FIG.
3B." *Id.* at 5:3–12.

Petitioner argues on rehearing that icon 41 corresponds to the
"representation of a function." Reh'g Req. 4 (citing Pet. 59). This icon,
Petitioner argues, is not the same as window 43. *Id.* at 8–9. Thus, Petitioner
contends that we "misapprehended Hirayama307's teachings by . . . equating
**icon 41** with 'enlarged icon' or 'large icon' (as depicted in FIG. 3B), which
Hirayama through the specification refers to as **window 43**." *Id.* at 7–8.
Petitioner continues "that the *'representation of the function'—i.e., the
icon 41 'is not relocated or duplicated during the gliding'*" as the limitation
at issue requires. *Id.* at 9. Petitioner further submits that even if we believe
that certain aspects of Hirayama307's disclosure suggest duplicating icon 41
in the form of window 43, such teaching is not explicit and constitutes a fact
issue that should be resolved during trial. *Id.* at 10.

In response to Petitioner's argument that Hirayama307 discloses the
limitation at issue, Patent Owner argues that a person of ordinary skill in the
art would have understood that icon 41 was "dragged and dropped," as was
"typical in computer user interfaces as of 2002." Paper 23 at 37 (citing
Ex. 2001 ¶ 100). Patent Owner further argues that an ordinarily skilled
artisan would have understood that icon 41 was relocated or duplicated
because Hirayama307's system "Enlarge(s) [the] icon as a window." *Id.* at
39–40 (citing Ex. 2001 ¶ 103).

6

IPR2021-00144
Patent 8,095,879 B2

Having reconsidered the parties' arguments, we agree with Petitioner that we misapprehended Hirayama307's distinction between icon 41 and window 43 and, as a result, misapprehended the Petition's arguments related to icon 41. Specifically, Hirayama307 discloses that window 43 appears "after having touched the desired icon 41 with the point of the pen 3," and that window 43 is "the processing display form" of icon 41. Ex. 1006, 5:64–66. Thus, contrary to our determination in the Decision that "Hirayama307 appears to duplicate or relocate the representation of the function, i.e., icon, during gliding," a closer reading of Hirayama307 indicates that icon 41 and window 43 are different, though Hirayama307 at times uses the term "large icon" or "enlarged icon" to describe window 43. *See, e.g.*, Ex. 1006, 6:7–14, 6:22–23, 6:30. We acknowledge that Patent Owner disagrees with Petitioner, but we find that the parties' disagreement raises an issue of fact that is best resolved on a full trial record. Accordingly, we determine that Petitioner shows sufficiently at this stage of the proceeding that Hirayama307 discloses the limitation "wherein the representation of the function is not relocated or duplicated during the gliding." In light of this determination, we need not address Petitioner's additional arguments related to whether Hirayama307 discloses the limitation at issue. [10]

We further determine on the record before us that Petitioner sets forth sufficient arguments and evidence that Hirayama307 discloses the remaining

---

[10] Patent Owner's remaining arguments in the Preliminary Response regarding the Hirayama307 grounds relate to Petitioner's alternative contention that Hirayama307 and Ren disclose the limitation at issue. We need not address those arguments because we find that Petitioner shows sufficiently at this stage of the proceeding that Hirayama307 alone discloses the limitation at issue.

IPR2021-00144
Patent 8,095,879 B2

limitations of claim 1. *See* Pet. 49–60. At this stage of the proceeding, Patent Owner's arguments regarding claim 1 are confined to the limitation at issue, and so Patent Owner does not specifically challenge Hirayama307's disclosure as it relates to the remaining limitations of claim 1. Paper 23 at 36–49.

### 2.  *Claims 2–6 and 12–17*

Petitioner challenges claims 2–6 and 12–17 by adding the teachings of Ren, Hirayama878, Allard, or Henckel to the teachings of Hirayama307. Pet. 1–2, 49–74. Patent Owner does not separately address the dependent claims in its Preliminary Response. Paper 23 at 50. We have reviewed Petitioner's evidence, including the relevant portions of Dr. Bederson's testimony and Petitioner's arguments that a person of ordinary skill in the art would have had reason to combine the prior art disclosures. *See* Pet. 49–74 (and evidence cited therein). Based on the current record, we find that Petitioner also demonstrates a reasonable likelihood of prevailing in its obviousness challenge with respect to claims 2–6 and 12–17.

### C.  *Considerations under Section 314(a)*

We have discretion to deny a petition for *inter partes* review under § 314(a). *See* 35 U.S.C. § 314(a) ("The Director may not authorize an *inter partes* review to be instituted unless . . . ."); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2140 (2016) ("[T]he agency's decision to deny a petition is a matter committed to the Patent Office's discretion."); *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016) ("First of all, the PTO is permitted, but never compelled, to institute an IPR proceeding." (citing 35 U.S.C. § 314(a))). When deciding whether to exercise our discretion, we may consider the number of claims and grounds that meet the reasonable likelihood standard and whether, in the interests of efficient

IPR2021-00144
Patent 8,095,879 B2

administration of the Office and integrity of the patent system, the entire petition should be denied. *Deeper, UAB v. Vexilar, Inc.*, IPR2018-01310, Paper 7 at 42 (PTAB Jan. 24, 2019) (informative); SAS Q&A's, Part D, Effect of *SAS* on Future Challenges that Could Be Denied for Statutory Reasons, D2 (June 5, 2018), available at https://www.uspto.gov/sites/default/files/documents/sas_qas_20180605.pdf.

Here, Petitioner demonstrates a reasonable likelihood of prevailing on its challenges involving Hirayama307, which address all challenged claims. On this record, and based on the particular facts of this proceeding, we find that instituting a trial is an efficient use of the Board's time and resources.

## D.    Conclusion

For the foregoing reasons, we grant Petitioner's Rehearing Request and determine that Petitioner demonstrates a reasonable likelihood that at least one challenged claim of the '879 patent is unpatentable over the prior art of record. Accordingly, we institute an *inter partes* review of all claims on all grounds asserted in the Petition.[11]

## III.    ORDER

It is:

ORDERED that Petitioner's Request for Rehearing is *granted*;

FURTHER ORDERED that, pursuant to 35 U.S.C. § 314(a), an *inter partes* review of claims 1–6 and 12–17 of the '879 patent is instituted with

---

[11] In the Rehearing Request, Petitioner "withdraws Grounds 1A–1E and 3 [i.e., the grounds relying primarily on Ren or Jermyn] and stipulate[s] not to pursue these grounds in any proceeding that is instituted from this rehearing request. In this regard, Petitioner[] promote[s] narrowed focus on the merits of Ground 2 [the Hirayama307 grounds] only." Reh'g Req. 1 n.1.

IPR2021-00144
Patent 8,095,879 B2

respect to all grounds of unpatentability asserted in the Petition commencing on the entry date of this decision; and

FURTHER ORDERED that, pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial.

IPR2021-00144
Patent 8,095,879 B2

FOR PETITIONER:

W. Karl Renner
David Holt
FISH & RICHARDSON P.C.
axf-ptab@fr.com
holt2@fr.com

Tiffany Miller
James Heintz
DLA PIPER LLP
tiffany.miller@dlapiper.com
jim.heintz@dlapiper.com

FOR PATENT OWNER:

Robert Asher
Bruce Sunstein
Timothy Murphy
Arne Hans
SUNSTEIN LLP
rasher@sunsteinlaw.com
bsunstein@sunsteinlaw.com
tmurphy@sunsteinlaw.com
ahans@sunsteinlaw.com

11

Trials@uspto.gov                                          Paper 24
571-272-7822                                    Date: June 15, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

SAMSUNG ELECTRONICS CO. LTD, SAMSUNG ELECTRONICS
AMERICA, INC., and APPLE INC.,
Petitioner,

v.

NEONODE SMARTPHONE LLC,
Patent Owner.

IPR2021-00144
Patent 8,095,879 B2

Before MICHELLE N. ANKENBRAND, KARA L. SZPONDOWSKI, and
CHRISTOPHER L. OGDEN, *Administrative Patent Judges*.

ANKENBRAND, *Administrative Patent Judge*.

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2021-00144
Patent 8,095,879 B2

## I. INTRODUCTION

Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., and Apple Inc. (collectively, "Petitioner") filed a Petition requesting an *inter partes* review of claims 1–6 and 12–17 of U.S. Patent No. 8,095,879 B2 (Ex. 1001, "the '879 patent"). Paper 6 ("Pet."). Neonode Smartphone LLC ("Patent Owner") filed a Preliminary Response. Paper 23 ("Prelim. Resp.").

We have authority to determine whether to institute an *inter partes* review. 35 U.S.C. § 314 (2018); 37 C.F.R. § 42.4(a) (2020). The standard for instituting an *inter partes* review is set forth in 35 U.S.C. § 314(a), which provides that an *inter partes* review may not be instituted "unless the Director determines . . . there is a reasonable likelihood that the petitioner would prevail with respect to at least [one] of the claims challenged in the petition."

For the reasons set forth below, upon considering the Petition, Preliminary Response, and evidence of record, we determine the information presented in the Petition does not establish a reasonable likelihood that Petitioner would prevail with respect to at least one of the challenged claims. Accordingly, we deny the Petition, and do not institute an *inter partes* review.

## II. BACKGROUND

### A. Related Matters

The parties identify the following district court proceedings related to the '879 patent: *Neonode Smartphone LLC v. Apple Inc.*, Case No. 6:20-cv-00505 (W.D. Tex.) and *Neonode Smartphone LLC v. Samsung Electronics Co. Ltd.*, Case No. 6:20-cv-00507 (W.D. Tex.). Pet. 92–93; Paper 7, 2.

2

IPR2021-00144
Patent 8,095,879 B2

Patent Owner also identifies as related IPR2021-00145 (challenging U.S. Patent No. 8,812,993 B2). Paper 7, 2.

### B. Overview of the '879 Patent

The '879 patent, titled "User Interface for Mobile Handheld Computer Unit," issued on January 10, 2012. Ex. 1001 at [45], [54]. The '879 patent describes a user interface for a mobile handheld computer that has a touch sensitive area divided into a menu area and a display area. *Id.* at 1:6–9. The menu area shows a representation of a first, a second, and a third predefined function that "can be activated when the touch sensitive area detects a movement of an object with its starting point within the representation of the function on the menu area and with a direction from the menu area to the display area." *Id.* at 1:65–2:5, 2:11–14. "The first function is a general application dependent function, the second function is a keyboard function, and the third function is a task and file manager." *Id.* at 2:7–10.

The user interface is "specifically adapted to be used with a small computer unit" having a touch sensitive area that is approximately 2–3 inches and also is adapted so that a user can operated it with one hand. *Id.* at 3:1–6.

We reproduce Figure 1 of the '879 patent below.

3

IPR2021-00144
Patent 8,095,879 B2



**Fig. 1.**

Figure 1 is a schematic view of touch sensitive area 1 on a mobile handheld computer unit, depicting menu area 2 adapted to present a representation of first 21, second, 22, and third 23 predefined functions. *Id.* at 3:21–22, 4:1–3. We reproduce Figure 2 of the '879 patent below.



**Fig. 2.**

Figure 2 is a schematic side view illustrating how a user activates a function. *Id.* at 3:24–25. A user can activate any one of functions 21, 22, or 23 when

4

IPR2021-00144
Patent 8,095,879 B2

touch sensitive area 1 detects a movement of object 4 with its starting point
A within the representation of a function on menu area 2 and with direction
B from menu area 2 to display area 3. *Id.* at 4:7–11. Object 4 can be a
finger, a pen, or another pointing device. *Id.* at 6:11–15.

The '879 patent explains that when a user activates, for example, the
first function, the display area is adapted to display icons representing
services or settings, depending on the current active application. *Id.* at 2:18–
20. Figure 3, which we reproduce below, illustrates first function 21
activated.



*Fig. 3.*

Figure 3 is a schematic illustration of the first function. *Id.* at 3:26. Figure 3
shows that after a user activates first function 21 with the movement
depicted in Figure 2, display area 3 displays icons 211–216, each
representing services or functions depending on the current active
application. *Id.* at 4:12–15. If, for example, the active application handles a
picture, then the icons showing on display area 3 after a user activates the
first function "can be services such as 'save to disk', 'send as SMS', or
'delete', and they can be setting such as 'resolution', 'colour', or
'brightness'." *Id.* at 4:24–28. If no application is active on the computer,

5

IPR2021-00144
Patent 8,095,879 B2

then icons 211–216 represent services or settings of the operating system, such as background picture clock, alarm 215, users 213, and help 211. *Id.* at 3:29–32.

The '879 patent describes, in similar fashion, how a user activates the second keyboard function and the third task and file manager function. *See id.* at 4:34–5:63.

### C. Illustrative Claim

Petitioner challenges claims 1–6 and 12–17 of the '879 patent (collectively, "the challenged claims"). Claim 1, the only independent claim, is illustrative of the claimed subject matter, and recites:

> 1. A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:
>
> a touch sensitive area in which a representation of a function is provided, wherein the representation consists of only one option for activating the function and wherein the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location, wherein the representation of the function is not relocated or duplicated during the gliding.

Ex. 1001, 6:45–59.

IPR2021-00144
Patent 8,095,879 B2

### D. Asserted Grounds of Unpatentability

Petitioner asserts that the challenged claims are unpatentable based on the following grounds:

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 14–17 | 103(a)[1] | Ren,[2] Tanaka[3] |
| 2–5 | 103(a) | Ren, Tanaka, Hirayama307[4] |
| 3 | 103(a) | Ren, Tanaka, Hirayama307 Hirayama878[5] |
| 6, 13 | 103(a) | Ren, Tanaka, Allard[6] |
| 12 | 103(a) | Ren, Tanaka, Henckel[7] |
| 1, 2, 4, 5, 14–17 | 103(a) | Hirayama307, Ren |
| 3 | 103(a) | Hirayama307, Ren, Hirayama 878 |
| 6, 13 | 103(a) | Hirayama307, Ren, Allard |
| 12 | 103(a) | Hirayama307, Henckel |
| 1, 14, 15 | 103(a) | Jermyn[8] |

Pet. 1–2. Petitioner relies on the Declaration of Dr. Benjamin B. Bederson (Ex. 1002) to support its asserted grounds of unpatentability. Patent Owner

---

[1] The Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) ("AIA"), amended 35 U.S.C. § 103. Because the '879 patent has an effective filing date before the effective date of the applicable AIA amendments, we refer to the pre-AIA version of 35 U.S.C. § 103.

[2] Xiangshi Ren & Shinji Moriya, *Improving Selection Performance on Pen-Based Systems: A Study of Pen-Based Interaction for Selection Tasks*, 7 ACM Transactions on Computer-Human Interaction 384–416 (2000) (Ex. 1004).

[3] U.S. Patent No. 5,249,296, issued Sept. 28, 1993 (Ex. 1005).

[4] U.S. Patent No. 5,406,307, issued Apr. 11, 2014 (Ex. 1006).

[5] U.S. Patent No. 6,100,878, issued Aug. 8, 2000 (Ex. 1009).

[6] U.S. Patent No. 5,615,384, issued Mar. 25, 1997 (Ex. 1010).

[7] U.S. Patent No. 5,463,725, issued Oct. 31, 1995 (Ex. 1013).

[8] Ian Jermyn et al., *The Design & Analysis of Graphical Passwords*, in Proceedings of the 8th USENIX Security Symposium (1999) (Ex. 1014).

7

IPR2021-00144
Patent 8,095,879 B2

disputes that Petitioner's asserted grounds render any of the challenged claims unpatentable. *See generally* Prelim. Resp. Patent Owner relies on the Declaration of Dr. Craig Rosenberg (Ex. 2001).

### III. DISCUSSION

#### A. Level of Ordinary Skill in the Art

For Petitioner, Dr. Bederson testifies that a person of ordinary skill in the art at the time of the invention, "would have had at least a bachelor's degree in computer science, computer engineering, or the equivalent education and at least two years of experience in user-interface design and development," but "[a]dditional years of experience could substitute for formal education, and vice versa." Ex. 1002 ¶ 49. Patent Owner's expert, Dr. Rosenberg, applies Dr. Bederson's description of the ordinarily skilled artisan. Ex. 2001 ¶ 33. We adopt Dr. Bederson's description of the level of ordinary skill in the art because it is consistent with the problems and solutions the '879 patent identifies and with the prior art.

#### B. Claim Construction

Neither party contends that there are claim terms in dispute, or that we need to construe any terms for purposes of this decision. *See* Pet. 5–6; *see generally* Prelim. Resp. After reviewing the parties' arguments and evidence, we determine that we do not need to expressly construe any claim terms for purposes of this Decision. *See Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017).

#### C. Asserted Obviousness Based on Ren and Tanaka

Petitioner asserts five obviousness challenges based on the combination of Ren and Tanaka. *See* Pet. 1 (summary of grounds 1A–1E). Specifically, Petitioner contends that the subject matter of the challenged

8

IPR2021-00144
Patent 8,095,879 B2

claims of the '879 patent would have been obvious over: (1) Ren and
Tanaka (claims 1 and 14–17); (2) Ren, Tanaka, and Hirayama307 (claims 2–
5); (3) Ren, Tanaka, Hirayama307, and Hirayama878 (claim 3); (4) Ren,
Tanaka, and Allard (claims 6 and 13); and (5) Ren, Tanaka, and Henckel
(claim 12). *See, e.g., id.*

Before turning to Petitioner's arguments, we provide a brief summary
of Ren and Tanaka, as they form the basis of our analysis.

*1. Ren (Ex. 1004)*

Ren describes pen-based selection strategies for use on small, touch-
sensitive screens. Ex. 1004, 384–385. In small pen-based systems, users
access information by selecting a target more often than by inputting
handwritten data. *Id.* "Common targets are menus, data . . . ranges etc., and
the selection of keys on a software keyboard displayed on a screen." *Id.*
Users have to select smaller targets as the amount of information displayed
on a screen increases. *Id.* Thus, Ren recognizes the "trade-off between the
size and accessibility of targets and the amount of information presented on
the screen" as "a fundamental problem in human-computer design" that "is
especially obvious in mobile products, such as . . . PDAs." *Id.*

Ren specifically studies six selection strategies depicted in its Figure
3: *Direct On, Slide Touch, Direct Off, Slide Off, Space On,* and *Space
Touch.* We reproduce Figure 3 below, with a red rectangle we have added
around the $a \rightarrow c \rightarrow b \rightarrow a$ route of the *Slide Off* strategy on which
Petitioner focuses its unpatentability arguments.

9



Figure 3 shows the six strategies for selecting a target that Ren uses in its experiments grouped according to their characteristics, annotated with a red rectangle to highlight the $a \rightarrow c \rightarrow b \rightarrow a$ route of Ren's *Slide Off* strategy. *Id.* at 389–390. In Figure 3, "[t]he arrows show the direction of pen-tip movement," "the dashed lines indicate that the pen-tip is not in contact with the screen surface (either before or after contact), and the solid lines . . . show that the pen-tip is in contact with the screen surface." *Id.* at 389. For the *Slide Off* strategy, "[t]he target is highlighted only while the pen is in contact with it; however, the selection is made when the pen is removed from any point on the screen either inside or outside the target area," as illustrated in the $a \rightarrow c \rightarrow b \rightarrow a$ route. *Id.* at 391. Ren describes the *Slide*

IPR2021-00144
Patent 8,095,879 B2

*Off* strategy as "an extension of the *Direct Off* strategy." *Id.* In the *Direct Off* strategy, "the target is highlighted only while the pen is touching it," and the "selection is made at the moment the pen is taken off the target." *Id.* at 390.

### 2. Tanaka (Ex. 1005)

Tanaka relates to an information-processing device for controlling window positions. Ex. 1005, 1:7–8. Specifically, Tanaka discloses a device that allows a user to use both of two icon-selecting methods—a "check" and a "drag"—to control window positions on the screen. *Id.* at 2:33–38. The "check" method allows a user to open a new window corresponding to a selected icon on a display screen when the user checks the icon with a pointing device. *Id.* at 1:9–12, 3:5–9. The "drag" method allows a user to open a new window corresponding to a selected icon "in the position to which the icon is dragged and from which the pointing pen is lifted up." *Id.* at 1:12–14, 3:9–12.

### 3. Claims 1 and 14–17

Petitioner contends that the combined teachings of Ren and Tanaka disclose each limitation of claim 1, and that a person of ordinary skill in the art would have had reason to implement Ren's selection strategies, particularly the $a \rightarrow c \rightarrow b \rightarrow a$ *Slide Off* strategy route, on Tanaka's device. Pet. 16–31; *see id.* at 18–19 (discussing reason to combine). Petitioner relies on Dr. Bederson's testimony to support its assertions. *See id.* Patent Owner argues that Petitioner fails to show sufficiently why a person of ordinary skill in the art would have had a reason to combine Ren's and Tanaka's teachings with a reasonable expectation of success in achieving the claimed invention. Prelim. Resp. 1–2, 3–36. We focus our discussion on that issue.

11

IPR2021-00144
Patent 8,095,879 B2

Petitioner contends that an ordinarily skilled artisan would have implemented Ren's selection strategies on Tanaka's device for a number of reasons. First, Petitioner notes that "Ren and Tanaka are directed to solutions to the same problem—target selection techniques in pen-based tablet systems." Pet. 18–19. In view of this, Petitioner asserts a "[person of ordinary skill in the art] would have recognized Ren as disclosing a handful of selection techniques that would have been obvious to try and implement with pen-based [graphical user interface] interaction systems, such as those in Tanaka." *Id.* at 19.

Petitioner's obvious-to-try argument follows from its assertion that Ren and Tanaka are directed to solutions to the same problem. Although Petitioner's assertion may establish that the references are analogous art, it falls short of rationally articulating sufficient reasons to support the conclusion of obviousness. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) ("it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant art to combine elements as the new invention does"). Further, even assuming that Ren's disclosure of six selection strategies qualifies as "a finite number of identified, predictable solutions," *id.* at 421, Petitioner does not direct us to any "design need or market pressure to solve a problem," or reason an ordinarily skilled artisan would have selected a particular strategy from Ren to produce the claimed invention. *Id.*; *In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d 1063, 1072 (Fed. Cir. 2012) ("Evidence of obviousness, especially when that evidence is proffered in support of an 'obvious-to-try' theory, is insufficient unless it indicates that the possible options skilled artisans would have encountered were 'finite,'

12

IPR2021-00144
Patent 8,095,879 B2

'small,' or 'easily traversed,' and that skilled artisans would have had a
reason to select the route that produced the claimed invention.").

Next, Petitioner argues that the ordinarily skilled artisan only would
have implemented Ren's *Slide Off* strategy into Tanaka's device for its
simplicity. As we discuss below, we agree with Patent Owner's argument
that such a modification to Tanaka would have been contrary to Tanaka's
express purpose.

In support of this argument, Petitioner points to Tanaka's "check" and
"drag" methods, and contends that the ordinarily skilled artisan would have
recognized the "check" method as Ren's *Direct Off* technique and the "drag"
method as "similar to Ren's *Slide Off* strategy with route $a \rightarrow c \rightarrow b \rightarrow a$."
Pet. 23–24. Based on Ren's teachings about the *Direct Off* and *Slide Off*
efficiencies, Petitioner argues an ordinarily skilled artisan "would have been
motivated to implement the *Slide Off* strategy exclusively of the *Direct Off*
strategy for example for pocket-sized pen-based applications with small
targets, and not implement both strategies for the same target." *Id.* at 28–29
(citing Ex. 1002 ¶ 108). This is so, argues Petitioner, because having only a
single function and single interaction technique is easy to explain, easier for
a user to learn and remember, and easier and simpler to program and process
than multiple potential gestures. *Id.* Petitioner further asserts that the
ordinarily skilled artisan would have implemented the single function with
predictable results, given its simplicity. *Id.* at 29 (citing Ex. 1002 ¶ 109).

We disagree. Where "a patent claims a structure already known in the
prior art that is altered by the mere substitution of one element for another
known in the field, the combination must do more than yield a predictable
result." *KSR*, 550 U.S. at 416. "However, combinations that change the

13

IPR2021-00144
Patent 8,095,879 B2

'basic principles under which the [prior art] was designed to operate,' or that render the prior art 'inoperable for its intended purpose,' may fail to support a conclusion of obviousness." *Plas-Pak Indus., Inc. v. Sulzer Mixpac AG*, 600 F. App'x 755, 757–758 (Fed. Cir. 2015) (non-precedential) (quoting *In re Ratti*, 270 F.2d 810, 813 (CCPA 1959); *In re Gordon*, 733 F.2d 900, 902 (Fed. Cir. 1984)). As Patent Owner argues, "Tanaka's expressed concern was to enable multiple activation techniques rather than only a single technique." Prelim. Resp. 23 (citing Ex. 1005, 2:33–38, 6:55–7:6). Tanaka explains that known "[c]onventional information processing apparatuses for controlling window positions adopt[ed] exclusively one of the two icon-selecting methods, 'check' or 'drag.'" Ex. 1005, 1:48–50. In contrast, Tanaka's object is "to provide an information processing apparatus for controlling window positions," that allows "the user to employ any one of the two icon-selecting methods, 'check' and 'drag' to control window positions as desired on the screen." *Id.* at 2:33–38; *see also id.* at 6:55–6:65 (explaining that the invention allows a user to use the "check" and "drag" methods to control window positions). Indeed, Tanaka states that "[u]nlike its prior art counterparts, *the inventive apparatus accepts all kinds of pen operations* and saves the user a significant amount of operating chores." *Id.* at 7:3–6 (emphasis added).

Given Tanaka's express purpose to create an apparatus that allows a user to utilize both the "check" and "drag" methods to select icons and control windows, implementing only Ren's *Slide Off* strategy into Tanaka's device would change Tanaka's principle of operation and render Tanaka inoperable for its intended purpose. Accordingly, Petitioner fails to show sufficiently that a person of ordinary skill in the art would have had a reason

14

to combine Ren's and Tanaka's teachings to arrive at the claimed invention.
As a result, Petitioner fails to demonstrate a reasonable likelihood of
prevailing in its assertion that the subject matter of claim 1 would have been
obvious over the combination of Ren and Tanaka. Further, because claims
14–17 depend from claim 1, Petitioner also fails to demonstrate a reasonable
likelihood of prevailing in its assertion that the subject matter of those
claims would have been obvious over the combination of Ren and Tanaka.

### 4. Remaining grounds involving Ren and Tanaka

Petitioner challenges claims 2–6, 12, and 13 by adding Hirayama307,
Hirayama307 and Hirayama878, Allard, or Henckel to the teachings of Ren
and Tanaka discussed above. Pet. 35–49. Petitioner relies upon
Hirayama307, Hirayama878, Allard, or Henckel for teaching the added
limitations of these dependent claims and thus, does not remedy the
deficiencies of the asserted art with respect to claim 1. Accordingly, for the
same reasons discussed above, Petitioner fails to demonstrate a reasonable
likelihood of prevailing in its assertion that the subject matter of claims 2–6,
12, and 13 would have been obvious over the asserted combinations of
references.

### D. Asserted Obviousness Based on Hirayama307 and Ren

Petitioner asserts four obviousness challenges based on the
combination of Hirayama307 and Ren. *See* Pet. 1–2 (summary of grounds
2A–2D). Specifically, Petitioner contends that the subject matter of the
challenged claims of the '879 patent would have been obvious over:
(1) Hirayama307 and Ren (claims 1, 2, 4, 5, and 14–17); (2) Hirayama307,
Ren, and Hirayama878 (claim 3); and (3) Hirayama307, Ren, and Allard

IPR2021-00144
Patent 8,095,879 B2

(claims 6 and 13); and (4) Hirayama307 and Henckel (claim 12). *See, e.g.,*
*id.*

Before turning to Petitioner's arguments, we provide a brief summary
of Hiryama307.

### 1. Hirayama307 (Ex. 1006)

Hirayama307 relates to a small data processing device comprising a
pen, a display portion, and a transparent touch sensor input. Ex. 1006, 1:7–
10, 2:67–3:6. When a user presses the power button, icons appear on the
display, as shown in Figure 3A, which we reproduce below.



Figure 3A illustrates a display screen of Hirayama307's device. When a
user wants to make a call, for example, the user touches telephone icon 41
with the pen point. *Id.* at 4:61–65. As the user moves the pen point to
display portion 1, x-shaped cursor 42 appears on the screen of the display
portion so the user "can visually confirm the exact position of the point of
pen 3 on the input tablet 2 very clearly. *Id.* at 4:65–5:3. After the user

16

IPR2021-00144
Patent 8,095,879 B2

moves the pen point from icon 41 to display portion 1, "an icon (hereinafter
. . . referred to as a window) enlarged in the form of the processing display
mode of the desired icon 41 is automatically displayed on the display portion
1 as shown in FIG. 3B." *Id.* at 5:3–12.

### 2. *Claims 1, 2, 4, 5, and 14–17*

Petitioner contends that the combined teachings of Hirayama307 and
Ren disclose each limitation of claim 1, and that a person of ordinary skill in
the art would have had reason to implement Ren's selection strategies,
particularly the $a \rightarrow c \rightarrow b \rightarrow a$ *Slide Off* strategy route, on Hirayama307's
device. Pet. 49–62. Petitioner relies on Dr. Bederson's testimony to support
its assertions. *See id.* Patent Owner disagrees, arguing, among other things,
that Petitioner fails to show sufficiently that Hirayama307 discloses "the
representation of the function is not relocated or duplicated during []
gliding," as claim 1 requires. Prelim. Resp. 37–42. Patent Owner also
argues that an ordinarily skilled artisan would not have had reason to
implement Ren's $a \rightarrow c \rightarrow b \rightarrow a$ *Slide Off* route on Hirayama's device. *Id.*
at 43–46. We focus our analysis on these issues.

### a. *"the representation of the function is not relocated or duplicated during [] gliding"*

Petitioner asserts that "Hirayama307 discloses icon 41 is selected if
the user 'moves (*i.e.* drags) the point of the pen 3'. . . or by 'dragging the
pen 3." Pet. 60. From this disclosure, Petitioner reasons that it would have
been obvious to implement the user interface such that the icon is not
relocated or duplicated during pen gliding. *Id.* Pointing to Figures 3A and
3B, Petitioner contends that Hirayama307 discloses dragging the pen from
the icon to the display screen such that the icon remains in the same position

17

IPR2021-00144
Patent 8,095,879 B2

on the screen it was located before dragging. *Id.* at 61–62. Petitioner concludes that an ordinarily skilled artisan "would have understood this as at least a suggestion the icon is not relocated or duplicated during the gliding of the pen because the icon was still in the same location it started at the beginning of the dragging operation." *Id.* at 62 (citing Ex. 1002 ¶ 159).

Petitioner fails to make a sufficient showing on this record because Hirayama307 appears to disclose either relocating or duplicating the icon on the screen's display. We reproduce Figure 3B below.



FIG. 3B

Figure 3B illustrates a display screen of Hiryama307's device. Hirayama307 explains that, after the user moves the pen point from icon 41 to display portion 3, "an icon (hereinafter . . . referred to as a window) enlarged in the form of the processing display mode of the desired icon 41 is automatically displayed on the display portion 1 as shown in FIG. 3B." *Id.* at 5:3–12. Hirayama307 further discloses that "[w]hen the user wants to

18

IPR2021-00144
Patent 8,095,879 B2

bring the large icon, i.e., the window 43 displayed on the display portion 1
. . . back to the original position" if the user touches a portion "within the
window 43 with the point of the pen 3 and drags the point of the pen 3 back
to the telephone icon 41 . . . then the icon of large size can be returned to and
stored in that position." *Id.* at 6:22–31; *see also id.* at Fig. 4A (flow chart
including the step of enlarging the icon as a window), Fig. 4B (flow chart
including the steps of reducing the icon and moving the reduced icon).
Thus, contrary to Petitioner's assertion, Hirayama307 appears to duplicate or
relocate the representation of the function, i.e., icon, during gliding.  As a
result, Petitioner fails to show sufficiently that "[i]t would have been
obvious given Hirayama307's disclosure to implement the user interface
such that" "the representation of the function is not relocated or duplicated
during [] gliding," as claim 1 requires.

> *b. Reason to implement Ren's strategy on Hirayama's device*

Petitioner also argues that Ren discloses the limitation "the
representation of the function is not relocated or duplicated during []
gliding," and that an ordinarily skilled artisan would have tried to implement
Ren's selection strategies on Hirayama307's device with predictable results.
Pet. 62 (citing Pet. § IV.A; Ex. 1002 ¶¶ 160–162).  According to Petitioner,
it would have been obvious to combine Hirayama307's and Ren's teachings
because "Ren and Hirayama307 both are directed to solutions to the same
problem, namely target selection techniques in pen-based tablet systems."
*Id.*  Petitioner also asserts that a person of ordinary skill in the art "would
have recognized Ren as disclosing a small number of selection techniques
that would have been obvious to try and implement with pen-based
[graphical user interface] interaction systems." *Id.*

19

IPR2021-00144
Patent 8,095,879 B2

Petitioner fails to make a sufficient showing for the same reasons set forth above in connection with Petitioner's Ren and Tanaka combination. In particular, Petitioner's assertion that an ordinarily skilled artisan would have had reason to combine Hirayama307's and Ren's teachings because the references both are directed to solutions to the same problem establishes that the references are analogous art, but falls short of articulating reasoning with a rational underpinning to support the conclusion of obviousness. *See KSR*, 550 U.S. at 418.  And Petitioner does not direct us to any "design need or market pressure to solve a problem," or any reason that an ordinarily skilled artisan would have selected a particular strategy from Ren to produce the claimed invention.  *Id.*; *In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d at 1072.  Rather, Petitioner simply concludes that it would have been obvious to try.  Although Petitioner cites to Dr. Bederson's testimony for support, Dr. Bederson does not elaborate on Petitioner's argument, as his testimony mirrors the Petition's conclusion. Ex. 1002 ¶ 162.

    *c. Conclusion*

Petitioner fails to demonstrate a reasonable likelihood of prevailing in its assertion that the subject matter of claim 1 would have been obvious over the combination of Hirayama307 and Ren.  Further, because claims 2, 4, 5, and 14–17 ultimately depend from claim 1, Petitioner also fails to demonstrate a reasonable likelihood of prevailing in its assertion that the subject matter of those claims would have been obvious over the combination of Hirayama307 and Ren.

IPR2021-00144
Patent 8,095,879 B2

### 3. Remaining Grounds Involving Hirayama307 and Ren

Petitioner challenges claims 3, 6, 12, and 13 by adding Hirayama878, Allard, or Henckel to the teachings of Ren and Hirayama307 discussed above. Pet. 70–74. Petitioner relies upon Hirayama878, Allard, or Henckel for teaching the added limitations of these dependent claims and, thus, does not remedy the deficiencies of the asserted art with respect to claim 1. Accordingly, for the same reasons discussed above, Petitioner fails to demonstrate a reasonable likelihood of prevailing in its assertion that the subject matter of claims 3, 6, 12, and 13 would have been obvious over the asserted combinations of references.

### E. Asserted Obviousness Based on Jermyn

Petitioner asserts that the subject matter of claims 1, 14, and 15 would have been obvious over Jermyn. *See, e.g.*, Pet. 2. Before turning to Petitioner's arguments, we provide a summary of Jermyn.

### 1. Jermyn (Ex. 1014)

Jermyn is a paper that focuses on the design and analysis of graphical password schemes for devices such as PDAs. Ex. 1014, 2. According to Jermyn, a graphical password serves the same purpose as a textual password, but consists of drawings alone or in addition to text. *Id.* Jermyn provides an example of a drawing in Figure 2, which we reproduce below.

21

IPR2021-00144
Patent 8,095,879 B2



Figure 2 is an input of a graphical password on a 4 x 4 grid. *Id.* at 3. "The
drawing is mapped to a sequence of coordinate pairs by listing the cells in
the order which the stylus passes through them, with a distinguished
coordinate pair inserted in the sequence whenever the stylus is lifted from
the drawing surface." *Id.* at 6. The drawing in Figure 2 has the coordinate
sequence (2, 2), (3, 2), (3, 3), (2, 3), (2, 2), (2, 1), (5, 5), with (5, 5) as the
"pen up" indicator. *Id.* at 5.

### 2. Claims 1, 14, and 15

Petitioner asserts that Jermyn discloses or suggests each limitation of
claim 1. Pet. 75–83. Petitioner relies on Dr. Bederson's testimony to
support its assertions. *See id.* Patent Owner disagrees, arguing, among other
things, that Petitioner fails to show sufficiently that Jermyn discloses certain
claim 1 limitations, including "a touch sensitive area in which a
representation of a function is provided" and "wherein the representation
consists of only one option for activating the function." Prelim. Resp. 56–
70. We focus our analysis on these limitations.

22

IPR2021-00144
Patent 8,095,879 B2

> ### a. "a touch sensitive area in which a representation of a function is provided"

As to the limitation "a touch sensitive area in which a representation of a function is provided," Petitioner explains Jermyn discloses that a user can utilize its graphical passwords on any device with a graphical input interface, including a PDA. Pet. 75. Petitioner asserts that the area of the graphical user interface in which a user uses a pen to draw graphical passwords is a "touch sensitive area." *Id.* (citing Ex. 1002 ¶ 187). Petitioner further asserts that because Jermyn's rectangular grid is used for drawing a pattern for a graphical password, a person of ordinary skill in the art "would have found it obvious that successful entry of the graphical passwords grants access to PDA resources." *Id.* at 76 (citing Ex. 1014 §§ 3, 3.1; Ex. 1002 ¶ 188). According to Petitioner, access to PDA resources is a "function" and Jermyn's rectangular grid is a "representation of a function." *Id.* (citing Ex. 1014 §§ 3, 3.1; Ex. 1002 ¶ 189).

On this record, Petitioner does not sufficiently show that Jermyn discloses or suggests "a touch sensitive area in which a representation of a function is provided." Petitioner asserts that gaining access to the PDA's resources is the recited "function" and the rectangular grid corresponds to the recited "representation of a function." Petitioner, however, does not explain why one of ordinary skill in the art would have understood Jermyn's grid to be a "representation of a function." *See* Pet. 76. Although Petitioner cites Dr. Bederson's testimony as support, Dr. Bederson does not provide further details or cite to any evidence supporting his testimony. Instead, Dr. Bederson's testimony mirrors the Petition and adds bare opinion testimony that a user would have understood the password grid as a

23

IPR2021-00144
Patent 8,095,879 B2

representation. *See* Ex. 1002 ¶ 188. Such bare opinion testimony is of little
probative value. *See* 37 C.F.R. § 42.65(a) (opinion testimony that does not
disclose underlying facts "is entitled to little or no weight"); *Ashland Oil,
Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 294 (Fed. Cir. 1985)
(a lack of objective support for expert opinion "may render the testimony of
little probative value in a validity determination"). As a result, Petitioner
fails to show sufficiently that Jermyn discloses or suggests the limitation "a
touch sensitive area in which a representation of a function is provided."

> b. *"wherein the representation consists of only one option for
> activating the function,"*

As to the limitation "wherein the representation consists of only one
option for activating the function," Petitioner argues that Jermyn's
rectangular grid (i.e., a "representation") is provided on a graphical input
interface for gaining access to PDA resources (i.e., the "function"), which
involves a user proving a stroke with a stylus to draw a pattern for the
graphical password. Pet. 77 (citing Ex. 1014 §§ 1, 3, 3.1). Because the
stylus enables access to PDA resources, Petitioner contends the access is
"'activated by' use of the stylus." *Id.* at 77–78 (citing Ex. 1014, Abs.;
Ex. 1002 ¶¶ 190–191). Petitioner next contends that "[a]side from strokes,
Jermyn does not contemplate other types of input on the rectangular grid for
drawing a pattern for a graphical password. . . . For example, Jermyn does
not teach using a set of sequential taps on the rectangular grid as a way of
inputting a graphical password." *Id.* at 78 (citing Ex. 1014 §§ 3.1, 3.2).
Petitioner concludes that a person of ordinary skill in the art would have
understood Jermyn to describe the rectangular grid as proving "only one

IPR2021-00144
Patent 8,095,879 B2

option for activating" access to the PDA resources (i.e., the function). *Id.*
(citing Ex. 1002 ¶¶ 192–193).

Petitioner does not makes a sufficient showing on this record. Rather,
as Patent Owner argues, "Jermyn expressly teaches using tap inputs on the
grid as part of the drawn password, or even as the entire password." Prelim.
Resp. 66. For example, Jermyn states that some passwords consist "of a
single tap on one of the grid squares." Ex. 1014, 10. And in Figure 3, which
we produce below, Jermyn depicts drawn passwords that appear to include
both strokes and taps.



Figure 3 shows creation of a password by drawing it on the display. *Id.* at 8.
The password shown in (a) appears to consist of strokes to create the letters
and taps to create the dots on the grid. Similarly, Figure 5, which we
reproduce below, depicts a number of different graphical passwords,
including at least one that appears to consist only of taps.

25

IPR2021-00144
Patent 8,095,879 B2



Figure 5 shows example graphical passwords of different complexities. *Id.*
at 14. The password displayed in (e) appears to consist of only or mainly
taps, as indicated by the "pendown" and "penup" notations for the program
at the right hand side of the rectangular grid. The passwords consisting of
only strokes, on the other hand, do not have a "penup" notation immediately
following a "pendown" notation (e.g., the graphical passwords displayed in
(a) and (b)). These figures do not support Petitioner's assertions that Jermyn
"does not contemplate other types of input on the rectangular grid" for
drawing a graphical password aside from strokes and that Jermyn "does not

IPR2021-00144
Patent 8,095,879 B2

teach using a set of sequential taps on the rectangular grid as a way of inputting a graphical password." Pet. 78. As a result, Petitioner fails to show sufficiently that Jermyn discloses or suggests the limitation "wherein the representation consists of only one option for activating the function."

### c. Conclusion

Petitioner fails to demonstrate a reasonable likelihood of prevailing in its assertion that the subject matter of claim 1 would have been obvious over Jermyn. Further, because claims 14 and 15 depend from claim 1, Petitioner also fails to demonstrate a reasonable likelihood of prevailing in its assertion that the subject matter of those claims would have been obvious over Jermyn.

## IV. CONCLUSION

Taking account of the information presented in the Petition and the Preliminary Response, and the evidence of record, we determine that Petitioner fails to demonstrate a reasonable likelihood of prevailing at trial as to any challenged claim. Accordingly, we deny the Petition, and do not institute trial.

## V. ORDER

Accordingly, it is

ORDERED that the Petition is *denied*, and no trial is instituted.

27

IPR2021-00144
Patent 8,095,879 B2

For PETITIONER:

Walter Renner
David Holt
FISH & RICHARDSON P.C.
axf-ptab@fr.com
holt2@fr.com

Tiffany Miller
James Heintz
DLA PIPER LLP
tiffany.miller@dlapiper.com
jim.heintz@dlapiper.com

For PATENT OWNER:

Robert Asher
Bruce Sunstein
Timothy Murphy
Arne Hans
SUNSTEIN LLP
rasher@sunsteinlaw.com
bsunstein@sunsteinlaw.com
tmurphy@sunsteinlaw.com
ahans@sunsteinlaw.com

28

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 01/10/2012 | 8095879 | NEONODE.P004 | 1226 |

75660        7590        12/21/2011
Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 1228 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Magnus Goertz, Stockholm, SWEDEN;

IR103 (Rev. 10/09)



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 1226**

| SERIAL NUMBER 10/315,250 | FILING or 371(c) DATE 12/10/2002 RULE | CLASS 715 | GROUP ART UNIT 2171 | ATTORNEY DOCKET NO. NEONODE.P004 |
|---|---|---|---|---|

**APPLICANTS**
  Magnus Goertz, Stockholm, SWEDEN;

** CONTINUING DATA *************************

** FOREIGN APPLICATIONS *************************

** IF REQUIRED, FOREIGN FILING LICENSE GRANTED ** ** SMALL ENTITY **
  01/16/2003

| Foreign Priority claimed ☐ Yes ☑ No | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met ☐ Yes ☑ No | ☐ Met after Allowance | | | | |
| Verified and Acknowledged _____Examiner's Signature | _____Initials | SWEDEN | 4 | 18 | 1 |

**ADDRESS**
  Soquel Group, LLC
  P.O. Box 691
  Soquel, CA 95073
  UNITED STATES

**TITLE**
  USER INTERFACE FOR MOBILE HANDHELD COMPUTER UNIT

| FILING FEE RECEIVED 1940 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov



Bib Data Sheet

**CONFIRMATION NO. 1226**

| SERIAL NUMBER 10/315,250 | FILING OR 371(c) DATE 12/10/2002 RULE | CLASS 715 | GROUP ART UNIT 2171 | ATTORNEY DOCKET NO. NEONODE.P004 |
|---|---|---|---|---|

**APPLICANTS**
  Magnus Goertz, Stockholm, SWEDEN;

** CONTINUING DATA ************************

** FOREIGN APPLICATIONS ********************

IF REQUIRED, FOREIGN FILING LICENSE GRANTED
** 01/16/2003

| Foreign Priority claimed ☐ yes ☐ no 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance Verified and Acknowledged | Examiner's Signature          Initials | STATE OR COUNTRY SWEDEN | SHEETS DRAWING 4 | TOTAL CLAIMS 18 | INDEPENDENT CLAIMS 1 |
|---|---|---|---|---|---|

**ADDRESS**
75660

**TITLE**
USER INTERFACE FOR MOBILE HANDHELD COMPUTER UNIT

| FILING FEE RECEIVED 1940 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees<br>☐ 1.16 Fees ( Filing )<br>☐ 1.17 Fees ( Processing Ext. of time )<br>☐ 1.18 Fees ( Issue )<br>☐ Other _____<br>☐ Credit |
|---|---|---|

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), to: **Mail**    **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
  **or Fax**   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

75660    7590     12/01/2011

Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

TITLE OF INVENTION: USER INTERFACE

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 03/01/2012 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| PITARO, RYAN F | 2171 | 715-716000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _Soquel Group LLC_
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE        (B) RESIDENCE: (CITY and STATE OR COUNTRY)

_Neonode Inc._          _Santa Clara, CA_

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
☒ Issue Fee
☒ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.
☒ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _M.A. B____      Date _December 4, 2011_

Typed or printed name _Marc A. Berger_      Registration No. _44029_

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10315250 |
| **Filing Date:** | 10-Dec-2002 |
| **Title of Invention:** | USER INTERFACE |
| **First Named Inventor/Applicant Name:** | Magnus Goertz |
| **Filer:** | Marc Aron Berger |
| **Attorney Docket Number:** | NEONODE.P004 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 1501 | 1 | 1740 | 1740 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **2040** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11538511 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | USER INTERFACE |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 05-DEC-2011 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 05:20:43 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 2040 |
| RAM confirmation Number | 7645 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | Issue Fee Payment (PTO-85B) | NEONODE-P004_FeeTransmittal_12-04-2011.pdf | 1639128 | no | 1 |
| | | | 7bfec90db0f48a3a78303af2ba19fc80eb0a4a73 | | |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 31570 | no | 2 |
| | | | 94e7b8b5310f4c5e02bb9fd679b3a70bf27f3aff | | |

**Warnings:**

**Information:**

| **Total Files Size (in bytes):** | 1670698 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**　Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
　　　　　　　　　　　　　　　　　　　or **Fax**　(571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

75660　　7590　　12/01/2011

Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

TITLE OF INVENTION: USER INTERFACE

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 03/01/2012 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| PITARO, RYAN F | 2171 | 715-716000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1　Soquel Group LLC
2　_____
3　_____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

Neonode Inc.

(B) RESIDENCE: (CITY and STATE or COUNTRY)

Santa Clara, CA

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:

☒ Issue Fee

☒ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.　　☒ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature　_M.A. Berger_　　　　Date　_December 4, 2011_

Typed or printed name　_Marc A. Berger_　　　　Registration No.　_44029_

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.　　　OMB 0651-0033　　　U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

# Electronic Patent Application Fee Transmittal

| Application Number: | 10315250 |
|---|---|
| Filing Date: | 10-Dec-2002 |
| Title of Invention: | USER INTERFACE |
| First Named Inventor/Applicant Name: | Magnus Goertz |
| Filer: | Marc Aron Berger |
| Attorney Docket Number: | NEONODE.P004 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 1501 | 1 | 1740 | 1740 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension-of-Time: | | | | |
| Miscellaneous: | | | | |
| | | | **Total in USD ($)** | **2040** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11537889 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | USER INTERFACE |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 04-DEC-2011 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 07:58:27 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | NEONODE-P004_CommentsOnStatements OfReasonsForAllowance_12-04 -2011.pdf | 55071 <br> 077a3bdbc7233a04a5a4b6ef464f75d72ef6 df54 | no | 2 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |

| 2 | Issue Fee Payment (PTO-85B) | NEONODE-P004_FeeTransmittal_12-04-2011.pdf | 1639128 | no | 1 |
| | | | 7bfec90dbf0f48a3a78303af2ba19fc80eb0a4a73 | | |

**Warnings:**

**Information:**

| 3 | Fee Worksheet (SB06) | fee-info.pdf | 31570 | no | 2 |
| | | | 9442524ff45187f5e61bcaee13b0c6437dc4a4e6 | | |

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | 1725769 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Attorney's Docket No.: <u>NEONODE.P004</u>     *PATENT*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Patent Application of:            )
                                        )     Examiner:  Ryan F. Pitaro
              Magnus Goertz            )
                                        )     Art Unit:   2171
Application No: 10/315,250              )
                                        )
Filed:      December 10, 2002          )
                                        )
For:      USER INTERFACE               )
_____)

Commissioner for Patents
P. O. Box 1450
Alexandria, VA   22313-1450

## <u>COMMENTS ON STATEMENT OF REASONS FOR ALLOWANCE</u>

In the Notice of Allowability mailed December 1, 2011, the Examiner allowed claims **1** – **14**, **18**, **48** and **49**.   Applicant acknowledges the Examiner's statements of Reasons for Allowance of the above-referenced patent application and agrees that the claimed subject matter is patentable.   However, applicant takes no position regarding the Reasons for Allowance presented by the Examiner other than the positions applicant may have previously taken during prosecution. Therefore, the Examiner's Reasons for Allowance should not be attributed to applicant as an indication of the basis for applicant's belief that the claims are patentable.   Furthermore, applicant respectfully asserts that there may also be additional reasons for patentability of the claimed subject matter not explicitly stated in this record and applicant does not waive his rights to such arguments by not further addressing such reasons herein.

Respectfully submitted,

SOQUEL GROUP LLC

Dated: December 4, 2011          /Marc A. Berger/
                                 Marc A. Berger
                                 Reg. No. 44,029

P.O. Box 691
Soquel, CA   95073
(831) 426-8200
Customer No. 75660

# PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>

Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or <u>Fax</u>  (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

75660    7590    12/01/2011
Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

TITLE OF INVENTION: USER INTERFACE

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 03/01/2012 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| PITARO, RYAN F | 2171 | 715-716000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  Soquel Group LLC

2  _____

3  _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

Neonode Inc.

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Santa Clara, CA

Please check the appropriate assignee category or categories (will not be printed on the patent):  ☐ Individual  ☒ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:

☒ Issue Fee

☒ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.

☒ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature  _M.A. Berger_    Date  _December 4, 2011_

Typed or printed name  _Marc A. Berger_    Registration No.  _44029_

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.     OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10315250 |
| **Filing Date:** | 10-Dec-2002 |
| **Title of Invention:** | USER INTERFACE |
| **First Named Inventor/Applicant Name:** | Magnus Goertz |
| **Filer:** | Marc Aron Berger |
| **Attorney Docket Number:** | NEONODE.P004 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 1501 | 1 | 1740 | 1740 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension-of-Time: | | | | |
| Miscellaneous: | | | | |
| | | | **Total in USD ($)** | **2040** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11537894 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | USER INTERFACE |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 04-DEC-2011 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 08:09:12 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | NEONODE-P004_FeeTransmittal_12-04-2011.pdf | 1639128 <br> 7bfec90dbf48a3a78303af2ba19fc80eb0a4a73 | no | 1 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 31570 | no | 2 |
|---|---|---|---|---|---|
| | | | e9b615149a10803d89a941ef5424db36fce24010 | | |

| **Warnings:** | |
|---|---|
| **Information:** | |

| **Total Files Size (in bytes):** | 1670698 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: __Mail__   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or __Fax__   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

```
75660    7590    12/01/2011
Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073
```

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

TITLE OF INVENTION: USER INTERFACE

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 03/01/2012 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| PITARO, RYAN F | 2171 | 715-716000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _Soquel Group LLC_
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE or COUNTRY)

_Neonode Inc._                          _Santa Clara, CA_

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
☒ Issue Fee
☒ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.
☒ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _M.A. Berger_            Date _December 4, 2011_

Typed or printed name _Marc A. Berger_         Registration No. _44029_

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10315250 |
| **Filing Date:** | 10-Dec-2002 |
| **Title of Invention:** | USER INTERFACE |
| **First Named Inventor/Applicant Name:** | Magnus Goertz |
| **Filer:** | Marc Aron Berger |
| **Attorney Docket Number:** | NEONODE.P004 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 1501 | 1 | 1740 | 1740 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **2040** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11538121 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | USER INTERFACE |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 04-DEC-2011 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 17:58:50 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | NEONODE-P004_FeeTransmittal_12-04-2011.pdf | 1639128<br>7bfec90dbf0f48a3a78303af2ba19fc80eb0a4a73 | no | 1 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 31570 <br><br> c73a229fc00d6bfe1d71504e1d2035af7c84f b98 | no | 2 |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 1670698 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to: Mail** Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax** (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

75660        7590        12/01/2011
Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

Certificate of Mailing or Transmission
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

TITLE OF INVENTION: USER INTERFACE

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 03/01/2012 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| PITARO, RYAN F | 2171 | 715-716000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
   ☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
   ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list
   (1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
   (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

   1 _Soquel Group LLC_
   2 _____
   3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

_Neonode Inc._                          _Santa Clara, CA_

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
   ☒ Issue Fee
   ☒ Publication Fee (No small entity discount permitted)
   ☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)
   ☐ A check is enclosed.
   ☐ Payment by credit card. Form PTO-2038 is attached.
   ☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
   ☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.     ☒ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _Marc A. Berger_         Date _December 4, 2011_

Typed or printed name _Marc A. Berger_        Registration No. _44029_

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

12/05/2011 INTEFSW  00007645 10315250

01 FC:1501                    1740.00 OP
02 FC:1504                     300.00 OP

**PART B - FEE(S) TRANSMITTAL** 

Complete and send this form, together with applicable fee(s), to: **Mail**   **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or **Fax**   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

75660        7590        12/01/2011
Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

*O P A P / IAP25 / DEC 0 4 2011 / PATENT & TRADEMARK OFFICE*

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

TITLE OF INVENTION: USER INTERFACE

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 03/01/2012 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| PITARO, RYAN F | 2171 | 715-716000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
   ☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
   ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list
   (1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
   (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

   1  Soquel Group LLC
   2  _____
   3  _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                 (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Neonode Inc.                        Santa Clara, CA

Please check the appropriate assignee category or categories (will not be printed on the patent):   ☐ Individual   ☒ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:
   ☒ Issue Fee
   ☒ Publication Fee (No small entity discount permitted)
   ☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)
   ☐ A check is enclosed.
   ☐ Payment by credit card. Form PTO-2038 is attached.
   ☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
   ☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.   ☒ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature  *Marc B.*          Date  December 4, 2011

Typed or printed name  Marc A. Berger          Registration No.  44029

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

12/05/2011 INTEFSW  00007645 10315250
01 FC:1501                      1740.00 OP
02 FC:1504                       300.00 OP

**PART B - FEE(S) TRANSMITTAL**



Complete and send this form, together with applicable fee(s), to: **Mail**    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or **Fax**    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

75660    7590    12/01/2011
Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

[Stamp: OPAP / DEC 0 4 2011 / PATENT & TRADEMARK OFFICE / UP25]

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

TITLE OF INVENTION: USER INTERFACE

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 03/01/2012 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| PITARO, RYAN F | 2171 | 715-716000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 Soquel Group LLC
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE              (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Neonode Inc.                      Santa Clara, CA

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. The following fees are submitted:
☒ Issue Fee
☒ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.    ☒ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature    _Marc Berger_    Date    December 4, 2011

Typed or printed name    Marc A. Berger    Registration No.    44029

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

12/05/2011 INTEFSW 00007645 10315250
01 FC:1501        1740.00 OP
02 FC:1504         300.00 OP



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 75660    7590    12/01/2011 | | EXAMINER |
| --- | --- | --- |
| Soquel Group, LLC | | PITARO, RYAN F |
| P.O. Box 691 | | |
| Soquel, CA 95073 | ART UNIT | PAPER NUMBER |
| | 2171 | |

DATE MAILED: 12/01/2011

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

TITLE OF INVENTION: USER INTERFACE

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 03/01/2012 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**    **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or **Fax**   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

75660        7590        12/01/2011

Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

TITLE OF INVENTION: USER INTERFACE

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 03/01/2012 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| PITARO, RYAN F | 2171 | 715-716000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are submitted:**

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.        ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____        Date _____

Typed or printed name _____        Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

75660        7590        12/01/2011
Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

| EXAMINER |
|---|
| PITARO, RYAN F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2171 | |

DATE MAILED: 12/01/2011

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 872 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 872 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. | Applicant(s) |
|---|---|---|
| | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit | |
| | RYAN PITARO | 2171 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _the amendment filed 6/09/2011_.

2. ☒ The allowed claim(s) is/are _1-14,18,48 and 49_.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☒ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____.

7. ☒ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____.

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below. Should the changes
and/or additions be unacceptable to applicant, an amendment may be filed as provided
by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be
submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview
with Marc Berger on 10/6/2011.

The application has been amended as follows:

**1.** (currently amended)                    A non-transitory computer readable medium storing
a computer program with computer program code, which, when read by a mobile
handheld computer unit, allows the computer to present a user interface for the mobile
handheld computer unit, the user interface comprising:

a touch sensitive area in which a representation of a function is
provided, wherein the representation consists of only one option for activating the
function and wherein the function is activated by a multi-step operation comprising (i) an
object touching the touch sensitive area at a location where the representation is
provided and then (ii) the object gliding along the touch sensitive area away from the
touched location, wherein the representation of the function is not relocated or
duplicated during the gliding.


Claims 1-14,18,48-49 are allowed.

Application/Control Number: 10/315,250                                         Page 3
Art Unit: 2171

   The following is an examiner's statement of reasons for allowance: The prior art
is silent in teaching a  non-transitory computer readable medium storing a computer
program with computer program code, which, when read by a mobile handheld
computer unit, allows the computer to present a user interface for the mobile handheld
computer unit, the user interface comprising: a touch sensitive area in which a
representation of a function is provided, wherein the representation consists of only one
option for activating the function and wherein the function is activated by a multi-step
operation comprising (i) an object touching the touch sensitive area at a location where
the representation is provided and then (ii) the object gliding along the touch sensitive
area away from the touched location wherein the representation of the function is not
relocated or duplicated during the gliding.

   Any comments considered necessary by applicant must be submitted no later
than the payment of the issue fee and, to avoid processing delays, should preferably
accompany the issue fee.  Such submissions should be clearly labeled "Comments on
Statement of Reasons for Allowance."

*Conclusion*

   Any inquiry concerning this communication or earlier communications from the
examiner should be directed to RYAN PITARO whose telephone number is (571)272-

Application/Control Number: 10/315,250                                    Page 4
Art Unit: 2171

4071.  The examiner can normally be reached on 9:00am - 5:30pm Mondays through

Fridays.

      If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Chat Do can be reached on 571-272-3721.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

      Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Ryan F Pitaro/
Primary Examiner, Art Unit 2171

| *Notice of References Cited* | Application/Control No.<br>10/315,250 | Applicant(s)/Patent Under Reexamination<br>GOERTZ, MAGNUS | |
|---|---|---|---|
| | Examiner<br>RYAN PITARO | Art Unit<br>2171 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-7,030,861 | 04-2006 | Westerman et al. | 345/173 |
| * | B | US-5,603,053 | 02-1997 | Gough et al. | 710/5 |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 2 | "7441196".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2011/08/28 22:50 |
| L2 | 818 | swipe with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L3 | 1099 | (glide swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L4 | 2 | "7286063".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L8 | 263 | ("20010003845" | "20010012286" | "20010016947" | "20010034647" | "20010042002" | "20010044751" | "20010049824" | "20010051903" | "20020007309" | "20020010642" | "20020016750" | "20020029339" | "20020032782" | "20020035174" | "20020038256" | "20020038259" | "20020042914" | "20020042921" | "20020049631" | "20020056098" | "20020059590" | "20020067376" | "20020077177" | "20020078006" | "20020078453" | "20020098834" | "20020116292" | "20020116320" | "20020166122" | "20030046182" | "20030074661" | "20030095525" | "20030126607" | "20030140017" | "20030146940" | "20030149628" | "20030182195" | "20040003412" | "20040098747" | "20040103439" | "20040117831" | "20040128137" | "20040133848" | "20040148625" | "20040204116" | "20040210824" | "20040260689" | "20050010949" | "20050025550" | "20050075932" | "20050086690" | "20050091118" | "20050160458" | "20050234895" | "20050246231" | "20060155598" | "20060224987" | "20070008332" | "3586771" | "4650977" | "4706121" | "4992940" | "5041312" | "5064999" | "5119188" | "5236199" | "5321749" | | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |

| | | |
|---|---|---|
| "5353016" | "5410326" | "5479268" |
| "5532735" | "5553242" | "5559548" |
| "5598523" | "5602596" | "5617570" |
| "5625781" | "5710887" | "5727129" |
| "5734719" | "5758126" | "5794210" |
| "5796252" | "5801702" | "5809204" |
| "5819220" | "5822014" | "5828839" |
| "5832208" | "5832459" | "5838314" |
| "5848396" | "5851149" | "5874906" |
| "5878222" | "5890175" | "5893064" |
| "5895454" | "5896133" | "5900905" |
| "5902353" | "5903729" | "5911145" |
| "5918014" | "5918213").PN. OR | |
| ("5925103" | "5931901" | "5935002" |
| "5946381" | "5956681" | "5956693" |
| "5958012" | "5960411" | "5961593" |
| "5978381" | "5990927" | "6002853" |
| "6005562" | "6005631" | "6006257" |
| "6012049" | "6014502" | "6018372" |
| "6025837" | "6028600" | "6031537" |
| "6041312" | "6054989" | "6072483" |
| "6072492" | "6075575" | "6078866" |
| "6091417" | "6094156" | "6101473" |
| "6112186" | "6129274" | "6138107" |
| "6142371" | "6151050" | "6151059" |
| "6151596" | "6151630" | "6154205" |
| "6160552" | "6167382" | "6172677" |
| "6177936" | "6193152" | "6198481" |
| "6199050" | "6199077" | "6199098" |
| "6205432" | "6205582" | "6211878" |
| "6212265" | "6223215" | "6226623" |
| "6226642" | "6229540" | "6237030" |
| "6243093" | "6253189" | "6260192" |
| "6266060" | "6269343" | "6269361" |
| "6269403" | "6271832" | "6282516" |
| "6285357" | "6285987" | "6286017" |
| "6286043" | "6288716" | "6292779" |
| "6292782" | "6292786" | "6292809" |
| "6295057" | "6298330" | "6300947" |
| "6301566" | "6312336" | "6314406" |
| "6317706" | "6330005" | "6330543" |
| "6333753" | "6334108" | "6334145" |
| "6336131" | "6337715" | "6345279" |
| "6356905" | "6381583" | "6388714" |
| "6396531" | "6397387" | "6401132" |
| "6407779" | "6411307" | "6411337" |
| "6415270" | "6417873" | "6418441" |
| "6421066" | "6421071" | "6421724" |
| "6438540" | "6445398" | "6460181" |
| "6476825" | "6477575" | "6484149" |
| "6487189" | "6487586" | "6490555" |
| "6509913" | "6516311" | "6522342" |
| "6532312" | "6535888" | "6570582" |
| "6571279" | "6583800" | "6606103" |
| "6606280" | "6606347").PN. OR | |
| ("6608633" | "6615247" | "6615248" |
| "6618039" | "6631523" | "6636246" |
| "6647373" | "6662224" | "6680714" |
| "6684062" | "6692358" | "6704727" |
| "6711552" | "6714534" | "6728731" |
| "6769989" | "6804786" | "6826572" |
| "6829646" | "6857102" | "6868525" |
| "6907556" | "6925595" | "6928610" |
| "6938073" | "6973669" | "6978263" |

| | | "7013435" | "7020845" | "7051281" \| "7174512" \| "7293276" \| "7383515").PN. | | | | |
|---|---|---|---|---|---|---|
| L9 | 206 | touch with slide with function | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L10 | 13 | ("4366475" \| "4686332" \| "4821030" \| "4914624" \| "5402151" \| "5563632" \| "5596346" \| "5638060" \| "5687331" \| "5736974" \| "5736976" \| "5761485" \| "5838973").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L11 | 190051 | object near3 type | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L12 | 5 | (file item object) near3 type with open near3 respective | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L13 | 1226 | open$3 with different with program | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L14 | 2 | multiple near3 file near3 selection with open | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L15 | 19 | applying with command with (plurality multiple) with files | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L16 | 34800 | (flick stroke) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2011/08/28 22:50 |
| L17 | 379 | (flick ) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L18 | 132 | (flick ) with (open application command) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L19 | 5 | (flick ) with (open application command) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L20 | 40 | (flick ) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L21 | 1002 | (flick gesture) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; | OR | ON | 2011/08/28 22:50 |

| L22 | 2424 | (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L23 | 80 | (flick gesture slide) and @ay<="2002" and "715"/702,864.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L24 | 6603 | finger near3 (flick gesture slide) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L25 | 88 | finger near3 (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L26 | 0 | "5543591,5943052,5907327,4686332".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L27 | 9 | ("5543591" "5943052" "5907327" "4686332").pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L28 | 164921 | (glide flick touch swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L29 | 24800 | (glide flick touch swipe) with screen with (applications functions) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L30 | 100 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L31 | 450 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L32 | 0 | (glide flick swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L33 | 11 | (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; | OR | ON | 2011/08/28 22:50 |

| | | | EPO; JPO; DERWENT | | | |
|---|---|---|---|---|---|---|
| L34 | 222 | (glide flick gesture swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L35 | 308 | (glide flick swipe) with screen and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L36 | 8 | (glide flick swipe) with screen with icon and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L37 | 16 | ("20010011308" \| "20030142138" \| "20040034801" \| "20050253817" \| "20050253817" \| "20050264833" \| "5821933" \| "5907327" \| "6633310").PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L38 | 454 | (glide flick swipe) with finger and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L39 | 3 | (glide flick swipe) with finger and @AY<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L40 | 13 | ("5250929" \| "5568604" \| "5579036" \| "5612719" \| "5661476" \| "5748185" \| "5767457" \| "5883617" \| "5928304" \| "5943043" \| "5943044" \| "5995083" \| "6049328").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L41 | 1656 | 715/716.ccls. | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L42 | 12 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L43 | 15 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L44 | 673 | 715/716.ccls. and dvd | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L45 | 843 | 715/716.ccls. and menu | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L46 | 85 | 715/716.ccls. and menu and theme | US-PGPUB; | OR | ON | 2011/08/28 22:50 |

| | | | USPAT; USOCR | | | |
|---|---|---|---|---|---|---|
| L47 | 439 | 715/716.ccls. and menu and effects | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L48 | 9 | 715/716.ccls. and menu with theme | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L49 | 1 | "7200836".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L50 | 1 | "20080120546".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L51 | 682 | 715/864.ccls. | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L52 | 98 | 715/864.ccls. and keyboard and back and icons and files | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L53 | 48 | 715/864.ccls. and keyboard and back and icons and files and removable | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L54 | 46 | 715/864.ccls. and keyboard and icons and files and @ay<="2002" | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L55 | 2 | "6346935".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2011/08/28 22:50 |
| L56 | 22 | (glide flick touch swipe) with (coordinat$7) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L57 | 450 | (touch finger) with (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L58 | 0 | (touch finger) with (glide flick swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L59 | 3 | (touch finger) with (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |

| L60 | 2 | "6140936".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
|---|---|---|---|---|---|---|
| L61 | 2 | "6346935".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L62 | 250 | files with applications with list with only | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L63 | 151 | (file near list) with (application near list) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L64 | 672 | (file near view) with application | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L65 | 21 | sort with application near files | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L66 | 790 | (programs application) with files with (sort show list) with only | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L67 | 80 | (programs application) with files with (sort show list) with only and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L68 | 0 | seperate with list with data near type | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L69 | 7785 | list with data near type | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L70 | 933 | list with data near type and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L71 | 820 | application near list and file near list | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| L72 | 278 | application near list and file near list and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L73 | 37 | icon with drag with activate | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2011/08/28 22:50 |
| L74 | 189 | icon with drag with activat$7 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L75 | 70 | icon with drag with activat$7 and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L76 | 29 | bar with drag with activat$7 and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L77 | 83 | function with drag with activat$7 and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L78 | 31 | (dock bar) with (glide swipe) with activat$7 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2011/08/28 22:50 |
| L79 | 42 | (dock bar) with (glide swipe) with activat$7 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L80 | 72 | (glide swipe) with activat$7 with (function application program) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L81 | 24 | (glide swipe) with activat$7 with (function application program) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L82 | 30 | (glide swipe drag) with icon with activat$7 with (function application program) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L83 | 2 | "7441196".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2011/08/28 22:50 |

| L84 | 818 | swipe with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
|---|---|---|---|---|---|---|
| L85 | 1099 | (glide swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L86 | 2 | "7286063".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L90 | 263 | ("20010003845" \| "20010012286" \| "20010016947" \| "20010034647" \| "20010042002" \| "20010044751" \| "20010049824" \| "20010051903" \| "20020007309" \| "20020010642" \| "20020016750" \| "20020029339" \| "20020032782" \| "20020035174" \| "20020038256" \| "20020038259" \| "20020042914" \| "20020042921" \| "20020049631" \| "20020056098" \| "20020059590" \| "20020067376" \| "20020077177" \| "20020078006" \| "20020078453" \| "20020098834" \| "20020116292" \| "20020116320" \| "20020166122" \| "20030046182" \| "20030074661" \| "20030095525" \| "20030126607" \| "20030140017" \| "20030146940" \| "20030149628" \| "20030182195" \| "20040003412" \| "20040098747" \| "20040103439" \| "20040117831" \| "20040128137" \| "20040133848" \| "20040148625" \| "20040204116" \| "20040210824" \| "20040260689" \| "20050010949" \| "20050025550" \| "20050075932" \| "20050086690" \| "20050091118" \| "20050160458" \| "20050234895" \| "20050246231" \| "20060155598" \| "20060224987" \| "20070008332" \| "3586771" \| "4650977" \| "4706121" \| "4992940" \| "5041312" \| "5064999" \| "5119188" \| "5236199" \| "5321749" \| "5353016" \| "5410326" \| "5479268" \| "5532735" \| "5553242" \| "5559548" \| "5598523" \| "5602596" \| "5617570" \| "5625781" \| "5710887" \| "5727129" \| "5734719" \| "5758126" \| "5794210" \| "5796252" \| "5801702" \| "5809204" \| "5819220" \| "5822014" \| "5828839" \| "5832208" \| "5832459" \| "5838314" \| "5848396" \| "5851149" \| "5874906" \| "5878222" \| "5890175" \| "5893064" \| "5895454" \| "5896133" \| "5900905" \| "5902353" \| "5903729" \| "5911145" \| "5918014" \| "5918213").PN. OR ("5925103" \| "5931901" \| "5935002" \| "5946381" \| "5956681" \| "5956693" \| "5958012" \| "5960411" \| "5961593" \| | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |

"5978381" | "5990927" | "6002853" |
"6005562" | "6005631" | "6006257" |
"6012049" | "6014502" | "6018372" |
"6025837" | "6028600" | "6031537" |
"6041312" | "6054989" | "6072483" |
"6072492" | "6075575" | "6078866" |
"6091417" | "6094156" | "6101473" |
"6112186" | "6129274" | "6138107" |
"6142371" | "6151050" | "6151059" |
"6151596" | "6151630" | "6154205" |
"6160552" | "6167382" | "6172677" |
"6177936" | "6193152" | "6198481" |
"6199050" | "6199077" | "6199098" |
"6205432" | "6205582" | "6211878" |
"6212265" | "6223215" | "6226623" |
"6226642" | "6229540" | "6237030" |
"6243093" | "6253189" | "6260192" |
"6266060" | "6269343" | "6269361" |
"6269403" | "6271832" | "6282516" |
"6285357" | "6285987" | "6286017" |
"6286043" | "6288716" | "6292779" |
"6292782" | "6292786" | "6292809" |
"6295057" | "6298330" | "6300947" |
"6301566" | "6312336" | "6314406" |
"6317706" | "6330005" | "6330543" |
"6333753" | "6334108" | "6334145" |
"6336131" | "6337715" | "6345279" |
"6356905" | "6381583" | "6388714" |
"6396531" | "6397387" | "6401132" |
"6407779" | "6411307" | "6411337" |
"6415270" | "6417873" | "6418441" |
"6421066" | "6421071" | "6421724" |
"6438540" | "6445398" | "6460181" |
"6476825" | "6477575" | "6484149" |
"6487189" | "6487586" | "6490555" |
"6509913" | "6516311" | "6522342" |
"6532312" | "6535888" | "6570582" |
"6571279" | "6583800" | "6606103" |
"6606280" | "6606347").PN. OR
("6608633" | "6615247" | "6615248" |
"6618039" | "6631523" | "6636246" |
"6647373" | "6662224" | "6680714" |
"6684062" | "6692358" | "6704727" |
"6711552" | "6714534" | "6728731" |
"6769989" | "6804786" | "6826572" |
"6829646" | "6857102" | "6868525" |
"6907556" | "6925595" | "6928610" |
"6938073" | "6973669" | "6978263" |
"7013435" | "7020845" | "7051281" |
"7174512" | "7293276" | "7383515").PN.

| | | | | | | |
|------|--------|------------------------------|----------------------------|-----|-----|----------------------|
| L91 | 206 | touch with slide with function | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L92 | 13 | ("4366475" \| "4686332" \| "4821030" \| "4914624" \| "5402151" \| "5563632" \| "5596346" \| "5638060" \| "5687331" \| "5736974" \| "5736976" \| "5761485" \| "5838973").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L93 | 190051 | object near3 type | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |

| L94 | 5 | (file item object) near3 type with open near3 respective | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L95 | 1226 | open$3 with different with program | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L96 | 2 | multiple near3 file near3 selection with open | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L97 | 19 | applying with command with (plurality multiple) with files | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L98 | 34800 | (flick stroke) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2011/08/28 22:50 |
| L99 | 379 | (flick ) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L100 | 132 | (flick ) with (open application command) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L101 | 5 | (flick ) with (open application command) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L102 | 40 | (flick ) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L103 | 1002 | (flick gesture) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L104 | 2424 | (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L105 | 80 | (flick gesture slide) and @ay<="2002" and "715"/702,864.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L106 | 6603 | finger near3 (flick gesture slide) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; | OR | ON | 2011/08/28 22:50 |

| | | | DERWENT | | | |
|---|---|---|---|---|---|---|
| L107 | 88 | finger near3 (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L108 | 0 | "5543591,5943052,5907327,4686332".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L109 | 9 | ("5543591" "5943052" "5907327" "4686332").pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L110 | 164921 | (glide flick touch swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L111 | 24800 | (glide flick touch swipe) with screen with (applications functions) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L112 | 100 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L113 | 450 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L114 | 0 | (glide flick swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L115 | 11 | (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L116 | 222 | (glide flick gesture swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L117 | 308 | (glide flick swipe) with screen and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L118 | 8 | (glide flick swipe) with screen with icon and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; | OR | ON | 2011/08/28 22:50 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | DERWENT | | | | |
| L119 | 16 | ("20010011308" \| "20030142138" \| "20040034801" \| "20050253817" \| "20050253817" \| "20050264833" \| "5821933" \| "5907327" \| "6633310").PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L120 | 454 | (glide flick swipe) with finger and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L121 | 3 | (glide flick swipe) with finger and @AY<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L122 | 13 | ("5250929" \| "5568604" \| "5579036" \| "5612719" \| "5661476" \| "5748185" \| "5767457" \| "5883617" \| "5928304" \| "5943043" \| "5943044" \| "5995083" \| "6049328").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L123 | 1656 | 715/716.ccls. | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L124 | 12 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L125 | 15 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L126 | 673 | 715/716.ccls. and dvd | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L127 | 843 | 715/716.ccls. and menu | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L128 | 85 | 715/716.ccls. and menu and theme | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L129 | 439 | 715/716.ccls. and menu and effects | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L130 | 9 | 715/716.ccls. and menu with theme | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L131 | 1 | "7200836".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2011/08/28 22:50 |
| L132 | 1 | "20080120546".pn. | US-PGPUB; | OR | ON | 2011/08/28 22:50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | USPAT;<br>USOCR | | | |
| L133 | 682 | 715/864.ccls. | US-<br>PGPUB;<br>USPAT;<br>USOCR | OR | ON | 2011/08/28<br>22:50 |
| L134 | 98 | 715/864.ccls. and keyboard and back and<br>icons and files | US-<br>PGPUB;<br>USPAT;<br>USOCR | OR | ON | 2011/08/28<br>22:50 |
| L135 | 48 | 715/864.ccls. and keyboard and back and<br>icons and files and removable | US-<br>PGPUB;<br>USPAT;<br>USOCR | OR | ON | 2011/08/28<br>22:50 |
| L136 | 46 | 715/864.ccls. and keyboard and icons and<br>files and @ay<="2002" | US-<br>PGPUB;<br>USPAT;<br>USOCR | OR | ON | 2011/08/28<br>22:50 |
| L137 | 2 | "6346935".pn. | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | OFF | 2011/08/28<br>22:50 |
| L138 | 22 | (glide flick touch swipe) with<br>(coordinat$7) with screen with<br>(applications functions) and "715"/$.ccls.<br>and @AY<="2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L139 | 450 | (touch finger) with (glide flick touch<br>swipe) with screen with (applications<br>functions) and "715"/$.ccls. and<br>@AY<="2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L140 | 0 | (touch finger) with (glide flick swipe) with<br>screen with (applications functions) and<br>"715"/$.ccls. and @AY<="2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L141 | 3 | (touch finger) with (glide flick swipe) with<br>screen and "715"/$.ccls. and<br>@AY<="2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L142 | 2 | "6140936".pn. | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L143 | 2 | "6346935".pn. | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L144 | 250 | files with applications with list with only | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L145 | 151 | (file near list) with (application near list) | US- | OR | ON | 2011/08/28 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | | | 22:50 |
| L146 | 672 | (file near view) with application | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L147 | 21 | sort with application near files | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L148 | 790 | (programs application) with files with (sort show list) with only | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L149 | 80 | (programs application) with files with (sort show list) with only and "715"/$.ccls. | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L150 | 0 | seperate with list with data near type | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L151 | 7785 | list with data near type | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L152 | 933 | list with data near type and "715"/$.ccls. | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L153 | 820 | application near list and file near list | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L154 | 278 | application near list and file near list and @ay<="2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L155 | 2 | "20030160832".pn. | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | OFF | 2011/08/28<br>22:50 |
| L156 | 4870 | touch with (flick gesture slide swipe across) and @ay<"2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L157 | 4635 | touch with (flick slide swipe across) and | US- | OR | ON | 2011/08/28 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | @ay<"2002" | PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | | | 22:50 |
| L158 | 2804 | touch with (flick slide swipe ) and<br>@ay<"2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L159 | 2780 | touch with ( slide swipe ) and<br>@ay<"2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L160 | 56 | touch with ( swipe ) and @ay<"2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L161 | 1015 | touch near2 (flick slide swipe across) and<br>@ay<"2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L162 | 2 | touch near2 (flick slide swipe across) with<br>activate and @ay<"2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L163 | 30 | touch near2 (flick slide swipe across) with<br>function and @ay<"2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L164 | 2 | "5053758".pn. | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L165 | 33 | touch near2 (flick glide slide swipe across)<br>with function and @ay<"2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L166 | 3 | touch near2 (glide) with function and<br>@ay<"2002" | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L167 | 34 | neonode.as. | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L168 | 10458 | (glide flick touch swipe) with icon | US-<br>PGPUB;<br>USPAT;<br>EPO; JPO;<br>DERWENT | OR | ON | 2011/08/28<br>22:50 |
| L169 | 49984 | (glide flick touch swipe) with | US- | OR | ON | 2011/08/28 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | (representation icon function) | PGPUB; USPAT; EPO; JPO; DERWENT | | | 22:50 |
| L170 | 3457 | (glide flick touch swipe) with (representation icon function) with (activate activation open start) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L171 | 1038 | (glide flick touch swipe) with (representation icon function) with (activate activation open start) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L172 | 105 | (glide flick touch swipe) with (representation icon function) with (activate activation open start) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L173 | 122 | (glide flick touch swipe slide) with (representation icon function) with (activate activation open start) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L174 | 122 | (glide flick touch swipe slide) with (representation icon function) with (activate activation open start unlock) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L175 | 226 | (glide flick touch swipe slide drag) with (representation icon function) with (activate activation open start unlock) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L176 | 2 | touch near2 (flick slide swipe across glide) with activate and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L177 | 1 | touch near4 (flick slide swipe across glide) with activate with (icon button) and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L178 | 2424 | (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L179 | 11 | (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L180 | 1656 | 715/716.ccls. | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/08/28 22:50 |
| L181 | 682 | 715/864.ccls. | US-PGPUB; | OR | ON | 2011/08/28 22:50 |

| | | | USPAT; USOCR | | | |
|---|---|---|---|---|---|---|
| L182 | 3 | (touch finger) with (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L183 | 33 | (touch finger) with (glide flick swipe slide ) with screen and "715"/$.ccls. and @AY="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L184 | 16 | ("20010002694" | "20010022579" | "20010026268" | "20010028344" | "20010055006" | "4790028" | "5053758" | "5283558").PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |
| L193 | 6 | "1459245" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/08/28 22:50 |

**8/28/2011 10:58:20 PM**
**C:\Users\rpitaro\Documents\EAST\Workspaces\10315250.wsp**

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| Update | Search | 11/8/2007 | RFP |
| Update | Search | 6/17/2008 | RFP |
| Update | Search | 12/21/2008 | RFP |
| Update | Search | 4/22/2009 | RFP |
| Update | Search | 11/20/2009 | RFP |
| Update | Search | 5/22/2010 | RFP |
| Update | Search | 6/5/2011 | RFP |
| Update | Search | 8/25/2011 | RFP |
| Update | Search | 10/18/2011 | RFP |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Update Search | 11/8/2007 | RFP |
| Update Search | 6/17/2008 | RFP |
| EAST | 12/21/2008 | RFP |
| Internet | 12/21/2008 | RFP |
| Safari Online Books | 12/21/2008 | RFP |
| IEEE | 12/21/2008 | RFP |
| ACM | 12/21/2008 | RFP |
| Update Search | 4/22/2009 | RFP |
| Update Search | 11/20/2009 | RFP |
| Update Search | 5/22/2010 | RFP |
| Internet Search | 5/22/2010 | RFP |
| Update Search | 6/5/2011 | RFP |
| STIC Search | 6/5/2011 | RFP |
| Fast and Focus Search | 6/5/2011 | RFP |
| Update Search | 8/25/2011 | RFP |
| Update Search | 10/18/2011 | RFP |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| Interference | Search | 6/5/2011 | RFP |
| Update | Search | 8/25/2011 | RFP |

| | |
|---|---|
| | |

### INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|-------|----------|------|----------|
| Update | Search | 10/18/2011 | RFP |

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ **Claims renumbered in the same order as presented by applicant**    ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | 12/21/2008 | 07/06/2009 | 11/20/2009 | 05/23/2010 | 06/06/2011 | 08/28/2011 | |
| | 1 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 2 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 3 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 4 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 5 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 7 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 8 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 9 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 10 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 11 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 12 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 14 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 15 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | - | |
| | 16 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | - | |
| | 17 | ✓ | ✓ | ✓ | - | - | - | - | - | |
| | 18 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | = | |
| | 19 | | ÷ | N | - | | | - | - | |
| | 20 | | ÷ | N | - | | | - | - | |
| | 21 | | ÷ | N | - | | | - | - | |
| | 22 | | ÷ | N | - | | | - | - | |
| | 23 | | ÷ | N | - | | | - | - | |
| | 24 | | ÷ | N | - | | | - | - | |
| | 25 | | ÷ | N | - | | | - | - | |
| | 26 | | ÷ | N | - | | | - | - | |
| | 27 | | ÷ | N | - | | | - | - | |
| | 28 | | ÷ | N | - | | | - | - | |
| | 29 | | ÷ | N | - | | | - | - | |
| | 30 | | ÷ | N | - | | | - | - | |
| | 31 | | ÷ | N | - | | | - | - | |
| | 32 | | ÷ | N | - | | | - | - | |
| | 33 | | ÷ | N | - | | | - | - | |
| | 34 | | ÷ | N | - | | | - | - | |
| | 35 | | ÷ | N | - | | | - | - | |
| | 36 | | ÷ | N | - | | | - | - | |

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

| | | | | | |
|---|---|---|---|---|---|
| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ **Claims renumbered in the same order as presented by applicant**    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | 12/21/2008 | 07/06/2009 | 11/20/2009 | 05/23/2010 | 06/06/2011 | 08/28/2011 | |
| | 37 | | ÷ | N | - | | | - | - | |
| | 38 | | ÷ | N | - | | | - | - | |
| | 39 | | ÷ | N | - | | | - | - | |
| | 40 | | ÷ | N | - | | | - | - | |
| | 41 | | ÷ | N | - | | | - | - | |
| | 42 | | ÷ | N | - | | | - | - | |
| | 43 | | ÷ | N | - | | | - | - | |
| | 44 | | ÷ | N | - | | | - | - | |
| | 45 | | ÷ | N | - | | | - | - | |
| | 46 | | ÷ | N | - | | | - | - | |
| | 47 | | ÷ | N | - | | | - | - | |
| | 48 | | | | | | | = | = | |
| | 49 | | | | | | | = | = | |
| | 50 | | | | | | | | | |
| | 51 | | | | | | | | | |
| | 52 | | | | | | | | | |
| | 53 | | | | | | | | | |
| | 54 | | | | | | | | | |
| | 55 | | | | | | | | | |
| | 56 | | | | | | | | | |
| | 57 | | | | | | | | | |
| | 58 | | | | | | | | | |
| | 59 | | | | | | | | | |
| | 60 | | | | | | | | | |
| | 61 | | | | | | | | | |
| | 62 | | | | | | | | | |
| | 63 | | | | | | | | | |
| | 64 | | | | | | | | | |
| | 65 | | | | | | | | | |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | RYAN PITARO | 2171 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | |
|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | **NON-CLAIMED** | |
| 715 | 716 | G 0 6 F | 3 / 00 (2006.01.01) | | | |

### CROSS REFERENCE(S)

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | |
|---|---|---|---|---|---|---|
| 715 | 864 | 702 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

☒ Claims renumbered in the same order as presented by applicant   ☐ CPA   ☐ T.D.   ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | 17 | | 33 | 17 | 49 | | | | | | | | |
| 2 | 2 | 15 | 18 | | 34 | | | | | | | | | | |
| 3 | 3 | | 19 | | 35 | | | | | | | | | | |
| 4 | 4 | | 20 | | 36 | | | | | | | | | | |
| 5 | 5 | | 21 | | 37 | | | | | | | | | | |
| 6 | 6 | | 22 | | 38 | | | | | | | | | | |
| 7 | 7 | | 23 | | 39 | | | | | | | | | | |
| 8 | 8 | | 24 | | 40 | | | | | | | | | | |
| 9 | 9 | | 25 | | 41 | | | | | | | | | | |
| 10 | 10 | | 26 | | 42 | | | | | | | | | | |
| 11 | 11 | | 27 | | 43 | | | | | | | | | | |
| 12 | 12 | | 28 | | 44 | | | | | | | | | | |
| 13 | 13 | | 29 | | 45 | | | | | | | | | | |
| 14 | 14 | | 30 | | 46 | | | | | | | | | | |
| | 15 | | 31 | | 47 | | | | | | | | | | |
| | 16 | | 32 | 16 | 48 | | | | | | | | | | |

| NONE | | Total Claims Allowed: | | |
|---|---|---|---|---|
| | | 17 | | |
| (Assistant Examiner) | (Date) | | | |
| /RYAN PITARO/ Primary Examiner.Art Unit 2171 | 8/25/2011 | O.G. Print Claim(s) | O.G. Print Figure | |
| (Primary Examiner) | (Date) | 1 | 13 | |

U.S. Patent and Trademark Office

Part of Paper No. 20110606

Attorney's Docket No.: <u>NEONODE.P004</u>     *PATENT*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Patent Application of:          )
                                      )       Examiner:  Ryan F. Pitaro
            Magnus Goertz             )
                                      )       Art Unit:  2174
Application No: 10/315,250            )
                                      )
Filed:     December 10, 2002          )
                                      )
For:     USER INTERFACE FOR           )
         MOBILE HANDHELD              )
         COMPUTER UNIT                )
_____  )

Mail Stop AMENDMENT
Commissioner for Patents
P. O. Box 1450
Alexandria, VA   22313-1450

## AMENDMENT AND RESPONSE TO OFFICE ACTION
## UNDER 37 C.F.R. §1.111

Sir:

            In response to the Office Action dated June 7, 2011,

applicant respectfully requests that the above-identified application be

amended as follows.

IN THE CLAIMS:

Please cancel claims **15** and **16** without prejudice.

Please substitute the following claims for the pending claims with the same number:

**1.** (previously presented) A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:

a touch sensitive area in which a representation of a function is provided, wherein the representation consists of only one option for activating the function and wherein the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location.

**2.** (previously presented) The computer readable medium of claim **1**, wherein the function, when activated, causes the user interface to display icons representing different services or settings for a currently active application.

**3.** (previously presented) The computer readable medium of claim **2**, wherein the user interface is characterised in, that a selection of a preferred service or setting is done by tapping on a display icon corresponding to the preferred service or setting.

**4.** (previously presented)        The computer readable medium of claim **1**, wherein the function, when activated, causes the user interface to display a keyboard and a text field.

**5.** (previously presented)        The computer readable medium of claim **4**, wherein said text field is used for inputting and editing of text through said keyboard.

**6.** (previously presented)        The computer readable medium of claim **1**, wherein the function, when activated, causes the user interface to display a list with a library of available applications and files on the mobile handheld computer unit.

**7.** (previously presented)        The computer readable medium of claim **6**, wherein the user interface is characterised in, that a selection of an application or file is done by gliding the object along said touch sensitive area so that a representation of a desired one of said application or file is highlighted, raising said object from said touch sensitive area, and then tapping on said touch sensitive area.

**8.** (previously presented)        The computer readable medium of claim **7**, wherein the user interface is characterised in, that at any given time said list presents only files or only applications, and that an area of said list presents a field through which said list can be changed from presenting files to presenting applications, or from presenting applications to presenting files.

**9.** (previously presented) The computer readable medium of claim **7**, wherein the user interface is characterised in, that, one item in said list is highlighted by a moveable marking, and the user interface enables list navigation whereby gliding the object along the touch sensitive area in a direction towards the top of said list or towards the bottom of said list causes said marking to move in the same direction without scrolling the list.

**10.** (previously presented) The computer readable medium of claim **9**, wherein the user interface is characterised in, that, if the number of applications or files in said list exceeds the number of applications or files that can be presented on said touch sensitive area as content, and if the object is (i) glided along said touch sensitive area to the top or bottom of said touch sensitive area, then (ii) raised above said touch sensitive area, then (iii) replaced on said touch sensitive area, and then (iv) again glided along said touch sensitive area to the top or bottom of said touch sensitive area, said list navigation pages the content of said list up or down by one whole page.

**11.** (previously presented) The computer readable medium of claim **10**, wherein the user interface is characterised in, that if the object is raised from any first position on said touch sensitive area and then replaced on any second position on said touch sensitive area, said list navigation can be continued from said second position.

**12.** (previously presented) The computer readable medium of claim **1**, wherein the user interface is characterised in, that an active application, function, service or setting is advanced one step by gliding the object

along the touch sensitive area from left to right, and that the active application, function, service or setting is closed or backed one step by gliding the object along the touch sensitive area from right to left.

**13.** (previously presented)    The computer readable medium of claim **1**, wherein the user interface is characterised in, that said representation of said function is located at the bottom of said touch sensitive area.

**14.** (previously presented)    The computer readable medium of claim **1**, wherein the touch sensitive area is 2-3 inches in diagonal dimension.

**15.** – **17.** (cancelled)

**18.** (previously presented)    The computer readable medium of claim **1**, characterised in, that said computer program code is adapted to function as a shell upon an operating system.

**19.** – **47.** (cancelled)

**48.** (previously presented)    The computer readable medium of claim **1**, wherein the representation is finger-sized.

**49.** (previously presented)    The computer readable medium of claim **1**, wherein the location where the representation is provided does not provide touch functionality for a different function.

## REMARKS

Applicant has carefully studied the outstanding Office Action.  The present amendment is intended to place the application in condition for allowance and is believed to overcome all of the objections and rejections made by the Examiner.  Favorable reconsideration and allowance of the application are respectfully requested.

Applicant has canceled claims **15** and **16**.  Claims **1** – **14**, **18**, **48** and **49** are presented for examination.

On page 2 of the Office Action, the Examiner has indicated that claims **1** – **14**, **18**, **48** and **49** are allowed.

On page 2 of the Office Action, the Examiner has rejected claims **15** and **16** under 35 U.S.C. 112, second paragraph, as being indefinite.  Applicant has cancelled these claims without acquiescence to the Examiner's reasons for rejection, and respectfully submits that rejection of these claims is thus rendered moot.

For the foregoing reasons, applicant respectfully submits that the applicable objections and rejections have been overcome and that the claims are in condition for allowance.

If any matters can be resolved by telephone, applicant requests that the Patent and Trademark Office please contact applicant's representative at the telephone number listed below.

Respectfully submitted,
SOQUEL GROUP LLC

Dated: June 9, 2011

/Marc A. Berger/
Marc A. Berger
Reg. No. 44,029

P.O. Box 691
Soquel, CA  95073
(831) 426-8200
Customer No. 75660

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 10265265 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 09-JUN-2011 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 08:58:11 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | NEONODE-P004_Amendment_06-09-2011.pdf | 63432<br>33616fd06dcba15b17916e3029cd6b9ef0d829acd | yes | 7 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 5 |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 7 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 63432 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>10/315,250 | Filing Date<br>12/10/2002 | ☐ To be Mailed |
|---|---|---|---|

### APPLICATION AS FILED – PART I

| | | | SMALL ENTITY ☒ | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED<br>(Column 1) | NUMBER EXTRA<br>(Column 2) | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | | OR X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT | **06/09/2011** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | OR | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 17 | Minus ** 47 | = 0 | X $26 = | 0 | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * 1 | Minus ***8 | = 0 | X $110 = | 0 | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | OR | | | | |
| | | | | | TOTAL ADD'L FEE | **0** | OR | TOTAL ADD'L FEE | |

| | | (Column 1) | (Column 2) | (Column 3) | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | OR | | | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/JERMAINE MINOR/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

75660          7590          06/07/2011
Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

| EXAMINER |
| --- |
| PITARO, RYAN F |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 2171 | |

| MAIL DATE | DELIVERY MODE |
| --- | --- |
| 06/07/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit |
| | RYAN PITARO | 2171 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>30 June 2010</u>.

2a)☐ This action is **FINAL**.   2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-16,18,48 and 49</u> is/are pending in the application.

4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☒ Claim(s) <u>1-14,18,48 and 49</u> is/are allowed.

6)☒ Claim(s) <u>15 and 16</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All   b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08)
Paper No(s)/Mail Date <u>12/21/2010</u>.

4)☐ Interview Summary (PTO-413)
Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 10/315,250                                    Page 2
Art Unit: 2171

### *Continued Examination Under 37 CFR 1.114*

A request for continued examination under 37 CFR 1.114, including the fee set forth in 37 CFR 1.17(e), was filed in this application after final rejection.  Since this application is eligible for continued examination under 37 CFR 1.114, and the fee set forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action has been withdrawn pursuant to 37 CFR 1.114.  Applicant's submission filed on 6/30/2010 has been entered.

### *Allowable Subject Matter*

Claims 1-14,18,48-49 are allowed.

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 15-16 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite in that it fails to point out what is included or excluded by the claim language. This claim is an omnibus type claim.

### *Response to Arguments*

Applicant's arguments, filed 6/30/2010, with respect to claims 1-14,18 have been fully considered and are persuasive.  The rejections of claims 1-14,18 have been withdrawn.

Application/Control Number: 10/315,250                                              Page 3
Art Unit: 2171

*Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to RYAN PITARO whose telephone number is (571)272-4071. The examiner can normally be reached on 9:00am - 5:30pm Mondays through Fridays.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Chat Do can be reached on 571-272-3721. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Ryan F Pitaro/
Primary Examiner, Art Unit 2171

Application/Control Number: 10/315,250                                    Page 4
Art Unit: 2171

| *Notice of References Cited* | Application/Control No. 10/315,250 | Applicant(s)/Patent Under Reexamination GOERTZ, MAGNUS | |
|---|---|---|---|
| | Examiner RYAN PITARO | Art Unit 2171 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-7,880,724 | 02-2011 | Nguyen et al. | 345/168 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

# EAST Search History

## EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L1 | 9854 | (glide flick touch swipe) with icon | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:26 |
| L2 | 47832 | (glide flick touch swipe) with (representation icon function) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:27 |
| L3 | 3314 | (glide flick touch swipe) with (representation icon function) with (activate activation open start) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:27 |
| L4 | 1037 | (glide flick touch swipe) with (representation icon function) with (activate activation open start) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:27 |
| L5 | 104 | (glide flick touch swipe) with (representation icon function) with (activate activation open start) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:27 |
| L6 | 121 | (glide flick touch swipe slide) with (representation icon function) with (activate activation open start) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:29 |
| L7 | 121 | (glide flick touch swipe slide) with (representation icon function) with (activate activation open start unlock) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:29 |
| L8 | 224 | (glide flick touch swipe slide drag) with (representation icon function) with (activate activation open start unlock) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:30 |
| L9 | 2 | touch near2 (flick slide swipe across glide) with activate and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:32 |

| L10 | 1 | touch near4 (flick slide swipe across glide) with activate with (icon button) and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:33 |
| L11 | 2422 | (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:33 |
| L12 | 11 | (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:33 |
| L13 | 1592 | 715/716.ccls. | US-PGPUB; USPAT; USOCR | OR | OFF | 2011/06/06 08:33 |
| L14 | 659 | 715/864.ccls. | US-PGPUB; USPAT; USOCR | OR | ON | 2011/06/06 08:33 |
| L15 | 3 | (touch finger) with (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:34 |
| L16 | 33 | (touch finger) with (glide flick swipe slide ) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2011/06/06 08:34 |
| S1 | 2 | "7441196".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2008/12/08 17:03 |
| S2 | 394 | swipe with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/08 17:05 |
| S3 | 606 | (glide swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/08 17:05 |
| S4 | 2 | "7286063".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/08 17:10 |

| S5 | 263 | ("20010003845" \| "20010012286" \| "20010016947" \| "20010034647" \| "20010042002" \| "20010044751" \| "20010049824" \| "20010051903" \| "20020007309" \| "20020010642" \| "20020016750" \| "20020029339" \| "20020032782" \| "20020035174" \| "20020038256" \| "20020038259" \| "20020042914" \| "20020042921" \| "20020049631" \| "20020056098" \| "20020059590" \| "20020067376" \| "20020077177" \| "20020078006" \| "20020078453" \| "20020098834" \| "20020116292" \| "20020116320" \| "20020166122" \| "20030046182" \| "20030074661" \| "20030095525" \| "20030126607" \| "20030140017" \| "20030146940" \| "20030149628" \| "20030182195" \| "20040003412" \| "20040098747" \| "20040103439" \| "20040117831" \| "20040128137" \| "20040133848" \| "20040148625" \| "20040204116" \| "20040210824" \| "20040260689" \| "20050010949" \| "20050025550" \| "20050075932" \| "20050086690" \| "20050091118" \| "20050160458" \| "20050234895" \| "20050246231" \| "20060155598" \| "20060224987" \| "20070008332" \| "3586771" \| "4650977" \| "4706121" \| "4992940" \| "5041312" \| "5064999" \| "5119188" \| "5236199" \| "5321749" \| "5353016" \| "5410326" \| "5479268" \| "5532735" \| "5553242" \| "5559548" \| "5598523" \| "5602596" \| "5617570" \| "5625781" \| "5710887" \| "5727129" \| "5734719" \| "5758126" \| "5794210" \| "5796252" \| "5801702" \| "5809204" \| "5819220" \| "5822014" \| "5828839" \| "5832208" \| "5832459" \| "5838314" \| "5848396" \| "5851149" \| "5874906" \| "5878222" \| "5890175" \| "5893064" \| "5895454" \| "5896133" \| "5900905" \| "5902353" \| "5903729" \| "5911145" \| "5918014" \| "5918213").PN. OR ("5925103" \| "5931901" \| "5935002" \| "5946381" \| "5956681" \| "5956693" \| "5958012" \| "5960411" \| "5961593" \| "5978381" \| "5990927" \| "6002853" \| "6005562" \| "6005631" \| "6006257" \| "6012049" \| "6014502" \| "6018372" \| "6025837" \| "6028600" \| "6031537" \| "6041312" \| "6054989" \| "6072483" \| "6072492" \| "6075575" \| "6078866" \| "6091417" \| "6094156" \| "6101473" \| "6112186" \| "6129274" \| | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:12 |

| | | "6138107" \| "6142371" \| "6151050" \| "6151059" \| "6151596" \| "6151630" \| "6154205" \| "6160552" \| "6167382" \| "6172677" \| "6177936" \| "6193152" \| "6198481" \| "6199050" \| "6199077" \| "6199098" \| "6205432" \| "6205582" \| "6211878" \| "6212265" \| "6223215" \| "6226623" \| "6226642" \| "6229540" \| "6237030" \| "6243093" \| "6253189" \| "6260192" \| "6266060" \| "6269343" \| "6269361" \| "6269403" \| "6271832" \| "6282516" \| "6285357" \| "6285987" \| "6286017" \| "6286043" \| "6288716" \| "6292779" \| "6292782" \| "6292786" \| "6292809" \| "6295057" \| "6298330" \| "6300947" \| "6301566" \| "6312336" \| "6314406" \| "6317706" \| "6330005" \| "6330543" \| "6333753" \| "6334108" \| "6334145" \| "6336131" \| "6337715" \| "6345279" \| "6356905" \| "6381583" \| "6388714" \| "6396531" \| "6397387" \| "6401132" \| "6407779" \| "6411307" \| "6411337" \| "6415270" \| "6417873" \| "6418441" \| "6421066" \| "6421071" \| "6421724" \| "6438540" \| "6445398" \| "6460181" \| "6476825" \| "6477575" \| "6484149" \| "6487189" \| "6487586" \| "6490555" \| "6509913" \| "6516311" \| "6522342" \| "6532312" \| "6535888" \| "6570582" \| "6571279" \| "6583800" \| "6606103" \| "6606280" \| "6606347").PN. OR ("6608633" \| "6615247" \| "6615248" \| "6618039" \| "6631523" \| "6636246" \| "6647373" \| "6662224" \| "6680714" \| "6684062" \| "6692358" \| "6704727" \| "6711552" \| "6714534" \| "6728731" \| "6769989" \| "6804786" \| "6826572" \| "6829646" \| "6857102" \| "6868525" \| "6907556" \| "6925595" \| "6928610" \| "6938073" \| "6973669" \| "6978263" \| "7013435" \| "7020845" \| "7051281" \| "7174512" \| "7293276" \| "7383515").PN. | | | | |
| S6 | 112 | touch with slide with function | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/08 17:14 |
| S7 | 13 | ("4366475" \| "4686332" \| "4821030" \| "4914624" \| "5402151" \| "5563632" \| "5596346" \| "5638060" \| "5687331" \| "5736974" \| "5736976" \| "5761485" \| "5838973").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:18 |

| S8 | 168267 | object near3 type | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:21 |
|----|--------|-------------------|------------------------|----|----|------------------|
| S9 | 5 | (file item object) near3 type with open near3 respective | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:21 |
| S10 | 905 | open$3 with different with program | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:23 |
| S11 | 2 | multiple near3 file near3 selection with open | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/08 17:29 |
| S12 | 11 | applying with command with (plurality multiple) with files | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/08 17:29 |
| S13 | 29188 | (flick stroke) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2008/12/10 16:52 |
| S14 | 229 | (flick ) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:54 |
| S15 | 127 | (flick ) with (open application command) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:56 |
| S16 | 5 | (flick ) with (open application command) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:56 |
| S17 | 39 | (flick ) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:57 |
| S18 | 961 | (flick gesture) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:58 |
| S19 | 2324 | (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:58 |
| S20 | 77 | (flick gesture slide) and @ay<="2002" and "715"/702,864.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:59 |

| S21 | 6585 | finger near3 (flick gesture slide) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 17:07 |
| S22 | 86 | finger near3 (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 17:07 |
| S23 | 0 | "5543591,5943052,5907327,4686332".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 17:14 |
| S24 | 8 | ("5543591" "5943052" "5907327" "4686332").pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 17:15 |
| S25 | 93647 | (glide flick touch swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:18 |
| S26 | 13098 | (glide flick touch swipe) with screen with (applications functions) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:20 |
| S27 | 88 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:20 |
| S28 | 430 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:20 |
| S29 | 0 | (glide flick swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:21 |
| S30 | 11 | (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:21 |
| S31 | 219 | (glide flick gesture swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:22 |

| S32 | 299 | (glide flick swipe) with screen and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:25 |
| S33 | 8 | (glide flick swipe) with screen with icon and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:26 |
| S34 | 16 | ("20010011308" \| "20030142138" \| "20040034801" \| "20050253817" \| "20050253817" \| "20050264833" \| "5821933" \| "5907327" \| "6633310").PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:30 |
| S35 | 451 | (glide flick swipe) with finger and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:32 |
| S36 | 3 | (glide flick swipe) with finger and @AY<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:32 |
| S37 | 13 | ("5250929" \| "5568604" \| "5579036" \| "5612719" \| "5661476" \| "5748185" \| "5767457" \| "5883617" \| "5928304" \| "5943043" \| "5943044" \| "5995083" \| "6049328").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/17 14:01 |
| S38 | 918 | 715/716.ccls. | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/17 15:38 |
| S39 | 7 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/17 15:38 |
| S40 | 9 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:38 |
| S41 | 334 | 715/716.ccls. and dvd | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:47 |
| S42 | 461 | 715/716.ccls. and menu | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:47 |
| S43 | 39 | 715/716.ccls. and menu and theme | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:48 |
| S44 | 243 | 715/716.ccls. and menu and effects | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:52 |

| S45 | 4 | 715/716.ccls. and menu with theme | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:53 |
| S46 | 1 | "7200836".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:56 |
| S47 | 1 | "20080120546".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:57 |
| S48 | 433 | 715/864.ccls. | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/21 23:26 |
| S49 | 60 | 715/864.ccls. and keyboard and back and icons and files | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/21 23:27 |
| S50 | 25 | 715/864.ccls. and keyboard and back and icons and files and removable | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/21 23:27 |
| S51 | 42 | 715/864.ccls. and keyboard and icons and files and @ay<="2002" | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/21 23:28 |
| S52 | 2 | "6346935".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/07/05 14:20 |
| S53 | 21 | (glide flick touch swipe) with (coordinat$7) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/05 14:24 |
| S54 | 437 | (touch finger) with (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/05 14:26 |
| S55 | 0 | (touch finger) with (glide flick swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/05 14:26 |
| S56 | 3 | (touch finger) with (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/05 14:27 |
| S57 | 2 | "6140936".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/05 23:13 |

| S58 | 2 | "6346935".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 10:24 |
|---|---|---|---|---|---|---|
| S59 | 187 | files with applications with list with only | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 10:28 |
| S60 | 98 | (file near list) with (application near list) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 10:34 |
| S61 | 502 | (file near view) with application | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 10:36 |
| S62 | 15 | sort with application near files | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:14 |
| S63 | 613 | (programs application) with files with (sort show list) with only | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:18 |
| S64 | 55 | (programs application) with files with (sort show list) with only and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:18 |
| S65 | 0 | seperate with list with data near type | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:19 |
| S66 | 5796 | list with data near type | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:19 |
| S67 | 652 | list with data near type and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:19 |
| S68 | 596 | application near list and file near list | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:20 |

EAST Search History

| S69 | 271 | application near list and file near list and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:22 |
|-----|-----|------|------|-----|-----|------|
| S70 | 31 | icon with drag with activate | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/11/20 14:29 |
| S71 | 148 | icon with drag with activat$7 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:29 |
| S72 | 68 | icon with drag with activat$7 and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:30 |
| S73 | 29 | bar with drag with activat$7 and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:36 |
| S74 | 81 | function with drag with activat$7 and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:37 |
| S75 | 26 | (dock bar) with (glide swipe) with activat$7 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/11/20 14:43 |
| S76 | 34 | (dock bar) with (glide swipe) with activat$7 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:43 |
| S77 | 54 | (glide swipe) with activat$7 with (function application program) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:46 |
| S78 | 24 | (glide swipe) with activat$7 with (function application program) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:47 |
| S79 | 30 | (glide swipe drag) with icon with activat$7 with (function application program) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:48 |

| S80 | 2 | "7441196".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/11/20 15:14 |
|-----|---|---------------|-----------------------------------|----|----|------------------|
| S81 | 503 | swipe with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S82 | 734 | (glide swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S83 | 2 | "7286063".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S84 | 263 | ("20010003845" \| "20010012286" \| "20010016947" \| "20010034647" \| "20010042002" \| "20010044751" \| "20010049824" \| "20010051903" \| "20020007309" \| "20020010642" \| "20020016750" \| "20020029339" \| "20020032782" \| "20020035174" \| "20020038256" \| "20020038259" \| "20020042914" \| "20020042921" \| "20020049631" \| "20020056098" \| "20020059590" \| "20020067376" \| "20020077177" \| "20020078006" \| "20020078453" \| "20020098834" \| "20020116292" \| "20020116320" \| "20020166122" \| "20030046182" \| "20030074661" \| "20030095525" \| "20030126607" \| "20030140017" \| "20030146940" \| "20030149628" \| "20030182195" \| "20040003412" \| "20040098747" \| "20040103439" \| "20040117831" \| "20040128137" \| "20040133848" \| "20040148625" \| "20040204116" \| "20040210824" \| "20040260689" \| "20050010949" \| "20050025550" \| "20050075932" \| "20050086690" \| "20050091118" \| "20050160458" \| "20050234895" \| "20050246231" \| "20060155598" \| "20060224987" \| "20070008332" \| "3586771" \| "4650977" \| "4706121" \| "4992940" \| "5041312" \| "5064999" \| "5119188" \| "5236199" \| "5321749" \| "5353016" \| "5410326" \| "5479268" \| "5532735" \| "5553242" \| "5559548" \| "5598523" \| "5602596" \| "5617570" \| "5625781" \| "5710887" \| "5727129" \| "5734719" \| "5758126" \| | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |

"5794210" | "5796252" | "5801702" | "5809204" |
"5819220" | "5822014" | "5828839" | "5832208" |
"5832459" | "5838314" | "5848396" | "5851149" |
"5874906" | "5878222" | "5890175" | "5893064" |
"5895454" | "5896133" | "5900905" | "5902353" |
"5903729" | "5911145" | "5918014" | "5918213").PN.
OR ("5925103" | "5931901" | "5935002" | "5946381" |
"5956681" | "5956693" | "5958012" | "5960411" |
"5961593" | "5978381" | "5990927" | "6002853" |
"6005562" | "6005631" | "6006257" | "6012049" |
"6014502" | "6018372" | "6025837" | "6028600" |
"6031537" | "6041312" | "6054989" | "6072483" |
"6072492" | "6075575" | "6078866" | "6091417" |
"6094156" | "6101473" | "6112186" | "6129274" |
"6138107" | "6142371" | "6151050" | "6151059" |
"6151596" | "6151630" | "6154205" | "6160552" |
"6167382" | "6172677" | "6177936" | "6193152" |
"6198481" | "6199050" | "6199077" | "6199098" |
"6205432" | "6205582" | "6211878" | "6212265" |
"6223215" | "6226623" | "6226642" | "6229540" |
"6237030" | "6243093" | "6253189" | "6260192" |
"6266060" | "6269343" | "6269361" | "6269403" |
"6271832" | "6282516" | "6285357" | "6285987" |
"6286017" | "6286043" | "6288716" | "6292779" |
"6292782" | "6292786" | "6292809" | "6295057" |
"6298330" | "6300947" | "6301566" | "6312336" |
"6314406" | "6317706" | "6330005" | "6330543" |
"6333753" | "6334108" | "6334145" | "6336131" |
"6337715" | "6345279" | "6356905" | "6381583" |
"6388714" | "6396531" | "6397387" | "6401132" |
"6407779" | "6411307" | "6411337" | "6415270" |
"6417873" | "6418441" | "6421066" | "6421071" |
"6421724" | "6438540" | "6445398" | "6460181" |
"6476825" | "6477575" | "6484149" | "6487189" |
"6487586" | "6490555" | "6509913" | "6516311" |
"6522342" | "6532312" | "6535888" | "6570582" |
"6571279" | "6583800" | "6606103" | "6606280" |
"6606347").PN. OR ("6608633" | "6615247" |
"6615248" | "6618039" | "6631523" | "6636246" |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "6647373" \| "6662224" \| "6680714" \| "6684062" \| "6692358" \| "6704727" \| "6711552" \| "6714534" \| "6728731" \| "6769989" \| "6804786" \| "6826572" \| "6829646" \| "6857102" \| "6868525" \| "6907556" \| "6925595" \| "6928610" \| "6938073" \| "6973669" \| "6978263" \| "7013435" \| "7020845" \| "7051281" \| "7174512" \| "7293276" \| "7383515").PN. | | | | |
| S85 | 131 | touch with slide with function | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S86 | 13 | ("4366475" \| "4686332" \| "4821030" \| "4914624" \| "5402151" \| "5563632" \| "5596346" \| "5638060" \| "5687331" \| "5736974" \| "5736976" \| "5761485" \| "5838973").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| S87 | 175604 | object near3 type | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| S88 | 5 | (file item object) near3 type with open near3 respective | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| S89 | 997 | open$3 with different with program | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| S90 | 2 | multiple near3 file near3 selection with open | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S91 | 12 | applying with command with (plurality multiple) with files | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S92 | 30944 | (flick stroke) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/11/20 15:14 |
| S93 | 261 | (flick ) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S94 | 131 | (flick ) with (open application command) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |

| S95 | 5 | (flick ) with (open application command) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
|-----|-----|-----|-----|-----|-----|-----|
| S96 | 39 | (flick ) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S97 | 981 | (flick gesture) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S98 | 2372 | (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S99 | 78 | (flick gesture slide) and @ay<="2002" and "715"/702,864.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S100 | 6588 | finger near3 (flick gesture slide) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S101 | 87 | finger near3 (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S102 | 0 | "5543591,5943052,5907327,4686332".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S103 | 8 | ("5543591" "5943052" "5907327" "4686332").pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S104 | 113453 | (glide flick touch swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S105 | 16322 | (glide flick touch swipe) with screen with (applications functions) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |

| S106 | 92 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S107 | 439 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S108 | 0 | (glide flick swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S109 | 11 | (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S110 | 219 | (glide flick gesture swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S111 | 302 | (glide flick swipe) with screen and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S112 | 8 | (glide flick swipe) with screen with icon and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S113 | 16 | ("20010011308" \| "20030142138" \| "20040034801" \| "20050253817" \| "20050253817" \| "20050264833" \| "5821933" \| "5907327" \| "6633310").PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S114 | 452 | (glide flick swipe) with finger and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S115 | 3 | (glide flick swipe) with finger and @AY<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S116 | 13 | ("5250929" \| "5568604" \| "5579036" \| "5612719" \| "5661476" \| "5748185" \| "5767457" \| "5883617" \| "5928304" \| "5943043" \| "5943044" \| "5995083" \| "6049328").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |

| S117 | 1144 | 715/716.ccls. | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| S118 | 8 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| S119 | 10 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S120 | 429 | 715/716.ccls. and dvd | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S121 | 587 | 715/716.ccls. and menu | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S122 | 55 | 715/716.ccls. and menu and theme | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S123 | 311 | 715/716.ccls. and menu and effects | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S124 | 6 | 715/716.ccls. and menu with theme | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S125 | 1 | "7200836".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S126 | 1 | "20080120546".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S127 | 504 | 715/864.ccls. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S128 | 69 | 715/864.ccls. and keyboard and back and icons and files | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S129 | 29 | 715/864.ccls. and keyboard and back and icons and files and removable | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S130 | 44 | 715/864.ccls. and keyboard and icons and files and @ay<="2002" | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| S131 | 2 | "6346935".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/11/20 15:14 |

| S132 | 21 | (glide flick touch swipe) with (coordinat$7) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S133 | 439 | (touch finger) with (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S134 | 0 | (touch finger) with (glide flick swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S135 | 3 | (touch finger) with (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S136 | 2 | "6140936".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S137 | 2 | "6346935".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S138 | 195 | files with applications with list with only | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S139 | 102 | (file near list) with (application near list) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S140 | 535 | (file near view) with application | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S141 | 16 | sort with application near files | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S142 | 632 | (programs application) with files with (sort show list) with only | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |

| S143 | 57 | (programs application) with files with (sort show list) with only and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S144 | 0 | seperate with list with data near type | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S145 | 6088 | list with data near type | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S146 | 684 | list with data near type and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S147 | 635 | application near list and file near list | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S148 | 273 | application near list and file near list and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| S149 | 2 | "20030160832".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/11/20 15:43 |
| S150 | 4858 | touch with (flick gesture slide swipe across) and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2010/05/23 17:18 |
| S151 | 4625 | touch with (flick slide swipe across) and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2010/05/23 17:19 |
| S152 | 2801 | touch with (flick slide swipe ) and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2010/05/23 17:19 |
| S153 | 2777 | touch with ( slide swipe ) and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2010/05/23 17:19 |

| S154 | 54 | touch with ( swipe ) and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2010/05/23 17:20 |
| S155 | 1011 | touch near2 (flick slide swipe across) and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2010/05/23 17:20 |
| S156 | 2 | touch near2 (flick slide swipe across) with activate and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2010/05/23 17:21 |
| S157 | 29 | touch near2 (flick slide swipe across) with function and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2010/05/23 17:21 |
| S158 | 2 | "5053758".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2010/05/23 17:33 |
| S159 | 32 | touch near2 (flick glide slide swipe across) with function and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2010/05/23 17:36 |
| S160 | 3 | touch near2 (glide) with function and @ay<"2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2010/05/23 17:36 |
| S161 | 8 | neonode.as. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2010/05/23 17:56 |

## EAST Search History (Interference)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L17 | 0 | touch with glide with activat$7.clm. | USPAT; UPAD | OR | ON | 2011/06/06 08:36 |
| L18 | 9 | touch with glide .clm. | USPAT; UPAD | OR | ON | 2011/06/06 08:36 |
| L19 | 0 | touch with glide with away .clm. | USPAT; UPAD | OR | ON | 2011/06/06 08:37 |
| L20 | 91 | glide with away .clm. | USPAT; UPAD | OR | ON | 2011/06/06 08:37 |

| L21 | 27 | glide with activat$7.clm. | USPAT; UPAD | OR | ON | 2011/06/06 08:37 |
| L22 | 333 | slide with unlock.clm. | USPAT; UPAD | OR | ON | 2011/06/06 08:39 |
| L23 | 1 | slide with unlock with touch.clm. | USPAT; UPAD | OR | ON | 2011/06/06 08:40 |

**6/6/11 8:40:39 AM**
**C:\ Documents and Settings\ RPitaro\ My Documents\ EAST\ Workspaces\ 10315250.wsp**

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| **_Index of Claims_** | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

| ✔ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant   ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | 12/21/2008 | 07/06/2009 | 11/20/2009 | 05/23/2010 | 06/06/2011 | | |
| | 1 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 2 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 3 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 4 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 5 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 7 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 8 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 9 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 10 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 11 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 12 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 14 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 15 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | |
| | 16 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | |
| | 17 | ✓ | ✓ | ✓ | - | - | - | - | | |
| | 18 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | = | | |
| | 19 | | ÷ | N | - | | | - | | |
| | 20 | | ÷ | N | - | | | - | | |
| | 21 | | ÷ | N | - | | | - | | |
| | 22 | | ÷ | N | - | | | - | | |
| | 23 | | ÷ | N | - | | | - | | |
| | 24 | | ÷ | N | - | | | - | | |
| | 25 | | ÷ | N | - | | | - | | |
| | 26 | | ÷ | N | - | | | - | | |
| | 27 | | ÷ | N | - | | | - | | |
| | 28 | | ÷ | N | - | | | - | | |
| | 29 | | ÷ | N | - | | | - | | |
| | 30 | | ÷ | N | - | | | - | | |
| | 31 | | ÷ | N | - | | | - | | |
| | 32 | | ÷ | N | - | | | - | | |
| | 33 | | ÷ | N | - | | | - | | |
| | 34 | | ÷ | N | - | | | - | | |
| | 35 | | ÷ | N | - | | | - | | |
| | 36 | | ÷ | N | - | | | - | | |

Part of Paper No. : 20110606A

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit |
| | Ryan F Pitaro | 2174 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ **Claims renumbered in the same order as presented by applicant**    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | 12/21/2008 | 07/06/2009 | 11/20/2009 | 05/23/2010 | 06/06/2011 | | |
| | 37 | | ÷ | N | - | | | - | | |
| | 38 | | ÷ | N | - | | | - | | |
| | 39 | | ÷ | N | - | | | - | | |
| | 40 | | ÷ | N | - | | | - | | |
| | 41 | | ÷ | N | - | | | - | | |
| | 42 | | ÷ | N | - | | | - | | |
| | 43 | | ÷ | N | - | | | - | | |
| | 44 | | ÷ | N | - | | | - | | |
| | 45 | | ÷ | N | - | | | - | | |
| | 46 | | ÷ | N | - | | | - | | |
| | 47 | | ÷ | N | - | | | - | | |
| | 48 | | | | | | | = | | |
| | 49 | | | | | | | = | | |
| | 50 | | | | | | | | | |
| | 51 | | | | | | | | | |
| | 52 | | | | | | | | | |
| | 53 | | | | | | | | | |
| | 54 | | | | | | | | | |
| | 55 | | | | | | | | | |
| | 56 | | | | | | | | | |
| | 57 | | | | | | | | | |
| | 58 | | | | | | | | | |
| | 59 | | | | | | | | | |
| | 60 | | | | | | | | | |
| | 61 | | | | | | | | | |
| | 62 | | | | | | | | | |
| | 63 | | | | | | | | | |
| | 64 | | | | | | | | | |
| | 65 | | | | | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| Update | Search | 11/8/2007 | RFP |
| Update | Search | 6/17/2008 | RFP |
| Update | Search | 12/21/2008 | RFP |
| Update | Search | 4/22/2009 | RFP |
| Update | Search | 11/20/2009 | RFP |
| Update | Search | 5/22/2010 | RFP |
| Update | Search | 6/5/2011 | RFP |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Update Search | 11/8/2007 | RFP |
| Update Search | 6/17/2008 | RFP |
| EAST | 12/21/2008 | RFP |
| Internet | 12/21/2008 | RFP |
| Safari Online Books | 12/21/2008 | RFP |
| IEEE | 12/21/2008 | RFP |
| ACM | 12/21/2008 | RFP |
| Update Search | 4/22/2009 | RFP |
| Update Search | 11/20/2009 | RFP |
| Update Search | 5/22/2010 | RFP |
| Internet Search | 5/22/2010 | RFP |
| Update Search | 6/5/2011 | RFP |
| STIC Search | 6/5/2011 | RFP |
| Fast and Focus Search | 6/5/2011 | RFP |

### INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| Interference | Search | 6/5/2011 | RFP |

| | |
|---|---|
| | |

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 10315250 |
| Filing Date | 2002-12-10 |
| First Named Inventor | Magnus Goertz |
| Art Unit | 2174 |
| Examiner Name | PITARO, RYAN F |
| Attorney Docket Number | NEONODE.P004 |

**U.S.PATENTS** — Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| /R.P./ | 1 | 4790028 | B1 | 1988-12-06 | Ramage | |
| /R.P./ | 2 | 5053758 | B1 | 1991-10-01 | Cornett et al. | |
| /R.P./ | 3 | 5283558 | B1 | 1994-02-01 | Chan | |

If you wish to add additional U.S. Patent citation information please click the Add button.   Add

**U.S.PATENT APPLICATION PUBLICATIONS** — Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| /R.P./ | 1 | 20010002694 | A1 | 2001-06-07 | Nakazawa et al. | |
| /R.P./ | 2 | 20010022579 | A1 | 2001-09-20 | Hirabayashi | |
| /R.P./ | 3 | 20010026268 | A1 | 2001-10-04 | Ito | |

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 10315250 |
| Filing Date | 2002-12-10 |
| First Named Inventor | Magnus Goertz |
| Art Unit | 2174 |
| Examiner Name | PITARO, RYAN F |
| Attorney Docket Number | NEONODE.P004 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| /R.P./ | 4 | 20010028344 | A1 | 2001-10-11 | Iwamoto et al. | | |
| /R.P./ | 5 | 20010055006 | A1 | 2001-12-27 | Sano et al. | | |

If you wish to add additional U.S. Published Application citation information please click the Add button. | Add |

## FOREIGN PATENT DOCUMENTS

Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button | Add |

## NON-PATENT LITERATURE DOCUMENTS

Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button | Add |

## EXAMINER SIGNATURE

| Examiner Signature | /Ryan Pitaro/ | Date Considered | 06/06/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

Attorney's Docket No.: NEONODE.P004    *PATENT*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Patent Application of:              )
                                          )    Examiner: Ryan F. Pitaro
          Magnus Goertz                   )
                                          )    Art Unit:  2174
Application No: 10/315,250                )
                                          )
Filed:    December 10, 2002               )
                                          )
For:      USER INTERFACE FOR              )
          MOBILE HANDHELD                 )
          COMPUTER UNIT                   )
_____)

Commissioner for Patents
P. O. Box 1450
Alexandria, VA   22313-1450

## SUMMARY OF INTERVIEW

Sir:

　　　　　　　Applicant expresses appreciation to the Examiner for the courtesy of an interview granted to applicant's representative Marc A. Berger (Reg. No. 44,029).   The interview was held by telephone on Thursday, May 5, 2011.   The substance of the interview is contained in the Interview Summary, Form PTOL-413, prepared and entered by the Examiner on May 11, 2011.

                              Respectfully submitted,

                              SOQUEL GROUP LLC

Dated: May 29, 2011           /Marc A. Berger/
                              Marc A. Berger
                              Reg. No. 44,029

P.O. Box 691
Soquel, CA   95073
(831) 426-8200
Customer No. 75660

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 10190005 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 29-MAY-2011 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 02:18:45 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Applicant summary of interview with examiner | NEONODE-P004_SummaryOfInterview.pdf | 40187 6af1a4526010a27c2e1f40a8043afc23d5d2 aa83 | no | 1 |

**Warnings:**

**Information:**

Total Files Size (in bytes):        40187

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PLUS Search Results for S/N 10315250, Searched Thu May 12 15:25:52 EDT 2011
The Patent Linguistics Utility System (PLUS) is a USPTO automated search system
for U.S. Patents from 1971 to the present PLUS is a query-by-example search system which
produces a list of patents that are most closely related linguistically to the application
searched. This search was prepared by the staff of the Scientific and Technical Information
Center, SIRA.

| | |
|---|---|
| 5434777 99 | 7539864 99 |
| 5608624 99 | |
| 5625814 99 | |
| 6023779 99 | |
| 4490810 99 | |
| 5654529 99 | |
| 5949408 99 | |
| 4922237 99 | |
| 5257015 99 | |
| 5382962 99 | |
| 5496992 99 | |
| 5515052 99 | |
| 5536930 99 | |
| 5550650 99 | |
| 5615384 99 | |
| 5677952 99 | |
| 5923866 99 | |
| 5933478 99 | |
| 5970427 99 | |
| 5974238 99 | |
| 5983354 99 | |
| 6052120 99 | |
| 6084691 99 | |
| 6084584 99 | |
| 6094156 99 | |
| 6098095 99 | |
| 6106564 99 | |
| 6122216 99 | |
| 6128661 99 | |
| 6151015 99 | |
| 6166734 99 | |
| 6201199 99 | |
| 6236917 99 | |
| 6336137 99 | |
| 6377685 99 | |
| 6442570 99 | |
| 6468219 99 | |
| 6717572 99 | |
| 6889362 99 | |
| 6912659 99 | |
| 6965921 99 | |
| 7054487 99 | |
| 7123742 99 | |
| 7130980 99 | |
| 7203828 99 | |
| 7210032 99 | |
| 7302560 99 | |
| 7424588 99 | |
| 7430659 99 | |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

75660          7590          05/11/2011
Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

| EXAMINER |
|---|
| PITARO, RYAN F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2171 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/11/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| *Interview Summary* | **Application No.** | **Applicant(s)** |
|---|---|---|
| | 10/315,250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** | |
| | RYAN F. PITARO | 2171 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *RYAN F. PITARO*.                    (3) _____.

(2) *Marc Berger*.                       (4) _____.

Date of Interview: <u>05 May 2011</u>.

Type:  a)☒ Telephonic   b)☐ Video Conference
       c)☐ Personal [copy given to: 1)☐ applicant   2)☐ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☐ No.
       If Yes, brief description: _____.

Claim(s) discussed: <u>1</u>.

Identification of prior art discussed: <u>Nakajima,Hoshino,Hirshberg,Carlson, Venolia</u>.

Agreement with respect to the claims f)☒ was reached.   g)☐ was not reached.   h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: <u>Differences between the prior art of record and the claimed application were discussed in view of the claim amendments. Agreement was reached that the prior art fails to teach the claimed amendments</u>.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MEPP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

/Ryan F Pitaro/
Primary Examiner, Art Unit 2171

PTOL-413 (Rev. 04-03)                    **Interview Summary**                    Paper No. 20110509

### Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant.  An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

37 CFR §1.2  Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing.  The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary.  The action of the Patent and Trademark Office will be based exclusively on the written record in the Office.  No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

_____

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so.  It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks.  Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below.  Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper.  In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview.  In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
– An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable).  Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
    (The identification of arguments need not be lengthy or elaborate.  A verbatim or highly detailed description of the arguments is not required.  The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file.  Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.
Examiners are expected to carefully review the applicant's record of the substance of an interview.  If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her.  If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | |
|---|---|
| Application Number | 10315250 |
| Filing Date | 2002-12-10 |
| First Named Inventor | Magnus Goertz |
| Art Unit | 2174 |
| Examiner Name | PITARO, RYAN F |
| Attorney Docket Number | NEONODE.P004 |

### U.S.PATENTS    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
|  | 1 | 4790028 | B1 | 1988-12-06 | Ramage |  |
|  | 2 | 5053758 | B1 | 1991-10-01 | Cornett et al. |  |
|  | 3 | 5283558 | B1 | 1994-02-01 | Chan |  |

If you wish to add additional U.S. Patent citation information please click the Add button.    Add

### U.S.PATENT APPLICATION PUBLICATIONS    Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
|  | 1 | 20010002694 | A1 | 2001-06-07 | Nakazawa et al. |  |
|  | 2 | 20010022579 | A1 | 2001-09-20 | Hirabayashi |  |
|  | 3 | 20010026268 | A1 | 2001-10-04 | Ito |  |

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 10315250 |
| Filing Date | 2002-12-10 |
| First Named Inventor | Magnus Goertz |
| Art Unit | 2174 |
| Examiner Name | PITARO, RYAN F |
| Attorney Docket  Number | NEONODE.P004 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4 | 20010028344 | A1 | 2001-10-11 | Iwamoto et al. | | |
| 5 | 20010055006 | A1 | 2001-12-27 | Sano et al. | | |

If you wish to add additional U.S. Published Application citation information please click the Add button. | Add |

## FOREIGN PATENT DOCUMENTS   Remove

| Examiner Initial* | Cite No | Foreign Document Number³ | Country Code² i | Kind Code⁴ | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T⁵ |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button | Add |

## NON-PATENT LITERATURE DOCUMENTS   Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T⁵ |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button | Add |

## EXAMINER SIGNATURE

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

¹ See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  ² Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  ³ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁴ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  ⁵ Applicant is to place a check mark here if English language translation is attached.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 10315250 |
|---|---|---|
| | Filing Date | 2002-12-10 |
| | First Named Inventor | Magnus Goertz |
| | Art Unit | 2174 |
| | Examiner Name | PITARO, RYAN F |
| | Attorney Docket Number | NEONODE.P004 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☒ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☐ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Marc A. Berger/ | Date (YYYY-MM-DD) | 2010-12-21 |
|---|---|---|---|
| Name/Print | Marc A. Berger | Registration Number | 44029 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.   The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.   A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.   A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.   A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.   A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.   A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.   A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.   A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.   A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10315250 |
| **Filing Date:** | 10-Dec-2002 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus Goertz |
| **Filer:** | Marc Aron Berger |
| **Attorney Docket Number:** | NEONODE.P004 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Submission- Information Disclosure Stmt | 1806 | 1 | 180 | 180 |
| **Total in USD ($)** | | | | **180** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 9089252 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 21-DEC-2010 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 16:55:29 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $180 |
| RAM confirmation Number | 4428 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | Information Disclosure Statement (IDS) Filed (SB/08) | NEONODE_P004_IDS_21-21-20 10.pdf | 612501 <br> 8ef76d2e00ddbb8597c930c2ddbcbb8540f ffe87 | no | 4 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 29922 <br> 49fe21e0e32f592761922206a1e56413a53a 5a0b | no | 2 |

**Warnings:**

**Information:**

| **Total Files Size (in bytes):** | 642423 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

## REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
### (Submitted Only via EFS-Web)

| Application Number | 10315250 | Filing Date | 2002-12-10 | Docket Number (if applicable) | NEONODE.P004 | Art Unit | 2174 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Magnus Goertz | | | Examiner Name | Ryan F. Pitaro | | |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. The Instruction Sheet for this form is located at WWW.USPTO.GOV

### SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

[ ] Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

    [ ] Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

    [ ] Other _____

[X] Enclosed

    [X] Amendment/Reply

    [ ] Information Disclosure Statement (IDS)

    [ ] Affidavit(s)/ Declaration(s)

    [ ] Other

### MISCELLANEOUS

[ ] Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of _____ months
(Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

[ ] Other _____

### FEES

[ ] **The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to Deposit Account No _____

### SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

[X] Patent Practitioner Signature
[ ] Applicant Signature

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

Case 6:20-cv-00507-ADA    Document 81-7    Filed 05/19/23    Page 198 of 745

PTO/SB/30EFS (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | | |
|---|---|---|---|
| Signature | /Marc A. Berger/ | Date (YYYY-MM-DD) | 2010-06-30 |
| Name | Marc A. Berger | Registration Number | 44029 |

This collection of information is required by 37 CFR 1.114.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

Attorney's Docket No.: NEONODE.P004    *PATENT*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Patent Application of:           )
                                       )    Examiner:  Ryan F. Pitaro
            Magnus Goertz              )
                                       )    Art Unit:   2174
Application No: 10/315,250             )
                                       )
Filed:      December 10, 2002          )
                                       )
For:        USER INTERFACE FOR         )
            MOBILE HANDHELD            )
            COMPUTER UNIT              )
                                       )

Mail Stop AMENDMENT
Commissioner for Patents
P. O. Box 1450
Alexandria, VA   22313-1450

## AMENDMENT AND RESPONSE TO OFFICE ACTION

## UNDER 37 C.F.R. §1.111

Sir:

In response to the Final Office Action dated May 28,

2010, applicant respectfully requests that the above-identified application

be amended as follows.

IN THE CLAIMS:

Please substitute the following claims for the pending claims with the same number:

**1.** (currently amended)　　　　A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:

a touch sensitive area in which representations a representation of at least one a function are displayed, and each function of said at least one function being mapped to a corresponding location in the touch sensitive area at which the representation of the function is displayed, and being is provided, wherein the representation consists of only one option for activating the function and wherein the function is activated by a multi-step operation comprising (i) an object touching the corresponding touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location.

**2.** (currently amended)　　　　The computer readable medium of claim **1**, wherein one function from the at least one function, when activated, causes the user interface to display icons representing different services or settings for a currently active application.

**3.** (previously presented)　　　　The computer readable medium of claim **2**, wherein the user interface is characterised in, that a selection of a

preferred service or setting is done by tapping on a display icon corresponding to the preferred service or setting.

**4.** (currently amended)        The computer readable medium of claim **1**, wherein ~~one function from at least one~~ the function, when activated, causes the user interface to display a keyboard and a text field.

**5.** (previously presented)        The computer readable medium of claim **4**, wherein said text field is used for inputting and editing of text through said keyboard.

**6.** (currently amended)        The computer readable medium of claim **1**, wherein ~~one function from~~ the ~~at least one~~ function, when activated, causes the user interface to display a list with a library of available applications and files on the mobile handheld computer unit.

**7.** (previously presented)        The computer readable medium of claim **6**, wherein the user interface is characterised in, that a selection of an application or file is done by gliding the object along said touch sensitive area so that a representation of a desired one of said application or file is highlighted, raising said object from said touch sensitive area, and then tapping on said touch sensitive area.

**8.** (previously presented)        The computer readable medium of claim **7**, wherein the user interface is characterised in, that at any given time said list presents only files or only applications, and that an area of said list presents a field through which said list can be changed from presenting

files to presenting applications, or from presenting applications to presenting files.

**9.** (previously presented)  The computer readable medium of claim **7**, wherein the user interface is characterised in, that, one item in said list is highlighted by a moveable marking, and the user interface enables list navigation whereby gliding the object along the touch sensitive area in a direction towards the top of said list or towards the bottom of said list causes said marking to move in the same direction without scrolling the list.

**10.** (previously presented)  The computer readable medium of claim **9**, wherein the user interface is characterised in, that, if the number of applications or files in said list exceeds the number of applications or files that can be presented on said touch sensitive area as content, and if the object is (i) glided along said touch sensitive area to the top or bottom of said touch sensitive area, then (ii) raised above said touch sensitive area, then (iii) replaced on said touch sensitive area, and then (iv) again glided along said touch sensitive area to the top or bottom of said touch sensitive area, said list navigation pages the content of said list up or down by one whole page.

**11.** (previously presented)  The computer readable medium of claim **10**, wherein the user interface is characterised in, that if the object is raised from any first position on said touch sensitive area and then replaced on any second position on said touch sensitive area, said list navigation can be continued from said second position.

Atty. Docket No. NEONODE.P004          -4-

**12.** (previously presented)      The computer readable medium of claim **1**, wherein the user interface is characterised in, that an active application, function, service or setting is advanced one step by gliding the object along the touch sensitive area from left to right, and that the active application, function, service or setting is closed or backed one step by gliding the object along the touch sensitive area from right to left.

**13.** (currently amended)      The computer readable medium of claim **1**, wherein the user interface is characterised in, that said representations representation of said at least one function [[are]] is located at the bottom of said touch sensitive area.

**14.** (previously presented)      The computer readable medium of claim **1**, wherein the touch sensitive area is 2-3 inches in diagonal dimension.

**15.** (previously presented)      An enclosure adapted to cover the mobile handheld computer unit according to Claim **1**, characterised in, that said enclosure is provided with an opening for said touch sensitive area.

**16.** (previously presented)      The enclosure according to Claim **15**, characterised in, that said enclosure is removable and exchangeable.

**17.** (cancelled)

**18.** (previously presented)      The computer readable medium of claim **1**, characterised in, that said computer program code is adapted to function as a shell upon an operating system.

**19.** – **47.** (cancelled)

Please add the following new claims.

**48.** (new)          The computer readable medium of claim **1**, wherein the representation is finger-sized.

**49.** (new)          The computer readable medium of claim **1**, wherein the location where the representation is provided does not provide touch functionality for a different function.

## REMARKS

Applicant has carefully studied the outstanding Office Action.  The present amendment is intended to place the application in condition for allowance and is believed to overcome all of the objections and rejections made by the Examiner.  Favorable reconsideration and allowance of the application are respectfully requested.

Applicant has amended claim **1**, **2**, **4**, **6** and **13** and added new claims **48** and **49** to properly claim the present invention.  No new matter has been introduced.  Support for the new and amended claims is provided hereinbelow.  Claims **1** – **16**, **18**, **48** and **49** are presented for examination.

In Paragraphs 2 and 3 of the Office Action, the Examiner has rejected claim **1** under 35 U.S.C. §103(a) as being unpatentable over Nakajima et al., U.S. Patent No. 6,346,935 ("Nakajima") in view of Hoshino et al., U.S. Publ. No. 2004/0021643 ("Hoshino") in view of Hirshberg, U.S. Publ. No. 2002/0027549 ("Hirshberg").

In Paragraph 4 of the Office Action, the Examiner has rejected claims **2** – **11**, **14** – **16** and **18** under 35 U.S.C. §103(a) as being unpatentable over Nakajima and Hoshino in view of Hirshberg in view of Pogue, Palm Pilot: The Ultimate Guide, 2nd Edition ("Pogue").

In Paragraph 5 of the Office Action, the Examiner has rejected claims **12** and **13** under 35 U.S.C. §103(a) as being unpatentable over Nakajima in view of Pogue, in view of Hoshino, in view of Hirshberg, in view of O'Rourke, US Patent No. 7,225,408 ("O'Rourke").

## Brief Discussion of Prior Art

Nakajima, Rogue and O'Rourke are discussed in applicant's response filed on July 13, 2009. Hoshino is discussed in applicant's response filed on February 22, 2010.

Hirshberg describes a touch screen user interface for a compact multi-functional keypad that is operated using a finger. Hirshberg addresses the problem of how to provide the 40 – 60 different keys required for a full alphanumeric keypad on a small surface that cannot reasonably accommodate so many keys (Hirschberg/ par. [0050]). Hirshberg describes grouping several characters (typically 4 – 6 characters) in a single key. As such, the number of required keys is reduced, and can fit in the available display area on a handheld device (Hirshberg/ par. [0051]).

To enter a character, a user first touches a key representing several characters, and then drags his finger in a specific direction to select one of the several characters. Thus, at par. [0055], Hirshberg recites:

> In multi-function key [sic] the first touch on the key activate [sic] the key and the relative trace … is selecting the appropriate function among the functions associated with the selected key.

## Response to Examiner's Arguments

In rejecting independent claim **1** in Paragraph 3 of the Office Action, the Examiner has cited par. [0031] of Hirshberg as teaching a multi-step operation comprising an object touching a corresponding location and then the object gliding along the touch sensitive area away from the touched location.

Applicant respectfully submits that Hirshberg teaches a touch and glide operation only for keys that comprise several characters.

On the contrary, for single character keys Hirshberg teaches using a
conventional touch operation without a glide (Hirshberg/ pars. [0055] and
[0074]).  Thus, at par. [0055], Hirshberg recites:

> In the case of one function a regular touch operation activate
> [sic] the function.

Further, at par. [0074], Hirshberg recites:

> … a single-function mode wherein a single function is elected on
> contact with a given key, independent of the direction of motion.

In distinction, the claimed invention uses a multi-step touch-and-glide
operation for representations that consist of only one option for activating
a function.

In order to further distinguish the claimed invention
over Hirshberg, applicant has amended claim **1** to include the limitation
that the representation of the function consists of only one option for
activating the function.

The rejections of the claims **1** – **16** and **18** in
paragraphs 2 - 5 of the Office Action will now be dealt with specifically.

As to amended independent claim **1** for a computer
readable medium, applicant respectfully submits, as indicated
hereinabove, that the limitation in claim **1** of

"*wherein the representation* **consists of only one
option for activating the function** *and wherein the function is activated
by* **a multi-step operation** *comprising (i) an object* **touching** *the touch
sensitive area at a location where the representation is provided and then
(ii) the object* **gliding along the touch sensitive area away from the
touched location**"

is neither shown nor suggested in Nakajima, Hoshino, Hirshberg, Pogue
or O'Rourke.

Because claims **2** – **16**, **18**, **48** and **49** depend from claim **1** and include additional features, applicant respectfully submits that claims **2** – **16**, **18**, **48** and **49** are not anticipated or rendered obvious by Nakajima, Hoshino, Hirshberg, Pogue, O'Rourke, or a combination of Nakajima, Hoshino, Hirshberg, Pogue and O'Rourke.

Accordingly claims **1**, **2** – **16**, **18**, **48** and **49** are deemed to be allowable.

## **Support for New and Amended Claims in Original Specification**

Independent claim **1** for a computer readable medium has been amended to include the limitation of a representation consisting of only one option for activating a function.  This limitation is supported in the original specification at least by the Abstract, by representations 21 – 23 of FIG. 1, by FIG. 2 and its description at pars. [0045] – [0047] and by par. [0068].

Applicant notes that each representation 21 – 23, shown in FIG. 1 of the original specification, consists of only one option for activating its corresponding function.  Indeed, element 21 consists of the one option of displaying icons as appropriate for a currently active application, as described at par. [0048] and shown in FIG. 3 of the original specification.  Element 22 consists of the one option of opening a keypad and text window, as described at par. [0052] and shown in FIG. 5 of the original specification.  Element 23 consists of the one option of opening a list of computer system applications and files, as described at par. [0058] and shown in FIG. 6 of the original specification.  Moreover, each of these one-option elements is activated by a multi-step touch-and-glide operation, as described at pars. [0016] and [0047] of the original specification.

New dependent claim **48** includes the limitation that the representation of the function is finger-sized.  This limitation is supported in the original specification at least at par. [0047] and FIG. 2, which shows that a representation 21, 22 or 23 is activated by a user's thumb; and at FIG. 5, which shows that representations 21, 22 and 23 are approximately the same size as the numeral keys of keyboard 221.

New dependent claim **49** includes the limitation that the location where the representation is provided does not provide touch functionality for a different function.  This limitation is supported in the original specification at least at FIG. 1, which shows that the locations of the representations 21, 22, 23 are non-overlapping.

For the foregoing reasons, applicant respectfully submits that the applicable objections and rejections have been overcome and that the claims are in condition for allowance.

If any matters can be resolved by telephone, applicant requests that the Patent and Trademark Office please contact the applicant at the telephone number listed below.

Respectfully submitted,

Dated: June 30, 2010

/Marc A. Berger/
Marc A. Berger
Reg. No. 44,029

P.O. Box 691
Soquel, CA   95073
(831) 426-8200

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10315250 |
| **Filing Date:** | 10-Dec-2002 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus Goertz |
| **Filer:** | Marc Aron Berger |
| **Attorney Docket Number:** | NEONODE.P004 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Request for continued examination | 1801 | 1 | 810 | 810 |
| **Total in USD ($)** | | | | **810** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 7922718 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 30-JUN-2010 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 10:48:58 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $810 |
| RAM confirmation Number | 20811 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | Request for Continued Examination (RCE) | NEONODEP004RCE_06-30-2010.pdf | 767940<br>a8f96a89a04f24517d988b5bd4362e13368cf08c | no | 3 |

**Warnings:**

**Information:**

| 2 | | NEONODEP004Amendment_06-30-2010.pdf | 84752<br>2e7240a4650f4127041d01fdad89d9af9ffdc513 | yes | 11 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 6 |
| Applicant Arguments/Remarks Made in an Amendment | 7 | 11 |

**Warnings:**

**Information:**

| 3 | Fee Worksheet (PTO-875) | fee-info.pdf | 29863<br>1385dd50828cd3accc63ccea08dfc0e4899ce2e6 | no | 2 |

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | 882555 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 10/315,250 | Filing Date 12/10/2002 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

| | | | SMALL ENTITY ☒ | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | OR |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | | | | SMALL ENTITY | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|---|---|

| AMENDMENT | 06/30/2010 | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 19 | Minus ** 47 | = 0 | X $26 = | 0 | X $ = | OR |
| | Independent (37 CFR 1.16(h)) | * 1 | Minus ***8 | = 0 | X $110 = | 0 | X $ = | OR |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | |
| | | | | | TOTAL ADD'L FEE | 0 | TOTAL ADD'L FEE | OR |

| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | X $ = | OR |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | X $ = | OR |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | |
| | | | | | TOTAL ADD'L FEE | | TOTAL ADD'L FEE | OR |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/EFREM WARREN/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

75660          7590          05/28/2010
Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

| EXAMINER |
|---|
| PITARO, RYAN F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2174 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/28/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/315,250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** | |
| | RYAN F. PITARO | 2174 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>22 February 2010</u>.

2a)☒ This action is **FINAL**.       2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-16 and 18</u> is/are pending in the application.

   4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-16 and 18</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All   b)☐ Some * c)☐ None of:

   1.☐ Certified copies of the priority documents have been received.

   2.☐ Certified copies of the priority documents have been received in Application No. _____.

   3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date <u>3/16/2010</u>.

4)☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____.
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

Application/Control Number: 10/315,250                                        Page 2
Art Unit: 2174

### Response to Amendment

1.      This action is in response to the amendment filed 2/22/2010. This action is final.

### Claim Rejections - 35 USC § 103

2.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

3.      Claim 1 is rejected under 35 U.S.C. 103(a) as being unpatentable over Nakajima

et al ("Nakajima", 6,346,935) in view of Hoshino et al ("Hoshino", US 20040021643) in

view of Hirshberg ("Hirshberg", US 2002/0027549).


        As per claim 1, Nakajima teaches a computer readable medium storing a

computer program with computer program code, which, when read by a mobile

handheld computer unit, allows the computer to present a user interface for the mobile

handheld computer unit, the user interface comprising: a touch sensitive area in which

representations of a plurality of functions are displayed (Column 15 lines 1-9, *function

signs*), and each function of said plurality of functions being mapped to a corresponding

location in the touch sensitive area at which the representation of the function is

displayed (Column 15 lines 1-9, *stops moving finger*). Nakajima teaches gliding over the

Application/Control Number: 10/315,250                                    Page 3
Art Unit: 2174

icon Column 15 lines 1-15, *stops moving finger then glides finger to lightly press surface* but fails to distinctly point out touching the icon and gliding away. However, Hoshino teaches an icon being activated by an object touching the corresponding location and then gliding along the touch sensitive area away from the location ([0092]-[0093], drag and drop operation may be used in combination with a push in operation for activating a function). Therefore it would have been obvious at the time of the invention to combine the teaching of Hoshino with the medium of Nakajima. Motivation to do so would have been to apply a known technique to a known system in order to yield advantageous and predictable results.

Nakajima-Hoshino fails to distinctly point out an object touching a location then the object gliding along the area away from the location to activate a function. However, Hirshberg teaches a multi-step operation comprising an object touching the corresponding location and then the object gliding along the touch sensitive area away from the touched location ([0031]).

Therefore it would have been obvious to an artisan at the time of the invention to combine the teaching of Hirshberg with the medium of Nakajima-Hoshino.

Motivation to do so would have been to provide a compact multifunctional keypad which would not require great precision of use and which could be conveniently and effectively operated by use of the finger.

4.      Claims 2-11,14-16,18 rejected under 35 U.S.C. 103(a) as being unpatentable

over Nakajima et al ("Nakajima", 6,346,935) and Hoshino et al ("Hoshino", US

20040021643) in view of Hirshberg ("Hirshberg", US 2002/0027549) in view of Rogue

("Rogue", Palm Pilot: The Ultimate Guide, 2nd Edition).


        As per claim 2, Nakajima-Hoshino-Hirshberg fails to particularly disclose a

function to display a plurality of functions. However, Rogue teaches a computer

readable medium of claim 1, wherein one function from the plurality of functions, when

activated, causes the user interface to display icons representing different services or

settings for a currently active application (Figure 1.2-1.3, *Preferences* ).Therefore it

would have been obvious to an artisan at the time of the invention to combine the

teaching of Rogue with the medium of Nakajima. Motivation to do so would have been

to provide a way to reduce screen clutter and only access the applications when

needed.


        As per claim 3, Nakajima-Hoshino-Hirshberg-Rogue teaches a computer

readable medium of claim 2, wherein the user interface is characterised in, that a

selection of a preferred service or setting is done by tapping on a display icon

corresponding to the preferred service or setting (Nakajima, Column 18 lines 30-40,

tap).

Application/Control Number: 10/315,250                                    Page 5
Art Unit: 2174

As per claim 4, Nakajima-Hoshino-Hirshberg-Rogue teaches a computer readable medium of claim 1, wherein one function from the plurality of functions, when activated, causes the user interface to display a keyboard and a text field (Rogue, Figure 2.5, power stroke up, Figure 2.6).

As per claim 5, Nakajima-Hoshino-Hirshberg-Rogue teaches a wherein said text field is used for inputting and editing of text through said keyboard (Nakajima, Figure 2.6).

As per claim 6, Nakajima-Hoshino-Hirshberg-Rogue fails to teach a computer readable medium of claim 1, OFFICIAL NOTICE is taken that file listing is well know in the art. It is extremely common to see a list of functions and files listed, as in directories. Therefore it would have been obvious to an artisan at the time of the invention to combine the teaching with the medium of Nakajima-Hoshino -Rogue. Motivation to do so would have been to provide a user with a list of options.

As per claim 7, Nakajima-Hoshino-Hirshberg-Rogue teaches a computer readable medium of claim 6, wherein the user interface is characterised in, that a selection of an application or file is done by gliding the object along said touch sensitive area so that a representation of a desired one of said application or file is highlighted,

Application/Control Number: 10/315,250                                    Page 6
Art Unit: 2174

raising said object from said touch sensitive area, and then tapping on said touch

sensitive area (Nakajima, Column 18 lines 40-56).


As per claim 8, Nakajima-Hoshino-Hirshberg-Rogue fails to teach presenting only

files or only applications. However OFFICIAL NOTICE is taken that file sorting is well

know in the art. It is extremely common to sort a list of functions and files listed by data

type. Therefore it would have been obvious to an artisan at the time of the invention to

combine the teaching with the medium of Nakajima-Rogue. Motivation to do so would

have been to provide a user with a specific list of filtered options.


As per claim 9, Nakajima-Hoshino-Hirshberg-Rogue teaches a computer

readable medium of claim 7, wherein the user interface is characterised in, that, one

item in said list is highlighted by a moveable marking, and gliding the object along the

touch sensitive area in a direction towards the top of said list or towards the bottom of

said list, causes said marking to move in the same direction without scrolling the list

(Rogue, Figure 1.4, using the menu).


As per claim 10, Nakajima-Hoshino-Hirshberg-Rogue teaches a computer

readable medium of claim 9, wherein the user interface is characterised in, that, if the

number of applications or files in said list exceeds the number of applications or files

that can be presented on said touch sensitive area as content, and if the object is (i)

glided along said touch sensitive area to the top or bottom position of said touch

sensitive area, then (ii) raised above said touch sensitive area, then (iii) replaced on

said touch sensitive area, and then (iv) again glided along said touch sensitive area to

the top or bottom of said touch sensitive area, said list navigation pages the content of

said list up or down one whole page (Nakajima, Column 14 lines 45-57 and Column 2

lines 15-23, wherein Nakajima is an absolute pointing device and a swipe from the top

of the page to the bottom will result in a refresh by a whole page ).


    As per claim 11, Nakajima-Hoshino-Hirshberg-Rogue teaches a computer

readable medium of claim 10, wherein the user interface is characterised in, that if the

object is raised from any first position on said touch sensitive area and then replaced on

any second position on said touch sensitive area, said navigation can be continued from

said second position (Nakajima, Column 14 lines 45-57).


    As per claim 14, while Nakajima-Hoshino-Hirshberg-Rogue fails to teach a touch

sensitive area is 2-3 inches. OFFICIAL NOTICE is taken that screen sizes vary and

screens with a touch sensitive area of 2-3 inches diagonally is well known in the art.

Therefore it would have been obvious to an artisan at the time of the invention to

combine the screen size with the medium of Nakajima-Hoshino -Rogue. Motivation to

do so would have been to provide adequate size to operate the touch screen while

keeping it small enough to fit in a pocket.

Application/Control Number: 10/315,250                                    Page 8
Art Unit: 2174

As per claim 15, Nakajima-Hoshino-Hirshberg-Rogue teaches a enclosure adapted to cover the mobile handheld computer unit according to Claim 1, characterised in, that said enclosure is provided with an opening for said touch sensitive area (Rogue, Figure 1.1).

As per claim 16, Nakajima-Hoshino-Hirshberg-Rogue fails to teach an enclosure is removable and exchangeable. OFFICIAL NOTICE is taken that an enclosure is removable and exchangeable is well known in the art. Therefore it would have been obvious to an artisan at the time of the invention to combine the exchangeable enclosure with the medium of Nakajima-Rogue. Motivation to do so would have been to provide a way to style your mobile device so that it can be personalized to a user's taste.

As per claim 18, Nakajima-Hoshino-Hirshberg-Rogue teaches a computer readable medium according to Claim 1, characterised in, that said computer program product is adapted to function as a shell upon an operations system (Rogue, 1.1 Palm Pilot Basics).

Application/Control Number: 10/315,250                                        Page 9
Art Unit: 2174

5.      Claims 12 and 13 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Nakajima et al ("Nakajima", 6,346,935) in view of Rogue ("Rogue", Palm Pilot: The

Ultimate Guide, 2nd Edition), Hoshino et al ("Hoshino", US 20040021643) and Hirshberg

("Hirshberg", US 2002/0027549) in view of O'Rourke (O'Rourke, US 7,225,408).

        As per claim 12, Nakajima-Hoshino-Hirshberg-Rogue teaches a computer

readable medium of claim 1, wherein the user interface is characterized in, that an

active application, function, service or setting is moved on one step by gliding the object

along the touch sensitive area from left to right (Nakajima, Column 14 lines 45-57).

However, Nakajima-Hoshino-Hirshberg-Rogue t fails to distinctly point out closing or

backing one step. However, O'Rourke teaches that the active application, function,

service or setting is closed or backed one step (Figure 13, right and left arrows).

Therefore it would have been obvious to an artisan at the time of the invention to

combine the glide functionality with the forward and backward functionality of O'Rourke.

Motivation to do so would have been to provide an easy way to traverse the GUI.

Application/Control Number: 10/315,250                                             Page 10
Art Unit: 2174

As per claim 13, Nakajima-Hoshino-Hirshberg-Rogue t-O'Rourke teaches a

computer readable medium of claim 1, wherein the user interface is characterized in,

that said representations of said plurality of functions are located at the bottom of said

touch sensitive area (O'Rourke, Figure 13, icons at bottom right) .

### Response to Arguments

Applicant's arguments with respect to claims 1-16,18 have been considered but

are moot in view of the new ground(s) of rejection.

The Examiner notes that the factual assertions set forth under OFFICIAL

NOTICE in the previous office action have not been contested.

### Conclusion

Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

Application/Control Number: 10/315,250                              Page 11
Art Unit: 2174

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.


Any inquiry concerning this communication or earlier communications from the

examiner should be directed to RYAN F. PITARO whose telephone number is

(571)272-4071.  The examiner can normally be reached on 9:00am - 5:30pm Mondays

through Fridays.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Dennis Chow can be reached on 571-272-7767.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Case 6:20-cv-00507-ADA   Document 81-7   Filed 05/19/23   Page 228 of 745

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Ryan F Pitaro/
Examiner, Art Unit 2174

| Notice of References Cited | Application/Control No.<br>10/315,250 | Applicant(s)/Patent Under Reexamination<br>GOERTZ, MAGNUS | |
|---|---|---|---|
| | Examiner<br>RYAN F. PITARO | Art Unit<br>2174 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2002/0027549 | 03-2002 | Hirshberg, David | 345/168 |
| * | B | US-7,159,763 | 01-2007 | Yap et al. | 235/375 |
| * | C | US-7,006,077 | 02-2006 | Uusimaki, Matti | 345/173 |
| * | D | US-6,597,345 | 07-2003 | Hirshberg, David | 345/168 |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN  PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

| ✓ | **Rejected** | | - | **Cancelled** | | N | **Non-Elected** | | A | **Appeal** |
|---|---|---|---|---|---|---|---|---|---|---|
| = | **Allowed** | | ÷ | **Restricted** | | I | **Interference** | | O | **Objected** |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | 12/21/2008 | 07/06/2009 | 11/20/2009 | 05/23/2010 | | | |
| | 1 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 2 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 3 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 4 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 5 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 7 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 8 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 9 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 10 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 11 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 12 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 14 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 15 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 16 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 17 | ✓ | ✓ | ✓ | - | - | - | | | |
| | 18 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 19 | | ÷ | N | - | | | | | |
| | 20 | | ÷ | N | - | | | | | |
| | 21 | | ÷ | N | - | | | | | |
| | 22 | | ÷ | N | - | | | | | |
| | 23 | | ÷ | N | - | | | | | |
| | 24 | | ÷ | N | - | | | | | |
| | 25 | | ÷ | N | - | | | | | |
| | 26 | | ÷ | N | - | | | | | |
| | 27 | | ÷ | N | - | | | | | |
| | 28 | | ÷ | N | - | | | | | |
| | 29 | | ÷ | N | - | | | | | |
| | 30 | | ÷ | N | - | | | | | |
| | 31 | | ÷ | N | - | | | | | |
| | 32 | | ÷ | N | - | | | | | |
| | 33 | | ÷ | N | - | | | | | |
| | 34 | | ÷ | N | - | | | | | |
| | 35 | | ÷ | N | - | | | | | |
| | 36 | | ÷ | N | - | | | | | |

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ***Index of Claims*** | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

| ✓ | **Rejected** | | - | **Cancelled** | | N | **Non-Elected** | | A | **Appeal** |
|---|---|---|---|---|---|---|---|---|---|---|
| = | **Allowed** | | ÷ | **Restricted** | | I | **Interference** | | O | **Objected** |

☐ **Claims renumbered in the same order as presented by applicant**    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | 12/21/2008 | 07/06/2009 | 11/20/2009 | 05/23/2010 | | | |
| | 37 | | ÷ | N | - | | | | | |
| | 38 | | ÷ | N | - | | | | | |
| | 39 | | ÷ | N | - | | | | | |
| | 40 | | ÷ | N | - | | | | | |
| | 41 | | ÷ | N | - | | | | | |
| | 42 | | ÷ | N | - | | | | | |
| | 43 | | ÷ | N | - | | | | | |
| | 44 | | ÷ | N | - | | | | | |
| | 45 | | ÷ | N | - | | | | | |
| | 46 | | ÷ | N | - | | | | | |
| | 47 | | ÷ | N | - | | | | | |
| | 48 | | | | | | | | | |
| | 49 | | | | | | | | | |
| | 50 | | | | | | | | | |
| | 51 | | | | | | | | | |
| | 52 | | | | | | | | | |
| | 53 | | | | | | | | | |
| | 54 | | | | | | | | | |
| | 55 | | | | | | | | | |
| | 56 | | | | | | | | | |
| | 57 | | | | | | | | | |
| | 58 | | | | | | | | | |
| | 59 | | | | | | | | | |
| | 60 | | | | | | | | | |
| | 61 | | | | | | | | | |
| | 62 | | | | | | | | | |
| | 63 | | | | | | | | | |
| | 64 | | | | | | | | | |
| | 65 | | | | | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

| SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| Update | Search | 11/8/2007 | RFP |
| Update | Search | 6/17/2008 | RFP |
| Update | Search | 12/21/2008 | RFP |
| Update | Search | 4/22/2009 | RFP |
| Update | Search | 11/20/2009 | RFP |
| Update | Search | 5/22/2010 | RFP |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Update Search | 11/8/2007 | RFP |
| Update Search | 6/17/2008 | RFP |
| EAST | 12/21/2008 | RFP |
| Internet | 12/21/2008 | RFP |
| Safari Online Books | 12/21/2008 | RFP |
| IEEE | 12/21/2008 | RFP |
| ACM | 12/21/2008 | RFP |
| Update Search | 4/22/2009 | RFP |
| Update Search | 11/20/2009 | RFP |
| Update Search | 5/22/2010 | RFP |
| Internet Search | 5/22/2010 | RFP |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 10315250 |
| --- | --- | --- |
| | Filing Date | 2002-12-10 |
| | First Named Inventor | Magnus Goertz |
| | Art Unit | 2174 |
| | Examiner Name | Ryan F. Pitaro |
| | Attorney Docket Number | NEONODE.P004 |

## U.S.PATENTS                                        Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| --- | --- | --- | --- | --- | --- | --- |
| /R.P./ | 1 | 6639584 | B1 | 2003-10-28 | Li | |

If you wish to add additional U.S. Patent citation information please click the Add button.   Add

## U.S.PATENT APPLICATION PUBLICATIONS                 Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| --- | --- | --- | --- | --- | --- | --- |
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.   Add

## FOREIGN PATENT DOCUMENTS                            Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button   Add

## NON-PATENT LITERATURE DOCUMENTS                     Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
| --- | --- | --- | --- |

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 10315250 |
|---|---|---|
| | Filing Date | 2002-12-10 |
| | First Named Inventor | Magnus Goertz |
| | Art Unit | 2174 |
| | Examiner Name | Ryan F. Pitaro |
| | Attorney Docket  Number | NEONODE.P004 |

| | 1 | | | ☐ |
|---|---|---|---|---|

If you wish to add additional non-patent literature document citation information please click the Add button | Add |

### EXAMINER SIGNATURE

| Examiner Signature | /Ryan Pitaro/ | Date Considered | 05/26/2010 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 10315250 |
| Filing Date | 2002-12-10 |
| First Named Inventor | Magnus Goertz |
| Art Unit | 2174 |
| Examiner Name | Ryan F. Pitaro |
| Attorney Docket Number | NEONODE.P004 |

## U.S.PATENTS    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 6639584 | B1 | 2003-10-28 | Li | |

If you wish to add additional U.S. Patent citation information please click the Add button.    Add

## U.S.PATENT APPLICATION PUBLICATIONS    Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.    Add

## FOREIGN PATENT DOCUMENTS    Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button    Add

## NON-PATENT LITERATURE DOCUMENTS    Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | 10315250 |
| | Filing Date | 2002-12-10 |
| | First Named Inventor | Magnus Goertz |
| | Art Unit | 2174 |
| | Examiner Name | Ryan F. Pitaro |
| | Attorney Docket Number | NEONODE.P004 |

| | 1 | | ☐ |
|---|---|---|---|

If you wish to add additional non-patent literature document citation information please click the Add button [ Add ]

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

\*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | |

| Application Number | 10315250 |
|---|---|
| Filing Date | 2002-12-10 |
| First Named Inventor | Magnus Goertz |
| Art Unit | 2174 |
| Examiner Name | Ryan F. Pitaro |
| Attorney Docket Number | NEONODE.P004 |

---

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☒ Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☐ None

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Marc A. Berger/ | Date (YYYY-MM-DD) | 2010-03-16 |
|---|---|---|---|
| Name/Print | Marc A. Berger | Registration Number | 44029 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.17

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

## Electronic Patent Application Fee Transmittal

| Application Number: | 10315250 |
|---|---|
| Filing Date: | 10-Dec-2002 |
| Title of Invention: | User interface |
| First Named Inventor/Applicant Name: | Magnus Goertz |
| Filer: | Marc Aron Berger |
| Attorney Docket Number: | NEONODE.P004 |

Filed as Large Entity

### Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Submission- Information Disclosure Stmt | 1806 | 1 | 180 | 180 |
| **Total in USD ($)** | | | | **180** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 7214152 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 16-MAR-2010 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 04:13:59 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $180 |
| RAM confirmation Number | 6843 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | Information Disclosure Statement (IDS) Filed (SB/08) | NEONODE_P004_IDS_16_Mar_2010.pdf | 761106 | no | 4 |
| | | | 40d3136259bd610cc05316378f2dabf285517753 | | |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 29923 | no | 2 |
| | | | 4a61a932625757780ec6f2f947c93e7dc09a3251 | | |

**Warnings:**

**Information:**

| **Total Files Size (in bytes):** | 791029 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Attorney's Docket No.: <u>NEONODE.P004</u>     *PATENT*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Patent Application of:          )

                                      )     Examiner:  Ryan F. Pitaro

          Magnus Goertz              )

                                      )     Art Unit:   2174

Application No: 10/315,250           )

                                      )

Filed:     December 10, 2002         )

                                      )

For:      USER INTERFACE FOR        )
          MOBILE HANDHELD           )
          COMPUTER UNIT              )

                                      )

Mail Stop AMENDMENT
Commissioner for Patents
P. O. Box 1450
Alexandria, VA   22313-1450

## AMENDMENT AND RESPONSE TO OFFICE ACTION

## UNDER 37 C.F.R. §1.111

Sir:

          In response to the Office Action dated November 24,

2009, applicant respectfully requests that the remarks below be taken

into consideration.

IN THE CLAIMS:

Please substitute the following claims for the pending claims with the same number:

**1.** (currently amended)        A computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:

a touch sensitive area in which representations of at least one function are displayed, and each function of said at least one function being mapped to a corresponding location in the touch sensitive area at which the representation of the function is displayed, and being activated by a multi-step operation comprising (i) an object touching the corresponding location and then (ii) the object gliding along the touch sensitive area away from the touched location.

**2.** (previously presented)        The computer readable medium of claim **1**, wherein one function from the at least one function, when activated, causes the user interface to display icons representing different services or settings for a currently active application.

**3.** (previously presented)        The computer readable medium of claim **2**, wherein the user interface is characterised in, that a selection of a preferred service or setting is done by tapping on a display icon corresponding to the preferred service or setting.

**4.** (previously presented)        The computer readable medium of claim **1**, wherein one function from at least one function, when activated, causes the user interface to display a keyboard and a text field.

**5.** (previously presented)        The computer readable medium of claim **4**, wherein said text field is used for inputting and editing of text through said keyboard.

**6.** (previously presented)        The computer readable medium of claim **1**, wherein one function from the at least one function, when activated, causes the user interface to display a list with a library of available applications and files on the mobile handheld computer unit.

**7.** (previously presented)        The computer readable medium of claim **6**, wherein the user interface is characterised in, that a selection of an application or file is done by gliding the object along said touch sensitive area so that a representation of a desired one of said application or file is highlighted, raising said object from said touch sensitive area, and then tapping on said touch sensitive area.

**8.** (previously presented)        The computer readable medium of claim **7**, wherein the user interface is characterised in, that at any given time said list presents only files or only applications, and that an area of said list presents a field through which said list can be changed from presenting files to presenting applications, or from presenting applications to presenting files.

**9.** (previously presented) The computer readable medium of claim **7**, wherein the user interface is characterised in, that, one item in said list is highlighted by a moveable marking, and the user interface enables list navigation whereby gliding the object along the touch sensitive area in a direction towards the top of said list or towards the bottom of said list causes said marking to move in the same direction without scrolling the list.

**10.** (previously presented) The computer readable medium of claim **9**, wherein the user interface is characterised in, that, if the number of applications or files in said list exceeds the number of applications or files that can be presented on said touch sensitive area as content, and if the object is (i) glided along said touch sensitive area to the top or bottom of said touch sensitive area, then (ii) raised above said touch sensitive area, then (iii) replaced on said touch sensitive area, and then (iv) again glided along said touch sensitive area to the top or bottom of said touch sensitive area, said list navigation pages the content of said list up or down by one whole page.

**11.** (previously presented) The computer readable medium of claim **10**, wherein the user interface is characterised in, that if the object is raised from any first position on said touch sensitive area and then replaced on any second position on said touch sensitive area, said list navigation can be continued from said second position.

**12.** (previously presented) The computer readable medium of claim **1**, wherein the user interface is characterised in, that an active application, function, service or setting is advanced one step by gliding the object

along the touch sensitive area from left to right, and that the active application, function, service or setting is closed or backed one step by gliding the object along the touch sensitive area from right to left.

**13.** (previously presented)  The computer readable medium of claim **1**, wherein the user interface is characterised in, that said representations of said at least one function are located at the bottom of said touch sensitive area.

**14.** (previously presented)  The computer readable medium of claim **1**, wherein the touch sensitive area is 2-3 inches in diagonal dimension.

**15.** (previously presented)  An enclosure adapted to cover the mobile handheld computer unit according to Claim **1**, characterised in, that said enclosure is provided with an opening for said touch sensitive area.

**16.** (previously presented)  The enclosure according to Claim **15**, characterised in, that said enclosure is removable and exchangeable.

**17.** (cancelled)

**18.** (previously presented)  The computer readable medium of claim **1**, characterised in, that said computer program code is adapted to function as a shell upon an operating system.

**19.** – **47.** (cancelled)

## REMARKS

Applicant expresses appreciation to the Examiner for the courtesy of an interview granted to applicant's representative Marc A. Berger (Reg. No. 44,029) and to Yossi Shain. The interview was held by telephone on Monday, February 22, 2010. The substance of the interview concerned the amendments to claim **1**.

Applicant has carefully studied the outstanding Office Action. The present amendment is intended to place the application in condition for allowance and is believed to overcome all of the objections and rejections made by the Examiner. Favorable reconsideration and allowance of the application are respectfully requested.

Applicant has amended claim **1** to properly claim the present invention. No new matter has been introduced. Claims **1** – **16** and **18** are presented for examination.

In Paragraphs 2 and 3 of the Office Action, the Examiner has rejected claim **1** under 35 U.S.C. §103(a) as being unpatentable over Nakajima et al., U.S. Patent No. 6,346,935 ("Nakajima") in view of Hoshino et al., U.S. Publ. No. 2004/0021643 ("Hoshino").

In Paragraph 4 of the Office Action, the Examiner has rejected claims **2** – **11**, **14** – **16** and **18** under 35 U.S.C. §103(a) as being unpatentable over Nakajima in view of Hoshino, and in view of Rogue, Palm Pilot: The Ultimate Guide, 2nd Edition ("Rogue").

In Paragraph 5 of the Office Action, the Examiner has rejected claims **12** and **13** under 35 U.S.C. §103(a) as being unpatentable over Nakajima in view of Rogue, in view of Hoshino, and in view of O'Rourke, US Patent No. 7,225,408 ("O'Rourke").

## Brief Discussion of Prior Art

Nakajima, Rogue and O'Rourke are discussed in applicant's response filed on July 13, 2009.

Hoshino describes a touch screen user interface with two distinct user operations; namely, (1) touch, and (2) drag. Since a drag operation begins with an initial touch, in order to distinguish between these operations (1) and (2), it is necessary to discriminate between a touch operation and the initial touch of a drag operation. To do so, Hoshino uses a pressure sensor, in addition to a touch sensor. The pressure sensor discriminates between three states; namely, (a) no touch, (b) a light touch, and (c) a hard touch, corresponding to respective pressure levels 0, P1 and P2 (Hoshino/ pars. 10, 57, 79 – 81, 91 and 92; step 103 of FIG. 7, step 205 of FIG. 12, step 305 of FIG. 15, step 406 of FIG. 18 and step 506 of FIG. 21).

Hoshino associates a drag operation with a soft initial touch, and associates a touch operation with a hard touch. Hoshino is thereby able to discriminate between a touch operation and the initial touch of a drag operation. Hoshino activates a function in response to a hard touch, but does not activate a function in response to a soft touch.

## Response to Examiner's Arguments

In rejecting independent claim **1** in Paragraph 3 of the Office Action, the Examiner has cited pars. 92 and 93 of Hoshino as teaching a function being activated in response to an object touching a corresponding location and then gliding along the touch sensitive area away from the location. Applicant respectfully submits that, unlike the claimed invention, Hoshino activates the function solely in response to a

push-in operation; i.e., a hard touch, and not in response to a drag operation.  Indeed, at par. 92 Hoshino recites

> When P >= P2, an operation for activating the function may be performed in a manner similar to steps 104 – 107 in FIG. 7.

Applicant notes that in FIG. 7, from step 100 (START) through step 107, function activation occurs solely in response to a hard touch on an associated icon, irrespective of whether or not a drag is performed.

In distinction, the claimed invention activates a function in response to a multi-step touch-and-glide operation.  Thus in particular, referring to the illustration below, the claimed invention responds to a (hard) touch followed by a glide differently than Hoshino.  Specifically, the claimed invention activates a function after the glide, whereas Hoshino activates the function after the (hard) touch.



Function activation operation of claimed invention vs. that of Hoshino

The table below summarizes some of the salient distinctions between the claimed invention and Hoshino.

| Some distinctions between claimed invention and Hoshino | | |
|---|---|---|
| | **Claimed invention** | **Hoshino** |
| **Objective** | Novel touch-and-glide user interface operation | Discriminate between two conventional operations; namely, (1) touch, and (2) drag-and-drop |
| **Hardware** | Touch screen | Touch screen with pressure sensor |
| **Function Activation** | In response to both steps of a multi-step operation; namely, (1) touch, followed by (2) a glide | In response to hard touch |

In order to further distinguish the claimed invention over the prior art, applicant has amended claim **1** to include the limitation of a multi-step operation comprising (1) a touch, followed by (2) a glide away from the touched position.

The rejections of the claims **1** – **16** and **18** in paragraphs 2 - 5 of the Office Action will now be dealt with specifically.

As to amended independent claim **1** for a computer readable medium, applicant respectfully submits, as indicated hereinabove, that the limitation in claim **1** of

"*each function … being activated by a multi-step operation comprising (i) an object touching the corresponding location and then (ii) the object gliding along the touch sensitive area away from the touched location*"

is neither shown nor suggested in Nakajima, Hoshino, Rogue or O'Rourke.

In Paragraph 3 of the Office Action, the Examiner has indicated that it would have been obvious to combine the teaching of Hoshino with the medium of Nakajima. Applicant respectfully disagrees. Hoshino does not teach gliding a finger away from an icon. Instead, Hoshino teaches a drag-and-drop operation for moving an icon. In Nakajima the icons are either carve-outs in a frame surrounding a touch pad, or icons on an overlay of the touch pad. It is not possible to move the icons of Nakajima. As such, even the combination of Hoshino and Nakajima does not suggest the touch-and-glide operation of the claimed invention.

Moreover, for the sake of argument, even if one were somehow able to introduce the drag operation of Hoshino into Nakajima, the lack of a pressure sensor in Nakajima would cause Nakajima to activate a function upon the initial touch of the drag, and ignore the drag

altogether. In fact Hoshino, at pars. 7 – 9, teaches away from trying to support a drag-and-drop operation on a touch screen that does not have a pressure sensor.

The table below summarizes reasons why it is non-obvious to combine Nakajima and Hoshino.

| Some reasons why it is non-obvious to combine Nakajima with Hoshino | |
|---|---|
| **Nakajima** | **Hoshino** |
| Touch sensitive surface is opaque and static | Requires dynamic video display to animate drag-and-drop of icons |
| Icon is stationary (carve-out in frame surrounding screen, or on overlay sheet) | Requires software generated icon |
| Touch screen does not have pressure sensor | Requires pressure sensor. |

Because claims **2** – **16** and **18** depend from claim **1** and include additional features, applicant respectfully submits that claims **2** – **16** and **18** are not anticipated or rendered obvious by Nakajima, Hoshino, Rogue, O'Rourke, or a combination of Nakajima, Hoshino, Rogue and O'Rourke.

Accordingly claims **1** – **16** and **18** are deemed to be allowable.

## **Support for Amended Claims in Original Specification**

Independent claim **1** for a computer readable medium has been amended to include the limitation of a multi-step operation comprising (1) a touch, followed by (2) a glide. This limitation is supported in the original specification at least by the Abstract, by FIG. 2, where the arrow at A indicates a touch and the arrow at B indicates a glide, and by the description thereof at par. 47.

For the foregoing reasons, applicant respectfully submits that the applicable objections and rejections have been overcome and that the claims are in condition for allowance.

If any matters can be resolved by telephone, applicant requests that the Patent and Trademark Office please contact the applicant at the telephone number listed below.

Respectfully submitted,

Dated: February 22, 2010

/Marc A. Berger/
Marc A. Berger
Reg. No. 44,029

P.O. Box 691
Soquel, CA 95073
(831) 426-8200

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 7053773 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 22-FEB-2010 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 08:32:48 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment/Req. Reconsideration-After Non-Final Reject | NEONODEP004Amendment_02-22-2010.pdf | 98239 / 65a4aea7bebbefec6924c7b65b9e5010c56c21b2 | no | 11 |

| | |
|---|---|
| Warnings: | |
| Information: | |

Total Files Size (in bytes):                                          98239

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>10/315,250 | Filing Date<br>12/10/2002 | ☐ To be Mailed |
|---|---|---|---|

### APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) | SMALL ENTITY ☒ | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A |  | N/A |  |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A |  | N/A |  |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A |  | N/A |  |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | OR | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

|  |  | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | **02/22/2010** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 17 Minus | ** 47 | = 0 | X $26 = | 0 | OR X $ = | |
| | Independent (37 CFR 1.16(h)) | * 1 Minus | ***8 | = 0 | X $110 = | 0 | OR X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | **0** | OR TOTAL ADD'L FEE | |

|  |  | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | |
| | Total (37 CFR 1.16(i)) | * Minus | ** | = | X $ = | | OR X $ = | |
| | Independent (37 CFR 1.16(h)) | * Minus | *** | = | X $ = | | OR X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/DESHONNE T. MARTINO/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

| | |
|---|---|
| 75660          7590          11/24/2009 | EXAMINER |
| Soquel Group, LLC | PITARO, RYAN F |
| P.O. Box 691 | |
| Soquel, CA 95073 | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2174 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/24/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/315,250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** | |
| | RYAN F. PITARO | 2174 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>13 July 2009</u>.

2a)☐ This action is **FINAL**.     2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-16 and 18</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☐ Claim(s) <u>1-16,18</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 10/315,250                                       Page 2
Art Unit: 2174

### *Response to Amendment*

1.      This action is in response to the amendment filed 7/13/2009. This action is non-

final.

### *Claim Rejections - 35 USC § 103*

2.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

3.      Claim 1 is rejected under 35 U.S.C. 103(a) as being unpatentable over Nakajima

et al ("Nakajima", 6,346,935) in view of Hoshino et al ("Hoshino", US 20040021643).

        As per claim 1, Nakajima teaches a computer readable medium storing a

computer program with computer program code, which, when read by a mobile

handheld computer unit, allows the computer to present a user interface for the mobile

handheld computer unit, the user interface comprising: a touch sensitive area in which

representations of a plurality of functions are displayed (Column 15 lines 1-9, *function*

*signs*), and each function of said plurality of functions being mapped to a corresponding

location in the touch sensitive area at which the representation of the function is

displayed (Column 15 lines 1-9, *stops moving finger*). Nakajima teaches gliding over the

icon Column 15 lines 1-15, *stops moving finger then glides finger to lightly press surface* but fails to distinctly point out touching the icon and gliding away. However, Hoshino teaches an icon being activated by an object touching the corresponding location and then gliding along the touch sensitive area away from the location ([0092]-[0093], drag and drop operation may be used in combination with a push in operation for activating a function). Therefore it would have been obvious at the time of the invention to combine the teaching of Hoshino with the medium of Nakajima. Motivation to do so would have been to apply a known technique to a known system in order to yield advantageous and predictable results.

4.      Claims 2-11,14-16,18 rejected under 35 U.S.C. 103(a) as being unpatentable over Nakajima et al ("Nakajima", 6,346,935) and Hoshino et al ("Hoshino", US 20040021643) in view of Rogue ("Rogue", Palm Pilot: The Ultimate Guide, 2nd Edition).

        As per claim 2, Nakajima-Hoshino fails to particularly disclose a function to display a plurality of functions. However, Rogue teaches a computer readable medium of claim 1, wherein one function from the plurality of functions, when activated, causes the user interface to display icons representing different services or settings for a currently active application (Figure 1.2-1.3, *Preferences* ).Therefore it would have been

Application/Control Number: 10/315,250                                     Page 4
Art Unit: 2174

obvious to an artisan at the time of the invention to combine the teaching of Rogue with

the medium of Nakajima. Motivation to do so would have been to provide a way to

reduce screen clutter and only access the applications when needed.


As per claim 3, Nakajima-Hoshino-Rogue teaches a computer readable medium

of claim 2, wherein the user interface is characterised in, that a selection of a preferred

service or setting is done by tapping on a display icon corresponding to the preferred

service or setting (Nakajima, Column 18 lines 30-40, tap).


As per claim 4, Nakajima-Hoshino-Rogue teaches a computer readable medium

of claim 1, wherein one function from the plurality of functions, when activated, causes

the user interface to display a keyboard and a text field (Rogue, Figure 2.5, power

stroke up, Figure 2.6).


As per claim 5, Nakajima-Hoshino-Rogue teaches a wherein said text field is

used for inputting and editing of text through said keyboard (Nakajima, Figure 2.6).


As per claim 6, Nakajima-Hoshino-Rogue fails to teach a computer readable

medium of claim 1, OFFICIAL NOTICE is taken that file listing is well know in the art. It

is extremely common to see a list of functions and files listed, as in directories.

Therefore it would have been obvious to an artisan at the time of the invention to

combine the teaching with the medium of Nakajima-Hoshino -Rogue. Motivation to do

so would have been to provide a user with a list of options.

As per claim 7, Nakajima-Hoshino -Rogue teaches a computer readable medium

of claim 6, wherein the user interface is characterised in, that a selection of an

application or file is done by gliding the object along said touch sensitive area so that a

representation of a desired one of said application or file is highlighted, raising said

object from said touch sensitive area, and then tapping on said touch sensitive area

(Nakajima, Column 18 lines 40-56).

As per claim 8, Nakajima-Hoshino -Rogue fails to teach presenting only files or

only applications. However OFFICIAL NOTICE is taken that file sorting is well know in

the art. It is extremely common to sort a list of functions and files listed by data type.

Therefore it would have been obvious to an artisan at the time of the invention to

combine the teaching with the medium of Nakajima-Rogue. Motivation to do so would

have been to provide a user with a specific list of filtered options.

As per claim 9, Nakajima-Hoshino -Rogue teaches a computer readable medium

of claim 7, wherein the user interface is characterised in, that, one item in said list is

highlighted by a moveable marking, and gliding the object along the touch sensitive

area in a direction towards the top of said list or towards the bottom of said list, causes

said marking to move in the same direction without scrolling the list (Rogue, Figure 1.4, using the menu).

As per claim 10, Nakajima-Hoshino -Rogue teaches a computer readable medium of claim 9, wherein the user interface is characterised in, that, if the number of applications or files in said list exceeds the number of applications or files that can be presented on said touch sensitive area as content, and if the object is (i) glided along said touch sensitive area to the top or bottom position of said touch sensitive area, then (ii) raised above said touch sensitive area, then (iii) replaced on said touch sensitive area, and then (iv) again glided along said touch sensitive area to the top or bottom of said touch sensitive area, said list navigation pages the content of said list up or down one whole page (Nakajima, Column 14 lines 45-57 and Column 2 lines 15-23, wherein Nakajima is an absolute pointing device and a swipe from the top of the page to the bottom will result in a refresh by a whole page ).

As per claim 11, Nakajima-Hoshino -Rogue teaches a computer readable medium of claim 10, wherein the user interface is characterised in, that if the object is raised from any first position on said touch sensitive area and then replaced on any second position on said touch sensitive area, said navigation can be continued from said second position (Nakajima, Column 14 lines 45-57).

Application/Control Number: 10/315,250                                    Page 7
Art Unit: 2174

As per claim 14, while Nakajima-Hoshino -Rogue fails to teach a touch sensitive area is 2-3 inches. OFFICIAL NOTICE is taken that screen sizes vary and screens with a touch sensitive area of 2-3 inches diagonally is well known in the art. Therefore it would have been obvious to an artisan at the time of the invention to combine the screen size with the medium of Nakajima-Hoshino -Rogue. Motivation to do so would have been to provide adequate size to operate the touch screen while keeping it small enough to fit in a pocket.

As per claim 15, Nakajima-Hoshino-Rogue teaches a enclosure adapted to cover the mobile handheld computer unit according to Claim 1, characterised in, that said enclosure is provided with an opening for said touch sensitive area (Rogue, Figure 1.1).

As per claim 16, Nakajima-Hoshino-Rogue fails to teach an enclosure is removable and exchangeable. OFFICIAL NOTICE is taken that an enclosure is removable and exchangeable is well known in the art. Therefore it would have been obvious to an artisan at the time of the invention to combine the exchangeable enclosure with the medium of Nakajima-Rogue. Motivation to do so would have been to provide a way to style your mobile device so that it can be personalized to a user's taste.

As per claim 18, Nakajima-Hoshino-Rogue teaches a computer readable medium according to Claim 1, characterised in, that said computer program product is adapted to function as a shell upon an operations system (Rogue, 1.1 Palm Pilot Basics).

5.      Claims 12 and 13 are rejected under 35 U.S.C. 103(a) as being unpatentable over Nakajima et al ("Nakajima", 6,346,935) in view of Rogue ("Rogue", Palm Pilot: The Ultimate Guide, 2nd Edition) and Hoshino et al ("Hoshino", US 20040021643) in view of O'Rourke (O'Rourke, US 7,225,408).

As per claim 12, Nakajima-Hoshino-Rogue teaches a computer readable medium of claim 1, wherein the user interface is characterized in, that an active application, function, service or setting is moved on one step by gliding the object along the touch sensitive area from left to right (Nakajima, Column 14 lines 45-57). However, Nakajima-

Application/Control Number: 10/315,250                                    Page 9
Art Unit: 2174

Rogue fails to distinctly point out closing or backing one step. However, O'Rourke

teaches that the active application, function, service or setting is closed or backed one

step (Figure 13, right and left arrows). Therefore it would have been obvious to an

artisan at the time of the invention to combine the glide functionality with the forward

and backward functionality of O'Rourke. Motivation to do so would have been to provide

an easy way to traverse the GUI.


As per claim 13, Nakajima-Hoshino-Rogue-O'Rourke teaches a computer

readable medium of claim 1, wherein the user interface is characterized in, that said

representations of said plurality of functions are located at the bottom of said touch

sensitive area (O'Rourke, Figure 13, icons at bottom right) .


### *Response to Arguments*

Applicant's arguments with respect to claims 1-16,18 have been considered but

are moot in view of the new ground(s) of rejection.


The Examiner notes that the OFFICIAL NOTICE set forth in the previous office

action has not been contested.

Application/Control Number: 10/315,250                                        Page 10
Art Unit: 2174

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to RYAN F. PITARO whose telephone number is (571)272-4071.  The examiner can normally be reached on 9:00am - 5:30pm Mondays through Fridays.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Dennis Chow can be reached on 571-272-7767.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Ryan F Pitaro/
Examiner, Art Unit 2174

| *Notice of References Cited* | Application/Control No. 10/315,250 | Applicant(s)/Patent Under Reexamination GOERTZ, MAGNUS | |
|---|---|---|---|
| | Examiner RYAN F. PITARO | Art Unit 2174 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2004/0021643 | 02-2004 | Hoshino et al. | 345/173 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

# EAST Search History

## EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 31 | icon with drag with activate | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/11/20 14:29 |
| L2 | 148 | icon with drag with activat$7 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:29 |
| L3 | 68 | icon with drag with activat$7 and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:30 |
| L4 | 29 | bar with drag with activat$7 and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:36 |
| L5 | 81 | function with drag with activat$7 and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:37 |
| L11 | 26 | (dock bar) with (glide swipe) with activat$7 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/11/20 14:43 |

| L12 | 34 | (dock bar) with (glide swipe) with activat$7 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:43 |
| L13 | 54 | (glide swipe) with activat$7 with (function application program) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:46 |
| L14 | 24 | (glide swipe) with activat$7 with (function application program) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:47 |
| L15 | 30 | (glide swipe drag) with icon with activat$7 with (function application program) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 14:48 |
| L16 | 2 | "7441196".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/11/20 15:14 |
| L17 | 503 | swipe with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L18 | 734 | (glide swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L19 | 2 | "7286063".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |

| L23 | 263 | ("20010003845" \| "20010012286" \| "20010016947" \| "20010034647" \| "20010042002" \| "20010044751" \| "20010049824" \| "20010051903" \| "20020007309" \| "20020010642" \| "20020016750" \| "20020029339" \| "20020032782" \| "20020035174" \| "20020038256" \| "20020038259" \| "20020042914" \| "20020042921" \| "20020049631" \| "20020056098" \| "20020059590" \| "20020067376" \| "20020077177" \| "20020078006" \| "20020078453" \| "20020098834" \| "20020116292" \| "20020116320" \| "20020166122" \| "20030046182" \| "20030074661" \| "20030095525" \| "20030126607" \| "20030140017" \| "20030146940" \| "20030149628" \| "20030182195" \| "20040003412" \| "20040098747" \| "20040103439" \| "20040117831" \| "20040128137" \| "20040133848" \| "20040148625" \| "20040204116" \| "20040210824" \| "20040260689" \| "20050010949" \| "20050025550" \| "20050075932" \| "20050086690" \| "20050091118" \| "20050160458" \| "20050234895" \| "20050246231" \| "20060155598" \| "20060224987" \| "20070008332" \| "3586771" \| "4650977" \| "4706121" \| "4992940" \| "5041312" \| "5064999" \| "5119188" \| "5236199" \| "5321749" \| "5353016" \| "5410326" \| "5479268" \| "5532735" \| "5553242" \| "5559548" \| "5598523" \| "5602596" \| "5617570" \| "5625781" \| "5710887" \| "5727129" \| "5734719" \| "5758126" \| "5794210" \| "5796252" \| "5801702" \| "5809204" \| "5819220" \| "5822014" \| "5828839" \| "5832208" \| "5832459" \| "5838314" \| "5848396" \| "5851149" \| "5874906" \| "5878222" \| "5890175" \| "5893064" \| "5895454" \| "5896133" \| "5900905" \| "5902353" \| "5903729" \| "5911145" \| "5918014" \| "5918213").PN. OR ("5925103" \| "5931901" \| "5935002" \| "5946381" \| "5956681" \| "5956693" \| "5958012" \| "5960411" \| "5961593" \| "5978381" \| "5990927" \| "6002853" \| "6005562" \| "6005631" \| "6006257" \| "6012049" \| "6014502" \| "6018372" \| "6025837" \| "6028600" \| "6031537" \| "6041312" \| "6054989" \| "6072483" \| "6072492" \| "6075575" \| "6078866" \| "6091417" \| | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |

"6094156" | "6101473" | "6112186" | "6129274" |
"6138107" | "6142371" | "6151050" | "6151059" |
"6151596" | "6151630" | "6154205" | "6160552" |
"6167382" | "6172677" | "6177936" | "6193152" |
"6198481" | "6199050" | "6199077" | "6199098" |
"6205432" | "6205582" | "6211878" | "6212265" |
"6223215" | "6226623" | "6226642" | "6229540" |
"6237030" | "6243093" | "6253189" | "6260192" |
"6266060" | "6269343" | "6269361" | "6269403" |
"6271832" | "6282516" | "6285357" | "6285987" |
"6286017" | "6286043" | "6288716" | "6292779" |
"6292782" | "6292786" | "6292809" | "6295057" |
"6298330" | "6300947" | "6301566" | "6312336" |
"6314406" | "6317706" | "6330005" | "6330543" |
"6333753" | "6334108" | "6334145" | "6336131" |
"6337715" | "6345279" | "6356905" | "6381583" |
"6388714" | "6396531" | "6397387" | "6401132" |
"6407779" | "6411307" | "6411337" | "6415270" |
"6417873" | "6418441" | "6421066" | "6421071" |
"6421724" | "6438540" | "6445398" | "6460181" |
"6476825" | "6477575" | "6484149" | "6487189" |
"6487586" | "6490555" | "6509913" | "6516311" |
"6522342" | "6532312" | "6535888" | "6570582" |
"6571279" | "6583800" | "6606103" | "6606280" |
"6606347").PN. OR ("6608633" | "6615247" |
"6615248" | "6618039" | "6631523" | "6636246" |
"6647373" | "6662224" | "6680714" | "6684062" |
"6692358" | "6704727" | "6711552" | "6714534" |
"6728731" | "6769989" | "6804786" | "6826572" |
"6829646" | "6857102" | "6868525" | "6907556" |
"6925595" | "6928610" | "6938073" | "6973669" |
"6978263" | "7013435" | "7020845" | "7051281" |
"7174512" | "7293276" | "7383515").PN.

| L24 | 131 | touch with slide with function | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |

| L25 | 13 | ("4366475" \| "4686332" \| "4821030" \| "4914624" \| "5402151" \| "5563632" \| "5596346" \| "5638060" \| "5687331" \| "5736974" \| "5736976" \| "5761485" \| "5838973").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| L26 | 175604 | object near3 type | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| L27 | 5 | (file item object) near3 type with open near3 respective | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| L28 | 997 | open$3 with different with program | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| L29 | 2 | multiple near3 file near3 selection with open | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L30 | 12 | applying with command with (plurality multiple) with files | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L31 | 30944 | (flick stroke) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/11/20 15:14 |
| L32 | 261 | (flick ) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L33 | 131 | (flick ) with (open application command) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L34 | 5 | (flick ) with (open application command) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L35 | 39 | (flick ) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |

| L36 | 981 | (flick gesture) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L37 | 2372 | (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L38 | 78 | (flick gesture slide) and @ay<="2002" and "715"/702,864.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L39 | 6588 | finger near3 (flick gesture slide) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L40 | 87 | finger near3 (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L41 | 0 | "5543591,5943052,5907327,4686332".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L42 | 8 | ("5543591" "5943052" "5907327" "4686332").pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L43 | 113453 | (glide flick touch swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |

| L44 | 16322 | (glide flick touch swipe) with screen with (applications functions) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L45 | 92 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L46 | 439 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L47 | 0 | (glide flick swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L48 | 11 | (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L49 | 219 | (glide flick gesture swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L50 | 302 | (glide flick swipe) with screen and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L51 | 8 | (glide flick swipe) with screen with icon and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |

| L52 | 16 | ("20010011308" \| "20030142138" \| "20040034801" \| "20050253817" \| "20050253817" \| "20050264833" \| "5821933" \| "5907327" \| "6633310").PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
|-----|-----|-----|-----|-----|-----|-----|
| L53 | 452 | (glide flick swipe) with finger and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L54 | 3 | (glide flick swipe) with finger and @AY<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L55 | 13 | ("5250929" \| "5568604" \| "5579036" \| "5612719" \| "5661476" \| "5748185" \| "5767457" \| "5883617" \| "5928304" \| "5943043" \| "5943044" \| "5995083" \| "6049328").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| L56 | 1144 | 715/716.ccls. | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| L57 | 8 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/11/20 15:14 |
| L58 | 10 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L59 | 429 | 715/716.ccls. and dvd | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L60 | 587 | 715/716.ccls. and menu | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L61 | 55 | 715/716.ccls. and menu and theme | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L62 | 311 | 715/716.ccls. and menu and effects | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L63 | 6 | 715/716.ccls. and menu with theme | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |

| L64 | 1 | "7200836".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L65 | 1 | "20080120546".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L66 | 504 | 715/864.ccls. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L67 | 69 | 715/864.ccls. and keyboard and back and icons and files | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L68 | 29 | 715/864.ccls. and keyboard and back and icons and files and removable | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L69 | 44 | 715/864.ccls. and keyboard and icons and files and @ay<="2002" | US-PGPUB; USPAT; USOCR | OR | ON | 2009/11/20 15:14 |
| L70 | 2 | "6346935".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/11/20 15:14 |
| L71 | 21 | (glide flick touch swipe) with (coordinat$7) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L72 | 439 | (touch finger) with (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L73 | 0 | (touch finger) with (glide flick swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L74 | 3 | (touch finger) with (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |

| L75 | 2 | "6140936".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
|-----|---|---------------|-----------------------------------|----|----|------------------|
| L76 | 2 | "6346935".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L77 | 195 | files with applications with list with only | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L78 | 102 | (file near list) with (application near list) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L79 | 535 | (file near view) with application | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L80 | 16 | sort with application near files | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L81 | 632 | (programs application) with files with (sort show list) with only | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L82 | 57 | (programs application) with files with (sort show list) with only and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |

| L83 | 0 | seperate with list with data near type | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L84 | 6088 | list with data near type | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L85 | 684 | list with data near type and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L86 | 635 | application near list and file near list | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |
| L87 | 273 | application near list and file near list and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/11/20 15:14 |

**EAST Search History (Interference)**

<This search history is empty>

**11/20/09 3:23:19 PM**
**C:\ Documents and Settings\ RPitaro\ My Documents\ EAST\ Workspaces\ 10315250.wsp**

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant   ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | 12/21/2008 | 07/06/2009 | 11/20/2009 | | | | |
| | 1 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 2 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 3 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 4 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 5 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 7 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 8 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 9 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 10 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 11 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 12 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 14 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 15 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 16 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 17 | ✓ | ✓ | ✓ | - | - | | | | |
| | 18 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 19 | | ÷ | N | - | | | | | |
| | 20 | | ÷ | N | - | | | | | |
| | 21 | | ÷ | N | - | | | | | |
| | 22 | | ÷ | N | - | | | | | |
| | 23 | | ÷ | N | - | | | | | |
| | 24 | | ÷ | N | - | | | | | |
| | 25 | | ÷ | N | - | | | | | |
| | 26 | | ÷ | N | - | | | | | |
| | 27 | | ÷ | N | - | | | | | |
| | 28 | | ÷ | N | - | | | | | |
| | 29 | | ÷ | N | - | | | | | |
| | 30 | | ÷ | N | - | | | | | |
| | 31 | | ÷ | N | - | | | | | |
| | 32 | | ÷ | N | - | | | | | |
| | 33 | | ÷ | N | - | | | | | |
| | 34 | | ÷ | N | - | | | | | |
| | 35 | | ÷ | N | - | | | | | |
| | 36 | | ÷ | N | - | | | | | |

Part of Paper No. :  20091120

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit |
| | Ryan F Pitaro | 2174 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ **Claims renumbered in the same order as presented by applicant**    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | 12/21/2008 | 07/06/2009 | 11/20/2009 | | | |
| | 37 | | ÷ | N | - | | | | |
| | 38 | | ÷ | N | - | | | | |
| | 39 | | ÷ | N | - | | | | |
| | 40 | | ÷ | N | - | | | | |
| | 41 | | ÷ | N | - | | | | |
| | 42 | | ÷ | N | - | | | | |
| | 43 | | ÷ | N | - | | | | |
| | 44 | | ÷ | N | - | | | | |
| | 45 | | ÷ | N | - | | | | |
| | 46 | | ÷ | N | - | | | | |
| | 47 | | ÷ | N | - | | | | |
| | 48 | | | | | | | | |
| | 49 | | | | | | | | |
| | 50 | | | | | | | | |
| | 51 | | | | | | | | |
| | 52 | | | | | | | | |
| | 53 | | | | | | | | |
| | 54 | | | | | | | | |
| | 55 | | | | | | | | |
| | 56 | | | | | | | | |
| | 57 | | | | | | | | |
| | 58 | | | | | | | | |
| | 59 | | | | | | | | |
| | 60 | | | | | | | | |
| | 61 | | | | | | | | |
| | 62 | | | | | | | | |
| | 63 | | | | | | | | |
| | 64 | | | | | | | | |
| | 65 | | | | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| Update | Search | 11/8/2007 | RFP |
| Update | Search | 6/17/2008 | RFP |
| Update | Search | 12/21/2008 | RFP |
| Update | Search | 4/22/2009 | RFP |
| Update | Search | 11/20/2009 | RFP |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Update Search | 11/8/2007 | RFP |
| Update Search | 6/17/2008 | RFP |
| EAST | 12/21/2008 | RFP |
| Internet | 12/21/2008 | RFP |
| Safari Online Books | 12/21/2008 | RFP |
| IEEE | 12/21/2008 | RFP |
| ACM | 12/21/2008 | RFP |
| Update Search | 4/22/2009 | RFP |
| Update Search | 11/20/2009 | RFP |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

Attorney's Docket No.: <u>NEONODE.P004</u>     *PATENT*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Patent Application of:              )
                                          )    Examiner:  Ryan F. Pitaro
            Magnus Goertz                 )
                                          )    Art Unit:  2174
Application No: 10/315,250                )
                                          )
Filed:    December 10, 2002               )
                                          )
For:      USER INTERFACE FOR             )
          MOBILE HANDHELD                 )
          COMPUTER UNIT                    )
                                          )

Mail Stop AMENDMENT
Commissioner for Patents
P. O. Box 1450
Alexandria, VA   22313-1450

## <u>AMENDMENT AND RESPONSE TO OFFICE ACTION</u>

## <u>UNDER 37 C.F.R. §1.111</u>

Sir:

              In response to the Office Action dated July 8, 2009,

applicant respectfully requests that the remarks below be taken into

consideration.

IN THE CLAIMS:

Please substitute the following claims for the pending claims with the same number:

**1.** (previously presented)    A computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:

a touch sensitive area in which representations of at least one function are displayed, and each function of said at least one function being mapped to a corresponding location in the touch sensitive area at which the representation of the function is displayed, and being activated by an object touching the corresponding location and then gliding along the touch sensitive area away from the touched location.

**2.** (previously presented)    The computer readable medium of claim **1**, wherein one function from the at least one function, when activated, causes the user interface to display icons representing different services or settings for a currently active application.

**3.** (previously presented)    The computer readable medium of claim **2**, wherein the user interface is characterised in, that a selection of a preferred service or setting is done by tapping on a display icon corresponding to the preferred service or setting.

**4.** (previously presented)     The computer readable medium of claim **1**, wherein one function from at least one function, when activated, causes the user interface to display a keyboard and a text field.

**5.** (previously presented)     The computer readable medium of claim **4**, wherein said text field is used for inputting and editing of text through said keyboard.

**6.** (previously presented)     The computer readable medium of claim **1**, wherein one function from the at least one function, when activated, causes the user interface to display a list with a library of available applications and files on the mobile handheld computer unit.

**7.** (previously presented)     The computer readable medium of claim **6**, wherein the user interface is characterised in, that a selection of an application or file is done by gliding the object along said touch sensitive area so that a representation of a desired one of said application or file is highlighted, raising said object from said touch sensitive area, and then tapping on said touch sensitive area.

**8.** (previously presented)     The computer readable medium of claim **7**, wherein the user interface is characterised in, that at any given time said list presents only files or only applications, and that an area of said list presents a field through which said list can be changed from presenting files to presenting applications, or from presenting applications to presenting files.

**9.** (previously presented) The computer readable medium of claim **7**, wherein the user interface is characterised in, that, one item in said list is highlighted by a moveable marking, and the user interface enables list navigation whereby gliding the object along the touch sensitive area in a direction towards the top of said list or towards the bottom of said list causes said marking to move in the same direction without scrolling the list.

**10.** (previously presented) The computer readable medium of claim **9**, wherein the user interface is characterised in, that, if the number of applications or files in said list exceeds the number of applications or files that can be presented on said touch sensitive area as content, and if the object is (i) glided along said touch sensitive area to the top or bottom of said touch sensitive area, then (ii) raised above said touch sensitive area, then (iii) replaced on said touch sensitive area, and then (iv) again glided along said touch sensitive area to the top or bottom of said touch sensitive area, said list navigation pages the content of said list up or down by one whole page.

**11.** (previously presented) The computer readable medium of claim **10**, wherein the user interface is characterised in, that if the object is raised from any first position on said touch sensitive area and then replaced on any second position on said touch sensitive area, said list navigation can be continued from said second position.

**12.** (previously presented) The computer readable medium of claim **1**, wherein the user interface is characterised in, that an active application, function, service or setting is advanced one step by gliding the object

along the touch sensitive area from left to right, and that the active application, function, service or setting is closed or backed one step by gliding the object along the touch sensitive area from right to left.

**13.** (previously presented)      The computer readable medium of claim **1**, wherein the user interface is characterised in, that said representations of said at least one function are located at the bottom of said touch sensitive area.

**14.** (previously presented)      The computer readable medium of claim **1**, wherein the touch sensitive area is 2-3 inches in diagonal dimension.

**15.** (previously presented)      An enclosure adapted to cover the mobile handheld computer unit according to Claim **1**, characterised in, that said enclosure is provided with an opening for said touch sensitive area.

**16.** (previously presented)      The enclosure according to Claim **15**, characterised in, that said enclosure is removable and exchangeable.

**17.** (cancelled)

**18.** (previously presented)      The computer readable medium of claim **1**, characterised in, that said computer program code is adapted to function as a shell upon an operating system.

**19.** – **47.** (cancelled)

## REMARKS

Applicant expresses appreciation to the Examiner for the courtesy of an interview granted to applicant's representative Marc A. Berger (Reg. No. 44,029).  The interview was held by telephone on Monday, July 13, 2009.

As discussed during the interview, applicant wishes to point out that the signs **19a**, etc. of **FIG. 5** of Nakajima are not on the touch surface.  They are merely signs, outside of the touch surface **7B**, that indicate the functions assigned to adjacent regions of the touch surface.

As such, applicant respectfully submits that the present claim language "at least one function being mapped to a corresponding location in the touch sensitive area at which the representation of the function is displayed, and being activated by an object touching the corresponding location and then gliding along the touch sensitive area away from the touched location" is not anticipated by Nakajima.

For the foregoing reasons, applicant respectfully submits that the applicable objections and rejections have been overcome and that the claims are in condition for allowance.

Respectfully submitted,

Dated: July 13, 2009

/Marc A. Berger/
Marc A. Berger
Reg. No. 44,029

P.O. Box 691
Soquel, CA   95073
(831) 426-8200

Atty. Docket No. NEONODE.P004      -6-

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5685763 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 13-JUL-2009 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 11:05:02 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | NEONODEP004Amendment_13July2009.pdf | 57953  2cf2c071c0360f4d6616db29d510db163751464c | yes | 6 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 5 |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 6 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |
| **Total Files Size (in bytes):** | 57953 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

| | |
|---|---|
| 75660          7590          07/08/2009 | EXAMINER |
| Soquel Group, LLC | PITARO, RYAN F |
| P.O. Box 691 | |
| Soquel, CA 95073 | ART UNIT          PAPER NUMBER |
| | 2174 |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/08/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit | |
| | RYAN F. PITARO | 2174 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>22 April 2009</u>.

2a)☐ This action is **FINAL**.        2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) <u>1-16 and 18</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-16,18</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date <u>5/4/2009</u>.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____ .

Application/Control Number: 10/315,250                                    Page 2
Art Unit: 2174

### *Response to Amendment*

1.      This action is in response to the amendment filed 4/22/2009. This action is non-

final.

### *Claim Rejections - 35 USC § 102*

2.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

    A person shall be entitled to a patent unless –

    (e) the invention was described in (1) an application for patent, published under section 122(b), by
    another filed in the United States before the invention by the applicant for patent or (2) a patent
    granted on an application for patent by another filed in the United States before the invention by the
    applicant for patent, except that an international application filed under the treaty defined in section
    351(a) shall have the effects for purposes of this subsection of an application filed in the United States
    only if the international application designated the United States and was published under Article 21(2)
    of such treaty in the English language.

3.      Claim 1 is rejected under 35 U.S.C. 102(e) as being anticipated by Nakajima et al

("Nakajima", 6,346,935).

        As per claim 1, Nakajima teaches a computer readable medium storing a

computer program with computer program code, which, when read by a mobile

handheld computer unit, allows the computer to present a user interface for the mobile

handheld computer unit, the user interface comprising: a touch sensitive area in which

Application/Control Number: 10/315,250                                   Page 3
Art Unit: 2174

representations of a plurality of functions are displayed (Column 15 lines 1-9, *function*

*signs*), and each function of said plurality of functions being mapped to a corresponding

location in the touch sensitive area at which the representation of the function is

displayed (Column 15 lines 1-9, *stops moving finger*), and being activated by an object

touching the corresponding location and then gliding along the touch sensitive area

away from the location (Column 15 lines 1-15, *stops moving finger then glides finger to*

*lightly press surface*).

### *Claim Rejections - 35 USC § 103*

4.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

5.      Claims 2-11,14-16,18 rejected under 35 U.S.C. 103(a) as being unpatentable

over Nakajima et al ("Nakajima", 6,346,935) in view of Rogue ("Rogue", Palm Pilot: The

Ultimate Guide, 2nd Edition).

As per claim 2, Nakajima fails to particularly disclose a function to display a plurality of functions. However, Rogue teaches a computer readable medium of claim 1, wherein one function from the plurality of functions, when activated, causes the user interface to display icons representing different services or settings for a currently active application (Figure 1.2-1.3, *Preferences* ).Therefore it would have been obvious to an artisan at the time of the invention to combine the teaching of Rogue with the medium of Nakajima. Motivation to do so would have been to provide a way to reduce screen clutter and only access the applications when needed.

As per claim 3, Nakajima-Rogue teaches a computer readable medium of claim 2, wherein the user interface is characterised in, that a selection of a preferred service or setting is done by tapping on a display icon corresponding to the preferred service or setting (Nakajima, Column 18 lines 30-40, tap).

As per claim 4, Nakajima-Rogue teaches a computer readable medium of claim 1, wherein one function from the plurality of functions, when activated, causes the user interface to display a keyboard and a text field (Figure 2.5, power stroke up, Figure 2.6).

As per claim 5, Nakajima-Rogue teaches a wherein said text field is used for inputting and editing of text through said keyboard (Nakajima, Figure 2.6).

Application/Control Number: 10/315,250                                    Page 5
Art Unit: 2174

As per claim 6, Nakajima-Rogue fails to teach a computer readable medium of claim 1, OFFICIAL NOTICE is taken that file listing is well know in the art. It is extremely common to see a list of functions and files listed, as in directories. Therefore it would have been obvious to an artisan at the time of the invention to combine the teaching with the medium of Nakajima-Rogue. Motivation to do so would have been to provide a user with a list of options.

As per claim 7, Nakajima-Rogue teaches a computer readable medium of claim 6, wherein the user interface is characterised in, that a selection of an application or file is done by gliding the object along said touch sensitive area so that a representation of a desired one of said application or file is highlighted, raising said object from said touch sensitive area, and then tapping on said touch sensitive area (Nakajima, Column 18 lines 40-56).

As per claim 8, Nakajima-Rogue fails to teache presenting only files or only applications. However OFFICIAL NOTICE is taken that file sorting is well know in the art. It is extremely common to sort a list of functions and files listed by data type. Therefore it would have been obvious to an artisan at the time of the invention to combine the teaching with the medium of Nakajima-Rogue. Motivation to do so would have been to provide a user with a specific list of filtered options.

As per claim 9, Nakajima-Rogue teaches a computer readable medium of claim 7, wherein the user interface is characterised in, that, one item in said list is highlighted by a moveable marking, and gliding the object along the touch sensitive area in a direction towards the top of said list or towards the bottom of said list, causes said marking to move in the same direction without scrolling the list (Rogue, Figure 1.4, using the menu).

As per claim 10, Nakajima-Rogue teaches a computer readable medium of claim 9, wherein the user interface is characterised in, that, if the number of applications or files in said list exceeds the number of applications or files that can be presented on said touch sensitive area as content, and if the object is (i) glided along said touch sensitive area to the top or bottom position of said touch sensitive area, then (ii) raised above said touch sensitive area, then (iii) replaced on said touch sensitive area, and then (iv) again glided along said touch sensitive area to the top or bottom of said touch sensitive area, said list navigation pages the content of said list up or down one whole page (Nakajima, Column 14 lines 45-57 and Column 2 lines 15-23, wherein Nakajima is an absolute pointing device and a swipe from the top of the page to the bottom will result in a refresh by a whole page ).

As per claim 11, Nakajima-Rogue teaches a computer readable medium of claim 10, wherein the user interface is characterised in, that if the object is raised from any first position on said touch sensitive area and then replaced on any second position on

Application/Control Number: 10/315,250                                    Page 7
Art Unit: 2174

said touch sensitive area, said navigation can be continued from said second position

(Nakajima, Column 14 lines 45-57).


As per claim 14, while Nakajima-Rogue-O'Rourke fails to teach a touch sensitive

area is 2-3 inches. OFFICIAL NOTICE is taken that screen sizes vary and screens with

a touch sensitive area of 2-3 inches diagonally is well known in the art. Therefore it

would have been obvious to an artisan at the time of the invention to combine the

screen size with the medium of Nakajima-Rogue. Motivation to do so would have been

to provide adequate size to operate the touch screen while keeping it small enough to fit

in a pocket.


As per claim 15, Nakajima-Rogue teaches a enclosure adapted to cover the

mobile handheld computer unit according to Claim 1, characterised in, that said

enclosure is provided with an opening for said touch sensitive area (Rogue, Figure 1.1).


As per claim 16, Nakajima-Rogue fails to teach an enclosure is removable and

exchangeable. OFFICIAL NOTICE is taken that an enclosure is removable and

exchangeable is well known in the art. Therefore it would have been obvious to an

artisan at the time of the invention to combine the exchangeable enclosure with the

medium of Nakajima-Rogue. Motivation to do so would have been to provide a way to

style your mobile device so that it can be personalized to a user's taste.

Application/Control Number: 10/315,250                                      Page 8
Art Unit: 2174

As per claim 18, Nakajima-Rogue teaches a computer readable medium
according to Claim 1, characterised in, that said computer program product is adapted
to function as a shell upon an operations system (Rogue, 1.1 Palm Pilot Basics).

6.      Claims 12 and 13 are rejected under 35 U.S.C. 103(a) as being unpatentable
over Nakajima et al ("Nakajima", 6,346,935) in view of Rogue ("Rogue", Palm Pilot: The
Ultimate Guide, 2nd Edition) in view of O'Rourke (O'Rourke, US 7,225,408).

As per claim 12, Nakajima-Rogue teaches a computer readable medium of claim
1, wherein the user interface is characterized in, that an active application, function,
service or setting is moved on one step by gliding the object along the touch sensitive
area from left to right (Nakajima, Column 14 lines 45-57). However, Nakajima-Rogue

Application/Control Number: 10/315,250                                            Page 9
Art Unit: 2174

fails to distinctly point out closing or backing one step. However, O'Rourke teaches that

the active application, function, service or setting is closed or backed one step (Figure

13, right and left arrows). Therefore it would have been obvious to an artisan at the time

of the invention to combine the glide functionality with the forward and backward

functionality of O'Rourke. Motivation to do so would have been to provide an easy way

to traverse the GUI.


As per claim 13, Nakajima-Rogue-O'Rourke teaches a computer readable

medium of claim 1, wherein the user interface is characterized in, that said

representations of said plurality of functions are located at the bottom of said touch

sensitive area (O'Rourke, Figure 13, icons at bottom right) .


### Response to Arguments

Applicant's arguments filed 4/22/2009 have been fully considered but they

are not persuasive.

The Applicant argues the following main points with regards to claim 1. As

summarized by the table on page 10 of the amendment, Nakamura differs for the

following reasons:

Application/Control Number: 10/315,250                                      Page 10
Art Unit: 2174

- Glide is over non-touch sensitive portion of screen

- Glide is followed by touch

- Glide is toward touch point

- Glide is along periphery of  touch sensitive area

- Glide movement is guided by inner periphery of raised frame

- Only the touch point is process by the user interface

- Frame-guided touch has the same effect as touch alone

The Examiner disagrees; the Applicant has mis-categorized the inner periphery of the frame of Nakajima. The purpose of the frame is to allow the user to more easily glide the finger along the edge of the frame if desired. However, this does not limit the users of Nakajima to only use the edge of the frame as argued by the applicant. The frame of a usual touch tablet interferes with the movement of the user's finger, in other words the effective operational area (the touchable area) of the touch tablet is limited and produces waste of the operational area. So while the Applicant has stated that the glide is over a non-touch sensitive portion of the screen, this is in fact incorrect. The glide can now start at the absolute edge of the screen since there is no frame to restrict the user from the edges of the absolute pointing device. The glide as pointed out in the office action is indeed a touch and glide action (Column 15 lines 1-9), *the users then stops on the sign (icon) of a desired function and the glides the finger*.

Application/Control Number: 10/315,250                                              Page 11
Art Unit: 2174

This two step action is indicative of both the touch and glide being processed to
execute the desired function. Whether or not the frame guided touch has a
similar effect as touch alone is erroneous. Like the current application Nakajima
eliminates the accidental touch performing a function, hence the reason for the
touch then glide. While the two means may produced similar ends each has their
advantages and cannot be combined as one.


The Examiner notes that the OFFICIAL NOTICE set forth in the previous office
action has not been contested.


### Conclusion

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to RYAN F. PITARO whose telephone number is
(571)272-4071.  The examiner can normally be reached on 9:00am - 5:30pm Mondays
through Fridays.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Dennis Chow can be reached on 571-272-7767.  The fax phone number for
the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 10/315,250                                    Page 12
Art Unit: 2174

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Ryan F Pitaro/
Examiner, Art Unit 2174

| *Notice of References Cited* | Application/Control No.<br>10/315,250 | Applicant(s)/Patent Under Reexamination<br>GOERTZ, MAGNUS | |
|---|---|---|---|
| | Examiner<br>RYAN F. PITARO | Art Unit<br>2174 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2005/0035956 | 02-2005 | Sinclair et al. | 345/184 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ***Index of Claims*** | 10315250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit |
| | Ryan F Pitaro | 2174 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | 12/21/2008 | 07/06/2009 | | | | |
| | 1 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 2 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 3 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 4 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 5 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 6 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 7 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 8 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 9 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 10 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 11 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 12 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 13 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 14 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 15 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 16 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 17 | ✓ | ✓ | ✓ | - | | | | |
| | 18 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 19 | | ÷ | N | - | | | | |
| | 20 | | ÷ | N | - | | | | |
| | 21 | | ÷ | N | - | | | | |
| | 22 | | ÷ | N | - | | | | |
| | 23 | | ÷ | N | - | | | | |
| | 24 | | ÷ | N | - | | | | |
| | 25 | | ÷ | N | - | | | | |
| | 26 | | ÷ | N | - | | | | |
| | 27 | | ÷ | N | - | | | | |
| | 28 | | ÷ | N | - | | | | |
| | 29 | | ÷ | N | - | | | | |
| | 30 | | ÷ | N | - | | | | |
| | 31 | | ÷ | N | - | | | | |
| | 32 | | ÷ | N | - | | | | |
| | 33 | | ÷ | N | - | | | | |
| | 34 | | ÷ | N | - | | | | |
| | 35 | | ÷ | N | - | | | | |
| | 36 | | ÷ | N | - | | | | |

Part of Paper No. : 20090706A

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit |
| | Ryan F Pitaro | 2174 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ **Claims renumbered in the same order as presented by applicant**     ☐ CPA     ☐ T.D.     ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | 12/21/2008 | 07/06/2009 | | | | |
| | 37 | | ÷ | N | - | | | | |
| | 38 | | ÷ | N | - | | | | |
| | 39 | | ÷ | N | - | | | | |
| | 40 | | ÷ | N | - | | | | |
| | 41 | | ÷ | N | - | | | | |
| | 42 | | ÷ | N | - | | | | |
| | 43 | | ÷ | N | - | | | | |
| | 44 | | ÷ | N | - | | | | |
| | 45 | | ÷ | N | - | | | | |
| | 46 | | ÷ | N | - | | | | |
| | 47 | | ÷ | N | - | | | | |
| | 48 | | | | | | | | |
| | 49 | | | | | | | | |
| | 50 | | | | | | | | |
| | 51 | | | | | | | | |
| | 52 | | | | | | | | |
| | 53 | | | | | | | | |
| | 54 | | | | | | | | |
| | 55 | | | | | | | | |
| | 56 | | | | | | | | |
| | 57 | | | | | | | | |
| | 58 | | | | | | | | |
| | 59 | | | | | | | | |
| | 60 | | | | | | | | |
| | 61 | | | | | | | | |
| | 62 | | | | | | | | |
| | 63 | | | | | | | | |
| | 64 | | | | | | | | |
| | 65 | | | | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| Update | Search | 11/8/2007 | RFP |
| Update | Search | 6/17/2008 | RFP |
| Update | Search | 12/21/2008 | RFP |
| Update | Search | 4/22/2009 | RFP |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Update Search | 11/8/2007 | RFP |
| Update Search | 6/17/2008 | RFP |
| EAST | 12/21/2008 | RFP |
| Internet | 12/21/2008 | RFP |
| Safari Online Books | 12/21/2008 | RFP |
| IEEE | 12/21/2008 | RFP |
| ACM | 12/21/2008 | RFP |
| Update Search | 4/22/2009 | RFP |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

**EAST Search History**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 2 | "6346935".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 10:24 |
| L2 | 187 | files with applications with list with only | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 10:28 |
| L3 | 98 | (file near list) with (application near list) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 10:34 |
| L4 | 502 | (file near view) with application | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 10:36 |
| L5 | 15 | sort with application near files | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:14 |
| L6 | 613 | (programs application) with files with (sort show list) with only | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:18 |
| L7 | 55 | (programs application) with files with (sort show list) with only and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:18 |

| L8 | 0 | seperate with list with data near type | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:19 |
| L9 | 5796 | list with data near type | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:19 |
| L10 | 652 | list with data near type and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:19 |
| L11 | 596 | application near list and file near list | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:20 |
| L12 | 271 | application near list and file near list and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/06 11:22 |
| S1 | 2 | "7441196".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2008/12/08 17:03 |
| S2 | 394 | swipe with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/08 17:05 |
| S3 | 606 | (glide swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/08 17:05 |

| S4 | 2 | "7286063".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/08 17:10 |
|---|---|---|---|---|---|---|
| S5 | 263 | ("20010003845" \| "20010012286" \| "20010016947" \| "20010034647" \| "20010042002" \| "20010044751" \| "20010049824" \| "20010051903" \| "20020007309" \| "20020010642" \| "20020016750" \| "20020029339" \| "20020032782" \| "20020035174" \| "20020038256" \| "20020038259" \| "20020042914" \| "20020042921" \| "20020049631" \| "20020056098" \| "20020059590" \| "20020067376" \| "20020077177" \| "20020078006" \| "20020078453" \| "20020098834" \| "20020116292" \| "20020116320" \| "20020166122" \| "20030046182" \| "20030074661" \| "20030095525" \| "20030126607" \| "20030140017" \| "20030146940" \| "20030149628" \| "20030182195" \| "20040003412" \| "20040098747" \| "20040103439" \| "20040117831" \| "20040128137" \| "20040133848" \| "20040148625" \| "20040204116" \| "20040210824" \| "20040260689" \| "20050010949" \| "20050025550" \| "20050075932" \| "20050086690" \| "20050091118" \| "20050160458" \| "20050234895" \| "20050246231" \| "20060155598" \| "20060224987" \| "20070008332" \| "3586771" \| "4650977" \| "4706121" \| "4992940" \| "5041312" \| "5064999" \| "5119188" \| "5236199" \| "5321749" \| "5353016" \| "5410326" \| "5479268" \| "5532735" \| "5553242" \| "5559548" \| "5598523" \| "5602596" \| "5617570" \| "5625781" \| "5710887" \| "5727129" \| "5734719" \| "5758126" \| "5794210" \| "5796252" \| "5801702" \| "5809204" \| "5819220" \| "5822014" \| "5828839" \| "5832208" \| "5832459" \| "5838314" \| "5848396" \| "5851149" \| "5874906" \| "5878222" \| "5890175" \| "5893064" \| "5895454" \| "5896133" \| "5900905" \| "5902353" \| "5903729" \| "5911145" \| "5918014" \| "5918213").PN. OR ("5925103" \| "5931901" \| "5935002" \| "5946381" \| "5956681" \| "5956693" \| "5958012" \| "5960411" \| "5961593" \| "5978381" \| "5990927" \| "6002853" \| | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:12 |

"6005562" | "6005631" | "6006257" | "6012049" |
"6014502" | "6018372" | "6025837" | "6028600" |
"6031537" | "6041312" | "6054989" | "6072483" |
"6072492" | "6075575" | "6078866" | "6091417" |
"6094156" | "6101473" | "6112186" | "6129274" |
"6138107" | "6142371" | "6151050" | "6151059" |
"6151596" | "6151630" | "6154205" | "6160552" |
"6167382" | "6172677" | "6177936" | "6193152" |
"6198481" | "6199050" | "6199077" | "6199098" |
"6205432" | "6205582" | "6211878" | "6212265" |
"6223215" | "6226623" | "6226642" | "6229540" |
"6237030" | "6243093" | "6253189" | "6260192" |
"6266060" | "6269343" | "6269361" | "6269403" |
"6271832" | "6282516" | "6285357" | "6285987" |
"6286017" | "6286043" | "6288716" | "6292779" |
"6292782" | "6292786" | "6292809" | "6295057" |
"6298330" | "6300947" | "6301566" | "6312336" |
"6314406" | "6317706" | "6330005" | "6330543" |
"6333753" | "6334108" | "6334145" | "6336131" |
"6337715" | "6345279" | "6356905" | "6381583" |
"6388714" | "6396531" | "6397387" | "6401132" |
"6407779" | "6411307" | "6411337" | "6415270" |
"6417873" | "6418441" | "6421066" | "6421071" |
"6421724" | "6438540" | "6445398" | "6460181" |
"6476825" | "6477575" | "6484149" | "6487189" |
"6487586" | "6490555" | "6509913" | "6516311" |
"6522342" | "6532312" | "6535888" | "6570582" |
"6571279" | "6583800" | "6606103" | "6606280" |
"6606347").PN. OR ("6608633" | "6615247" |
"6615248" | "6618039" | "6631523" | "6636246" |
"6647373" | "6662224" | "6680714" | "6684062" |
"6692358" | "6704727" | "6711552" | "6714534" |
"6728731" | "6769989" | "6804786" | "6826572" |
"6829646" | "6857102" | "6868525" | "6907556" |
"6925595" | "6928610" | "6938073" | "6973669" |
"6978263" | "7013435" | "7020845" | "7051281" |
"7174512" | "7293276" | "7383515").PN.

| S6 | 112 | touch with slide with function | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/08 17:14 |
| S7 | 13 | ("4366475" \| "4686332" \| "4821030" \| "4914624" \| "5402151" \| "5563632" \| "5596346" \| "5638060" \| "5687331" \| "5736974" \| "5736976" \| "5761485" \| "5838973").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:18 |
| S8 | 168267 | object near3 type | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:21 |
| S9 | 5 | (file item object) near3 type with open near3 respective | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:21 |
| S10 | 905 | open$3 with different with program | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:23 |
| S11 | 2 | multiple near3 file near3 selection with open | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/08 17:29 |
| S12 | 11 | applying with command with (plurality multiple) with files | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/08 17:29 |
| S13 | 29188 | (flick stroke) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2008/12/10 16:52 |
| S14 | 229 | (flick ) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:54 |
| S15 | 127 | (flick ) with (open application command) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:56 |
| S16 | 5 | (flick ) with (open application command) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:56 |

| S17 | 39 | (flick ) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:57 |
| S18 | 961 | (flick gesture) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:58 |
| S19 | 2324 | (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:58 |
| S20 | 77 | (flick gesture slide) and @ay<="2002" and "715"/702,864.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:59 |
| S21 | 6585 | finger near3 (flick gesture slide) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 17:07 |
| S22 | 86 | finger near3 (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 17:07 |
| S23 | 0 | "5543591,5943052,5907327,4686332".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 17:14 |
| S24 | 8 | ("5543591" "5943052" "5907327" "4686332").pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 17:15 |

| S25 | 93647 | (glide flick touch swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:18 |
| S26 | 13098 | (glide flick touch swipe) with screen with (applications functions) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:20 |
| S27 | 88 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:20 |
| S28 | 430 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:20 |
| S29 | 0 | (glide flick swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:21 |
| S30 | 11 | (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:21 |
| S31 | 219 | (glide flick gesture swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:22 |
| S32 | 299 | (glide flick swipe) with screen and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:25 |

| S33 | 8 | (glide flick swipe) with screen with icon and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:26 |
| S34 | 16 | ("20010011308" \| "20030142138" \| "20040034801" \| "20050253817" \| "20050253817" \| "20050264833" \| "5821933" \| "5907327" \| "6633310").PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:30 |
| S35 | 451 | (glide flick swipe) with finger and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:32 |
| S36 | 3 | (glide flick swipe) with finger and @AY<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:32 |
| S37 | 13 | ("5250929" \| "5568604" \| "5579036" \| "5612719" \| "5661476" \| "5748185" \| "5767457" \| "5883617" \| "5928304" \| "5943043" \| "5943044" \| "5995083" \| "6049328").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/17 14:01 |
| S38 | 918 | 715/716.ccls. | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/17 15:38 |
| S39 | 7 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/17 15:38 |
| S40 | 9 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:38 |
| S41 | 334 | 715/716.ccls. and dvd | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:47 |
| S42 | 461 | 715/716.ccls. and menu | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:47 |
| S43 | 39 | 715/716.ccls. and menu and theme | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:48 |
| S44 | 243 | 715/716.ccls. and menu and effects | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:52 |

EAST Search History

| S45 | 4 | 715/716.ccls. and menu with theme | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:53 |
| S46 | 1 | "7200836".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:56 |
| S47 | 1 | "20080120546".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:57 |
| S48 | 433 | 715/864.ccls. | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/21 23:26 |
| S49 | 60 | 715/864.ccls. and keyboard and back and icons and files | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/21 23:27 |
| S50 | 25 | 715/864.ccls. and keyboard and back and icons and files and removable | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/21 23:27 |
| S51 | 42 | 715/864.ccls. and keyboard and icons and files and @ay<="2002" | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/21 23:28 |
| S52 | 2 | "6346935".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2009/07/05 14:20 |
| S53 | 21 | (glide flick touch swipe) with (coordinat$7) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/05 14:24 |
| S54 | 437 | (touch finger) with (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/05 14:26 |
| S55 | 0 | (touch finger) with (glide flick swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/05 14:26 |
| S56 | 3 | (touch finger) with (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/05 14:27 |

| S57 | 2 | "6140936".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2009/07/05 23:13 |

**7/6/09 11:45:24 AM**
**C:\ Documents and Settings\ RPitaro\ My Documents\ EAST\ Workspaces\ 10315250.wsp**

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (04-09)
Approved for use through 05/31/2009. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
## ( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 10315250 |
| Filing Date | 2002-12-10 |
| First Named Inventor | Magnus Goertz |
| Art Unit | 2174 |
| Examiner Name | Ryan F. Pitaro |
| Attorney Docket Number | NEONODE.P004 |

## U.S.PATENTS   `Remove`

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.   `Add`

## U.S.PATENT APPLICATION PUBLICATIONS   `Remove`

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.   `Add`

## FOREIGN PATENT DOCUMENTS   `Remove`

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| /R.P./ | 1 | 0 330 767 | EP | B1 | 1993-10-06 | PIONEER ELECTRONIC CORPORATION | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button   `Add`

## NON-PATENT LITERATURE DOCUMENTS   `Remove`

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | 10315250 |
| | Filing Date | 2002-12-10 |
| | First Named Inventor | Magnus Goertz |
| | Art Unit | 2174 |
| | Examiner Name | Ryan F. Pitaro |
| | Attorney Docket Number | NEONODE.P004 |

| | 1 | | | ☐ |
|---|---|---|---|---|

| If you wish to add additional non-patent literature document citation information please click the Add button | Add |
|---|---|

**EXAMINER SIGNATURE**

| Examiner Signature | /Ryan Pitaro/ | Date Considered | 07/06/2009 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

---

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (04-09)
Approved for use through 05/31/2009. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 10315250 |
| Filing Date | 2002-12-10 |
| First Named Inventor | Magnus Goertz |
| Art Unit | 2174 |
| Examiner Name | Ryan F. Pitaro |
| Attorney Docket  Number | NEONODE.P004 |

| U.S.PATENTS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.  **Add**

| U.S.PATENT APPLICATION PUBLICATIONS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.  **Add**

| FOREIGN PATENT DOCUMENTS | | | | | | | Remove |
|---|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
| | 1 | 0 330 767 | EP | B1 | 1993-10-06 | PIONEER ELECTRONIC CORPORATION | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button  **Add**

| NON-PATENT LITERATURE DOCUMENTS | | | Remove |
|---|---|---|---|
| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 10315250 |
|---|---|---|
| | Filing Date | 2002-12-10 |
| | First Named Inventor | Magnus Goertz |
| | Art Unit | 2174 |
| | Examiner Name | Ryan F. Pitaro |
| | Attorney Docket  Number | NEONODE.P004 |

| | 1 | | | ☐ |
|---|---|---|---|---|

If you wish to add additional non-patent literature document citation information please click the Add button    Add

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 10315250 |
| --- | --- | --- |
| | Filing Date | 2002-12-10 |
| | First Named Inventor | Magnus Goertz |
| | Art Unit | 2174 |
| | Examiner Name | Ryan F. Pitaro |
| | Attorney Docket Number | NEONODE.P004 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐    That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐    That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐    See attached certification statement.

☒    Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☐    None

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Marc A. Berger/ | Date (YYYY-MM-DD) | 2009-05-04 |
| --- | --- | --- | --- |
| Name/Print | Marc A. Berger | Registration Number | 44029 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.13

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.



(19) Europäisches Patentamt
European Patent Office
Office européen des brevets



(11) Publication number: **0 330 767 B1**

(12) **EUROPEAN PATENT SPECIFICATION**

(45) Date of publication of patent specification: **06.10.93** (51) Int. Cl.⁵: $G06K\ 11/08$

(21) Application number: 88301738.6

(22) Date of filing: **29.02.88**

(54) **Touch panel control device with touch time and finger direction discrimination.**

(43) Date of publication of application:
**06.09.89 Bulletin  89/36**

(45) Publication of the grant of the patent:
**06.10.93 Bulletin  93/40**

(84) Designated Contracting States:
**DE FR GB**

(56) References cited:
**EP-A- 0 150 904**
**WO-A-85/05477**

**IBM TECHNICAL DISCLOSURE BULLETIN, vol.
20, no. 4, September 1977, pages 1609-1611,
New York, US; T.F. CUMMINGS: "Transparent
keyless keyboard for variable terminal ap-
plications"**

(73) Proprietor: **PIONEER ELECTRONIC CORPORA-
TION**
**No. 4-1, Meguro 1-chome
Meguro-ku Tokyo 153(JP)**

(72) Inventor: **Araki, Morio Pioneer Elec. Corp.
Kawagoe Works
No. 25-1, Aza Nishimachi
Oaza Yamada
Kawagoe-shi Saitama(JP)**

Inventor: **Mori, Shigeto Pioneer Elec. Corp.
Kawagoe Works
No. 25-1, Aza Nishimachi
Oaza Yamada
Kawagoe-shi Saitama(JP)**
Inventor: **Kaneko, Michihiro Pioneer Elec.
Corp. Kawagoe Work
No. 25-1, Aza Nishimachi
Oaza Yamada
Kawagoe-shi Saitama(JP)**
Inventor: **Go, Yasunao Pioneer Elec. Corp.
Kawagoe Works
No. 25-1, Aza Nishimachi
Oaza Yamada
Kawagoe-shi Saitama(JP)**

(74) Representative: **Brunner, Michael John et al
GILL JENNINGS & EVERY,
Broadgate House,
7 Eldon Street
London EC2M 7LH (GB)**

EP 0 330 767 B1

Note: Within nine months from the publication of the mention of the grant of the European patent, any person
may give notice to the European Patent Office of opposition to the European patent granted. Notice of opposition
shall be filed in a written reasoned statement. It shall not be deemed to have been filed until the opposition fee
has been paid (Art. 99(1) European patent convention).

**EP 0 330 767 B1**

**Description**

The invention relates to a touch panel control device for acoustic equipment.

Acoustic entertainment devices for vehicles, such as a cassette tape player, compact disk player and
5    radio tuner are installed in considerably small space such as an in-dash console, and therefore must be
small in size. Accordingly, the switches or push-buttons of the acoustic devices must also be small. These
small switches or push-buttons are difficult to operate. Furthermore, the acoustic devices are used in
different modes and operated in various manners. Therefore they employ a variety of switches, push-
buttons, etc. Since the operator cannot easily locate them while driving, his attention to the road may be
10   distracted when operating the acoustic devices causing a dangerous condition.

In this connection, a method has been disclosed in unexamined published Japanese Patent Application
no. JP-A-61089720 in which, instead of switches or push-buttons for operating acoustic devices, there is
provided a touch panel, the different controls of the devices being effected by touching different positions
on the touch panel.

15   The conventional touch panel method will be described with reference to Figure 1. A touch panel 80
having interior detecting electrodes is scanned with a scanner 20 to detect when and at what point the
touch panel 80 has been touched. The detection output data of the scanner 20 is applied to a first memory
30, where the detection output data of a scan is temporarily stored. The detection output data of one scan
read out of the first memory 30 is supplied to a recognizing block 40. A touch on the touch panel is pattern-
20   recognized by the recognizing block 40 for each scan of the scanner 20.

The output pattern data of the recognizing block 40 is applied to a second memory 50 and a data
comparator 60. The second memory 50 temporarily stores the recognized pattern data produced during one
scan and supplied thereto from the recognizing block 40. The data comparator 60 compares the output
pattern data of the recognising block with the pattern data of the preceding scan read out of the second
25   memory 50, to thereby detect any change in the pattern data. The comparison output data of the data
comparator 60 is supplied to a decision block 70 which outputs control data corresponding to the
comparison output data. In response to the comparison output data, the decision block 70 refers to a data
table (not shown) and outputs predetermined control data according to the touch on the touch panel 80. A
similar system is shown and described in WO-A-8505477 and the present invention is characterised
30   thereover.

As is apparent from the above description, in the conventional touch panel control device, the touch
data of the present scan is merely compared with that of the preceding scan. Therefore, if the scanning
speed is increased, the control device may judge no change in the touch position between two successive
scans because the distance the finger can move over a scanning period is related to the scanning speed. If,
35   on the other hand, the scanning speed is decreased, the following error may be encountered. If a finger
finely touches and is removed from the panel and the part of the panel touched has not yet been scanned
(for instance the right part of the panel in the case of scanning the panel in the left-to-right direction), then
that touch on the panel may not be detected.

Preferably, the entire panel surface should be scanned in about 10ms to prevent a detection miss.
40   However. if the scanning speed is set to about 10ms, there may be an erroneous detection because, as
mentioned above, finger speed cannot follow a rapid scanning speed.

Accordingly, an object of this invention is to eliminate the above-described difficulties with a conven-
tional touch panel control device.

According to the invention there is provided a touch panel control device for outputting commands,
45   according to how a finger touches a touch panel, the device comprising

touch position detecting means in a matrix form on said touch panel, for detecting a touch on the touch
panel and providing output signals;

means for detecting the co-ordinates of the touch position from the said output signals of the said touch
position detecting means and providing an output representative thereof;

50   scanning means for periodically providing a scanning signal to the touch position detecting means to
enable touch detection;

duration timer means for providing a time measurement signal on receipt of a trigger signal from the
touch position detecting means;

co-ordinate memory means for storing the co-ordinates of a current touch position on the touch panel
55   detected by the co-ordinate detecting means;

co-ordinate comparing means for comparing, for each scan, the coordinates of the previously stored
current touch position in the memory means with those of current touch position;
characterised by

2

EP 0 330 767 B1

an operation discriminator for determining, according to the relationship between the timer measurement signals received from the timer means and the results of the comparison from the co-ordinate comparing means, which of a plurality of predetermined outputs to issue, whereby, by the user touching and/or moving a finger across the touch panel, an operational mode for an electronic device can be
5    commanded, said operation discriminator including means for determining which output to issue from a plurality of predetermined outputs based upon the direction and distance the finger moves in a predetermined period of time and means for determining which output to issue from the said plurality of predetermined outputs based on the time duration that the finger touches the touch panel while moving less than a predetermined distance.

10    In the drawings:-
Fig. 1 is a block diagram showing a conventional touch panel control device;
Fig. 2 is a front view showing a touch panel in a touch panel control device according to the invention;
Fig. 3 is a block diagram showing the touch panel control device according to the invention;
Fig. 4 is a circuit diagram of one example of a touch position detecting means in the touch panel control
15    device of the invention.
Fig. 5 is a timing chart for a description of the operation of the touch position detecting means shown in Fig. 4;
Figs. 6, 7 and 8 are three parts of a flow chart for describing the operation of the touch panel control device of the invention; and
20    Figs. 9(a) and 9(b) are illustrations of displays on the touch panel.
In Fig. 2, reference numeral 1 designates a touch panel. Along the four sides of the touch panel are LEDs (light emitting diodes) 101 through 114 and light receiving means, namely, photo-transistors 201 through 214. They are alternately arranged in such a manner that the photo-transistors 201 through 214 receive light beams from the LEDs 101 through 114. respectively. The photo-transistors 201 through 214
25    provide high level (H) outputs upon reception of the light beams. The LEDs and the photo-transistors are alternately arranged along the side of the touch panel to eliminate the possibility that a photo-transistor might erroneously detect the light beam emitted by an adjacent LED rather than its corresponding LED.
The control system (Fig. 3) includes a touch operation discriminator 2. The discriminator 2 determines which finger movement is being performed by determining the direction of finger movement (ie. operation
30    by the user) and the time period over which the finger touches the touch panel. A respective operation output is applied to a command discriminator 12. The command discriminator 12 supplies an operation command to a system controller 13 in response to the operation discriminated by the operation discriminator 2. The operation command controls the operation of an electronic device such as a cassette player, radio tuner, or compact disk player, and data representing the operating condition thereof is fed back to the
35    command discriminator 12.
The operation discriminator 2 also applies a scanning pulse signal (STB signal) to a timing circuit 3 with a period of about 10ms as shown in the timing chart of Fig. 5. The scanning time is not necessarily 10ms. It should be determined on the basis of the speed of the finger scanning the panel. During the generation of the STB signal, the timing circuit 3 produces pulses for activating the LEDs 101 through 114 in Fig. 2 so
40    that turn-on input voltages are successively applied to the input terminals 301 through 314 of the LEDs 101 through 114. The light from the LEDs 101 through 114 is applied to the photo-transistors 201 through 214, respectively, the outputs of which are provided at an output terminal 400 in Fig. 4. The timing of these serial outputs is as indicated in Fig. 5. The serial outputs are applied to a serial-to-parallel converter 4, where they are converted into parallel outputs, which are latched by a data latch 5. One scanning operation is
45    completed when the timing circuit 3 has applied the input voltages to all the LEDs. During a waiting time T, the data latched by the data latch 5 is transferred to the operation discriminator 2.
The timing chart of Fig. 5 represents the case where the finger touches the touch panel at a point marked with a circle in Fig. 2. In this case, the outputs of the LEDs 106 and 111 are blocked and therefore the outputs of photo-transistors 206 and 211 are maintained at a low level (L). Therefore, the data latched
50    by the data latch circuit 5 is:
1 1 1 1 1 0 1 1 in the X-direction
1 1 0 1 1 1 in the Y direction
As apparent from the above, the coordinates of the touch position can be detected from the position of the "0" levels in the data latch.
55    During the waiting time T, the output of the data latch circuit 5 are simultaneously applied to a NOR gate 8, the output of which is raised to H when the finger touches the panel.
With further reference to Fig. 3. there is shown a coordinate memory 6 for storing the coordinates of a touch position at the start of a touch detecting operation or at the end of an operation (ie. it retains the touch

3

**EP 0 330 767 B1**

position until the next operation); and a timer 7 which is reset in synchronism with the storing operation of the coordinate memory 6, to start its time counting operation. The control system further comprises an arithmetic circuit (not shown) for comparing the coordinates of the present touch position with those stored in the coordinate memory 6, to detect the direction of movement of the finger on the panel 1; a touch
5    memory 10 for storing the touch and non-touch on the touch panel 1; and a command memory 11 for storing the user operation determining output which is discriminated by the operation discriminator 2 and applied to the command discriminator 12.

The operation discriminator 2 supplies a CMD signal representing the operation given to the touch panel 1 to the command discriminator 12. In response to the CMD signal the command discriminator 12
10   applies a command to the system controller 13 for operating the acoustic device.

In general, the following commands are required for acoustic devices used in vehicles:
   (1) Tape deck
      Fast forward, rewind, stop, repetitive playback, jump for station and playback.
   (2) Tuner
15      Up sweep, down sweep, preset channel up, preset channel down, channel preset, and auto tuning
   (3) Compact disk
      Playback, partial repeat, whole repeat, skip, stop, jump for music, and disk take-out.

As is apparent from the above, six or seven different commands are required for each acoustic device used in vehicles.
20   These commands can be issued by utilisation of, for example, seven finger movements or operations on the touch panel; movements of the finger upwardly, downwardly, right and left (in, D, R, & L),keeping the finger at a point (KEEP), touching the panel briefly (HIT) and touching the panel briefly twice (2HIT). The above described operations are discriminated by the discriminator 2 which provides outputs to the command discriminator 12 which gives appropriate commands to the acoustic devices.
25   The above-described operations can be discriminated not only by the contents of the arithmetic circuit, but also based on the touch memory circuit 10 in which the touch condition of the preceding scan is stored, the content of the command memory 11 which stores the command or output given to the command discriminator 12 before the scan, and the time determined by the timer 7.

For instance, the commands can be issued as follows:
30   (1) When the co-ordinate changes are at least four a second, the commands corresponding to U, D, R and L operations (movements) are outputted separately;
   (2) The command KEEP is outputted when the finger is kept on the touch panel for at least one second and moves three co-ordinate positions or less.
   (3) The command HIT is outputted when the finger is kept on the panel for 0.5 second or less, and
35   moves three coordinates or less.
   (4) The command 2HIT is outputted when, within two seconds after the issue of the command HIT, the finger is moved (operated) in the same manner as in the case of outputting the command HIT.

A method of discriminating the above-described finger operations will be described with reference to the flow charts of Figs. 6, 7. and 8.
40   In these figures, steps 1 through 7 form a routine for starting, when the finger touches the panel, storage of the co-ordinates of that position and the operation of the timer. After the operation discriminator 2 outputs a scan instruction signal (STB) in step 1, in step 2 it is determined whether or not the finger touches the panel. When it is determined that the finger has touched the touch panel in step 3 the coordinates of that position are read. In step 4, the content of the touch memory 10, which stores the touch condition of
45   the touch condition of the preceding scan, is read to determine whether or not the finger has touched the panel for the first time. If it is determined that the content of the touch memory 10 has been cleared, then in step 5 a "1" is written into the touch memory. In step 6 the above-described coordinates of the position are stored in the coordinate memory 6, and in step 7 the timer is reset and started.

50   (1) Discrimination of the finger operations U, D, R and L

Discrimination of the finger operations U. D, R and L is achieved in steps 8 through 17.
In step 8, the coordinates stored in the coordinate memory 10 are compared with the present coordinates to obtain the variations in the X- and Y-directions. In step 9, by referring to the command
55   memory 11 which stores the operation content outputted previously, it is determined whether or not the upward, downward, rightward or leftward operation has been applied to the command discriminator 12. If it is determined that one of such operations has been applied thereto, then it is unnecessary to discriminate the movement in that direction again, and steps 11 and 11' are effected in which the movement in a

4

EP 0 330 767 B1

direction perpendicular to the direction of that movement is detected so that the finger movement may not be regarded as "the finger is moved four coordinates twice", when the finger is moved eight coordinates or more. If no command is applied to the command discriminator 12, then in step 10 it is determined, from the above-described variations, whether the finger is moved horizontally or vertically.

In step 12, it is determined whether, in each of the X- and Y-directions, the finger is moved in the positive ( + ) direction or in the negative (-) direction, so that in step 13 the operation content corresponding to the direction of movement is provided.

In step 14, the operation content thus provided is applied to the command discriminator 12 (in this operation, the command discriminator 12 supplies the instruction to the system controller 13 which has been predetermined for the electronic equipment in use), and in step 15 the operation content is stored in the command memory 11.

In step 16, the coordinates stored in the coordinate memory are rewritten into those of the touch position obtained at the time of outputting the operation content, and in step 17, the timer is reset so that the following discrimination is carried out.

## (2) Discrimination of the finger operation KEEP

The finger operations KEEP and HIT are distinguished from each other according to how long the finger touches the touch panel. Therefore, if the finger operation KEEP is determined merely from the time count data of the timer 7, then the determination may include the finger operation HIT. That is, in the following case:

| 0 to 0.5 second | HIT |
| 0.5 to 1 second | Not applicable |
| More than 1 second | KEEP |

while the finger operation KEEP is discriminated the finger operation HIT may occur. In the case where the touch time is 0.5 to 1 second, no action is taken, as was listed above. This is to prevent an erroneous operation which may be caused when the finger operations are not strictly defined. Therefore, the step may be eliminated as the case may be.

Therefore, in a routine consisting of steps 18 through 25 as shown in Fig. 7, when at step 20 the time count data of the timer exceeds one (1) second and in step 22 it is determined that the finger operation KEEP has not been supplied as the operation content to the command discriminator 12, then it is supplied as the operation content to the command discriminator 12 in step 24. The reason why, in step 22, it is detected whether or not the finger operation KEEP has been supplied as the operation content is to prevent the difficulty that, when the finger touches the touch panel for more than two seconds, the finger operation KEEP may be provided as the operation content two or more times.

When in step 18 the touch time is shorter than 0.5 second, in step 19 the finger operation HIT is provided as the operation content; however, it is not applied to the command discriminator 12 yet in the flow chart.

## (3) Discrimination of the finger operations HIT and 2HIT

The finger operations HIT and 2HIT can be identified as shown in the flow chart of Fig. 8.

When in step 2 of Fig. 6 it is determined that the finger is not in touch with the touch panel, then in step 26 it can be determined by referring to the touch memory 10, adapted to store the touch or non-touch detected in the preceding scan, whether or not the touch was just now released. When it is determined that the touch was released just now, then the content of the touch memory 11 is "1". In step 27, the content of the touch memory 11 is cleared, and in step 29 it is determined whether or not the operation content is of the finger operation HIT. That is, if in step 19 of Fig. 7 the finger operation HIT is provided as the operation content, then step 30 is effected. In step 30, when it is determined from the content of the command memory 11 that nothing is provided, then the operation content, or HIT, is applied to the command discriminator 12. If the finger operation HIT is applied as the operation content in the command memory 11, then it is the second finger operation HIT, and therefore the finger operation 2HIT is applied as the operation content to the command discriminator 12. If the storage data of the command memory 11 is other than that, then in a routine of steps 36 through 38 the command memory and the operation content are cleared and the timer is stopped.

5

**EP 0 330 767 B1**

When in step 26 it is determined that the content of the touch memory 10 has been cleared since the preceding scan, then step 28 is effected. If, in step 28, the timer shows the lapse of two seconds, i.e. nothing is operated for two seconds, then the routine of steps 36, 37 and 38 is effected.

The operation discriminator 2 can apply the seven operating modes to the command discriminator 12 in 5 the above described manner.

In the operation discriminator 2, the above-described operation contents are converted into commands (outputs) suitable for the operations of the acoustic devices to be controlled in such a manner that any one of the commands can be used for a plurality of acoustic devices - for instance the finger operation R is used for the "up direction sweep" of a tuner and also for the "fast forward" of a tape deck. The commands 10 are applied to the system controller 13 by the command discriminator 12. In response to the commands, the system controller 13 controls the operations of the acoustic devices.

In the above-described embodiment, the seven finger operations are discriminated, and in response to the seven finger operations thus discriminated the command discriminator outputs the commands. If the seven finger operations are utilised in combination, then more commands can be issued.

15 For instance, in the case of a tape deck, the finger operations may be combined as follows: When, after the "fast forward" operation is selected by the finger operation R, the finger operation U is carried out, a so-called "FF Scan" operation can be performed in which the "fast forward" operation of the tape is carried out to detect an intermusic region, and after the sound reproduction is performed, the "fast forward" operation is carried out again. When the finger operation R is followed by the finger operation D, the "FF music 20 search" operation is carried out.

In this case, the system controller 13 applies data representing the operating condition of the acoustic device to the command discriminator 12 at all times, and the command provided by the command discriminator is determined according to the operating condition.

In the case of the tape deck described above, normally the finger operation R is used for the command 25 "fast forward", and the finger operation U is for the command "volume up". However, during the "fast forward" operation, the finger operation U is used to output the command "FF scan".

If a plurality of operation outputs are combined to provide a command in the above-described manner, then the finger operations can be applied to a variety of operation modes of acoustic devices mounted in a vehicle.

30 The touch panel 1 may comprise a picture display unit such as a cathode ray tub (CRT). The system controller 13 applies display mode data to a CRT driver 14 in correspondence to an acoustic device in use, thereby to control the display on the touch panel 1.

Figs. 9(a) and 9(b) show examples of a CRT display. More specifically, the part (a) of Fig. 9 shows a CRT display in the "tape deck" mode, and the part (b) of Fig. 9 shows a CRT display in a "tuner" mode.

35 In Fig. 9. the finger operations U,D, R and L are indicated by the arrows which are extended upwardly. downwardly, rightwardly and leftwardly, respectively, and finger operations HIT, 2HIT and KEEP are indicated by one dot, two dots and a bar, respectively; and the compound finger operations are indicated by the bent arrows - for instance the compound finger operation R U is indicated by the arrow which is extended rightwardly and then upwardly.

40 Therefore, merely by moving the finger according to the indications or marks displayed on the touch panel, the commands corresponding to the finger operations can be applied to the system controller 13.

The contents of the display on the display unit can be changed according to the operation conditions of an acoustic device to be controlled. For instance, for the "fast forward" operation of a tape deck, the mark "▷▷" is caused to flicker or its colour is changed, so that the operator can detect whether or not the finger 45 operation on the touch panel has been carried out correctly, to thereby prevent erroneous operation.

As shown in Fig. 9 the display mark "2nd" is provided for the finger operation KEEP. It can be utilized in the case where the number of finger operations is smaller than the number of commands to be issued. That is, in this case, the first picture display is switched over to the second picture display by one finger operation (KEEP in this case) so that the command discriminator 12 can provide commands different from 50 those used when the first picture display is employed. That is, more intricate operations of electronic devices can be controlled.

As is apparent from the above description, the predetermined commands can be issued according to the distance of movement of the finger over the touch panel, the period of time for which the finger touches the touch panel, and the number of time the touch panel is touched with the finger, and one and the same 55 touch panel can be used for a plurality of acoustic devices such as a cassette tape player and a radio tuner installed in a vehicle. Therefore, the limited space in the vehicle can be efficiently utilized, and the touch panel control device installed will never obstruct the operator's driving.

EP 0 330 767 B1

Furthermore, since the touch panel serves as the display unit, the probability of erroneous operation is decreased.

## Claims

5

1. A touch panel control device for outputting commands, according to how a finger touches a touch panel (1), the device comprising
   touch position detecting means (101,114,201,214) in a matrix form on said touch panel (1), for detecting a touch on the touch panel and providing output signals;
10   means (4,5) for detecting the co-ordinates of the touch position from the said output signals of the said touch position detecting means and providing an output representative thereof;
   scanning means (2,3) for periodically providing a scanning signal to the touch position detecting means to enable touch detection;
   duration timer means (7) for providing a time measurement signal on receipt of a trigger signal
15   from the touch position detecting means;
   co-ordinate memory means (6) for storing the co-ordinates of a current touch position on the touch panel detected by the co-ordinate detecting means (4,5);
   co-ordinate comparing means for comparing, for each scan, the coordinates of the previously stored current touch position in the memory means with those of a current touch position;
20   characterised by
   an operation discriminator (2) for determining, according to the relationship between the timer measurement signals received from the timer means (7) and the results of the comparison from the co-ordinate comparing means, which of a plurality of predetermined outputs to issue, whereby, by the user touching and/or moving a finger across the touch panel (1), an operational mode for an electronic
25   device can be commanded, said operation discriminator including means for determining which output to issue from a plurality of predetermined outputs based upon the direction and distance the finger moves in a predetermined period of time and means for determining which output to issue from the said plurality of predetermined outputs based on the time duration that the finger touches the touch panel while moving less than a predetermined distance.

30

2. A device according to claim 1, further including a command discriminator for receiving the outputs from the operation discriminator and for issuing respective operational commands to the electronic device.

3. A device as claimed in claim 1 or claim 2, wherein the touch position detecting means comprises light
35   emitting elements (101-114) and light receiving elements (201-214) arranged along the sides of the touch panel (1) in such a manner that said light receiving elements receive light beams emitted by respective light emitting elements.

4. A device as claimed in claim 2, in which the touch panel (1) comprises a picture display unit, the
40   display of which is changeable according to the operating conditions of the electronic device to be controlled.

## Patentansprüche

45   1. Eine Berührungsschalttafel-Steuereinrichtung zum Ausgeben von Befehlen entsprechend einer Art und Weise, wie ein Finger eine Berührungsschalttafel (1) berührt, wobei die Vorrichtung umfaßt:
   die Berührstellen nachweisende Vorrichtungen (101, 114, 201, 214), die in der Form einer Matrix auf der Berührungsschalttafel (1) angeordnet sind, um eine Berührung auf der Berührungsschalttafel nachzuweisen und Ausgabesignale zu schaffen;
50   Vorrichtungen (4, 5) zum Feststellen der Koordinaten der Berührungsstellen aus den Ausgabesignalen der, die Berührungsstellen nachweisenden Vorrichtungen und zum Schaffen einer Ausgabedarstellung davon;
   abrasternde Vorrichtungen (2, 3), um periodisch ein Abrastersignal für die, die Berührungslagen nachweisenden Vorrichtungen bereitzustellen, um einen Berührungsnachweis zu ermöglichen;
55   eine Zeitdauermeßvorrichtung (7), um ein Zeitmeßsignal nach Empfang eines Auslösesignals von den, die Berührungslage nachweisenden Vorrichtungen zu schaffen;
   eine Koordinatenspeichervorrichtung (6) zum Speichern der Koordinaten einer vorliegenden Berührungsstelle auf der Berührungsschalttafel, die von den, die Koordinaten feststellenden Vorrichtungen (4,

7

EP 0 330 767 B1

5) festgestellt wurden;
eine die Koordinaten vergleichende Vorrichtung zum Vergleichen der Koordinaten der vorher gespeicherten vorliegenden Berührungsstelle in der Speichervorrichtung mit denen einer gegenwärtig vorliegenden Berührungsstelle bei jedem Abrastervorgang;

**gekennzeichnet durch**
eine Betriebsunterscheidungsvorrichtung (2), um entsprechend der gegenseitigen Beziehung zwischen den von der Zeitmeßvorrichtung (7) empfangenen Zeitmeßsignalen und den Ergebnissen des Vergleichs von der die Koordinaten vergleichenden Vorrichtung zu bestimmen, welche Ausgaben aus einer Vielzahl von vorbestimmten Ausgaben auszugeben sind, wodurch, wenn der Benutzer die Berührungsschalttafel (1) berührt und/oder einen Finger darüber bewegt, eine Betriebsweise für eine elektronische Vorrichtung angewiesen werden kann, wobei die Betriebsunterscheidungsvorrichtung eine Vorrichtung einschließt, um zu bestimmen, welche Ausgabe von einer Vielzahl von vorbestimmten Ausgaben auf der Grundlage der Richtung und Entfernung des sich bewegenden Fingers während einer vorbestimmten Zeitdauer auszugeben ist, und die weiter eine Vorrichtung einschließt, um zu bestimmen, welche Ausgabe aus der Vielzahl von vorbestimmten Ausgaben auf der Grundlage der Zeitdauer, in der der Finger die Berührungsschalttafel berührt, wenn er weniger als eine vorbestimmte Strecke sich bewegt, auszugeben ist.

2.   Eine Vorrichtung nach Anspruch 1, die weiter eine Befehlsunterscheidungsvorrichtung einschließt, um die Ausgaben von der Betriebsunterscheidungsvorrichtung zu empfangen und entsprechende Betriebsanweisungen an die elektronische Vorrichtung auszusenden.

3.   Eine Vorrichtung nach Anspruch 1 oder 2, wobei die, die Berührungsstelle nachweisenden Vorrichtungen Licht emittierende Elemente (101-114) und Licht empfangende Elemente (201-214) umfassen, die entlang der Seiten der Berührungsschalttafel in einer solchen Weise angeordnet sind, daß die Licht empfangenden Elemente Lichtstrahlen empfangen, die von den entsprechenden Licht emittierenden Elementen emittiert wurden.

4.   Eine Vorrichtung nach Anspruch 2, in der die Berührungsschalttafel (1) eine Bildanzeigeeinheit umfaßt, deren Anzeige sich gemäß dem Betriebszustand der zu steuernden elektronischen Vorrichtung ändern kann.

**Revendications**

1.   Dispositif de commande de panneau tactile destiné à émettre des commandes conformément à la façon dont un doigt effleure un panneau tactile (1), le dispositif comprenant :
un moyen de détection de position d'effleurement (101, 114, 201, 214) sous forme matricielle situé sur ledit panneau tactile (1) pour détecter un effleurement sur le panneau tactile et pour produire des signaux de sortie ;
un moyen (4, 5) pour détecter les coordonnées de la position d'effleurement à partir desdits signaux de sortie dudit moyen de détection de position d'effleurement et pour produire une sortie représentative de celles-ci ;
un moyen de balayage (2, 3) pour produire périodiquement un signal de balayage pour le moyen de détection de position d'effleurement afin de permettre une détection d'effleurement ;
un moyen de minuterie de durée (7) pour produire un signal de mesure de temps suite à la réception d'un signal de déclenchement en provenance du moyen de détection de position d'effleurement ;
un moyen de mémoire de coordonnées (6) pour stocker les coordonnées d'une position d'effleurement courante sur le panneau tactile détecté par le moyen de détection de coordonnées (4, 5) ;
un moyen de comparaison de coordonnées pour comparer, pour chaque balayage, les coordonnées de la position d'effleurement courante stockées préalablement dans le moyen de mémoire à celles d'une position d'effleurement courante ;
caractérisé par :
un discriminateur de fonctionnement (2) pour déterminer, conformément à la relation qui lie les signaux de mesure de minuterie reçus depuis le moyen de minuterie (7) et les résultats de la comparaison en provenance du moyen de comparaison de coordonnées, laquelle d'une pluralité de sorties prédéterminées il convient de délivrer, d'où il résulte que, du fait de l'effleurement de l'utilisateur et/ou du déplacement d'un doigt sur le panneau tactile (1), un mode de fonctionnement pour

8

**EP 0 330 767 B1**

un dispositif électronique peut être commandé, ledit discriminateur de fonctionnement incluant un moyen pour déterminer quelle sortie il convient de délivrer parmi une des sorties prédéterminées sur la base de la direction et de la distance selon lesquelles le doigt se déplace pendant une période temporelle prédéterminée et un moyen pour déterminer quelle sortie il convient de délivrer parmi lesdites pluralités de sorties prédéterminées sur la base de la durée temporelle pendant laquelle le doigt affleure le panneau tactile tout en se déplaçant sur une distance inférieure à une distance prédéterminée.

2. Dispositif selon la revendication 1, incluant en outre un discriminateur de commande pour recevoir les sorties en provenance du discriminateur de fonctionnement et pour délivrer des commandes de fonctionnement respectives au dispositif électronique.

3. Dispositif selon la revendication 1 ou 2, dans lequel le moyen de détection de position d'effleurement comprend des éléments émetteurs de lumière (101-114) et des éléments récepteurs de lumière (201-214) agencés le long des côtés du panneau tactile (1) d'une manière telle que lesits éléments récepteurs de lumière reçoivent des faisceaux lumineux émis par les éléments émetteurs de lumière respectifs.

4. Dispositif selon la revendication 2, dans lequel le panneau tactile (1) comprend une unité d'affichage d'image dont l'affichage peut être modifié en relation avec les conditions de fonctionnement du dispositif électronique qui doit être commandé.

EP 0 330 767 B1



FIG. 1



FIG. 2

F I G.   3



EP 0 330 767 B1

EP 0 330 767 B1



FIG. 4

FIG. 5

EP 0 330 767 B1

# FIG. 6



EP 0 330 767 B1



FIG. 7



FIG. 9(a)

FIG. 9(b)

EP 0 330 767 B1



FIG. 8

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10315250 |
| **Filing Date:** | 10-Dec-2002 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus Goertz |
| **Filer:** | Marc Aron Berger |
| **Attorney Docket Number:** | NEONODE.P004 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Submission- Information Disclosure Stmt | 1806 | 1 | 180 | 180 |
| **Total in USD ($)** | | | | **180** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5265128 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 04-MAY-2009 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 09:58:36 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $180 |
| RAM confirmation Number | 6235 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | Information Disclosure Statement (IDS) Filed (SB/08) | NEONODE_P004_IDS_4_May_2009.pdf | 608058<br>c778c8e6e1ab128465ca00f0e3eb08645d09775f | no | 4 |

**Warnings:**

**Information:**

A U.S. Patent Number Citation or a U.S. Publication Number Citation is required in the Information Disclosure Statement (IDS) form for autoloading of data into USPTO systems. You may remove the form to add the required data in order to correct the Informational Message if you are citing U.S. References. If you chose not to include U.S. References, the image of the form will be processed and be made available within the Image File Wrapper (IFW) system. However, no data will be extracted from this form. Any additional data such as Foreign Patent Documents or Non Patent Literature will be manually reviewed and keyed into USPTO systems.

| 2 | Foreign Reference | EP0330767.pdf | 894696<br>38b2b70ee97575a404c9671d5cc1baa33391d3df | no | 15 |

**Warnings:**

**Information:**

| 3 | Fee Worksheet (PTO-875) | fee-info.pdf | 29914<br>c5f0cf326fff54ac49d95594c23f88d2bae23d43 | no | 2 |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 1532668 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Attorney's Docket No.: <u>NEONODE.P004</u>     *PATENT*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Patent Application of:              )
                                          )      Examiner:  Ryan F. Pitaro
              Magnus Goertz               )
                                          )      Art Unit:   2174
Application No: 10/315,250                )
                                          )
Filed:     December 10, 2002              )
                                          )
For:       USER INTERFACE FOR            )
           MOBILE HANDHELD                )
           COMPUTER UNIT                  )
_____)

Mail Stop AMENDMENT
Commissioner for Patents
P. O. Box 1450
Alexandria, VA   22313-1450

## AMENDMENT AND RESPONSE TO OFFICE ACTION

## UNDER 37 C.F.R. §1.111

Sir:

In response to the Office Action dated December 23,

2008, applicant respectfully requests that the above-identified application

be amended as follows:

IN THE CLAIMS:

Please cancel claims **17** and **19** – **47** without prejudice.

Please substitute the following claims for the pending claims with the same number:

**1.** (currently amended)     A computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:

a touch sensitive area in which representations of ~~a plurality of functions~~ at least one function are displayed, and each function of said ~~plurality of functions~~ at least one function being mapped to a corresponding location in the touch sensitive area at which the representation of the function is displayed, and being activated by an object touching the corresponding location and then gliding along the touch sensitive area away from the touched location.

**2.** (currently amended)     The computer readable medium of claim **1**, wherein one function from the ~~plurality of functions~~ at least one function, when activated, causes the user interface to display icons representing different services or settings for a currently active application.

**3.** (previously presented)     The computer readable medium of claim **2**, wherein the user interface is characterised in, that a selection of a preferred service or setting is done by tapping on a display icon corresponding to the preferred service or setting.

**4.** (currently amended)          The computer readable medium of claim **1**, wherein one function from the ~~plurality of functions~~ at least one function, when activated, causes the user interface to display a keyboard and a text field.

**5.** (previously presented)          The computer readable medium of claim **4**, wherein said text field is used for inputting and editing of text through said keyboard.

**6.** (currently amended)          The computer readable medium of claim **1**, wherein one function from the ~~plurality of functions~~ at least one function, when activated, causes the user interface to display a list with a library of available applications and files on the mobile handheld computer unit.

**7.** (previously presented)          The computer readable medium of claim **6**, wherein the user interface is characterised in, that a selection of an application or file is done by gliding the object along said touch sensitive area so that a representation of a desired one of said application or file is highlighted, raising said object from said touch sensitive area, and then tapping on said touch sensitive area.

**8.** (previously presented)          The computer readable medium of claim **7**, wherein the user interface is characterised in, that at any given time said list presents only files or only applications, and that an area of said list presents a field through which said list can be changed from presenting files to presenting applications, or from presenting applications to presenting files.

**9.** (currently amended)        The computer readable medium of claim **7**, wherein the user interface is characterised in, that, one item in said list is highlighted by a moveable marking, and the user interface enables list navigation whereby gliding the object along the touch sensitive area in a direction towards the top of said list or towards the bottom of said list causes said marking to move in the same direction without scrolling the list.

**10.** (currently amended)        The computer readable medium of claim **9**, wherein the user interface is characterised in, that, if the number of applications or files in said list exceeds the number of applications or files that can be presented on said touch sensitive area as content, and if the object is (i) glided along said touch sensitive area to the top or bottom ~~position~~ of said touch sensitive area, then (ii) raised above said touch sensitive area, then (iii) replaced on said touch sensitive area, and then (iv) again glided along said touch sensitive area to the top or bottom of said touch sensitive area, said list navigation pages the content of said ~~touch sensitive area will be replaced~~ list up or down by one whole page.

**11.** (currently amended)        The computer readable medium of claim **10**, wherein the user interface is characterised in, that if the object is raised from any first position on said touch sensitive area and then replaced on any second position on said touch sensitive area, said list navigation can be continued from said second position.

**12.** (currently amended)        The computer readable medium of claim **1**, wherein the user interface is characterised in, that an active application, function, service or setting is ~~moved on~~ advanced one step by gliding the

object along the touch sensitive area from left to right, and that the active application, function, service or setting is closed or backed one step by gliding the object along the touch sensitive area from right to left.

**13.** (currently amended)         The computer readable medium of claim **1**, wherein the user interface is characterised in, that said representations of said ~~plurality of functions~~ at least one function are located at the bottom of said touch sensitive area.

**14.** (previously presented)         The computer readable medium of claim **1**, wherein the touch sensitive area is 2-3 inches in diagonal dimension.

**15.** (previously presented)         An enclosure adapted to cover the mobile handheld computer unit according to Claim **1**, characterised in, that said enclosure is provided with an opening for said touch sensitive area.

**16.** (previously presented)         The enclosure according to Claim **15**, characterised in, that said enclosure is removable and exchangeable.

**17.** (cancelled)

**18.** (currently amended)         [[A]] The computer readable medium ~~according to Claim **17**~~ of claim **1**, characterised in, that said computer program ~~product~~ code is adapted to function as a shell upon an ~~operations~~ operating system.

**19.** – **47.** (cancelled)

## REMARKS

Applicant has carefully studied the outstanding Office Action. The present amendment is intended to place the application in condition for allowance and is believed to overcome all of the objections and rejections made by the Examiner. Favorable reconsideration and allowance of the application are respectfully requested.

Applicant has cancelled claims **17** and **19** – **47**, and amended claims **1**, **2**, **4**, **6**, **9** - **13** and **18** to properly claim the present invention. No new matter has been introduced. Claims **1** – **16** and **18** are presented for examination.

In Paragraphs 3 and 4 of the Office Action, the Examiner has rejected claim **1** under 35 U.S.C. §102(e) as being anticipated by Nakajima et al., US Patent No. 6,346,935 ("Nakajima").

In Paragraphs 5 and 6 of the Office Action, the Examiner has rejected claims **2** – **11** and **14** – **18** under 35 U.S.C. §103(a) as being unpatentable over Nakajima in view of Rogue, "Palm Pilot: The Ultimate Guide, 2nd Edition ("Rogue"). Applicant has canceled claim **17** without acquiescence to the Examiner's reasons for rejection and respectfully submits that rejection of those claims is thus rendered moot.

In Paragraph 7 of the Office Action, the Examiner has rejected claims **12** and **13** under 35 U.S.C. §103(a) as being unpatentable over Nakajima in view of Rogue, and further in view of O'Rourke, US Patent No. 7,225,408 ("O'Rourke").

## **Distinctions between Claimed Invention and U.S. Patent No. 6,346,935 to Nakajima et al., Rogue, Palm Pilot: The Ultimate Guide, 2nd Edition, and U.S. Patent No. 7,225,408 to O'Rourke**

Aspects of the subject invention concern a touch-based user interface with functionalities for running interactive applications using touch-based icons, for inputting text using a touch-based keypad, and for managing files using a touch-based file listing.  User inputs include finger taps and movements.  One such movement is a "rubbing" / "swiping" / "touch-and-glide" movement, whereby a finger touches a touch-sensitive screen at a location where an icon for a function is displayed, and then rubs / swipes / glides, along the touch screen away from the location without lifting the finger.  The touch-and-glide movement of the subject claimed invention is illustrated in FIGS. 2, 7 and 10 of the original specification by a left-arrow and a thumb touching a touch-sensitive screen.

The touch-and-glide movement of the subject claimed invention is used to activate functions (original specification/ Abstract; page 2, lines 25 – 28; page 5, lines 24 – 27; FIG. 2; original claim **1**), and to scroll a selector forward and backward within a list to select a desired item in the list, and to page up and page down within a list (original specification/ page 3, lines 28 – page 4, line 2; page 7, lines 7 – 10; page 7, line 27 – page 9, line 14; FIGS. 7 and 10; original claims **7**, **9** and **10**).  The touch-and-glide movement of the subject claimed invention activates a function that corresponds to the icon displayed at the touch point.

Nakajima teaches several touch pads for operating a notebook personal computer.   The touch pads are designed efficiently so as to avoid waste of their touch-sensitive areas caused by raised frames

that surround the touch-sensitive areas. As shown in FIG. 13 of Nakajima, and described at col. 2, lines 52 – 65, for prior art touch pads, the regions of a touch-sensitive area that border the inner periphery of the frame, along a strip of width G, are blocked by the frame from access by a finger, F. As such, these border regions of the prior art touch-sensitive area are wasted.

The touch pads of Nakajima have frames with inner peripheries that are designed to enable a user to access border regions of the touch-sensitive areas. Examples of such designs are shown in FIGS. 5, 6 and 9 of Nakajima. A no-sensor area, denoted Ans in FIG. 9, separates an effective sensor area, denoted Ls in FIG. 9, from the inner periphery of frame 6E. Recesses and curvatures in the inner periphery of the frame make it possible for a finger to touch all portions of effective sensor area Ls, including the edges and corners thereof. Moreover, the inner periphery of frame 6E serves as a convenient guide, to assist the finger in moving to a desired edge and corner of effective sensor area Ls. In distinction, these edge and corner regions are inaccessible with the prior art touch pad shown in FIG. 13 of Nakajima.

The edge and corner regions of the touch-sensitive areas, when touched, trigger activation of functions corresponding to the touched regions. FIGS. 16 and 21 of Nakajima, and the description at col. 17, line 60 – col. 18, line 30, show an exemplary correspondence between border regions 2202 - 2207 of a touch-sensitive area 2101, and operations that they trigger when double-tapped.

Rogue is a user's guide for the PalmPilot device. Rogue teaches how to operate the PalmPilot's touch-based user interface, and the various functions that are available.

O'Rourke describes a medical information system and a user interface for medical staff to access, process and update patient record information via portable palmtop devices, and to transfer such information between portable devices. The user interface of O'Rourke is illustrated in FIGS. 9 – 20 of O'Rourke.

## Response to Examiner's Arguments

In rejecting independent claim **1**, the Examiner, citing Nakajima col. 15, lines 1 – 15, has indicated that Nakajima teaches activating a function by an object touching a location corresponding to the function and then gliding along the touch sensitive area away from the location.

Applicant respectfully submits that the frame-guided movement of Nakajima is of a fundamentally different nature than the touch-and-glide movement of the subject claimed invention. The frame-guided movement of Nakajima glides over a non-touch sensitive portion of the screen. Specifically, as shown in FIG. 9 of Nakajima and described at col. 16, line 4 – page 17, line 17, the gliding movement occurs over the no-sensor area Ans. As recited by Nakajima at col. 9, line 55: "*Between the inner periphery of the frame 6E and the effective sensor area Ls, there is an area including no sensors, that is, the non-sensor area Ans.*" Gliding an object over the no-sensor area Ans ensures that the edges and corners of the effective sensor area Ls are accessible and not wasted, which is the first objective of Nakajima (Nakajima/ col. 2, lines 52 – 65; col. 16, lines 19 – 24).

The following table summarizes some of the relevant distinctions.

| **TABLE I:** Partial list of distinctions between frame-guided movements of Nakajima and touch-and-glide movements of the claimed invention | |
| --- | --- |
| **Frame-guided movement of Nakamura** | **Touch-and-glide movement of the claimed invention** |
| Glide is over non-touch sensitive portion of screen | Glide is over touch-sensitive portion of screen |
| Glide followed by touch | Touch followed by glide |
| Glide is toward touch point | Glide is away from touch point |
| Glide is along periphery of touch-sensitive area | Glide is along interior of touch-sensitive area |
| Glide movement is guided by inner periphery of raised frame | Glide movement is unguided |
| Only the touch point is processed by the user interface | Both the touch point and the glide are processed by the user interface |
| Frame-guided touch has the same effect as a touch alone | Touch-and-glide has a different effect than a touch alone |

In rejecting dependent claim **2**, the Examiner, citing Rogue, Figure 1.2, has indicated that Rogue teaches a function which, when activated, causes the user interface to display icons representing different services or setting for a currently active application. Applicant respectfully submits that the PalmPilot applications buttons is used to display icons representing installed programs, and does not relate to a currently active application. Moreover, the PalmPilot applications button is used to launch a not-currently active application.

In rejecting dependent claims **6** and **8**, the Examiner, citing Rogue, Sidebar 1, Categories, has indicated that Rogue teaches a function which, when activated, causes the user interface to display a list of available applications and files. Applicant respectfully submits that the PalmPilot category pages described in Rogue do not display files. They only display installed applications, as indicated by Rogue in Sidebar 1.

Moreover, Rogue <u>does not describe changing the display from displaying only applications to displaying only files, and vice versa</u>.

In rejecting dependent claim **9**, the Examiner, citing Rogue, Figure 1.4, has indicated that Rogue teaches a gliding input that causes a marking to move up and down a list without scrolling the list. Applicant respectfully submits that the PalmPilot menus, as described in Rogue, are navigated via tapping and <u>not via gliding</u>.

In rejecting dependent claims **10** and **11**, the Examiner, citing Nakajima, col. 14, lines 45 – 57, has indicated that Nakajima teaches a compound movement, used to advance an entire page of a list, by (i) gliding an object along a touch-sensitive area to the top or bottom of the touch-sensitive area, (ii) raising the object from the touch-sensitive area, (iii) replacing the object on the touch-sensitive area, and (iv) gliding the object again along the touch-sensitive area to the top of bottom of the touch-sensitive area.  Applicant respectfully submits that Nakajima describes <u>an up/down scroll function</u>, which is not the glide-raise-replace-glide movement of the subject claimed invention. Moreover, the up/down scroll function causes a list to advance by one line, and <u>not by an entire page</u>.  Applicant further respectfully submits that Nakajima does not describe a list navigation movement that continues when the object is (i) raised from a first position on the touch-sensitive area, and (ii) replaced at a second position of the touch-sensitive area.

In order to further clarify these distinctions, applicant has amended claim **10** to elaborately list the four stages of the compound glide-raise-replace-glide list navigation movement.

In rejecting dependent claim **12**, the Examiner, citing Nakajima, col. 14, lines 45 – 57 and O'Rourke, Figure 13, has indicated

that Nakajima and O'Rourke teach advancing an active application / function / service / setting forward and backward one step by gliding an object along a touch-sensitive area respectively from left to right and from right to left.  Applicant respectfully submits that the forward and backward operations described in Nakajima and O'Rourke are performed by tapping on arrowheads, and not by gliding an object left to right, or right to left.  Use of touch-based scroll bars is described in Rogue with reference to Figure 1.2: "*To scroll … tap one of the up/down triangle buttons on the scroll bar …*".  Moreover, the cited location of Nakajima recites "*The double-headed arrow 18a … is a sign of an up/down scroll function … the user can understand … the region assigned the function …*"; i.e., tapping on sign 18a causes a scroll up.

The rejections of the claims **1** – **18** in paragraphs 3 - 7 of the Office Action will now be dealt with specifically.

As to amended independent claim **1** for a computer readable medium, applicant respectfully submits, as indicated hereinabove, that the limitation in claim **1** of

"*each function … being activated by an object touching the corresponding location and then gliding along the touch sensitive area away from the touched location*"

is neither shown nor suggested in Nakajima, Rogue or O'Rourke.

Additionally, as indicated hereinabove, the limitation in amended dependent claim **2** of

"*one function … when activated, causes the user interface to display icons representing different services or settings for a currently active application*"

is neither shown nor suggested in Nakajima, Rogue or O'Rourke.

Additionally, as indicated hereinabove, the limitation in amended dependent claim **6** of

"*one function … when activated, causes the user interface to display a list with a library of available applications and files on the mobile handheld computer unit*"

is neither shown nor suggested in Nakajima, Rogue or O'Rourke.

Additionally, as indicated hereinabove, the limitation in dependent claim **8** of

"*said list presents only files or only applications, and that an area of said list presents a field through which said list can be changed from presenting files to presenting applications, or from presenting applications to presenting files*"

is neither shown nor suggested in Nakajima, Rogue or O'Rourke.

Additionally, as indicated hereinabove, the limitation in amended dependent claim **9** of

"*list navigation whereby gliding the object along the touch sensitive area in a direction towards the top of said list or towards the bottom of said list causes said marking to move in the same direction without scrolling the list*"

is neither shown nor suggested in Nakajima, Rogue or O'Rourke.

Additionally, as indicated hereinabove, the limitation in amended dependent claim **10** of

"*if the object is (i) glided along said touch sensitive area to the top or bottom of said touch sensitive area, then (ii) raised above said touch sensitive area, then (iii) replaced on said touch sensitive area, and then (iv) again glided along said touch sensitive area to the top or bottom of said touch sensitive area, said list navigation pages the content of said list up or down by one whole page*"

is neither shown nor suggested in Nakajima, Rogue or O'Rourke.

Additionally, as indicated hereinabove, the limitation in amended dependent claim **11** of

"*if the object is raised from any first position on said touch sensitive area and then replaced on any second position on said touch sensitive area, said list navigation can be continued from said second position*"

is neither shown nor suggested in Nakajima, Rogue or O'Rourke.

Additionally, as indicated hereinabove, the limitation in amended dependent claim **12** of

"*an active application, function, service or setting is advanced one step by gliding the object along the touch sensitive area from left to right, and that the active application, function, service or setting is closed or backed one step by gliding the object along the touch sensitive area from right to left*"

is neither shown nor suggested in Nakajima, Rogue or O'Rourke.

Because claims **2** – **16** and **18** depend from claim **1** and include additional features, applicant respectfully submits that claims **2** – **16** and **18** are not anticipated or rendered obvious by Nakajima, Rogue, O'Rourke, or a combination of Nakajima, Rogue or O'Rourke.

Accordingly claims **1** – **16** and **18** are deemed to be allowable.

## **Support for Amended Claims in Original Specification**

Dependent claim **10** has been amended to include the limitations of the object being (i) glided along the touch sensitive area to the top or bottom position of the touch sensitive area, then (ii) raised above said touch sensitive area, then (iii) replaced on said touch sensitive area, and then (iv) again glided along said touch sensitive area to the top or bottom of said touch sensitive area.  These limitations are supported in the original specification at least at page 7, line 32 – page 8, line 10; and FIG. 9.

For the foregoing reasons, applicant respectfully submits that the applicable objections and rejections have been overcome and that the claims are in condition for allowance.

Respectfully submitted,

Dated: April 22, 2009

/Marc A. Berger/
Marc A. Berger
Reg. No. 44,029

P.O. Box 691
Soquel, CA   95073
(831) 426-8200

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10315250 |
| **Filing Date:** | 10-Dec-2002 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus Goertz |
| **Filer:** | Marc Aron Berger |
| **Attorney Docket Number:** | NEONODE.P004 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| Petition fee- 37 CFR 1.17(h) (Group III) | 1464 | 1 | 130 | 130 |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Miscellaneous: | | | | |
| **Total in USD ($)** | | | | **130** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5194866 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 22-APR-2009 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 04:29:42 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 130 |
| RAM confirmation Number | 5840 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | | NEONODE_P004_Amendment_22_April_2009.pdf | 93970 | yes | 15 |
|---|---|---|---|---|---|
| | | | 6e949083a93ff831ca0790fb0ce228745ce2b4e7 | | |

| | Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|---|
| | Document Description | Start | End | |
| | Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 | |
| | Claims | 2 | 5 | |
| | Applicant Arguments/Remarks Made in an Amendment | 6 | 15 | |

| Warnings: | | | | | |
|---|---|---|---|---|---|
| Information: | | | | | |
| 2 | Fee Worksheet (PTO-06) | fee-info.pdf | 29822 | no | 2 |
| | | | 9a7cb8d7b48f77e24a7dc5281634c6abc6c2ec40 | | |

| Warnings: | | |
|---|---|---|
| Information: | | |
| **Total Files Size (in bytes):** | | 123792 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 10/315,250 | Filing Date 12/10/2002 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

|  |  |  | SMALL ENTITY ☒ | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

## APPLICATION AS AMENDED – PART II

|  |  | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | OR | OTHER THAN SMALL ENTITY |  |
|---|---|---|---|---|---|---|---|---|

| | 04/22/2009 | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| A M E N D M E N T | Total (37 CFR 1.16(i)) | * 17 | Minus ** 47 | = 0 | X $26 = | 0 | X $ = | |
| | Independent (37 CFR 1.16(h)) | * 1 | Minus ***8 | = 0 | X $110 = | 0 | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | 0 | TOTAL ADD'L FEE | |

| |  | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| A M E N D M E N T | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/MYRTLE B. LEIGH/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

| | | |
|---|---|---|
| 75660          7590          12/23/2008 | | |

Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

| EXAMINER |
|---|
| PITARO, RYAN F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2174 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/23/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/315,250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** | |
| | RYAN F. PITARO | 2174 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a).  In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment.  See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>15 October 2008</u>.
2a)☐ This action is **FINAL**.      2b)☒ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-18</u> is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5)☐ Claim(s) _____ is/are allowed.
6)☒ Claim(s) <u>1-18</u> is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.
10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance.  See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All   b)☐ Some * c)☐ None of:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.
4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

Application/Control Number: 10/315,250                                    Page 2
Art Unit: 2174

## *Response to Amendment*

1.      This action is in response to the amendment filed 10/15/2008. In the amendment

claims 1-18 were amended. This action is non-final.

## *Continued Examination Under 37 CFR 1.114*

2.      A request for continued examination under 37 CFR 1.114, including the fee set

forth in 37 CFR 1.17(e), was filed in this application after final rejection.  Since this

application is eligible for continued examination under 37 CFR 1.114, and the fee set

forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action

has been withdrawn pursuant to 37 CFR 1.114.  Applicant's submission filed on

10/15/2008 has been entered.

## *Claim Rejections - 35 USC § 102*

3.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by
> another filed in the United States before the invention by the applicant for patent or (2) a patent
> granted on an application for patent by another filed in the United States before the invention by the
> applicant for patent, except that an international application filed under the treaty defined in section
> 351(a) shall have the effects for purposes of this subsection of an application filed in the United States
> only if the international application designated the United States and was published under Article 21(2)
> of such treaty in the English language.

Application/Control Number: 10/315,250                                    Page 3
Art Unit: 2174

4.      Claim 1 is rejected under 35 U.S.C. 102(e) as being anticipated by Nakajima et al

("Nakajima", 6,346,935).


        As per claim 1, Nakajima teaches a computer readable medium storing a

computer program with computer program code, which, when read by a mobile

handheld computer unit, allows the computer to present a user interface for the mobile

handheld computer unit, the user interface comprising: a touch sensitive area in which

representations of a plurality of functions are displayed (Column 15 lines 1-9, *function

signs*), and each function of said plurality of functions being mapped to a corresponding

location in the touch sensitive area at which the representation of the function is

displayed (Column 15 lines 1-9, *stops moving finger*), and being activated by an object

touching the corresponding location and then gliding along the touch sensitive area

away from the location (Column 15 lines 1-15, *stops moving finger then glides finger to

lightly press surface*).




**Claim Rejections - 35 USC § 103**

Application/Control Number: 10/315,250                               Page 4
Art Unit: 2174

5.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

6.      Claims 2-11,14-18 rejected under 35 U.S.C. 103(a) as being unpatentable over

Nakajima et al ("Nakajima", 6,346,935) in view of Rogue ("Rogue", Palm Pilot: The

Ultimate Guide, 2nd Edition).


        As per claim 2, Nakajima fails to particularly disclose a function to display a

plurality of functions. However, Rogue teaches a computer readable medium of claim 1,

wherein one function from the plurality of functions, when activated, causes the user

interface to display icons representing different services or settings for a currently active

application (Figure 1.2, *Tap the application button to display your application launching*

*screen*).Therefore it would have been obvious to an artisan at the time of the invention

to combine the teaching of Rogue with the medium of Nakajima. Motivation to do so

would have been to provide a way to reduce screen clutter and only access the

applications when needed.


        As per claim 3, Nakajima-Rogue teaches a computer readable medium of claim

2, wherein the user interface is characterised in, that a selection of a preferred service

or setting is done by tapping on a display icon corresponding to the preferred service or

setting (Nakajima, Column 18 lines 30-40, tap).

Application/Control Number: 10/315,250                                    Page 5
Art Unit: 2174

As per claim 4, Nakajima-Rogue teaches a computer readable medium of claim 1, wherein one function from the plurality of functions, when activated, causes the user interface to display a keyboard and a text field (Figure 2.5, power stroke up, Figure 2.6).

As per claim 5, Nakajima-Rogue teaches a wherein said text field is used for inputting and editing of text through said keyboard (Nakajima, Figure 2.6).

As per claim 6, Nakajima-Rogue teaches a computer readable medium of claim 1, wherein one function from the plurality of functions, when activated, causes the user interface to display a list with a library of available applications and files on the mobile handheld computer unit (Rogue, Sidebar 1, Categories).

As per claim 7, Nakajima-Rogue teaches a computer readable medium of claim 6, wherein the user interface is characterised in, that a selection of an application or file is done by gliding the object along said touch sensitive area so that a representation of a desired one of said application or file is highlighted, raising said object from said touch sensitive area, and then tapping on said touch sensitive area (Nakajima, Column 18 lines 40-56).

Application/Control Number: 10/315,250                                    Page 6
Art Unit: 2174

As per claim 8, Nakajima-Rogue teaches a computer readable medium of claim 7, wherein the user interface is characterised in, that at any given time said list presents only files or only applications, and that an area of said list presents a field through which the said list can be changed from presenting files to presenting applications, or from presenting applications to presenting files (Rogue, Sidebar 1, Categories).

As per claim 9, Nakajima-Rogue teaches a computer readable medium of claim 7, wherein the user interface is characterised in, that, one item in said list is highlighted by a moveable marking, and gliding the object along the touch sensitive area in a direction towards the top of said list or towards the bottom of said list, causes said marking to move in the same direction without scrolling the list (Rogue, Figure 1.4, using the menu).

As per claim 10, Nakajima-Rogue teaches a computer readable medium of claim 9, wherein the user interface is characterised in, that, if the number of applications or files in said list exceeds the number of applications or files that can be presented on said touch sensitive area as content, and if the object is glided along said touch sensitive area to the top or bottom position of said touch sensitive area, then raised, replaced on said touch sensitive area, and again glided along said touch sensitive area to the top or bottom of said touch sensitive area, the content of said touch sensitive area will be replaced one whole page (Nakajima, Column 14 lines 45-57).

Application/Control Number: 10/315,250                                    Page 7
Art Unit: 2174

As per claim 11, Nakajima-Rogue teaches a computer readable medium of claim 10, wherein the user interface is characterised in, that if the object is raised from any first position on said touch sensitive area and then replaced on any second position on said touch sensitive area, said navigation can be continued from said second position (Nakajima, Column 14 lines 45-57).

As per claim 14, while Nakajima-Rogue-O'Rourke fails to teach a touch sensitive area is 2-3 inches. OFFICIAL NOTICE is taken that screen sizes vary and screens with a touch sensitive area of 2-3 inches diagonally is well known in the art. Therefore it would have been obvious to an artisan at the time of the invention to combine the screen size with the medium of Nakajima-Rogue. Motivation to do so would have been to provide adequate size to operate the touch screen while keeping it small enough to fit in a pocket.

As per claim 15, Nakajima-Rogue teaches a enclosure adapted to cover the mobile handheld computer unit according to Claim 1, characterised in, that said enclosure is provided with an opening for said touch sensitive area (Rogue, Figure 1.1).

As per claim 16, Nakajima-Rogue fails to teach an enclosure is removable and exchangeable. OFFICIAL NOTICE is taken that an enclosure is removable and exchangeable is well known in the art. Therefore it would have been obvious to an

Application/Control Number: 10/315,250                                    Page 8
Art Unit: 2174

artisan at the time of the invention to combine the exchangeable enclosure with the

medium of Nakajima-Rogue. Motivation to do so would have been to provide a way to

style your mobile device so that it can be personalized to a user's taste.

As per claim 17, Nakajima-Rogue teaches a a computer readable medium, with a

computer program product stored therein, characterised in, that said computer program

product comprises computer readable code, which, when read by a computer, will make

it possible for said computer to present a user interface according to Claim 1 (Rogue,

1.1 Palm Pilot Basics).

As per claim 18, Nakajima-Rogue teaches a computer readable medium

according to Claim 17, characterised in, that said computer program product is adapted

to function as a shell upon an operations system (Rogue, 1.1 Palm Pilot Basics).

7.      Claims 12 and 13 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Nakajima et al ("Nakajima", 6,346,935) in view of Rogue ("Rogue", Palm Pilot: The

Ultimate Guide, 2nd Edition) in view of O'Rourke (O'Rourke, US 7,225,408).

As per claim 12, Nakajima-Rogue teaches a computer readable medium of claim 1, wherein the user interface is characterized in, that an active application, function, service or setting is moved on one step by gliding the object along the touch sensitive area from left to right (Nakajima, Column 14 lines 45-57). However, Nakajima-Rogue fails to distinctly point out closing or backing one step. However, O'Rourke teaches that the active application, function, service or setting is closed or backed one step (Figure 13, right and left arrows). Therefore it would have been obvious to an artisan at the time of the invention to combine the glide functionality with the forward and backward functionality of O'Rourke. Motivation to do so would have been to provide an easy way to traverse the GUI.

As per claim 13, Nakajima-Rogue-O'Rourke teaches a computer readable medium of claim 1, wherein the user interface is characterised in, that said representations of said plurality of functions are located at the bottom of said touch sensitive area (O'Rourke, Figure 13, icons at bottom right) .

Application/Control Number: 10/315,250                                    Page 10
Art Unit: 2174

### *Response to Arguments*

Applicant's arguments with respect to claims 1-18 have been considered but are moot in view of the new ground(s) of rejection.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to RYAN F. PITARO whose telephone number is (571)272-4071.  The examiner can normally be reached on 9:00am - 5:30pm Mondays through Fridays.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Stephen Hong can be reached on 571-272-4124.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 10/315,250                                    Page 11
Art Unit: 2174

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/R. F. P./                                   /Stephen S. Hong/
Examiner, Art Unit 2174                      Supervisory Patent Examiner, Art
                                             Unit 2178

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit | Page 1 of 1 |
| | RYAN F. PITARO | 2174 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-7,225,408 | 05-2007 | O'Rourke, Kevin | 715/743 |
| * | B | US-2002/0171691 | 11-2002 | Currans et al. | 345/864 |
| * | C | US-6,346,935 | 02-2002 | Nakajima et al. | 345/173 |
| * | D | US-6,085,204 | 07-2000 | Chijiwa et al. | 715/246 |
| * | E | US-5,053,758 | 10-1991 | Cornett et al. | 345/174 |
| * | F | US-7,286,063 | 10-2007 | Gauthey et al. | 341/34 |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | Venoila et al, T-Cube: A Fast, Self Disclosing Pen-Based Alphabet, 1994, pages 265-270 |
| | V | Karlson et al, AppLens and LaunchTile:Two Designs for One-Handed Thumb Use on Small Devices, CHI 2005 |
| | W | Dulberg et al, An Imprecise Mouse Gesture for the FAst Activation of Controls, Interact 1999, pages 1-8 |
| | X | Rogue, Palm Pilot: The Ultimate Guide, 2nd Edition,1998,  O'Reilly and Associates, Inc. pages 1-17 |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| **_Index of Claims_** | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| ☐ Claims renumbered in the same order as presented by applicant | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | 12/21/2008 | | | | | |
| | 1 | ✓ | ✓ | ✓ | | | | | |
| | 2 | ✓ | ✓ | ✓ | | | | | |
| | 3 | ✓ | ✓ | ✓ | | | | | |
| | 4 | ✓ | ✓ | ✓ | | | | | |
| | 5 | ✓ | ✓ | ✓ | | | | | |
| | 6 | ✓ | ✓ | ✓ | | | | | |
| | 7 | ✓ | ✓ | ✓ | | | | | |
| | 8 | ✓ | ✓ | ✓ | | | | | |
| | 9 | ✓ | ✓ | ✓ | | | | | |
| | 10 | ✓ | ✓ | ✓ | | | | | |
| | 11 | ✓ | ✓ | ✓ | | | | | |
| | 12 | ✓ | ✓ | ✓ | | | | | |
| | 13 | ✓ | ✓ | ✓ | | | | | |
| | 14 | ✓ | ✓ | ✓ | | | | | |
| | 15 | ✓ | ✓ | ✓ | | | | | |
| | 16 | ✓ | ✓ | ✓ | | | | | |
| | 17 | ✓ | ✓ | ✓ | | | | | |
| | 18 | ✓ | ✓ | ✓ | | | | | |
| | 19 | | ÷ | N | | | | | |
| | 20 | | ÷ | N | | | | | |
| | 21 | | ÷ | N | | | | | |
| | 22 | | ÷ | N | | | | | |
| | 23 | | ÷ | N | | | | | |
| | 24 | | ÷ | N | | | | | |
| | 25 | | ÷ | N | | | | | |
| | 26 | | ÷ | N | | | | | |
| | 27 | | ÷ | N | | | | | |
| | 28 | | ÷ | N | | | | | |
| | 29 | | ÷ | N | | | | | |
| | 30 | | ÷ | N | | | | | |
| | 31 | | ÷ | N | | | | | |
| | 32 | | ÷ | N | | | | | |
| | 33 | | ÷ | N | | | | | |
| | 34 | | ÷ | N | | | | | |
| | 35 | | ÷ | N | | | | | |
| | 36 | | ÷ | N | | | | | |

| | *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| | | 10315250 | GOERTZ, MAGNUS |
| | | Examiner | Art Unit |
| | | Ryan F Pitaro | 2174 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | 12/21/2008 | | | | | |
| | 37 | | ÷ | N | | | | | |
| | 38 | | ÷ | N | | | | | |
| | 39 | | ÷ | N | | | | | |
| | 40 | | ÷ | N | | | | | |
| | 41 | | ÷ | N | | | | | |
| | 42 | | ÷ | N | | | | | |
| | 43 | | ÷ | N | | | | | |
| | 44 | | ÷ | N | | | | | |
| | 45 | | ÷ | N | | | | | |
| | 46 | | ÷ | N | | | | | |
| | 47 | | ÷ | N | | | | | |
| | 48 | | | | | | | | |
| | 49 | | | | | | | | |
| | 50 | | | | | | | | |
| | 51 | | | | | | | | |
| | 52 | | | | | | | | |
| | 53 | | | | | | | | |
| | 54 | | | | | | | | |
| | 55 | | | | | | | | |
| | 56 | | | | | | | | |
| | 57 | | | | | | | | |
| | 58 | | | | | | | | |
| | 59 | | | | | | | | |
| | 60 | | | | | | | | |
| | 61 | | | | | | | | |
| | 62 | | | | | | | | |
| | 63 | | | | | | | | |
| | 64 | | | | | | | | |
| | 65 | | | | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| Update | Search | 11/8/2007 | RFP |
| Update | Search | 6/17/2008 | RFP |
| Update | Search | 12/21/2008 | RFP |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Update Search | 11/8/2007 | RFP |
| Update Search | 6/17/2008 | RFP |
| EAST | 12/21/2008 | RFP |
| Internet | 12/21/2008 | RFP |
| Safari Online Books | 12/21/2008 | RFP |
| IEEE | 12/21/2008 | RFP |
| ACM | 12/21/2008 | |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| S1 | 2 | "7441196".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2008/12/08 17:03 |
| S2 | 394 | swipe with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/08 17:05 |
| S3 | 606 | (glide swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/08 17:05 |
| S4 | 2 | "7286063".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/08 17:10 |
| S5 | 263 | ("20010003845" \| "20010012286" \| "20010016947" \| "20010034647" \| "20010042002" \| "20010044751" \| "20010049824" \| "20010051903" \| "20020007309" \| "20020010642" \| "20020016750" \| "20020029339" \| "20020032782" \| "20020035174" \| "20020038256" \| "20020038259" \| "20020042914" \| "20020042921" \| "20020049631" \| "20020056098" \| "20020059590" \| "20020067376" \| "20020077177" \| "20020078006" \| "20020078453" \| "20020098834" \| "20020116292" \| "20020116320" \| "20020166122" \| "20030046182" \| "20030074661" \| "20030095525" \| "20030126607" \| "20030140017" \| "20030146940" \| "20030149628" \| "20030182195" \| "20040003412" \| "20040098747" \| "20040103439" \| "20040117831" \| "20040128137" \| "20040133848" \| "20040148625" \| "20040204116" \| | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:12 |

"20040210824" | "20040260689" | "20050010949" |
"20050025550" | "20050075932" | "20050086690" |
"20050091118" | "20050160458" | "20050234895" |
"20050246231" | "20060155598" | "20060224987" |
"20070008332" | "3586771" | "4650977" | "4706121"
| "4992940" | "5041312" | "5064999" | "5119188" |
"5236199" | "5321749" | "5353016" | "5410326" |
"5479268" | "5532735" | "5553242" | "5559548" |
"5598523" | "5602596" | "5617570" | "5625781" |
"5710887" | "5727129" | "5734719" | "5758126" |
"5794210" | "5796252" | "5801702" | "5809204" |
"5819220" | "5822014" | "5828839" | "5832208" |
"5832459" | "5838314" | "5848396" | "5851149" |
"5874906" | "5878222" | "5890175" | "5893064" |
"5895454" | "5896133" | "5900905" | "5902353" |
"5903729" | "5911145" | "5918014" | "5918213").PN.
OR ("5925103" | "5931901" | "5935002" | "5946381" |
"5956681" | "5956693" | "5958012" | "5960411" |
"5961593" | "5978381" | "5990927" | "6002853" |
"6005562" | "6005631" | "6006257" | "6012049" |
"6014502" | "6018372" | "6025837" | "6028600" |
"6031537" | "6041312" | "6054989" | "6072483" |
"6072492" | "6075575" | "6078866" | "6091417" |
"6094156" | "6101473" | "6112186" | "6129274" |
"6138107" | "6142371" | "6151050" | "6151059" |
"6151596" | "6151630" | "6154205" | "6160552" |
"6167382" | "6172677" | "6177936" | "6193152" |
"6198481" | "6199050" | "6199077" | "6199098" |
"6205432" | "6205582" | "6211878" | "6212265" |
"6223215" | "6226623" | "6226642" | "6229540" |
"6237030" | "6243093" | "6253189" | "6260192" |
"6266060" | "6269343" | "6269361" | "6269403" |
"6271832" | "6282516" | "6285357" | "6285987" |
"6286017" | "6286043" | "6288716" | "6292779" |
"6292782" | "6292786" | "6292809" | "6295057" |
"6298330" | "6300947" | "6301566" | "6312336" |
"6314406" | "6317706" | "6330005" | "6330543" |
"6333753" | "6334108" | "6334145" | "6336131" |
"6337715" | "6345279" | "6356905" | "6381583" |

| | | "6388714" \| "6396531" \| "6397387" \| "6401132" \| "6407779" \| "6411307" \| "6411337" \| "6415270" \| "6417873" \| "6418441" \| "6421066" \| "6421071" \| "6421724" \| "6438540" \| "6445398" \| "6460181" \| "6476825" \| "6477575" \| "6484149" \| "6487189" \| "6487586" \| "6490555" \| "6509913" \| "6516311" \| "6522342" \| "6532312" \| "6535888" \| "6570582" \| "6571279" \| "6583800" \| "6606103" \| "6606280" \| "6606347").PN. OR ("6608633" \| "6615247" \| "6615248" \| "6618039" \| "6631523" \| "6636246" \| "6647373" \| "6662224" \| "6680714" \| "6684062" \| "6692358" \| "6704727" \| "6711552" \| "6714534" \| "6728731" \| "6769989" \| "6804786" \| "6826572" \| "6829646" \| "6857102" \| "6868525" \| "6907556" \| "6925595" \| "6928610" \| "6938073" \| "6973669" \| "6978263" \| "7013435" \| "7020845" \| "7051281" \| "7174512" \| "7293276" \| "7383515").PN. | | | | |
| S6 | 112 | touch with slide with function | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/08 17:14 |
| S7 | 13 | ("4366475" \| "4686332" \| "4821030" \| "4914624" \| "5402151" \| "5563632" \| "5596346" \| "5638060" \| "5687331" \| "5736974" \| "5736976" \| "5761485" \| "5838973").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:18 |
| S8 | 168267 | object near3 type | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:21 |
| S9 | 5 | (file item object) near3 type with open near3 respective | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:21 |
| S10 | 905 | open$3 with different with program | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/08 17:23 |
| S11 | 2 | multiple near3 file near3 selection with open | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/08 17:29 |
| S12 | 11 | applying with command with (plurality multiple) with files | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/08 17:29 |

| S13 | 29188 | (flick stroke) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | OFF | 2008/12/10 16:52 |
| S14 | 229 | (flick ) with (open application command) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:54 |
| S15 | 127 | (flick ) with (open application command) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:56 |
| S16 | 5 | (flick ) with (open application command) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:56 |
| S17 | 39 | (flick ) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:57 |
| S18 | 961 | (flick gesture) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:58 |
| S19 | 2324 | (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:58 |
| S20 | 77 | (flick gesture slide) and @ay<="2002" and "715"/702,864.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 16:59 |

| S21 | 6585 | finger near3 (flick gesture slide) and @ay<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 17:07 |
| S22 | 86 | finger near3 (flick gesture slide) and @ay<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 17:07 |
| S23 | 0 | "5543591,5943052,5907327,4686332".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 17:14 |
| S24 | 8 | ("5543591" "5943052" "5907327" "4686332").pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/10 17:15 |
| S25 | 93647 | (glide flick touch swipe) with screen | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:18 |
| S26 | 13098 | (glide flick touch swipe) with screen with (applications functions) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:20 |
| S27 | 88 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:20 |
| S28 | 430 | (glide flick touch swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:20 |

| S29 | 0 | (glide flick swipe) with screen with (applications functions) and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:21 |
| S30 | 11 | (glide flick swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:21 |
| S31 | 219 | (glide flick gesture swipe) with screen and "715"/$.ccls. and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:22 |
| S32 | 299 | (glide flick swipe) with screen and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:25 |
| S33 | 8 | (glide flick swipe) with screen with icon and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:26 |
| S34 | 16 | ("20010011308" \| "20030142138" \| "20040034801" \| "20050253817" \| "20050253817" \| "20050264833" \| "5821933" \| "5907327" \| "6633310").PN. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:30 |
| S35 | 451 | (glide flick swipe) with finger and @AY<="2002" | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:32 |
| S36 | 3 | (glide flick swipe) with finger and @AY<="2002" and "715"/$.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2008/12/17 13:32 |

| S37 | 13 | ("5250929" \| "5568604" \| "5579036" \| "5612719" \| "5661476" \| "5748185" \| "5767457" \| "5883617" \| "5928304" \| "5943043" \| "5943044" \| "5995083" \| "6049328").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/17 14:01 |
|---|---|---|---|---|---|---|
| S38 | 918 | 715/716.ccls. | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/17 15:38 |
| S39 | 7 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | OFF | 2008/12/17 15:38 |
| S40 | 9 | 715/716.ccls. and dvd near menu | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:38 |
| S41 | 334 | 715/716.ccls. and dvd | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:47 |
| S42 | 461 | 715/716.ccls. and menu | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:47 |
| S43 | 39 | 715/716.ccls. and menu and theme | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:48 |
| S44 | 243 | 715/716.ccls. and menu and effects | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:52 |
| S45 | 4 | 715/716.ccls. and menu with theme | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:53 |
| S46 | 1 | "7200836".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:56 |
| S47 | 1 | "20080120546".pn. | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/17 15:57 |
| S48 | 433 | 715/864.ccls. | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/21 23:26 |
| S49 | 60 | 715/864.ccls. and keyboard and back and icons and files | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/21 23:27 |
| S50 | 25 | 715/864.ccls. and keyboard and back and icons and files and removable | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/21 23:27 |
| S51 | 42 | 715/864.ccls. and keyboard and icons and files and @ay<="2002" | US-PGPUB; USPAT; USOCR | OR | ON | 2008/12/21 23:28 |

12/22/08 10:38:01 AM
C:\ Documents and Settings\ RPitaro\ My Documents\ EAST\ Workspaces\ 10315250.wsp



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE.P004 | 1226 |

75660          7590          10/15/2008
Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

| EXAMINER |
|---|
| PITARO, RYAN F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2174 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/15/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| ***Advisory Action*** <br> ***Before the Filing of an Appeal Brief*** | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit | |
| | RYAN F. PITARO | 2174 | |

*--The **MAILING DATE** of this communication appears on the cover sheet with the correspondence address --*

THE REPLY FILED <u>08 September 2008</u> FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE.

1. ☐ The reply was filed after a final rejection, but prior to or on the same day as filing a Notice of Appeal. To avoid abandonment of this application, applicant must timely file one of the following replies: (1) an amendment, affidavit, or other evidence, which places the application in condition for allowance; (2) a Notice of Appeal (with appeal fee) in compliance with 37 CFR 41.31; or (3) a Request for Continued Examination (RCE) in compliance with 37 CFR 1.114. The reply must be filed within one of the following time periods:

   a) ☐ The period for reply expires _____months from the mailing date of the final rejection.

   b) ☐ The period for reply expires on: (1) the mailing date of this Advisory Action, or (2) the date set forth in the final rejection, whichever is later. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection.

       Examiner Note: If box 1 is checked, check either box (a) or (b). ONLY CHECK BOX (b) WHEN THE FIRST REPLY WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION. See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a). The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee. The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) above, if checked. Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

<u>NOTICE OF APPEAL</u>

2. ☐ The Notice of Appeal was filed on _____. A brief in compliance with 37 CFR 41.37 must be filed within two months of the date of filing the Notice of Appeal (37 CFR 41.37(a)), or any extension thereof (37 CFR 41.37(e)), to avoid dismissal of the appeal. Since a Notice of Appeal has been filed, any reply must be filed within the time period set forth in 37 CFR 41.37(a).

<u>AMENDMENTS</u>

3. ☒ The proposed amendment(s) filed after a final rejection, but prior to the date of filing a brief, will <u>not</u> be entered because

   (a)☒ They raise new issues that would require further consideration and/or search (see NOTE below);

   (b)☐ They raise the issue of new matter (see NOTE below);

   (c)☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or

   (d)☐ They present additional claims without canceling a corresponding number of finally rejected claims.

      NOTE: *The newly added claim amendments would require further search and consideration as discussed in an interview.* (See 37 CFR 1.116 and 41.33(a)).

4. ☐ The amendments are not in compliance with 37 CFR 1.121. See attached Notice of Non-Compliant Amendment (PTOL-324).

5. ☐ Applicant's reply has overcome the following rejection(s): _____.

6. ☐ Newly proposed or amended claim(s) _____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).

7. ☒ For purposes of appeal, the proposed amendment(s): a) ☒ will not be entered, or b) ☐ will be entered and an explanation of how the new or amended claims would be rejected is provided below or appended.

   The status of the claim(s) is (or will be) as follows:

   Claim(s) allowed: _____.

   Claim(s) objected to: _____.

   Claim(s) rejected: _____.

   Claim(s) withdrawn from consideration: _____.

<u>AFFIDAVIT OR OTHER EVIDENCE</u>

8. ☐ The affidavit or other evidence filed after a final action, but before or on the date of filing a Notice of Appeal will <u>not</u> be entered because applicant failed to provide a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented. See 37 CFR 1.116(e).

9. ☐ The affidavit or other evidence filed after the date of filing a Notice of Appeal, but prior to the date of filing a brief, will <u>not</u> be entered because the affidavit or other evidence failed to overcome <u>all</u> rejections under appeal and/or appellant fails to provide a showing a good and sufficient reasons why it is necessary and was not earlier presented. See 37 CFR 41.33(d)(1).

10. ☐ The affidavit or other evidence is entered. An explanation of the status of the claims after entry is below or attached.

<u>REQUEST FOR RECONSIDERATION/OTHER</u>

11. ☐ The request for reconsideration has been considered but does NOT place the application in condition for allowance because: _____.

12. ☐ Note the attached Information *Disclosure Statement*(s). (PTO/SB/08) Paper No(s). _____

13. ☐ Other: _____.

   /Stephen S. Hong/
   Supervisory Patent Examiner, Art Unit 2178

**Application No.**

Attorney's Docket No.: <u>NEONODE.P004</u>        *PATENT*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In Re Patent Application of: | ) | |
| | ) | Examiner:  Ryan F. Pitaro |
| Magnus Goertz | ) | |
| | ) | Art Unit:    2174 |
| Application No: 10/315,250 | ) | |
| | ) | |
| Filed:       December 10, 2002 | ) | |
| | ) | |
| For:     USER INTERFACE FOR | ) | |
| MOBILE HANDHELD | ) | |
| COMPUTER UNIT | ) | |
| _____ | ) | |

Mail Stop AMENDMENT
Commissioner for Patents
P. O. Box 1450
Alexandria, VA   22313-1450

## <u>AMENDMENT AND RESPONSE TO OFFICE ACTION</u>
## <u>UNDER 37 C.F.R. §1.116</u>

Sir:

                In response to the Office Action dated July 11, 2008,
applicant respectfully requests that the above-identified application be
amended as follows:

DO NOT ENTER: /R.P./

10/06/2008

Approved for use through 10/31/2008. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
## (Submitted Only via EFS-Web)

| Application Number | 10/315,250 | Filing Date | 2002-12-10 | Docket Number (if applicable) | NEONODE.P004 | Art Unit | 2174 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Magnus Goertz | | | Examiner Name | Ryan F. Pitaro | | |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. The Instruction Sheet for this form is located at WWW.USPTO.GOV

## SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

[x] Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

     [ ] Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

     [ ] Other _____

[ ] Enclosed

     [ ] Amendment/Reply

     [ ] Information Disclosure Statement (IDS)

     [ ] Affidavit(s)/ Declaration(s)

     [ ] Other

## MISCELLANEOUS

[ ] Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of months _____
(Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

[ ] Other _____

## FEES

**The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
[ ] The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to Deposit Account No _____

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

[x] Patent Practitioner Signature

[ ] Applicant Signature

Approved for use through 10/31/2008. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | | |
|---|---|---|---|
| Signature | /Marc A. Berger/ | Date (YYYY-MM-DD) | 2008-10-15 |
| Name | Marc A. Berger | Registration Number | 44029 |

This collection of information is required by 37 CFR 1.114.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10315250 |
| **Filing Date:** | 10-Dec-2002 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus Goertz |
| **Filer:** | Marc Aron Berger |
| **Attorney Docket Number:** | NEONODE.P004 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Request for continued examination | 1801 | 1 | 810 | 810 |
| **Total in USD ($)** | | | | **810** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 4121130 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 75660 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NEONODE.P004 |
| **Receipt Date:** | 15-OCT-2008 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 17:33:26 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $810 |
| RAM confirmation Number | 2961 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | Request for Continued Examination (RCE) | NeonodeP004RCE.pdf | 697150 ca2986bf4145018741de9c2f319d642ff82a057d | no | 3 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (PTO-06) | fee-info.pdf | 29864 65d0586c07529883cd3a52375b89fdbbba39fc41 | no | 2 |

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | | 727014 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | NEONODE. P004 |

**CONFIRMATION NO. 1226**

75660
Soquel Group, LLC
P.O. Box 691
Soquel, CA 95073

**POA ACCEPTANCE LETTER**

*OC000000032006069*

Date Mailed: 09/11/2008

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 09/03/2008.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

/sleutchit/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 |

**CONFIRMATION NO. 1226**

60956
Professional Patent Solutions
P.O. BOX 654
HERZELIYA PITUACH, 46105
ISRAEL

**POWER OF ATTORNEY NOTICE**

*OC000000032006022*

Date Mailed: 09/11/2008

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 09/03/2008.

- The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

/sleutchit/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101



AF/FFW

PTO/SB/81 (07-08)
Approved for use through 12/31/2008. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| POWER OF ATTORNEY OR REVOCATION OF POWER OF ATTORNEY WITH A NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | Application Number | 10/315,250 |
|---|---|---|
| | Filing Date | December 10, 2002 |
| | First Named Inventor | Magnus Goertz |
| | Title | USER INTERFACE |
| | Art Unit | 2174 |
| | Examiner Name | Pizarro, Ryan F. |
| | Attorney Docket Number | NEONODE.P004 |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

**OR**

☒ I hereby appoint Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| 75660 |
|---|

**OR**

☐ I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| Practitioner(s) Name | Registration Number |
|---|---|
| | |
| | |
| | |
| | |

Please recognize or change the correspondence address for the above-identified application to:

☒ The address associated with the above-mentioned Customer Number.

**OR**

☐ The address associated with Customer Number:

**OR**

| ☐ Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Email |

I am the:

☐ Applicant/Inventor.

**OR**

☒ Assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) (Form PTO/SB/96) submitted herewith or filed on _____

**SIGNATURE of Applicant or Assignee of Record**

| Signature | [signature] | Date | 28 August 2008 |
|---|---|---|---|
| Name | Per Bystedt | Telephone | + 46 8 678 1850 |
| Title and Company | CEO, Neonode | | |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☐ *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/96 (08-08)
Approved for use through 08/31/2008. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(b)

Applicant/Patent Owner:  Neonode AB

Application No./Patent No.:  10/315,250          Filed/Issue Date:  December 10, 2002

Entitled:     USER INTERFACE

Neonode AB_____, a     corporation_____
(Name of Assignee)                              (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that it is:
1. ☑ the assignee of the entire right, title, and interest; or

2. ☐ an assignee of less than the entire right, title and interest
    (The extent (by percentage) of its ownership interest is_____ %)

in the patent application/patent identified above by virtue of either:

A.☐ An assignment  from the inventor(s) of the patent application/patent identified above. The assignment was recorded
    in the United States Patent and Trademark Office at Reel _____, Frame _____, or for which a copy
    thereof is attached.
OR
B.☑ A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

    1. From:  Magnus Goertz_____          To:  Neonode Sweden AB_____
       The document was recorded in the United States Patent and Trademark Office at
       Reel _018163_____, Frame _0611____, or for which a copy thereof is attached.

    2. From:  Neonode Sweden AB_____          To:  Neonode AB_____
       The document was recorded in the United States Patent and Trademark Office at
       Reel _018137_____, Frame _0448____, or for which a copy thereof is attached.

    3. From: _____          To: _____
       The document was recorded in the United States Patent and Trademark Office at
       Reel _____, Frame _____, or for which a copy thereof is attached.

    ☐ Additional documents in the chain of title are listed on a supplemental sheet.

☑ As required by 37 CFR 3.73(b)(1)(i), the documentary evidence of the chain of title from the original owner to the
assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

    [NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment
    Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP
    302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

_____          ____28 August 2008____
                Signature                                       Date

_____          +46 8 678 1850
Per Bystedt                                         Telephone Number
        Printed or Typed Name

CEO, Neonode_____
                Title

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

Attorney's Docket No.: NEONODE.P004      *PATENT*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Patent Application of:                )
                                            )       Examiner:  Ryan F. Pitaro
            Magnus Goertz                   )
                                            )       Art Unit:   2174
Application No: 10/315,250                  )
                                            )
Filed:     December 10, 2002                )
                                            )
For:       USER INTERFACE FOR              )
           MOBILE HANDHELD                  )
           COMPUTER UNIT                    )
_____)

Mail Stop AMENDMENT
Commissioner for Patents
P. O. Box 1450
Alexandria, VA    22313-1450


## AMENDMENT AND RESPONSE TO OFFICE ACTION

## UNDER 37 C.F.R. §1.116

Sir:

            In response to the Office Action dated July 11, 2008,

applicant respectfully requests that the above-identified application be

amended as follows:

IN THE DESCRIPTION:

Please amend the specification as follows.

Page 1, ninth full paragraph:

Since the users have gotten used to small handheld units, it is hard to move towards larger units. This has led to foldable keyboards, different kinds [[if]] of joy sticks and different kinds of touch sensitive displays and pads intended to help in providing a user interface that is suitable for small handheld compute computer units.

Page 2, first full paragraph:

It is a problem to provide a user-friendly interface that is adapted to handle a large amount of information and different kinds of traditional computer-related applications on a small handheld computer unit.

Page 3, sixth full paragraph:

In order to provide a task and file management in a user interface for a handheld mobile computer, the present invention teaches that, if the third function is activated, the display area is adapted to display a list with a library of available applications and files on the computer [[unit]] unit. A selection of an application will start the application, and a selection of a file will open the file in an application intended for the file.

Page 7, fifth full paragraph:

It should [[b]] be understood that all lists in the computer unit, such as a list of contact information in an address book, a

Atty. Docket No. NEONODE.P004          -2-

list of e-mail messages in a mailbox, or a telephone log, can be managed in the above described manner.

Page 7, sixth full paragraph:

The list 231 can be adapted to present only files or only applications.  In this case, the top area of the list 231 can present a field 233 through which the content [[if]] of the list 231 can be altered.  If the list only presents files, then the field 233 can display a representation of a task manager and a selection of the field 233 will cause the list 231 to alter to present only applications, and if the list 231 only presents applications, then the field 233 displays a representation of a file manager and a selection of the field 233 will cause the list 231 to alter and present only files.

Page 7, eighth full paragraph:

Figure 9 shows that if the number of applications and/or files in the list 231 exceeds the number of applications and/or files that can be presented on the display area 3, and if the object 4 is moved to the top or bottom position of the display area, then lifted, replaced on the display area, and then again moved to the top or bottom of the display area, then the content of the display area will be replaced one whole page, meaning that if the object 4 is positioned N at the bottom 3b of the display area 3, then lifted, replaced on the display area 3, and then again moved M to the bottom 3b of the display area 3, then the content 31 of the display area 3 will be replaced P by the following applications and/or files 32 in the list 231.  In the same way, but not shown in the figure, if the object is position positioned at the top of the display area, then lifted, replaced on the display area 3, and then again moved to the top of the

display area, the content of the display area will be replaced by the preceding applications and/or files in the list.

Publication No. US 2004/0109013 A1, paragraph [0069]:

As shown in figure 13, the present invention relates to a user interface for a hand held mobile unit that preferably can be manageable with one hand. Hence the present invention teaches that the user interface is adapted to a touch sensitive area [[I]] 1 with a size that is in the order of 2-3 inches, meaning the diagonal distance W between two corners of the touch sensitive area 1.

IN THE CLAIMS:

　　　　　　Please substitute the following claims for the pending claims with the same number:

**1.** (currently amended)　　　A computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:

　　　　　　a touch sensitive area ~~that is simultaneously divided into a menu area and a display area, the mobile handheld computer unit being adapted to run several applications simultaneously, and to present an active application on top of any other application on said display area, characterised in, that:~~

　　　　　　~~said menu area simultaneously presents~~ in which representations of a ~~first function that is a general application dependent function, a second function that is a keyboard function, and a third function that is a task and file manager~~ plurality of functions are displayed, and

　　　　　　each function of said ~~first, second, and third functions simultaneously represented in said menu area~~ plurality of functions being mapped to a corresponding location in the touch sensitive area at which the representation of the function is displayed, and being activated by ~~the single step of a blunt~~ an object touching the corresponding location and then gliding along the touch sensitive area away from the location ~~moving in a direction from a starting point that is the representation of the corresponding one of said first, second, and third functions in said menu area to said display area being detected by~~

said touch sensitive area, thereby allowing low precision navigation of the user interface using the blunt object, so that the user interface can be operated by one hand, where the blunt object is a finger.

**2.** (currently amended) The computer readable medium of claim **1**, wherein one function from the plurality of functions, when the mobile handheld computer unit runs an operating system, the user interface is characterised in, that, if said first function is activated, causes the user interface is adapted to display icons representing different services or settings depending on the current for a currently active application, that one of said icons always represents a "help" service, regardless of application, and that, if no application is current active on the mobile handheld computer unit, said icons are adapted to represent services or settings of the operating system of the mobile handheld computer unit.

**3.** (currently amended) The computer readable medium of claim **2**, wherein the user interface is characterised in, that a selection of a preferred service or setting is done by tapping on a corresponding display icon corresponding to the preferred service or setting.

**4.** (currently amended) The computer readable medium of claim **1**, wherein the user interface is characterised in,

that, if said second one function from the plurality of functions, when [[is]] activated, said display area is adapted causes the user interface to display a keyboard and a text field,

that, if a text passage in said active application is highlighted, said text passage is displayed in said text field for editing

through said keyboard and that said highlighted test passage is replaced by said edited text passage when said second function is deactivated, and

– that, if no text passage in said active application is highlighted, said text field is available for inputting and editing of text through said keyboard.

**5.** (currently amended) The computer readable medium of claim **4**, wherein the user interface is characterised in, that if no text passage in said active application is highlighted, said text field is used for inputting and editing of text through said keyboard, then

– said first function can be activated, or

– said second function can be closed, in which a choice of saving or deleting said inputted text is given, where the choice of saving said inputted text results in an activation of said first function, in which said first function will present services or settings available for said inputted text.

**6.** (currently amended) The computer readable medium of claim **1**, wherein the user interface is characterised in, that, if said third one function from the plurality of functions, when [[is]] activated, said display area is adapted causes the user interface to display a list with a library of available applications and files on the mobile handheld computer unit, that a selection of an application will start said application, and that a selection of a file will open said file in an application intended for said file.

**7.** (currently amended) The computer readable medium of claim **6**, wherein the user interface is characterised in, that a selection of an application or file is done by moving gliding the blunt object along said

touch sensitive area so that a representation of a desired one of said application or file is highlighted, ~~removing~~ raising said object from said touch sensitive area, and then tapping on said touch sensitive area, and that said desired one of said application or file is highlighted by placing some kind of marking on said representation of said application or file.

**8.** (currently amended)      The computer readable medium of claim **7**, wherein the user interface is characterised in, that at any given time said list ~~is adapted to present~~ presents only ~~said~~ files or only ~~said~~ applications, and that ~~a top~~ an area of said list presents a field through which ~~the content of~~ said list can be ~~altered~~ changed from presenting files to presenting applications, or from presenting applications to presenting files~~, that, if said list only presents files, said field displays a representation of a task manager and a selection of said field will cause said list to alter to present only applications, and that, if said list only presents applications, said field displays a representation of a file manager and a selection of said field will cause said list to alter and present only files~~.

**9.** (currently amended)      The computer readable medium of claim **7**, wherein the user interface is characterised in, that, [[a]] one item in said list is highlighted by a moveable marking, and ~~navigation in said list is performed by moving~~ gliding the ~~blunt~~ object along the touch sensitive area in a direction towards the top of said list or towards the bottom of said list~~, that the movement of the blunt object will cause~~ causes said marking to move in the same direction without scrolling the list~~, and that the speed of movement of said marking is lower than the speed of movement of the blunt object~~.

**10.** (currently amended) The computer readable medium of claim **9**, wherein the user interface is characterised in, that, if the number of applications ~~and/~~or files in said list exceeds the number of ~~application~~ applications [[and]] or files that can be presented on said ~~display~~ touch sensitive area as content, and if the ~~blunt~~ object is ~~moved~~ glided along said touch sensitive area to the top or bottom position of said ~~display~~ touch sensitive area, then ~~lifted~~ raised, replaced on said ~~display~~ touch sensitive area, and again ~~moved~~ glided along said touch sensitive area to the top or bottom of said ~~display~~ touch sensitive area, the content of said ~~display~~ touch sensitive area will be replaced one whole page~~, meaning that if the blunt object is positioned at the bottom of said display area, replaced on said display area, and then again moved to the bottom of said display area, the content of said display area will be replaced by the following applications and/or files in said list, and if the blunt object is positioned at the top of said display area, then lifted, replaced on said display area, and then again moved to the top of said display area, the content of said display area will be replaced by the preceding applications and/or files in the list~~.

**11.** (currently amended) The computer readable medium of claim **10**, wherein the user interface is characterised in, that if the ~~blunt~~ object is ~~removed~~ raised from any first position on said ~~display~~ touch sensitive area and then replaced on any second position on said ~~display~~ touch sensitive area, said navigation can be continued from said second position.

**12.** (currently amended) The computer readable medium of claim **1**, wherein the user interface is characterised in, that an active application,

function, service or setting is moved on one step by ~~moving~~ gliding the ~~blunt~~ object along the touch sensitive area from ~~the~~ left ~~of said display area~~ to ~~the~~ right ~~of said display area~~, and that the active application, function, service or setting is closed or backed one step by ~~moving~~ gliding the ~~blunt~~ object along the touch sensitive area from ~~the~~ right ~~of said display area~~ to ~~the~~ left ~~of said display area~~.

**13.** (currently amended)         The computer readable medium of claim **1**, wherein the user interface is characterised in, that said ~~menu area is positioned~~ representations of said plurality of functions are located at the bottom of said touch sensitive area~~, that said representation of said first function is positioned at the left side of said menu area, that said representation of said second function is positioned at the middle of said menu area, and that said representation of said third function is positioned at the right side of said menu area~~.

**14.** (currently amended)         The computer readable medium of claim **1**, wherein the ~~user interface is characterised in, that said user interface is adapted to a~~ touch sensitive area ~~with a size that~~ is 2-3 inches in diagonal dimension~~, and that said user interface is adapted to be operated by one hand when the mobile handheld computer unit is held in the one hand, wherein said blunt object is a fleshy part of the thumb of the one hand~~.

**15.** (currently amended)         An enclosure adapted to cover the mobile handheld computer unit according to Claim **1**, characterised in, that said enclosure is provided with an opening for said ~~display~~ touch sensitive area~~, and that a representation of said menu area is printed on top of said enclosure~~.

**16.** (previously presented)      The enclosure according to Claim **15**, characterised in, that said enclosure is removable and exchangeable.

**17.** (previously presented)      A computer readable medium, with a computer program product stored therein, characterised in, that said computer program product comprises computer readable code, which, when read by a computer, will make it possible for said computer to present a user interface according to Claim **1**.

**18.** (original)      A computer readable medium according to Claim **17**, characterised in, that said computer program product is adapted to function as a shell upon an operations system.

**19.** (withdrawn)  An apparatus, comprising:

a computing device configured to provide a plurality of features and/or services to a user, said computing device including a user interface that comprises:

a touchscreen for displaying to the user, individually at differing times, a plurality of display screens corresponding to said plurality of features and/or services and for allowing the user to navigate among said various differing features and/or services and among said plurality of display screens; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to navigate among said plurality of features and/or services and among said plurality of display screens, said user interface software configured to:

when said touchscreen is displaying a first display screen of said plurality of display screens, cause said computing

device to display a second display screen of said plurality of display screens in response to a first sweeping movement of the object along said touchscreen in a first direction, said computing device displaying said second display screen after the object has traversed a first predetermined extent of said touchscreen along said first direction; and

when said touchscreen is displaying said second display screen, cause said computing device to display said first display screen in response to a second sweeping movement of the object along said touchscreen in a second direction opposite said first direction, said computing device displaying said first display screen only after the object has traversed a second predetermined extent of said touchscreen along said second direction.

**20.** (withdrawn) An apparatus according to claim **19**, wherein said touchscreen has a left edge and a right edge when said touchscreen is properly oriented for viewing by the user and said first direction proceeds from a location at or proximate said left edge toward said right edge and said second direction proceeds from a location at or proximate said right edge toward said left edge.

**21.** (withdrawn) An apparatus according to claim **20**, wherein said touchscreen has a width extending from said left edge to said right edge and each of said first and second extents is substantially equal to said width.

**22.** (withdrawn) An apparatus according to claim **21**, wherein said touchscreen has a diagonal dimension of two inches to three inches.

**23.** (withdrawn) An apparatus according to claim **19**, wherein said computing device is sized to be cradled in a hand of an adult human user and so that, when so cradled, all points on said touchscreen are touchable by the thumb of the adult human user, the object being the thumb of the hand.

**24.** (withdrawn) An apparatus according to claim **19**, wherein each of the first and second sweeping movements does not drag any graphical feature displayed on said touchscreen during that one of the first and second sweeping movements.

**25.** (withdrawn) An apparatus, comprising:

a computing device configured to provide first and second menu-area functions to a user, said first menu-area function having a first-function display screen and said second menu-area function having a second-function display screen differing from said first-function display screen, said computing device including a user interface that comprises:

a touchscreen simultaneously divided into a menu region and a display region, said menu region containing first and second representations corresponding respectively to said first and second menu-area functions, said display region for displaying to the user at differing times said first-function and second-function display screens; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to select at differing times each of said first and second menu-area functions, said user interface software configured to:

display said first-function display screen in response to a first sweeping movement of the object along said touchscreen, the first sweeping movement starting at said first representation in said menu region and proceeding into said display region; and

display said second-function display screen in response to a second sweeping movement of the object along said touchscreen, the second sweeping movement starting at said second representation in said menu region and proceeding into said display region.

**26.** (withdrawn)  An apparatus according to claim **25**, wherein:

said touchscreen has a first edge and a second edge spaced from said first edge;

said first and second representations are each located proximate said first edge and spaced from one another along said first edge; and

the first and second sweeping movements each proceed in a direction toward said second edge.

**27.** (withdrawn)  An apparatus according to claim **25**, wherein said first-function display screen contains a plurality of icons corresponding respectively to a plurality of applications, said user interface software configured to activate any one of said plurality of applications in response to the user tapping the object on said touchscreen at a corresponding one of said plurality of icons.

**28.** (withdrawn) An apparatus according to claim **27**, wherein said second-function display screen contains a set of application functions, said set varying as a function of which one of said plurality of applications is active when the user makes the second movement.

**29.** (withdrawn) An apparatus according to claim **27**, wherein a particular application of said plurality of applications has a plurality of application screen displays, said user interface software configured so that when said particular application is active, the user forwardly steps through said plurality of application screen displays by sweeping the object across said touchscreen in a first direction and reversely steps through said plurality of application screen displays by sweeping the object across said touchscreen in a second direction opposite said first direction.

**30.** (withdrawn) An apparatus according to claim **25**, wherein said first display screen contains a soft-interface telephony keypad.

**31.** (withdrawn) An apparatus, comprising:

a computing device configured to run a software application configured to display a plurality of predetermined display screens, said computing device including a user interface that comprises:

a touchscreen for displaying to the user, individually at differing times, said plurality of predetermined display screens and for allowing the user to navigate among said plurality of predetermined display screens; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to

navigate among said plurality of predetermined display screens, said user interface software configured to:

activate said software application in response to a particular interaction of the object with said touchscreen;

forwardly step in series through ones of said plurality of predetermined display screens in response to corresponding respective individual instances of a first sweeping movement of the object along said touchscreen in a first direction; and

reversely step in series through ones of said plurality of predetermined display screens in response to corresponding respective individual instances of a second sweeping movement of the object along said touchscreen in a second direction different from said first direction.

**32.** (withdrawn) An apparatus according to claim **31**, wherein said particular interaction of the object with said touchscreen to activate said software application is a third sweeping movement of the object along said touchscreen in a third direction different from each of said first and second directions.

**33.** (withdrawn) An apparatus according to claim **32**, wherein said first and second directions are opposite one another and said third direction is perpendicular to each of said first and second directions.

**34.** (withdrawn) An apparatus, comprising:

a computing device configured to run software for providing to a user a plurality of services and/or functions, said computing device including:

a touchscreen for display to the user a graphical user interface and for allowing the user to navigate among said plurality of services and/or functions; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to navigate among said plurality of services and/or functions, said user interface software configured to:

present, in response to a sweeping movement of the object across said touchscreen, a display screen containing a plurality of display icons corresponding respectively to ones of said plurality of services and/or functions, the sweeping movement being spatially uncorrelated with information displayed on said touchscreen; and

when said touchscreen is displaying said plurality of display icons, launch one of said plurality of services and/or functions in response to the user tapping the object on said touchscreen at a location where said touchscreen displays the corresponding one of said plurality of display icons.

**35.** (withdrawn) An apparatus according to claim **34**, wherein said computing device contains a software application and said user interface is configured to present said plurality of display icons only if said software application is active during the sweeping movement of the object.

**36.** (withdrawn)  An apparatus according to claim **35**, wherein when said software application is active during the sweeping of the object, said display icons correspond to services and/or functions specific to said software application.

**37.** (withdrawn)  An apparatus, comprising:

a computing device containing software for providing to a user a plurality of services and/or functions, said computing device including:

a touchscreen for displaying to the user, individually at differing times, ones of various display screens associated with said plurality of services and/or functions and for allowing the user to navigate among said plurality of display screens so as to provide the user with access to said plurality of services and/or functions and for allowing the user to control functioning of ones of said plurality of services and/or functions; and

user interface software responsive to a set of movements of an object with respect to said touchscreen so as to allow the user to navigate among said plurality of display screens and to control functioning of ones of said plurality of services and/or functions, said set of movements including a plurality of sweeping movements having differing directionalities along said touchscreen, wherein said plurality of sweeping movements being spatially uncorrelated with information displayed on said touchscreen, said user interface software being configured to distinguish the plurality of sweeping movements from one another as a function of the differing directionalities so as to provide differing responses as a function of said differing directionalities.

**38.** (withdrawn) An apparatus according to claim **37**, wherein two sweeping movements of the plurality of sweeping movements have opposing directionality and said user interface software is configured to provide two opposing responses corresponding respectively to said two sweeping movements.

**39.** (withdrawn)  An apparatus according to claim **38**, wherein one of the two opposing responses is moving forward in a series of display screens and the other of the two opposing responses is moving backward in the series of display screens.

**40.** (withdrawn) An apparatus according to claim **37**, wherein each of the plurality of sweeping movements does not drag any graphical feature displayed on said touchscreen during that one of the plurality of sweeping movements.

**41.** (withdrawn)  An apparatus, comprising:

a computing device configured to provide a plurality of features, settings, applications and/or services to a user, said computing device including a user interface that comprises:

a touchscreen for displaying to the user a list of items corresponding to at least one of a plurality of features, settings, applications and/or services and for allowing the user to select any one of said items using said list; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to navigate among said list and to select any one of said items, said user interface software configured to move a highlight marking, having a

displayed location on said touchscreen, in a desired direction within said list in response to the user:

(a) contacting said touchscreen with the object at a first location that is a function of the desired direction, not said displayed location of said highlight marking;

(b) while keeping the object in contact with said touchscreen, moving the object along said touchscreen in the desired direction to a second location; and

(c) immediately following said moving of the object along said touchscreen to said second location, lifting the object from said touchscreen so as to establish a new location of said highlight marking.

**42.** (withdrawn) An apparatus according to claim **41**, wherein said user interface software is configured to, after the user has marked a desired one of said items by performing steps (a) through (c) so as to highlight said desired one with the highlight marking, select said desired one in response to the user tapping the object on said touchscreen without regard to said display location of the highlight marking.

**43.** (withdrawn) An apparatus, comprising:

a computing device configured to provide a plurality of features, settings, applications and/or services to a user, said computing device including a user interface that comprises:

a touchscreen for displaying to the user a list of items corresponding to at least one of said plurality of features, settings, applications and/or services and for allowing the user to select any one of said items using said list; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to scroll said list and to select any one of said plurality items, said user interface software configured to scroll said list in a desired direction in response to the user:

(a) contacting said touchscreen with the object at a first location that is a function of the desired direction of said scroll and that is not based on any soft scroll control displayed on said touchscreen; and

(b) while keeping the object in contact with said touchscreen, moving the object along said touchscreen in the desired direction to a second location, wherein said moving of the object causes said list to scroll in the desired direction.

**44.** (withdrawn)  An apparatus according to claim **43**, wherein said user interface software is configured to activate a selected one of said items in response to a user tapping the object on said touchscreen following the user lifting the object from the touchscreen after the user performs step (b).

**45**. (withdrawn)  An apparatus according to claim **43**, wherein said items are files.

**46.** (withdrawn)  An apparatus according to claim **43**, wherein said items are email messages.

**47.** (withdrawn)  An apparatus according to claim **43**, wherein each item is contact information for a corresponding contact.

## REMARKS

Applicant expresses appreciation to the Examiner for the courtesy of an interview granted to applicant's representative Marc A. Berger (Reg. No. 44,029). The interview was held by telephone on Thursday, September 4, 2008. The substance of the interview is contained in the Interview Summary, Form PTOL-413, prepared and entered by the Examiner. Claims **1** - **15** have been amended in accordance with the conclusions of the interview.

Applicant has carefully studied the outstanding Office Action. The present amendment is intended to place the application in condition for allowance and is believed to overcome all of the objections and rejections made by the Examiner. Favorable reconsideration and allowance of the application are respectfully requested.

Applicant has withdrawn claims **19** – **47**, and amended claims **1** – **15** to properly claim the present invention. No new matter has been added. Claims **1** – **18** are presented for examination.

In paragraphs 1 - 8 of the Office Action, the Examiner has rejected claims **1**, **4** – **7**, **12**, **15** and **17** under 35 U.S.C. §103(a) as being unpatentable over Carlson, F., Visual Quickstart Guide: Palm Organizers ("Carlson") in view of Milic-Frayling et al., US Publication No. 2004/0100510 ("Milic-Frayling"), and further in view of Conrad et al., US Patent No. 5,956,030 ("Conrad").

In paragraph 9 of the Office Action, the Examiner has rejected claims **2** and **3** under 35 U.S.C. §103(a) as being unpatentable over Carlson in view of Milic-Frayling, in view of Conrad, and further in view of Kopitzke et al., US Patent No. 6,988,246 ("Kopitzke").

In paragraph 10 – 13 of the Office Action, the Examiner has rejected claims **8 – 11** under 35 U.S.C. §103(a) as being unpatentable over Carlson in view of Milic-Frayling, in view of Conrad, and further in view of Wynn et al., US Patent No. 6,734,883 ("Wynn").

In paragraph 14 of the Office Action, the Examiner has rejected claim **13** under 35 U.S.C. §103(a) as being unpatentable over Carlson, in view of Milic-Frayling, and further in view of Conrad.

In paragraphs 15 and 16 of the Office Action, the Examiner has rejected claims **14** and **16** under 35 U.S.C. §103(a) as being unpatentable over Carlson, in view of Milic-Frayling, in view of Conrad, and further in view of Strietelmeier, Palm m100, The Gadgeteer ("Strietelmeier").

In paragraphs 17 and 18 of the Office Action, the Examiner has rejected claim **18** under 35 U.S.C. §103(a) as being unpatentable over Carlson, in view of Milic-Frayling, in view of Conrad, and further in view of Chew et al., US Patent No. 6,727,917 ("Chew").

**Distinctions between Claimed Invention and Carlson, F., Visual Quickstart Guide: Palm Organizers, US Publication No. 2004/0100510 of Milic-Frayling et al., US Patent No. 5,956,030 to Conrad et al., US Patent No. 6,988,246 to Kopitzke et al., US Patent No. 6,734,883 to Wynn et al., Strietelmeier, Palm m100, The Gadgeteer, and US Patent No. 6,727,917 to Chew et al.**

Aspects of the subject invention concern a touch-based user interface with functionalities for running interactive applications using touch-based icons, for inputting text using a touch-based keypad, and for managing files using a touch-based file listing.  User inputs include finger taps and thumb movements.  One such movement is a

thumb touch-and-glide, where the thumb touches a touch screen at a location where an icon for a function is displayed, and glides along the touch screen away from the location, as illustrated in FIG. 2 of the subject application.

Carlson describes how to use the Palm Organizer touch-based user interface. Through a series of pictures, Carlson shows how to run applications, view documents, access menus, and use an onscreen keyboard.

Milic-Frayling describes an interactive user interface for presenting search results on small display screens of handheld devices. Search results are annotated to highlight search hits, and text is wrapped so as to avoid the need for horizontal scrolling.

Conrad describes a window management system for keeping open windows offscreen in a drawer area (Conrad/ elements D1 – D4 of FIG. 1), and available for popping them back onscreen by clicking on a title bar or drawer handle of the offscreen window (Conrad/ FIGS. 2 – 4). Conrad also describes "spring loaded" enclosures for opening temporary windows for enclosure identifiers, during a drag operation (Conrad/ FIGS. 8A – 8D and 9A – 9E).

Kopitzke describes a touch-sensitive user interface for use in an aircraft with multiple cabin systems. A main menu (Kopitzke/ FIG. 4) provides an overview of cabin status, and information and data regarding the cabin systems. The main menu includes touch input keys for bringing up menus for each of the individual aircraft cabin systems, for monitoring and controlling their operation. Cabin systems include inter alia an audio system (Kopitzke/ FIG. 5), a video system, a lighting system (Kopitzke/ FIG. 6), a climate control system, a doors & hatches

system (Kopitzke/ FIG. 7), a water supply system (Kopitzke/ FIG. 8), an electric power supply system, and a data communication system.

Wynn describes a user interface for spinning through a list of items. The user interface displays a preview list of items and a postview list of items on opposite sides of a currently selected item in the list (Wynn/ FIG. 7).

Strietelmeier describes the mechanical casing, hardware components and software applications of the Palm m100 Organizer, in comparison with the Palm IIIc, the Palm V and the Handspring Visor.

Chew describes a user interface for running and interacting with multiple applications on small handheld device display screens. Chen describes a user interface display having a top portion with a navigation bar (Chew/ element 302 of FIG. 3) for navigating between different applications, a middle portion for graphically displaying outputs of a currently active application, and a bottom portion with an application menu bar (Chew/ element 304 of FIG. 3) for entering inputs to the currently active application.

The touch-based user interface of the subject claimed invention is generally operated by the thumb. The touch-based user interface of Carlson is generally operated by a stylus. Although, the user interface of Carlson may also be operated by the thumb, the natures of the two user interfaces are distinct. The subject claimed invention teaches "rubbing", "touch-and-glide" movements to operate a user interface, whereby the thumb touches a touch-sensitive screen and rubs, or glides, along the screen without lifting the thumb. In distinction, tap movements and one-stroke pen drags are used to operate the touch-based user interface of Carlson. In terms of motor skill, the touch-and-glide movements of the subject claimed invention are akin to pressing

with the thumb on a mechanical slider button, such as the slider button with HI/LO/OFF settings on a hair-dryer handle, and sliding the button up or down while it is pressed.

The touch-and-glide movements of the subject claimed invention are illustrated in FIGS. 2, 7 and 10 by a left-arrow and a thumb touching a touch-sensitive screen.

The touch-and-glide movements of the subject claimed invention are used to activate functions (original specification/ Abstract; page 2, lines 25 – 28; page 5, lines 24 – 27; FIG. 2; original claim **1**), and to scroll a selector forward and backward within a list to select a desired item in the list, and to page up and page down within a list (original specification/ page 3, lines 28 – page 4, line 2; page 7, lines 7 – 10; page 7, line 27 – page 9, line 14; FIGS. 7 and 10; original claims **7**, **9** and **10**).

The touch-and-glide movements of the subject claimed invention activate a function located at the touch point. The one-stroke pen drag movement of Carlson activates a pre-designated program, irrespective of where the pen drag begins; namely, the onscreen keyboard or a custom pre-designated program that may be substituted therefor.

Other conventional finger-based touch screens, such as the large touch screens used for self-serve check-in at airport terminals, use touch-sensitive input keys. In distinction, the touch-and-glide inputs of the subject claimed invention are of particular advantage for small handheld devices, where screen space is minimal.

**Response to Examiner's Arguments**

In rejecting independent claim **1**, the Examiner has cited the "one-stroke pen drag" (Carlson/ page 30; FIG. 2.22) as teaching that "*any one of said three functions can be activated when said touch sensitive area detects a movement of an object with its starting point within the representation of said function on said menu area and with a direction from said menu area to said display area*". In rejecting dependent claim **9**, the Examiner has cited dragging a vertical scroll bar (Carlson/ page 27). In rejecting dependent claim **12**, the Examiner has cited dragging a horizontal scroll bar (Carlson/ page 246; FIG. 14.2).

Applicant respectfully submits that the one-stroke drag of Carlson is very distinct from the location-based touch-and-glide movement of the subject invention (original specification/ FIG. 2). The following table summarizes some of the relevant distinctions.

| **TABLE I:** Partial list of distinctions between one-stroke drag of Carlson and location-based touch-and-glide movement of the claimed invention | |
|---|---|
| **One-stroke drag** | **Location-based touch-and-glide** |
| Default function is the onscreen keyboard; may be customized to activate a different pre-designated function. | The function displayed at the touch point is activated. |
| At any given time, may be used for activating only one pre-designated function. | At any given time, may be used for activating whichever function is touched, from among a plurality of functions. |
| The starting location has no bearing on the function that is activated. | The starting location determines which of the plurality of functions is activated. |
| Performed by a stylus. | Performed by the thumb. |
| Requires the user interface to recognize a vertical drag. | Requires the user interface to recognize a glide and identify the function displayed at the starting location of the glide. |
| Requires one hand to hold the device and another hand to perform the stylus movement. | The same hand may be used to hold the device and perform the thumb movement. |
| Not used for scrolling through a list. | Used for scrolling through a list. |

Applicant further respectfully submits that the scroll slider drag of Carlson is very distinct from the location-based touch-and-glide movement of the subject invention.  The following table summarizes some of the relevant distinctions.

| **TABLE II:** Partial list of distinctions between scroll slider drag of Carlson and location-based touch-and-glide movement of the claimed invention ||
|---|---|
| **Scroll slider drag** | **Location-based touch-and-glide** |
| Requires the user interface to recognize a horizontal drag or a vertical drag. | Requires the user interface to recognize a glide in any of a plurality of directions. |
| Performed by a stylus. | Performed by the thumb. |
| Requires one hand to hold the device and another hand to perform the stylus movement. | The same hand may be used to hold the device and perform the thumb movement. |
| Not used for scrolling through a list. | Used for scrolling through a list. |

In order to clarify these distinctions, applicant has amended claim **1** to include the limitation of each of the plurality of functions being mapped to a corresponding location in the touch sensitive area, and being activated by an object touching the corresponding location and then gliding along the touch sensitive area away from the location.

Applicant has carefully reviewed all of the cited prior art.  None of the cited prior art teaches the location-based touch-and-glide thumb movement of the subject claimed invention.  Specifically, Milic-Frayling and Conrad do not use touch screens.  Kopitzke uses touch input keys.  Wynn mentions touch sensitive displays with stylus pens.  Strietelmeier mentions writing with a stylus.  Chew uses a stylus to tap on a touch screen.

The rejections of the claims **1 – 18** in paragraphs 1 - 18 of the Office Action will now be dealt with specifically.

As to amended independent claim **1** for a computer readable medium, applicant respectfully submits that the limitation in claim **1** of

"*each function of said plurality of functions being mapped to a corresponding location in the touch sensitive area at which the representation of the function is displayed, and being activated by an object touching the corresponding location and then gliding along the touch sensitive area away from the location*"

is neither shown nor suggested in Carlson, Milic-Frayling, Conrad, Kopitzke, Wynn, Strietelmeier or Chew.

Because claims **2** – **18** depend from claim **1** and include additional features, applicant respectfully submits that claims **2** – **18** are not anticipated or rendered obvious by Carlson, Milic-Frayling, Conrad, Kopitzke, Wynn, Strietelmeier, Chew, or a combination of Carlson, Milic-Frayling, Conrad, Kopitzke, Wynn, Strietelmeier and Chew.

Accordingly claims **1** – **18** are deemed to be allowable.

## **Support for Amended Claims in Original Specification**

Independent claim **1** has been amended to include the limitation of each of a plurality of functions being mapped to a corresponding location in a touch sensitive area, and being activated by an object touching the corresponding location and then gliding along the touch sensitive area away from the location.  This limitation is supported in the original specification at least at page 2, lines 25 – 28, at page 5, lines 19 – 27, at FIGS. 1, 2, 7 and 10, and in the Abstract.

For the foregoing reasons, applicant respectfully submits that the applicable objections and rejections have been overcome and that the claims are in condition for allowance.

Respectfully submitted,

Dated: September 8, 2008

/Marc A. Berger/
Marc A. Berger
Reg. No. 44,029

P.O. Box 691
Soquel, CA   95073
(831) 426-8200

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 3900808 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 60956 |
| **Filer:** | Marc Aron Berger |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 3682-32 |
| **Receipt Date:** | 08-SEP-2008 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 11:05:11 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment After Final | NEONODEP004AmendmentAfterFinal.pdf | 141398<br>6268086be27b48a9dbd06ec1463153810d d11690 | no | 30 |

**Warnings:**

**Information:**

Total Files Size (in bytes):     141398

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

3.SEP.2008    8:43    MARC BERGER 972 8 9315208    NO.964    P. 4/39

**RECEIVED**
**CENTRAL FAX CENTER**

SEP 03 2008

PTO/SB/81 (07-08)
Approved for use through 12/31/2008. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| POWER OF ATTORNEY | Application Number | 10/915,350 |
| OR | Filing Date | December 10, 2002 |
| REVOCATION OF POWER OF ATTORNEY | First Named Inventor | Magnus Goertz |
| WITH A NEW POWER OF ATTORNEY | Title | USER INTERFACE |
| AND | Art Unit | 2174 |
| CHANGE OF CORRESPONDENCE ADDRESS | Examiner Name | Pitaro, Ryan K |
| | Attorney Docket Number | NEONODE.P004 |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

OR

☒ I hereby appoint Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

|  | 75660 |

OR

☐ I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| Practitioner(s) Name | Registration Number |
| --- | --- |
| | |
| | |
| | |
| | |

Please recognize or change the correspondence address for the above-identified application to:

☒ The address associated with the above-mentioned Customer Number.

OR

☐ The address associated with Customer Number: |  |

OR

| Firm or Individual Name | |
| --- | --- |
| Address | |
| City | | State | | Zip | |
| Country | | | | | |
| Telephone | | Email | | | |

I am the:

☐ Applicant/Inventor.

OR

☒ Assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) (Form PTO/SB/96) submitted herewith or filed on _____

**SIGNATURE** of Applicant or Assignee of Record

| Signature | | Date | 25 August 2008 |
| --- | --- | --- | --- |
| Name | Per Bystedt | Telephone | +46 8 678 1850 |
| Title and Company | CEO, Neonode | | |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

*Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

3. SEP.2008   8:43   MARC BERGER 972 8 9315208                                    NO.964   P.5/39

**RECEIVED**
CENTRAL FAX CENTER

SEP 03 2008

PTO/SB/96 (08-08)
Approved for use through 09/31/2008. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(b)

Applicant/Patent Owner: Neonode AB

Application No./Patent No.: 10/315,250          Filed/Issue Date: December 10, 2002

Entitled:   USER INTERFACE

Neonode AB _____ , a   corporation _____
(Name of Assignee)                              (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that it is:

1. [✓] the assignee of the entire right, title, and interest; or

2. [ ] an assignee of less than the entire right, title and interest
       (The extent (by percentage) of its ownership interest is _____ %)

in the patent application/patent identified above by virtue of either:

A. [ ] An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded
       in the United States Patent and Trademark Office at Reel _____ , Frame _____ , or for which a copy
       thereof is attached.

OR

B. [✓] A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

   1. From: Magnus Goertz                          To: Neonode Sweden AB
      The document was recorded in the United States Patent and Trademark Office at
      Reel   018163   , Frame   0511   , or for which a copy thereof is attached.

   2. From: Neonode Sweden AB                       To: Neonode AB
      The document was recorded in the United States Patent and Trademark Office at
      Reel   018197   , Frame   0448   , or for which a copy thereof is attached.

   3. From: _____                To: _____
      The document was recorded in the United States Patent and Trademark Office at
      Reel _____ , Frame _____ , or for which a copy thereof is attached.

   [ ] Additional documents in the chain of title are listed on a supplemental sheet.

[✓] As required by 37 CFR 3.73(b)(1)(i), the documentary evidence of the chain of title from the original owner to the
assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

[NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment
Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP
302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

_____                         28 August 2008
Signature                                               Date

Per Bystedt                                             +46 8 678 1850
Printed or Typed Name                                   Telephone Number

CEO, Neonode
Title

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the
USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to
complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any
comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer,
U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED
FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2

Ø 002



**RECEIVED**
**CENTRAL FAX CENTER**

SEP 03 2008

29 Aharoni Street, Suite #13  •  Rechovot 76282  •  Israel  •  Phone: 972-8-9315207  •  Fax: 972-8-9315208

# FACSIMILE COVER LETTER

**Note:** This facsimile contains PRIVILEGED and CONFIDENTIAL information intended only for use of the specific individual or entity named below. If you or your employer is not the intended recipient of this facsimile or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this facsimile or the information contained in it is strictly prohibited. If you have received this facsimile in error, please immediately notify the person named below at once by telephone and return the original facsimile to us at the address below. Thank you.

SENDER'S NAME:        Marc Berger
                      **Soquel Group LLC**
                      29 Aharoni Street, Suite #13
                      Rehovot  76282
                      ISRAEL

TRANSMISSION DATE:   September 3, 2008

PLEASE DELIVER TO:

        Recipient:           Examiner Ryan F. Pitaro, AU 2174
        Firm:                **United States Patent & Trademark Office**
        Fax No.:             571-273-8300
        City/State/Country:  Alexandria, VA  USA

COMMENTS:
Interview agenda for US Serial No. 10/315,250

WE ARE TRANSMITTING 39 PAGE(S) (including this cover letter) from:

                    FAX NO. 011-972-8-9315208

If you do not receive all of the pages or if any pages received are illegible, please contact our office.



RECEIVED
CENTRAL FAX CENTER

SEP 03 2008

29 Aharoni Street, Suite #13 • Rechovot 76282 • Israel • Phone: 972-8-9315207 • Fax: 972-8-9315208

September 3, 2008

BY FACSIMILE

Examiner Ryan F. Pitaro
**United States Patent & Trademark Office**
Alexandria, VA
USA

Dear Examiner Pitaro,

**RE:** Interview agenda for US Serial No. 10/315,250
USER INTERFACE FOR MOBILE HANDHELD COMPUTER UNIT
Filed on December 10, 2002
In the name of Neonode AB

This letter regards the agenda for our telephone interview, which is scheduled for Thursday, September 4, 2008 at 10:30 AM.

The above referenced application was recently transferred to me, and I am attaching the Power of Attorney I received and mailed to the USPTO.

For the interview, I would like to discuss the attached draft proposed amendment. Specifically, I would like to discuss the touch-and-glide thumb movement, variously referred to as "swiping", "rubbing", "gliding" and "sliding". This movement is described in claim 1 as "an object touching a location in the touch sensitive area at which the representation of the function is displayed and then gliding along the touch sensitive area away from the location."

I understand that you have seen a demonstration of Neonode's touch-sensitive user interface. I believe that the touch-and-glide movement of the claimed invention is different than the input movements disclosed in the cited prior art of Carlson, Milic-Frayling, Conrad, Kopitzke, Wynn, Strietelmeier and Chew.

www.soquelgroup.com

PAGE 2/39 * RCVD AT 9/3/2008 3:08:58 AM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/10 * DNIS:2738300 * CSID:972 8 9315208 * DURATION (mm-ss):05-46

Interview Agenda for US Serial No. 10/315,250         September 3, 2008

      The tables provided in the draft response summarize some of the distinguishing features of the touch-and-glide movement. In this regard, I would like to point out the following distinctions.

     a.     The touch-and-glide movement activates the function displayed at the touch point.

     b.     At any given time, the touch-and-glide movement may be used for activating any one of a plurality of different functions.

     c.     The touch-and-glide movement may also be used for scrolling up or down through a list.

     d.     Processing the touch-and-glide movement requires that the user interface recognize a glide and identify the function displayed at the starting location of the glide.

     e.     Processing the touch-and-glide movement requires that the user interface recognize a glide in any of a plurality of directions.

     f.     The same hand may be used to hold the device and perform the touch-and-glide thumb movement.

      This is what I would like to discuss during our telephone interview.

      I am also attaching a clean version of the proposed amended claims, without markings, for ease of reference.

      I appreciate your courtesy of granting the interview, and I look forward to speaking with you.

                         Sincerely yours,

                         Marc A. Berger
                         U.S. Reg. No. 44,029

Encl.   Power of Attorney (2 pages)
         Draft proposed amendment – not to be entered (29 pages)
         Clean version of amended claims without markings (5 pages)

3.SEP.2008   8:44    MARC BERGER 972 8 9315208                    NO.964   P.6/39

**RECEIVED**
**CENTRAL FAX CENTER**

Attorney's Docket No.: <u>NEONODE.P004</u>    *PATENT*    SEP 0 3 2008

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Patent Application of:                )
                                            ) Examiner:  Ryan F. Pitaro
        Magnus Goertz                       )
                                            ) Art Unit:   2174
Application No: 10/315,250                  )
                                            )
Filed:     December 10, 2002                )
                                            )
For:       USER INTERFACE FOR               )
           MOBILE HANDHELD                  )
           COMPUTER UNIT                    )
                                            )

Mail Stop AMENDMENT
Commissioner for Patents
P. O. Box 1450
Alexandria, VA   22313-1450

## <u>DRAFT PROPOSED AMENDMENT --</u>
## <u>NOT TO BE ENTERED</u>

Sir:

      In response to the Office Action dated July 11, 2008, applicant respectfully requests that the above-identified application be amended as follows:

PAGE 6/39 * RCVD AT 9/3/2008 3:08:58 AM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/10 * DNIS:2738300 * CSID:972 8 9315208 * DURATION (mm-ss):05-46

IN THE DESCRIPTION:

Please amend the specification as follows.

Page 1, ninth full paragraph:

Since the users have gotten used to small handheld units, it is hard to move towards larger units. This has led to foldable keyboards, different kinds [[if]] of joy sticks and different kinds of touch sensitive displays and pads intended to help in providing a user interface that is suitable for small handheld compute computer units.

Page 2, first full paragraph:

It is a problem to provide a user-friendly interface that is adapted to handle a large amount of information and different kinds of traditional computer-related applications on a small handheld computer unit.

Page 3, sixth full paragraph:

In order to provide a task and file management in a user interface for a handheld mobile computer, the present invention teaches that, if the third function is activated, the display area is adapted to display a list with a library of available applications and files on the computer [[unit]] unit. A selection of an application will start the application, and a selection of a file will open the file in an application intended for the file.

Page 7, fifth full paragraph:

It should [[b]] be understood that all lists in the computer unit, such as a list of contact information in an address book, a

Atty. Docket No. NEONODE.P004        -2-

list of e-mail messages in a mailbox, or a telephone log, can be managed
in the above described manner.

Page 7, sixth full paragraph:

The list 231 can be adapted to present only files or only
applications. In this case, the top area of the list 231 can present a field
233 through which the content [[if]] of the list 231 can be altered. If the
list only presents files, then the field 233 can display a representation of a
task manager and a selection of the field 233 will cause the list 231 to
alter to present only applications, and if the list 231 only presents
applications, then the field 233 displays a representation of a file manager
and a selection of the field 233 will cause the list 231 to alter and present
only files.

Page 7, eighth full paragraph:

Figure 9 shows that if the number of applications and/or
files in the list 231 exceeds the number of applications and/or files that
can be presented on the display area 3, and if the object 4 is moved to
the top or bottom position of the display area, then lifted, replaced on the
display area, and then again moved to the top or bottom of the display
area, then the content of the display area will be replaced one whole
page, meaning that if the object 4 is positioned N at the bottom 3b of the
display area 3, then lifted, replaced on the display area 3, and then again
moved M to the bottom 3b of the display area 3, then the content 31 of
the display area 3 will be replaced P by the following applications and/or
files 32 in the list 231. In the same way, but not shown in the figure, if
the object is position positioned at the top of the display area, then lifted,
replaced on the display area 3, and then again moved to the top of the

PAGE 8/39 * RCVD AT 9/3/2008 3:08:58 AM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/10 * DNIS:2738300 * CSID:972 8 9315208 * DURATION (mm-ss):05-46

display area, the content of the display area will be replaced by the preceding applications and/or files in the list.

Publication No. US 2004/0109013 A1, paragraph [0069]:

As shown in figure 13, the present invention relates to a user interface for a hand held mobile unit that preferably can be manageable with one hand.  Hence the present invention teaches that the user interface is adapted to a touch sensitive area [[I]] 1 with a size that is in the order of 2-3 inches, meaning the diagonal distance W between two corners of the touch sensitive area 1.

**RECEIVED**
**CENTRAL FAX CENTER**

SEP 03 2008

IN THE CLAIMS:

Please substitute the following claims for the pending
claims with the same number:

**1.** (currently amended)       A computer readable medium storing a
computer program with computer program code, which, when read by a
mobile handheld computer unit, allows the computer to present a user
interface for the mobile handheld computer unit, the user interface
comprising:

a touch sensitive area ~~that is simultaneously divided
into a menu area and a display area, the mobile handheld computer unit
being adapted to run several applications simultaneously, and to present
an active application on top of any other application on said display area,
characterised in, that:~~

~~said menu area simultaneously presents~~
in which representations of a ~~first function that is a general application
dependent function, a second function that is a keyboard function, and a
third function that is a task and file manager~~ plurality of functions are
displayed, and

each <u>function</u> of said ~~first, second, and
third functions simultaneously~~ represented in said menu area plurality of
functions being activated by ~~the single step of a blunt~~ an object touching
a location in the touch sensitive area at which the representation of the
function is displayed and then gliding along the touch sensitive area away
from the location ~~moving in a direction from a starting point that is the
representation of the corresponding one of said first, second, and third
functions in said menu area to said display area being detected by said
touch sensitive area, thereby allowing low precision navigation of the user~~

Atty. Docket No. NEONODE.P004           -5-

~~interface using the blunt object, so that the user interface can be~~
~~operated by one hand, where the blunt object is a finger.~~

**2.** (currently amended)        The computer readable medium of claim **1**, wherein <u>one function from the plurality of functions, when</u> ~~the mobile handheld computer unit runs an operating system, the user interface is characterised in, that, if said first function is~~ activated, <u>causes</u> the user interface ~~is adapted~~ to display icons representing different services or settings ~~depending on the current~~ <u>for a currently</u> active application~~, that one of said icons always represents a "help" service, regardless of application, and that, if no application is current active on the mobile handheld computer unit, said icons are adapted to represent services or settings of the operating system of the mobile handheld computer unit~~.

**3.** (currently amended)        The computer readable medium of claim **2**, wherein the user interface is characterised in, that a selection of a preferred service or setting is done by tapping on a ~~corresponding~~ <u>display</u> icon <u>corresponding to the preferred service or setting</u>.

**4.** (currently amended)        The computer readable medium of claim **1**, wherein ~~the user interface is characterised in,~~

        ~~that, if said second~~ <u>one</u> function <u>from the plurality of functions, when</u> [[is]] activated, ~~said display area is adapted~~ <u>causes the user interface</u> to display a keyboard and a text field~~,~~

        ~~that, if a text passage in said active application is highlighted, said text passage is displayed in said text field for editing through said keyboard and that said highlighted test passage is replaced by said edited text passage when said second function is deactivated, and~~

Atty. Docket No. NEONODE.P004          -6-

that, if no text passage in said active application is highlighted, said text field is available for inputting and editing of text through said keyboard.

**5.** (currently amended)       The computer readable medium of claim **4**, wherein ~~the user interface is characterised in, that if no text passage in said active application is highlighted,~~ said text field is used for inputting and editing of text through said keyboard~~, then~~

~~said first function can be activated, or~~

~~said second function can be closed, in which a choice of saving or deleting said inputted text is given, where the choice of saving said inputted text results in an activation of said first function, in which said first function will present services or settings available for said inputted text.~~

**6.** (currently amended)       The computer readable medium of claim **1**, wherein ~~the user interface is characterised in, that, if said third~~ one function <u>from the plurality of functions, when</u> [[is]] activated, ~~said display area is adapted~~ <u>causes the user interface</u> to display a list with a library of available applications and files on the mobile handheld computer unit~~, that a selection of an application will start said application, and that a selection of a file will open said file in an application intended for said file.~~

**7.** (currently amended)       The computer readable medium of claim **6**, wherein the user interface is characterised in, that a selection of an application or file is done by ~~moving~~ <u>gliding</u> the ~~blunt~~ object <u>along said touch sensitive area</u> so that a representation of a desired one of said application or file is highlighted, ~~removing~~ <u>raising</u> said object from said

touch sensitive area, and then tapping on said touch sensitive area, ~~and that said desired one of said application or file is highlighted by placing some kind of marking on said representation of said application or file.~~

**8.** (currently amended)         The computer readable medium of claim **7**, wherein the user interface is characterised in, that <u>at any given time</u> said list ~~is adapted to present~~ <u>presents</u> only ~~said~~ files or only ~~said~~ applications, <u>and</u> that ~~a top~~ <u>an</u> area of said list presents a field through which ~~the content of~~ said list can be ~~altered~~ <u>changed from presenting files to presenting applications, or from presenting applications to presenting files,</u> ~~that, if said list only presents files, said field displays a representation of a task manager and a selection of said field will cause said list to alter to present only applications, and that, if said list only presents applications, said field displays a representation of a file manager and a selection of said field will cause said list to alter and present only files.~~

**9.** (currently amended)         The computer readable medium of claim **7**, wherein the user interface is characterised in, that, [[a]] navigation in said list is performed by ~~moving~~ <u>gliding</u> the ~~blunt~~ object <u>along the touch sensitive area</u> in a direction towards the top of said list or towards the bottom of said list~~, that the movement of the blunt object will cause said marking to move in the same direction, and that the speed of movement of said marking is lower than the speed of movement of the blunt object.~~

**10.** (currently amended)         The computer readable medium of claim **9**, wherein the user interface is characterised in, that, if the number of applications ~~and/~~or files in said list exceeds the number of ~~application~~

Atty. Docket No. NEONODE.P004         -8-

applications [[and]] or files that can be presented on said ~~display~~ touch sensitive area as content, and if the ~~blunt~~ object is ~~moved~~ glided along said touch sensitive area to the top or bottom position of said ~~display~~ touch sensitive area, then ~~lifted~~ raised, replaced on said ~~display~~ touch sensitive area, and again ~~moved~~ glided along said touch sensitive area to the top or bottom of said ~~display~~ touch sensitive area, the content of said ~~display~~ touch sensitive area will be replaced one whole page~~, meaning that if the blunt object is positioned at the bottom of said display area, replaced on said display area, and then again moved to the bottom of said display area, the content of said display area will be replaced by the following applications and/or files in said list, and if the blunt object is positioned at the top of said display area, then lifted, replaced on said display area, and then again moved to the top of said display area, the content of said display area will be replaced by the preceding applications and/or files in the list~~.

**11.** (currently amended)     The computer readable medium of claim **10**, wherein the user interface is characterised in, that if the ~~blunt~~ object is ~~removed~~ raised from any first position on said ~~display~~ touch sensitive area and then replaced on any second position on said ~~display~~ touch sensitive area, said navigation can be continued from said second position.

**12.** (currently amended)     The computer readable medium of claim **1**, wherein the user interface is characterised in, that an active application, function, service or setting is moved on one step by ~~moving~~ gliding the ~~blunt~~ object along the touch sensitive area from ~~the~~ left ~~of said display area~~ to the right ~~of said display area~~, and that the active application,

Atty. Docket No. NEONODE.P004          -9-

function, service or setting is closed or backed one step by ~~moving~~ <u>gliding</u> the ~~blunt~~ object <u>along the touch sensitive area</u> from ~~the~~ right ~~of said display area~~ to ~~the~~ left ~~of said display area~~,

**13.** (currently amended)   The computer readable medium of claim **1,** wherein the user interface is characterised in, that said ~~menu area is positioned~~ <u>representations of said plurality of functions are located</u> at the bottom of said touch sensitive area~~, that said representation of said first function is positioned at the left side of said menu area, that said representation of said second function is positioned at the middle of said menu area, and that said representation of said third function is positioned at the right side of said menu area~~.

**14.** (currently amended)   The computer readable medium of claim **1,** wherein the ~~user interface is characterised in, that said user interface is adapted to a~~ touch sensitive area ~~with a size that~~ is 2-3 inches in diagonal dimension~~, and that said user interface is adapted to be operated by one hand when the mobile handheld computer unit is held in the one hand, wherein said blunt object is a fleshy part of the thumb of the one hand~~.

**15.** (currently amended)   An enclosure adapted to cover the mobile handheld computer unit according to Claim **1,** characterised in, that said enclosure is provided with an opening for said ~~display~~ <u>touch sensitive</u> area~~, and that a representation of said menu area is printed on top of said enclosure~~.

**16.** (previously presented)   The enclosure according to Claim **15,** characterised in, that said enclosure is removable and exchangeable.

**17.** (previously presented)    A computer readable medium, with a computer program product stored therein, characterised in, that said computer program product comprises computer readable code, which, when read by a computer, will make it possible for said computer to present a user interface according to Claim **1**.

**18.** (original)    A computer readable medium according to Claim **17**, characterised in, that said computer program product is adapted to function as a shell upon an operations system.

**19.** (withdrawn)  An apparatus, comprising:

a computing device configured to provide a plurality of features and/or services to a user, said computing device including a user interface that comprises:

a touchscreen for displaying to the user, individually at differing times, a plurality of display screens corresponding to said plurality of features and/or services and for allowing the user to navigate among said various differing features and/or services and among said plurality of display screens; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to navigate among said plurality of features and/or services and among said plurality of display screens, said user interface software configured to:

when said touchscreen is displaying a first display screen of said plurality of display screens, cause said computing device to display a second display screen of said plurality of display screens in response to a first sweeping movement of the object along said touchscreen in a first direction, said computing device displaying said

Atty. Docket No. NEONODE.P004          -11-

second display screen after the object has traversed a first predetermined extent of said touchscreen along said first direction; and

when said touchscreen is displaying said second display screen, cause said computing device to display said first display screen in response to a second sweeping movement of the object along said touchscreen in a second direction opposite said first direction, said computing device displaying said first display screen only after the object has traversed a second predetermined extent of said touchscreen along said second direction.

**20.** (withdrawn) An apparatus according to claim **19**, wherein said touchscreen has a left edge and a right edge when said touchscreen is properly oriented for viewing by the user and said first direction proceeds from a location at or proximate said left edge toward said right edge and said second direction proceeds from a location at or proximate said right edge toward said left edge.

**21.** (withdrawn) An apparatus according to claim **20**, wherein said touchscreen has a width extending from said left edge to said right edge and each of said first and second extents is substantially equal to said width.

**22.** (withdrawn) An apparatus according to claim **21**, wherein said touchscreen has a diagonal dimension of two inches to three inches.

**23.** (withdrawn) An apparatus according to claim **19**, wherein said computing device is sized to be cradled in a hand of an adult human user and so that, when so cradled, all points on said touchscreen are touchable

Atty. Docket No. NEONODE.P004        -12-

by the thumb of the adult human user, the object being the thumb of the hand.

**24.** (withdrawn) An apparatus according to claim **19**, wherein each of the first and second sweeping movements does not drag any graphical feature displayed on said touchscreen during that one of the first and second sweeping movements.

**25.** (withdrawn)  An apparatus, comprising:

a computing device configured to provide first and second menu-area functions to a user, said first menu-area function having a first-function display screen and said second menu-area function having a second-function display screen differing from said first-function display screen, said computing device including a user interface that comprises:

a touchscreen simultaneously divided into a menu region and a display region, said menu region containing first and second representations corresponding respectively to said first and second menu-area functions, said display region for displaying to the user at differing times said first-function and second-function display screens; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to select at differing times each of said first and second menu-area functions, said user interface software configured to:

display said first-function display screen in response to a first sweeping movement of the object along said touchscreen, the first sweeping movement starting at said first

Atty. Docket No. NEONODE.P004          -13-

representation in said menu region and proceeding into said display region; and

display said second-function display screen in response to a second sweeping movement of the object along said touchscreen, the second sweeping movement starting at said second representation in said menu region and proceeding into said display region.

**26.** (withdrawn)  An apparatus according to claim **25,** wherein:

said touchscreen has a first edge and a second edge spaced from said first edge;

said first and second representations are each located proximate said first edge and spaced from one another along said first edge; and

the first and second sweeping movements each proceed in a direction toward said second edge.

**27.** (withdrawn)  An apparatus according to claim **25,** wherein said first-function display screen contains a plurality of icons corresponding respectively to a plurality of applications, said user interface software configured to activate any one of said plurality of applications in response to the user tapping the object on said touchscreen at a corresponding one of said plurality of icons.

**28.** (withdrawn)  An apparatus according to claim **27,** wherein said second-function display screen contains a set of application functions, said set varying as a function of which one of said plurality of applications is active when the user makes the second movement.

Atty. Docket No. NEONODE.P004          -14-

**29.** (withdrawn) An apparatus according to claim **27,** wherein a particular application of said plurality of applications has a plurality of application screen displays, said user interface software configured so that when said particular application is active, the user forwardly steps through said plurality of application screen displays by sweeping the object across said touchscreen in a first direction and reversely steps through said plurality of application screen displays by sweeping the object across said touchscreen in a second direction opposite said first direction.

**30.** (withdrawn) An apparatus according to claim **25,** wherein said first display screen contains a soft-interface telephony keypad.

**31.** (withdrawn) An apparatus, comprising:

a computing device configured to run a software application configured to display a plurality of predetermined display screens, said computing device including a user interface that comprises:

a touchscreen for displaying to the user, individually at differing times, said plurality of predetermined display screens and for allowing the user to navigate among said plurality of predetermined display screens; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to navigate among said plurality of predetermined display screens, said user interface software configured to:

activate said software application in response to a particular interaction of the object with said touchscreen;

Atty. Docket No. NEONODE.P004        -15-

forwardly     step     in     series through ones of said plurality of predetermined display screens in response to corresponding respective individual instances of a first sweeping movement of the object along said touchscreen in a first direction; and

reversely     step     in     series through ones of said plurality of predetermined display screens in response to corresponding respective individual instances of a second sweeping movement of the object along said touchscreen in a second direction different from said first direction.

**32.** (withdrawn) An apparatus according to claim **31**, wherein said particular interaction of the object with said touchscreen to activate said software application is a third sweeping movement of the object along said touchscreen in a third direction different from each of said first and second directions.

**33.** (withdrawn) An apparatus according to claim **32**, wherein said first and second directions are opposite one another and said third direction is perpendicular to each of said first and second directions.

**34.** (withdrawn) An apparatus, comprising:

a computing device configured to run software for providing to a user a plurality of services and/or functions, said computing device including:

a touchscreen for display to the user a graphical user interface and for allowing the user to navigate among said plurality of services and/or functions; and

Atty. Docket No. NEONODE.P004        -16-

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to navigate among said plurality of services and/or functions, said user interface software configured to:

present, in response to a sweeping movement of the object across said touchscreen, a display screen containing a plurality of display icons corresponding respectively to ones of said plurality of services and/or functions, the sweeping movement being spatially uncorrelated with information displayed on said touchscreen; and

when said touchscreen is displaying said plurality of display icons, launch one of said plurality of services and/or functions in response to the user tapping the object on said touchscreen at a location where said touchscreen displays the corresponding one of said plurality of display icons.

**35.** (withdrawn) An apparatus according to claim **34**, wherein said computing device contains a software application and said user interface is configured to present said plurality of display icons only if said software application is active during the sweeping movement of the object.

**36.** (withdrawn) An apparatus according to claim **35**, wherein when said software application is active during the sweeping of the object, said display icons correspond to services and/or functions specific to said software application.

**37.** (withdrawn) An apparatus, comprising:

Atty. Docket No. NEONODE.P004          -17-

a computing device containing software for providing to a user a plurality of services and/or functions, said computing device including:

a touchscreen for displaying to the user, individually at differing times, ones of various display screens associated with said plurality of services and/or functions and for allowing the user to navigate among said plurality of display screens so as to provide the user with access to said plurality of services and/or functions and for allowing the user to control functioning of ones of said plurality of services and/or functions; and

user interface software responsive to a set of movements of an object with respect to said touchscreen so as to allow the user to navigate among said plurality of display screens and to control functioning of ones of said plurality of services and/or functions, said set of movements including a plurality of sweeping movements having differing directionalities along said touchscreen, wherein said plurality of sweeping movements being spatially uncorrelated with information displayed on said touchscreen, said user interface software being configured to distinguish the plurality of sweeping movements from one another as a function of the differing directionalities so as to provide differing responses as a function of said differing directionalities.

**38.** (withdrawn) An apparatus according to claim **37**, wherein two sweeping movements of the plurality of sweeping movements have opposing directionality and said user interface software is configured to provide two opposing responses corresponding respectively to said two sweeping movements.

Atty. Docket No. NEONODE.P004        -18-

**39.** (withdrawn)  An apparatus according to claim **38**, wherein one of the two opposing responses is moving forward in a series of display screens and the other of the two opposing responses is moving backward in the series of display screens.

**40.** (withdrawn)  An apparatus according to claim **37**, wherein each of the plurality of sweeping movements does not drag any graphical feature displayed on said touchscreen during that one of the plurality of sweeping movements.

**41.** (withdrawn)  An apparatus, comprising:

a computing device configured to provide a plurality of features, settings, applications and/or services to a user, said computing device including a user interface that comprises:

a touchscreen for displaying to the user a list of items corresponding to at least one of a plurality of features, settings, applications and/or services and for allowing the user to select any one of said items using said list; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to navigate among said list and to select any one of said items, said user interface software configured to move a highlight marking, having a displayed location on said touchscreen, in a desired direction within said list in response to the user:

(a)      contacting      said touchscreen with the object at a first location that is a function of the desired direction, not said displayed location of said highlight marking;

Atty. Docket No. NEONODE.P004         -19-

(b) while keeping the object in contact with said touchscreen, moving the object along said touchscreen in the desired direction to a second location; and

(c) immediately following said moving of the object along said touchscreen to said second location, lifting the object from said touchscreen so as to establish a new location of said highlight marking.

**42.** (withdrawn) An apparatus according to claim **41,** wherein said user interface software is configured to, after the user has marked a desired one of said items by performing steps (a) through (c) so as to highlight said desired one with the highlight marking, select said desired one in response to the user tapping the object on said touchscreen without regard to said display location of the highlight marking.

**43.** (withdrawn) An apparatus, comprising:

a computing device configured to provide a plurality of features, settings, applications and/or services to a user, said computing device including a user interface that comprises:

a touchscreen for displaying to the user a list of items corresponding to at least one of said plurality of features, settings, applications and/or services and for allowing the user to select any one of said items using said list; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to scroll said list and to select any one of said plurality items, said user interface software configured to scroll said list in a desired direction in response to the user:

Atty. Docket No. NEONODE.P004        -20-

(a)    contacting    said touchscreen with the object at a first location that is a function of the desired direction of said scroll and that is not based on any soft scroll control displayed on said touchscreen; and

(b) while keeping the object in contact with said touchscreen, moving the object along said touchscreen in the desired direction to a second location, wherein said moving of the object causes said list to scroll in the desired direction.

**44.** (withdrawn) An apparatus according to claim **43**, wherein said user interface software is configured to activate a selected one of said items in response to a user tapping the object on said touchscreen following the user lifting the object from the touchscreen after the user performs step (b).

**45.** (withdrawn) An apparatus according to claim **43**, wherein said items are files.

**46.** (withdrawn) An apparatus according to claim **43**, wherein said items are email messages.

**47.** (withdrawn) An apparatus according to claim **43**, wherein each item is contact information for a corresponding contact.

<u>REMARKS</u>

Applicant has carefully studied the outstanding Office Action.  The present amendment is intended to place the application in condition for allowance and is believed to overcome all of the objections and rejections made by the Examiner.  Favorable reconsideration and allowance of the application are respectfully requested.

Applicant has withdrawn claims **19 – 47**, and amended claims **1 – 15** to properly claim the present invention.  No new matter has been added.  Claims **1 – 18** are presented for examination.

In paragraphs 1 - 8 of the Office Action, the Examiner has rejected claims **1, 4 – 7, 12, 15** and **17** under 35 U.S.C. §103(a) as being unpatentable over Carlson, F., <u>Visual Quickstart Guide: Palm Organizers</u> ("Carlson") in view of Milic-Frayling et al., US Publication No. 2004/0100510 ("Milic-Frayling"), and further in view of Conrad et al., US Patent No. 5,956,030 ("Conrad").

In paragraph 9 of the Office Action, the Examiner has rejected claims **2** and **3** under 35 U.S.C. §103(a) as being unpatentable over Carlson in view of Milic-Frayling, in view of Conrad, and further in view of Kopitzke et al., US Patent No. 6,988,246 ("Kopitzke").

In paragraph 10 – 13 of the Office Action, the Examiner has rejected claims **8 – 11** under 35 U.S.C. §103(a) as being unpatentable over Carlson in view of Milic-Frayling, in view of Conrad, and further in view of Wynn et al., US Patent No. 6,734,883 ("Wynn").

In paragraph 14 of the Office Action, the Examiner has rejected claim **13** under 35 U.S.C. §103(a) as being unpatentable over Carlson, in view of Milic-Frayling, and further in view of Conrad.

Atty. Docket No. NEONODE.P004          -22-

In paragraphs 15 and 16 of the Office Action, the Examiner has rejected claims **14** and **16** under 35 U.S.C. §103(a) as being unpatentable over Carlson, in view of Milic-Frayling, in view of Conrad, and further in view of Strietelmeier, Palm m100, The Gadgeteer ("Strietelmeier").

In paragraphs 17 and 18 of the Office Action, the Examiner has rejected claim **18** under 35 U.S.C. §103(a) as being unpatentable over Carlson, in view of Milic-Frayling, in view of Conrad, and further in view of Chew et al., US Patent No. 6,727,917 ("Chew").

**Distinctions between Claimed Invention and Carlson, F., Visual Quickstart Guide: Palm Organizers, US Publication No. 2004/0100510 of Milic-Frayling et al., US Patent No. 5,956,030 to Conrad et al., US Patent No. 6,988,246 to Kopitzke et al., US Patent No. 6,734,883 to Wynn et al., Strietelmeier, Palm m100, The Gadgeteer, and US Patent No. 6,727,917 to Chew et al.**

Aspects of the subject invention concern a touch-based user interface with functionalities for running interactive applications using touch-based icons, for inputting text using a touch-based keypad, and for managing files using a touch-based file listing. User inputs include finger taps and thumb movements. One such movement is a thumb touch-and-glide, where the thumb touches a touch screen at a location where an icon for a function is displayed, and glides along the touch screen away from the location, as illustrated in FIG. 2 of the subject application.

Carlson describes how to use the Palm Organizer touch-based user interface. Through a series of pictures, Carlson shows how to

run applications, view documents, access menus, and use an onscreen
keyboard.

Milic-Frayling describes an interactive user interface for
presenting search results on small display screens of handheld devices.
Search results are annotated to highlight search hits, and text is wrapped
so as to avoid the need for horizontal scrolling.

Conrad describes a window management system for
keeping open windows offscreen in a drawer area (Conrad/ elements D1
– D4 of FIG. 1), and available for popping them back onscreen by clicking
on a title bar or drawer handle of the offscreen window (Conrad/ FIGS. 2
– 4). Conrad also describes "spring loaded" enclosures for opening
temporary windows for enclosure identifiers, during a drag operation
(Conrad/ FIGS. 8A – 8D and 9A – 9E).

Kopitzke describes a touch-sensitive user interface for
use in an aircraft with multiple cabin systems. A main menu (Kopitzke/
FIG. 4) provides an overview of cabin status, and information and data
regarding the cabin systems. The main menu includes touch input keys
for bringing up menus for each of the individual aircraft cabin systems,
for monitoring and controlling their operation. Cabin systems include
inter alia an audio system (Kopitzke/ FIG. 5), a video system, a lighting
system (Kopitzke/ FIG. 6), a climate control system, a doors & hatches
system (Kopitzke/ FIG. 7), a water supply system (Kopitzke/ FIG. 8), an
electric power supply system, and a data communication system.

Wynn describes a user interface for spinning through a
list of items. The user interface displays a preview list of items and a
postview list of items on opposite sides of a currently selected item in the
list (Wynn/ FIG. 7).

Atty. Docket No. NEONODE.P004          -24-

PAGE 29/39 * RCVD AT 9/3/2008 3:08:58 AM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/10 * DNIS:2738300 * CSID:972 8 9315208 * DURATION (mm-ss):05:46

Strietelmeier describes the mechanical casing, hardware components and software applications of the Palm m100 Organizer, in comparison with the Palm IIIc, the Palm V and the Handspring Visor.

Chew describes a user interface for running and interacting with multiple applications on small handheld device display screens.  Chen describes a user interface display having a top portion with a navigation bar (Chew/ element 302 of FIG. 3) for navigating between different applications, a middle portion for graphically displaying outputs of a currently active application, and a bottom portion with an application menu bar (Chew/ element 304 of FIG. 3) for entering inputs to the currently active application.

The touch-based user interface of the subject claimed invention is generally operated by the thumb.  The touch-based user interface of Carlson is generally operated by a stylus.  Although, the user interface of Carlson may also be operated by the thumb, the natures of the two user interfaces are distinct.  The subject claimed invention teaches "rubbing", "touch-and-glide" movements to operate a user interface, whereby the thumb touches a touch-sensitive screen and rubs, or glides, along the screen without lifting the thumb.  In distinction, tap movements and one-stroke pen drags are used to operate the touch-based user interface of Carlson.  In terms of motor skill, the touch-and-glide movements of the subject claimed invention are akin to pressing with the thumb on a mechanical slider button, such as the slider button with HI/LO/OFF settings on a hair-dryer handle, and sliding the button up or down while it is pressed.

The touch-and-glide movements of the subject claimed invention are illustrated in FIGS. 2, 7 and 10 by a left-arrow and a thumb touching a touch-sensitive screen.

Atty. Docket No. NEONODE.P004          -25-

The touch-and-glide movements of the subject claimed invention are used to activate functions (original specification/ Abstract; page 2, lines 25 – 28; page 5, lines 24 – 27; FIG. 2; original claim **1**), and to scroll a selector forward and backward within a list to select a desired item in the list, and to page up and page down within a list (original specification/ page 3, lines 28 – page 4, line 2; page 7, lines 7 – 10; page 7, line 27 – page 9, line 14; FIGS. 7 and 10; original claims **7, 9** and **10**).

The touch-and-glide movements of the subject claimed invention activate a function located at the touch point.  The one-stroke pen drag movement of Carlson activates a pre-designated program, irrespective of where the pen drag begins; namely, the onscreen keyboard or a custom pre-designated program that may be substituted therefor.

Other conventional finger-based touch screens, such as the large touch screens used for self-serve check-in at airport terminals, use touch-sensitive input keys.  In distinction, the touch-and-glide inputs of the subject claimed invention are of particular advantage for small handheld devices, where screen space is minimal.

**Response to Examiner's Arguments**

In rejecting independent claim **1**, the Examiner has cited the "one-stroke pen drag" (Carlson/ page 30; FIG. 2.22) as teaching that "*any one of said three functions can be activated when said touch sensitive area detects a movement of an object with its starting point within the representation of said function on said menu area and with a direction from said menu area to said display area*".  In rejecting dependent claim **9**, the Examiner has cited dragging a vertical scroll bar

Atty. Docket No. NEONODE.P004          -26-

(Carlson/ page 27). In rejecting dependent claim **12**, the Examiner has cited dragging a horizontal scroll bar (Carlson/ page 246; FIG. 14.2).

Applicant respectfully submits that the one-stroke drag of Carlson is very distinct from the location-based touch–and–glide movement of the subject invention (original specification/ FIG. 2). The following table summarizes some of the relevant distinctions.

| TABLE I: Partial list of distinctions between one-stroke drag of Carlson and location-based touch-and-glide movement of the claimed invention ||
|---|---|
| **One-stroke drag** | **Location-based touch-and-glide** |
| Default function is the onscreen keyboard; may be customized to activate a different pre-designated function. | The function displayed at the touch point is activated. |
| At any given time, may be used for activating only one pre-designated function. | At any given time, may be used for activating whichever function is touched, from among a plurality of functions. |
| The starting location has no bearing on the function that is activated. | The starting location determines which of the plurality of functions is activated. |
| Performed by a stylus. | Performed by the thumb. |
| Requires the user interface to recognize a vertical drag. | Requires the user interface to recognize a glide and identify the function displayed at the starting location of the glide. |
| Requires one hand to hold the device and another hand to perform the stylus movement. | The same hand may be used to hold the device and perform the thumb movement. |
| Not used for scrolling through a list. | Used for scrolling through a list. |

Applicant further respectfully submits that the scroll slider drag of Carlson is very distinct from the location-based touch-and-glide movement of the subject invention. The following table summarizes some of the relevant distinctions.

| **TABLE II:** Partial list of distinctions between scroll slider drag of Carlson and location-based touch-and-glide movement of the claimed Invention ||
| Scroll slider drag | Location-based touch-and-glide |
|---|---|
| Requires the user interface to recognize a horizontal drag or a vertical drag. | Requires the user interface to recognize a glide in any of a plurality of directions. |
| Performed by a stylus. | Performed by the thumb. |
| Requires one hand to hold the device and another hand to perform the stylus movement. | The same hand may be used to hold the device and perform the thumb movement. |
| Not used for scrolling through a list. | Used for scrolling through a list. |

In order to clarify these distinctions, applicant has amended claim **1** to include the limitation of each function of said plurality of functions being activated by an object touching a location in the touch sensitive area at which the representation of the function is displayed and then gliding the object along the touch sensitive area away from the location.

Applicant has carefully reviewed all of the cited prior art. None of the cited prior art teaches the location-based touch-and-glide thumb movement of the subject claimed invention. Specifically, Milic-Frayling and Conrad do not use touch screens. Kopitzke uses touch input keys. Wynn mentions touch sensitive displays with stylus pens. Strietelmeier mentions writing with a stylus. Chew uses a stylus to tap on a touch screen.

The rejections of the claims **1 – 18** in paragraphs 1 - 18 of the Office Action will now be dealt with specifically.

As to amended independent claim **1** for a computer readable medium, applicant respectfully submits that the limitation in claim **1** of

"*each function of said plurality of functions being activated by an object touching a location in the touch sensitive area at*

which the representation of the function is displayed and gliding along the touch sensitive area away from the location"

is neither shown nor suggested in Carlson, Milic-Frayling, Conrad, Kopitzke, Wynn, Strietelmeier or Chew.

Because claims **2 – 18** depend from claim **1** and include additional features, applicant respectfully submits that claims **2 – 18** are not anticipated or rendered obvious by Carlson, Milic-Frayling, Conrad, Kopitzke, Wynn, Strietelmeier, Chew, or a combination of Carlson, Milic-Frayling, Conrad, Kopitzke, Wynn, Strietelmeier and Chew.

Accordingly claims **1 – 18** are deemed to be allowable.

### Support for Amended Claims in Original Specification

Independent claim **1** has been amended to include the limitation of an object touching a location in the touch sensitive area at which the representation of the function is displayed and gliding along the touch sensitive area away from the location. This limitation is supported in the original specification at least at FIGS. 2, 7 and 10.

For the foregoing reasons, applicant respectfully submits that the applicable objections and rejections have been overcome and that the claims are in condition for allowance.

Respectfully submitted,

Dated: _____ , 2008      _____

Marc A. Berger
Reg. No. 44,029

P.O. Box 691
Soquel, CA   95073
(831) 426-8200

Atty. Docket No. NEONODE.P004          -29-

CLEAN VERSION OF PROPOSED AMENDED CLAIMS

WITHOUT MARKINGS – NOT TO BE ENTERED

**1.**            A computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising a touch sensitive area in which representations of a plurality of functions are displayed, and each function of said plurality of functions being activated by an object touching a location in the touch sensitive area at which the representation of the function is displayed and then gliding along the touch sensitive area away from the location.

**2.**            The computer readable medium of claim **1**, wherein one function from the plurality of functions, when activated, causes the user interface to display icons representing different services or settings for a currently active application.

**3.**            The computer readable medium of claim **2**, wherein the user interface is characterised in, that a selection of a preferred service or setting is done by tapping on a display icon corresponding to the preferred service or setting.

Atty. Docket No. NEONODE.P004            -1-

**4.**          The computer readable medium of claim **1,** wherein one function from the plurality of functions, when activated, causes the user interface to display a keyboard and a text field.

**5.**          The computer readable medium of claim **4,** wherein said text field is used for inputting and editing of text through said keyboard.

**6.**          The computer readable medium of claim **1,** wherein one function from the plurality of functions, when activated, causes the user interface to display a list with a library of available applications and files on the mobile handheld computer unit.

**7.**          The computer readable medium of claim **6,** wherein the user interface is characterised in, that a selection of an application or file is done by gliding the object along said touch sensitive area so that a representation of a desired one of said application or file is highlighted, raising said object from said touch sensitive area, and then tapping on said touch sensitive area.

**8.**          The computer readable medium of claim **7,** wherein the user interface is characterised in, that at any given time said list presents only files or only applications, and that a–an area of said list presents a field through which said list can be changed from presenting files to presenting applications, or from presenting applications to presenting files.

Atty. Docket No. NEONODE.P004          -2-

**9.**          The computer readable medium of claim **7**, wherein the user interface is characterised in, that, navigation in said list is performed by gliding the object along the touch sensitive area in a direction towards the top of said list or towards the bottom of said list.

**10.**          The computer readable medium of claim **9**, wherein the user interface is characterised in, that, if the number of applications or files in said list exceeds the number of applications or files that can be presented on said touch sensitive area as content, and if the object is glided along said touch sensitive area to the top or bottom position of said touch sensitive area, then raised, replaced on said touch sensitive area, and again glided along said touch sensitive area to the top or bottom of said touch sensitive area, the content of said touch sensitive area will be replaced one whole page.

**11.**          The computer readable medium of claim **10**, wherein the user interface is characterised in, that if the object is raised from any first position on said touch sensitive area and then replaced on any second position on said touch sensitive area, said navigation can be continued from said second position.

Atty. Docket No. NEONODE.P004          -3-

**12.**          The computer readable medium of claim **1**, wherein the user interface is characterised in, that an active application, function, service or setting is moved on one step by gliding the object along the touch sensitive area from left to right, and that the active application, function, service or setting is closed or backed one step by gliding the object along the touch sensitive area from right to left.

**13.**          The computer readable medium of claim **1**, wherein the user interface is characterised in, that said representations of said plurality of functions are located at the bottom of said touch sensitive area.

**14.**          The computer readable medium of claim **1**, wherein the touch sensitive area is 2-3 inches in diagonal dimension.

**15.**          An enclosure adapted to cover the mobile handheld computer unit according to Claim **1**, characterised in, that said enclosure is provided with an opening for said touch sensitive area.

**16.**          The enclosure according to Claim **15**, characterised in, that said enclosure is removable and exchangeable.

Atty. Docket No. NEONODE.P004          -4-

17.          A computer readable medium, with a computer program product stored therein, characterised in, that said computer program product comprises computer readable code, which, when read by a computer, will make it possible for said computer to present a user interface according to Claim **1**.

18.          A computer readable medium according to Claim **17**, characterised in, that said computer program product is adapted to function as a shell upon an operations system.

Atty. Docket No. NEONODE.P004          -5-



**RECEIVED**
**CENTRAL FAX CENTER**

**SEP 0 3 2008**

29 Aharoni Street, Suite #13  •  Rechovot 76282  •  Israel  •  Phone: 972-8-9315207  •  Fax: 972-8-9315208

# FACSIMILE COVER LETTER

**Note:** This facsimile contains <u>PRIVILEGED</u> and <u>CONFIDENTIAL</u> information intended only for use of the specific individual or entity named below. If you or your employer is not the intended recipient of this facsimile or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this facsimile or the information contained in it is strictly prohibited. If you have received this facsimile in error, please immediately notify the person named below at once by telephone and return the original facsimile to us at the address below. Thank you.

SENDER'S NAME:       Marc Berger
                     **Soquel Group LLC**
                     29 Aharoni Street, Suite #13
                     Rehovot  76282
                     ISRAEL


TRANSMISSION DATE:   September 3, 2008


PLEASE DELIVER TO:

          Recipient:          Examiner Ryan F. Pitaro, AU 2174
          Firm:               **United States Patent & Trademark Office**
          Fax No.:            571-273-8300
          City/State/Country: Alexandria, VA  USA


COMMENTS:
Interview agenda for US Serial No. 10/315,250


WE ARE TRANSMITTING 39 PAGE(S) (including this cover letter) from:

                  FAX NO. 011-972-8-9315208

If you do not receive all of the pages or if any pages received are illegible, please contact our office.

3.SEP.2008   8:40   MARC BERGER 972 8 9315208   NO.963   P.2/2

RECEIVED
CENTRAL FAX CENTER

SEP 0 3 2008

PTO/SB/81 (07-08)
Approved for use through 12/31/2008. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| POWER OF ATTORNEY OR REVOCATION OF POWER OF ATTORNEY WITH A NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | |
|---|---|
| Application Number | 10/315,250 |
| Filing Date | December 10, 2002 |
| First Named Inventor | Magnus Goertz |
| Title | USER INTERFACE |
| Art Unit | 2174 |
| Examiner Name | Flocca, Ryan F. |
| Attorney Docket Number | NEONODE.P004 |

I hereby revoke all previous powers of attorney given in the above-identified application.

[ ] A Power of Attorney is submitted herewith.

OR

[X] I hereby appoint Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| 75660 |
|---|

OR

[ ] I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| Practitioner(s) Name | Registration Number |
|---|---|
| | |
| | |
| | |

Please recognize or change the correspondence address for the above-identified application to:

[X] The address associated with the above-mentioned Customer Number.

OR

[ ] The address associated with Customer Number:

OR

| [ ] Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | | |
| Telephone | Email | |

I am the:
[ ] Applicant/Inventor.
[X] Assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) (Form PTO/SB/96) submitted herewith or filed on _____

SIGNATURE of Applicant or Assignee of Record

| Signature | | Date | 28 August 2008 |
|---|---|---|---|
| Name | Per Bystedt | Telephone | + 46 8 678 1850 |
| Title and Company | CEO, Neonode | | |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

[ ] *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

3. SEP. 2008    8:38    MARC BERGER 972 8 9315208                                    NO.962    P.1



RECEIVED
CENTRAL FAX CENTER

SEP 0 3 2008

29 Aharoni Street, Suite #13  •  Rechovot 76282  •  Israel  •  Phone: 972-8-9315207  •  Fax: 972-8-9315208

# FACSIMILE COVER LETTER

**Note:** This facsimile contains <u>PRIVILEGED</u> and <u>CONFIDENTIAL</u> information intended only for use of the specific individual or entity named below. If you or your employer is not the intended recipient of this facsimile or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this facsimile or the information contained in it is strictly prohibited. If you have received this facsimile in error, please immediately notify the person named below at once by telephone and return the original facsimile to us at the address below. Thank you.

SENDER'S NAME:        Marc Berger
                      **Soquel Group LLC**
                      29 Aharoni Street, Suite #13
                      Rehovot  76282
                      ISRAEL


TRANSMISSION DATE:    September 3, 2008


PLEASE DELIVER TO:

        Recipient:          Examiner Ryan F. Pitaro, AU 2174
        Firm:               **United States Patent & Trademark Office**
        Fax No.:            571-273-8300
        City/State/Country: Alexandria, VA   USA


COMMENTS:
Interview agenda for US Serial No. 10/315,250


WE ARE TRANSMITTING 39 PAGE(S) (including this cover letter) from:

                FAX NO. 011-972-8-9315208

If you do not receive all of the pages or if any pages received are illegible, please contact our office.

www.soquelgroup.com

PAGE 1/2 * RCVD AT 9/3/2008 3:04:12 AM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/8 * DNIS:2738300 * CSID:972 8 9315208 * DURATION (mm-ss):01-00

3. SEP. 2008   8:38   MARC BERGER 972 8 9315208   NO. 962   P. 2

RECEIVED
CENTRAL FAX CENTER

SEP 0 3 2008

PTO/SB/81 (07-08)
Approved for use through 12/31/2008. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| POWER OF ATTORNEY OR REVOCATION OF POWER OF ATTORNEY WITH A NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | Application Number | 10/315,250 |
|---|---|---|
| | Filing Date | December 10, 2002 |
| | First Named Inventor | Abigaye Goorca |
| | Title | USER INTERFACE |
| | Art Unit | 2174 |
| | Examiner Name | Phong, Ryza K. |
| | Attorney Docket Number | NEONODE.P004 |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.
OR

☒ I hereby appoint Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| | 75660 |
|---|---|

OR

☐ I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| Practitioner(s) Name | Registration Number |
|---|---|
| | |
| | |
| | |

Please recognize or change the correspondence address for the above-identified application to:

☒ The address associated with the above-mentioned Customer Number.
OR

☐ The address associated with Customer Number:

| | |
|---|---|

OR

| Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | | |
| Telephone | Email | |

I am the:

☐ Applicant/Inventor.
OR

☒ Assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) (Form PTO/SB/96) submitted herewith or filed on _____

SIGNATURE of Applicant or Assignee of Record

| Signature | [signature] | Date | 28 August 2008 |
|---|---|---|---|
| Name | Per Bystedt | Telephone | + 46 8 678 1850 |
| Title and Company | CEO, Neonode | | |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☐ *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

BEST AVAILABLE COPY

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia  22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 |

**CONFIRMATION NO. 1226**

23117
NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203

**POWER OF ATTORNEY NOTICE**


*OC000000031414766*

Date Mailed: 08/06/2008

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 07/24/2008.

• The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

/nhtang/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

page 1 of 1



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
| --- | --- | --- | --- |
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 |

**CONFIRMATION NO. 1226**

60956
Professional Patent Solutions
P.O. BOX 654
HERZELIYA PITUACH, 46105
ISRAEL

**POA ACCEPTANCE LETTER**


*OC000000031414774*

Date Mailed: 08/06/2008

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 07/24/2008.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

/nhtang/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia  22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 |

**CONFIRMATION NO. 1226**

23117
NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203

**POA ACCEPTANCE LETTER**


*OC000000029481481*

Date Mailed: 08/05/2008

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 03/13/2008.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

/jelliott/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

page 1 of 1

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 |

**CONFIRMATION NO. 1226**

23117
NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203

**POWER OF ATTORNEY NOTICE**


*OC000000029481473*

Date Mailed: 08/05/2008

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 03/13/2008.

• The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).


/jelliott/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

page 1 of 1

Jul 24 2008 1:10PM        GTT                                    +972 9 9541975                P.1

2008 Maj 13 12:39        HP LASERJET-FAX                                                        s13

RECEIVED
CENTRAL FAX CENTER

JUL 2 4 2008

PTO/SB/82 (01-06)
Approved for use through 1/31/2006. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| REVOCATION OF POWER OF ATTORNEY WITH NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | Application Number | 10/315,250 |
| | Filing Date | 12-10-2002 |
| | First Named Inventor | Magnus Goetz |
| | Art Unit | 2174 |
| | Examiner Name | Ba?ao, Ryan F |
| | Attorney Docket Number | |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

OR

☒ I hereby appoint the practitioners associated with the Customer Number:   60956

☒ Please change the correspondence address for the above-identified application to:

☒ The address associated with Customer Number:   60956

OR

☐ Firm or Individual Name

Address

| City | | State | | Zip | |

Country

| Telephone | | Email | |

I am the:

☐ Applicant/Inventor.

☒ Assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) is enclosed. (Form PTO/SB/96)

SIGNATURE of Applicant or Assignee of Record

| Signature | | | |
| Name | MIKAEL HAGMAN | | |
| Date | 13 MAY 2008 | Telephone | +46 8 586 22 810 |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☐ *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.36. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

2008 Maj 13 12:39    HP LASERJET-FAX                                si4

RECEIVED
CENTRAL FAX CENTER

JUL 24 2008

PTO/SB/96 (01-05)
Approved for use through 09/31/2006, OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(b)

Applicant/Patent Owner: _Gieritz  Magnus_

Application No./Patent No.: _10/315,250_   Filed/Issue Date: _12-10-2002_

Entitled: _User Interface_

_NEUONDE AB_ _____ a _CORPORATION_
(Name of Assignee)                        (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that it is:

1. ☒ the assignee of the entire right, title, and interest; or

2. ☐ an assignee of less than the entire right, title and interest
   (The extent (by percentage) of its ownership interest is _____%)

in the patent application/patent identified above by virtue of either:

A.☐ An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel _____, Frame _____, or for which a copy thereof is attached.

OR

B.☒ A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

1. From: _Gieritz  Magnus_   To: _Neonode  Swedn AB_
   The document was recorded in the United States Patent and Trademark Office at
   Reel _018368_, Frame _0611_, or for which a copy thereof is attached.

2. From: _Neonode  Sweden AB_   To: _Neonode AB_
   The document was recorded in the United States Patent and Trademark Office at
   Reel _015137_, Frame _0448_, or for which a copy thereof is attached.

3. From: _____   To: _____
   The document was recorded in the United States Patent and Trademark Office at
   Reel _____, Frame _____, or for which a copy thereof is attached.

☐ Additional documents in the chain of title are listed on a supplemental sheet.

☒ As required by 37 CFR 3.73(b)(1)(i), the documentary evidence of the chain of title from the original owner to the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

[NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

_[signature]_                              _13 MAY 2008_
Signature                                   Date

_MIKAEL HAGMAN_                            _+46 8 586 2281b_
Printed or Typed Name                       Telephone Number

_CEO_
Title

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 | 1226 |

23117      7590      07/11/2008
NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203

| EXAMINER |
|---|
| PITARO, RYAN F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2174 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/11/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| **Office Action Summary** | Application No. | Applicant(s) |
| | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit | |
| | RYAN F. PITARO | 2174 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a).  In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment.  See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>3/14/2008</u>.

2a)☒ This action is **FINAL**.          2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-47</u> is/are pending in the application.

   4a) Of the above claim(s) <u>19-47</u> is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-18</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance.  See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All   b)☐ Some * c)☐ None of:

   1.☐ Certified copies of the priority documents have been received.

   2.☐ Certified copies of the priority documents have been received in Application No. _____.

   3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

Application/Control Number: 10/315,250                                    Page 2
Art Unit: 2178

## DETAILED ACTION

### *Response to Amendment*

This communication is responsive to the Amendment filed 3/14/2008.

Claims 1-18 are pending in this application.  Claims 1, 15 and 17 are

independent claims.

### *Election/Restrictions*

Newly submitted claims 19-47 are directed to an invention that is independent or

distinct from the invention originally claimed for the following reasons: Claims 19-47 are

directed to distinct individual instances of sweeping motions of a particular kind in order

to navigate among said predetermined display screens whereas the claimed invention is

more directed to a simplified touch interface.

Since applicant has received an action on the merits for the originally presented

invention, this invention has been constructively elected by original presentation for

prosecution on the merits.  Accordingly, claims 19-47 are withdrawn from consideration

as being directed to a non-elected invention.  See 37 CFR 1.142(b) and MPEP §

821.03.

Application/Control Number: 10/315,250                                    Page 3
Art Unit: 2178

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

Claims 1, 4-7, 12, 15 and 17 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Carlson ("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm

Organizers. Peachpit Press. 2000.  Berkeley, CA.) in view of Milic-Frayling et al ("Milic-

Frayling", US 2004/0100510) in view of Conrad et al ("Conrad", US 5,956,030).

1.      As per claim 1, Carlson teaches a computer readable medium storing a computer

program with computer program code, which code, when read by a mobile computer

unit allows the computer to present a user interface for a mobile handheld computer unit

(Introduction, page xiii), where said computer unit comprises a touch sensitive area

(page 26, *the screen is touch sensitive*), that is simultaneously divided into a menu area

(page 12, fig. 1.10 *silk screen graffiti area*) and a display area, the computer unit is

being adapted to run several applications simultaneously (page 47, *all of the*

*applications are running concurrently*), and to present an active application on top of

any other application on said display area, characterised in, that said menu area is

adapted to present a representation of a first, a second and a third predefined function,

that said first function is a general application dependent function (page 28, *the Menu*

icon, fig. 2.4), that said second function is a keyboard function (page 30, *either the abc or 123 dots in the lower corner of the Graffiti area*), that said third function is a task and file manager (page 47, *the Applications screen* & fig. 2.35), and that any one of said three functions can be activated when said touch sensitive area detects a movement of an object with its starting point within the representation of said function on said menu area and with a direction from said menu area to said display area (page 40, *bottom-to-top screen stroke shortcut* fig. 2.22 & page 30, *drag the stylus vertically across the screen from bottom to top*), said user interface allowing low precision navigation using a blunt object, whereby said user interface can be operated by one hand (page 12, "*The stylus is the main method of interacting with the PalmPilot" and it inherently involves one hand to use the stylus.* Also, if a finger was used, that would also be considered using one hand), where said blunt object is a finger (page 12, "*The stylus is the main method of interacting*" **though** anything including fingers **can** work). Carlson fails to distinctly point out simultaneously displaying a first, second, and third function. Milic-Frayling teaches the menu area being adapted to simultaneously present representations of a first function, a second function, and a third function (Figure 1 view Tools toolbar, with keyboard, file manager, etc.). Therefore it would have been obvious to an artisan at the time of the invention to combine the teaching of Milic-Frayling with the interface of Carlson. Motivation to do so would have been to provide away to quickly access common functions and provide a user with a large enough space. The modified Carlson still does not explicitly point out activation by a single step of an object moving in a direction on the touch sensitive area. However, Conrad teaches activating by the

Application/Control Number: 10/315,250                                      Page 5
Art Unit: 2178

single step of an object moving in a direction from a starting point that is representation

of the function in the menu area to the display area (Figure 2, Column 2 lines 15-62).

Therefore it would have been obvious to an artisan at the time of the invention to

combine the teaching of Venolia with the modified Carlson. Motivation to do so would

have been to provide easy access to windows.


2.      As per claim 4, the modified Carlson teaches the user interface according to

claim 1, characterised in,

        that, if said second function is activated, said display area is adapted to display a

keyboard and a text field,

        that, if a text passage in said active application is highlighted, said text passage

is displayed in said text field for editing through said keyboard and that said highlighted

text passage is replaced by said edited text passage when said second function is

deactivated, and

        that, if no text passage in said active application is highlighted, said text field is

available for inputting and editing of text through said keyboard (Carlson, page 30, fig

2.7).

3.      As per claim 5, the modified Carlson teaches the user interface according to

claim 4, characterized in, that if no text passage in said active application is highlighted,

and said text field is used for inputting and editing of text through said keyboard

(Carlson, page 30, fig 2.7), then

        said first function can be activated, or

said second function can be closed, in which a choice of saving or deleting said inputted text is given, where the choice of saving said inputted text results in an activation of said first function,

in which said first function will present services or settings available for said inputted text (Carlson, page 28, fig. 2.4 *Beam Memo*).

4.    As per claim 6, the modified Carlson teaches the user interface according to claim 1, characterised in, that, if said third function is activated, said display area is adapted to display a list with a library of available applications and files on said computer unit, that a selection of an application will start said application, and that a selection of a file will open said file in an application intended for said file (Carlson, page 47, fig. 2.35).

5.    As per claim 7, the modified Carlson teaches the user interface according to claim 6, characterised in, that a selection of an application or a file is done by moving said object so that the representation of desired application or file is highlighted, removing said object from said touch sensitive area, and then tapping on said touch sensitive area, and that an application or file is highlighted by placing some kind of marking on the representation of said application or file (Carlson, pages 26 & 27).

6.    As per claim 12, the modified Carlson teaches the user interface according to Claim 1, characterised in, that an active application, function, service or setting is moved on one step by moving said object from the left of said display area to the right of said display area, and that the active application, function service or setting is closed or

Application/Control Number: 10/315,250                                    Page 7
Art Unit: 2178

backed one step by moving said object from the right of said display area to the left of said display area (Carlson, page 246, fig. 14.2, *Drag to scroll through file*).

7.      As per claim 15, the modified Carlson teaches an enclosure adapted to cover a computer unit, said computer unit being adapted to present a user interface according Claim 1, characterised in, that said enclosure is provided with an opening for said display area, and that a representation of said menu area is printed on top of said enclosure (Carlson, page 12, *Silkscreen Graffiti area* & fig. 1.10).

8.      As per claim 17, the modified Carlson teaches a computer readable medium, with a computer program product stored therein, characterised in, that said computer program product comprises computer readable code, which, when read by a computer, will make it possible for said computer to present a user interface according to Claim 1 (Carlson, page 25, *Palm OS*).


        Claims 2 and 3 are rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson ("Carlson", Carlson, Jeff.  <u>Visual Quickstart Guide Palm Organizers</u>. Peachpit Press. 2000.  Berkeley, CA.), Milic-Frayling et al ("Milic-Frayling", US 2004/0100510) and Conrad et al ("Conrad", US 5,956,030) in view of Kopitzke et al. ("Kopitzke", US # 6,988,246 B2).


9.      As per claim 2, the modified Carlson teaches the user interface according to claim 1, characterized in, that, if said first function is activated, said display area is adapted to display icons representing different services or settings depending on the

current active application (Carlson, page 28, *the Menu icon*, fig. 2.4), and that, if no

application is currently active on said computer unit, said icons are adapted to represent

services or settings of the operations system of said computer unit (Carlson, page 47,

fig. 2.36, *12:11 am*).

However the modified Carlson does not teach expressly the user interface

according to claim 1, characterized in, that, if said first function is activated, said display

area is adapted to display icons representing different services or settings depending on

the current active application, that one of said icons always represents a "help"-service,

regardless of application.

Kopitzke teaches the user interface according to claim 1, characterized in, that

said display area is adapted to display icons representing different services or settings

depending on the current active application, that one of said icons always represents a

"help"-service, regardless of application (column 4, lines 36-53 & fig. 1, *Help key or*

*button* 6).

The modified Carlson and Kopitzke are analogous art because they are in the

same field of endeavor, namely graphical user interfaces with touch sensitive displays.

At the time of the invention it would have been obvious to a person of ordinary skill in the art

to provide the help function as taught by Kopitzke within the user interface of the modified

Carlson in order to provide context sensitive information.

As per claim 3, the modified Carlson teaches the user interface according to

claim 2, characterised in, that a selection of a preferred service or setting is done by

tapping on corresponding icon (Carlson, page 26, fig. 2.1*Tapping just about any*

*interface element in the Palm OS evokes a response*).

        Claims 8-11 and 13 is rejected under 35 U.S.C. 103(a) as being unpatentable

over Carlson ("Carlson", Carlson, Jeff.  <u>Visual Quickstart Guide Palm Organizers</u>.

Peachpit Press. 2000.  Berkeley, CA.), Milic-Frayling et al ("Milic-Frayling", US

2004/0100510) and Conrad et al ("Conrad", US 5,956,030) in view of Wynn et al.

("Wynn", US # 6,734,883 B1).

10.     As per claim 8, the modified Carlson teaches the user interface according to

claim 7.  However the modified Carlson does not teach expressly the user interface,

characterized in, that said list is adapted to present only said files or only said

applications, that the top area of said list presents a field through which the content of

said list can be altered, that, if said list only presents files, said field displays a

representation of a task manager and a selection of said field will cause said list to alter

to present only applications, and that, if said list only presents applications, said field

displays a representation of a file manager and a selection of said field will cause said

list to alter and present only files.

        Wynn teaches a user interface control, characterized in, that said list is adapted

to present only said files or only said applications, that the top area of said list presents

a field through which the content of said list can be altered (column 3, lines 4-8, *dialog*

*box* 32), that, if said list only presents files, said field displays a representation of a task

manager and a selection of said field will cause said list to alter to present only

applications, and that, if said list only presents applications, said field displays a

representation (column 3, lines 4-8, *label* 31) of a file manager and a selection of said

field will cause said list to alter and present only files (column 3, lines 15-31).

The modified Carlson and Wynn are analogous art because they are in the same

field of endeavor, namely scrolling within graphical user interfaces with touch sensitive

displays.

At the time of the invention it would have been obvious to a person of ordinary

skill in the art to have the selection list format as taught by Wynn within the user

interface of the modified Carlson in order to provide a conventional list format.


11.      As per claim 9, the modifiedCarlson teaches the user interface according to claim

7, characterised in, that, a navigation in said list is performed by moving said object in a

direction towards the top of said list or towards the bottom of said list, that the

movement of said object will cause said marking to move in the same direction

(Carlson, page 27, *a quicker way to view the full list is to tap and hold on the dark solid*

*portion of the scroll bar, then drag it vertically*).

However the modified Carlson does not teach expressly that the speed of the

movement of said marking is lower than the speed of the movement of said object.

Wynn teaches a user interface control, characterised in, that, a navigation in said

list is performed by moving said object in a direction towards the top of said list or

towards the bottom of said list, that the movement of said object will cause said marking

to move in the same direction (column 3, lines 32-39 & figs. 5) and that the speed of the movement of said marking is lower than the speed of the movement of said object (column 4, lines 24-30).

> At the time of the invention it would have been obvious to a person of ordinary skill in the art to have the scrolling function as taught by Wynn within the user interface of the modifiedCarlson in order to provide a conventional selection list.

12.     As per claim 10, the modified Carlson in view of Wynn teaches the user interface according to claim 9, characterised in, that, if the number of applications and/or files in said list exceeds the number of applications and files that can be presented on said display area, and if said object is moved to the top or bottom position of said display area, then lifted, replaced on said display area, and again moved to the top or bottom of said display area, the content of said display area will be replaced one whole page, meaning that if said object is positioned at the top of said display area, then lifted, replaced on said display area, and then again moved to the top of said display area, the content of said display area will be replaced by the preceding applications and/or files in said list (Carlson, page 253, fig. 14.15 *Full Page Up*).

        The modified Carlson in view of Wynn does not disclose expressly the user interface, characterised in that if said object is positioned at the bottom of said display area, then lifted, replaced on said display area, and again moved to the bottom of said display area, the content of said display area will be replaced by the following applications and/or files in said list.

Application/Control Number: 10/315,250                                Page 12
Art Unit: 2178

At the time of the invention, it would have been an obvious matter of design choice to a person of ordinary skill in the art to modify the *Full Page Up* function (Carlson, page 253, fig 14.15) to work as a Full Page Down function by tapping on the bottom of the display area because Applicant has not disclosed that *if said object is positioned at the bottom of said display area, then lifted, replaced on said display area, and then again moved to the bottom of said display area, the content of said display area will be replaced by the following applications and/or files in said list* provides an advantage, is used for a particular purpose, or solves a stated problem.  One of ordinary skill in the art, furthermore, would have expected Applicant's invention to perform equally well with the modified Full Page Up function as taught by Carlson because it would only need to be implemented to scroll down instead of up, when the display area is tapped on the bottom, instead of the top.

13.    As per claim 11, the modified Carlson in view of Wynn teaches the user interface according to claim 10, characterised in, that if said object is removed from any first position on said display area and then replaced on any second position on said display area, said navigation can be continued from said second position (Carlson, page 253, fig. 14.15).


Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson ("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm Organizers. Peachpit Press.

Application/Control Number: 10/315,250                                      Page 13
Art Unit: 2178

2000.  Berkeley, CA.) Milic-Frayling et al ("Milic-Frayling", US 2004/0100510) and

Conrad et al ("Conrad", US 5,956,030).


14.     As per claim 13, the modified Carlson teaches the user interface according to

Claim 1, characterised in, that said menu area is positioned at the bottom of said touch

sensitive area, that said representation of said first function is positioned at the left side

of said menu area, and that said representation of said second function is positioned at

the middle of said menu area.

        The modified Carlson does not teach expressly that said representation of said

third function is positioned at the right side of said menu area.

        At the time the invention was made, it would have been an obvious matter of

design choice to a person of ordinary skill in the art to place the third function on the

right side of the display area instead of the left, because Applicant has not disclosed

that *said representation of said third function is positioned at the right side of said menu

area* provides an advantage, is used for a particular purpose or solves a stated problem.

One of ordinary skill in the art, furthermore would have expected Applicant's invention to

perform equally well with the third function on the left side of the display area because

the placement of the representation would not change its functionality.


        Claims 14 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Carlson ("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm Organizers.

Berkeley, CA: Peachpit Press, 2000), Milic-Frayling et al ("Milic-Frayling", US

2004/0100510) and Conrad et al ("Conrad", US 5,956,030) in view of Strietelmeier

("Strietelmeier", Strietelmeier, Julie. "Palm m100." The Gadgeteer. 2000.

<http://www.the-gadgeteer.com/review/palm_m100_review>).


15.    As per claim 14, the modified Carlson teaches the user interface according to

Claim 1, characterised in, that said user interface is adapted to a touch sensitive area

and that said user interface is adapted to be operated by one hand, where said object

can be a finger (page 12, *stylus…includes fingers*).

      However the modified Carlson does not teach expressly a touch sensitive area

with a size that is in the order of 2-3 inches.

      Strietelmeier teaches a user interface, characterised in, a touch sensitive area

with a size that is in the order of 2-3 inches (page 4).

      The modified Carlson and Strietelmeier are analogous art because they are in

the same field of endeavor, namely palm-sized computer organizers.

      At the time of the invention it would have been obvious to a person of ordinary

skill in the art to have the dimensions of a touch sensitive area as taught by

Strietelmeier within the user interface of the modified Carlson in order to provide a touch

sensitive area with the manufacturer's dimensions.


16.    As per claim 16, the modified Carlson teaches the enclosure according to claim

15. However, the modified Carlson does not disclose the enclosure characterised in,

that said enclosure is removable and exchangeable.

Application/Control Number: 10/315,250                                    Page 15
Art Unit: 2178

Strietelmeier teaches an enclosure characterised in, that said enclosure is
removable and exchangeable (page 3, *you can also remove the entire face plate…*
*there will be different face plates available*).

At the time of the invention it would have been obvious to a person of ordinary
skill in the art to have the customizable enclosures as taught by Strietelmeier within the
enclosure of the modified Carlson in order to tailor an enclosure to a user's preferences.

17.    Claim 18 is rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson
("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm Organizers. Berkeley, CA:
Peachpit Press, 2000), Milic-Frayling et al ("Milic-Frayling", US 2004/0100510) and
Conrad et al ("Conrad", US 5,956,030) in view of Chew et al. ("Chew", US # 6,727,917).

18.    As per claim 18, the modified Carlson teaches a computer readable medium
according to claim 17.

However the modified Carlson does not teach expressly, that said computer
program product is adapted to function as a shell upon an operations system.

Chew teaches a user interface for a palm-sized computer device, characterized
in, that said computer program product is adapted to function as a shell upon an
operations system (column 2, lines 1-5).

The modified Carlson and Chew are analogous art because they are in the same
field of endeavor, namely graphical user interfaces for hand-held personal computing
devices with touch sensitive displays.

Application/Control Number: 10/315,250                                    Page 16
Art Unit: 2178

At the time of the invention it would have been obvious to a person of ordinary skill in the art to further modify the modified Carlson program to function as shell as taught by Chew in order to efficiently display information.

### *Response to Arguments*

The Examiner reviewed the demonstration as encouraged by the Applicant. In light of the video demonstration, the Examiner can now see the difference between the prior art of record and the present application. With that being said the Examiner feels that the limitations, as claimed, were reasonably interpreted and the current limitations are still too broad to suggest without research what was shown in the video demonstration. For instance Conrad teaches as pointed out by applicant clicking a window in a menu title bar, dragging the cursor and placing it in the display region (page 19 of 32), which is exactly activating by a single step of an object moving in a direction from a starting point that is a representation of the function in the menu area to the display area. The function being activating or parking the window in the display area. The combination of the references is what teaches the limitations of claim 1, not Conrad or Palm OS alone.

Application/Control Number: 10/315,250                                          Page 17
Art Unit: 2178

### *Conclusion*

**THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to RYAN F. PITARO whose telephone number is

(571)272-4071.  The examiner can normally be reached on 9:00am - 5:30pm Mondays

through Fridays.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, David Wiley can be reached on 571-272-3923.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 10/315,250                                    Page 18
Art Unit: 2178

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/R. F. P./                                          /Stephen S. Hong/
Primary Examiner, Art Unit 2174                     Supervisory Patent Examiner, Art
                                                    Unit 2178

| *Search Notes*  | Application/Control No.<br><br>10315250 | Applicant(s)/Patent Under Reexamination<br><br>GOERTZ, MAGNUS |
|---|---|---|
| | **Examiner**<br><br>Ryan F Pitaro | **Art Unit**<br><br>2174 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| Update | Search | 11/8/2007 | RFP |
| Update | Search | 6/17/2008 | RFPF |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Update Search | 11/8/2007 | RFP |
| Update Search | 6/17/2008 | RFP |

### INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | | | | | | |
| | 1 | ✓ | ✓ | | | | | | |
| | 2 | ✓ | ✓ | | | | | | |
| | 3 | ✓ | ✓ | | | | | | |
| | 4 | ✓ | ✓ | | | | | | |
| | 5 | ✓ | ✓ | | | | | | |
| | 6 | ✓ | ✓ | | | | | | |
| | 7 | ✓ | ✓ | | | | | | |
| | 8 | ✓ | ✓ | | | | | | |
| | 9 | ✓ | ✓ | | | | | | |
| | 10 | ✓ | ✓ | | | | | | |
| | 11 | ✓ | ✓ | | | | | | |
| | 12 | ✓ | ✓ | | | | | | |
| | 13 | ✓ | ✓ | | | | | | |
| | 14 | ✓ | ✓ | | | | | | |
| | 15 | ✓ | ✓ | | | | | | |
| | 16 | ✓ | ✓ | | | | | | |
| | 17 | ✓ | ✓ | | | | | | |
| | 18 | ✓ | ✓ | | | | | | |
| | 19 | | ÷ | | | | | | |
| | 20 | | ÷ | | | | | | |
| | 21 | | ÷ | | | | | | |
| | 22 | | ÷ | | | | | | |
| | 23 | | ÷ | | | | | | |
| | 24 | | ÷ | | | | | | |
| | 25 | | ÷ | | | | | | |
| | 26 | | ÷ | | | | | | |
| | 27 | | ÷ | | | | | | |
| | 28 | | ÷ | | | | | | |
| | 29 | | ÷ | | | | | | |
| | 30 | | ÷ | | | | | | |
| | 31 | | ÷ | | | | | | |
| | 32 | | ÷ | | | | | | |
| | 33 | | ÷ | | | | | | |
| | 34 | | ÷ | | | | | | |
| | 35 | | ÷ | | | | | | |
| | 36 | | ÷ | | | | | | |

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit |
| | Ryan F Pitaro | 2174 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ **Claims renumbered in the same order as presented by applicant**        ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | 06/23/2008 | | | | | | | |
| | 37 | | ÷ | | | | | | | |
| | 38 | | ÷ | | | | | | | |
| | 39 | | ÷ | | | | | | | |
| | 40 | | ÷ | | | | | | | |
| | 41 | | ÷ | | | | | | | |
| | 42 | | ÷ | | | | | | | |
| | 43 | | ÷ | | | | | | | |
| | 44 | | ÷ | | | | | | | |
| | 45 | | ÷ | | | | | | | |
| | 46 | | ÷ | | | | | | | |
| | 47 | | ÷ | | | | | | | |
| | 48 | | | | | | | | | |
| | 49 | | | | | | | | | |
| | 50 | | | | | | | | | |
| | 51 | | | | | | | | | |
| | 52 | | | | | | | | | |
| | 53 | | | | | | | | | |
| | 54 | | | | | | | | | |
| | 55 | | | | | | | | | |
| | 56 | | | | | | | | | |
| | 57 | | | | | | | | | |
| | 58 | | | | | | | | | |
| | 59 | | | | | | | | | |
| | 60 | | | | | | | | | |
| | 61 | | | | | | | | | |
| | 62 | | | | | | | | | |
| | 63 | | | | | | | | | |
| | 64 | | | | | | | | | |
| | 65 | | | | | | | | | |

May 14 2008 5:19PM   PROPATS                    RECEIVED 9 9541975          P.1

2008 Maj 13 12:39    HP LASERJET-FAX     CENTRAL FAX CENTER                      s13
                                              MAY 14 2008

PTO/SB/82 (01-06)
Approved for use through 12/31/2008. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| REVOCATION OF POWER OF ATTORNEY WITH NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | Application Number | 10 /315 , 250 |
| | Filing Date | 12 - 10 - 2002 |
| | First Named Inventor | Magnus Goertz |
| | Art Unit | 2174 |
| | Examiner Name | PITARO  Ryan F |
| | Attorney Docket Number | |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

OR

☒ I hereby appoint the practitioners associated with the Customer Number:   **60956**

☒ Please change the correspondence address for the above-identified application to:

☒ The address associated with Customer Number:   **60956**

OR

| ☐ Firm or Individual Name | |
| Address | |
| City | | State | | Zip | |
| Country | |
| Telephone | | Email | |

I am the:

☐ Applicant/Inventor.

☒ Assignee of record of the entire interest. See 37 CFR 3.71.
  Statement under 37 CFR 3.73(b) is enclosed. (Form PTO/SB/96)

SIGNATURE of Applicant or Assignee of Record

| Signature | |
| Name | MIKAEL HAGMAN |
| Date | 13 MAY 2008 | Telephone | +46 8 586 22 810 |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☐ *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.36. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/SB/96 (01-06)
Approved for use through 08/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(b)

Applicant/Patent Owner: _Curitz, Magnus_

Application No./Patent No.: _10/315,250_   Filed/Issue Date: _12·10· 2002_

Entitled: _User Interface_

_NEUNODE AB_   •   _CORPORATION_
(Name of Assignee)   (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that it is:

1. [X] the assignee of the entire right, title, and interest; or

2. [ ] an assignee of less than the entire right, title and interest
    (The extent (by percentage) of its ownership interest is _____ %)

In the patent application/patent identified above by virtue of either:

A.[ ] An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel _____, Frame _____, or for which a copy thereof is attached.

OR

B.[X] A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

1. From: _Curitz, Magnus_   To: _Neunode Sweden AB_
    The document was recorded in the United States Patent and Trademark Office at
    Reel _018168_, Frame _0611_, or for which a copy thereof is attached.

2. From: _Neunode Sweden AB_   To: _Neunode AB_
    The document was recorded in the United States Patent and Trademark Office at
    Reel _018137_, Frame _044X_, or for which a copy thereof is attached.

3. From: _____   To: _____
    The document was recorded in the United States Patent and Trademark Office at
    Reel _____, Frame _____, or for which a copy thereof is attached.

[ ] Additional documents in the chain of title are listed on a supplemental sheet.

[X] As required by 37 CFR 3.73(b)(1)(i), the documentary evidence of the chain of title from the original owner to the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

(NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP 302.08)

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

_[signature]_   _13 MAY 2008_
Signature   Date

_MIKAEL HAGMAN_   _+46 8 586 2281_
Printed or Typed Name   Telephone Number

_CEO_
Title

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of: Magnus Goertz

Serial No.: 10/315,250

Filed: December 10, 2002

Title: User Interface

Attorney Docket No.: 12511-00003 (New)
        (3682-32) (Previous)

Group Art Unit: 2174

Examiner: Ryan F. Pitaro

Confirmation No.: 1226

Commissioner for Patents           March 14, 2008
Alexandria, VA 22313-1450

## AMENDMENT AND RESPONSE TO NON-FINAL OFFICE ACTION

   This is in response to the Office Action (paper no. 20071109) regarding the above-identified patent application that was mailed from the U.S. Patent and Trademark Office on November 14, 2007.

   A **Status of the Claims** starts on the following page 2.

   **Remarks concerning the Office Action** start on the following page 15.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375

## STATUS OF THE CLAIMS

1. **(Currently Amended)**  A computer readable medium storing a computer program with computer program code, which ~~code~~, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:

   a touch sensitive area that is simultaneously divided into a menu area and a display area,

   the _mobile handheld_ computer unit being adapted to run several applications simultaneously, and to present an active application on top of any other application on ~~the~~ _said_ display area, characterised in, that:

   ~~the~~ _said_ menu area simultaneously ~~presenting~~ _presents_ representations of a first function that is a general application dependent function, a second function that is a keyboard function, and a third function that is a task and file manager, and

   each of ~~the three~~ _said first, second, and third_ functions simultaneously represented in ~~the~~ _said_ menu area being activated by the single step of ~~an~~ _a blunt_ object moving in a direction from a starting point that is the representation of the _corresponding one of said first, second, and third_ function~~s~~ in ~~the~~ _said_ menu area to ~~the~~ _said_ display area being detected by ~~the~~ _said_ touch sensitive area, thereby allowing low precision navigation of the user interface using ~~a~~ _the_ blunt object, so that the user interface can be operated by one hand, where the blunt object is a finger.

2. **(Currently Amended)**  The computer readable medium of claim 1, wherein the _mobile handheld computer unit runs an operating system,_ the user interface is ~~characterized~~ _characterised_ in, that, if said first function is activated, ~~said display area~~ _the user interface_ is adapted to display icons representing different services or settings depending on the current active application, that one of said icons always represents a "help"-service, regardless of application, and that, if no application is current active on ~~said~~ _the mobile handheld_ computer unit, said icons are adapted to represent services or settings of the operating system of ~~said~~ _the mobile handheld_ computer unit.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

3. **(Previously Presented)**  The computer readable medium of claim 2, wherein the user interface is characterised in, that a selection of a preferred service or setting is done by tapping on a corresponding icon.

4. **(Previously Presented)**  The computer readable medium of claim 1, wherein the user interface is characterised in,
   - that, if said second function is activated, said display area is adapted to display a keyboard and a text field,
   - that, if a text passage in said active application is highlighted, said text passage is displayed in said text field for editing through said keyboard and that said highlighted test passage is replaced by said edited text passage when said second function is deactivated, and
   - that, if no text passage in said active application is highlighted, said text field is available for inputting and editing of text through said keyboard.

5. **(Previously Presented)**  The computer readable medium of claim 4, wherein the user interface is characterised in, that if no text passage in said active application is highlighted, said text field is used for inputting and editing of text through said keyboard, then
   - said first function can be activated, or
   - said second function can be closed, in which a choice of saving or deleting said inputted text is given, where the choice of saving said inputted text results in an activation of said first function,

   in which said first function will present services or settings available for said inputted text.

6. **(Currently Amended)**  The computer readable medium of claim 1, wherein the user interface is characterised in, that, if said third function is activated, said display area is adapted to display a list with a library of available applications and files on ~~said~~the mobile handheld computer unit, that a selection of an application will start said application, and that a selection of a file will open said file in an application intended for said file.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

7. **(Currently Amended)**  The computer readable medium of claim 6, wherein the user interface is characterised in, that a selection of an application or file is done by moving ~~said~~ the blunt object so that ~~the~~ a representation of a desired one of said application or file is highlighted, removing said object from said touch sensitive area, and then tapping on said touch sensitive area, and that ~~an~~ said desired one of said application or file is highlighted by placing some kind of marking on ~~the~~ said representation of said application or file.

8. **(Currently Amended)**  The computer readable medium of claim 7, wherein the user interface is characterised in, that said list is adapted to present only said files or only said applications, that ~~the~~ a top area of said list presents a field through which the content of said list can be altered, that, if said list only presents files, said field displays a representation of a task manager and a selection of said field will cause said list to alter to present only applications, and that, if said list only presents applications, said field displays a representation of a file manager and a selection of said field will cause said list to alter and present only files.

9. **(Currently Amended)**  The computer readable medium of claim 7, wherein the user interface is characterised in, that, a navigation in said list is performed by moving ~~said~~ the blunt object in a direction towards the top of said list or towards the bottom of said list, that the movement of ~~said~~ the blunt object will cause said marking to move in the same direction, and that the speed of movement of said marking is lower than the speed of movement of ~~said~~ the blunt object.

10. **(Currently Amended)**  The computer readable medium of claim 9, wherein the user interface is characterised in, that, if the number of applications and/or files in said list exceeds the number of application and files that can be presented on said display area as content, and if ~~said~~ the blunt object is moved to the top of bottom position of said display area, then lifted, replaced on said display area, and again moved to the top of bottom of said display area, the content of said display area will be replaced one whole page, meaning that if

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

said the blunt object is positioned at the bottom of said display area, replaced on said display area, and then again moved to the bottom of said display area, the content of said display area will be replaced by the following applications and/or files in said list, and if said the blunt object is positioned at the top of said display area, then lifted, replaced on said display area, and then again moved to the top of said display area, the content of said display area will be replaced by the preceding applications and/or files in the list.

11. **(Currently Amended)** The computer readable medium of claim 10, wherein the user interface is characterised in, that if said the blunt object is removed from any first position on said display area and then replaced on any second position on said display area, said navigation can be continued from said second position.

12. **(Currently Amended)** The computer readable medium of claim 1, wherein the user interface is characterised in, that an active application, function, service or setting is moved on one step by moving said the blunt object from the left of said display area to the right of said display area, and that the active application, function, service or setting is closed or backed one step by moving said the blunt object from the right of said display area to the left of said display area.

13. **(Previously Presented)** The computer readable medium of claim 1, wherein the user interface is characterised in, that said menu area is positioned at the bottom of said touch sensitive area, that said representation of said first function is positioned at the left side of said menu area, that said representation of said second function is positioned at the middle of said menu area, and that said representation of said third function is positioned at the right side of said menu area.

14. **(Currently Amended)** The computer readable medium of claim 1, wherein the user interface is characterised in, that said user interface is adapted to a touch sensitive area with a size that is on the order of 2-3 inches in diagonal dimension, and that said user interface is

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

adapted to be operated by one hand when the mobile handheld computer unit is held in the one hand, wherein said blunt object ~~can be~~is a ~~finger~~fleshy part of the thumb of the one hand.

15. **(Currently Amended)**  An enclosure adapted to cover ~~a computer unit, said computer unit being adapted to read computer program code of a computer program stored on a computer readable medium, which code, when read, presents a user interface~~ the mobile handheld computer unit according to Claim 1, characterised in, that said enclosure is provided with an opening for said display area, and that a representation of said menu area is printed on top of said enclosure.

16. **(Previously Presented)**  The enclosure according to claim 15, characterised in, that said enclosure is removable and exchangeable.

17. **(Original)**  A computer readable medium, with a computer program product stored therein, characterised in, that said computer program product comprises computer readable code, which, when read by a computer, will make it possible for said computer to present a user interface according to Claim 1.

18. **(Original)**  A computer readable medium according to claim 17, characterized in, that said computer program product is adapted to function as a shell upon an operating system.

19. **(New)**  An apparatus, comprising:
a computing device configured to provide a plurality of features and/or services to a user, said computing device including a user interface that comprises:
a touchscreen for displaying to the user, individually at differing times, a plurality of display screens corresponding to said plurality of features and/or services and for allowing the user to navigate among said various differing features and/or services and among said plurality of display screens; and

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to navigate among said plurality of features and/or services and among said plurality of display screens, said user interface software configured to:

when said touchscreen is displaying a first display screen of said plurality of display screens, cause said computing device to display a second display screen of said plurality of display screens in response to a first sweeping movement of the object along said touchscreen in a first direction, said computing device displaying said second display screen after the object has traversed a first predetermined extent of said touchscreen along said first direction; and

when said touchscreen is displaying said second display screen, cause said computing device to display said first display screen in response to a second sweeping movement of the object along said touchscreen in a second direction opposite said first direction, said computing device displaying said first display screen only after the object has traversed a second predetermined extent of said touchscreen along said second direction.

20. **(New)**  An apparatus according to claim 19, wherein said touchscreen has a left edge and a right edge when said touchscreen is properly oriented for viewing by the user and said first direction proceeds from a location at or proximate said left edge toward said right edge and said second direction proceeds from a location at or proximate said right edge toward said left edge.

21. **(New)**  An apparatus according to claim 20, wherein said touchscreen has a width extending from said left edge to said right edge and each of said first and second extents is substantially equal to said width.

22. **(New)**  An apparatus according to claim 21, wherein said touchscreen has a diagonal dimension of two inches to three inches.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

23. **(New)**  An apparatus according to claim 19, wherein said computing device is sized to be cradled in a hand of an adult human user and so that, when so cradled, all points on said touchscreen are touchable by the thumb of the adult human user, the object being the thumb of the hand.

24. **(New)**  An apparatus according to claim 19, wherein each of the first and second sweeping movements does not drag any graphical feature displayed on said touchscreen during that one of the first and second sweeping movements.

25. **(New)**  An apparatus, comprising:

a computing device configured to provide first and second menu-area functions to a user, said first menu-area function having a first-function display screen and said second menu-area function having a second-function display screen differing from said first-function display screen, said computing device including a user interface that comprises:

a touchscreen simultaneously divided into a menu region and a display region, said menu region containing first and second representations corresponding respectively to said first and second menu-area functions, said display region for displaying to the user at differing times said first-function and second-function display screens; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to select at differing times each of said first and second menu-area functions, said user interface software configured to:

display said first-function display screen in response to a first sweeping movement of the object along said touchscreen, the first sweeping movement starting at said first representation in said menu region and proceeding into said display region; and

display said second-function display screen in response to a second sweeping movement of the object along said touchscreen, the second sweeping movement starting at said second representation in said menu region and proceeding into said display region.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

26. **(New)**  An apparatus according to claim 25, wherein:

said touchscreen has a first edge and a second edge spaced from said first edge;

said first and second representations are each located proximate said first edge and spaced from one another along said first edge; and

the first and second sweeping movements each proceed in a direction toward said second edge.

27. **(New)**  An apparatus according to claim 25, wherein said first-function display screen contains a plurality of icons corresponding respectively to a plurality of applications, said user interface software configured to activate any one of said plurality of applications in response to the user tapping the object on said touchscreen at a corresponding one of said plurality of icons.

28. **(New)**  An apparatus according to claim 27, wherein said second-function display screen contains a set of application functions, said set varying as a function of which one of said plurality of applications is active when the user makes the second movement.

29. **(New)**  An apparatus according to claim 27, wherein a particular application of said plurality of applications has a plurality of application screen displays, said user interface software configured so that when said particular application is active, the user forwardly steps through said plurality of application screen displays by sweeping the object across said touchscreen in a first direction and reversely steps through said plurality of application screen displays by sweeping the object across said touchscreen in a second direction opposite said first direction.

30. **(New)**  An apparatus according to claim 25, wherein said first display screen contains a soft-interface telephony keypad.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

31. **(New)**  An apparatus, comprising:

a computing device configured to run a software application configured to display a plurality of predetermined display screens, said computing device including a user interface that comprises:

a touchscreen for displaying to the user, individually at differing times, said plurality of predetermined display screens and for allowing the user to navigate among said plurality of predetermined display screens; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to navigate among said plurality of predetermined display screens, said user interface software configured to:

activate said software application in response to a particular interaction of the object with said touchscreen;

forwardly step in series through ones of said plurality of predetermined display screens in response to corresponding respective individual instances of a first sweeping movement of the object along said touchscreen in a first direction; and

reversely step in series through ones of said plurality of predetermined display screens in response to corresponding respective individual instances of a second sweeping movement of the object along said touchscreen in a second direction different from said first direction.

32. **(New)**  An apparatus according to claim 31, wherein said particular interaction of the object with said touchscreen to activate said software application is a third sweeping movement of the object along said touchscreen in a third direction different from each of said first and second directions.

33. **(New)**  An apparatus according to claim 32, wherein said first and second directions are opposite one another and said third direction is perpendicular to each of said first and second directions.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

34. **(New)** An apparatus, comprising:

a computing device configured to run software for providing to a user a plurality of services and/or functions, said computing device including:

a touchscreen for displaying to the user a graphical user interface and for allowing the user to navigate among said plurality of services and/or functions; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to navigate among said plurality of services and/or functions, said user interface software configured to:

present, in response to a sweeping movement of the object across said touchscreen, a display screen containing a plurality of display icons corresponding respectively to ones of said plurality of services and/or functions, the sweeping movement being spatially uncorrelated with information displayed on said touchscreen; and

when said touchscreen is displaying said plurality of display icons, launch one of said plurality of services and/or functions in response to the user tapping the object on said touchscreen at a location where said touchscreen displays the corresponding one of said plurality of display icons.

35. **(New)** An apparatus according to claim 34, wherein said computing device contains a software application and said user interface is configured to present said plurality of display icons only if said software application is active during the sweeping movement of the object.

36. **(New)** An apparatus according to claim 35, wherein when said software application is active during the sweeping of the object, said display icons correspond to services and/or functions specific to said software application.

37. **(New)** An apparatus, comprising:

a computing device containing software for providing to a user a plurality of services and/or functions, said computing device including:

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

a touchscreen for displaying to the user, individually at differing times, ones of various
display screens associated with said plurality of services and/or functions and for
allowing the user to navigate among said plurality of display screens so as to provide
the user with access to said plurality of services and/or functions and for allowing the
user to control functioning of ones of said plurality of services and/or functions; and

user interface software responsive to a set of movements of an object with respect to said
touchscreen so as to allow the user to navigate among said plurality of display screens
and to control functioning of ones of said plurality of services and/or functions, said
set of movements including a plurality of sweeping movements having differing
directionalities along said touchscreen, wherein said plurality of sweeping movements
being spatially uncorrelated with information displayed on said touchscreen, said user
interface software being configured to distinguish the plurality of sweeping
movements from one another as a function of the differing directionalities so as to
provide differing responses as a function of said differing directionalities.

38. **(New)**  An apparatus according to claim 37, wherein two sweeping movements of the
plurality of sweeping movements have opposing directionality and said user interface
software is configured to provide two opposing responses corresponding respectively to said
two sweeping movements.

39. **(New)**  An apparatus according to claim 38, wherein one of the two opposing responses is
moving forward in a series of display screens and the other of the two opposing responses is
moving backward in the series of display screens.

40. **(New)**  An apparatus according to claim 37, wherein each of the plurality of sweeping
movements does not drag any graphical feature displayed on said touchscreen during that one
of the plurality of sweeping movements.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

41. **(New)**  An apparatus, comprising:

a computing device configured to provide a plurality of features, settings, applications and/or services to a user, said computing device including a user interface that comprises:

a touchscreen for displaying to the user a list of items corresponding to at least one of a plurality of features, settings, applications and/or services and for allowing the user to select any one of said items using said list; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to navigate among said list and to select any one of said items, said user interface software configured to move a highlight marking, having a displayed location on said touchscreen, in a desired direction within said list in response to the user:

(a)  contacting said touchscreen with the object at a first location that is a function of the desired direction, not said displayed location of said highlight marking;

(b)  while keeping the object in contact with said touchscreen, moving the object along said touchscreen in the desired direction to a second location; and

(c)  immediately following said moving of the object along said touchscreen to said second location, lifting the object from said touchscreen so as to establish a new location of said highlight marking.

42. **(New)**  An apparatus according to claim 41, wherein said user interface software is configured to, after the user has marked a desired one of said items by performing steps (a) through (c) so as to highlight said desired one with the highlight marking, select said desired one in response to the user tapping the object on said touchscreen without regard to said display location of the highlight marking.

43. **(New)**  An apparatus, comprising:

a computing device configured to provide a plurality of features, settings, applications and/or services to a user, said computing device including a user interface that comprises:

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

Page 13 of 32

a touchscreen for displaying to the user a list of items corresponding to at least one of said plurality of features, settings, applications and/or services and for allowing the user to select any one of said items using said list; and

user interface software responsive to interaction of an object with said touchscreen so as to allow the user to scroll said list and to select any one of said plurality items, said user interface software configured to scroll said list in a desired direction in response to the user:

(a) contacting said touchscreen with the object at a first location that is a function of the desired direction of said scroll and that is not based on any soft scroll control displayed on said touchscreen; and

(b) while keeping the object in contact with said touchscreen, moving the object along said touchscreen in the desired direction to a second location, wherein said moving of the object causes said list to scroll in the desired direction.

44. **(New)**  An apparatus according to claim 43, wherein said user interface software is configured to activate a selected one of said items in response to a user tapping the object on said touchscreen following the user lifting the object from the touchscreen after the user performs step (b).

45. **(New)**  An apparatus according to claim 43, wherein said items are files.

46. **(New)**  An apparatus according to claim 43, wherein said items are email messages.

47. **(New)**  An apparatus according to claim 43, wherein each item is contact information for a corresponding contact.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375

## REMARKS

Claims 1-47 are presently pending.  Claims 1, 2 and 6-12, 14 and 15 have been amended for form and not for reasons relating to patentability of the claims in view of the references of record.  Claims 19-47 are new.

Applicant respectfully requests reconsideration of the application in view of the foregoing amendments and the remarks appearing below.

### The Current Patent Application

Before addressing in detail the specific rejections made in the current Office Action, Applicant would like to emphasize that the unique touchscreen-based user interface of the current patent application allows a user to navigate among, for example, applications, display screens, services, functions and settings using "low-precision" navigation techniques.  These techniques are very different from conventional touchscreen interfaces, such as the touchscreen-based user interface of the Palm operating system described in the Carlson publication, which is addressed in detail below in the context of the rejections set forth in the present Office Action. Such conventional touchscreen-based user interfaces typically require the precise locating of a pointing object, for example a stylus, within clearly identified bounds of a displayed graphical feature, such as a page-up or page-down icon, scroll bar, button, menu item, application icon, etc., to effect a desired action.

Low-precision navigation user interfaces made in accordance with the current application can be implemented on very small touchscreens, for example, on the order of 2 inches to 3-inches in diagonal dimension, yet still allow very easy and accurate navigation with, for example, a user's thumb (even when gloved), despite the fact that the (gloved) thumb covers a significant portion of the small screen during a navigation operation.  For a demonstration of a number of features disclosed in the current patent application and covered by the claims therein and in the present Response, the Examiner is encouraged to access http://www.neonode.com/en-us/on-stage/products/n2/introduction/ and watch the video demonstration of the N2 mobile phone/personal digital assistant device made by Neonode AB.  The N2 device and its

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

predecessor N1 device each incorporate many of the low-precision navigation features originally disclosed in the current application. Applicant encourages the Examiner to view the demonstration video at the above-identified URL prior to reviewing Applicant's arguments below. If the Examiner is unable to view the demonstration video, Applicant respectfully requests that the Examiner contact the below-signed attorney to arrange an alternative demonstration of the N2 and/or N1 devices.

## Rejections under 35 U.S.C. § 103

### *Carlson/Milic-Frayling/Conrad*

Claims 1, 4-7, 12, 15 and 17 stand rejected under 35 U.S.C. § 103(a) as being obvious in view of a combination of Carlson, Jeff, <u>Visual Quickstart Guide Palm Organizers</u>, Peachpit Press, Berkley, California, 2000 ("the Carlson publication"), U.S. Patent Application Publication No. 2004/0100510 to Milic-Frayling et al. ("the Milic-Frayling publication") and U.S. Patent No. 5,956,030 to Conrad et al. ("the Conrad patent"). Applicant respectfully disagrees.

The Carlson publication describes features and functionality of the Palm operating system (OS) (circa version 3.5) for personal organizer devices. Particular aspects of the Palm OS are described below in connection with specific rejections in which the U.S. Patent and Trademark Office (USPTO) raises those particular aspects. At a high level, however, Applicant notes that the Palm OS provides a user interface for use with a stylus or other object that primarily functions as either a pointer (e.g., when selecting a button, when selecting a menu choice, when dragging a slider-type icon or when highlighting text) or as a writing implement (e.g., when using the Palm GRAFFITI® handwriting recognition software to input letters and numerals). It is noted that, prior to the Palm OS, both of these functionalities were well known to be implemented in conventional mouse-based and tablet-based user interfaces. An exception to these functionalities in the context of the Palm OS is the ability to activate a single user-selected one of a predetermined set of features, namely, the backlight, keyboard, Graffiti-help, turn-off-and-lock, and beam-data features. See FIG. 2.22 and accompanying text of the Carlson publication directed to customizing buttons and selecting preferences for a description of this

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

functionality.  In this exception, the Palm OS provides a single bottom-of-screen-to-top-of-screen stroke shortcut for quickly activating the chosen feature from the set of features.

The Milic-Frayling publication discloses a Web browser adapted for use on small displays, such as touchscreens, as typically found on handheld devices.  Generally, the Milic-Frayling browser includes a page-display region and software that selects Web page content for displaying in the page-display region and formats that content for the small page display region. The browser has a menu bar beneath the display region.  Referring to FIG. 2 of the Milic-Frayling publication, the menu bar contains a number of buttons including what appears to be a home button, a back button, a reload-page button, a "View Tools" button and a folder button, among others.  It appears that a user can select any one of these buttons by tapping with a stylus on the touchscreen at the location of the desired button.  See, for example, paragraph [0041] of the Milic-Frayling publication.

The Conrad patent discloses a system for managing windows on a computer screen.  The system allows a user to, effectively, close windows by dragging them to a drawer region.  When a window is in the drawer region of the screen, it is represented by a "drawer identifier" (see, e.g., drawer identifiers D1 through D4 in each of FIGS. 1-3 of the Conrad patent) that takes up much less screen-space than the window when open.  When a window is in a drawer state, a user can open the window by clicking on the drawer identifier or dragging a cursor or an object, such as a file or folder, to the drawer identifier.  An open window may be put into the drawer state by double clicking in a menu bar of the open window.

Turning now to the specific claim rejections, claim 1, as amended for clarity and not patentability, requires among other things that "each of said first, second, and third functions simultaneously represented in said menu area being activated by the single step of a blunt object moving in a direction from a starting point that is the representation of the corresponding one of said first, second, and third functions in said menu area to said display area being detected by said touch sensitive area."  In rejecting independent claim 1, the USPTO asserts that the Carlson publication teaches this step by virtue of the Palm OS's bottom-of-screen-to-top-of-screen

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

Page 17 of 32

single-stroke shortcut described above that allows a user to activate a single pre-selected feature of a small set of available features.

Two points regarding the Palm OS single-stroke shortcut are in order. First, the stroking movement is not linked at all to a corresponding representation of the feature activated by the stroke. In other words, the shortcut stroke itself has no relation whatsoever to the presence of representations in the menu area. Again, it is simply a shortcut set to the user's preference without regard to any representations being in the menu area. Second, the shortcut stroke must start in the Graffiti region. If the stroke is started over one of the icons to the left or right of the Graffiti region, the feature set as a preference will not start. Furthermore, none of the features (home, menu, calculator, find) having a representation outside the Graffiti region can be activated using the shortcut stroke. Again, the only features that the Palm OS allows for assigning to the shortcut stroke are the backlight, keyboard, Graffiti-help, turn-off-and-lock, and beam-data features, and only one feature can ever be activated using the shortcut stroke without the user changing the preference selected.

In view of the foregoing, it is clear that the Carlson publication does not disclose or suggest the limitation of claim 1 of "each of said first, second, and third functions simultaneously represented in said menu area being activated by the single step of a blunt object moving in a direction from a starting point that is the representation of the corresponding one of said first, second, and third functions in said menu area to said display area being detected by said touch sensitive area." Emphasis added. More particularly, the Carlson publication does not disclose or suggest that each of three functions having simultaneous representations in the menu area can be activated by the single step movement nor that the movement starts on the corresponding representation of the function to be activated.

Also in rejecting independent claim 1, the USPTO asserts that "Conrad teaches activating by a single step of an object moving in a direction from a starting point that is [the] representation of the function in the menu area to the display area" and directs Applicant to Figure 2 and col. 2, lines 15-62 of the Conrad patent in support of this asserted teaching. Applicant respectfully disagrees that the Conrad patent teaches this.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375

Applicant has reviewed the cited passage at col. 2, lines 15-62 of the Conrad patent and fails to find any mention of activating by moving an object away from a menu area into a display area. In fact, the Conrad patent appears to teach the opposite. The cited passage teaches opening for viewing a window "parked" in the drawer region (which is at the bottom of the screen) in three ways: 1) clicking in the drawer identifier (menu title bar); 2) dragging the cursor from the display region above the drawer identifier into the identifier; and 3) dragging an object desired to be placed in the parked window from the display region above the drawer identifier into the identifier. None of these actions involves movement of an object from a representation of a function in a menu area to a display area. In fact, all three disclosed movements are in the opposite direction relative to the direction of movement in claim 1.

This is further supported by Figures 1 and 2 of the Conrad patent. According to the written description of Figures 1 and 2 appearing at col. 5, line 64 to col. 6, line 23, of the Conrad patent, Figure 1 illustrates a path (6) along which a user moves a cursor (5) from a window region (8) of a desktop (20) <u>toward</u> a drawer region (9) (specifically, drawer D2 in this example) in anticipation of opening the window (200 in FIG. 2) corresponding to drawer D2. As explained at col. 6, lines 21-23, of the Conrad patent in connection with FIG. 2, window 200 is opened in response to the user moving the cursor 5 <u>into</u> the drawer region 9, specifically drawer D2. Window 200 is moved off screen, i.e., the drawer is closed, by the user moving the cursor 5 along the path (203) illustrated in Figure 2.

Generally drawing parallels between the window (drawer) opening and closing functionality disclosed in the Conrad patent and the function-opening functionality of the movement described in claim 1 (and setting aside the fact that the cursor (5) of the Conrad patent is not a user's thumb), it is readily seen that the corresponding respective movements are opposite one another. In Conrad, a window (drawer) is opened by moving a cursor toward and into the drawer region from the window region, and in present claim 1, a function is activated by moving an object (finger) from the menu area into the display area. Consequently, Applicant respectfully submits that the Conrad patent, in fact, does not disclose or suggest the step of activating a function by moving a blunt object "in a direction from a starting point that is the

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375

representation of the corresponding one of said first, second, and third functions in said menu area to said display area." Furthermore, the Conrad patent is completely silent on the movement being of a "blunt object" and "being detected by said touch sensitive area," as also required by amended claim 1.

For at least the foregoing reasons, Applicant respectfully submits that neither amended independent claim 1, nor claims 4-7, 12, 15 and 17 that depend therefrom, are rendered obvious in view of the applied combination.

Regarding claim 4, this claim requires among other things the limitation of "if a text passage in said active application is highlighted, said text passage is displayed in said text field for editing through said keyboard." In contrast, the Palm OS does not display the highlighted text as a function of the highlighting but rather as a function of which data <u>field</u> is active when the keyboard is opened. For example, in the Palm address application, if an address field is selected when the keyboard is opened, the keyboard displays the contents of that field, regardless of whether or not it contains any text and whether or not text is highlighted. Since the Carlson publication does not disclose or suggest the limitation of "if a text passage in said active application is highlighted, said text passage is displayed in said text field for editing through said keyboard," dependent claim 4 is not rendered obvious by the applied combination for at least this additional reason.

Regarding dependent claim 5, this claim requires among other things the limitation that "said second function can be closed, in which <u>a choice</u> of saving or deleting said inputted text is given, where the choice of saving said inputted text results in an activation of said first function." [Emphasis added.] The keyboard function of the Palm OS does not give the user a choice of saving or deleting in connection with the second function (i.e., keyboard) being closed. Rather, when a user closes the keyboard of the Palm OS, the contents of the keyboard text field will automatically be input to text field that was active when the user opened the keyboard. The Palm OS does not provide any choices upon closing the keyboard. In addition, since there is no choice of saving in the Palm OS, *a fortiori*, there also is no activation of a first function as a result of the choice of saving as also required by the above-recited limitation of claim 5. Regarding the

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

USPTO's assertion in item 3 on page 5 of the current Office Action that the "beam memo" feature has relevance to the recited limitation, Applicant respectfully asserts that this feature must be manually selected by the user, either using a drop-down menu in the memo application of the Palm OS or using the shortcut stroke discussed above.  For at least these additional reasons, the applied combination cannot render obvious dependent claim 5.

Regarding dependent claim 6, the claim requires among other things the limitation of "a selection of an application will start said application, and that <u>a selection of a file will open said file in an application intended for said file.</u>"  [Emphasis added.]  In rejecting this claim, the USPTO directs Applicant to page 47 and Figure 2.35 of the Carlson publication.  However, Figure 2.35 clearly shows that the Palm OS only displays applications in a list, not files.  Therefore, Carlson fails to disclose or suggest at least the limitation of claim 6 that the selection of a file will open that file in an application intended for the file.  Moreover, the USPTO is reminded that there is no teaching or suggestion in any of the references of the applied combination for opening a third function (file and task manager) as discussed above relative to claim 1.  For at least these additional reasons, dependent claim 6 is not rendered obvious by the applied combination.

Regarding claim 7, this claim requires among other things the limitation that "a selection of an application or file is done by moving the blunt object so that a representation of a desired one of said application or file is highlighted, <u>removing said object from said touch sensitive area, and then tapping</u> on said touch sensitive area."  [Emphasis added.]  In rejecting this claim, the USPTO directs Applicant to pages 26 and 27 of the Carlson publication.  Applicant respectfully disagrees that the Palm OS that is the subject of the Carlson publication works in the manner expressed in the above excerpt from claim 7.

An important distinction needs to be made here.  Other than the Graffiti feature, the Palm OS provides, for all intents and purposes, a pointer-based touchscreen interface in which a stylus (or other fine-tipped object) is used to make menu selections, initiate applications, drag scroll-bars, etc. by touching the stylus to the screen at precisely the desired location.  (In this connection, while a finger can be used in the Palm OS for at least some functions, there are many

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

instances when the proper response can be had only by very carefully using one's fingernail, as opposed to the fleshy tip of the finger. The Palm OS is certainly not designed for low-precision navigation as is the interface of the present invention.)

In the Palm OS, to select a desired option from a dropdown menu containing a list of options, the user typically simply taps the stylus on the touchscreen precisely at the location of the desired option. See page 26 of the Carlson publication that describes the "tap" function. When the user taps the touchscreen at the desired option, the selected option is briefly highlighted before the corresponding function is performed. If the user holds the stylus on the touchscreen over an option, that option remains highlighted until the user either slides the stylus on the touchscreen out of the region over the option or, with the stylus still over the option, removes the stylus from the touchscreen. The former does not cause the function corresponding to the initially highlighted option to be performed. In fact, in a list of options, the user may move the stylus from one to another while still touching the touchscreen, and all that will happen is that each will become highlighted whenever the stylus is over that option. However, the latter, i.e., the removing of the stylus from the region over the option, causes the corresponding function to be executed. In other words, an option is selected by the removal of the stylus from the screen while the option is highlighted.

Returning to the above-quoted excerpt from claim 7, that language clearly requires that after the application or file is highlighted, the object is removed from the touch sensitive area. Then, the selection of the application or file is made by then tapping on the touch sensitive area. The Palm OS clearly does not work this way. In the Palm OS, when the user highlights an item, it is selected by the mere removal of the object from touchscreen. There simply is no follow-on tapping, because the removal of the object has already caused the selection. Therefore, the Carlson publication does not teach at least the highlighting, object removal and tapping sequence required by claim 7. For at least this additional reason, claim 7 is not rendered obvious by the applied combination.

Regarding dependent claim 12, this claim as amended requires among other things the limitation that "an active application, function, service or setting is moved on <u>one step</u> by

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375

moving said blunt object from the left of said display area to the right of said display area, and that the active application, function, service or setting is closed or backed one step by moving said blunt object from the right of said display area to the left of said display area." [Emphasis added.] In rejecting this claim, the USPTO directs Applicant to the horizontal scroll bar feature in the TealDoc application described on page 246 of the Carlson publication. As seen in FIG. 14.2 of the Carlson publication, the TealDoc application presents a horizontal conventional-type scroll bar near the bottom of the display screen. As seen in that figure, the scroll slider the user must drag with a fine-tipped object (e.g., stylus) is relatively very small. When the user drags the slider with the fine-tipped object, the displayed text scrolls up or down, depending on the direction the user drags the slider.

Applicant respectfully asserts that the TealDoc scrolling feature does not correspond to the limitation recited in claim 12. First, Applicant respectfully asserts that scrolling through a document, which is a continuous, flowing process during the drag of the slider, cannot reasonably be said to be "moving on one step" or "backed one step," each of which is inherently a discrete action. Second, Applicant respectfully asserts that due to the very small size of the TealDoc slider, the scrolling in fact cannot be accomplished using a blunt object. The slider is very small and requires the user to precisely locate a fine-tipped object within the boundary of the slider so that the user can drag the slider. Third, claim 12 requires that the object be moved from the left of the touchscreen to the right of the touchscreen. The TealDoc scroll bar does not start anywhere near the left of the touchscreen, but rather it starts near the center of the touchscreen. Because the Carlson publication does not disclose or suggest at least these limitations of dependent claim 12, the foregoing reasons are additional reasons why the applied combination cannot render obvious this claim.

Regarding claim 15, this claim as amended requires among other things the limitation that "said enclosure is provided with an opening for said display area, and that a representation of said menu area is printed on top of said enclosure." [Emphasis added.] In rejecting this claim, the USPTO directs Applicant to the portion of page 12 of the Carlson publication directed to the silkscreened Graffiti area at the bottom of the touchscreen of the Palm device. Applicant

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

respectfully disagrees that the silkscreened Graffiti area corresponds to the limitations of claim 15.

The Carlson publication, on page 12, states that the "Graffiti input area and the buttons on either side of it are printed on a layer of glass by a silkscreening process." Upon review of a Palm device, particularly a Palm IIIc device, it appears that the layer of glass is part of the entire touchscreen (including both the menu area and display area). Therefore, it is Applicant's position that it is not reasonable to refer to this layer of glass as an "enclosure . . . provided with an opening for said display area," as required by claim 15, because it is in fact part of the display area and indeed part of the entire touchscreen. Since the Palm glass layer is not an enclosure, the Carlson publication also does not disclose or suggest an enclosure having a "of said menu area is printed on top of said enclosure" as also required by claim 15. Because the Carlson publication does not disclose or suggest at least these limitations of amended dependent claim 15, the foregoing reasons are additional reasons why the applied combination cannot render obvious this claim.

For at least the foregoing reasons, Applicant respectfully requests withdrawal of the present rejection.

### Carlson/Milic-Frayling/Conrad/Kopitzke

Claims 2 and 3 stand rejected under 35 U.S.C. § 103(a) as being obvious in view of a combination of the Carlson publication, the Milic-Frayling publication, the Conrad patent and U.S. Patent No. 6,988,246 to Kopitzke et al. ("the Kopitzke patent"). Applicant respectfully disagrees.

The teachings of each of the Carlson publication, the Milic-Frayling publication and the Conrad patent are as described above relative to the rejection in view of the Carlson/Milic-Frayling/Conrad combination.

The Kopitzke patent discloses a device and a software application that together present a touch sensitive user interface for monitoring systems aboard an aircraft. The application displays various screens and menus that change depending on what system a user desires to monitor. The

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

user interface displays an onscreen help key or button (6) that is displayed regardless of the contents of the display area (2).

Turning now to the rejected claims, it is noted that claims 2 and 3 both depend from claim 1. As discussed above relative to the rejection in view of the Carlson/Milic-Frayling/ Conrad combination, claim 1 is not obvious in view of that combination because the combination lacks a number of the limitations of claim 1. The Kopitzke patent does not disclose or suggest the limitations missing from the Carlson/Milic-Frayling/Conrad combination. Therefore, claims 2 and 3 are not obvious in view of the present Carlson/Milic-Frayling/Conrad/Kopitzke combination.

For at least this reason, Applicant respectfully requests withdrawal of the present rejection.

### *Carlson/Milic-Frayling/Conrad/Wynn*

Claims 8-11 stand rejected under 35 U.S.C. § 103(a) as being obvious in view of a combination of the Carlson publication, the Milic-Frayling publication, the Conrad patent and U.S. Patent No. 6,734,883 to Wynn et al. ("the Wynn patent"). Applicant respectfully disagrees.

The teachings of each of the Carlson publication, the Milic-Frayling publication and the Conrad patent are as described above relative to the rejection in view of the Carlson/Milic-Frayling/Conrad combination.

The Wynn patent discloses a graphical user interface control that allows a user to "spin" forward and backward through a list of items while the interface displays preview and postview segments of the list. According to the Wynn patent, by providing visible access to the upcoming and recently past selections, the user can operate the spin control at a higher speed, thereby increasing efficiency.

Turning now to the rejected claims, it is noted that claims 8-11 each depend from claim 1. As discussed above relative to the rejection in view of the Carlson/Milic-Frayling/Conrad combination, claim 1 is not obvious in view of that combination because the combination lacks a number of the limitations of claim 1. The Kopitzke patent does not disclose or suggest the

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375

limitations missing from the Carlson/Milic-Frayling/Conrad combination. Therefore, claims 8-11 are not obvious in view of the present Carlson/Milic-Frayling/Conrad/Wynn combination.

Looking now more specifically at the claims individually, dependent claim 8 requires among other things that "a top area of said list presents a field through which the content of said list can be altered, that, <u>if said list only presents files, said field displays a representation of a task manager and a selection of said field will cause said list to alter to present only applications</u>, and that, <u>if said list only presents applications, said field displays a representation of a file manager and a selection of said field will cause said list to alter and present only files</u>." [Emphasis added.] In rejecting this claim, the USPTO directs Applicant to col. 3, lines 4-8, of the Wynn patent and asserts that the Wynn dialog box 32 is a field through which the content of a list can be altered in the manner required by claim 8. Applicant respectfully disagrees.

A careful reading of claim 8 counsels that the "field" of the claim is used to toggle the content of the list between applications and files. When a representation of a task manager appears in this field, the list displays files, and when a representation of a file manager appears in the field, the list displays applications. When a user selects the field (which contains a representation of either a task manager or file manager), the field toggles to the opposite representation (i.e., from file manager to task manager, or vice versa) and the list toggles to the opposite type list (i.e., from applications to files, or vice versa).

In contrast Wynne et al. describe dialog box 32 (i.e., "field") of the Wynn patent as being a place for a user to either type in a choice or populate using a drop-down menu of choices. Col. 3, lines 8-14. The Wynn patent also discloses that this dialog box, or field, has a label 31 identifying what the field is for, e.g., URLs, file to open, locations visited, etc. Col. 3, lines 6-32. Applicant respectfully asserts that the Wynn patent does not disclose the "toggling" inherent in claim 8 as noted above. Regardless of what a user inputs into dialog box 32 and regardless of how label 31 is changed (which it is not for a given dialog box because it is simply a static label), the character of the list corresponding to the dialog box never toggles from application to file. Because the Wynn patent does not disclose or suggest what the USPTO asserts, for at least this

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

additional reason, the Carlson/Milic-Frayling/Conrad/Wynn combination cannot render obvious claim 8.

In addition, the undersigned notes he is confused by the rejection in that the text of the rejection in item 10 on page 9 of the current Office Action appears to assert that the dialog box 32 corresponds to the "field" of claim 8 and that this field displays a label (31), which corresponds to the "representation" of claim 8. The undersigned respectfully asserts this construction of the Wynn teachings does not appear to make sense in the context of claim 8. Claim 8 requires the field (dialog box) to display the representation (label). However, in the Wynn patent, the dialog box does not display the label, rather the label is displayed adjacent to the dialog box. Thus, the undersigned believes there is an internal discrepancy within the rejection.

Regarding dependent claim 9, this claim as amended requires among other things the limitation that "a navigation in said list is performed by moving said blunt object in a direction towards the top of said list or towards the bottom of said list, that the movement of said blunt object will cause said marking to move in the same direction, and that the speed of movement of said marking is lower than the speed of movement of said blunt object." [Emphasis added.] In rejecting this claim, the USPTO asserts that col. 3, lines 32-39, and Figure 5 of the Wynn patent disclose moving of the blunt object to navigate in the list and that col. 4, lines 24-30, discloses the differing speed aspect of the claim. Applicant respectfully disagrees.

As for the Wynn patent's teachings at col. 3, lines 32-39, all Wynn et al. disclose there is that a user can select an item using a cursor-type pointer or an arrow or tab key. There is no mention whatsoever that the navigation is performed with a blunt object. As for the Wynn patent's teachings at col. 4, lines 24-30, all that Wynn et al. state there is that conventional graphical user interface controls can be difficult to operate rapidly due to the inability of the user to scroll through a list and select a choice at the same speed as the computer can print the choices to the screen. There is absolutely no mention of any relationship between the speed of moving a blunt object along a touch sensitive region and the speed at which a marking in a list is moved. Because the Wynn patent does not disclose or suggest at least these limitation of claim 9, the

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375

Carlson/Milic-Frayling/Conrad/Wynn combination cannot render obvious this claim for these additional reasons.

Regarding dependent claim 10, this claim as amended requires among other things the limitation that "if said blunt object is positioned at the bottom of said display area, replaced on said display area, and then again moved to the bottom of said display area, the content of said display area will be replaced by the following applications and/or files in said list." [Emphasis added.] In rejecting this claim, the USPTO asserts that the "Full Page Up" feature described on page 253 of the Carlson publication corresponds to the above-quoted excerpt from claim 10. Applicant respectfully disagrees.

As discussed above in detail relative to the rejection of claim 7 in view of the Carlson/Milic-Frayling/Conrad combination, the Palm OS activates a selection upon removal of an object from the touchscreen. This is typically done in the form of a tap (i.e., a rapid contact and withdraw movement) using a stylus. In connection with the split-screen scroll options described on page 253 of the Carlson publication, Carlson indeed describes the split-screen regions as "letting you control the amount of scrolling based on where you tap." [Emphasis added.] Thus, the mere movement of a blunt object to the bottom of the display area as required by claim 10 will, in fact, not cause the scrolling effect. Rather, the scrolling will not occur until the object is lifted. Since the Carlson publication does not disclose or suggest this feature of claim 10 as asserted, the Carlson/Milic-Frayling/Conrad/Wynn combination cannot render obvious this claim for this additional reason.

For at least the foregoing reasons, Applicant respectfully requests withdrawal of the present rejection.

### *Carlson/Milic-Frayling/Conrad/Design Choice*

Claim 13 stands rejected under 35 U.S.C. § 103(a) as being obvious in view of a combination of the Carlson publication, the Milic-Frayling publication, the Conrad patent and design choice of someone of ordinary skill in the art at the time of the invention. Applicant respectfully disagrees.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375

Claim 13 depends from claim 1. As discussed above relative to the rejection in view of the Carlson/Milic-Frayling/Conrad combination, claim 1 is not obvious in view of that combination because the combination lacks a number of the limitations of that claim. Since claim 13 depends from claim 1, claim 13 is not obvious in view of the present Carlson/Milic-Frayling/Conrad/Design Choice combination. Therefore, Applicant respectfully requests withdrawal of the present rejection.

### *Carlson/Milic-Frayling/Conrad/Strietelmeier*

Claims 14 and 16 stand rejected under 35 U.S.C. § 103(a) as being obvious in view of a combination of the Carlson publication, the Milic-Frayling publication, the Conrad patent and Strietelmeier, Julie, "Palm m100," The Gadgeteer, 2000 ("the Strietelmeier publication"). Applicant respectfully disagrees.

The teachings of each of the Carlson publication, the Milic-Frayling publication and the Conrad patent are as described above relative to the rejection in view of the Carlson/Milic-Frayling/Conrad combination.

The Strietelmeier publication describes features of the Palm m100 personal digital assistant that runs the same stylus-based Palm OS 3.5 described in the Carlson publication discussed above. The Strietelmeier publication lists that the area of the display of the m100 device is 2.675 in. x 1.965 in. (which yields a diagonal dimension of about 3.32 in.). The display area of the m100 device is the smallest of the five devices listed in the Strietelmeier publication.

Turning to the rejected claims, claim 14 depends from claim 1, and claim 16 incorporates limitations from claim 1 via claim 15 from which claim 16 depends. As discussed above relative to the rejection in view of the Carlson/Milic-Frayling/Conrad combination, claim 1 is not obvious in view of that combination because the combination lacks a number of the limitations of that claim. The Strietelmeier publication does not disclose or suggest the limitations missing from the Carlson/Milic-Frayling/Conrad combination. Since claim 14 depends from claim 1 and claim 16 incorporates limitations of claim 1, claim 14 and 16 are not obvious in view of the present Carlson/Milic-Frayling/Conrad/Strietelmeier combination.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375

In addition, specifically regarding claim 14, this claim as amended requires that the touch sensitive area have "a size that is 2-3 inches in diagonal dimension, and that said user interface is adapted to be operated by one hand when the mobile handheld computer unit is held in the one hand, wherein said blunt object is a thumb of the one hand." [Emphasis added.] Regarding the area of the touch sensitive area, the 3.32 in. diagonal dimension of the m100 device is larger than the 3 in. upper end of the claimed range. While 0.32 in. may not on its face seem to be much of a difference, Applicant notes that the difference is in fact substantial when the device is used in the manner of claim 14, i.e., cradled in one hand and operated by the fleshy part of the thumb of that same hand for true single-hand operation. If the Examiner has access to any of the Palm devices the Strietelmeier publication lists (i.e., the m100, III/IIIx, V and IIIc devices), Applicant respectfully requests that the Examiner try to operate that Palm device in a truly one-handed manner using the fleshy part of the holding hand to use the touchscreen. Applicant believes the Examiner will find that it is challenging and awkward to access the touchscreen with the thumb in any meaningful manner. Applicant respectfully requests that this experience be compared to the video demonstration mentioned above that is available at the www.neonode.com Website.

Regarding the limitations of claim 14 directed specifically to the holding of the computer unit in one hand and navigating using the fleshy part of the thumb of that same hand, Applicant again respectfully points out that the Palm OS is intended to be used with a stylus or other fine-tipped object. The designers of the Palm OS clearly did not intend the use of a blunt object, especially the fleshy part of a thumb. If the fleshy part of the thumb works at all on a device running the circa-version-3.5 of the Palm OS, it is usually by mere luck that the user selects a desired action using that part of the thumb. Since the Strietelmeier publication does not disclose or suggest the features of claim 14 as asserted, the Carlson/Milic-Frayling/Conrad/ Strietelmeier combination cannot render obvious this claim for this additional reason.

For at least the foregoing reasons, Applicant respectfully requests withdrawal of the present rejection.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

*Carlson/Milic-Frayling/Conrad/Chew*

Claim 18 stands rejected under 35 U.S.C. § 103(a) as being obvious in view of a combination of the Carlson publication, the Milic-Frayling publication, the Conrad patent and U.S. Patent No. 5,956,030 to Chew et al. ("the Chew patent"). Applicant respectfully disagrees.

Claim 18 incorporates limitations from claim 1 via its dependency from claim 17. As discussed above relative to the rejection in view of the Carlson/Milic-Frayling/Conrad combination, claim 1 is not obvious in view of that combination because the combination lacks a number of the limitations of that claim. Since claim 18 includes limitations of claim 1, claim 18 is not obvious in view of the present Carlson/Milic-Frayling/Conrad/Chew combination. Therefore, Applicant respectfully requests withdrawal of the present rejection.

## New Claims 19-47

Applicant has added new claims 19-47 on the belief they are enabled by the original application and are patentable over the references of record. Applicant respectfully requests that the Examiner take appropriate action on these new claims.

## CONCLUSION

In view of the foregoing, Applicant submits that claims 1-47, as amended and newly presented, are in condition for allowance. Therefore, prompt issuance of a Notice of Allowance is respectfully solicited. If any issues remain, the Examiner is encouraged to call the undersigned attorney at the number listed below.

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

Respectfully submitted,

MAGNUS GOERTZ

By: _____

Morgan S. Heller II
Registration No.: 44,756

Downs Rachlin Martin PLLC
Tel: (802) 863-2375
Attorneys for Applicant

2403177.1

Law Offices of
**Downs Rachlin Martin PLLC**
199 Main Street, P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10315250 |
| **Filing Date:** | 10-Dec-2002 |
| **Title of Invention:** | User interface |
| First Named Inventor/Applicant Name: | Magnus Goertz |
| **Filer:** | Morgan Heller/Karen Jeffer |
| **Attorney Docket Number:** | 3682-32 |
| Filed as Small Entity | |

## Utility    Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 2202 | 27 | 25 | 675 |
| Independent claims in excess of 3 | 2201 | 5 | 105 | 525 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Post-Allowance-and-Post-Issuance: | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| Extension - 1 month with $0 paid | 2251 | 1 | 60 | 60 |
| **Miscellaneous:** | | | | |
| **Total in USD ($)** | | | | **1260** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 3002818 |
| **Application Number:** | 10315250 |
| **International Application Number:** | |
| **Confirmation Number:** | 1226 |
| **Title of Invention:** | User interface |
| **First Named Inventor/Applicant Name:** | Magnus  Goertz |
| **Customer Number:** | 23117 |
| **Filer:** | Morgan Heller/Karen Jeffer |
| **Filer Authorized By:** | Morgan Heller |
| **Attorney Docket Number:** | 3682-32 |
| **Receipt Date:** | 14-MAR-2008 |
| **Filing Date:** | 10-DEC-2002 |
| **Time Stamp:** | 16:16:21 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 1260 |
| RAM confirmation Number | 1756 |
| Deposit Account | 041588 |
| Authorized User | HELLER,MORGAN |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: ||
| Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges) ||

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Power of Attorney | POA.pdf | 50721 <br> 17f5deab6170790fd983c484a8e08617 bd6b8830 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Extension of Time | PetitionExtensionTime.pdf | 71471 <br> 7d6e68164345e667B730ca9ad1d86d4 59d3b58e7 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | | ResponseOfficeAction.pdf | 1812549 <br> cec402c4cf0ee398e747e2b049ef51feb 4f7bbc3 | yes | 32 |

| | Multipart  Description/PDF files in .zip description | | | |
|---|---|---|---|---|
| | **Document Description** | **Start** | **End** | |
| | Amendment - After Non-Final Rejection | 1 | 1 | |
| | Claims | 2 | 14 | |
| | Applicant Arguments/Remarks Made in an Amendment | 15 | 32 | |

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Fee Worksheet (PTO-06) | fee-info.pdf | 8399 <br> 3936df4179a7875907942b48c66cb30a 8ab9f1f5 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | **Total Files Size (in bytes):** | | 1943140 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Inventor: Magnus Goertz

Assignee: Neonode AB

Serial No.: 10/315,250

Filed: December 10, 2002

Title: User Interface


Attorney Docket No.: 12511-00003  (New)
                              3682-32  (Previous)



Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## REVOCATION OF POWER OF ATTORNEY AND
## APPOINTMENT OF NEW ATTORNEY

    Assignee of record of the entire interest for the above-identified application hereby revokes any other previous powers of attorney, and appoints: Lawrence H. Meier, Esq., Registration No. 31,446, and Morgan S. Heller II, Registration No. 44,756, attorneys with the firm of Downs Rachlin Martin PLLC, and members of the Bar of the State of Vermont, as its attorneys, with the full power of association, revocation and substitution, to transact all business in the U.S. Patent and Trademark Office in connection therewith.

    Please change the correspondence address for the above-identified application to the address associated with Customer Number 21918.

                                    1

Law Offices Of
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, Vermont 05402-0190
(802) 863-2375

**PATENT**

Respectfully submitted,

NEONODE AB

Date: _____10/3/2008      By:_____
                               Name:  Magnus Goertz
                               Title:  CTO
                               Address:  Biblioteksgatan 11, Ltr.
                                             Stockholm, Sweden  11146

2384848.1

P225-02/04                    2

Law Offices Of
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, Vermont 05402-0190
(802) 863-2375

PTO/SB/22 (01-08)
Approved for use through 03/31/2008. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARMENT OF COMMERCE
Under the paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless if displays a valid OMB control number.

| PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a) <br> **FY 2008** <br> *(Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).)* | Docket Number (Optional) <br> 12511-00003 |
|---|---|
| Application Number    10/315,250 | Filed   12/10/2002 |

| For   User Interface |
|---|

| Art Unit    2174 | Examiner   Ryan F. Pitaro |
|---|---|

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

|   |   | Fee | Small Entity Fee |   |
|---|---|---|---|---|
| [X] | One month (37 CFR 1.17(a)(1)) | $120 | $60 | $    60.00 |
| [ ] | Two months (37 CFR 1.17(a)(2)) | $460 | $230 | $ |
| [ ] | Three months (37 CFR 1.17(a)(3)) | $1050 | $525 | $ |
| [ ] | Four months (37 CFR 1.17(a)(4)) | $1640 | $820 | $ |
| [ ] | Five months (37 CFR 1.17(a)(5)) | $2230 | $1115 | $ |

[X] Applicant claims small entity status. See 37 CFR 1.27.

[ ] A check in the amount of the fee is enclosed.

[X] Payment by credit card. Form PTO-2038 is attached.

[ ] The Director has already been authorized to charge fees in this application to a Deposit Account.

[X] The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account Number   04-1588   . I have enclosed a duplicate copy of this sheet.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the       [ ] applicant/inventor.

[ ] assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) is enclosed (Form PTO/SB/96).

[X] attorney or agent of record. Registration Number   44756

[ ] attorney or agent under 37 CFR 1.34.
Registration number if acting under 37 CFR 1.34.

| Signature | 3/14/2008 Date |
|---|---|
| Morgan S. Heller II <br> Typed or printed name | 802-863-2375 <br> Telephone Number |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

[X] Total of          1          forms are submitted.

This collection of information is required by 37 CFR 1.136(a). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>10/315,250 | Filing Date<br>12/10/2002 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) | SMALL ENTITY ☒ | | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

|  |  | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT | 03/13/2008 | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 47 | Minus | ** 20 | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * 8 | Minus | *** 3 | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

|  |  | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/JAMES F. ELLIOTT/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 | 1226 |

23117      7590      11/14/2007
NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203

| EXAMINER |
|---|
| PITARO, RYAN F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2174 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/14/2007 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit | |
| | Ryan F. Pitaro | 2174 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>23 August 2007</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-18</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-18</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

## DETAILED ACTION

### *Response to Amendment*

This communication is responsive to the Amendment filed 8/23/2007.

Claims 1-18 are pending in this application.  Claims 1, 15 and 17 are independent

claims.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

Claims 1, 4-7, 12, 15 and 17 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Carlson ("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm

Organizers. Peachpit Press. 2000.  Berkeley, CA.) in view of Milic-Frayling et al ("Milic-

Frayling", US 2004/0100510) in view of Conrad et al ("Conrad", US 5,956,030).

1.      As per claim 1, Carlson teaches a computer readable medium storing a computer

program with computer program code, which code, when read by a mobile computer unit

allows the computer to present a user interface for a mobile handheld computer unit

(Introduction, page xiii), where said computer unit comprises a touch sensitive area (page

26, *the screen is touch sensitive*), that is simultaneously divided into a menu area (page

12, fig. 1.10 *silk screen graffiti area*) and a display area, the computer unit is being

adapted to run several applications simultaneously (page 47, *all of the applications are*

*running concurrently*), and to present an active application on top of any other

application on said display area, characterised in, that said menu area is adapted to

present a representation of a first, a second and a third predefined function, that said first

function is a general application dependent function (page 28, *the Menu icon*, fig. 2.4),

that said second function is a keyboard function (page 30, *either the abc or 123 dots in*

*the lower corner of the Graffiti area*), that said third function is a task and file manager

(page 47, *the Applications screen* & fig. 2.35), and that any one of said three functions

can be activated when said touch sensitive area detects a movement of an object with its

starting point within the representation of said function on said menu area and with a

direction from said menu area to said display area (page 40, *bottom-to-top screen stroke*

*shortcut* fig. 2.22 & page 30, *drag the stylus vertically across the screen from bottom to*

*top*), said user interface allowing low precision navigation using a blunt object, whereby

said user interface can be operated by one hand (page 12, "*The stylus is the main method*

*of interacting with the PalmPilot" and it inherently involves one hand to use the stylus.*

*Also, if a finger was used, that would also be considered using one hand*), where said

blunt object is a finger (page 12,  "*The stylus is the main method of interacting*" **though**

anything including fingers **can** work). Carlson fails to distinctly point out simultaneously

displaying a first, second, and third function. Milic-Frayling teaches the menu area being

adapted to simultaneously present representations of a first function, a second function,

and a third function (Figure 1 view Tools toolbar, with keyboard, file manager, etc.).

Therefore it would have been obvious to an artisan at the time of the invention to

combine the teaching of Milic-Frayling with the interface of Carlson. Motivation to do so

would have been to provide away to quickly access common functions and provide a user

with a large enough space.  The modified Carlson still does not explicitly point out

activation by a single step of an object moving in a direction on the touch sensitive area.

However, Conrad teaches activating by the single step of an object moving in a direction

from a starting point that is representation of the function in the menu area to the display

area (Figure 2, Column 2 lines 15-62). Therefore it would have been obvious to an artisan

at the time of the invention to combine the teaching of Venolia with the modified

Carlson. Motivation to do so would have been to provide easy access to windows.


2.       As per claim 4, the modified Carlson teaches the user interface according to claim

1, characterised in,

         that, if said second function is activated, said display area is adapted to display a

keyboard and a text field,

         that, if a text passage in said active application is highlighted, said text passage is

displayed in said text field for editing through said keyboard and that said highlighted

text passage is replaced by said edited text passage when said second function is

deactivated, and

that, if no text passage in said active application is highlighted, said text field is

available for inputting and editing of text through said keyboard (Carlson, page 30, fig

2.7).

3.      As per claim 5, the modified Carlson teaches the user interface according to claim

4, characterized in, that if no text passage in said active application is highlighted, and

said text field is used for inputting and editing of text through said keyboard (Carlson,

page 30, fig 2.7), then

        said first function can be activated, or

        said second function can be closed, in which a choice of saving or deleting said

inputted text is given, where the choice of saving said inputted text results in an

activation of said first function,

        in which said first function will present services or settings available for said

inputted text (Carlson, page 28, fig. 2.4 *Beam Memo*).

4.      As per claim 6, the modified Carlson teaches the user interface according to claim

1, characterised in, that, if said third function is activated, said display area is adapted to

display a list with a library of available applications and files on said computer unit, that

a selection of an application will start said application, and that a selection of a file will

open said file in an application intended for said file (Carlson, page 47, fig. 2.35).

5.      As per claim 7, the modified Carlson teaches the user interface according to claim

6, characterised in, that a selection of an application or a file is done by moving said

object so that the representation of desired application or file is highlighted, removing

said object from said touch sensitive area, and then tapping on said touch sensitive area,

and that an application or file is highlighted by placing some kind of marking on the
representation of said application or file (Carlson, pages 26 & 27).

6.        As per claim 12, the modified Carlson teaches the user interface according to
Claim 1, characterised in, that an active application, function, service or setting is moved
on one step by moving said object from the left of said display area to the right of said
display area, and that the active application, function service or setting is closed or
backed one step by moving said object from the right of said display area to the left of
said display area (Carlson, page 246, fig. 14.2, *Drag to scroll through file*).

7.        As per claim 15, the modified Carlson teaches an enclosure adapted to cover a
computer unit, said computer unit being adapted to present a user interface according
Claim 1, characterised in, that said enclosure is provided with an opening for said display
area, and that a representation of said menu area is printed on top of said enclosure
(Carlson, page 12, *Silkscreen Graffiti area* & fig. 1.10).

8.        As per claim 17, the modified Carlson teaches a computer readable medium, with
a computer program product stored therein, characterised in, that said computer program
product comprises computer readable code, which, when read by a computer, will make it
possible for said computer to present a user interface according to Claim 1 (Carlson, page
25, *Palm OS*).


          Claims 2 and 3 are rejected under 35 U.S.C. 103(a) as being unpatentable over
Carlson ("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm Organizers. Peachpit
Press. 2000.  Berkeley, CA.), Milic-Frayling et al ("Milic-Frayling", US 2004/0100510)

and Conrad et al ("Conrad", US 5,956,030) in view of Kopitzke et al. ("Kopitzke", US #

6,988,246 B2).

9.      As per claim 2, the modified Carlson teaches the user interface according to claim

1, characterized in, that, if said first function is activated, said display area is adapted to

display icons representing different services or settings depending on the current active

application (Carlson, page 28, *the Menu icon*, fig. 2.4), and that, if no application is

currently active on said computer unit, said icons are adapted to represent services or

settings of the operations system of said computer unit (Carlson, page 47, fig. 2.36, *12:11*

*am*).

        However the modified Carlson does not teach expressly the user interface

according to claim 1, characterized in, that, if said first function is activated, said display

area is adapted to display icons representing different services or settings depending on

the current active application, that one of said icons always represents a "help"-service,

regardless of application.

        Kopitzke teaches the user interface according to claim 1, characterized in, that

said display area is adapted to display icons representing different services or settings

depending on the current active application, that one of said icons always represents a

"help"-service, regardless of application (column 4, lines 36-53 & fig. 1, *Help key or*

*button* 6).

        The modified Carlson and Kopitzke are analogous art because they are in the

same field of endeavor, namely graphical user interfaces with touch sensitive displays.

At the time of the invention it would have been obvious to a person of ordinary skill in the art to provide the help function as taught by Kopitzke within the user interface of the modified Carlson in order to provide context sensitive information.

As per claim 3, the modified Carlson teaches the user interface according to claim 2, characterised in, that a selection of a preferred service or setting is done by tapping on corresponding icon (Carlson, page 26, fig. 2.1 *Tapping just about any interface element in the Palm OS evokes a response*).

Claims 8-11 and 13 is rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson ("Carlson", Carlson, Jeff.  <u>Visual Quickstart Guide Palm Organizers</u>. Peachpit Press. 2000.  Berkeley, CA.), Milic-Frayling et al ("Milic-Frayling", US 2004/0100510) and Conrad et al ("Conrad", US 5,956,030) in view of Wynn et al. ("Wynn", US # 6,734,883 B1).

10.     As per claim 8, the modified Carlson teaches the user interface according to claim 7.  However the modified Carlson does not teach expressly the user interface, characterized in, that said list is adapted to present only said files or only said applications, that the top area of said list presents a field through which the content of said list can be altered, that, if said list only presents files, said field displays a representation of a task manager and a selection of said field will cause said list to alter to present only applications, and that, if said list only presents applications, said field displays a representation of a file manager and a selection of said field will cause said list to alter and present only files.

Wynn teaches a user interface control, characterized in, that said list is adapted to present only said files or only said applications, that the top area of said list presents a field through which the content of said list can be altered (column 3, lines 4-8, *dialog box* 32), that, if said list only presents files, said field displays a representation of a task manager and a selection of said field will cause said list to alter to present only applications, and that, if said list only presents applications, said field displays a representation (column 3, lines 4-8, *label* 31) of a file manager and a selection of said field will cause said list to alter and present only files (column 3, lines 15-31).

The modified Carlson and Wynn are analogous art because they are in the same field of endeavor, namely scrolling within graphical user interfaces with touch sensitive displays.

At the time of the invention it would have been obvious to a person of ordinary skill in the art to have the selection list format as taught by Wynn within the user interface of the modified Carlson in order to provide a conventional list format.

11.     As per claim 9, the modifiedCarlson teaches the user interface according to claim 7, characterised in, that, a navigation in said list is performed by moving said object in a direction towards the top of said list or towards the bottom of said list, that the movement of said object will cause said marking to move in the same direction (Carlson, page 27, *a quicker way to view the full list is to tap and hold on the dark solid portion of the scroll bar, then drag it vertically*).

However the modified Carlson does not teach expressly that the speed of the movement of said marking is lower than the speed of the movement of said object.

Wynn teaches a user interface control, characterised in, that, a navigation in said list is performed by moving said object in a direction towards the top of said list or towards the bottom of said list, that the movement of said object will cause said marking to move in the same direction (column 3, lines 32-39 & figs. 5) and that the speed of the movement of said marking is lower than the speed of the movement of said object (column 4, lines 24-30).

At the time of the invention it would have been obvious to a person of ordinary skill in the art to have the scrolling function as taught by Wynn within the user interface of the modifiedCarlson in order to provide a conventional selection list.

12.     As per claim 10, the modified Carlson in view of Wynn teaches the user interface according to claim 9, characterised in, that, if the number of applications and/or files in said list exceeds the number of applications and files that can be presented on said display area, and if said object is moved to the top or bottom position of said display area, then lifted, replaced on said display area, and again moved to the top or bottom of said display area, the content of said display area will be replaced one whole page, meaning that if said object is positioned at the top of said display area, then lifted, replaced on said display area, and then again moved to the top of said display area, the content of said display area will be replaced by the preceding applications and/or files in said list (Carlson, page 253, fig. 14.15 *Full Page Up*).

The modified Carlson in view of Wynn does not disclose expressly the user interface, characterised in that if said object is positioned at the bottom of said display area, then lifted, replaced on said display area, and then again moved to the bottom of

Application/Control Number: 10/315,250                                           Page 11
Art Unit: 2174

said display area, the content of said display area will be replaced by the following

applications and/or files in said list.

At the time of the invention, it would have been an obvious matter of design

choice to a person of ordinary skill in the art to modify the *Full Page Up* function

(Carlson, page 253, fig 14.15) to work as a Full Page Down function by tapping on the

bottom of the display area because Applicant has not disclosed that *if said object is*

*positioned at the bottom of said display area, then lifted, replaced on said display area,*

*and then again moved to the bottom of said display area, the content of said display area*

*will be replaced by the following applications and/or files in said list* provides an

advantage, is used for a particular purpose, or solves a stated problem.  One of ordinary

skill in the art, furthermore, would have expected Applicant's invention to perform

equally well with the modified Full Page Up function as taught by Carlson because it

would only need to be implemented to scroll down instead of up, when the display area is

tapped on the bottom, instead of the top.

13.     As per claim 11, the modified Carlson in view of Wynn teaches the user interface

according to claim 10, characterised in, that if said object is removed from any first

position on said display area and then replaced on any second position on said display

area, said navigation can be continued from said second position (Carlson, page 253, fig.

14.15).

Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson

("Carlson", Carlson, Jeff.  <u>Visual Quickstart Guide Palm Organizers</u>. Peachpit Press.

2000.  Berkeley, CA.) Milic-Frayling et al ("Milic-Frayling", US 2004/0100510) and

Conrad et al ("Conrad", US 5,956,030).

14.      As per claim 13, the modified Carlson teaches the user interface according to

Claim 1, characterised in, that said menu area is positioned at the bottom of said touch

sensitive area, that said representation of said first function is positioned at the left side of

said menu area, and that said representation of said second function is positioned at the

middle of said menu area.

        The modified Carlson does not teach expressly that said representation of said

third function is positioned at the right side of said menu area.

        At the time the invention was made, it would have been an obvious matter of

design choice to a person of ordinary skill in the art to place the third function on the

right side of the display area instead of the left, because Applicant has not disclosed that

*said representation of said third function is positioned at the right side of said menu area*

provides an advantage, is used for a particular purpose or solves a stated problem.  One of

ordinary skill in the art, furthermore would have expected Applicant's invention to

perform equally well with the third function on the left side of the display area because

the placement of the representation would not change its functionality.

        Claims 14 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Carlson ("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm Organizers. Berkeley,

CA: Peachpit Press, 2000), Milic-Frayling et al ("Milic-Frayling", US 2004/0100510)

and Conrad et al ("Conrad", US 5,956,030) in view of Strietelmeier ("Strietelmeier",

Strietelmeier, Julie.  "Palm m100."  The Gadgeteer.  2000.

<http://www.the-gadgeteer.com/review/palm_m100_review>).


15.     As per claim 14, the modified Carlson teaches the user interface according to

Claim 1, characterised in, that said user interface is adapted to a touch sensitive area and

that said user interface is adapted to be operated by one hand, where said object can be a

finger (page 12, *stylus...includes fingers*).

       However the modified Carlson does not teach expressly a touch sensitive area

with a size that is in the order of 2-3 inches.

       Strietelmeier teaches a user interface, characterised in, a touch sensitive area with

a size that is in the order of 2-3 inches (page 4).

       The modified Carlson and Strietelmeier are analogous art because they are in the

same field of endeavor, namely palm-sized computer organizers.

       At the time of the invention it would have been obvious to a person of ordinary

skill in the art to have the dimensions of a touch sensitive area as taught by Strietelmeier

within the user interface of the modified Carlson in order to provide a touch sensitive

area with the manufacturer's dimensions.


16.     As per claim 16, the modified Carlson teaches the enclosure according to claim

15.  However, the modified Carlson does not disclose the enclosure characterised in, that

said enclosure is removable and exchangeable.

Strietelmeier teaches an enclosure characterised in, that said enclosure is removable and exchangeable (page 3, *you can also remove the entire face plate… there will be different face plates available*).

At the time of the invention it would have been obvious to a person of ordinary skill in the art to have the customizable enclosures as taught by Strietelmeier within the enclosure of the modified Carlson in order to tailor an enclosure to a user's preferences.

17.     Claim 18 is rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson ("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm Organizers. Berkeley, CA: Peachpit Press, 2000), Milic-Frayling et al ("Milic-Frayling", US 2004/0100510) and Conrad et al ("Conrad", US 5,956,030) in view of Chew et al. ("Chew", US # 6,727,917).

18.     As per claim 18, the modified Carlson teaches a computer readable medium according to claim 17.

However the modified Carlson does not teach expressly, that said computer program product is adapted to function as a shell upon an operations system.

Chew teaches a user interface for a palm-sized computer device, characterized in, that said computer program product is adapted to function as a shell upon an operations system (column 2, lines 1-5).

The modified Carlson and Chew are analogous art because they are in the same field of endeavor, namely graphical user interfaces for hand-held personal computing devices with touch sensitive displays.

At the time of the invention it would have been obvious to a person of ordinary skill in the art to further modify the modified Carlson program to function as shell as taught by Chew in order to efficiently display information.

### *Response to Arguments*

Applicant's arguments with respect to claims 1-18 have been considered but are moot in view of the new ground(s) of rejection.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Ryan F. Pitaro whose telephone number is 571-272-4071. The examiner can normally be reached on 7:00am - 4:30pm Mondays through Fridays.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Kristine Kincaid can be reached on 571-272-4063.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 10/315,250                                                        Page 16
Art Unit: 2174

   Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.  Status

information for unpublished applications is available through Private PAIR only.  For

more information about the PAIR system, see http://pair-direct.uspto.gov. Should you

have questions on access to the Private PAIR system, contact the Electronic Business

Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO

Customer Service Representative or access to the automated information system, call

800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Sy D Luu/
Primary Examiner, Art Unit 2174


Ryan Pitaro
Patent Examiner
Art unit 2174

RFP

| *Notice of References Cited* | Application/Control No.<br>10/315,250 | Applicant(s)/Patent Under Reexamination<br>GOERTZ, MAGNUS | |
|---|---|---|---|
| | Examiner<br>Ryan F. Pitaro | Art Unit<br>2174 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,956,030 | 09-1999 | Conrad et al. | 715/769 |
| * | B | US-2004/0100510 | 05-2004 | Milic-Frayling et al. | 345/864 |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20071109

| | | | | Application/Control No. | | Applicant(s)/Patent Under Reexamination | |
|---|---|---|---|---|---|---|---|
| ***Index of Claims*** | | | | 10315250 | | GOERTZ, MAGNUS | |
| | | | | Examiner | | Art Unit | |
| | | | | Ryan F Pitaro | | 2174 | |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/09/2007 | | | | | | | | |
| | 1 | ✓ | | | | | | | | |
| | 2 | ✓ | | | | | | | | |
| | 3 | ✓ | | | | | | | | |
| | 4 | ✓ | | | | | | | | |
| | 5 | ✓ | | | | | | | | |
| | 6 | ✓ | | | | | | | | |
| | 7 | ✓ | | | | | | | | |
| | 8 | ✓ | | | | | | | | |
| | 9 | ✓ | | | | | | | | |
| | 10 | ✓ | | | | | | | | |
| | 11 | ✓ | | | | | | | | |
| | 12 | ✓ | | | | | | | | |
| | 13 | ✓ | | | | | | | | |
| | 14 | ✓ | | | | | | | | |
| | 15 | ✓ | | | | | | | | |
| | 16 | ✓ | | | | | | | | |
| | 17 | ✓ | | | | | | | | |
| | 18 | ✓ | | | | | | | | |

| *Search Notes*  | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10315250 | GOERTZ, MAGNUS |
| | **Examiner** | **Art Unit** |
| | Ryan F Pitaro | 2174 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| Update | Search | 11/8/2007 | RFP |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Update Search | 11/8/2007 | RFP |

### INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 2001

Application or Docket Number
10315250

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 18 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 18 minus 20= | * |
| INDEPENDENT CLAIMS | 1 minus 3 = | * |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | OR | OTHER THAN SMALL ENTITY |
|---|---|---|
| RATE | FEE | | RATE | FEE |
| BASIC FEE | 370.00 | BASIC FEE | 740.00 |
| X$ 9= | | OR | X18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL | | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

### AMENDMENT A

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 18 | Minus | ** 20 | |
| Independent | 1 | Minus | *** 3 | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | OR | OTHER THAN SMALL ENTITY |
|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$ 9= | | OR | X18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT B

3-15-07

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 18 | Minus | ** 20 | |
| Independent | 1 | Minus | *** 3 | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|
| | X$ 9= | | OR | X18= | |
| | X42= | | OR | X84= | |
| | +140= | | OR | +280= | |
| | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT C

8-23-7

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 18 | Minus | ** 20 | |
| Independent | 1 | Minus | *** 3 | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|
| | X$ 9= | | OR | X18= | |
| | X42= | | OR | X84= | |
| | +140= | | OR | +280= | |
| | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875 (Rev. 8/01)     Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

In re Patent Application of

GOERTZ

Serial No.  10/315,250

Filed:   December 10, 2002

Title:   USER INTERFACE

Atty  5042-2 (formerly 3682-
Dkt.  32)
          C#   M#

TC/A.U.   2174; Conf. 1226

Examiner: Pitaro, Ryan F.

Date: August 23, 2007

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

## AMENDMENT

This is a response/amendment/letter in the above-identified application and includes an attachment which is hereby incorporated by reference and the signature below serves as the signature to the attachment in the absence of any other signature thereon.

**Fees are attached as calculated below:**

Total effective claims after amendment        18       minus highest number
previously paid for      **20**      (at least 20) =      0      x $50.00                    $0.00 (1202)/$0.00 (2202)  $       0.00

Independent claims after amendment         1       minus highest number
previously paid for      **3**      (at least 3) =      0      x $200.00                    $0.00 (1201)/$0.00 (2201)  $       0.00

If proper multiple dependent claims now added for first time, (ignore improper); add
                                                                        $360.00 (1203)/$0.00 (2203)  $

Petition is hereby made to extend the current due date so as to cover the filing date of this
paper and attachment(s)                        One Month Extension $120.00 (1251)/$0.00 (2251)
                                         Two Month Extensions $450.00 (1252)/$0.00 (2252)
                                       Three Month Extensions $1020.00 (1253/$0.00 (2253)
                                         Four Month Extensions $1590.00 (1254/$0.00 (2254)
                                         Five Month Extensions $2160.00 (1255/$1080.00 (2255)  $       0.00

Terminal disclaimer enclosed, add                        $130.00 (1814)/ $0.00 (2814)  $

☒ Applicant claims "small entity" status.      ☐ Statement filed herewith

Rule 56 Information Disclosure Statement Filing Fee                 $180.00 (1806)  $       0.00

Assignment Recording Fee                              $40.00 (8021)  $       0.00

Other:  **Attachments A and B attached to Amendment**                              $       **0.00**

                                                        **TOTAL FEE  $       0.00**

The Commissioner is hereby authorized to charge any <u>deficiency</u>, or credit any overpayment, in the fee(s) filed, or asserted to be filed, or which should have been filed herewith (or with any paper hereafter filed in this application by this firm) to our Account No. 14-1140. A <u>duplicate</u> copy of this sheet is attached.

901 North Glebe Road, 11th Floor
Arlington, Virginia 22203-1808
Telephone:  (703) 816-4000
Facsimile:  (703) 816-4100
RAM:drt

NIXON & VANDERHYE P.C.
By Atty:  Robert A. Molan, Reg. No. 29,834

Signature:  *Robert A. Molan*



# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of

| | |
|---|---|
| GOERTZ | Atty. Ref.: 5042-2 |
| | (Formerly 3682-32) |
| Serial No.: 10/315,250 | Group: 2174; Conf. No. 1226 |
| Filed: December 10, 2002 | Examiner: Pitaro, Ryan F. |
| For: USER INTERFACE | |

\* \* \* \* \* \* \* \* \* \* \*

August 23, 2007

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT

Sir:

In response to the Office Action mailed May 24, 2007, please amend the above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 9 of this paper.

1237070

GOERTZ
Serial No.: 10/315,250

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application.

1. (Currently Amended)  A computer readable medium storing a computer program with computer program code, which code, when read by a mobile handheld computer unit, allows the computer to present a user interface for a ~~a~~ the mobile handheld computer unit, the user interface comprising:

a touch sensitive area that is simultaneously divided into a menu area and a display area,

the computer unit being adapted to run several applications simultaneously, and to present an active application on top of any other application on the display area, characterised in, that

the menu area ~~being adapted to~~ simultaneously presenting representations of a first function that is a general application dependent function, a second function that is a keyboard function, and a third function that is a task and file manager, and

each of the three functions simultaneously represented in the menu area being activated by the single step of an object moving in a direction from a starting point that is the representation of the function in the menu area to the display area being detected by the touch sensitive area, thereby allowing low precision navigation of the user interface using a blunt object, so that the user interface can be operated by one hand, where the blunt object is a finger.

2. (Currently Amended)  The computer readable medium of claim 1, wherein the user interface ~~according to Claim 1,~~ is characterized in, that, if said first function is activated, said

- 2 -

GOERTZ
Serial No.: 10/315,250

display area is adapted to display icons representing different services or settings depending on the current active application, that one of said icons always represents a "help"-service, regardless of application, and that, if no application is currently active on said computer unit, said icons are adapted to represent services or settings of the operations system of said computer unit.

3. (Currently Amended)  The computer readable medium of claim 2, wherein the user interface ~~according to Claim 2,~~ is characterised in, that a selection of a preferred service or setting is done by tapping on corresponding icon.

4. (Currently Amended)  The computer readable medium of claim 1, wherein the user interface ~~according to Claim 1,~~ is characterised in,

- that, if said second function is activated, said display area is adapted to display a keyboard and a text field,

- that, if a text passage in said active application is highlighted, said text passage is displayed in said text field for editing through said keyboard and that said highlighted text passage is replaced by said edited text passage when said second function is deactivated, and

- that if no text passage in said active application is highlighted, said text field is available for inputting and editing of text through said keyboard.

5. (Currently Amended)  The computer readable medium of claim 4, wherein the user interface ~~according to Claim 4,~~ is characterised in, that if no text passage in said active

- 3 -

1237070

GOERTZ
Serial No.: 10/315,250

application is highlighted, said text field is used for inputting and editing of text through said

keyboard, then

    - said first function can be activated, or

    - said second function can be closed, in which a choice of saving or deleting said

inputted text is given, where the choice of saving said inputted text results in an activation of said

first function,

    in which said first function will present services or settings available for said inputted

text.

6. (Currently Amended)  The computer readable medium of claim 1, wherein the user

interface according to Claim 1, is characterised in, that, if said third function is activated, said

display area is adapted to display a list with a library of available applications and files on said

computer unit, that a selection of an application will start said application, and that a selection of

a file will open said file in an application intended for said file.

7. (Currently Amended)  The computer readable medium of claim 6, wherein the user

interface according to Claim 6, is characterised in, that a selection of an application or a file is

done by moving said object so that the representation of desired application or file is highlighted,

removing said object from said touch sensitive area, and then tapping on said touch sensitive

area, and that an application or file is highlighted by placing some kind of marking on the

representation of said application or file.

- 4 -

1237070

GOERTZ
Serial No.: 10/315,250

8.  (Currently Amended)  The computer readable medium of claim 7, wherein the user interface ~~according to Claim 7,~~ is characterised in, that said list is adapted to present only said files or only said applications, that the top area of said list presents a field through which the content of said list can be altered, that, if said list only presents files, said field displays a representation of a task manager and a selection of said field will cause said list to alter to present only applications, and that, if said list only presents applications, said field displays a representation of a file manager and a selection of said field will cause said list to alter and present only files.

9.  (Currently Amended)  The computer readable medium of claim 7, wherein the user interface ~~according to Claim 7,~~ is characterised in, that, a navigation in said list is performed by moving said object in a direction towards the top of said list or towards the bottom of said list, that the movement of said object will cause said marking to move in the same direction, and that the speed of the movement of said marking is lower than the speed of the movement of said object.

10.  (Currently Amended)  The computer readable medium of claim 9, wherein the user interface ~~according to Claim 9,~~ is characterised in, that, if the number of applications and/or files in said list exceeds the number of applications and files that can be presented on said display area, and if said object is moved to the top or bottom position of said display area, then lifted,

- 5 -

1237070

GOERTZ
Serial No.: 10/315,250

replaced on said display area, and again moved to the top or bottom of said display area, the content of said display area will be replaced one whole page, meaning that if said object is positioned at the bottom of said display area, then lifted, replaced on said display area, and then again moved to the bottom of said display area, the content of said display area will be replaced by the following applications and/or files in said list, and if said object is positioned at the top of said display area, then lifted, replaced on said display area, and then again moved to the top of said display area, the content of said display area will be replaced by the preceding applications and/or files in said list.

11.  (Currently Amended)  The computer readable medium of claim 10, wherein the user interface according to Claim 10, is characterised in, that if said object is removed from any first position on said display area and then replaced on any second position on said display area, said navigation can be continued from said second position.

12.  (Currently Amended)  The computer readable medium of claim 1, wherein the user interface according to Claim 1, is characterised in, that an active application, function, service or setting is moved on one step by moving said object from the left of said display area to the right of said display area, and that the active application, function, service or setting is closed or backed one step by moving said object from the right of said display area to the left of said display area.

- 6 -

1237070

GOERTZ
Serial No.:  10/315,250

13.  (Currently Amended)  The ~~computer readable medium of claim 1, wherein the~~ user interface ~~according to Claim 1,~~ is characterised in, that said menu area is positioned at the bottom of said touch sensitive area, that said representation of said first function is positioned at the left side of said menu area, that said representation of said second function is positioned at the middle of said menu area, and that said representation of said third function is positioned at the right side of said menu area.

14.  (Currently Amended)  The ~~computer readable medium of claim 1, wherein the~~ user interface ~~according to Claim 1,~~ is characterised in, that said user interface is adapted to a touch sensitive area with a size that is in the order of 2-3 inches, and that said user interface is adapted to be operated by one hand, where said object can be a finger.

15.  (Currently Amended)  An enclosure adapted to cover a computer unit, said computer unit being adapted to read computer program code of a computer program stored on a computer readable medium, which code, when read, presents a user interface according to Claim 1, characterised in, that said enclosure is provided with an opening for said display area, and that a representation of said menu area is printed on top of said enclosure.

16.  (Previously Presented)  The enclosure according to Claim 15, characterised in, that said enclosure is removable and exchangeable.

- 7 -

GOERTZ
Serial No.: 10/315,250

17. (Original)  A computer readable medium, with a computer program product stored therein, characterised in, that said computer program product comprises computer readable code, which, when read by a computer, will make it possible for said computer to present a user interface according to Claim 1.

18. (Original)  A computer readable medium according to Claim 17, characterised in, that said computer program product is adapted to function as a shell upon an operations system.

1237070

GOERTZ
Serial No.: 10/315,250

## **REMARKS**

Reconsideration of this application is respectfully requested.

Claims 1-18 are pending in the application.  Upon entry of this amendment, claims 1-15 will be amended.

In the outstanding Office Action of May 24, 2007, the Examiner rejected claims 1-16, under 35 U.S.C. §101, as being directed to non-statutory subject matter, arguing that the claimed user interface "is simply nonfunctional descriptive material *per se*, and therefore lacks actual data structure to be considered statutory."  5/24/07 Office Action, p. 2.  The Examiner's rejection is respectfully traversed.

Annex IV, titled "Computer-Related Non-Statutory Subject Matter", of the "Interim Guidelines for Examination of Patent Applications for Patent Subject Matter Eligibility", published in the November 22, 2005 Official Gazette of the United States Patent and Trademark Office defines both "functional descriptive material" and "non-functional descriptive material". "Functional descriptive material" is defined by Annex IV as material consisting of data structures and computer programs which impart functionality when employed as a computer component.  A "data structure" is defined by Annex IV as a physical or logical relationship among data elements, designed to support specific data manipulation functions, quoting The New IEEE Standard Dictionary of Electrical and Electronics Terms 308 (5th ed. 1993).  In contrast, "non-functional descriptive material" is defined by Annex IV as including, but not being limited to, music, literary works and a compilation or mere arrangement of data.  A copy of Annex IV from

1237070

GOERTZ
Serial No.: 10/315,250

the November 22, 2005 OG Notice is submitted with this Amendment as Attachment A to this Amendment.

Claim 1 of the present application, the only independent claim in the present application, has now been amended to recite a computer readable medium storing a computer program with computer program code, which code, when read by a mobile handheld computer unit, makes it possible for the computer to present a user interface for the computer that is described in claim 1 of the present application. The user interface, which is divided into a menu area and a display area, simultaneously presents, in the menu area, a first function that is a general application dependent function, a second function that is a keyboard function, and a third function that is a task and file manager. The touch sensitive user interface allows these functions to be activated by a single step of an object moving in a direction from a starting point that is a representation of the function in the menu area to the display area, thereby allowing a user to use the computer with a single hand and activate the recited functions with a blunt object, such as a finger. Clearly, in its amended form, claim 1 recites functional material. Claims 2-14 have been amended to conform them to amended claim 1. In addition, claim 15 has been amended to recite that the computer unit recited in the claim is adapted to read computer program code of a computer program stored on a computer-readable medium, which code, when read, presents the user interface of claim 1. As such, applicant believes that claims 1-16 now recite statutory subject matter, and that the Examiner's rejection of claims 1-16 under §101 should now be withdrawn. Support for the foregoing amendments to claims 1-15 appear at least at page 1, lines 12-15 of the specification of the present application.

- 10 -

GOERTZ
Serial No.: 10/315,250

In the outstanding Office Action, the Examiner also rejected , as being unpatentable under 35 U.S.C. §103(a), claims 1, 4-7, 12, 15 and 17 over Carlson ("Carlson", Carlson, Jeff. Visual Quickstart Guide Palm Organizers, Peachpit Press. 2000. Berkely, CA.) in view of Haitini *et al.* (USP 5,900,875) and further in view of Venolia *et al.* ("Venolia", T-Cube: A Fast, Self-Disclosing Pen-Based Alphabet), claims 2 and 3 over Carlson, Haitini *et al.* and Venolia *et al.* in view of Kopitzke *et al.* (USP 6,988,246 B2), claim 8-11 over Carlson in view of Haitini *et al.* in view of Venolia, in view of Wynn *et al.* (USP 6,734,833 B1), claim 13 over Carlson in view of Haitini in view of Venolia, claims 14 and 16 over Carlson, Haitini *et al.* and Venolia in view of Strietelmeier ("Strietelmeier, Julia "Palm m100. The Gadgeteer. 2000. http://www.the-gadgeteer.com/review/palm_m100_review>), and claim 18 over Carlson in view of Chew *et al.* (USP 6,727,917), Haitani *et al.* and Venolia *et al.* The Examiner's rejections are respectfully traversed.

Assuming, *arguendo*, that the Examiner properly combined the cited references, the resulting combination would still not be the claimed invention because such references do not disclose or suggest all of the limitations of the claimed invention. Specifically, claim 1 of the present application, the only independent claim pending in the application and the one claim from which claims 2 – 18 depend, either directly or indirectly, recites a user interface for a hand held computer unit that includes a touch sensitive area simultaneously divided into a menu area and a display area, with the menu area simultaneously presenting a first function that is a general application dependent function, a second function that is a keyboard function, and a third function that is a task and file manager. Claim 1 also recites that each of the three functions

- 11 -

GOERTZ
Serial No.: 10/315,250

simultaneously presented in the menu area are activated by the single step of an object moving in

a direction from a starting point that is the representation of the function in the menu area to the

display area being detected by the touch sensitive area, thereby allowing low precision navigation

of the user interface using a blunt object, so that the user interface can be operated by one hand,

where the blunt object is a finger. One embodiment of the three functions recited in claim 1 is

described in the specification of the present application in reference to Figures 3, 5 and 6,

respectively, of the present application.

The three functions simultaneously represented in the menu area and activated by a touch

sensitive area detecting the single step of an object moving in a direction from a starting point

that is the representation of the function in the menu area to a display area, as recited in

independent claim 1, are not described in the primary Carlson reference, the secondary Haitani

reference or the tertiary Venolia reference cited by the Examiner in the claim rejections set forth

in the outstanding Office Action. Given these deficiencies in the cited references, discussed

below, it must be concluded that claims 1 – 18 of the present application are not obvious over the

cited references.

In the outstanding Office Action, the Examiner recognized that Carlson fails to disclose

the first, second and third functions recited in independent claim 1 of the present application,

5/24/07 Office Action, p. 4, as argued by applicant in the Amendment After Final Rejection

previously filed on March 15, 2007. In an effort to overcome this deficiency in the teaching of

Carlson, the Examiner points to the Haitani patent as disclosing a "menu area being adapted to

simultaneously present representations of a first function that is a general application-dependent

- 12 -

GOERTZ
Serial No.: 10/315,250

function (Figure 1, items 151, 153), a second function that is a keyboard function (Figure 1, item 145) and a third function that is a task and file manager (Figure 1, item 141)." 5/24/07 Office Action, p. 4. A review of Haitani reveals, however, that this patent does not disclose the first, second and third functions recited in independent claim 1, as argued by the Examiner.

Haitani discloses a portable computer system 100 that is shown in Figure 1 of Haitani. The computer system 100 shown in Figure 1 includes a screen display area 181 that is used to display information to a user. Haitani, col. 2, lns. 40 – 42. Below the display area 181 is a user input area 183. Haitani, col. 2, ln. 45. The user input area 183 is used to input text in the Graffiti® writing area 145 and interact with the application buttons 141 through 144. Haitani, col. 2, lns. 45 – 48. Both the screen display area and the user input area 183 are covered by a digitizer pad that can detect user interaction with a stylus or finger. Haitani, col. 2, lns. 42 – 44 and 48 – 49. Below the area 183 is a mechanical button input area 185 that includes seven different mechanical buttons 121, 123, 125, 127, 129 and 131. Haitani, col. 2, lns. 50-53. Thus, it should first be noted that items 141, 145 and 151 and 153 are not all located in the same menu area, as are the representations of the three functions recited in claim 1 of the present application.

Haitani describes the seven mechanical buttons as including "[a] pair of scrolling buttons 131 that are used to scroll information in the display area 181 up and down." Haitani, col. 2, lns. 64 – 65. Haitani also states that "[t]he scrolling buttons 141 [sic] allow a user to view a list of information that does not fit on the display." Haitani, col. 2, lns. 65 – 67. This last statement appears to conflict with the earlier description of item 141 as being one of the application buttons 141 through 144 located in Graffiti® writing area 145. Indeed, item 141 is not shown in Figure 1

- 13 -

GOERTZ
Serial No.:  10/315,250

as a pair of buttons, but, rather, a single icon including an arrow symbol in a circle and the word

"applications" underneath the arrow symbol and circle. *See* Haitani, Figure 1.

There is no description in Haitani of the items 151 and 153 shown in the screen display

area 181 of Figure 1 of Haitani and cited by the Examiner as being "a general application-

dependent function (Figure 1, items 151, 153)".  5/24/07 Office Action, p. 4.  Thus, it is not clear

how the Examiner has concluded that items 151 and 153 in Figure 1 represent the first function

that is a general application-dependent function recited in claim 1 of the present application,

particularly when Haitani does not even discuss items 151 and 153.

In addition, the "Graffiti® writing area" 145 shown in Figure 1 of Haitani is not the

second, keyboard function recited in claim 1 of the present application.  The Graffiti® writing

area 145 is clearly not a keyboard, but rather an input area that is used to input written characters.

*See, e.g.,* Attachment B to this Amendment.

Finally, as discussed above, item 141 is not the third, task and file manager function

recited in claim 1, since it is described by Haitani as being part of the application buttons and

shown in Figure 1 of Haitani as an icon including an arrow symbol in a circle and the word

"applications" underneath the arrow symbol and circle.

Putting aside claim 1's recitation that each of the three functions simultaneously

presented in the menu area are activated by the single step of an object moving in a direction

from a starting point that is the representation of the function in the menu area to the display area

so as to be detected by the touch sensitive area, it is clear from the foregoing discussion of

1237070

GOERTZ
Serial No.: 10/315,250

Carlson and Haitani these a combination of these two references would not result in the invention

described in independent claim 1 of the present application.

In the outstanding Office Action, the Examiner also recognized that Carlson, even as

modified by Haitani, still does not disclose the single step function activation feature recited in

claim 1. 5/24/07 Office Action, pp. 4 and 5. To compensate for this deficiency, the Examiner

next argues that "Venolia teaches activating by the single step of an object moving in a direction

from a starting point that is representation [sic] of the function in the  menu area to the display

area (Column 2, flick gestures)", described in column 2 of Venolia. It should be noted here that

claim 1 of the present application recites not just a step of an object moving in a given direction

for activation, but, rather, that each of the three <u>functions</u> recited in claim 1 are <u>activated</u> by the

single step of an object moving in a direction from a starting point that is the representation of

the function in the menu area to the display area, which is detected by touching the sensitive area,

thereby allowing low precision navigation of a user interface using a blunt object, such as a

finger, so that the user interface can be operated by one hand.

Contrary to the Examiner's assertion, Venolia does not disclose activating various

functions in a computer by the single step of moving an object in a direction from a starting point

that is a representation of a selected function in a menu area to a display area, as recited in

independent claim 1 of the present application. Rather, Venolia discloses a technique for

entering text to a pen-based computer based on a "new alphabet" where each letter in the

alphabet is a entered using a flick gesture. The flick gestures are self-disclosing using prime

- 15 -

GOERTZ
Serial No.: 10/315,250

menus. There is an assignment of characters to the gestures used with the pen-based computer disclosed in Venolia.

The method of entering text using a pen and flick gestures described in Venolia is identified as "T-Cube". Venolia does describe as part of T-Cube the use of a flick gesture with a starting point and a direction. The user presses the pen in one of nine target cells so that a pie menu appears offset from the pen. The direction of the flick of the pen can be vertical, horizontal or directional, specifying one of eight directions. A combination of these eight directions and nine starting cells in a pie menu yields 72 different gestures, with each gesture representing a character, such as "w" or "7", or an operation, such as a backspace, return or shift. Thus, the pen movements described in Venolia are not intended to activate a function, but, rather, to enter characters in a small computer. The flick gestures described in Venolia do not describe a single step of an object moving in a direction from a starting point that is the representation of one of several functions in a menu area to a display area to activate a selected function, as recited in independent claim 1 of the present application. Thus, it is clear that the combination of Carlson, Haitani and Venolia does not result in the invention described in independent claim 1 of the present application.

The other additional references cited by the Examiner do not compensate for the deficiencies in the Carlson, Haitani and Venolia references discussed above.

Kopitzke *et al.* discloses a monitoring and control device includes a touch sensitive LCD screen, with a basic layout including a display area and touch sensitive keys depicted with associated system and function symbols. A main menu or any one of plural system menus can be

1237070

GOERTZ
Serial No.: 10/315,250

selectively displayed in the display area. The system menus relate to cabin systems such as audio,

lighting, and water systems. The selected system menu displays status information and touch

input keys for the user to monitor the status and to select and control the operation of the system.

The main menu is a top level window providing essential information regarding all of the cabin

systems and allows a user to select any one of the system menus.

Wynn *et al.* discloses a graphical user interface control for entering a user selection from

a list of possible selections in which the user can "spin" through a list of items shown on preview

and postview option lists. The control allows the user to spin forwards and backwards, with a

preview list of items and a postview list of items being displayed on opposing sides of the

currently selected item dialog box. By providing visibility to the upcoming and recently past

selections during the spin, a user can operate the spin control at a higher speed, thereby reducing

the amount of time necessary to find the desired item on the list.

Chew *et al.* discloses a hand-held computing device user interface that displays

information for an active application program in a middle portion of the screen, and displays a

shell program controlled navigation bar at a top portion of the screen. The navigation bar

includes a navigation icon which, when tapped by the stylus, aids the user in navigating to other

application programs. The navigation bar also includes a title for the active application program

to save vertical real estate on the screen. The user interface also displays an application menu bar

at a bottom portion of the screen so that the user can manipulate data from the active application

by tapping menu items with a stylus without blocking view of the middle portion of the display.

- 17 -

1237070

GOERTZ
Serial No.: 10/315,250

The Gadgeteer article by Strietelmeier is a review of the Palm m100. The article talks

about the Palm m100 having a cheaper feel than the prior Palm IIIc. It also talks about new

features on the m100, such as an integrated flip cover, a small window that allows viewing of

time and date when the up hardware scroll button is pressed, the removability of the flip cover

for use of different color face plates, large and separate up/down scroll buttons, a smaller plastic

LCD display, an IR port for beaming files back and forth to other Palm devices, a battery door,

reset switch, stylus silo and hot sync port on the back of the unit, a louder internal speaker,

limited RAM of 2MB, use of AAA batteries to power the device, and changes to the m100

software, such as the addition of a notepad application and a clock application and the removal of

mail or expense applications.

Thus, it is clear that independent claim 1 of the present application is not obvious over the

references of record cited by the Examiner in the outstanding Office Action of May 24, 2007.

And, because independent claim 1 is not obvious over such references, dependent claims 2-18,

which depend either directly or indirectly from claim 1, are also not obvious over such

references.

In view of the foregoing, it is believed that all of the claims pending in the application,

*i.e.*, claims 1 – 18, are now in condition for allowance, which action is earnestly solicited. If any

1237070

GOERTZ
Serial No.: 10/315,250

issues remain in this application, the Examiner is urged to contact the undersigned at the

telephone number listed below.

Respectfully submitted,

**NIXON & VANDERHYE P.C.**

By: _Robert A. Molan_
Robert A. Molan
Reg. No. 29,834

RAM:drt

901 North Glebe Road, 11th Floor
Arlington, VA  22203
Telephone:  (703) 816-4000
Facsimile:  (703) 816-4100

- 19 -

1237070



# United States Patent and Trademark Office OG Notices: 22 November 2005

Interim Guidelines for Examination of Patent Applications
for Patent Subject Matter Eligibility

In the mid-1990's, the USPTO sought to clarify the legal requirements
for statutory subject matter with regard to computer-related inventions.
See Examination Guidelines for Computer Related Inventions, 61 Fed. Reg.
7478 (1996). Subsequent to the publication of those guidelines, the Court
of Appeals for the Federal Circuit issued opinions in State Street Bank &
Trust Co. v. Signature Financial Group Inc., 149 F. 3d 1368, 47 USPQ2d 1596
(Fed. Cir. 1998) and AT&T Corp. v. Excel Communications, Inc., 172 F.3d
1352, 50 USPQ2d 1447 (Fed. Cir. 1999). These decisions explained that, to
be eligible for patent protection, the claimed invention as a whole must
accomplish a practical application. That is, it must produce a "useful,
concrete and tangible result." State Street, 149 F.3d at 1373-74, 47 USPQ2d
at 1601-02. Since this time, the USPTO has seen increasing numbers of
applications outside the realm of computer-related inventions that raise
subject matter eligibility issues. In order to assist examiners in
identifying and resolving these issues, the USPTO is issuing these interim
examination guidelines to assist USPTO personnel in the examination of
patent applications to determine whether the subject matter as claimed is
eligible for patent protection.

The principal objective of these guidelines is to assist examiners in
determining, on a case-by-case basis, whether a claimed invention falls
within a judicial exception to statutory subject matter (i.e., is
nothing more than an abstract idea, law of nature, or natural
phenomenon), or whether it is a practical application of a judicial
exception to statutory subject matter. The guidelines explain that a
practical application of a 35 U.S.C. Sec. 101 judicial exception is
claimed if the claimed invention physically transforms an article or
physical object to a different state or thing, or if the claimed
invention otherwise produces a useful, concrete, and tangible result.

I. INTRODUCTION

These Examination Guidelines ("Guidelines") are based on
the USPTO's current understanding of the law and are believed to be
fully consistent with binding precedent of the Supreme Court, the
Federal Circuit and the Federal Circuit's predecessor courts.

These Guidelines do not constitute substantive rulemaking and hence do
not have the force and effect of law. These Guidelines have been
designed to assist USPTO personnel in analyzing claimed subject matter
for compliance with substantive law. Rejections will be based upon the
substantive law and it is these rejections which are appealable.
Consequently, any failure by USPTO personnel to follow the Guidelines
is neither appealable nor petitionable.

The Guidelines set forth the procedures USPTO personnel will follow
when examining applications. USPTO personnel are to rely on these
Guidelines in the event of any inconsistent treatment of issues between
these Guidelines and any earlier provided guidance from the USPTO.

Inquiries concerning these Interim Guidelines may be directed to Linda
Therkorn, Office of the Deputy Commissioner for Patent Examination Policy,
by telephone at 571-272-8800, or Ray Chen, Office of the Solicitor, by

claim would be found to be statutory.

   The Federal Circuit held that the mere manipulations of abstract ideas are not patentable. Schrader, 22 F.3d at 292-93, 30 USPQ2d at 1457-58. If a claimed process manipulates only numbers, abstract concepts or ideas, or signals representing any of the foregoing, the claim is not being applied to appropriate subject matter. Schrader, 22 F.3d at 294-95, 30 USPQ2d at 1458-59. The Federal Circuit also recognizes that the fact that a nonstatutory method is carried out on a programmed computer does not make the process claim statutory. Grams, 888 F.2d at 841, 12 USPQ2d at 1829 (claim 16 ruled nonstatutory even though it was a computer-implemented process).

   In addition, the Federal Circuit has recently noted that a "structural inquiry is unnecessary" when determining whether a process claim is eligible for patent protection. AT&T, 172 F.3d at 1359, 50 USPQ2d at 1452.

   Thus, a finding that a claim fails to recite a computer-implemented process is not determinative in whether that claim passes muster under Sec. 101. Therefore, USPTO personnel should no longer rely on the machine implemented test to determine whether a claimed invention is directed to statutory subject matter.

        e. Per Se Data Transformation Test

   Identifying that a claim transforms data from one value to another is not by itself sufficient for establishing that the claim is eligible for patent protection. See, e.g., Benson, 409 U.S. 63, 175 USPQ 673 (finding machine-implemented method of converting binary-coded decimal numbers into pure binary numbers unpatentable). In Benson, the claims invention was held to be merely a series of mathematical calculations having "no substantial practical application." Id. at 71, 175 USPQ at 676. Therefore, claims that perform data transformation must still be examined for whether there is a practical application of an abstract idea that produces a useful, concrete, and tangible result.

                        ANNEX IV
            Computer-Related Nonstatutory Subject Matter

   Descriptive material can be characterized as either "functional descriptive material" or "nonfunctional descriptive material." In this context, "functional descriptive material" consists of data structures and computer programs which impart functionality when employed as a computer component. (The definition of "data structure" is "a physical or logical relationship among data elements, designed to support specific data manipulation functions." The New IEEE Standard Dictionary of Electrical and Electronics Terms 308 (5th ed. 1993).) "Nonfunctional descriptive material" includes but is not limited to music, literary works and a compilation or mere arrangement of data.

   Both types of "descriptive material" are nonstatutory when claimed as descriptive material per se. Warmerdam, 33 F.3d at 1360, 31 USPQ2d at 1759. When functional descriptive material is recorded on some computer-readable medium it becomes structurally and functionally interrelated to the medium and will be statutory in most cases since use of technology permits the function of the descriptive material to be realized. Compare In re Lowry, 32 F.3d 1579, 1583-84, 32

USPQ2d 1031, 1035 (Fed. Cir. 1994) (claim to data structure stored on a computer readable medium that increases computer efficiency held statutory) and Warmerdam, 33 F.3d at 1360-61, 31 USPQ2d at 1759 (claim to computer having a specific data structure stored in memory held statutory product-by-process claim) with Warmerdam, 33 F.3d at 1361, 31 USPQ2d at 1760 (claim to a data structure per se held nonstatutory).

When nonfunctional descriptive material is recorded on some computer-readable medium, in a computer or on an electromagnetic carrier signal, it is not statutory since no requisite functionality is present to satisfy the practical application requirement. Merely claiming nonfunctional descriptive material, i.e., abstract ideas, stored in a computer-readable medium, in a computer, on an electromagnetic carrier signal does not make it statutory. See Diehr, 450 U.S. at 185-86, 209 USPQ at 8 (noting that the claims for an algorithm in Benson were unpatentable as abstract ideas because "[t]he sole practical application of the algorithm was in connection with the programming of a general purpose computer."). Such a result would exalt form over substance. In re Sarkar, 588 F.2d 1330, 1333, 200 USPQ 132, 137 (CCPA 1978) ("[E]ach invention must be evaluated as claimed; yet semantogenic considerations preclude a determination based solely on words appearing in the claims. In the final analysis under Sec. 101, the claimed invention, as a whole, must be evaluated for what it is.") (quoted with approval in Abele, 684 F.2d at 907, 214 USPQ at 687). See also In re Johnson, 589 F.2d 1070, 1077, 200 USPQ 199, 206 (CCPA 1978) ("form of the claim is often an exercise in drafting"). Thus, nonstatutory music is not a computer component and it does not become statutory by merely recording it on a compact disk. Protection for this type of work is provided under the copyright law.

When nonfunctional descriptive material is recorded on some computer-readable medium, in a computer or on an electromagnetic carrier signal, it is not statutory and should be rejected under 35 U.S.C. Sec. 101. In addition, the examiner should inquire whether there should be a rejection under 35 U.S.C. Sec. 102 or 103. The examiner should determine whether the claimed nonfunctional descriptive material be given patentable weight. The USPTO must consider all claim limitations when determining patentability of an invention over the prior art. In re Gulack, 703 F.2d 1381, 1385, 217 USPQ 401, 403-04 (Fed. Cir. 1983). The USPTO may not disregard claim limitations comprised of printed matter. See Gulack, 703 F.2d at 1384, 217 USPQ at 403; see also Diehr, 450 U.S. at 191, 209 USPQ at 10. However, the examiner need not give patentable weight to printed matter absent a new and unobvious functional relationship between the printed matter and the substrate. See In re Lowry, 32 F.3d 1579, 1583-84, 32 USPQ2d 1031, 1035 (Fed. Cir. 1994); In re Ngai, 367 F.3d 1336, 70 USPQ2d 1862 (Fed. Cir. 2004).

        (a) Functional Descriptive Material: "Data Structures"
        Representing Descriptive Material Per Se or Computer Programs
        Representing Computer Listings Per Se

Data structures not claimed as embodied in computer-readable media are descriptive material per se and are not statutory because they are not capable of causing functional change in the computer. See, e.g., Warmerdam, 33 F.3d at 1361, 31 USPQ2d at 1760 (claim to a data structure per se held nonstatutory). Such claimed data structures do not define any structural and functional

interrelationships between the data structure and other claimed aspects of
the invention which permit the data structure's functionality to be
realized. In contrast, a claimed computer-readable medium encoded with a
data structure defines structural and functional interrelationships between
the data structure and the computer software and hardware components which
permit the data structure's functionality to be realized, and is thus
statutory.

Similarly, computer programs claimed as computer listings per
se, i.e., the descriptions or expressions of the programs, are
not physical "things." They are neither computer components nor
statutory processes, as they are not "acts" being performed. Such
claimed computer programs do not define any structural and functional
interrelationships between the computer program and other claimed
elements of a computer which permit the computer program's
functionality to be realized. In contrast, a claimed computer-readable
medium encoded with a computer program is a computer element which
defines structural and functional interrelationships between the
computer program and the rest of the computer which permit the computer
program's functionality to be realized, and is thus statutory.
See Lowry, 32 F.3d at 1583-84, 32 USPQ2d at 1035. Accordingly, it is
important to distinguish claims that define descriptive material per se
from claims that define statutory inventions.

Computer programs are often recited as part of a claim. USPTO personnel
should determine whether the computer program is being claimed as part
of an otherwise statutory manufacture or machine. In such a case, the
claim remains statutory irrespective of the fact that a computer
program is included in the claim. The same result occurs when a
computer program is used in a computerized process where the computer
executes the instructions set forth in the computer program. Only when
the claimed invention taken as a whole is directed to a mere program
listing, i.e., to only its description or expression, is it descriptive
material per se and hence nonstatutory. Since a computer
program is merely a set of instructions capable of being executed by a
computer, the computer program itself is not a process and USPTO
personnel should treat a claim for a computer program, without the
computer-readable medium needed to realize the computer program's
functionality, as nonstatutory functional descriptive material. When a
computer program is claimed in a process where the computer is
executing the computer program's instructions, USPTO personnel should
treat the claim as a process claim. See paragraph IV.B.2(b), below.
When a computer program is recited in conjunction with a physical
structure, such as a computer memory, USPTO personnel should treat the
claim as a product claim. See paragraph IV.B.2(a), below.

   (b) Nonfunctional Descriptive Material

Nonfunctional descriptive material that does not constitute a
statutory process, machine, manufacture or composition of matter and
should be rejected under 35 U.S.C. Sec. 101. Certain types of descriptive
material, such as music, literature, art, photographs and mere
arrangements or compilations of facts or data, without any functional
interrelationship is not a process, machine, manufacture or composition
of matter. USPTO personnel should be prudent in applying the foregoing
guidance. Nonfunctional descriptive material may be claimed in
combination with other functional descriptive multi-media material on a
computer-readable medium to provide the necessary functional and
structural interrelationship to satisfy the requirements of 35 U.S.C.
Sec. 101. The presence of the claimed nonfunctional descriptive material

is not necessarily determinative of nonstatutory subject matter. For
example, a computer that recognizes a particular grouping of musical
notes read from memory and upon recognizing that particular sequence,
causes another defined series of notes to be played, defines a
functional interrelationship among that data and the computing
processes performed when utilizing that data, and as such is statutory
because it implements a statutory process.

(c) Electro-Magnetic Signals

Claims that recite nothing but the physical characteristics of
a form of energy, such as a frequency, voltage, or the strength of a
magnetic field, define energy or magnetism, per se, and as
such are nonstatutory natural phenomena. O'Reilly, 56 U.S.
(15 How.) at 112-14. Moreover, it does not appear that a claim reciting
a signal encoded with functional descriptive material falls within any
of the categories of patentable subject matter set forth in Sec. 101.

First, a claimed signal is clearly not a "process" under Sec. 101
because it is not a series of steps. The other three Sec. 101 classes of
machine, compositions of matter and manufactures "relate to
structural entities and can be grouped as `product' claims in order
to contrast them with process claims." 1 D. Chisum, Patents Sec. 1.02
(1994). The three product classes have traditionally required physical
structure or material.

"The term machine includes every mechanical device or combination of
mechanical device or combination of mechanical powers and devices to
perform some function and produce a certain effect or result."
Corning v. Burden, 56 U.S. (15 How.) 252, 267 (1854). A
modern definition of machine would no doubt include electronic devices
which perform functions. Indeed, devices such as flip-flops and
computers are referred to in computer science as sequential machines. A
claimed signal has no physical structure, does not itself perform any
useful, concrete and tangible result and, thus, does not fit within the
definition of a machine.

A "composition of matter" "covers all compositions of two or more
substances and includes all composite articles, whether they be results
of chemical union, or of mechanical mixture, or whether they be gases,
fluids, powders or solids." Shell Development Co. v.
Watson, 149 F. Supp. 279, 280, 113 USPQ 265, 266 (D.D.C. 1957),
aff'd, 252 F.2d 861, 116 USPQ 428 (D.C. Cir. 1958). A claimed signal is not
matter, but a form of energy, and therefore is not a composition of matter.

The Supreme Court has read the term "manufacture" in accordance
with its dictionary definition to mean "the production of articles
for use from raw or prepared materials by giving to these materials new
forms, qualities, properties, or combinations, whether by hand-labor or
by machinery." Diamond v. Chakrabarty, 447 U.S. 303, 308,
206 USPQ 193, 196-97 (1980) (quoting American Fruit Growers, Inc.
v. Brogdex Co., 283 U.S. 1, 11, 8 USPQ 131, 133 (1931), which, in
turn, quotes the Century Dictionary). Other courts have applied similar
definitions. See American Disappearing Bed Co. v.
Arnaelsteen, 182 F. 324, 325 (9th Cir. 1910), cert.
denied, 220 U.S. 622 (1911). These definitions require physical
substance, which a claimed signal does not have. Congress can be
presumed to be aware of an administrative or judicial interpretation of
a statute and to adopt that interpretation when it re-enacts a statute
without change. Lorillard v. Pons, 434 U.S. 575, 580

(1978). Thus, Congress must be presumed to have been aware of the interpretation of manufacture in American Fruit Growers when it passed the 1952 Patent Act.

A manufacture is also defined as the residual class of product. 1 Chisum, Sec. 1.02[3] (citing W. Robinson, The Law of Patents for Useful Inventions 270 (1890)). A product is a tangible physical article or object, some form of matter, which a signal is not. That the other two product classes, machine and composition of matter, require physical matter is evidence that a manufacture was also intended to require physical matter. A signal, a form of energy, does not fall within either of the two definitions of manufacture. Thus, a signal does not fall within one of the four statutory classes of Sec. 101.

On the other hand, from a technological standpoint, a signal encoded with functional descriptive material is similar to a computer-readable memory encoded with functional descriptive material, in that they both create a functional interrelationship with a computer. In other words, a computer is able to execute the encoded functions, regardless of whether the format is a disk or a signal.

These interim guidelines propose that such signal claims are ineligible for patent protection because they do not fall within any of the four statutory classes of Sec. 101. Public comment is sought for further evaluation of this question.

ANNEX 5
Mathematical Algorithms

Claims to processes that do nothing more than solve mathematical problems or manipulate abstract ideas or concepts are complex to analyze and are addressed herein.

If the "acts" of a claimed process manipulate only numbers, abstract concepts or ideas, or signals representing any of the foregoing, the acts are not being applied to appropriate subject matter. Benson, 409 U.S. at 71-72, 175 USPQ at 676. Thus, a process consisting solely of mathematical operations, i.e., converting one set of numbers into another set of numbers, does not manipulate appropriate subject matter and thus cannot constitute a statutory process.

In practical terms, claims define nonstatutory processes if they:

- consist solely of mathematical operations without some claimed practical application (i.e., executing a "mathematical algorithm"); or

- simply manipulate abstract ideas, e.g., a bid (Schrader, 22 F.3d at 293-94, 30 USPQ2d at 1458-59) or a bubble hierarchy (Warmerdam, 33 F.3d at 1360, 31 USPQ2d at 1759), without some claimed practical application.

Cf. Alappat, 33 F.3d at 1543 n.19, 31 USPQ2d at 1556 n.19 in which the Federal Circuit recognized the confusion:

The Supreme Court has not been clear . . . as to whether such subject matter is excluded from the scope of Sec. 101 because it represents laws of nature, natural phenomena, or abstract ideas. See Diehr, 450 U.S. at 186 (viewed mathematical algorithm as a law of nature); Gottschalk v. Benson,

**Writers Guide to the Pocket PC and Palm**

## *Graffiti Writing Guide*

<u>Block Recognizer</u> on the Pocket PC uses Palm Graffiti.  Letters go in the left block and numbers are written in the right block













**Writers Guide to the Pocket PC and Palm**

## *Graffiti 2*

The latest version of Graffiti, that comes on the Palm Tungsten T3 and higher, is a slight modification of the original Graffiti.

| Draw letters on LEFT side of Graffiti 2 writing area | | | |
|---|---|---|---|
| Letter | Strokes | Letter | Strokes |
| A | | B | |
| C | | D | |
| E | | F | |
| G | | H | |
| I | | J | |

| Draw numbers on RIGHT side of Graffiti 2 writing area | | | |
|---|---|---|---|
| Number | Strokes | Number | Strokes |
| 0 | | 1 | |
| 2 | | 3 | |
| 4 | | 5 | |
| 6 | | 7 | |
| 8 | | 9 | |

| Draw letters on LEFT side of Graffiti 2 writing area | | | |
|---|---|---|---|
| Letter | Strokes | Letter | Strokes |
| K | | L | |
| M | | N | |
| O | | P | |
| Q | | R | |
| S | | T | |
| U | | V | |
| W | | X | |
| Y | | Z | |



Write letters here — Write numbers here

Write capital letters across the imaginary division line

Division marks

**Palm devices only**

| Draw these marks on LEFT side of Graffiti 2 writing area | | | |
|---|---|---|---|
| Mark | Stroke | Mark | Stroke |
| Period . | | Ampersand & | |
| Comma , | | Carriage return | |
| Apostrophe ' | | At @ | |
| Space | | Straight quotes " | |
| Question ? | | Tab | |
| Exclamation ! | | | |

| Draw these marks on RIGHT side of Graffiti 2 writing area | | | |
|---|---|---|---|
| Mark | Stroke | Mark | Stroke |
| Period . | | Backslash \ | |
| Comma , | | Slash / | |
| Tilde ~ | | Left Paren ( | |
| Dash — | | Right Paren ) | |
| Plus + | | Equal = | |
| Asterisk * | | | |

Nancy Clark, M.Ed.

FSU College of Medicine

3

**Writers Guide to the Pocket PC and Palm**

*Jot Users Guide*

Letter Recognizer on the PocketPC recognizes many variations of character input similar to the Palm program Jot. Capital letters go in the first block, lowercase letters in the middle, and numbers on the right.



### Jot® for Palm OS Quick Start Card

Write in full screen or box mode

- Lowercase
- Uppercase
- Numbers and punctuation
- Mode mark

To enter lowercase letters, write the following shapes to the left of the mode mark. To enter uppercase letters, write the same character shape across the mode mark.

Write numbers and the following symbols to the right of the mode marks.

**Quick Tips:**

To enable Jot:
Tap the JOT icon in the Applications Launcher and ensure that ENABLE JOT is checked. Also ensure that JOT is selected.

Refer to the online tutorial for writing additional characters and symbols.

To select text when writing in full screen hold down the stylus, pause, then drag it over the text.

Disable Jot before removing it from the device

ABC    abc    123

New Edit View Tools

## Writers Guide to the Pocket PC and Palm

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **a** | *aoAΛ* | **l** | *ℓ L* | **w** | *W* | double quote | *" '* |
| **b** | *b b B B* | **m** | *m m* | **x** | *X²* | tab | |
| **c** | *C* | **n** | *ɥ N N* | **y** | *y y* | space | |
| **d** | *d d D D* | **o** | *O O* | **z** | *Z ʒ* | backspace | |
| **e** | *e Ɛ* | **p** | *P P* | period | *• or \ \** | new line | |
| **f** | *f f f* | **q** | *q q* | comma | | cut | |
| **g** | *g g G G* | **r** | *r R R* | aspostrophe | | copy | |
| **h** | *h h K* | **s** | *S* | question | *?* | paste | |
| **i** | *i i* | **t** | *t t* | exclamation | *!* | undo | |
| **j** | *j j J J* | **u** | *U U* | ampersand | *& &* | command | |
| **k** | *K K K* | **v** | *V U* | at | *@* | | |

\* • or •• is written in the writing area.

\ or \\ is used when writing on the display.

Write numbers and the following symbols to the right of the division marks.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **0** | *O O* | **6** | *6* | dash | | ( | |
| **1** | *1 1* | **7** | *7* | tilde | *N* | ) | |
| **2** | *2 2* | **8** | *8 8* | + | *+* | = | |
| **3** | *3* | **9** | *9 9* | * | *X²* | backspace | |
| **4** | *4 4 4* | period | *• or \ \** | / | | | |
| **5** | *5 5* | comma | | \ | | | |

Write accent marks to the right of the division marks after writing an upper or lower case letter.

| | | | | | |
|---|---|---|---|---|---|
| **à** | *\* | **â** | *Λ* | **ä** | *•• or \\ \** |
| **á** | */* | **ã** | *N* | **å** | *O* |

Nancy Clark, M.Ed.            FSU College of Medicine                                    **4**

## Writers Guide to the Pocket PC and Palm

Jot Special characters

| . | • | : | ⁚ | □ | ⊗ | ® | Ⓡ |
|---|---|---|---|---|---|---|---|
| , | ⌐ | = | = | « | ≪ | © | Ⓒ |
| ' | ⌐ | # | ♯ | » | ≫ | ^ | ∧ |
| - | — | ⋆ | ✳ ✳ | ‥ | ∵ | § | § |
| _ | —· | & | ₵ & | ‾ | —— | ¢ | ¢ |
| ~ | N | Æ | AƐ | · | ·— | ‡ | ‡ |
| @ | @ @ | æ | æ | ¬ | ⌐ | … | ••• |
| < | < | Ç | Ç | ˋ | ╲ | • | •∥ |
| > | > | ç | ç | ˊ | ╱ | - | ——— |
| ( | ( | ª | a | ¦ | ∥ | — | ———— |
| ) | ) | º | ○ | - | —╱ | ‹ | ◁ |
| [ | [ | ‚ | ∥ | ™ | ∇M | › | ▷ |
| ] | ] | ¿ | Č | Œ | OƐ | ƒ | ƒ |
| } | } | ¡ | ĭ | œ | ○e | š | š |
| { | { | þ | þ | ‰ | ‰ | š | š |
| \| | ↑ | Þ | þ | † | ╀ | ˆ | ∧ |
| ! | ⌇ | Ð | Ð | ‡ | ⫼ | ~ | N |
| ? | ? | ð | Ð | ¹ | 21 | ‘ | ∟ |
| $ | $ $ | Ø | Ø | ² | 31 | ’ | ⌐ |
| % | % | ø | Ø | ³ | ± | “ | ⌐ |
| / | ╱ | ß | ß | × | ×² | ” | ⌐ |
| \ | ╲ | µ | M | ÷ | ÷ | , | ⌐ |
| " | ⌐ | ¥ | ¥ | ¼ | ¼ | „ | ⫽ |
| + | +╀ | £ | £ | ½ | ½ | € | € |
| ; | ⌐ | ¶ | C∥ | ¾ | ¾ | | |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 | 1226 |

23117        7590        05/24/2007

NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203

| EXAMINER |
|---|
| PITARO, RYAN F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2174 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/24/2007 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit | |
| | Ryan F. Pitaro | 2174 | |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on _15 March 2007_.

2a) ☐ This action is **FINAL**.  2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) _1-18_ is/are pending in the application.

   4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) _1-18_ is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a) ☐ All  b) ☐ Some * c) ☐ None of:

   1. ☐ Certified copies of the priority documents have been received.

   2. ☐ Certified copies of the priority documents have been received in Application No. _____.

   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 08-06)  **Office Action Summary**  Part of Paper No./Mail Date 20070517

Application/Control Number: 10/315,250                                    Page 2
Art Unit: 2174

## DETAILED ACTION

### *Response to Amendment*

This communication is responsive to the Amendment filed 3/15/2007.

Claims 1-18 are pending in this application. Claims 1, 15 and 17 are

independent claims. In the Amendment the Specification and the Claims were

amended. Claims 1-18 were amended.

### *Claim Rejections - 35 USC § 101*

35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Claims 1-16 are rejected under 35 U.S.C. 101 because the claimed invention is

directed to non-statutory subject matter. A graphical user interface is simply non

functional descriptive material per se, and therefore lacks an actual data structure to be

considered statutory. To be an actual data structure it must be a physical or logical

relationship among data elements designed to support specific data manipulation

functions.

Application/Control Number: 10/315,250                                     Page 3
Art Unit: 2174

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

Claims 1, 4-7, 12, 15 and 17 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Carlson ("Carlson", Carlson, Jeff. <u>Visual Quickstart Guide Palm</u>

<u>Organizers</u>. Peachpit Press. 2000.  Berkeley, CA.) in view of Haitani et al ("Haitani", US

5,900875) in view of Venolia et al ("Venolia", T-Cube: A Fast, Self-Disclosing Pen-

Based Alphabet).


1.      As per claim 1, Carlson teaches a user interface for a mobile handheld computer

unit (Introduction, page xiii), where said computer unit comprises a touch sensitive area

(page 26, *the screen is touch sensitive*), that is simultaneously divided into a menu area

(page 12, fig. 1.10 *silk screen graffiti area*) and a display area, the computer unit is

being adapted to run several applications simultaneously (page 47, *all of the*

*applications are running concurrently*), and to present an active application on top of

any other application on said display area, characterised in, that said menu area is

adapted to present a representation of a first, a second and a third predefined function,

that said first function is a general application dependent function (page 28, *the Menu*

*icon*, fig. 2.4), that said second function is a keyboard function (page 30, *either the abc*

*or 123 dots in the lower corner of the Graffiti area*), that said third function is a task and file manager (page 47, *the Applications screen* & fig. 2.35), and that any one of said three functions can be activated when said touch sensitive area detects a movement of an object with its starting point within the representation of said function on said menu area and with a direction from said menu area to said display area (page 40, *bottom-to-top screen stroke shortcut* fig. 2.22 & page 30, *drag the stylus vertically across the screen from bottom to top*), said user interface allowing low precision navigation using a blunt object, whereby said user interface can be operated by one hand (page 12, "*The stylus is the main method of interacting with the PalmPilot" and it inherently involves one hand to use the stylus*. Also, if a finger was used, that would also be considered using one hand), where said blunt object is a finger (page 12, "*The stylus is the main method of interacting*" **though** anything including fingers **can** work). Carlson fails to distinctly point out simultaneously displaying a first, second, and third function. However, Haitani teaches the menu area being adapted to simultaneously present representations of a first function that is a general application dependent function (Figure 1 items 151,153), a second function that is a keyboard function (Figure 1 item 145) and a third function that is a task and file manager (Figure 1 item 141). Therefore it would have been obvious to an artisan at the time of the invention to combine the teaching of Haitani with the interface of Carlson. Motivation to do so would have been to provide ~~away~~ a way to view information that does not fit on the display. The modified Carlson still does not explicitly point out activation by a single step of an object moving in a direction on the touch sensitive area. However, Venolia teaches activating by the single

Application/Control Number: 10/315,250                                    Page 5
Art Unit: 2174

step of an object moving in a direction from a starting point that is representation of the

function in the menu area to the display area (Column 2, flick gestures). Therefore it

would have been obvious to an artisan at the time of the invention to combine the

teaching of Venolia with the modified Carlson. Motivation to do so would have been to

provide a fast way of selecting functions.

2.       As per claim 4, the modified Carlson teaches the user interface according to

claim 1, characterised in,

        that, if said second function is activated, said display area is adapted to display a

keyboard and a text field,

        that, if a text passage in said active application is highlighted, said text passage

is displayed in said text field for editing through said keyboard and that said highlighted

text passage is replaced by said edited text passage when said second function is

deactivated, and

        that, if no text passage in said active application is highlighted, said text field is

available for inputting and editing of text through said keyboard (Carlson, page 30, fig

2.7).

3.       As per claim 5, the modified Carlson teaches the user interface according to

claim 4, characterized in, that if no text passage in said active application is highlighted,

and said text field is used for inputting and editing of text through said keyboard

(Carlson, page 30, fig 2.7), then

        said first function can be activated, or

said second function can be closed, in which a choice of saving or deleting said inputted text is given, where the choice of saving said inputted text results in an activation of said first function,

in which said first function will present services or settings available for said inputted text (Carlson, page 28, fig. 2.4 *Beam Memo*).

4.     As per claim 6, the modified Carlson teaches the user interface according to claim 1, characterised in, that, if said third function is activated, said display area is adapted to display a list with a library of available applications and files on said computer unit, that a selection of an application will start said application, and that a selection of a file will open said file in an application intended for said file (Carlson, page 47, fig. 2.35).

5.     As per claim 7, the modified Carlson teaches the user interface according to claim 6, characterised in, that a selection of an application or a file is done by moving said object so that the representation of desired application or file is highlighted, removing said object from said touch sensitive area, and then tapping on said touch sensitive area, and that an application or file is highlighted by placing some kind of marking on the representation of said application or file (Carlson, pages 26 & 27).

6.     As per claim 12, the modified Carlson teaches the user interface according to Claim 1, characterised in, that an active application, function, service or setting is moved on one step by moving said object from the left of said display area to the right of said display area, and that the active application, function service or setting is closed or

backed one step by moving said object from the right of said display area to the left of said display area (Carlson, page 246, fig. 14.2, *Drag to scroll through file*).

7.     As per claim 15, the modified Carlson teaches an enclosure adapted to cover a computer unit, said computer unit being adapted to present a user interface according Claim 1, characterised in, that said enclosure is provided with an opening for said display area, and that a representation of said menu area is printed on top of said enclosure (Carlson, page 12, *Silkscreen Graffiti area* & fig. 1.10).

8 .     As per claim 17, the modified Carlson teaches a computer readable medium, with a computer program product stored therein, characterised in, that said computer program product comprises computer readable code, which, when read by a computer, will make it possible for said computer to present a user interface according to Claim 1 (Carlson, page 25, *Palm OS*).

Claims 2 and 3 are rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson ("Carlson", Carlson, Jeff. <u>Visual Quickstart Guide Palm Organizers</u>. Peachpit Press. 2000. Berkeley, CA.), Haitani et al ("Haitani", US 5,900875), and Venolia et al ("Venolia", T-Cube: A Fast, Self-Disclosing Pen-Based Alphabet) in view of Kopitzke et al. ("Kopitzke", US # 6,988,246 B2).

9.     As per claim 2, the modified Carlson teaches the user interface according to claim 1, characterized in, that, if said first function is activated, said display area is adapted to display icons representing different services or settings depending on the current active application (Carlson, page 28, *the Menu icon*, fig. 2.4), and that, if no

application is currently active on said computer unit, said icons are adapted to represent

services or settings of the operations system of said computer unit (Carlson, page 47,

fig. 2.36, *12:11 am*).

However the modified Carlson does not teach expressly the user interface

according to claim 1, characterized in, that, if said first function is activated, said display

area is adapted to display icons representing different services or settings depending on

the current active application, that one of said icons always represents a "help"-service,

regardless of application.

Kopitzke teaches the user interface according to claim 1, characterised in, that

said display area is adapted to display icons representing different services or settings

depending on the current active application, that one of said icons always represents a

"help"-service, regardless of application (column 4, lines 36-53 & fig. 1, *Help key or

button* 6).

The modified Carlson and Kopitzke are analogous art because they are in the

same field of endeavor, namely graphical user interfaces with touch sensitive displays.

At the time of the invention it would have been obvious to a person of ordinary

skill in the art to provide the help function as taught by Kopitzke within the user interface

of the modified Carlson in order to provide context sensitive information.

As per claim 3, the modified Carlson teaches the user interface according to

claim 2, characterised in, that a selection of a preferred service or setting is done by

tapping on corresponding icon (Carlson, page 26, fig. 2.1 *Tapping just about any

interface element in the Palm OS evokes a response*).

Application/Control Number: 10/315,250                                    Page 9
Art Unit: 2174

Claims 8-11 and 13 is rejected under 35 U.S.C. 103(a) as being unpatentable

over Carlson ("Carlson", Carlson, Jeff. <u>Visual Quickstart Guide Palm Organizers</u>.

Peachpit Press. 2000.  Berkeley, CA.), Haitani et al ("Haitani", US 5,900875), and

Venolia et al ("Venolia", T-Cube: A Fast, Self-Disclosing Pen-Based Alphabet) in view of

Wynn et al. ("Wynn", US # 6,734,883 B1).

10.     As per claim 8, the modified Carlson teaches the user interface according to

claim 7.  However the modified Carlson does not teach expressly the user interface,

characterised in, that said list is adapted to present only said files or only said

applications, that the top area of said list presents a field through which the content of

said list can be altered, that, if said list only presents files, said field displays a

representation of a task manager and a selection of said field will cause said list to alter

to present only applications, and that, if said list only presents applications, said field

displays a representation of a file manager and a selection of said field will cause said

list to alter and present only files.

        Wynn teaches a user interface control, characterised in, that said list is adapted

to present only said files or only said applications, that the top area of said list presents

a field through which the content of said list can be altered (column 3, lines 4-8, *dialog*

*box* 32), that, if said list only presents files, said field displays a representation of a task

manager and a selection of said field will cause said list to alter to present only

applications, and that, if said list only presents applications, said field displays a

representation (column 3, lines 4-8, *label* 31) of a file manager and a selection of said

field will cause said list to alter and present only files (column 3, lines 15-31).

The modified Carlson and Wynn are analogous art because they are in the same field of endeavor, namely scrolling within graphical user interfaces with touch sensitive displays.

At the time of the invention it would have been obvious to a person of ordinary skill in the art to have the selection list format as taught by Wynn within the user interface of the modified Carlson in order to provide a conventional list format.

11.     As per claim 9, the modifiedCarlson teaches the user interface according to claim 7, characterised in, that, a navigation in said list is performed by moving said object in a direction towards the top of said list or towards the bottom of said list, that the movement of said object will cause said marking to move in the same direction (Carlson, page 27, *a quicker way to view the full list is to tap and hold on the dark solid portion of the scroll bar, then drag it vertically*).

However the modified Carlson does not teach expressly that the speed of the movement of said marking is lower than the speed of the movement of said object.

Wynn teaches a user interface control, characterised in, that, a navigation in said list is performed by moving said object in a direction towards the top of said list or towards the bottom of said list, that the movement of said object will cause said marking to move in the same direction (column 3, lines 32-39 & figs. 5) and that the speed of the movement of said marking is lower than the speed of the movement of said object (column 4, lines 24-30).

Application/Control Number: 10/315,250                                       Page 11
Art Unit: 2174

At the time of the invention it would have been obvious to a person of ordinary

skill in the art to have the scrolling function as taught by Wynn within the user interface

of the modifiedCarlson in order to provide a conventional selection list.

12.      As per claim 10, the modified Carlson in view of Wynn teaches the user interface

according to claim 9, characterised in, that, if the number of applications and/or files in

said list exceeds the number of applications and files that can be presented on said

display area, and if said object is moved to the top or bottom position of said display

area, then lifted, replaced on said display area, and again moved to the top or bottom of

said display area, the content of said display area will be replaced one whole page,

meaning that if said object is positioned at the top of said display area, then lifted,

replaced on said display area, and then again moved to the top of said display area, the

content of said display area will be replaced by the preceding applications and/or files in

said list (Carlson, page 253, fig. 14.15 *Full Page Up*).

The modified Carlson in view of Wynn does not disclose expressly the user

interface, characterised in that if said object is positioned at the bottom of said display

area, then lifted, replaced on said display area, and then again moved to the bottom of

said display area, the content of said display area will be replaced by the following

applications and/or files in said list.

At the time of the invention, it would have been an obvious matter of design

choice to a person of ordinary skill in the art to modify the *Full Page Up* function

(Carlson, page 253, fig 14.15) to work as a Full Page Down function by tapping on the

bottom of the display area because Applicant has not disclosed that *if said object is*

14.     As per claim 13, the modified Carlson teaches the user interface according to Claim 1, characterised in, that said menu area is positioned at the bottom of said touch sensitive area, that said representation of said first function is positioned at the left side of said menu area, and that said representation of said second function is positioned at the middle of said menu area.

The modified Carlson does not teach expressly that said representation of said third function is positioned at the right side of said menu area.

At the time the invention was made, it would have been an obvious matter of design choice to a person of ordinary skill in the art to place the third function on the right side of the display area instead of the left, because Applicant has not disclosed that *said representation of said third function is positioned at the right side of said menu area* provides an advantage, is used for a particular purpose or solves a stated problem. One of ordinary skill in the art, furthermore would have expected Applicant's invention to perform equally well with the third function on the left side of the display area because the placement of the representation would not change its functionality.


Claims 14 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson ("Carlson", Carlson, Jeff. Visual Quickstart Guide Palm Organizers. Berkeley, CA: Peachpit Press, 2000), Haitani et al ("Haitani", US 5,900875), and Venolia et al ("Venolia", T-Cube: A Fast, Self-Disclosing Pen-Based Alphabet) in view of Strietelmeier ("Strietelmeier", Strietelmeier, Julie. "Palm m100." The Gadgeteer. 2000. <http://www.the-gadgeteer.com/review/palm_m100_review>).

*positioned at the bottom of said display area, then lifted, replaced on said display area, and then again moved to the bottom of said display area, the content of said display area will be replaced by the following applications and/or files in said list* provides an advantage, is used for a particular purpose, or solves a stated problem. One of ordinary skill in the art, furthermore, would have expected Applicant's invention to perform equally well with the modified Full Page Up function as taught by Carlson because it would only need to be implemented to scroll down instead of up, when the display area is tapped on the bottom, instead of the top.

13. As per claim 11, the modified Carlson in view of Wynn teaches the user interface according to claim 10, characterised in, that if said object is removed from any first position on said display area and then replaced on any second position on said display area, said navigation can be continued from said second position (Carlson, page 253, fig. 14.15).

Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson ("Carlson", Carlson, Jeff. <u>Visual Quickstart Guide Palm Organizers</u>. Peachpit Press. 2000. Berkeley, CA.) in view of Haitani et al ("Haitani", US 5,900875) in view of Venolia et al ("Venolia", T-Cube: A Fast, Self-Disclosing Pen-Based Alphabet).

Application/Control Number: 10/315,250                          Page 14
Art Unit: 2174

15.     As per claim 14, the modified Carlson teaches the user interface according to

Claim 1, characterised in, that said user interface is adapted to a touch sensitive area

and that said user interface is adapted to be operated by one hand, where said object

can be a finger (page 12, *stylus...includes fingers*).

        However the modified Carlson does not teach expressly a touch sensitive area

with a size that is in the order of 2-3 inches.

        Strietelmeier teaches a user interface, characterised in, a touch sensitive area

with a size that is in the order of 2-3 inches (page 4).

        The modified Carlson and Strietelmeier are analogous art because they are in

the same field of endeavor, namely palm-sized computer organizers.

        At the time of the invention it would have been obvious to a person of ordinary

skill in the art to have the dimensions of a touch sensitive area as taught by

Strietelmeier within the user interface of the modified Carlson in order to provide a touch

sensitive area with the manufacturer's dimensions.

16.     As per claim 16, the modified Carlson teaches the enclosure according to claim

15.  However, the modified Carlson does not disclose the enclosure characterised in,

that said enclosure is removable and exchangeable.

        Strietelmeier teaches an enclosure characterised in, that said enclosure is

removable and exchangeable (page 3, *you can also remove the entire face plate...*

*there will be different face plates available*).

Application/Control Number: 10/315,250                                      Page 15
Art Unit: 2174

At the time of the invention it would have been obvious to a person of ordinary skill in the art to have the customizable enclosures as taught by Strietelmeier within the enclosure of the modified Carlson in order to tailor an enclosure to a user's preferences.

17.    Claim 18 is rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson ("Carlson", Carlson, Jeff. <u>Visual Quickstart Guide Palm Organizers</u>. Berkeley, CA: Peachpit Press, 2000) in view of Chew et al. ("Chew", US # 6,727,917), Haitani et al ("Haitani", US 5,900875), and Venolia et al ("Venolia", T-Cube: A Fast, Self-Disclosing Pen-Based Alphabet).

As per claim 18, the modified Carlson teaches a computer readable medium according to claim 17.

However the modified Carlson does not teach expressly, that said computer program product is adapted to function as a shell upon an operations system.

Chew teaches a user interface for a palm-sized computer device, characterised in, that said computer program product is adapted to function as a shell upon an operations system (column 2, lines 1-5).

The modified Carlson and Chew are analogous art because they are in the same field of endeavor, namely graphical user interfaces for hand-held personal computing devices with touch sensitive displays.

At the time of the invention it would have been obvious to a person of ordinary skill in the art to further modify the modified Carlson program to function as shell as taught by Chew in order to efficiently display information.

Application/Control Number: 10/315,250                                    Page 16
Art Unit: 2174

### Response to Arguments

Applicant's arguments with respect to claims 1-18 have been considered but are

moot in view of the new ground(s) of rejection.

### Conclusion

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Ryan F. Pitaro whose telephone number is 571-272-

4071. The examiner can normally be reached on 7:00am - 4:30pm Mondays through

Fridays.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Kristine Kincaid can be reached on 571-272-4063. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 10/315,250                     Page 17
Art Unit: 2174

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Ryan Pitaro                                    *Kristine Kincaid*
Patent Examiner
Art unit 2174                                  KRISTINE KINCAID
                                               SUPERVISORY PATENT EXAMINER
RFP                                            TECHNOLOGY CENTER 2100

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| **Notice of References Cited** | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit | |
| | Ryan F. Pitaro | 2174 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,900,875 A | 05-1999 | Haitani et al. | 715/840 |
| * | B | US-2002/0046353 A1 | 04-2002 | Kishimoto, Toyoaki | 713/202 |
| * | C | US-2002/0002326 | 01-2002 | Causey et al. | 600/300 |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | Venolia et al, "T-Cube: A Fast, Self-Disclosing Pen-Based Alphabet, April 24, 1994, Pages 265-270 |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                     Notice of References Cited                     Part of Paper No. 20070517

| *Search Notes* | | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|---|
| | | 10/315,250 | GOERTZ, MAGNUS |
| | | Examiner | Art Unit |
| | | Ryan F. Pitaro | 2174 |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| Update | Search | 5/16/2007 | RFP |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | | DATE | EXMR |
|---|---|---|---|
| Updated Search | | 5/17/2007 | RFP |
| Internet, IEEE | | 5/17/2007 | RFP |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Part of Paper No. 20070517

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit | |
| | Ryan F. Pitaro | 2174 | |

| √ | Rejected | – | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| Claim | | Date | Claim | | Date | Claim | | Date |
|---|---|---|---|---|---|---|---|---|
| Final | Original | 5/17/07 | Final | Original | | Final | Original | |
| | 1 | √ | | 51 | | | 101 | |
| | 2 | √ | | 52 | | | 102 | |
| | 3 | √ | | 53 | | | 103 | |
| | 4 | √ | | 54 | | | 104 | |
| | 5 | √ | | 55 | | | 105 | |
| | 6 | √ | | 56 | | | 106 | |
| | 7 | √ | | 57 | | | 107 | |
| | 8 | √ | | 58 | | | 108 | |
| | 9 | √ | | 59 | | | 109 | |
| | 10 | √ | | 60 | | | 110 | |
| | 11 | √ | | 61 | | | 111 | |
| | 12 | √ | | 62 | | | 112 | |
| | 13 | √ | | 63 | | | 113 | |
| | 14 | √ | | 64 | | | 114 | |
| | 15 | √ | | 65 | | | 115 | |
| | 16 | √ | | 66 | | | 116 | |
| | 17 | √ | | 67 | | | 117 | |
| | 18 | √ | | 68 | | | 118 | |
| | 19 | | | 69 | | | 119 | |
| | 20 | | | 70 | | | 120 | |
| | 21 | | | 71 | | | 121 | |
| | 22 | | | 72 | | | 122 | |
| | 23 | | | 73 | | | 123 | |
| | 24 | | | 74 | | | 124 | |
| | 25 | | | 75 | | | 125 | |
| | 26 | | | 76 | | | 126 | |
| | 27 | | | 77 | | | 127 | |
| | 28 | | | 78 | | | 128 | |
| | 29 | | | 79 | | | 129 | |
| | 30 | | | 80 | | | 130 | |
| | 31 | | | 81 | | | 131 | |
| | 32 | | | 82 | | | 132 | |
| | 33 | | | 83 | | | 133 | |
| | 34 | | | 84 | | | 134 | |
| | 35 | | | 85 | | | 135 | |
| | 36 | | | 86 | | | 136 | |
| | 37 | | | 87 | | | 137 | |
| | 38 | | | 88 | | | 138 | |
| | 39 | | | 89 | | | 139 | |
| | 40 | | | 90 | | | 140 | |
| | 41 | | | 91 | | | 141 | |
| | 42 | | | 92 | | | 142 | |
| | 43 | | | 93 | | | 143 | |
| | 44 | | | 94 | | | 144 | |
| | 45 | | | 95 | | | 145 | |
| | 46 | | | 96 | | | 146 | |
| | 47 | | | 97 | | | 147 | |
| | 48 | | | 98 | | | 148 | |
| | 49 | | | 99 | | | 149 | |
| | 50 | | | 100 | | | 150 | |

U.S. Patent and Trademark Office

Part of Paper No.  20070517



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 | 1226 |

23117     7590     03/20/2007
NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203

| EXAMINER |
|---|
| PURCELL, IAN M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2174 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/20/2007 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

PTOL-90A (Rev. 10/06)

| *Interview Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit | |
| | Ian M. Purcell | 2174 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Ian M. Purcell*.                          (3)*Robert A. Molan*.

(2) *Kristine Kincaid*.                          (4)_____.

Date of Interview: *13 March 2007*.

Type:   a)☐  Telephonic    b)☐  Video Conference
        c)☒  Personal [copy given to:  1)☐ applicant    2)☒ applicant's representative]

Exhibit shown or demonstration conducted:    d)☐ Yes    e)☒ No.
    If Yes, brief description: _____.

Claim(s) discussed: *Claim 1*.

Identification of prior art discussed: *Carlson*.

Agreement with respect to the claims f)☐ was reached.   g)☒ was not reached.   h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: *Discussed the proposed amendments to independent claim 1.  The examiner will provide possible amendments to the claim language in order to clarify the claimed invention*.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

*Kristine Kincaid*
**KRISTINE KINCAID**
**SUPERVISORY PATENT EXAMINER**
**TECHNOLOGY CENTER 2100**

Examiner Note:  You must sign this form unless it is an
Attachment to a signed Office action.                          Examiner's signature, if required

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

### Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews
Paragraph (b)
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

### 37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

_____

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
- Application Number (Series Code and Serial Number)
- Name of applicant
- Name of examiner
- Date of interview
- Type of interview (telephonic, video-conference, or personal)
- Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
- An indication whether or not an exhibit was shown or a demonstration conducted
- An identification of the specific prior art discussed
- An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
- The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of

GOERTZ                                         Atty. Ref.:  5042-2
                                               (Formerly 3682-32)

Serial No.:  10/315,250                        Group:  2174

Filed:  December 10, 2002                      Examiner:  Purcell, Ian M.

For:  USER INTERFACE


\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*


March 15, 2007

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450


## AMENDMENT AFTER FINAL REJECTION

Sir:

In response to the Final Office Action mailed November 15, 2006, please amend the

above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2

of this paper.

**Remarks/Arguments** begin on page 9 of this paper.


1182121



GOERTZ
Serial No.: 10/315,250

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the
application.

1. (Currently Amended)  A user interface for a mobile handheld computer unit, ~~where~~
~~said computer unit comprises~~ comprising:

a touch sensitive area, ~~which touch sensitive area is~~ that is simultaneously divided into a
menu area and a display area,

~~where said~~ the computer unit ~~is~~ being adapted to run several applications simultaneously,
and to present an active application on top of any other application on ~~said~~ the display area,
characterised in, that

~~said~~ the menu area ~~is~~ being adapted to ~~simultaneously~~ present a representations of ~~a first,~~
~~a second and a third predefined function, that said~~ a first function that is a general application
dependent function, ~~that said~~ a second function that is a keyboard function, ~~that said~~ and a third
function that is a task and file manager, and

~~that any one of said~~ each of the three functions simultaneously represented in the menu
area ~~can~~ being activated ~~when said~~ by the single step of an object moving in a direction from a
starting point that is the representation of the function in the menu area to the display area being
detected by the touch sensitive area, ~~detects a movement of an object moving  with its starting~~
~~point within the representation of said function on said menu area and with a direction from said~~
~~menu area to said display area, said user interface~~ thereby allowing low precision navigation of
the user interface using a blunt object, ~~whereby said~~ so that the user interface can be operated by

- 2 -

GOERTZ
Serial No.: 10/315,250

one hand, where ~~said~~ the blunt object ~~can be~~ is a finger.

2.  (Previously Presented)  The user interface according to Claim 1, characterized in, that, if said first function is activated, said display area is adapted to display icons representing different services or settings depending on the current active application, that one of said icons always represents a "help"-service, regardless of application, and that, if no application is currently active on said computer unit, said icons are adapted to represent services or settings of the operations system of said computer unit.

3.  (Previously Presented)  The user interface according to Claim 2, characterised in, that ~~that~~ a selection of a preferred service or setting is done by tapping on corresponding icon.

4.  (Previously Presented)  The user interface according to Claim 1, characterised in,

- that, if said second function is activated, said display area is adapted to display a keyboard and a text field,

- that, if a text passage in said active application is highlighted, said text passage is displayed in said text field for editing through said keyboard and that said highlighted text passage is replaced by said edited text passage when said second function is deactivated, and

- that if no text passage in said active application is highlighted, said text field is available for inputting and editing of text through said keyboard.

- 3 -

GOERTZ
Serial No.: 10/315,250

5. (Previously Presented) The user interface according to Claim 4, characterised in, that if no text passage in said active application is highlighted, said text field is used for inputting and editing of text through said keyboard, then

- said first function can be activated, or

- said second function can be closed, in which a choice of saving or deleting said inputted text is given, where the choice of saving said inputted text results in an activation of said first function,

in which said first function will present services or settings available for said inputted text.

6. (Previously Presented)  The user interface according to Claim 1, characterised in, that, if said third function is activated, said display area is adapted to display a list with a library of available applications and files on said computer unit, that a selection of an application will start said application, and that a selection of a file will open said file in an application intended for said file.

7. (Previously Presented)  The user interface according to Claim 6, characterised in, that a selection of an application or a file is done by moving said object so that the representation of desired application or file is highlighted, removing said object from said touch sensitive area, and then tapping on said touch sensitive area, and that an application or file is highlighted by placing some kind of marking on the representation of said application or file.

- 4 -

GOERTZ
Serial No.: 10/315,250

8. (Previously Presented)  The user interface according to Claim 7, characterised in, that said list is adapted to present only said files or only said applications, that the top area of said list presents a field through which the content of said list can be altered, that, if said list only presents files, said field displays a representation of a task manager and a selection of said field will cause said list to alter to present only applications, and that, if said list only presents applications, said field displays a representation of a file manager and a selection of said field will cause said list to alter and present only files.

9. (Previously Presented)  The user interface according to Claim 7, characterised in, that, a navigation in said list is performed by moving said object in a direction towards the top of said list or towards the bottom of said list, that the movement of said object will cause said marking to move in the same direction, and that the speed of the movement of said marking is lower than the speed of the movement of said object.

10. (Previously Presented)  The user interface according to Claim 9, characterised in, that, if the number of applications and/or files in said list exceeds the number of applications and files that can be presented on said display area, and if said object is moved to the top or bottom position of said display area, then lifted, replaced on said display area, and again moved to the top or bottom of said display area, the content of said display area will be replaced one whole page, meaning that if said object is positioned at the bottom of said display area, then lifted,

- 5 -

GOERTZ
Serial No.: 10/315,250

replaced on said display area, and then again moved to the bottom of said display area, the

content of said display area will be replaced by the following applications and/or files in said list,

and if said object is positioned at the top of said display area, then lifted, replaced on said display

area, and then again moved to the top of said display area, the content of said display area will be

replaced by the preceding applications and/or files in said list.

11.  (Previously Presented)  The user interface according to Claim 10, characterised in,

that if said object is removed from any first position on said display area and then replaced on

any second position on said display area, said navigation can be continued from said second

position.

12.  (Previously Presented)  The user interface according to Claim 1, characterised in,

that an active application, function, service or setting is moved on one step by moving said object

from the left of said display area to the right of said display area, and that the active application,

function, service or setting is closed or backed one step by moving said object from the right of

said display area to the left of said display area.

13.  (Previously Presented)  The user interface according to Claim 1, characterised in,

that said menu area is positioned at the bottom of said touch sensitive area, that said

representation of said first function is positioned at the left side of said menu area, that said

- 6 -

GOERTZ
Serial No.: 10/315,250

representation of said second function is positioned at the middle of said menu area, and that said representation of said third function is positioned at the right side of said menu area.

14. (Previously Presented)  The user interface according to Claim 1, characterised in, that said user interface is adapted to a touch sensitive area with a size that is in the order of 2-3 inches, and that said user interface is adapted to be operated by one hand, where said object can be a finger.

15. (Previously Presented)  An enclosure adapted to cover a computer unit, said computer unit being adapted to present a user interface according to Claim 1, characterised in, that said enclosure is provided with an opening for said display area, and that a representation of said menu area is printed on top of said enclosure.

16. (Previously Presented)  The enclosure according to Claim 15, characterised in, that said enclosure is removable and exchangeable.

17. (Original)  A computer readable medium, with a computer program product stored therein, characterised in, that said computer program product comprises computer readable code, which, when read by a computer, will make it possible for said computer to present a user interface according to Claim 1.

1182121

GOERTZ
Serial No.: 10/315,250

18. (Original) A computer readable medium according to Claim 17, characterised in, that said computer program product is adapted to function as a shell upon an operations system.

1182121

GOERTZ
Serial No.: 10/315,250

## REMARKS

Reconsideration of this application is respectfully requested. To this end, petition is hereby made for a one month extension of time to respond to the Final Office Action mailed November 15, 2006. In addition, a Request for Continued Examination is being filed with this Amendment After Final Rejection.

The Examiner and his Supervisory Primary Examiner, Kristine Kincaid, are thanked for allowing the undersigned to interview this application on March 13, 2007. The remarks in this Amendment, in essence, constitute the substance of the interview.

Claims 1-18 are pending in the application. Upon entry of this Amendment, independent claim 1 will be amended.

In the outstanding Final Office Action of November 15, 2006, the Examiner again rejected claims 1, 4-7, 12, 15 and 17 under 35 U.S.C. §102(b) as being anticipated by Carlson (Carlson, Jeff, *Visual Quickstart Guide Palm Organizers,* Peachpit Press, 2000, Berkeley, CA; hereinafter "Carlson"). The Examiner further rejected, as being unpatentable under 35 U.S.C. §103(a), claims 2 and 3 over Carlson in view of Kopitzke (USP 6,988,246; hereinafter "Kopitzke"); claims 8-11 and 13 over Carlson in view of Wynn et al. (USP 6,734883; hereinafter Wynn); claim 13 over Carlson alone; claims 14 and 16 over Carlson in view of Strietelmeier (Strietelmeier, Julie, *Palm* m100, The Gadgeteer, 2000, http://www.the-gadgeteer.com/review/palm_m100_review; hereinafter Strietelmeier); and claim 18 over Carlson in view of Chew et al. (USP 6,727, 917; hereinafter Chew). The Examiner's rejections are again respectfully traversed.

- 9 -

GOERTZ
Serial No.: 10/315,250

For a claimed invention to be anticipated by a prior art reference, every element of the claim must be disclosed in the reference. For a claimed invention to be obvious over a combination of prior art references, there must be some suggestion, motivation or teaching in the prior art that would have led one of ordinary skill in the art to combine the references to produce the claimed invention. *E.g., Ashland Oil, Inc. v. Delta Resins & Refracs.,* 776 F.2d 281, 293 (Fed. Cir. 1985). Here, the claimed invention of the present application is neither anticipated nor obvious over the cited references because such references do not disclose or suggest all of the limitations of the claimed invention. Even assuming, *arguendo*, that the Examiner properly combined the cited references, the resulting combination still would not be the claimed invention given the deficiencies noted below in the primary Carlson reference.

Amended independent claim 1 describes a user interface for a hand held computer unit that includes a touch sensitive area simultaneously divided into a menu area and a display area, with the menu area simultaneously presenting a first function that is a general application dependent function, a second function that is a keyboard function, and a third function that is a task and file manager. Amended independent claim 1 has been amended to clarify that each of the three functions simultaneously represented in the menu area are activated by the touch sensitive area detecting the single step of an object moving in a direction from a starting point that is the representation of the function in the menu area to the display area. This single step function launching movement is not described in the primary Carlson reference.

The Examiner is thanked for discussing with the undersigned in connection with the Interview mentioned above the clarification of claim 1 by reciting a single step function

- 10 -

GOERTZ
Serial No.: 10/315,250

launching movement and noting that the recitation of this single step in claim 1 would likely

overcome the cited primary Carlson reference.

The user interface described in claim 1 of the present application is designed to be used

with a user's hand and fingers, rather than any tools, such as the stylus used with a Palm Pilot.

This user interface is designed to be navigated with a finger, and preferably using only one hand,

holding the device with that hand and navigating with a user's finger. This allows the launching

of the functions described in claim 1 with a finger, through the recognition of the finger's

movement across a touch sensitive area in a direction from a starting point that is the

representation of the function in the menu area to the display area. Claim 1 has been amended to

better describe this single step function launching movement.

The Palm Pilot device described in the cited Carlson reference is, in contrast, designed to

navigate on small icons and buttons with a relatively sharp tip from a stylus or pen. The Carlson

reference purports to be a guide to Palm organizers. The Examiner looks to pages 30 and 40 of

the Carlson reference as purporting to show the single step function launching movement recited

in claim 1 and discussed above. In particular, the Examiner looks to Figure 2.22, on page 40 of

Carlson, and the excerpt from page 30, titled "To activate the keyboard". In this excerpt from

page 30, Carlson teaches that there are four ways of accessing the Palm Pilot keyboard function,

one of which includes "drag[ing] the stylus vertically across the screen from bottom to top." The

stylus is purported to be shown in Figure 2.22, page 40, of Carlson. However, alongside the

representation of the stylus in this Figure is a menu including several entries, one of which is the

keyboard function, and another of which, *i.e.*, the "backlight" function, appears to be highlighted.

- 11 -

1182121

GOERTZ
Serial No.: 10/315,250

There are several reasons why the disclosure on pages 30 and 40 of Carlson do not show the function launching feature recited in claim 1 of the present application. First, claim 1 describes three broad based functions using the function launching features described in claim 1, to wit, a first general application-dependent function, a second keyboard function, and a third task and file manager function. The scope of these functions can be appreciated by the embodiment of the invention described in the specification of the present application and, in particular, the examples of these three functions shown in Figures 3, 5 and 6, respectively, of the present application. This is in sharp contrast to the limited keyboard function described in the Carlson reference with respect to the dragging of the stylus across the screen from to top on page 30 of Carlson.

Second, it is clear from page 40 of Carlson that what is described in Figure 2.22 is a two-step sequence in which a function is highlighted before the stylus is dragged. The grouping of possibilities shown to the right of the stylus in Figure 2.22 includes the keyboard function. This is in contrast to the single step function-launching movement described in claim 1, where a function is launched by the single step of an object, such as a finger, moving from a function icon in the menu area to the display area. It is this simple function-launching movement that allows the user interface and computer unit described in claim 1 to be operated by a single hand and finger.

Finally, even in describing the step of dragging a stylus vertically across a screen from bottom to top to activate a keyboard function, there is nothing in Carlson which teaches placing the stylus in the first instance on an icon describing or corresponding to the keyboard function

- 12 -

GOERTZ
Serial No.: 10/315,250

and moving the stylus, or some other object, from that keyboard icon across the screen. Indeed, Figure 2.22 shows the pen-dragging function from the writing area to the top of the screen with the pen or stylus beginning at a location that is <u>not</u> a selected feature, such as those shown in Figure 2.22 that include the keyboard function.

Independent claim 17 describes a computer readable medium, with a computer program product stored therein that makes it possible for a computer to present a user interface according to Claim 1. Independent claims 1 and 17, and thus dependent claims 4-7, 12, and 15, which depend either directly or indirectly from claim 1, are not anticipated by Carlson because Carlson does not disclose the foregoing function launching feature described in amended claim 1.

Independent claims 1 and 17, and dependent claims 4-7, 12, and 15, are also not anticipated by Carlson because Carlson also does not disclose the recited first, second and third predefined functions simultaneously represented in the menu area, much less activating any one of these three functions by moving an object from a starting point that is within the representation of the function in the menu area in a direction from the menu area to the display area, as discussed above.

Claim 1 describes the first function as a general application dependent function which, in the embodiment of the invention described in the application, are services or functions dependent upon a current active application. One of the services is described as a help service, regardless of the application. Others are described as "save to disk", "send as SMS", or "delete", or settings such as "resolution", "colour", or "brightness". If no application is active, the services or settings

- 13 -

1182121

GOERTZ
Serial No.: 10/315,250

can be of the operations system, such as background picture, clock, alarm, users, help, etc. *See, e.g.,* Application, pages 5-6.

The Examiner looks to page 28 of Carlson and a "menu" icon shown in Figure 2.4 on page 28 of Carlson as meeting the first function feature recited in claim 1; however, what page 28 of Carlson shows is instructions for accessing menus in applications.

Claim 1 also describes the second function as a keyboard function. The Examiner looks to page 30 of Carlson as showing the keyboard function. Page 30 of Carlson does describe an "onscreen keyboard".

Claim 1 describes the third function as a task and file manager. The Examiner looks to page 47 of Carlson, and particularly the applications screen in Figure 2.35 of Carlson as meeting this function. In the embodiment of the invention described in the present application, the third function is described as displaying a list with a library of available applications and files on the computer unit. *See, e.g.*, Application, page. 7.

Assuming, *arguendo,* that the selected portions of Carlson show functions generally corresponding to the functions described in claim 1, because Carlson shows <u>multiple screens</u> for the menu shown on page 28, the keyboard shown on page 30, and the applications shown on page 47, Carlson also does <u>not</u> disclose a menu area <u>simultaneously</u> presenting a representation of the first, second and third predefined functions recited in claim 1. In view of the foregoing, clearly, Carlson does not anticipate independent claims 1 and 17 or dependent claims 4-7, 12, and 15.

- 14 -

1182121

GOERTZ
Serial No.: 10/315,250

Finally, because Carlson does not anticipate the claimed invention as recited in
independent claims 1 and 17 (which references claim 1), given the deficiencies noted above in
the teachings of the primary Carlson reference, the remaining claims rejected in the outstanding
Office Action under §103(a), *i.e.,* claims 2, 3, 8-11, 13, 14, 16 and 18, which depend either
directly or indirectly from claim 1 or claim 17, are also not obvious over Carlson alone or in
combination with the other references cited by the Examiner.

In view of the foregoing, it is believed that all of the claims pending in the application,
*i.e.*, claims 1 – 18, are now in condition for allowance, which action is earnestly solicited. If any
issues remain in this application, the Examiner is urged to contact the undersigned at the
telephone number listed below.

The Commissioner is hereby authorized to charge any <u>deficiency</u>, or credit any
overpayment, in the fee(s) filed, or asserted to be filed, or which should have been filed herewith
(or with any paper hereafter filed in this application by this firm) to our Account No. 14-1140.

Respectfully submitted,

**NIXON & VANDERHYE P.C.**

By: Robert A. Molan
Robert A. Molan
Reg. No. 29,834

RAM:jsm

901 North Glebe Road, 11th Floor
Arlington, VA  22203
Telephone:  (703) 816-4000
Facsimile:  (703) 816-4100

1182121

Modified PTO/SB/30 (09-04)
Approved for use through 10/31/2002, OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **REQUEST** **FOR** **CONTINUED EXAMINATION (RCE) TRANSMITTAL** <br><br>Address to:<br>Mail Stop RCE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | | |
|---|---|---|
| | *Application Number* | 10/315,250 |
| | *Filing Date* | December 10, 2002 |
| | *First Named Inventor* | GOERTZ |
| | *Group Art Unit* | 2174; Conf. 1226 |
| | *Examiner Name* | Purcell, Ian M. |
| | *Attorney Docket Number* | 5042-2 (formerly 3682-32) |



This is a Request for Continued Examination (RCE) under 37 C.F.R. §1.114 of the above-identified application.
Request for continued Examination (RCE) practice under 37 C.F.R. § 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application.  See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. Submission required under 37 C.F.R. § 1.114.

   a. ☐ Previously submitted  (Note: Any previously filed unentered amendments will be entered unless applicant instructs otherwise.  If applicant does not wish to have previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

      i.  ☐ Consider the amendment(s)/reply under 37 C.F.R. § 1.116 previously filed on _____

      ii. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

      iii. ☐ Other _____

   b. ☒ Enclosed

      i.  ☒ **Amendment After Final Rejection**

      ii. ☐ Affidavit(s)/Declaration(s)

      iii. ☐ Information Disclosure Statement (IDS)

      iv. ☐ Other _____

*03/16/2007 MBERHE   00000053 10315250*
*01 FC:2801*
*395.00 OP*

2. Miscellaneous

   a. ☐ Suspension of action on the above-identified application is requested under 35 C.F.R. § 1.103(c) for a period of _____ months.  (Period of suspension shall not exceed 3 months; Fee under 37 C.F.R. § 1.17(i) required)

   b. ☐ Other _____

3. Fees The RCE fee under 37 C.F.R. § 1.17(e) is required by 37 C.F.R. § 1.114 when the RCE is filed.

   a. ☒ Applicant claims "small entity" status.

   b. ☒ Fees are attached as calculated below:

      i.  ☒ RCE fee required under 37 C.F.R. § 1.17(e)    $790.00 (1801)/$395.00 (2801)  $  395.00

      ii. ☒ Petition is made to extend the due date 1 months (less 0 months previously paid)  $   60.00

      iii. ☐ Other _____  $

   c. ☒ Check in the amount of $  455.00  enclosed.

   d. ☐ Payment by credit card (credit card payment form attached) in the amount of $ 0.00

   e. ☒ The Director is hereby authorized to charge any deficiency in the fee(s) filed or which should have been filed herewith (or with any paper hereafter filed in this application by this firm), to Deposit Account No. **14-1140**

---

**SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED**

| *Name (Print Type)* | Robert A. Molan | *Registration No. (Attorney/Agent)* | 29,834 |
|---|---|---|---|
| *Signature* | *Robert A. Molan* | *Date* | March 15, 2007 |

---

**CERTIFICATE OF MAILING OR TRANSMISSION**

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Mail Stop RCE, Commissioner For Patents, P.O. Box 1450, Alexandria, VA  22313-1450, or facsimile transmitted to the U.S. Patent and Trademark Office on:  *03/16/2007 MBERHE   00000053 10315250*

| *Name (Print Type)* | | *02 FC:2251* | *60.00 OP* |
|---|---|---|---|
| *Signature* | | *Date* | |

Burden Hour Statement:  This form is estimated to take 0.2 hours to complete.  Time will vary depending upon the needs of the individual case.  Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  SEND TO: Mail Stop RCE, **Commissioner for Patents, Box RCE, P.O. Box 1450, Alexandria, VA  22313-1450,**

Case 6:20-cv-00957-ADA Document 91-7 Filed 05/10/23 Page 640 of 745

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 2001

Application or Docket Number: 10315250

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 18 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 18 minus 20= | * |
| INDEPENDENT CLAIMS | minus 3 = | * |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

\* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | OR | RATE | FEE |
| BASIC FEE | 370.00 | OR | BASIC FEE | 740.00 |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL | | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

### AMENDMENT A

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 18 | Minus | ** 20 | * |
| Independent | | Minus | *** 3 | * |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

315-07

### AMENDMENT B

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 18 | Minus | ** 20 | = |
| Independent | | Minus | *** 3 | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT C

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | | Minus | ** | = |
| Independent | | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875 (Rev. 8/01)    ☆ U.S. GPO: 2001 482-124 / 59145    Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

 

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 | 1226 |

23117      7590      11/15/2006

NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA  22203

| EXAMINER |
|---|
| PURCELL, IAN M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2174 | |

DATE MAILED: 11/15/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit | |
| | Ian M. Purcell | 2174 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS,
WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
  earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒  Responsive to communication(s) filed on <u>22 August 2006</u>.

2a)☒  This action is **FINAL**.          2b)☐  This action is non-final.

3)☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒  Claim(s) *1-18* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐  Claim(s) _____ is/are allowed.

6)☒  Claim(s) *1-18* is/are rejected.

7)☐  Claim(s) _____ is/are objected to.

8)☐  Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐  The specification is objected to by the Examiner.

10)☐  The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐  The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐  Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

       1.☐  Certified copies of the priority documents have been received.

       2.☐  Certified copies of the priority documents have been received in Application No. _____.

       3.☐  Copies of the certified copies of the priority documents have been received in this National Stage
application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____ .

## DETAILED ACTION

1.      This communication is responsive to the Amendment filed 8/22/2006.

Claims 1-18 are pending in this application.  Claims 1, 15 and 17 are

independent claims.  In the Amendment the Specification and the Claims were

amended.  Claims 1-16 were amended.

The text of those sections of Title 35, U.S. Code not included in this action can

be found in a prior Office action.

### *Claim Rejections - 35 USC § 102*

2.      Claims 1, 4-7, 12, 15 and 17 are rejected under 35 U.S.C. 102(b) as being

anticipated by Carlson ("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm

Organizers. Peachpit Press. 2000.  Berkeley, CA.).

3.      As per claim 1, Carlson teaches a user interface for a mobile handheld computer

unit (Introduction, page xiii), where said computer unit comprises a touch sensitive area

(page 26, *the screen is touch sensitive*), which touch sensitive area is divided into a

menu area (page 12, fig. 1.10 *silk screen graffiti area*) and a display area, where said

computer unit is adapted to run several applications simultaneously (page 47, *all of the*

*applications are running concurrently*), and to present an active application on top of

any other application on said display area, characterised in, that said menu area is

adapted to present a representation of a first, a second and a third predefined function,

that said first function is a general application dependent function (page 28, *the Menu*

*icon,* fig. 2.4), that said second function is a keyboard function (page 30, *either the abc*

*or 123 dots in the lower corner of the Graffiti area*), that said third function is a task and

file manager (page 47, *the Applications screen* & fig. 2.35), and that any one of said

three functions can be activated when said touch sensitive area detects a movement of

an object with its starting point within the representation of said function on said menu

area and with a direction from said menu area to said display area (page 40, *bottom-to-*

*top screen stroke shortcut* fig. 2.22 & page 30, *drag the stylus vertically across the*

*screen from bottom to top*), said user interface allowing low precision navigation using a

blunt object, whereby said user interface can be operated by one hand (page 12, "*The*

*stylus is the main method of interacting with the PalmPilot" and it inherently involves*

*one hand to use the stylus.* Also, if a finger was used, that would also be considered

using one hand), where said object can be a finger (page 12, "*The stylus is the main*

*method of interacting*" **though** anything including fingers **can** work).

4.      As per claim 4, Carlson teaches the user interface according to claim 1,

characterised in,

        that, if said second function is activated, said display area is adapted to display a

keyboard and a text field,

        that, if a text passage in said active application is highlighted, said text passage

is displayed in said text field for editing through said keyboard and that said highlighted

text passage is replaced by said edited text passage when said second function is

deactivated, and

Application/Control Number: 10/315,250                                           Page 4
Art Unit: 2174

that, if no text passage in said active application is highlighted, said text field is

available for inputting and editing of text through said keyboard (page 30, fig 2.7).

5.     As per claim 5, Carlson teaches the user interface according to claim 4,

characterized in, that if no text passage in said active application is highlighted, and said

text field is used for inputting and editing of text through said keyboard (page 30, fig

2.7), then

said first function can be activated, or

said second function can be closed, in which a choice of saving or deleting said

inputted text is given, where the choice of saving said inputted text results in an

activation of said first function,

in which said first function will present services or settings available for said

inputted text (page 28, fig. 2.4 *Beam Memo*).

6.     As per claim 6, Carlson teaches the user interface according to claim 1,

characterised in, that, if said third function is activated, said display area is adapted to

display a list with a library of available applications and files on said computer unit, that

a selection of an application will start said application, and that a selection of a file will

open said file in an application intended for said file (page 47, fig. 2.35).

7.     As per claim 7, Carlson teaches the user interface according to claim 6,

characterised in, that a selection of an application or a file is done by moving said object

so that the representation of desired application or file is highlighted, removing said

object from said touch sensitive area, and then tapping on said touch sensitive area,

and that an application or file is highlighted by placing some kind of marking on the representation of said application or file (pages 26 & 27).

8.      As per claim 12, Carlson teaches the user interface according to Claim 1, characterised in, that an active application, function, service or setting is moved on one step by moving said object from the left of said display area to the right of said display area, and that the active application, function service or setting is closed or backed one step by moving said object from the right of said display area to the left of said display area (page 246, fig. 14.2, *Drag to scroll through file*).

9.      As per claim 15, Carlson teaches an enclosure adapted to cover a computer unit, said computer unit being adapted to present a user interface according Claim 1, characterised in, that said enclosure is provided with an opening for said display area, and that a representation of said menu area is printed on top of said enclosure (page 12, *Silkscreen Graffiti area* & fig. 1.10).

10.     As per claim 17, Carlson teaches a computer readable medium, with a computer program product stored therein, characterised in, that said computer program product comprises computer readable code, which, when read by a computer, will make it possible for said computer to present a user interface according to Claim 1 (page 25, *Palm OS*).

Application/Control Number: 10/315,250                                    Page 6
Art Unit: 2174

### *Claim Rejections - 35 USC § 103*

11.     Claims 2 and 3 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Carlson ("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm Organizers. Peachpit

Press. 2000.  Berkeley, CA.) in view of Kopitzke et al. ("Kopitzke", US # 6,988,246 B2).

12.     As per claim 2, Carlson teaches the user interface according to claim 1,

characterized in, that, if said first function is activated, said display area is adapted to

display icons representing different services or settings depending on the current active

application (page 28, *the Menu icon*, fig. 2.4), and that, if no application is currently

active on said computer unit, said icons are adapted to represent services or settings of

the operations system of said computer unit (page 47, fig. 2.36, *12:11 am*).

        However Carlson does not teach expressly the user interface according to claim

1, characterized in, that, if said first function is activated, said display area is adapted to

display icons representing different services or settings depending on the current active

application, that one of said icons always represents a "help"-service, regardless of

application.

        Kopitzke teaches the user interface according to claim 1, characterised in, that

said display area is adapted to display icons representing different services or settings

depending on the current active application, that one of said icons always represents a

"help"-service, regardless of application (column 4, lines 36-53 & fig. 1, *Help key or

button* 6).

        Carlson and Kopitzke are analogous art because they are in the same field of

endeavor, namely graphical user interfaces with touch sensitive displays.

At the time of the invention it would have been obvious to a person of ordinary skill in the art to provide the help function as taught by Kopitzke within the user interface of Carlson in order to provide context sensitive information.

As per claim 3, the modified Carlson teaches the user interface according to claim 2, characterised in, that a selection of a preferred service or setting is done by tapping on corresponding icon (Carlson, page 26, fig. 2.1*Tapping just about any interface element in the Palm OS evokes a response*).

13.     Claims 8-11 and 13 is rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson ("Carlson", Carlson, Jeff. Visual Quickstart Guide Palm Organizers. Peachpit Press. 2000. Berkeley, CA.) in view of Wynn et al. ("Wynn", US # 6,734,883 B1).

14.     As per claim 8, Carlson teaches the user interface according to claim 7. However Carlson does not teach expressly the user interface, characterised in, that said list is adapted to present only said files or only said applications, that the top area of said list presents a field through which the content of said list can be altered, that, if said list only presents files, said field displays a representation of a task manager and a selection of said field will cause said list to alter to present only applications, and that, if said list only presents applications, said field displays a representation of a file manager and a selection of said field will cause said list to alter and present only files.

Wynn teaches a user interface control, characterised in, that said list is adapted to present only said files or only said applications, that the top area of said list presents a field through which the content of said list can be altered (column 3, lines 4-8, *dialog*

*box* 32), that, if said list only presents files, said field displays a representation of a task

manager and a selection of said field will cause said list to alter to present only

applications, and that, if said list only presents applications, said field displays a

representation (column 3, lines 4-8, *label* 31) of a file manager and a selection of said

field will cause said list to alter and present only files (column 3, lines 15-31).

Carlson and Wynn are analogous art because they are in the same field of

endeavor, namely scrolling within graphical user interfaces with touch sensitive

displays.

At the time of the invention it would have been obvious to a person of ordinary

skill in the art to have the selection list format as taught by Wynn within the user

interface of Carlson in order to provide a conventional list format.

15.     As per claim 9, Carlson teaches the user interface according to claim 7,

characterised in, that, a navigation in said list is performed by moving said object in a

direction towards the top of said list or towards the bottom of said list, that the

movement of said object will cause said marking to move in the same direction (page

27, *a quicker way to view the full list is to tap and hold on the dark solid portion of the*

*scroll bar, then drag it vertically*).

However Carlson does not teach expressly that the speed of the movement of

said marking is lower than the speed of the movement of said object.

Wynn teaches a user interface control, characterised in, that, a navigation in said

list is performed by moving said object in a direction towards the top of said list or

towards the bottom of said list, that the movement of said object will cause said marking

to move in the same direction (column 3, lines 32-39 & figs. 5) and that the speed of the movement of said marking is lower than the speed of the movement of said object (column 4, lines 24-30).

At the time of the invention it would have been obvious to a person of ordinary skill in the art to have the scrolling function as taught by Wynn within the user interface of Carlson in order to provide a conventional selection list.

16.     As per claim 10, the modified Carlson in view of Wynn teaches the user interface according to claim 9, characterised in, that, if the number of applications and/or files in said list exceeds the number of applications and files that can be presented on said display area, and if said object is moved to the top or bottom position of said display area, then lifted, replaced on said display area, and again moved to the top or bottom of said display area, the content of said display area will be replaced one whole page, meaning that if said object is positioned at the top of said display area, then lifted, replaced on said display area, and then again moved to the top of said display area, the content of said display area will be replaced by the preceding applications and/or files in said list (Carlson, page 253, fig. 14.15 *Full Page Up*).

The modified Carlson in view of Wynn does not disclose expressly the user interface, characterised in that if said object is positioned at the bottom of said display area, then lifted, replaced on said display area, and then again moved to the bottom of said display area, the content of said display area will be replaced by the following applications and/or files in said list.

At the time of the invention, it would have been an obvious matter of design
choice to a person of ordinary skill in the art to modify the *Full Page Up* function
(Carlson, page 253, fig 14.15) to work as a Full Page Down function by tapping on the
bottom of the display area because Applicant has not disclosed that *if said object is
positioned at the bottom of said display area, then lifted, replaced on said display area,
and then again moved to the bottom of said display area, the content of said display
area will be replaced by the following applications and/or files in said list* provides an
advantage, is used for a particular purpose, or solves a stated problem. One of ordinary
skill in the art, furthermore, would have expected Applicant's invention to perform
equally well with the modified Full Page Up function as taught by Carlson because it
would only need to be implemented to scroll down instead of up, when the display area
is tapped on the bottom, instead of the top.

17.     As per claim 11, the modified Carlson in view of Wynn teaches the user interface
according to claim 10, characterised in, that if said object is removed from any first
position on said display area and then replaced on any second position on said display
area, said navigation can be continued from said second position (Carlson, page 253,
fig. 14.15).

        Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson
("Carlson", Carlson, Jeff. Visual Quickstart Guide Palm Organizers. Peachpit Press.
2000. Berkeley, CA.)

18.     As per claim 13, Carlson teaches the user interface according to Claim 1,
characterised in, that said menu area is positioned at the bottom of said touch sensitive

Application/Control Number: 10/315,250                                            Page 11
Art Unit: 2174

area, that said representation of said first function is positioned at the left side of said

menu area, and that said representation of said second function is positioned at the

middle of said menu area.

      Carlson does not teach expressly that said representation of said third function is

positioned at the right side of said menu area.

      At the time the invention was made, it would have been an obvious matter of

design choice to a person of ordinary skill in the art to place the third function on the

right side of the display area instead of the left, because Applicant has not disclosed

that *said representation of said third function is positioned at the right side of said menu*

*area* provides an advantage, is used for a particular purpose or solves a stated problem.

One of ordinary skill in the art, furthermore would have expected Applicant's invention to

perform equally well with the third function on the left side of the display area because

the placement of the representation would not change its functionality.

19.    Claims 14 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Carlson ("Carlson", Carlson, Jeff. <u>Visual Quickstart Guide Palm Organizers</u>.

Berkeley, CA: Peachpit Press, 2000) in view of Strietelmeier ("Strietelmeier",

Strietelmeier, Julie. "Palm m100." <u>The Gadgeteer</u>. 2000.

<http://www.the-gadgeteer.com/review/palm_m100_review>).

20.    As per claim 14, Carlson teaches the user interface according to Claim 1,

characterised in, that said user interface is adapted to a touch sensitive area and that

said user interface is adapted to be operated by one hand, where said object can be a

finger (page 12, *stylus...includes fingers*).

Application/Control Number: 10/315,250                                    Page 12
Art Unit: 2174

However Carlson does not teach expressly a touch sensitive area with a size that
is in the order of 2-3 inches.

Strietelmeier teaches a user interface, characterised in, a touch sensitive area
with a size that is in the order of 2-3 inches (page 4).

Carlson and Strietelmeier are analogous art because they are in the same field of
endeavor, namely palm-sized computer organizers.

At the time of the invention it would have been obvious to a person of ordinary
skill in the art to have the dimensions of a touch sensitive area as taught by
Strietelmeier within the user interface of Carlson in order to provide a touch sensitive
area with the manufacturer's dimensions.

21.    As per claim 16, Carlson teaches the enclosure according to claim 15.  However,
Carlson does not disclose the enclosure characterised in, that said enclosure is
removable and exchangeable.

Strietelmeier teaches an enclosure characterised in, that said enclosure is
removable and exchangeable (page 3, *you can also remove the entire face plate...
there will be different face plates available*).

At the time of the invention it would have been obvious to a person of ordinary
skill in the art to have the customizable enclosures as taught by Strietelmeier within the
enclosure of Carlson in order to tailor an enclosure to a user's preferences.

22.    Claim 18 is rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson
("Carlson", Carlson, Jeff. Visual Quickstart Guide Palm Organizers. Berkeley, CA:
Peachpit Press, 2000) in view of Chew et al. ("Chew", US # 6,727,917).

Application/Control Number: 10/315,250                                    Page 13
Art Unit: 2174

As per claim 18, Carlson teaches a computer readable medium according to claim 17.

However Carlson does not teach expressly, that said computer program product is adapted to function as a shell upon an operations system.

Chew teaches a user interface for a palm-sized computer device, characterised in, that said computer program product is adapted to function as a shell upon an operations system (column 2, lines 1-5).

Carlson and Chew are analogous art because they are in the same field of endeavor, namely graphical user interfaces for hand-held personal computing devices with touch sensitive displays.

At the time of the invention it would have been obvious to a person of ordinary skill in the art to modify the Carlson's program to function as shell as taught by Chew in order to efficiently display information.

### *Response to Arguments*

23.    Applicant's arguments with respect to claims 2, 4, 6-8, 10, 12, 14-16, 18, 20, 22-24 in the Amendment have been fully considered but they are not persuasive.

Applicant argued the following:

(a) Carlson does not teach using a blunt object, whereby the user can operate the interface with one hand, where said object can be a finger.

(b) Carlson does not disclose the recited first, second, and third predefined functions represented in a menu area, or activating anyone one of these three functions

Application/Control Number: 10/315,250                                      Page 14
Art Unit: 2174

by moving an object from a starting point within the representation of the function on the

menu in a direction from the menu area to the display area.


The Examiner disagrees for the following reasons:

Per (a),  The stylus is the main method of interacting, however anything including

fingers can work (page 12).  It is simply an allegation that Carlson is portraying the use

of a finger in "a somewhat joking way".  It is more likely that Carlson is portraying the

use of a toe in "a somewhat joking way".  However, joking or not, Carlson teaches the

use of a finger or a toe as said object.  Furthermore, Carlson states on page 26, "three

basic methods of interacting within the Palm ... depend on the stylus." As disclosed

earlier, Carlson teaches that a finger can work as the stylus (page 12, *Stylus*).

Moreover, the basic methods of interacting depend on the stylus, does not imply that all

methods of interacting depend on the stylus.

Per (b), during patent examination, the pending claims must be "given >their<

broadest reasonable interpretation consistent with the specification." > In re Hyatt, 211

F.3d 1367, 1372, 54 USPQ2d 1664, 1667 (Fed. Cir. 2000).  Despite the claims being

interpreted in light of the specification, limitations from the specification are not being

read into the claims. See In re Van Geuns, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir.

1993).

Applicant always has the opportunity to amend the claims during prosecution, and

broad interpretation by the examiner reduces the possibility that the claim, once issued,

will be interpreted more broadly than is justified. In re Prater, 415 F.2d 1393, 1404-05,
162 USPQ 541, 550-51 (CCPA 1969).

In this case, Carlson teaches the recited first (page 28, the *Menu icon*, fig. 2.4),
second (page 30, *either the abc or 123 dots in the lower corner of the Graffiti area*) and
third predefined functions (page 47, the *Applications screen* & fig. 2.35) represented in a
menu area (page 12, fig. 1.10 *silk screen graffiti area*).  Furthermore, Carlson teaches
activating **anyone one of these three** functions by moving an object from a starting
point within the representation of the function on the menu in a direction from the menu
area to the display area.  Carlson teaches activating the second function by moving an
object from a starting point within the representation of the function on the menu in a
direction from the menu area to the display area (page 40, *bottom-to-top screen stroke
shortcut,* fig. 2.22 & page 30, *to activate the keyboard … drag the stylus vertically
across the screen from bottom to top*).

## *Conclusion*

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to Ian M. Purcell whose telephone number is (571) 272-
5755.  The examiner can normally be reached on Monday - Friday 8:30 - 5:00.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Kristine Kincaid can be reached on (571) 272-4063.  The fax phone number
for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 10/315,250                                    Page 16
Art Unit: 2174

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Ian M. Purcell
Examiner

*Kristine Kincaid*

KRISTINE KINCAID
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2100

| Index of Claims | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit |
| | Ian M. Purcell | 2174 |

| √ | Rejected | — | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| Claim (Final) | Claim (Original) | 3/16/06 | 11/9/06 | Date | | | | | | | Claim (Final) | Claim (Original) | Date | | | | | | | | Claim (Final) | Claim (Original) | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | √ | √ | | | | | | | | | 51 | | | | | | | | | | 101 | | | | | | | | |
| | 2 | √ | v | | | | | | | | | 52 | | | | | | | | | | 102 | | | | | | | | |
| | 3 | √ | √ | | | | | | | | | 53 | | | | | | | | | | 103 | | | | | | | | |
| | 4 | √ | √ | | | | | | | | | 54 | | | | | | | | | | 104 | | | | | | | | |
| | 5 | √ | √ | | | | | | | | | 55 | | | | | | | | | | 105 | | | | | | | | |
| | 6 | √ | √ | | | | | | | | | 56 | | | | | | | | | | 106 | | | | | | | | |
| | 7 | √ | √ | | | | | | | | | 57 | | | | | | | | | | 107 | | | | | | | | |
| | 8 | √ | √ | | | | | | | | | 58 | | | | | | | | | | 108 | | | | | | | | |
| | 9 | √ | √ | | | | | | | | | 59 | | | | | | | | | | 109 | | | | | | | | |
| | 10 | √ | √ | | | | | | | | | 60 | | | | | | | | | | 110 | | | | | | | | |
| | 11 | √ | √ | | | | | | | | | 61 | | | | | | | | | | 111 | | | | | | | | |
| | 12 | √ | √ | | | | | | | | | 62 | | | | | | | | | | 112 | | | | | | | | |
| | 13 | √ | √ | | | | | | | | | 63 | | | | | | | | | | 113 | | | | | | | | |
| | 14 | √ | √ | | | | | | | | | 64 | | | | | | | | | | 114 | | | | | | | | |
| | 15 | √ | √ | | | | | | | | | 65 | | | | | | | | | | 115 | | | | | | | | |
| | 16 | √ | √ | | | | | | | | | 66 | | | | | | | | | | 116 | | | | | | | | |
| | 17 | √ | √ | | | | | | | | | 67 | | | | | | | | | | 117 | | | | | | | | |
| | 18 | √ | √ | | | | | | | | | 68 | | | | | | | | | | 118 | | | | | | | | |
| | 19 | | | | | | | | | | | 69 | | | | | | | | | | 119 | | | | | | | | |
| | 20 | | | | | | | | | | | 70 | | | | | | | | | | 120 | | | | | | | | |
| | 21 | | | | | | | | | | | 71 | | | | | | | | | | 121 | | | | | | | | |
| | 22 | | | | | | | | | | | 72 | | | | | | | | | | 122 | | | | | | | | |
| | 23 | | | | | | | | | | | 73 | | | | | | | | | | 123 | | | | | | | | |
| | 24 | | | | | | | | | | | 74 | | | | | | | | | | 124 | | | | | | | | |
| | 25 | | | | | | | | | | | 75 | | | | | | | | | | 125 | | | | | | | | |
| | 26 | | | | | | | | | | | 76 | | | | | | | | | | 126 | | | | | | | | |
| | 27 | | | | | | | | | | | 77 | | | | | | | | | | 127 | | | | | | | | |
| | 28 | | | | | | | | | | | 78 | | | | | | | | | | 128 | | | | | | | | |
| | 29 | | | | | | | | | | | 79 | | | | | | | | | | 129 | | | | | | | | |
| | 30 | | | | | | | | | | | 80 | | | | | | | | | | 130 | | | | | | | | |
| | 31 | | | | | | | | | | | 81 | | | | | | | | | | 131 | | | | | | | | |
| | 32 | | | | | | | | | | | 82 | | | | | | | | | | 132 | | | | | | | | |
| | 33 | | | | | | | | | | | 83 | | | | | | | | | | 133 | | | | | | | | |
| | 34 | | | | | | | | | | | 84 | | | | | | | | | | 134 | | | | | | | | |
| | 35 | | | | | | | | | | | 85 | | | | | | | | | | 135 | | | | | | | | |
| | 36 | | | | | | | | | | | 86 | | | | | | | | | | 136 | | | | | | | | |
| | 37 | | | | | | | | | | | 87 | | | | | | | | | | 137 | | | | | | | | |
| | 38 | | | | | | | | | | | 88 | | | | | | | | | | 138 | | | | | | | | |
| | 39 | | | | | | | | | | | 89 | | | | | | | | | | 139 | | | | | | | | |
| | 40 | | | | | | | | | | | 90 | | | | | | | | | | 140 | | | | | | | | |
| | 41 | | | | | | | | | | | 91 | | | | | | | | | | 141 | | | | | | | | |
| | 42 | | | | | | | | | | | 92 | | | | | | | | | | 142 | | | | | | | | |
| | 43 | | | | | | | | | | | 93 | | | | | | | | | | 143 | | | | | | | | |
| | 44 | | | | | | | | | | | 94 | | | | | | | | | | 144 | | | | | | | | |
| | 45 | | | | | | | | | | | 95 | | | | | | | | | | 145 | | | | | | | | |
| | 46 | | | | | | | | | | | 96 | | | | | | | | | | 146 | | | | | | | | |
| | 47 | | | | | | | | | | | 97 | | | | | | | | | | 147 | | | | | | | | |
| | 48 | | | | | | | | | | | 98 | | | | | | | | | | 148 | | | | | | | | |
| | 49 | | | | | | | | | | | 99 | | | | | | | | | | 149 | | | | | | | | |
| | 50 | | | | | | | | | | | 100 | | | | | | | | | | 150 | | | | | | | | |

Part of Paper No.  20060308

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Patent Application of

GOERTZ                                      Atty. Ref.:  3682-32

Serial No.:  10/315,250                     Group:  2174

Filed:  December 10, 2002                   Examiner:  Purcell, Ian M.

For:  USER INTERFACE

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

August 22, 2006

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

### AMENDMENT

Sir:

In response to the Office Action dated March 23, 2006, please amend the above-identified

application as follows:

**Amendments to the Title** begin on page 2 of this paper.

**Amendments to the Specification** begin on page 3 of this paper.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 4

of this paper.

**Remarks/Arguments** begin on page 10 of this paper.

1105263

GOERTZ
Serial No.: 10/315,250

## **AMENDMENTS TO THE TITLE**

Please amend the title as follows:

USER INTERFACE FOR MOBILE HANDHELD COMPUTER UNIT

1105263

GOERTZ
Serial No.:  10/315,250

## **AMENDMENTS TO THE SPECIFICATION**

On page 5 of the application, please add the following new paragraph after line 3,

as follows:

Figure 14 shows a computer readable medium in the form of a solid state memory.

- 3 -

GOERTZ
Serial No.: 10/315,250

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application.

1. (Currently Amended) ~~User~~ A user interface for a mobile handheld computer unit, where said computer unit comprises a touch sensitive area, which touch sensitive area is divided into a menu area and a display area, where said computer unit is adapted to run several applications simultaneously, and to present an active application on top of any other application on said display area, characterised in, that said menu area is adapted to present a representation of a first, a second and a third predefined function, that said first function is a general application dependent function, that said second function is a keyboard function, that said third function is a task and file manager, and that any one of said three functions can be activated when said touch sensitive area detects a movement of an object with its starting point within the representation of said function on said menu area and with a direction from said menu area to said display area, said user interface allowing low precision navigation using a blunt object, whereby said user interface can be operated by one hand, where said object can be a finger.

2. (Currently Amended) ~~User~~ The user interface according to Claim 1, ~~characterised~~ characterized in, that, if said first function is activated, said display area is adapted to display icons representing different services or settings depending on the current active application, that one of said icons always represents a "help"-service, regardless of application, and that, if no application is currently active on said computer unit, said icons are adapted to represent services

- 4 -

1105263

GOERTZ
Serial No.: 10/315,250

or settings of the operations system of said computer unit, ~~such as background picture, clock, users, help, etc~~.

3. (Currently Amended) ~~User~~ The user interface according to Claim 2, characterised in, that ~~that a~~ selection of a preferred service or setting is done by tapping on corresponding icon.

4. (Currently Amended) ~~User~~ The user interface according to Claim 1, characterised in,

- that, if said second function is activated, said display area is adapted to display a keyboard and a text field,

- that, if a text passage in said active application is highlighted, said text passage is displayed in said text field for editing through said keyboard and that said highlighted text passage is replaced by said edited text passage when said second function is deactivated, and

- that if no text passage in said active application is highlighted, said text field is available for inputting and editing of text through said keyboard.

5. (Currently Amended) ~~User~~ The user interface according to Claim 4, characterised in, that if no text passage in said active application is highlighted, said text field is used for inputting and editing of text through said keyboard, then

- said first function can be activated, or

- said second function can be closed, in which a choice of saving or deleting said inputted text is given, where the choice of saving said inputted text results in an activation of said

- 5 -

GOERTZ
Serial No.: 10/315,250

first function,

in which said first function will present services or settings available for said inputted

text, such as saving said inputted text for later use, using said inputted text as telephone number

in a telephone application, or sending said inputted text as message in communications

application.

6. (Currently Amended) User The user interface according to Claim 1, characterised in,

that, if said third function is activated, said display area is adapted to display a list with a library

of available applications and files on said computer unit, that a selection of an application will

start said application, and that a selection of a file will open said file in an application intended

for said file.

7. (Currently Amended) User The user interface according to Claim 6, characterised in,

that a selection of an application or a file is done by moving said object so that the representation

of desired application or file is highlighted, removing said object from said touch sensitive area,

and then tapping on said touch sensitive area, and that an application or file is highlighted by

placing some kind of marking on the representation of said application or file, such as

positioning a frame around the representation of said application or file or inverting the

representation of said application or file.

8. (Currently Amended) User The user interface according to Claim 7, characterised in,

- 6 -

GOERTZ
Serial No.: 10/315,250

that said list is adapted to present only said files or only said applications, that the top area of said

list presents a field through which the content ~~if~~of said list can be altered, that, if said list only

presents files, said field displays a representation of a task manager and a selection of said field

will cause said list to alter to present only applications, and that, if said list only presents

applications, said field displays a representation of a file manager and a selection of said field

will cause said list to alter and present only files.


9.  (Currently Amended)  ~~User~~ The user interface according to Claim 7, characterised in,

that, a navigation in said list is performed by moving said object in a direction towards the top of

said list or towards the bottom of said list, that the movement of said object will cause said

marking to move in the same direction, and that the speed of the movement of said marking is

lower than the speed of the movement of said object.


10.  (Currently Amended)  ~~User~~ The user interface according to Claim 9, characterised in,

that, if the number of applications and/or files in said list exceeds the number of applications and

files that can be presented on said display area, and if said object is moved to the top or bottom

position of said display area, then lifted, replaced on said display area, and again moved to the

top or bottom of said display area, the content of said display area will be replaced one whole

page, meaning that if said object is positioned at the bottom of said display area, then lifted,

replaced on said display area, and then again moved to the bottom of said display area, the

content of said display area will be replaced by the following applications and/or files in said list,

1105263

GOERTZ
Serial No.: 10/315,250

and if said object is positioned at the top of said display area, then lifted, replaced on said display

area, and then again moved to the top of said display area, the content of said display area will be

replaced by the preceding applications and/or files in said list.

11. (Currently Amended) ~~User~~ The user interface according to Claim 10, characterised

in, that if said object is removed from any first position on said display area and then replaced on

any second position on said display area, said navigation can be continued from said second

position.

12. (Currently Amended) ~~User~~ The user interface according to Claim 1, characterised in,

that an active application, function, service or setting is moved on one step by moving said object

from the left of said display area to the right of said display area, and that the active application,

function, service or setting is closed or backed one step by moving said object from the right of

said display area to the left of said display area.

13. (Currently Amended) ~~User~~ The user interface according to Claim 1, characterised in,

that said menu area is positioned at the bottom of said touch sensitive area, that said

representation of said first function is positioned at the left side of said menu area, that said

representation of said second function is positioned at the middle of said menu area, and that said

representation of said third function is positioned at the right side of said menu area.

- 8 -

GOERTZ
Serial No.: 10/315,250

14. (Currently Amended)  ~~User~~ The user interface according to Claim 1, characterised in, that said user interface is adapted to a touch sensitive area with a size that is in the order of 2-3 inches, and that said user interface is adapted to be operated by one hand, where said object can be a finger~~, such as the thumb, or a user of said computer unit~~.

15. (Currently Amended)  An enclosure adapted to cover a computer unit, said computer unit being adapted to present a user interface according to Claim 1, characterised in, that said enclosure is provided with an opening for said display area, and that a representation of said menu area is printed on top of said enclosure.

16. (Currently Amended)  ~~Enclosure~~ The enclosure according to Claim 15, characterised in, that said enclosure is removable and exchangeable.

17. (Original)  A computer readable medium, with a computer program product stored therein, characterised in, that said computer program product comprises computer readable code, which, when read by a computer, will make it possible for said computer to present a user interface according to Claim 1.

18. (Original)  A computer readable medium according to Claim 17, characterised in, that said computer program product is adapted to function as a shell upon an operations system.

- 9 -

1105263

GOERTZ
Serial No.:  10/315,250

## **REMARKS**

Reconsideration of this application is respectfully requested.

Claims 1-18 are pending in the application.  Upon entry of this Amendment, claims 1-16 will be amended to, *inter alia,* conform such claims to U.S. claim practice.

In the outstanding Office Action of March 23, 2006, the Examiner objected to the title of the invention as not being descriptive.  The title of the invention has now been amended. Accordingly, the Examiner's objection to the title of the invention should now be withdrawn.

The Examiner objected to claims 3 and 8 because of certain informalities noted in these claims.  The proposed amendments by the Examiner have now been made and, as such, the Examiner's objection to claims 3 and 8 should now be withdrawn.

The Examiner also objected to claim 11 under 37 CFR §1.75(c) as being of improper dependent form for failing to further limit the subject matter of a previous claim.  In particular, the Examiner contends that claim 11 fails to further limit claim 10.  Claim 11 has now been amended to clarify that the first and second positions on the display area can be any positions, as opposed to the top or bottom positions recited in claim 10.  As such, the Examiner's objection to claim 11 should now be withdrawn.

The Examiner rejected claims 2, 5, 7 and 14 under 35 U.S.C. §112, second paragraph, as being indefinite, contending that the phrase "such as" and the following text in these claims renders the claims indefinite.  Claims 2, 5, 7 and 14 have now been amended to delete the "such as" phrases.  Accordingly, the Examiner's rejection of claims 2, 5, 7 and 14 under §112, second paragraph, should now be withdrawn.

- 10 -

GOERTZ
Serial No.: 10/315,250

The Examiner also rejected claims 1, 4-7, 12, 15 and 17 under 35 U.S.C. §102(b) as being anticipated by Carlson (Carlson, Jeff, *Visual Quickstart Guide Palm Organizers,* Peachpit Press, 2000, Berkeley, CA; hereinafter "Carlson"). The Examiner further rejected, as being unpatentable under 35 U.S.C. §103(a), claims 2 and 3 over Carlson in view of Kopitzke (USP 6,988,246; hereinafter "Kopitzke"); claims 8-11 and 13 over Carlson in view of Wynn et al. (USP 6,734883; hereinafter Wynn); claim 13 over Carlson alone; claims 14 and 16 over Carlson in view of Strietelmeier (Strietelmeier, Julie, *Palm* m100, The Gadgeteer, 2000, http://www.the-gadgeteer.com/review/palm_m100_review; hereinafter Strietelmeier); and claim 18 over Carlson in view of Chew et al. (USP 6,727, 917; hereinafter Chew). The Examiner's rejections are respectfully traversed.

For a claimed invention to be anticipated by a prior art reference, every element of the claim must be disclosed in the reference. For a claimed invention to be obvious over a combination of prior art references, there must be some suggestion, motivation or teaching in the prior art that would have led one of ordinary skill in the art to combine the references to produce the claimed invention. *E.g., Ashland Oil, Inc. v. Delta Resins & Refracs.,* 776 F.2d 281, 293 (Fed. Cir. 1985). Here, the claimed invention of the present application is neither anticipated nor obvious over the cited references because such references do not disclose or suggest all of the limitations of the claimed invention. Even assuming, *arguendo*, that the Examiner properly combined the cited references, the resulting combination still would not be the claimed invention given the deficiencies noted below in the primary Carlson reference.

Amended independent claim 1 now recites a "user interface allowing low precision

- 11 -

GOERTZ
Serial No.: 10/315,250

navigation using a blunt object, whereby said user interface can be operated by one hand, where said object can be a finger." Independent claim 17 describes a computer readable medium, with a computer program product stored therein that makes it possible for a computer to present a user interface according to Claim 1. Independent claims 1 and 17, and thus dependent claims 4-7, 12, and 15, which depend either directly or indirectly from claim 1, are not anticipated by Carlson because Carlson does not disclose this feature of the claimed invention.

The user interface described in the claims of the present invention is designed to be used with a user's hand and fingers, rather than any tools, such as the stylus used with a Palm Pilot. The user interface described in the claims of the present invention is designed to be navigated with a finger, and preferably using only one hand, holding the device with that hand and navigating with a user's thumb. This allows low precision navigation, with a blunt object, such as a finger, through the recognition of the finger's movements across a touch sensitive area. The claims of the present application describe movement patterns that allow such low resolution navigation using a blunt object, such as a finger. For example, claim 14 recites the feature of a one hand device and navigation through a finger.

The Palm Pilot device described in the cited Carlson reference is, in contrast, designed to navigate on small icons and buttons with a relatively sharp tip from a stylus or pen. The use of a stylus allows high precision navigation and, thus, the possibility of pressing a single button on a Palm Pilot screen. The Carlson reference purports to be a guide to Palm organizers. Although the Examiner notes that Carlson states, on page 12, that "anything that isn't sharper than a No. 2 pencil can work (that includes fingers and toes too!)", the navigation system in a Palm organizer

- 12 -

GOERTZ
Serial No.: 10/315,250

is, in fact, designed to use the stylus mentioned in the Carlson reference. Using a Palm organizer

with a blunt object, such as a thumb, would give very limited use because of the lack of precision

available from using a thumb. Indeed, Carlson, in mentioning the use of a "finger or toe", does

so in a somewhat joking way, noting later that the "three basic methods of interacting within the

Palm OS, all . . . depend on the stylus (or a similar writing instrument)." *See, e.g.,* Carlson, page

26, paragraph titled "Navigating the Palm OS".

This is in sharp contrast to the menus and movements described in the claims of the

present application, which allow the use of a blunt object, such as a finger, for all navigation and

use of the claimed user interface. Thus, the movement patterns described in the claims of the

present application allow the use of the user interface with one hand only and navigation of the

user interface with the thumb of that hand.

Independent claim 1 of the present application also recites:

> [a] menu area . . . adapted to present a representation of a first, a
> second and a third predefined function, that said first function is a
> general application dependent function, that said second function is
> a keyboard function, that said third function is a task and file
> manager, and that any one of said three functions can be activated
> when said touch sensitive area detects a movement of an object
> with its starting point within the representation of said function on
> said menu area and with a direction from said menu area to said
> display area.

Independent claims 1 and 17, and dependent claims 4-7, 12, and 15, are also not anticipated by

Carlson because Carlson also does not disclose the recited first, second and third predefined

functions represented in a menu area, or activating any one of these three functions by moving an

object from a starting point within the representation of the function on the menu area in a

- 13 -

1105263

GOERTZ
Serial No.: 10/315,250

direction from the menu area to the display area. One embodiment of this feature is depicted in Figures 1 and 2 of the present application.

Claim 1 describes the first function as a general application dependent function which, in the embodiment of the invention described in the application, are services or functions dependent upon a current active application. One of the services is described as a help service, regardless of the application. Others are described as "save to disk", "send as SMS", or "delete", or settings such as "resolution", "colour", or "brightness". If no application is active, the services or settings can be of the operations system, such as background picture, clock, alarm, users, help, etc. *See, e.g.,* Application, pages 5-6.

The Examiner looks to page 28 of Carlson and a "menu" icon shown in Figure 2.4 on page 28 of Carlson as meeting the first function feature recited in claim 1; however, what page 28 of Carlson shows is instructions for accessing menus in applications. In any event, no where does page 28 of Carlson show such menus as being selected by movement of an object, such as a finger, from a menu area to a display area, as recited in claim 1. Rather, Carlson discusses at page 28 using a stylus to tap "menu icons" and "words" to see drop-down menus.

Claim 1 also describes the second function as a keyboard function. The Examiner looks to page 30 of Carlson as showing the keyboard function. Page 30 of Carlson does describe an "onscreen keyboard". While page 30 of Carlson does mention accessing the keyboard by "drag[ging] the stylus vertically across the screen from bottom to top", it also mentions other methods, such as tapping on "abc" or "123" dots, selecting "Keyboard" from an Edit menu, or writing certain characters in a Graffiti area. In any event, no where does cited page 30 of Carlson

- 14 -

GOERTZ
Serial No.: 10/315,250

show such keyboard as being selected by movement of an object, such as a finger, from a menu
area to a display area, as recited in claim 1.

Claim 1 describes the third function as a task and file manager. The Examiner looks to
page 47 of Carlson, and particularly the applications screen in Figure 2.35 of Carlson as meeting
this function. In the embodiment of the invention described in the present application, the third
function is described as displaying a list with a library of available applications and files on the
computer unit. *See, e.g.*, Application, page. 7. While page 47 of Carlson shows applications and
application icons, it describes launching applications by bringing up the Application screen by
tapping the "silkscreened Applications icon" first and then tapping a program's name or icon to
launch it. Nowhere does cited page 47 of Carlson show the applications as being selected by
movement of an object, such as a finger, from a menu area to a display area, as recited in claim 1.

Since Carlson shows different screens for the menu shown on page 28, the keyboard
shown on page 30, and the applications shown on page 47, Carlson also does not disclose a menu
area presenting a representation of first, second and third predefined functions, as recited in claim
1. In view of the foregoing, clearly, Carlson does not anticipate independent claims 1 and 17 or
dependent claims 4-7, 12, and 15.

Finally, because Carlson does not anticipate the claimed invention as recited in
independent claims 1 and 17 (which references claim 1), given the deficiencies noted above in
the teachings of the primary Carlson reference, the remaining claims rejected in the outstanding
Office Action under §103(a), *i.e.,* claims 2, 3, 8-11, 13, 14, 16 and 18, which depend either

- 15 -

GOERTZ
Serial No.: 10/315,250

directly or indirectly from claim 1 or claim 17, are also not obvious over Carlson alone or in

combination with the other references cited by the Examiner.

     In view of the foregoing, it is believed that all of the claims pending in the application,

*i.e.*, claims 1 – 18, are now in condition for allowance, which action is earnestly solicited.  If any

issues remain in this application, the Examiner is urged to contact the undersigned at the

telephone number listed below.

                         Respectfully submitted,

                         **NIXON & VANDERHYE P.C.**

                         By: *Robert A. Molan*

                            Robert A. Molan
                            Reg. No. 29,834

RAM:jsm

901 North Glebe Road, 11th Floor
Arlington, VA  22203
Telephone:  (703) 816-4000
Facsimile:  (703) 816-4100

- 16 -

In re Patent Application of

GOERTZ

Serial No. 10/315,250

Filed:   December 10, 2002

Title:   USER INTERFACE

Atty    3682-32
Dkt.

        C#   M#

TC/A.U.   2174

Examiner:  PURCELL, Ian M.

Date:  August 22, 2006

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

## RESPONSE/AMENDMENT/LETTER

This is a response/amendment/letter in the above-identified application and includes an attachment which is hereby incorporated by reference and the signature below serves as the signature to the attachment in the absence of any other signature thereon.

☐ **Correspondence Address Indication Form Attached.**

**Fees are attached as calculated below:**

Total effective claims after amendment **18**   minus highest number
previously paid for **20**   (at least 20) =   0   x $50.00          $0.00 (1202)/$0.00 (2202)  $

Independent claims after amendment **0**   minus highest number
previously paid for **3**   (at least 3) =   0   x $200.00          $0.00 (1201)/$0.00 (2201)  $

If proper multiple dependent claims now added for first time, (ignore improper); add
$360.00 (1203)/$180.00 (2203)  $

Petition is hereby made to extend the current due date so as to cover the filing date of this
paper and attachment(s)          One Month Extension $120.00 (1251)/$60.00 (2251)
Two Month Extensions $450.00 (1252)/$225.00 (2252)
Three Month Extensions $1020.00 (1253/$510.00 (2253)
Four Month Extensions $1590.00 (1254/$795.00 (2254)
Five Month Extensions $2160.00 (1255/$1080.00 (2255)  $   450.00

Terminal disclaimer enclosed, add          $130.00 (1814)/ $65.00 (2814)  $

☐ Applicant claims "small entity" status.   ☐ Statement filed herewith

Rule 56 Information Disclosure Statement Filing Fee          $180.00 (1806)  $   0.00

Assignment Recording Fee          $40.00 (8021)  $   0.00

Other:          $   **0.00**

**TOTAL FEE ENCLOSED**  $   **450.00**

The Commissioner is hereby authorized to charge any <u>deficiency</u>, or credit any overpayment, in the fee(s) filed, or asserted to be filed, or which should have been filed herewith (or with any paper hereafter filed in this application by this firm) to our Account No. 14-1140.  A <u>duplicate</u> copy of this sheet is attached.

901 North Glebe Road, 11th Floor
Arlington, Virginia 22203-1808
Telephone:  (703) 816-4000
Facsimile:  (703) 816-4100
RAM:jsm

NIXON & VANDERHYE P.C.
By Atty:  Robert A. Molan, Reg. No. 29,834

Signature:  _Robert A. Molan_

08/23/2006 FMETEKI1 00000023 10315250

01 FC:1252          450.00 OP

1108465

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 2001

Application or Docket Number: 10315250

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 18 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 18 minus 20= | * |
| INDEPENDENT CLAIMS | 1 minus 3 = | * |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | OR | RATE | FEE |
| BASIC FEE | 370.00 | OR | BASIC FEE | 740.00 |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL | | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

### AMENDMENT A

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * 18 | Minus | ** 20 | |
| Independent | * 1 | Minus | *** 3 | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT B

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT C

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| | | OR | | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875 (Rev. 8/01)     ☆U S GPO:2001 482-124 / 58197     Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

In re Patent Application of:
GOERTZ
Serial No.   10/315,250
Filed:   April 29, 2004
For:   User Interface

Attention:

Atty. Dkt.   3682-32

Date:   July 27, 2006

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450
The attached <u>completes</u> filing of the above-identified patent application:

☐ **Correspondence Address Indication Form Attached.**
☐ Signed Rule 63 Declaration alone, ☐ Copy of Declaration from prior application alone, <u>OR</u>
☐ Signed Declaration plus attached copy of originally filed specification/drawings.
☐ **NOTICE TO FILE MISSING PARTS OF APPLICATION FILING DATE GRANTED** form.
☒ Record the attached change of name from Neonode Sweden AB to Neonode AB, Stockholm, Sweden and return to the undersigned.
☐ Attached is a Power of Attorney.
☐ Priority is hereby claimed under 35 U.S.C. § 119 based on the following foreign applications:

| Application Number | Country | Day/Month/Year Filed |
|---|---|---|

respectively.
☐ Certified copy(ies) of foreign application(s) is/are attached.
☐ Certified copy(ies) filed on _____ in prior application no. _____, filed _____.
☐ Applicant claims "small entity" status.   ☐ "Small entity" statement attached.
☐ Please enter the attached preliminary amendment <u>prior</u> to calculation of filing fee.
☒ Also attached: ☐ **Information Disclosure Statement;** ☐ **Nucleotide and/or Amino Acid** Sequence Submission; ☒ **Other: Notification of Change of Entitlement to Small Entity Status Pursuan tto 37 CFR 1.27(g)(2)**
**Fees due are calculated below:**

| | | |
|---|---|---|
| Basic filing fee | $300.00 (1011)/$150.00 (2011) | $ |
| Search Fee | $500.00 (1111)/$250.00 (2111) | $ |
| Examination Fee | $200.00 (1311)/$100.00 (2311) | $ |
| Application Size Fee for each add'l 50 sheets that exceeds 100 sheets) | | |
| Total pages: 0-100 =   0.00   0   $0.00(1081)/   $0.00 (2081) | | $ |
| Total effective claims   0   - 20 (at least 20) =   0   x  $50.00 = $0.00 (1202)/$0.00 (2202) | | $ |
| Independent claims   0   - 3 (at least 3) =   0   x  $200.00 = $0.00 (1201)/$0.00 (2201) | | $ |
| If any proper multiple dependent claims now added for first time (ignore improper), add | | |
| | $360.00 (1203)/$180.00 (2203) | $ |

Petition is hereby made to extend the current due date so as to cover the filing date of this paper and attachment(s)

| | | |
|---|---|---|
| | One Month Extension $120.00 (1251)/$60.00 (2251) | |
| | Two Month Extensions $450.00 (1252)/$225.00 (2252) | |
| | Three Month Extensions $1020.00 (1253)/$510.00 (2253) | |
| | Four Month Extensions $1590.00 (1254/$795.00 (2254) | |
| | Five Month Extensions $2160.00 (1255)/$1080.00 (2255) | $ |
| Surcharge if Declaration or filing fee first now submitted: | $130.00 (1051)/$65.00 (2051) | $ |
| English translation of specification and claims | $130.00 (1053) | $ |
| Assignment Recording Fee | $40.00 (8021) | $   40.00 |
| | **TOTAL FEE DUE** | $   40.00 |

☐ **CREDIT CARD PAYMENT FORM ATTACHED.**
Any future submission requiring an extension of time is hereby stated to include a petition for such time extension. The Commissioner is hereby authorized to charge any <u>deficiency</u>, or credit any overpayment, in the fee(s) filed, or asserted to be filed, or which should have been filed herewith (or with any paper hereafter filed in this application by this firm) to our Account No. 14-1140.   A <u>duplicate</u> copy of this sheet is attached.

901 North Glebe Road, 11th Floor
Arlington, Virginia 22203-1808
Telephone: (703) 816-4000
Facsimile: (703) 816-4100
RAM:jsm

NIXON & VANDERHYE P.C.
By Atty: Robert A. Molan, Reg. No. 29,834

Signature:  *Robert A. Molan*

1098992



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of

| GOERTZ | | Atty. Ref.: | 3682-32 |
|---|---|---|---|
| Serial No. | 10/315,250 | Group: | 2174 |
| Filed: | December 10, 2002 | Examiner: | Purcell, Ian M. |
| For: | User Interface | | |

\* \* \* \* \* \* \* \* \* \* \*

July 27, 2006

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

## NOTIFICATION OF CHANGE OF ENTITLEMENT TO
## SMALL ENTITY STATUS PURSUANT TO 37 CFR 1.27(g)(2)

Notification pursuant to 37 CFR 1.27(g)(2) is hereby given of a change in

entitlement to small entity status in the present application. In particular, Applicant

states that this application is no longer entitled to small entity status.

While it is believed that no additional large entity fees are due at this time,

nonetheless, the Commissioner is hereby authorized to charge any deficiency in the

GOERTZ
Application Serial No. 10/315,250

fee(s) filed, or asserted to be filed, or which should have been filed herewith (or with

any paper previously filed in this application by this firm) to our **Account No. 14-1140.**

Respectfully submitted,

**NIXON & VANDERHYE P.C.**

By: _Robert A. Molan_

Robert A. Molan
Reg. No. 29,834

RAM:jsm
901 North Glebe Road, 11th Floor
Arlington, VA 22203-1808
Telephone: (703) 816-4000
Facsimile: (703) 816-4100

- 2 -

1098996



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 | 1226 |

23117      7590      03/23/2006

NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA  22203

| EXAMINER |
|---|
| PURCELL, IAN M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2174 | |

DATE MAILED: 03/23/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit |
| | Ian M. Purcell | 2174 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>*10 December 2002*</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>*1-18*</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>*1-18*</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☒ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>*10 December 2002*</u> is/are: a)☐ accepted or b)☒ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date _____.

5)☐ Notice of Informal Patent Application (PTO-152)

6)☐ Other: _____.

Application/Control Number: 10/315,250                                        Page 2
Art Unit: 2174

## DETAILED ACTION

### *Drawings*

1.      The drawings are objected to as failing to comply with 37 CFR 1.84(p)(5)

because they include the following reference character(s) not mentioned in the

description:

        (a.) Fig. 14 is not mentioned in the Brief Description of the Drawings.

        Corrected drawing sheets in compliance with 37 CFR 1.121(d), or amendment to

the specification to add the reference character(s) in the description in compliance with

37 CFR 1.121(b) are required in reply to the Office action to avoid abandonment of the

application. Any amended replacement drawing sheet should include all of the figures

appearing on the immediate prior version of the sheet, even if only one figure is being

amended. Each drawing sheet submitted after the filing date of an application must be

labeled in the top margin as either "Replacement Sheet" or "New Sheet" pursuant to 37

CFR 1.121(d). If the changes are not accepted by the examiner, the applicant will be

notified and informed of any required corrective action in the next Office action. The

objection to the drawings will not be held in abeyance.


### *Specification*

2.      The title of the invention is not descriptive.  A new title is required that is clearly

indicative of the invention to which the claims are directed.

Application/Control Number: 10/315,250                    Page 3
Art Unit: 2174

### Claim Objections

3.    Claim 3 objected to because of the following informalities:

(a.) Claim 3 states "characterised in, that that a selection of a preferred service or setting is done tapping" and should be changed to --characterised in, that a selection of a preferred service or setting is done by tapping –

(b.) Claim 8 states "content if said list" should be changed to -content of said list - Appropriate correction is required.

4.    Claim 11 is objected to under 37 CFR 1.75(c), as being of improper dependent form for failing to further limit the subject matter of a previous claim. Applicant is required to cancel the claim(s), or amend the claim(s) to place the claim(s) in proper dependent form, or rewrite the claim(s) in independent form. Claim 11 fails to further limit claim 10.

### Claim Rejections - 35 USC § 112

5.    The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 2, 5, 7 and 14 rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Regarding claims 2, 5, 7 and 14 the phrase "such as" renders the claim indefinite because it is unclear whether the limitations following the phrase are part of the claimed invention. See MPEP § 2173.05(d).

Application/Control Number: 10/315,250                                    Page 4
Art Unit: 2174

### *Claim Rejections - 35 USC § 102*

6.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

7.      Claims 1, 4-7, 12, 15 and 17 are rejected under 35 U.S.C. 102(b) as being

anticipated by Carlson ("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm

Organizers. Peachpit Press. 2000.  Berkeley, CA.).

8.      As per claim 1, Carlson teaches a user interface for a mobile handheld computer

unit (Introduction, page xiii), where said computer unit comprises a touch sensitive area

(page 26, *the screen is touch sensitive*), which touch sensitive area is divided into a

menu area (page 12, fig. 1.10 *silk screen graffiti area*) and a display area, where said

computer unit is adapted to run several applications simultaneously (page 47, *all of the*

*applications are running concurrently*), and to present an active application on top of

any other application on said display area, characterised in, that said menu area is

adapted to present a representation of a first, a second and a third predefined function,

that said first function is a general application dependent function (page 28, *the Menu*

*icon*, fig. 2.4), that said second function is a keyboard function (page 30, *either the abc*

*or 123 dots in the lower corner of the Graffiti area*), that said third function is a task and

file manager (page 47, *the Applications screen* & fig. 2.35), and that any one of said

three functions can be activated when said touch sensitive area detects a movement of

an object with its starting point within the representation of said function on said menu area and with a direction from said menu area to said display area (page 40, *bottom-to-top screen stroke shortcut* fig. 2.22 & page 30, *drag the stylus vertically across the screen from bottom to top*).

9.      As per claim 4, Carlson teaches the user interface according to claim 1, characterised in, that, if said second function is activated, said display area is adapted to display a keyboard and a text field, that, if a text passage in said active application is highlighted, said text passage is displayed in said text field for editing through said keyboard and that said highlighted text passage is replaced by said edited text passage when said second function is deactivated, and that, if no text passage in said active application is highlighted, said text field is available for inputting and editing of text through said keyboard (page 30, fig 2.7).

10.     As per claim 5. User interface according to claim 4, characterized in, that if no text passage in said active application is highlighted, and said text field is used for inputting and editing of text through said keyboard (page 30, fig 2.7), then said first function can be activated, or said second function can be closed, in which a choice of saving or deleting said inputted text is given, where the choice of saving said inputted text results in an activation of said first function, in which said first function will present services or settings available for said inputted text, such as saving said inputted text for later use, using said inputted text as telephone number in a telephone application, or sending said inputted text as message in communications application (page 28, fig. 2.4 *Beam Memo*).

11.     As per claim 6, Carlson teaches the user interface according to claim 1,

characterised in, that, if said third function is activated, said display area is adapted to

display a list with a library of available applications and files on said computer unit, that

a selection of an application will start said application, and that a selection of a file will

open said file in an application intended for said file (page 47, fig. 2.35).

12.     As per claim 7, Carlson teaches the user interface according to claim 6,

characterised in, that a selection of an application or a file is done by moving said object

so that the representation of desired application or file is highlighted, removing said

object from said touch sensitive area, and then tapping on said touch sensitive area,

and that an application or file is highlighted by placing some kind of marking on the

representation of said application or file, such as positioning a frame around the

representation of said application or file or inverting the representation of said

application or file (pages 26 & 27).

13.     As per claim 12, Carlson teaches the user interface according to Claim 1,

characterised in, that an active application, function, service or setting is moved on one

step by moving said object from the left of said display area to the right of said display

area, and that the active application, function service or setting is closed or backed one

step by moving said object from the right of said display area to the left of said display

area (page 246, fig. 14.2, *Drag to scroll through file*).

14.     As per claim 15, Carlson teaches an enclosure adapted to cover a computer unit,

said computer unit being adapted to present a user interface according Claim 1,

characterised in, that said enclosure is provided with an opening for said display area,

and that a representation of said menu area is printed on top of said enclosure (page

12, *Silkscreen Graffiti area* & fig. 1.10).

15.    As per claim 17, Carlson teaches a computer readable medium, with a computer

program product stored therein, characterised in, that said computer program product

comprises computer readable code, which, when read by a computer, will make it

possible for said computer to present a user interface according to Claim 1 (page 25,

*Palm OS*).


### Claim Rejections - 35 USC § 103

16.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

17.    Claims 2 and 3 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Carlson ("Carlson", Carlson, Jeff. <u>Visual Quickstart Guide Palm Organizers</u>. Peachpit

Press. 2000. Berkeley, CA.) in view of Kopitzke et al. ("Kopitzke", US # 6,988,246 B2).

18.    As per claim 2, Carlson teaches the user interface according to claim 1,

characterised in, that, if said first function is activated, said display area is adapted to

display icons representing different services or settings depending on the current active

application (page 28, *the Menu icon*, fig. 2.4), and that, if no application is currently

active on said computer unit, said icons are adapted to represent services or settings of

the operations system of said computer unit, such as background picture, clock (page

47, fig. 2.36, *12:11 am*), users, help, etc.

However Carlson does not teach expressly the user interface according to claim

1, characterised in, that, if said first function is activated, said display area is adapted to

display icons representing different services or settings depending on the current active

application, that one of said icons always represents a "help"-service, regardless of

application.

Kopitzke teaches the user interface according to claim 1, characterised in, that

said display area is adapted to display icons representing different services or settings

depending on the current active application, that one of said icons always represents a

"help"-service, regardless of application (column 4, lines 36-53 & fig. 1, *Help key or*

*button* 6).

Carlson and Kopitzke are analogous art because they are in the same field of

endeavor, namely graphical user interfaces with touch sensitive displays.

At the time of the invention it would have been obvious to a person of ordinary

skill in the art to provide the help function as taught by Kopitzke within the user interface

of Carlson in order to provide context sensitive information.

As per claim 3, the modified Carlson teaches the user interface according to

claim 2, characterised in, that a selection of a preferred service or setting is done by

tapping on corresponding icon (Carlson, page 26, fig. 2.1*Tapping just about any*

*interface element in the Palm OS evokes a response*).

19.    Claims 8-11 and 13 is rejected under 35 U.S.C. 103(a) as being unpatentable

over Carlson ("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm Organizers.

Peachpit Press. 2000.  Berkeley, CA.) in view of Wynn et al. ("Wynn", US # 6,734,883

B1).

20.    As per claim 8, Carlson teaches the user interface according to claim 7.

         However Carlson does not teach expressly the user interface, characterised in,

that said list is adapted to present only said files or only said applications, that the top

area of said list presents a field through which the content of said list can be altered,

that, if said list only presents files, said field displays a representation of a task manager

and a selection of said field will cause said list to alter to present only applications, and

that, if said list only presents applications, said field displays a representation of a file

manager and a selection of said field will cause said list to alter and present only files.

         Wynn teaches a user interface control, characterised in, that said list is adapted

to present only said files or only said applications, that the top area of said list presents

a field through which the content of said list can be altered (column 3, lines 4-8, *dialog

box* 32), that, if said list only presents files, said field displays a representation of a task

manager and a selection of said field will cause said list to alter to present only

applications, and that, if said list only presents applications, said field displays a

representation (column 3, lines 4-8, *label* 31) of a file manager and a selection of said

field will cause said list to alter and present only files (column 3, lines 15-31).

Carlson and Wynn are analogous art because they are in the same field of endeavor, namely scrolling within graphical user interfaces with touch sensitive displays.

At the time of the invention it would have been obvious to a person of ordinary skill in the art to have the selection list format as taught by Wynn within the user interface of Carlson in order to provide a conventional list format.

21.      As per claim 9, Carlson teaches the user interface according to claim 7, characterised in, that, a navigation in said list is performed by moving said object in a direction towards the top of said list or towards the bottom of said list, that the movement of said object will cause said marking to move in the same direction (page 27, *a quicker way to view the full list is to tap and hold on the dark solid portion of the scroll bar, then drag it vertically*).

However Carlson does not teach expressly that the speed of the movement of said marking is lower than the speed of the movement of said object.

Wynn teaches a user interface control, characterised in, that, a navigation in said list is performed by moving said object in a direction towards the top of said list or towards the bottom of said list, that the movement of said object will cause said marking to move in the same direction (column 3, lines 32-39 & figs. 5) and that the speed of the movement of said marking is lower than the speed of the movement of said object (column 4, lines 24-30).

At the time of the invention it would have been obvious to a person of ordinary skill in the art to have the scrolling function as taught by Wynn within the user interface of Carlson in order to provide a conventional selection list.

22.     As per claim 10, the modified Carlson in view of Wynn teaches the user interface according to claim 9, characterised in, that, if the number of applications and/or files in said list exceeds the number of applications and files that can be presented on said display area, and if said object is moved to the top or bottom position of said display area, then lifted, replaced on said display area, and again moved to the top or bottom of said display area, the content of said display area will be replaced one whole page, meaning that if said object is position at the top of said display area, then lifted, replaced on said display area, and then again moved to the top of said display area, the content of said display area will be replaced by the preceding applications and/or files in said list (Carlson, page 253, fig. 14.15 *Full Page Up*).

The modified Carlson in view of Wynn does not disclose expressly the user interface, characterised in that if said object is position at the bottom of said display area, then lifted, replaced on said display area, and then again moved to the bottom of said display area, the content of said display area will be replaced by the following applications and/or files in said list.

At the time of the invention, it would have been an obvious matter of design choice to a person of ordinary skill in the art to modify the *Full Page Up* function (Carlson, page 253, fig 14.15) to work as a Full Page Down function by tapping on the bottom of the display area because Applicant has not disclosed that *if said object is*

*position at the bottom of said display area, then lifted, replaced on said display area,*
*and then again moved to the bottom of said display area, the content of said display*
*area will be replaced by the following applications and/or files in said list* provides an
advantage, is used for a particular purpose, or solves a stated problem.  One of ordinary
skill in the art, furthermore, would have expected Applicant's invention to perform
equally well with the modified Full Page Up function as taught by Carlson because it
would only need to be implemented to scroll down instead of up, when the display area
is tapped on the bottom, instead of the top.

23.     As per claim 11, the modified Carlson in view of Wynn teaches the user interface
according to claim 10, characterised in, that if said object is removed from a first
position on said display area and then replaced on a second position on said display
area, said navigation can be continued from said second position (Carlson, page 253,
fig. 14.15).

        Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson
("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm Organizers. Peachpit Press.
2000. Berkeley, CA.)

24.     As per claim 13, Carlson teaches the user interface according to Claim 1,
characterised in, that said menu area is positioned at the bottom of said touch sensitive
area, that said representation of said first function is positioned at the left side of said
menu area, and that said representation of said second function is positioned at the
middle of said menu area.

Carlson does not teach expressly that said representation of said third function is positioned at the right side of said menu area.

At the time the invention was made, it would have been an obvious matter of design choice to a person of ordinary skill in the art to place the third function on the right side of the display area instead of the left, because Applicant has not disclosed that *said representation of said third function is positioned at the right side of said menu area* provides an advantage, is used for a particular purpose or solves a stated problem. One of ordinary skill in the art, furthermore would have expected Applicant's invention to perform equally well with the third function on the left side of the display area because the placement of the representation would not change its functionality.

25.    Claims 14 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson ("Carlson", Carlson, Jeff. <u>Visual Quickstart Guide Palm Organizers</u>. Berkeley, CA: Peachpit Press, 2000) in view of Strietelmeier ("Strietelmeier", Strietelmeier, Julie. "Palm m100." <u>The Gadgeteer</u>. 2000. <http://www.the-gadgeteer.com/review/palm_m100_review>).

26.    As per claim 14, Carlson teaches the user interface according to Claim 1, characterised in, that said user interface is adapted to a touch sensitive area and that said user interface is adapted to be operated by one hand, where said object can be a finger, such as the thumb, of a user of said computer unit (page 12, *stylus...includes fingers*).

However Carlson does not teach expressly a touch sensitive area with a size that is in the order of 2-3 inches.

Application/Control Number: 10/315,250                                     Page 14
Art Unit: 2174

Strietelmeier teaches a user interface, characterised in, a touch sensitive area
with a size that is in the order of 2-3 inches (page 4).

Carlson and Strietelmeier are analogous art because they are in the same field of
endeavor, namely palm-sized computer organizers.

At the time of the invention it would have been obvious to a person of ordinary
skill in the art to have the dimensions of a touch sensitive area as taught by
Strietelmeier within the user interface of Carlson in order to provide a touch sensitive
area with the manufacturer's dimensions.

27.     As per claim 16, Carlson teaches an enclosure according to claim 15.  However,
Carlson does not disclose an enclosure characterised in, that said enclosure is
removable and exchangeable.

Strietelmeier teaches an enclosure characterised in, that said enclosure is
removable and exchangeable (page 3, *you can also remove the entire face plate…
there will be different face plates available*).

At the time of the invention it would have been obvious to a person of ordinary
skill in the art to have the customizable enclosures as taught by Strietelmeier within the
enclosure of Carlson in order to tailor an enclosure to a user's preferences.

28.     Claim 18 is rejected under 35 U.S.C. 103(a) as being unpatentable over Carlson
("Carlson", Carlson, Jeff.  Visual Quickstart Guide Palm Organizers. Berkeley, CA:
Peachpit Press, 2000) in view of Chew et al. ("Chew", US # 6,727,917).

As per claim 18, Carlson teaches a computer readable medium according to
claim 17.

However Carlson does not teach expressly, that said computer program product is adapted to function as a shell upon an operations system.

Chew teaches a user interface for a palm-sized computer device, characterised in, that said computer program product is adapted to function as a shell upon an operations system (column 2, lines 1-5).

Carlson and Chew are analogous art because they are in the same field of endeavor, namely graphical user interfaces for hand-held personal computing devices with touch sensitive displays.

At the time of the invention it would have been obvious to a person of ordinary skill in the art to modify the Carlson's program to function as shell as taught by Chew in order to efficiently display information.

### *Conclusion*

29.    The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Hirayama et al. (US # 5,406,307) teaches a method of activating functions.

Lui et al. (US # 6,833,827) teaches a keyboard function, a general application function and a file and task manager function.

Yonezawa (US # 6,542,191 B1) teaches a save function.

Friend et al. (US # 6,052,279) teaches a customizable hand-held computer.

Application/Control Number: 10/315,250                                   Page 16
Art Unit: 2174

30.     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Ian M. Purcell whose telephone number is (571) 272-

5755. The examiner can normally be reached on Monday - Friday 8:30 - 5:00.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Kristine Kincaid can be reached on (571) 272-4063. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).


                                        Ian M. Purcell
                                        Examiner

                                        *Kristine Kincaid*
                                        KRISTINE KINCAID
                                        SUPERVISORY PATENT EXAMINER
                                        TECHNOLOGY CENTER 2100

Application/Control Number: 10/315,250                                    Page 17
Art Unit: 2174

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| **Notice of References Cited** | | 10/315,250 | GOERTZ, MAGNUS |
| | | Examiner | Art Unit | Page 1 of 1 |
| | | Ian M. Purcell | 2174 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,988,246 B2 | 01-2006 | Kopitzke et al. | 715/810 |
| * | B | US-6,727,917 B1 | 04-2004 | Chew et al. | 715/765 |
| * | C | US-6,734,883 B1 | 05-2004 | Wynn et al. | 715/830 |
| * | D | US-6,052,279 | 04-2000 | Friend et al. | 361/686 |
| * | E | US-6,542,191 B1 | 04-2003 | Yonezawa, Hiroki | 348/333.01 |
| * | F | US-6,833,827 B2 | 12-2004 | Lui et al. | 345/173 |
| * | G | US-5,406,307 | 04-1995 | Hirayama et al. | 715/800 |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | Carlson, Jeff.  Visual Quickstart Guide Palm Organizers. Peachpit Press. 2000.  Berkeley, CA. Pages xiii, 12, 25, 26, 28-30, 40, 47, 246 and 253. |
| | V | Strietelmeier, Julie.  "Palm m100."  The Gadgeteer.  2000.  <http://www.the-gadgeteer.com/review/palm_m100_review>  Pages 1-8. |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20060308

| Index of Claims | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/315,250 | GOERTZ, MAGNUS |
| | Examiner | Art Unit |
| | Ian M. Purcell | 2174 |

| √ | Rejected | – | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | + | Restricted | I | Interference | O | Objected |

| Final | Original | 3/16/06 | | | | | | | | | Final | Original | | | | | | | | | | Final | Original | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | √ | | | | | | | | | | 51 | | | | | | | | | | | 101 | | | | | | | | |
| | 2 | √ | | | | | | | | | | 52 | | | | | | | | | | | 102 | | | | | | | | |
| | 3 | √ | | | | | | | | | | 53 | | | | | | | | | | | 103 | | | | | | | | |
| | 4 | √ | | | | | | | | | | 54 | | | | | | | | | | | 104 | | | | | | | | |
| | 5 | √ | | | | | | | | | | 55 | | | | | | | | | | | 105 | | | | | | | | |
| | 6 | √ | | | | | | | | | | 56 | | | | | | | | | | | 106 | | | | | | | | |
| | 7 | √ | | | | | | | | | | 57 | | | | | | | | | | | 107 | | | | | | | | |
| | 8 | √ | | | | | | | | | | 58 | | | | | | | | | | | 108 | | | | | | | | |
| | 9 | √ | | | | | | | | | | 59 | | | | | | | | | | | 109 | | | | | | | | |
| | 10 | √ | | | | | | | | | | 60 | | | | | | | | | | | 110 | | | | | | | | |
| | 11 | √ | | | | | | | | | | 61 | | | | | | | | | | | 111 | | | | | | | | |
| | 12 | √ | | | | | | | | | | 62 | | | | | | | | | | | 112 | | | | | | | | |
| | 13 | √ | | | | | | | | | | 63 | | | | | | | | | | | 113 | | | | | | | | |
| | 14 | √ | | | | | | | | | | 64 | | | | | | | | | | | 114 | | | | | | | | |
| | 15 | √ | | | | | | | | | | 65 | | | | | | | | | | | 115 | | | | | | | | |
| | 16 | √ | | | | | | | | | | 66 | | | | | | | | | | | 116 | | | | | | | | |
| | 17 | √ | | | | | | | | | | 67 | | | | | | | | | | | 117 | | | | | | | | |
| | 18 | √ | | | | | | | | | | 68 | | | | | | | | | | | 118 | | | | | | | | |
| | 19 | | | | | | | | | | | 69 | | | | | | | | | | | 119 | | | | | | | | |
| | 20 | | | | | | | | | | | 70 | | | | | | | | | | | 120 | | | | | | | | |
| | 21 | | | | | | | | | | | 71 | | | | | | | | | | | 121 | | | | | | | | |
| | 22 | | | | | | | | | | | 72 | | | | | | | | | | | 122 | | | | | | | | |
| | 23 | | | | | | | | | | | 73 | | | | | | | | | | | 123 | | | | | | | | |
| | 24 | | | | | | | | | | | 74 | | | | | | | | | | | 124 | | | | | | | | |
| | 25 | | | | | | | | | | | 75 | | | | | | | | | | | 125 | | | | | | | | |
| | 26 | | | | | | | | | | | 76 | | | | | | | | | | | 126 | | | | | | | | |
| | 27 | | | | | | | | | | | 77 | | | | | | | | | | | 127 | | | | | | | | |
| | 28 | | | | | | | | | | | 78 | | | | | | | | | | | 128 | | | | | | | | |
| | 29 | | | | | | | | | | | 79 | | | | | | | | | | | 129 | | | | | | | | |
| | 30 | | | | | | | | | | | 80 | | | | | | | | | | | 130 | | | | | | | | |
| | 31 | | | | | | | | | | | 81 | | | | | | | | | | | 131 | | | | | | | | |
| | 32 | | | | | | | | | | | 82 | | | | | | | | | | | 132 | | | | | | | | |
| | 33 | | | | | | | | | | | 83 | | | | | | | | | | | 133 | | | | | | | | |
| | 34 | | | | | | | | | | | 84 | | | | | | | | | | | 134 | | | | | | | | |
| | 35 | | | | | | | | | | | 85 | | | | | | | | | | | 135 | | | | | | | | |
| | 36 | | | | | | | | | | | 86 | | | | | | | | | | | 136 | | | | | | | | |
| | 37 | | | | | | | | | | | 87 | | | | | | | | | | | 137 | | | | | | | | |
| | 38 | | | | | | | | | | | 88 | | | | | | | | | | | 138 | | | | | | | | |
| | 39 | | | | | | | | | | | 89 | | | | | | | | | | | 139 | | | | | | | | |
| | 40 | | | | | | | | | | | 90 | | | | | | | | | | | 140 | | | | | | | | |
| | 41 | | | | | | | | | | | 91 | | | | | | | | | | | 141 | | | | | | | | |
| | 42 | | | | | | | | | | | 92 | | | | | | | | | | | 142 | | | | | | | | |
| | 43 | | | | | | | | | | | 93 | | | | | | | | | | | 143 | | | | | | | | |
| | 44 | | | | | | | | | | | 94 | | | | | | | | | | | 144 | | | | | | | | |
| | 45 | | | | | | | | | | | 95 | | | | | | | | | | | 145 | | | | | | | | |
| | 46 | | | | | | | | | | | 96 | | | | | | | | | | | 146 | | | | | | | | |
| | 47 | | | | | | | | | | | 97 | | | | | | | | | | | 147 | | | | | | | | |
| | 48 | | | | | | | | | | | 98 | | | | | | | | | | | 148 | | | | | | | | |
| | 49 | | | | | | | | | | | 99 | | | | | | | | | | | 149 | | | | | | | | |
| | 50 | | | | | | | | | | | 100 | | | | | | | | | | | 150 | | | | | | | | |

Part of Paper No.  20060308



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia  22313-1450
www.uspto.gov

Bib Data Sheet

**CONFIRMATION NO. 1226**

| SERIAL NUMBER 10/315,250 | FILING DATE 12/10/2002 RULE | CLASS 345 | GROUP ART UNIT 2174 | ATTORNEY DOCKET NO. 3682-32 |
|---|---|---|---|---|

APPLICANTS

   Magnus Goertz, Stockholm, SWEDEN;

** CONTINUING DATA ************************  None

** FOREIGN APPLICATIONS ********************  None

IF REQUIRED, FOREIGN FILING LICENSE GRANTED    ** SMALL ENTITY **
** 01/16/2003

| | STATE OR COUNTRY SWEDEN | SHEETS DRAWING 4 | TOTAL CLAIMS 18 | INDEPENDENT CLAIMS 1 |
|---|---|---|---|---|
| Foreign Priority claimed ☐ yes ☒ no<br>35 USC 119 (a-d) conditions met ☐ yes ☒ no ☐ Met after Allowance<br>Verified and Acknowledged  Examiner's Signature  Initials | | | | |

ADDRESS
23117
NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON , VA
22203

TITLE
User interface

| FILING FEE RECEIVED 440 | FEES: Authority has been given in Paper<br>No. _____ to charge/credit DEPOSIT ACCOUNT<br>No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |



***Search Notes***

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 10/315,250 | GOERTZ, MAGNUS |
| Examiner | Art Unit |
| Ian M. Purcell | 2174 |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| 715 | 864 | 3/13/2006 | IP |
| 715 | 702 | 3/8/2006 | IP |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | | |
|---|---|---|
| | DATE | EXMR |
| See EAST Search History | 3/16/2006 | IP |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

U.S. Patent and Trademark Office

Part of Paper No.  20060308

# EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| S2 | 1 | ("20040109013").PN. | US-PGPUB; USPAT | OR | OFF | 2006/03/15 10:39 |
| S3 | 2 | goertz-magnus.in. | US-PGPUB; USPAT | OR | ON | 2006/03/08 17:25 |
| S4 | 1 | (((handheld adj computer)or pda) near2 enclosure).ti. | US-PGPUB; USPAT | OR | ON | 2006/03/05 18:56 |
| S5 | 22 | (((handheld adj computer)or pda) near2 enclosure) | US-PGPUB; USPAT | OR | ON | 2006/03/05 18:56 |
| S6 | 50 | ("5671420" "5978568" "5905862" "4949248" "5367573" "5692191" "5983259" "6035303" "6098158" "4336458" "4357021" "4368669" "4503533" "4506336" "4782463" "5016308" "5178418" "5301269" "5392212" "5428744" "5442788" "5524199" "5524200" "5526018" "5533148" "5544301" "5546534" "5555369" "5555368" "5559903" "5561811" "5568770" "5570109" "5596639" "5598534" "5636133" "5642495" "5664208" "5677710" "5733278" "5740455" "5781901" "5793498" "5796402" "5796397" "5864848" "5870611" "5881286" "5881242" "5897644").pn. | US-PGPUB; USPAT | OR | ON | 2006/03/08 16:39 |
| S7 | 245 | 715/864.ccls. | US-PGPUB; USPAT | OR | ON | 2006/03/09 15:23 |
| S8 | 5702 | S7 ((menu and display) with area) | US-PGPUB; USPAT | OR | ON | 2006/03/08 17:28 |
| S9 | 245 | S8 and S7 | US-PGPUB; USPAT | OR | ON | 2006/03/08 17:28 |
| S10 | 464 | S7 ((menu and display) adj area) | US-PGPUB; USPAT | OR | ON | 2006/03/08 17:28 |
| S11 | 245 | S10 and S7 | US-PGPUB; USPAT | OR | ON | 2006/03/08 17:30 |
| S12 | 12754 | (touch adj sensitive) or (tactile adj based) | US-PGPUB; USPAT | OR | ON | 2006/03/08 17:31 |
| S13 | 54 | S12 and S7 | US-PGPUB; USPAT | OR | ON | 2006/03/08 18:00 |
| S14 | 106 | 715/702.ccls. | US-PGPUB; USPAT | OR | ON | 2006/03/08 18:00 |
| S15 | 1 | S14 and S7 | US-PGPUB; USPAT | OR | ON | 2006/03/08 18:01 |
| S16 | 25 | S14 and S12 | US-PGPUB; USPAT | OR | ON | 2006/03/08 18:01 |
| S17 | 20 | ("5327161" \| "5406307" \| "5473745" \| "5594471" \| "5617526" \| "5745109" \| "5757368" \| "5757371" \| "5910802").PN. OR ("6304261").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2006/03/08 18:11 |
| S18 | 14 | ("4475239" \| "4839634" \| "4855725" \| "4965558" \| "5075675" \| "5347628").PN. OR ("6100878").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2006/03/09 09:11 |

# EAST Search History

| S19 | 92 | ("3761877" | "3772685" | "3832693" | "3990070" | "4058849" | "4125873" | "4190833" | "4363029" | "4639720").PN. OR ("4839634"). URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2006/03/09 09:14 |
|-----|----|-------|------------------------|----|----|------------------|
| S20 | 134 | ("3699439" | "3832693" | "4016542" | "4055726" | "4071691" | "4112415" | "4129747" | "4177354" | "4184147" | "4198539" | "4262281" | "4293734" | "4302011" | "4318096" | "4353552" | "4365235" | "4371746" | "4456787" | "4475239" | "4520357" | "4641354" | "4672677" | "4679241" | "4680430" | "4680804" | "4764885" | "4786765" | "4831556" | "4839634" | "4972496" | "5050105" | "5053758" | "5151950").PN. OR ("5347295"). URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2006/03/09 09:52 |
| S21 | 46 | ("3603983" | "3617666" | "3864024" | "3911215" | "4017858" | "4180711" | "4220815" | "4373124" | "4594482" | "4604605" | "4607147" | "4626961" | "4707570" | "4734218" | "4737310" | "4740781" | "4745241" | "4778619" | "4780531" | "4815826" | "4838660" | "4839634" | "4841290" | "Re28365").PN. OR ("4990900").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2006/03/09 09:55 |
| S22 | 4 | kang-beng-hong.in. | US-PGPUB; USPAT | OR | ON | 2006/03/09 14:29 |
| S23 | 247 | 715/864.ccls. | US-PGPUB; USPAT | OR | ON | 2006/03/10 11:19 |
| S24 | 37 | S23 and drag$4 | US-PGPUB; USPAT | OR | ON | 2006/03/09 15:23 |
| S25 | 34 | hirayama-tomoshi.in. | US-PGPUB; USPAT | OR | ON | 2006/03/09 16:30 |
| S26 | 2 | S25 and (display and menu and drag$4) | US-PGPUB; USPAT | OR | ON | 2006/03/09 17:04 |
| S27 | 5 | S25 and (display and "45" and drag$4) | US-PGPUB; USPAT | OR | ON | 2006/03/09 17:04 |

# EAST Search History

| S28 | 72 | (US-20050229117-$ or US-20050120312-$ or US-20050114797-$ or US-20030007018-$ or US-20050102639-$ or US-20020060702-$ or US-20020078143-$ or US-20040160442-$ or US-20030005003-$ or US-20020050996-$ or US-20040109013-$ or US-20060010405-$ or US-20030081016-$ or US-20030081015-$ or US-20030001909-$ or US-20060026521-$ or US-20030231197-$).did. or (US-5949408-$ or US-5917493-$ or US-7007239-$ or US-6938220-$ or US-6956562-$ or US-6938222-$ or US-6801190-$ or US-6938221-$ or US-6876368-$ or US-6833827-$ or US-6356287-$ or US-6100878-$ or US-5406307-$ or US-5903268-$ or US-5424966-$ or US-5796397-$ or US-5677710-$ or US-5570109-$ or US-5555369-$ or US-4782463-$ or US-6980200-$ or US-6904570-$ or US-6882865-$ or US-6996784-$ or US-6741235-$ or US-6714220-$).did. or (US-6335725-$ or US-6304261-$ or US-5627567-$ or US-5821930-$ or US-5910802-$ or US-5757371-$ or US-5594471-$ or US-5327161-$ or US-4839634-$ or US-5757368-$ or US-6502114-$ or US-5453761-$ or US-5347295-$ or US-5570113-$ or US-6903730-$ or US-6664991-$ or US-6094197-$ or US-6262719-$ or US-6181344-$ or US-5798758-$ or US-5760773-$ or US-5726687-$ or US-5583543-$ or US-5523775-$ or US-5517578-$ or US-5502803-$ or US-4680804-$).did. or (US-5524201-$ or US-5483261-$).did. | US-PGPUB; USPAT | OR | ON | 2006/03/10 09:06 |
|-----|-----|-----|-----|-----|-----|-----|
| S29 | 1 | S28 and ((task adj manager) or (file adj manager)) | US-PGPUB; USPAT | OR | ON | 2006/03/10 11:24 |
| S30 | 44 | S28 and ((task) or (file)) | US-PGPUB; USPAT | OR | ON | 2006/03/10 09:08 |
| S31 | 4 | S28 and ((task) with (file)) | US-PGPUB; USPAT | OR | ON | 2006/03/10 09:09 |
| S32 | 13 | S28 and ((task or file) with manage$4) | US-PGPUB; USPAT | OR | ON | 2006/03/10 12:05 |
| S33 | 0 | S28 and ((taskmanage$4 or filemanage$4)) | US-PGPUB; USPAT | OR | ON | 2006/03/10 11:32 |
| S34 | 0 | S28 and ((task-manage$4 or file-manage$4)) | US-PGPUB; USPAT | OR | ON | 2006/03/10 11:33 |
| S35 | 247 | 715/864.ccls. | US-PGPUB; USPAT | OR | ON | 2006/03/10 11:30 |
| S36 | 1 | S35 and ((task adj manager) or (file adj manager)) | US-PGPUB; USPAT | OR | ON | 2006/03/10 11:30 |
| S37 | 0 | S35 and ((taskmanage$4 or filemanage$4)) | US-PGPUB; USPAT | OR | ON | 2006/03/10 11:33 |
| S38 | 0 | S35 and ((task-manage$4 or file-manage$4)) | US-PGPUB; USPAT | OR | ON | 2006/03/10 11:33 |

# EAST Search History

| S39 | 18 | S35 and ((task or file) with manage$4) | US-PGPUB; USPAT | OR | ON | 2006/03/10 11:33 |
|---|---|---|---|---|---|---|
| S40 | 72 | (US-20050229117-$ or US-20050120312-$ or US-20050114797-$ or US-20030007018-$ or US-20050102639-$ or US-20020060702-$ or US-20020078143-$ or US-20040160442-$ or US-20030005003-$ or US-20020050996-$ or US-20040109013-$ or US-20060010405-$ or US-20030081016-$ or US-20030081015-$ or US-20030001909-$ or US-20060026521-$ or US-20030231197-$).did. or (US-5949408-$ or US-5917493-$ or US-7007239-$ or US-6938220-$ or US-6956562-$ or US-6938222-$ or US-6801190-$ or US-6938221-$ or US-6876368-$ or US-6833827-$ or US-6356287-$ or US-6100878-$ or US-5406307-$ or US-5903268-$ or US-5424966-$ or US-5796397-$ or US-5677710-$ or US-5570109-$ or US-5555369-$ or US-4782463-$ or US-6980200-$ or US-6904570-$ or US-6882865-$ or US-6996784-$ or US-6741235-$ or US-6714220-$).did. or (US-6335725-$ or US-6304261-$ or US-5627567-$ or US-5821930-$ or US-5910802-$ or US-5757371-$ or US-5594471-$ or US-5327161-$ or US-4839634-$ or US-5757368-$ or US-6502114-$ or US-5453761-$ or US-5347295-$ or US-5570113-$ or US-6903730-$ or US-6664991-$ or US-6094197-$ or US-6262719-$ or US-6181344-$ or US-5798758-$ or US-5760773-$ or US-5726687-$ or US-5583543-$ or US-5523775-$ or US-5517578-$ or US-5502803-$ or US-4680804-$).did. or (US-5524201-$ or US-5483261-$).did. | US-PGPUB; USPAT | OR | ON | 2006/03/10 12:18 |
| S41 | 13 | S40 and ((task or file) with manage$4) | US-PGPUB; USPAT | OR | ON | 2006/03/10 11:33 |
| S42 | 13 | S39 not S41 | US-PGPUB; USPAT | OR | ON | 2006/03/10 11:34 |
| S43 | 18 | S35 and ((task or file) with manage$4) | US-PGPUB; USPAT | OR | ON | 2006/03/10 12:05 |
| S44 | 5 | S43 not S42 | US-PGPUB; USPAT | OR | ON | 2006/03/10 12:15 |
| S45 | 1 | S40 and (start adj menu) | US-PGPUB; USPAT | OR | ON | 2006/03/10 12:38 |
| S46 | 32 | chew-chee-h.in. | US-PGPUB; USPAT | OR | ON | 2006/03/10 12:38 |
| S47 | 3 | ("5588105" | "5666438" | "6243071").PN. OR ("6727917").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2006/03/10 12:42 |

# EAST Search History

| S48 | 80 | (US-20050216867-$ or US-20060010405-$ or US-20030001909-$ or US-20020078143-$ or US-20030007018-$ or US-20050229117-$ or US-20050120312-$ or US-20050114797-$ or US-20040160442-$ or US-20030231197-$ or US-20030081016-$ or US-20030081015-$ or US-20060026521-$ or US-20020060702-$ or US-20020050996-$ or US-20050102639-$ or US-20040109013-$ or US-20030005003-$).did. or (US-6674453-$ or US-5757371-$ or US-6996784-$ or US-7007239-$ or US-6956562-$ or US-6938221-$ or US-6938220-$ or US-6903730-$ or US-6882865-$ or US-6876368-$ or US-6801190-$ or US-6980200-$ or US-6741235-$ or US-6664991-$ or US-6938222-$ or US-6502114-$ or US-6356287-$ or US-6335725-$ or US-6904570-$ or US-6304261-$ or US-6262719-$ or US-6181344-$ or US-6833827-$ or US-6100878-$ or US-6094197-$ or US-5949408-$).did. or (US-6714220-$ or US-5917493-$ or US-5910802-$ or US-5903268-$ or US-5798758-$ or US-5796397-$ or US-5760773-$ or US-5757368-$ or US-5726687-$ or US-5677710-$ or US-5627567-$ or US-5594471-$ or US-5583543-$ or US-5570113-$ or US-5570109-$ or US-5555369-$ or US-5524201-$ or US-5821930-$ or US-5523775-$ or US-5517578-$ or US-5483261-$ or US-5453761-$ or US-5424966-$ or US-5347295-$ or US-5327161-$ or US-4839634-$ or US-4680804-$).did. or (US-6072486-$ or US-5502803-$ or US-5920316-$ or US-5680559-$ or US-5406307-$ or US-4782463-$ or US-6727917-$ or US-6008806-$ or US-5673406-$).did. | US-PGPUB; USPAT | OR | ON | 2006/03/13 10:16 |
| S49 | 27 | S48 and ((several or multiple or plurality) near2 (application or program or process or window)) | US-PGPUB; USPAT | OR | ON | 2006/03/13 10:17 |

# EAST Search History

| S50 | 80 | (US-20050216867-$ or US-20060010405-$ or US-20030001909-$ or US-20020078143-$ or US-20030007018-$ or US-20050229117-$ or US-20050120312-$ or US-20050114797-$ or US-20040160442-$ or US-20030231197-$ or US-20030081016-$ or US-20030081015-$ or US-20060026521-$ or US-20020060702-$ or US-20020050996-$ or US-20050102639-$ or US-20040109013-$ or US-20030005003-$).did. or (US-6674453-$ or US-5757371-$ or US-6996784-$ or US-7007239-$ or US-6956562-$ or US-6938221-$ or US-6938220-$ or US-6903730-$ or US-6882865-$ or US-6876368-$ or US-6801190-$ or US-6980200-$ or US-6741235-$ or US-6664991-$ or US-6938222-$ or US-6502114-$ or US-6356287-$ or US-6335725-$ or US-6904570-$ or US-6304261-$ or US-6262719-$ or US-6181344-$ or US-6833827-$ or US-6100878-$ or US-6094197-$ or US-5949408-$).did. or (US-6714220-$ or US-5917493-$ or US-5910802-$ or US-5903268-$ or US-5798758-$ or US-5796397-$ or US-5760773-$ or US-5757368-$ or US-5726687-$ or US-5677710-$ or US-5627567-$ or US-5594471-$ or US-5583543-$ or US-5570113-$ or US-5570109-$ or US-5555369-$ or US-5524201-$ or US-5821930-$ or US-5523775-$ or US-5517578-$ or US-5483261-$ or US-5453761-$ or US-5424966-$ or US-5347295-$ or US-5327161-$ or US-4839634-$ or US-4680804-$).did. or (US-6072486-$ or US-5502803-$ or US-5920316-$ or US-5680559-$ or US-5406307-$ or US-4782463-$ or US-6727917-$ or US-6008806-$ or US-5673406-$).did. | US-PGPUB; USPAT | OR | ON | 2006/03/13 11:55 |
|-----|----|---|---|---|---|---|
| S51 | 30 | S50 and help | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:28 |
| S52 | 247 | 715/864.ccls. | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:28 |
| S53 | 67 | S52 and help | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:53 |
| S54 | 23811 | "715"/$.ccls. | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:53 |
| S55 | 5557 | help near2 (button or menu or icon) | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:54 |
| S56 | 1155 | S54 and S55 | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:54 |
| S57 | 247 | S54 and S52 | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:54 |
| S58 | 4116 | help adj (button or menu or icon) | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:54 |

# EAST Search History

| S59 | 15 | S52 and S55 | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:59 |
|-----|-----|-------------|-----------------|-----|-----|-------------------|
| S60 | 467 | S52 ((menu and display) adj area) | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:59 |
| S61 | 247 | S60 and S52 | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:59 |
| S62 | 106 | 715/702.ccls. | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:59 |
| S63 | 1 | S62 and S61 | US-PGPUB; USPAT | OR | ON | 2006/03/13 13:01 |
| S64 | 2 | S62 and S55 | US-PGPUB; USPAT | OR | ON | 2006/03/13 12:59 |
| S65 | 0 | S62 and S58 | US-PGPUB; USPAT | OR | ON | 2006/03/13 13:01 |
| S66 | 25 | S62 and help | US-PGPUB; USPAT | OR | ON | 2006/03/13 14:30 |
| S67 | 26 | S50 and sav$3 | US-PGPUB; USPAT | OR | ON | 2006/03/13 15:37 |
| S68 | 2 | S52 and (sav$3 near2 text) | US-PGPUB; USPAT | OR | ON | 2006/03/13 15:45 |
| S69 | 7 | S52 and (sav$3 with text) | US-PGPUB; USPAT | OR | ON | 2006/03/13 15:51 |
| S70 | 3 | S62 and (sav$3 with text) | US-PGPUB; USPAT | OR | ON | 2006/03/13 15:53 |
| S71 | 41 | S54 and (sav$3 with text with delet$3) | US-PGPUB; USPAT | OR | ON | 2006/03/13 15:54 |
| S72 | 18 | S54 and ((sav$3 with text with delet$3) and (phone or telephone or (text adj message))) | US-PGPUB; USPAT | OR | ON | 2006/03/13 15:55 |
| S73 | 176 | S54 and ((file adj (menu or button or icon)) with save) | US-PGPUB; USPAT | OR | ON | 2006/03/13 16:25 |
| S74 | 47 | S54 and (((file adj (menu or button or icon)) with save) and (telephone or phone or (text adj message))) | US-PGPUB; USPAT | OR | ON | 2006/03/13 16:25 |
| S78 | 1 | ("6542191").PN. | US-PGPUB; USPAT | OR | OFF | 2006/03/13 17:11 |
| S79 | 1982 | (remov$4 and exchang$4) same enclosure | US-PGPUB; USPAT | OR | ON | 2006/03/13 18:32 |
| S80 | 5 | S54 and S79 | US-PGPUB; USPAT | OR | ON | 2006/03/13 18:30 |
| S81 | 0 | S80 and (hand or portable or pda) | US-PGPUB; USPAT | OR | ON | 2006/03/13 18:31 |
| S82 | 0 | S80 and (handheld or hand-held or portable or pda or phone) | US-PGPUB; USPAT | OR | ON | 2006/03/13 18:32 |
| S83 | 0 | S82 and S79 | US-PGPUB; USPAT | OR | ON | 2006/03/13 18:32 |
| S84 | 302 | S79 and (handheld or hand-held or portable or pda or phone) | US-PGPUB; USPAT | OR | ON | 2006/03/13 18:33 |
| S85 | 916 | (remov$4 and exchang$4) with enclosure | US-PGPUB; USPAT | OR | ON | 2006/03/13 18:38 |

# EAST Search History

| S86 | 126 | S85 and (handheld or hand-held or portable or pda or phone) | US-PGPUB; USPAT | OR | ON | 2006/03/13 18:39 |
|---|---|---|---|---|---|---|
| S87 | 0 | (removable and exchangable) with enclosure | US-PGPUB; USPAT | OR | ON | 2006/03/13 18:39 |
| S88 | 4927 | (removable or exchangable) with enclosure | US-PGPUB; USPAT | OR | ON | 2006/03/13 18:40 |
| S89 | 1144 | S88 and (handheld or hand-held or portable or pda or phone) | US-PGPUB; USPAT | OR | ON | 2006/03/13 18:39 |
| S90 | 182 | (removable or exchangable) with enclosure with (handheld or hand-held or portable or pda or phone or cellphone or telephone) | US-PGPUB; USPAT | OR | ON | 2006/03/13 18:40 |
| S91 | 9 | ("20010034250" \| "5768100" \| "6035214" \| "6052279" \| "6085112" \| "6137686" \| "6157533" \| "6259932" \| "6317315").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2006/03/13 18:50 |
| S92 | 120 | 715/823.ccls. | US-PGPUB; USPAT | OR | ON | 2006/03/14 16:44 |
| S93 | 399 | ((hard or physical or mechanical) adj (key or button)) with ((soft) adj (button or key)) | US-PGPUB; USPAT | OR | ON | 2006/03/14 16:46 |
| S94 | 8 | ((hard or physical or mechanical) adj (key or button)) with ((soft) adj (button or key)) with (interchang$4 or instead) | US-PGPUB; USPAT | OR | ON | 2006/03/14 16:50 |
| S95 | 364236 | S93 (portable or handheld or hand-held or pda) | US-PGPUB; USPAT | OR | ON | 2006/03/14 16:50 |
| S96 | 399 | S93 and S95 | US-PGPUB; USPAT | OR | ON | 2006/03/14 16:51 |
| S97 | 114 | 715/860.ccls. | US-PGPUB; USPAT | OR | ON | 2006/03/15 10:39 |
| S98 | 52 | S97 and (speed or fast$2 or slow$2) | US-PGPUB; USPAT | OR | ON | 2006/03/15 10:56 |
| S99 | 0 | ((cursor or pointer or mouse) adj speed with (fast$2 or slow$2) with (highlight$3 or high-light$3)) | US-PGPUB; USPAT | OR | ON | 2006/03/15 10:55 |
| S100 | 1 | ((cursor or pointer or mouse or marker) with speed with (fast$2 or slow$2 or low$2) with (highlight$3 or high-light$3)) | US-PGPUB; USPAT | OR | ON | 2006/03/15 10:56 |
| S101 | 0 | 715/830.ccls | US-PGPUB; USPAT | OR | ON | 2006/03/15 10:56 |
| S102 | 55 | 715/830.ccls. | US-PGPUB; USPAT | OR | ON | 2006/03/15 10:56 |
| S103 | 42 | S102 and (speed or fast$2 or slow$2 or low$2) | US-PGPUB; USPAT | OR | ON | 2006/03/15 10:57 |
| S104 | 9 | ("4879648" \| "5363481" \| "5721847" \| "5790115" \| "5844560" \| "6144378" \| "6295057" \| "6300967" \| "6388686").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2006/03/15 12:15 |
| S105 | 106 | 715/702.ccls. | US-PGPUB; USPAT; USOCR | OR | ON | 2006/03/15 12:16 |
| S106 | 28 | S105 and ((cursor or marking or marker or pointer or mouse or stylus or finger) with (speed or low$2 or slow$2 or fast$2)) | US-PGPUB; USPAT; USOCR | OR | ON | 2006/03/15 12:17 |

# EAST Search History

| S10 7 | 2 | goertz-magnus.in. | | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT ; IBM_TDB | OR | ON | 2006/03/15 16:32 |
|---|---|---|---|---|---|---|---|

10315250

PLUS Search Results for S/N 10315250, Searched March 06, 2006

The Patent Linguistics Utility System (PLUS) is a USPTO automated search
system for U.S. Patents from 1971 to the present.  PLUS is a
query-by-example search system which produces a list of patents that are
most closely related linguistically to the application searched.  This
search was prepared by the staff of the Scientific and Technical
Information Center, SIRA.

5671420
5978568
5905862
4949248
5367573
5692191
5983259
6035303
6098158
4336458
4357021
4368669
4503533
4506336
4782463
5016308
5178418
5301269
5392212
5428744
5442788
5524199
5524200
5526018
5533148
5544301
5546534
5555369
5555368
5559903
5561811
5568770
5570109
5596639
5598534
5636133
5642495
5664208
5677710
5733278
5740455
5781901
5793498
5796402
5796397
5864848
5870611
5881286
5881242
5897644

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:                                        Attention: Application Branch

GOERTZ                                                             Atty. Dkt.   3682-32

Serial No.  10/315,250

Filed:   December 10, 2002                                         Date:   March 10, 2003

For:   USER INTERFACE

Assistant Commissioner for Patents
Washington, D.C. 20231

The attached completes filing of the above-identified patent application:

☒  **Correspondence Address Indication Form Attached.**

☒  Signed Rule 63 Declaration alone, ☐ Copy of Declaration from prior application alone, OR
☐  Signed Declaration plus attached copy of originally filed specification/drawings.
☒  **NOTICE TO FILE MISSING PARTS OF APPLICATION FILING DATE GRANTED** form.
☐  Record the attached assignment and return to the undersigned.
☐  Attached is a Power of Attorney.
☐  Priority is hereby claimed under 35 U.S.C. § 119 based on the following foreign applications:
    **Application Number**                 **Country**              **Day/Month/Year Filed**


respectively.
☐  Certified copy(ies) of foreign application(s) is/are attached.
☐  Certified copy(ies) filed on _____ in prior application no. _____, filed _____.
☒  Applicant claims "small entity" status. ☐  "Small entity" statement attached.
☐  Please enter the attached and/or below preliminary amendment prior to calculation of filing fee.
☐  Also attached: ☐ **Information Disclosure Statement;** ☐ **Nucleotide and/or Amino Acid**
    **Sequence Submission;** ☐ **Other:**

**Fees due are calculated below:**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Basic filing fee | | | | | | $ | 750.00 |
| Total Effective claims | 18 | - 20 = | 0 | x $ | 18.00 | $ | 0.00 |
| Independent claims | 1 | - 3 = | 0 | x $ | 84.00 | $ | 0.00 |
| If any proper multiple dependent claims now added for first time, add $280.00 (ignore improper) | | | | | | $ | 0.00 |
| | | | | | **FILING FEE** | $ | 750.00 |

Petition is hereby made to extend the current due date so as to cover the filing date of this paper
and attachment(s) ($110.00/1 month; $410.00/2 months; $930.00/3 months; $1450.00/4 months)  $

| | | |
|---|---|---|
| Surcharge ($130.00) if Declaration or filing fee first now submitted | $ | 130.00 |
| English translation of specification and claims ($130.00) | $ | 0.00 |
| **FIRST SUBTOTAL** | $ | 880.00 |
| If "small entity," enter half (½) of subtotal and subtract | -$ | 440.00 |
| **SECOND SUBTOTAL** | $ | 440.00 |
| Assignment Recording Fee ($40.00) | $ | 0.00 |
| **TOTAL FEE DUE** | $ | 440.00 |
| Check enclosed (Pre-Bill)* | $ | 440.00 |
| Check enclosed (non Pre-Bill)* | $ | |
| **TOTAL FEE ENCLOSED** | $ | **440.00** |

Any future submission requiring an extension of time is hereby stated to include a petition for such time extension.
The Commissioner is hereby authorized to charge any deficiency, or credit any overpayment, in the fee(s) filed, or
asserted to be filed, or which should have been filed herewith (or with any paper hereafter filed in this application
by this firm) to our **Account No. 14-1140**.  A duplicate copy of this sheet is attached.

1100 North Glebe Road, 8th Floor                    NIXON & VANDERHYE P.C.
Arlington, Virginia 22201-4714                      By Atty:  Richard G. Besha, Reg. No. 22,770
Telephone:  (703) 816-4000
Facsimile:  (703) 816-4100
RGB:alm                                             Signature:  _Richard Besha_

 

**UNITED STATES
PATENT AND
TRADEMARK OFFICE**

OIPE
MAR 1 0 2003

Commissioner for Patents
Washington, DC 20231
www.uspto.gov

| APPLICATION NUMBER | FILING/RECEIPT DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NUMBER |
|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 |

**CONFIRMATION NO. 1226**

NIXON & VANDERHYE P.C.
8th Floor
1100 North Glebe Road
Arlington, VA 22201

**FORMALITIES LETTER**

*OC000000009390646*

Date Mailed: 01/16/2003

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

#### *Filing Date Granted*

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
  *Applicant must submit $ 370 to complete the basic filing fee for a small entity.*
- The oath or declaration is missing.
  *A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.*
- To avoid abandonment, a late filing fee or oath or declaration surcharge as set forth in 37 CFR 1.16(e) of $65 for a small entity in compliance with 37 CFR 1.27, must be submitted with the missing items identified in this letter.

**SUMMARY OF FEES DUE:**

Total additional fee(s) required for this application is **$435** for a Small Entity

- $370 Statutory basic filing fee.
- $65 Late oath or declaration Surcharge.

03/13/2003 BNGUYEN1 00000018 10315250

01 FC:2001                                     375.00 OP
02 FC:2051                                      65.00 OP

*A copy of this notice **MUST** be returned with the reply.*

Customer Service Center
Initial Patent Examination Division (703) 308-1202
PART 2 - COPY TO BE RETURNED WITH RESPONSE

3682-32
P02-700/UK/MLE

Nixon & Vanderhye P.C. (10/89)
(Domestic Non-Assigned/Foreign)   Page 1

**RULE 63 (37 C.F.R. 1.63)**
**INVENTORS DECLARATION FOR PATENT APPLICATION**
**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

As a below named inventor, I hereby declare that my residence, mailing address and citizenship are as stated below next to my name, and I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:
USER INTERFACE

the specification of which (check applicable box(s)):

[ ]   is attached hereto

[X]   was filed on        December 10, 2002        as U.S. Application Serial No.        Unassigned        (Atty. Dkt. No. 3682-32)

[ ]   was filed as PCT International application No.                                      on

and (if applicable to U.S. or PCT application) was amended on

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above. I acknowledge the duty to disclose to the Patent Office all information known to me to be material to patentability as defined in 37 C.F.R. 1.56. I hereby claim foreign priority benefits under 35 U.S.C. 119/365 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed or, if no priority is claimed, before the filing date of this application:
Priority Foreign Application(s):

| Application Number | Country | Day/Month/Year Filed |
|---|---|---|
| | | |

I hereby claim the benefit under 35 U.S.C. §119(e) of any United States provisional application(s) listed below.

| Application Number | Date/Month/Year Filed |
|---|---|
| | |

I hereby claim the benefit under 35 U.S.C. 120/365 of all prior United States and PCT international applications listed above or below:

| Prior U.S./PCT Application(s): Application Serial No. | Day/Month/Year Filed | Status: patented pending, abandoned |
|---|---|---|
| | | |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon. And on behalf of the owner(s) hereof, I hereby appoint NIXON & VANDERHYE P.C., 1100 North Glebe Rd., 8th Floor, Arlington, VA 22201-4714, telephone number (703) 816-4000 (to whom all communications are to be directed), and the following attorneys thereof (of the same address) individually and collectively owner's/owners' attorneys to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith and with the resulting patent: Larry S. Nixon, 25640; Arthur R. Crawford, 25327; James T. Hosmer, 30184; Robert W. Faris, 31352; Richard G. Besha, 22770; Mark E. Nusbaum, 32348; Michael J. Keenan, 32106; Bryan H. Davidson, 30251; Stanley C. Spooner, 27393; Leonard C. Mitchard, 29009; Duane M. Byers, 33363; Jeffry H. Nelson, 30481; John R. Lastova, 33149; H. Warren Burnam, Jr. 29366; Mary J. Wilson, 32955; J. Scott Davidson, 33489; Alan M. Kagen, 36178; Robert A. Molan, 29834; B. J. Sadoff, 36663; James D. Berquist, 34776; Updeep S. Gill, 37334; Michael J. Shea, 34725; Donald L. Jackson, 41090; Michelle N. Lester, 32331; Frank P. Presta, 19828; Joseph S. Presta, 35329; Joseph A. Rhoa, 37515; Raymond Y. Mah, 41426; Chris Comuntzis, 31097; Gary R. Tanigawa, 43180. I also authorize Nixon & Vanderhye to delete any attorney names/numbers no longer with the firm and to act and rely solely on instructions directly communicated from the person, assignee, attorney, firm, or other organization sending instructions to Nixon & Vanderhye on behalf of the owner(s).

1.   Inventor's Signature: _____        Date: 2003-03-05

Inventor: Magnus _____ GOERTZ        Swedish
         (first)        MI        (last)        (citizenship)
                                   (state/country)  SWEDEN

Residence: (city)   Stockholm
Mailing Address:    Engelbrektsgatan 14A, Stockholm, SWEDEN
         (Zip Code)  SE-114 32

2.   Inventor's Signature: _____        Date: _____

Inventor: _____
         (first)        MI        (last)        (citizenship)
                                   (state/country)

Residence: (city)   _____
Mailing Address:    _____
         (Zip Code)  _____

**[ ]** *See attached sheet(s) for additional inventor(s) information!!*

Please type a plus sign (+) inside this box → + 

PTO/SB/121 (10-00)
Approved for use through 10/31/2002. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# CORRESPONDENCE ADDRESS INDICATION FORM

**Address to:**

Assistant Commissioner for Patents
Box CN
Washington, DC 20231



Direct all correspondence to:

☒ **Customer Number:** **23117**

**OR**

*Type Customer Number here*

Place Customer
Number Bar
Label Here →

☐ Request for Customer Number (PTO/SB/125) submitted herewith.

in the following listed application(s) or patent(s):

| Patent Number (if appropriate) | Application Number | Patent Date (if appropriate) | U.S. Filing Date |
|---|---|---|---|
| | 10/315,250 | | December 10, 2002 |

| | | (check one) |
|---|---|---|
| Typed or Printed Name | Richard G. Besha | ☐ Applicant or Patentee |
| Signature | *Richard Besha* | ☐ Assignee of record of the entire interest. Statement under 37 C.F.R. § 3.73(b) is enclosed. (Form PTO/SB/96) |
| Date | March 10, 2003 | |
| Address of signer: | 1100 North Glebe Road, 8th Floor Arlington, VA 22202 | ☒ Attorney or Agent of record<br><br>22,770<br>(Reg. No.) |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☒ *Total of | 1 | forms are submitted.

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS: SEND TO: Assistant Commissioner of Patents, Box CN, Washington, DC 20231.

717321



UNITED STATES
PATENT AND
TRADEMARK OFFICE

Commissioner for Patents
Washington, DC 20231
www.uspto.gov

| APPLICATION NUMBER | FILING RECEIPT DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NUMBER |
|---|---|---|---|
| 10/315,250 | 12/10/2002 | Magnus Goertz | 3682-32 |

NIXON & VANDERHYE P.C.
8th Floor
1100 North Glebe Road
Arlington, VA 22201

CONFIRMATION NO. 1226
**FORMALITIES LETTER**

*OC000000009390646*

Date Mailed: 01/16/2003

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

#### *Filing Date Granted*

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
  *Applicant must submit $ 370 to complete the basic filing fee for a small entity.*
- The oath or declaration is missing.
  *A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.*
- To avoid abandonment, a late filing fee or oath or declaration surcharge as set forth in 37 CFR 1.16(e) of $65 for a small entity in compliance with 37 CFR 1.27, must be submitted with the missing items identified in this letter.

**SUMMARY OF FEES DUE:**

Total additional fee(s) required for this application is **$435** for a Small Entity

- **$370** Statutory basic filing fee.
- **$65** Late oath or declaration Surcharge.

---

*A copy of this notice __MUST__ be returned with the reply.*

Customer Service Center
Initial Patent Examination Division (703) 308-1202

PART 3 - OFFICE COPY

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**REQUEST FOR FILING APPLICATION UNDER 37 C.F.R. 1.53(b)**
**WITHOUT FILING FEE *AND/OR* WITHOUT EXECUTED INVENTOR'S DECLARATION**

Assistant Commissioner for Patents          Atty. Dkt. 3682-32
Washington, DC 20231

Date: December 10, 2002

This a request for filing a new PATENT APPLICATION under Rule 53(b) entitled:

**USER INTERFACE**

without a filing fee and/or without an executed inventor's oath/declaration.
This application is made by the below identified inventor(s). Attached hereto are the following papers:

☐ Newly executed Declaration, ☐ Copy of Declaration from prior application, ☒ Abstract
13 pages of specification and claims (including 18 numbered claims), and
4 sheets of accompanying drawing/s.
☐ Record the attached assignment and return to the undersigned.
☐ Attached is a Power of Attorney.
☐ Priority is hereby claimed under 35 U.S.C. § 119 based on the following foreign applications:

**Application Number**              **Country**              **Day/Month/Year Filed**

, respectively, the entire content of which is hereby incorporated by reference in this application..
☐ Certified copy(ies) of foreign application(s) is/are attached.
☐ Certified copy(ies) filed on _____ in prior application no. _____ filed _____
☐ Please amend the specification by inserting the following paragraph before the first line: --This application claims the benefit of Provisional Application No. ____, filed ____, the entire content of which is hereby incorporated by reference in this application.--
☐ Please amend the specification by inserting the following paragraph before the first line: --This application is a ☐ continuation/☐ division/☐ continuation-in-part of Application No. ____, filed ____, ____, the entire content of which is hereby incorporated by reference in this application.--
☐ Petition filed in prior application to extend its life to insure co-pendency.
☐ The prior application is assigned to
☐ It is hereby requested that the Examiner consider the art cited in the above parent application(s) by applicant and/or the Examiner for the reasons stated therein. A listing of that art is attached, but pursuant to Rule 98(d) copies are not required.
☒ Applicant claims "small entity" status.     ☐ "Small entity" statement attached.
☒ Please enter the attached and/or below preliminary amendment **prior** to calculation of filing fee:

☐ Also attached: ☐ **Information Disclosure Statement**; ☐ **Non-Publication Request**; ☐ **Nucleotide and/or Amino Acid Sequence Submission**; ☐ **Statement deleting Inventor(s) named in prior application**; ☐ **Other:**

1.   Inventor:          Magnus                          GOERTZ              Swedish
                        (first)          MI          (last)              (citizenship)
     Residence: (city) Stockholm          (state/country) SWEDEN
     Mailing Address:  Engelbrektsgatan 14A, Stockholm, SWEDEN
     (Zip Code) SE-114 32

2.   Inventor:
                        (first)          MI          (last)              (citizenship)
     Residence: (city) _____          (state/country) _____
     Mailing Address:  _____
     (Zip Code) _____

☐ *See attached sheet(s) for additional inventor(s) information!!*
**Address all future communications to NIXON & VANDERHYE P.C., 1100 North Glebe Road, 8th Floor, Arlington, VA 22201.**

1100 North Glebe Road, 8th Floor              **NIXON & VANDERHYE P.C.**
Arlington, Virginia 22201-4714              By Atty: Richard G. Besha, Reg. No. 22,770
Telephone: (703) 816-4000
Facsimile: (703) 816-4100
RGB:lhl                                   Signature: _Richard Besha_

10315250.12100 2

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of

Magnus GOERTZ                                Atty. Ref.:  3682-32

Serial No.  Unassigned                       Group:

Filed:  December 10, 2002                     Examiner:

For:   USER INTERFACE

           *   *   *   *   *   *   *   *   *   *   *

                                             December 10, 2002

Assistant Commissioner for Patents
Washington, DC  20231

Sir:

## PRELIMINARY AMENDMENT

In order to place the above-identified application in better condition for

examination, please amend the application as follows:

## IN THE CLAIMS

Please substitute the following amended claim(s) for corresponding claim(s)

previously presented.  A copy of the amended claim(s) showing current revisions is

attached.

9.      (Amended) User interface according to Claim 7, characterised in, that, a

navigation in said list is performed by moving said object in a direction towards the top

of said list or towards the bottom of said list, that the movement of said object will cause

said marking to move in the same direction, and that the speed of the movement of said

marking is lower than the speed of the movement of said object.

691139

Magnus GOERTZ
Serial No. **Unassigned**

10315250.121002

12.     (Amended) User interface according to Claim 1, characterised in, that an active application, function, service or setting is moved on one step by moving said object from the left of said display area to the right of said display area, and that the active application, function, service or setting is closed or backed one step by moving said object from the right of said display area to the left of said display area.

13.     (Amended) User interface according to Claim 1, characterised in, that said menu area is positioned at the bottom of said touch sensitive area, that said representation of said first function is positioned at the left side of said menu area, that said representation of said second function is positioned at the middle of said menu area, and that said representation of said third function is positioned at the right side of said menu area.

14.     (Amended) User interface according to Claim 1, characterised in, that said user interface is adapted to a touch sensitive area with a size that is in the order of 2-3 inches, and that said user interface is adapted to be operated by one hand, where said object can be a finger, such as the thumb, or a user of said computer unit.

15.     (Amended) An enclosure adapted to cover a computer unit, said computer unit being adapted to present a user interface according to Claim 1, characterised in, that

- 2 -

691139

**Magnus** GOERTZ
Serial No. **Unassigned**

10315250.121002

said enclosure is provided with an opening for said display area, and that a representation

of said menu area is printed on top of said enclosure.

17.    (Amended) A computer readable medium, with a computer program

product stored therein, characterised in, that said computer program product comprises

computer readable code, which, when read by a computer, will make it possible for said

computer to present a user interface according to Claim 1.

691139

**Magnus** GOERTZ
Serial No. **Unassigned**

## REMARKS

This Preliminary Amendment has been presented to place the claims in condition for allowance.

Attached hereto is a marked-up version of the changes made to the specification and claim(s) by the current amendment. The attached page(s) is captioned **"Version With Markings To Show Changes Made."**

Respectfully submitted,

**NIXON & VANDERHYE P.C.**

By: _Richard Besha_

Richard G. Besha
Reg. No. 22,770

RGB:lhl
1100 North Glebe Road, 8th Floor
Arlington, VA 22201-4714
Telephone: (703) 816-4000
Facsimile: (703) 816-4100

- 4 -

691139

**Magnus** GOERTZ
Serial No. **Unassigned**

## VERSION WITH MARKINGS TO SHOW CHANGES MADE

## IN THE CLAIMS

9.    (Amended)  User interface according to Claim 7 [or 8], characterised in, that, a navigation in said list is performed by moving said object in a direction towards the top of said list or towards the bottom of said list, that the movement of said object will cause said marking to move in the same direction, and that the speed of the movement of said marking is lower than the speed of the movement of said object.

12.    (Amended)  User interface according to [any preceding] Claim 1, characterised in, that an active application, function, service or setting is moved on one step by moving said object from the left of said display area to the right of said display area, and that the active application, function, service or setting is closed or backed one step by moving said object from the right of said display area to the left of said display area.


13.    (Amended)  User interface according to [any preceding] Claim 1, characterised in, that said menu area is positioned at the bottom of said touch sensitive area, that said representation of said first function is positioned at the left side of said menu area, that said representation of said second function is positioned at the middle of said menu area, and that said representation of said third function is positioned at the right side of said menu area.

691139

**Magnus** GOERTZ
Serial No. **Unassigned**

14.    (Amended)  User interface according to [any preceding] Claim 1,

characterised in, that said user interface is adapted to a touch sensitive area with a size

that is in the order of 2-3 inches, and that said user interface is adapted to be operated by

one hand, where said object can be a finger, such as the thumb, or a user of said computer

unit.


15.    (Amended)  An enclosure adapted to cover a computer unit, said computer

unit being adapted to present a user interface according to [any of Claims] Claim 1 [to

14], characterised in, that said enclosure is provided with an opening for said display

area, and that a representation of said menu area is printed on top of said enclosure.


17.    (Amended)  A computer readable medium, with a computer program

product stored therein, characterised in, that said computer program product comprises

computer readable code, which, when read by a computer, will make it possible for said

computer to present a user interface according to [any of Claims] Claim 1 [to 14].

691139

10/12 '02 14:00 FAX 46 8 31 67 67        GROTH & CO          → NIXON & VANDERHY  ☒002

## USER INTERFACE

### *Technical field*

The present invention relates to a user interface for a mobile handheld
5   computer unit, which computer unit comprises a touch sensitive area, and which
touch sensitive area is divided into a menu area and a display area.

The computer unit is adapted to run several applications simultaneously
and to present any active application on top of any other application on the display
area.

10   The present invention also relates to an enclosure for a handheld
computer unit.

The present invention also relates to a computer readable medium. A
computer program product with computer program code is stored within the
computer readable medium, which code, when read by a computer, will make it
15   possible for this computer to present a user interface according to the invention.

### *Description of background art*

Mobile handheld computers are known in various embodiments. One kind
of handheld computer is the personal digital assistant (PDA), which is getting more
20   and more powerful.

Another kind of handheld computer unit is the mobile phone, which also is
getting more and more powerful. There are also examples of where the mobile
phone and the PDA are merging into one unit.

A third kind of handheld computer is the laptop computer, which is getting
25   smaller and smaller, even competing in size with the PDA's.

The need to manage more information has led the development towards
new solutions regarding user interfaces and navigation. The PDA's and mobile
phones are getting larger and larger in order to provide a user-friendly interface.

Since the users have gotten used to small handheld units, it is hard to
30   move towards larger units. This has led to foldable keyboards, different kinds if joy
sticks and different kinds of touch sensitive displays and pads intended to help in
providing a user interface that is suitable for small handheld compute units.

2

### *Summary of the present invention*

Technical problems

It is a problem to provide a user-friendly interface that is adapted to handle
5  large amount of information and different kinds of traditional computer-related
applications on a small handheld computer unit.

It is a problem to provide a user interface that is simple to use, even for
inexperienced users of computers or handheld devices.

It is a problem to provide a small handheld computer unit with an easily
10  accessible text input function.

It is also a problem to provide a simple way to make the most commonly
used functions for navigation and management available in the environment of a
small handheld computer unit.

15  Solution

Taking these problems into consideration, and with the staring point from a
user interface for a mobile handheld computer unit, which computer unit comprises
a touch sensitive area, which touch sensitive area is divided into a menu area and
a display area, which computer unit is adapted to run several applications
20  simultaneously and to present an active application on top of any other application
on the display area, the present invention teaches that the menu area is adapted
to present a representation of a first, a second and a third predefined function,
where the first function is a general application dependent function, the second
function is a keyboard function, and the third function is a task and file manager.
25  The present invention also teaches that any one of these three functions can be
activated when the touch sensitive area detects a movement of an object with its
starting point within the representation of the function on the menu area and with a
direction from the menu area to the display area.

With the purpose of providing a simple way of managing any application or
30  the operations system, the present invention teaches that if the first function is
activated, the display area is adapted to display icons representing services or
settings, depending on the current active application. One of the icons always
represents a "help"-service, regardless of application. The icons are adapted to
represent services or settings of the operations system of said computer unit, such

10/12 '02 14:00 FAX 46 8 31 67 67        GROTH & CO            → NIXON & VANDERHY   ☑004

3

as background picture, clock, users, help, etc. if no application is currently active on the computer unit.

Selections of preferred service or setting is done by tapping on corresponding icon.

5      With the purpose of providing the access to a text input function in any application in the computer unit, the present invention teaches that when the second function is activated, the display area is adapted to display a keyboard and a text field,

If a text passage in an active application is highlighted, then this text 10    passage is displayed in the text field for editing through the keyboard and that the highlighted text passage is replaced by the edited text passage when the second function is deactivated.

If no text passage in an active application is highlighted, then the text field is available for inputting and editing of text through the keyboard.

15      In the case of the latter the first function can be activated, or the second function can be closed, in which a choice of saving or deleting the inputted text is given. The choice of saving the inputted text results in an activation of the first function. In this case the first function will present services or settings available for the inputted text, such as saving the inputted text for later use, using the inputted 20    text as telephone number in a telephone application, or sending the inputted text as message in communications application.

In order to provide a task and file management in a user interface for a handheld mobile computer, the present invention teaches that, if the third function is activated, the display area is adapted to display a list with a library of available 25    applications and files on the computer unit A selection of an application will start the application, and a selection of a file will open the file in an application intended for the file.

A selection of an application or a file is done by moving the object so that the representation of desired application or file is highlighted, removing the object 30    from the touch sensitive area, and then tapping on the touch sensitive area.

According to the present invention a navigation in the list is performed by moving the object in a direction towards the top of the list or towards the bottom of the list. This will cause the marking to move in the same direction. The speed of

10/12  '02 14:00 FAX 46 8 31 67 67         GROTH & CO              → NIXON & VANDERHY   ☑005

4

the movement of the marking is lower than the speed of the movement of the object, with the purpose of making the navigation easier.

The user interface of the present invention is specifically adapted to be used with a small computer unit where the size of the touch sensitive area is in the

5   order of 2-3 inches, The user interface is also adapted to be operated by one hand, where the object can be a finger, such as the thumb, of a user of the computer unit.

<u>Advantages</u>

10   Those advantages that can be primarily associated with a user interface or a computer readable medium according to the present invention reside in the ability to establish a user-friendly interface for small handheld computers, both regarding general application set-up functions, text input functions, and file and task management.

15   **Brief description of the drawings**

The present invention will now be described in more detail with reference to the accompanying drawings, in which

Figure 1    is a schematic and highly simplified view of a touch sensitive area on a mobile handheld computer unit;

20   Figure 2    is a schematic side view illustrating the activation of a function;

Figure 3    is a schematic illustration of a first function;

Figure 4    is a schematic side view illustrating the selection of a service or setting represented by an icon;

Figure 5    is a schematic illustration of a second function;

25   Figure 6    is a schematic side view illustrating the selection of a third function;

Figure 7    is a schematic illustration of an application or file;

Figure 8    is a schematic illustration on how navigation is performed;

Figure 9    is a schematic illustration of how the content of the display are

30   is changed;

Figure 10 is a schematic side view further illustrating how navigation is performed;

Figure 11 is a schematic illustration of moving forwards in an application;

10/12 '02 14:01 FAX 46 8 31 67 67      GROTH & CO           → NIXON & VANDERHY   ☑006

5

Figure 12 is a schematic illustration of moving backwards in, or closing,
an application;

Figure 13 is a schematic illustration of an enclosure

### Description of embodiments at present preferred

5        Figure 1 illustrates a user interface for a mobile handheld computer unit.
The user interface according to the present invention is specifically adapted to
computer units comprising a touch sensitive area 1, which is divided into a menu
area 2 and a display area 3. It should be understood that there are several
different kinds of known touch sensitive displays and that the present invention
10   does not depend on what kind of touch sensitive display that is used in relation to
the inventive user interface.

The computer unit is adapted to run several applications simultaneously
and to present an active application on top of any other application on the display
area 3. It should be understood that by simultaneously it is meant any technology
15   that will make it appear to a user of the computer unit that applications are run
simultaneously and that the present invention does not depend on how this is
realised, whether it is through time-sharing of one processor, parallel use of
several processors, or any other technique.

According to the present invention the menu area 2 is adapted to present
20   a representation of a first 21, a second 22 and a third 23 predefined function.

The first function 21 is a general application dependent function, the
second function 22 is a keyboard function, and the third function 23 is a task and
file manager.

Figure 2 shows that any one of these three functions 21, 22, 23 can be
25   activated when the touch sensitive area 1 detects a movement of an object 4 with
its starting point A within the representation of a function on the menu area 2 and
with a direction B from the menu area 2 to the display area 3.

Figure 3 shows that if the first function 21 is activated, then the display
area 3 is adapted to display icons 211, 212, 213, 214, 215, 216 representing
30   services or functions depending on the current active application. One of the icons,
in the figure exemplified by icon 211, always represents a "help"-service,
regardless of application. Any key that, because of lack of space on the display
area, or because the key should be hidden from the active application, or because

6

of any other reason is not shown on the display area of an active application, can be represented by one of the icons 212, 213, 214, 215, 216 that is shown when the first function 21 is activated.

If for instance the active application handles a picture, then the icons that
5   are shown when the first function is activated can be services such as "save to disk", "send as SMS", or "delete" and they can be settings such as "resolution", "colour", or "brightness".

If no application is currently active on the computer unit, then the icons 211, 212, 213, 214, 215, 216 are adapted to represent services or settings of the
10   operations system of the computer unit, such as background picture, clock, alarm 215, users 213, help 211, etc.

Figure 4 shows that selection of a preferred service or setting is done by tapping C, D on corresponding icon 213.

Figure 5 shows that if the second function 22 is activated, then the display
15   area 3 is adapted to display a keyboard 221 and a text field 222.

Two different scenarios can be at hand when this function key is activated. A first scenario can be that a text passage in the active application is highlighted as the second function is activated. If this is the case then the highlighted text passage is displayed in the text field 222 for editing through the
20   keyboard 221.

The highlighted text passage is replaced by the edited text passage when the second function 21 is deactivated.

A second scenario can be that no text passage in the active application is highlighted. If this is the case then the text field 222 is available for inputting and
25   editing of text through the keyboard 221.

In the case of the latter scenario, the first function 21 can be activated, or the second function 22 can be closed. If the second function 22 is closed then a choice of saving or deleting the inputted text is given, where the choice of saving the inputted text results in an activation of the first function 21.

30   As the first function 21 is activated with the second function 22 as currently active application the first function 21 will present services or settings available for the inputted text, such as saving the inputted text for later use, using the inputted text as telephone number in a telephone application, or sending the inputted text as message in communications application, such as e-mail, SMS, or fax.

10/12 '02 14:01 FAX 46 8 31 67 67        GROTH & CO            → NIXON & VANDERHY  @008

7

Figure 6 shows that if the third function 23 is activated, then the display area 3 is adapted to display a list 231 with a library of available applications and files on the computer unit.

A selection of an application will start the application, and a selection of a
5  file will open the file in an application intended for the file. The name of a selected file can be edited by activation of the second function 22 as the file is highlighted.

Figure 7 shows that a selection of an application or a file is done by moving E the object 4 so that the representation of desired application or file is highlighted, removing F the object 4 from the touch sensitive area 1, and then
10  tapping G, H on the touch sensitive area 1.

An application or file is highlighted by placing some kind of marking 232 on the representation of the application or file. This marking can be done in different ways, for example by putting a frame around the representation of the application or file, as shown in the figure, or by inverting the representation of the application
15  or file.

It should b understood that all lists in the computer unit, such as a list of contact information in an address book, a list of e-mail messages in a mailbox, or a telephone log, can be managed in the above described manner.

The list 231 can be adapted to present only files or only applications. In
20  this case, the top area of the list 231 can present a field 233 through which the content if the list 231 can be altered. If the list only presents files, then the field 233 can display a representation of a task manager and a selection of the field 233 will cause the list 231 to alter to present only applications, and if the list 231 only presents applications, then the field 233 displays a representation of a file
25  manager and a selection of the field 233 will cause the list 231 to alter and present only files. Figure 8 shows that navigation in the list is performed by moving the object 4 in a direction I towards the top 231a of the list 231 or towards J the bottom 231b of the list 231. This movement I, J of the object 4 will cause the marking 232
30  to move K, L in the same direction. The speed of the movement K, L of the marking 232 is lower than the speed of the movement I, J of the object 4.

Figure 9 shows that if the number of applications and/or files in the list 231 exceeds the number of applications and/or files that can be presented on the display area 3, and if the object 4 is moved to the top or bottom position of the

8

display area, then lifted, replaced on the display area, and then again moved to
the top or bottom of the display area, then the content of the display area will be
replaced one whole page, meaning that if the object 4 is positioned N at the
bottom 3b of the display area 3, then lifted, replaced on the display area 3, and
5   then again moved M to the bottom 3b of the display area 3, then the content 31 of
the display area 3 will be replaced P by the following applications and/or files 32 in
the list 231. In the same way, but not shown in the figure, if the object is position at
the top of the display area, then lifted, replaced on the display area 3, and then
again moved to the top of the display area, the content of the display area will be
10   replaced by the preceding applications and/or files in the list.

Figure 10 shows that if the object 4 is removed Q from a first position 33
on the display area 3 and then replaced R, S on a second position 34 on the
display area 3, then the navigation can be continued T from the second position
34.

15   Figure 11 shows that moving U the object 4 from the left of the display
area 3 to the right of the display area 3 moves the active application, function,
service or setting on one step forwards. Figure 12 shows that, in a similar manner,
the active application, function, service or setting is closed or backed one step by
moving V the object 4 from the right of the display area 3 to the left of the display
20   area 3.

As shown in figure 1, the menu area 2 is positioned at the bottom of the
touch sensitive area 1. The representation of the first function 21 is positioned at
the left side of the menu area 2, the representation of the second function 22 is
positioned at the middle of the menu area 2, and the representation of the third
25   function 23 is positioned at the right side of the menu area 2.

As shown in figure 13, the present invention relates to a user interface for
a hand held mobile unit that preferably can be manageable with one hand. Hence
the present invention teaches that the user interface is adapted to a touch
sensitive area 1 with a size that is in the order of 2-3 inches, meaning the diagonal
30   distance W between two corners of the touch sensitive area 1.

The user interface is adapted to be operated by one hand, where the
object 4 can be a finger, such as the thumb shown in the figures, of a user of the
computer unit. It should be understood though that the present invention might
also be used with another object, such as a pen or other pointing device.

9

According to one preferred embodiment of the present invention the computer unit is covered with an enclosure 5, which is provided with an opening 51 for the display area 3, and where the representations of the menu area 2 is printed on top of the enclosure 5. It should be understood that the opening 51 might be a transparent part of the enclosure 5 or that it might be an open aperture depending on among other things technical considerations pertaining to the touch sensitive area 1.

This makes it possible to allow the enclosure 5 to be removable and exchangeable.

Figure 14 shows a computer readable medium, in the figure schematically shown as a solid-state memory 61. A computer program product is stored within the computer readable medium. This computer program product comprises computer readable code 62, which, when read by a computer 6, will make it possible for the computer 6 to present a user interface according to the present invention.

The present invention also teaches that the computer program product is adapted to function as a shell upon an operations system.

It will be understood that the invention is not restricted to the aforedescribed and illustrated exemplifying embodiments thereof, and that these embodiments can be modified within the scope of the inventive concept illustrated in the accompanying Claims.

10/12 '02 14:02 FAX 46 8 31 87 67        GROTH & CO              → NIXON & VANDERHY   @011

10

CLAIMS

1.      User interface for a mobile handheld computer unit, where said computer unit comprises a touch sensitive area, which touch sensitive area is divided into a

5  menu area and a display area, where said computer unit is adapted to run several applications simultaneously, and to present an active application on top of any other application on said display area, **characterised** in, that said menu area is adapted to present a representation of a first, a second and a third predefined function, that said first function is a general application dependent function, that

10  said second function is a keyboard function, that said third function is a task and file manager, and that any one of said three functions can be activated when said touch sensitive area detects a movement of an object with its starting point within the representation of said function on said menu area and with a direction from said menu area to said display area.

15

2.      User interface according to Claim 1, **characterised** in, that, if said first function is activated, said display area is adapted to display icons representing different services or settings depending on the current active application, that one of said icons always represents a "help"-service, regardless of application, and

20  that, if no application is currently active on said computer unit, said icons are adapted to represent services or settings of the operations system of said computer unit, such as background picture, clock, users, help, etc.

3.      User interface according to Claim 2, **characterised** in, that that a selection

25  of a preferred service or setting is done tapping on corresponding icon.

4.      User interface according to Claim 1, **characterised** in, that, if said second function is activated, said display area is adapted to display a keyboard and a text field,

30  -  that, if a text passage in said active application is highlighted, said text passage is displayed in said text field for editing through said keyboard and that said highlighted text passage is replaced by said edited text passage when said second function is deactivated, and

11

- that, if no text passage in said active application is highlighted, said text field is available for inputting and editing of text through said keyboard.

5.    User interface according to Claim 4, **characterised** in, that if no text
5   passage in said active application is highlighted, and said text field is used for
inputting and editing of text through said keyboard, then
- said first function can be activated, or
- said second function can be closed, in which a choice of saving or deleting said inputted text is given, where the choice of saving said inputted text results in an
10   activation of said first function,
in which said first function will present services or settings available for said inputted text, such as saving said inputted text for later use, using said inputted text as telephone number in a telephone application, or sending said inputted text as message in communications application.

15

6.    User interface according to Claim 1, **characterised** in, that, if said third function is activated, said display area is adapted to display a list with a library of available applications and files on said computer unit, that a selection of an application will start said application, and that a selection of a file will open said file
20   in an application intended for said file.

7.    User interface according to Claim 6, **characterised** in, that a selection of an application or a file is done by moving said object so that the representation of desired application or file is highlighted, removing said object from said touch
25   sensitive area, and then tapping on said touch sensitive area, and that an application or file is highlighted by placing some kind of marking on the representation of said application or file, such as positioning a frame around the representation of said application or file or inverting the representation of said application or file.

30

8.    User interface according to Claim 7, **characterised** in, that said list is adapted to present only said files or only said applications, that the top area of said list presents a field through which the content if said list can be altered, that, if said list only presents files, said field displays a representation of a task manager

12

and a selection of said field will cause said list to alter to present only applications, and that, if said list only presents applications, said field displays a representation of a file manager and a selection of said field will cause said list to alter and present only files.

5

9.      User interface according to Claim 7 or 8, **characterised** in, that, a navigation in said list is performed by moving said object in a direction towards the top of said list or towards the bottom of said list, that the movement of said object will cause said marking to move in the same direction, and that the speed of the movement of said marking is lower than the speed of the movement of said object.

10

10.      User interface according to Claim 9, **characterised** in, that, if the number of applications and/or files in said list exceeds the number of applications and files that can be presented on said display area, and if said object is moved to the top or bottom position of said display area, then lifted, replaced on said display area, and again moved to the top or bottom of said display area, the content of said display area will be replaced one whole page, meaning that if said object is position at the bottom of said display area, then lifted, replaced on said display area, and then again moved to the bottom of said display area, the content of said display area will be replaced by the following applications and/or files in said list, and if said object is position at the top of said display area, then lifted, replaced on said display area, and then again moved to the top of said display area, the content of said display area will be replaced by the preceding applications and/or files in said list.

15

20

25

11.      User interface according to Claim 10, **characterised** in, that if said object is removed from a first position on said display area and then replaced on a second position on said display area, said navigation can be continued from said second position.

30

12.      User interface according to any preceding Claim, **characterised** in, that an active application, function, service or setting is moved on one step by moving said object from the left of said display area to the right of said display area, and that the active application, function service or setting is closed or backed one step

13

by moving said object from the right of said display area to the left of said display area.

13. User interface according to any preceding Claim, **characterised** in, that said menu area is positioned at the bottom of said touch sensitive area, that said representation of said first function is positioned at the left side of said menu area, that said representation of said second function is positioned at the middle of said menu area, and that said representation of said third function is positioned at the right side of said menu area.

14. User interface according to any preceding Claim, **characterised** in, that said user interface is adapted to a touch sensitive area with a size that is in the order of 2-3 inches, and that said user interface is adapted to be operated by one hand, where said object can be a finger, such as the thumb, of a user of said computer unit.

15. An enclosure adapted to cover a computer unit, said computer unit being adapted to present a user interface according to any of Claims 1 to 14, **characterised** in, that said enclosure is provided with an opening for said display area, and that a representation of said menu area is printed on top of said enclosure.

16. Enclosure according to Claim 15, **characterised** in, that said enclosure is removable and exchangeable.

17. A computer readable medium, with a computer program product stored therein, **characterised** in, that said computer program product comprises computer readable code, which, when read by a computer, will make it possible for said computer to present a user interface according to any of Claims 1 to 14.

18. A computer readable medium according to Claim 17, **characterised** in, that said computer program product is adapted to function as a shell upon an operations system.

10/12 '02 14:03 FAX 46 8 31 67 67      GROTH & CO            → NIXON & VANDERHY  ☑015

14

## ABSTRACT

The present invention relates to a user interface for a mobile handheld
computer unit, which computer unit comprises a touch sensitive area (1), which is
5    divided into a menu area (2) and a display area (3). The computer unit is adapted
to run several applications simultaneously and to present an active application on
top of any other application on the display area (3). The menu area (2) is adapted
to present a representation of a first (21), a second (22) and a third predefined (23)
function. The first function (21) is a general application dependent function, the
10   second function (22) is a keyboard function, and the third function (23) is a task
and file manager. Any one of these three functions can be activated when the
touch sensitive area (1) detects a movement of an object with its starting point
within the representation of the function on the menu area (2) and with a direction
from the menu area (2) to the display area (3).

15

(Fig. 1)

10/12 '02 14:03 FAX 46 8 31 67 67        GROTH & CO              → NIXON & VANDERHY   ☑016



1/4

Fig. 1.

Fig. 2.

Fig. 3.

Fig. 4.

Fig. 5.

10/12 '02 14:03 FAX 46 8 31 67 67        GROTH & CO            → NIXON & VANDERHY   ☒017

2/4



Fig. 6.

Fig. 7.



Fig. 8.

10/12 '02 14:04 FAX 46 8 31 67 67        GROTH & CO                → NIXON & VANDERHY   Ø018

3/4



Fig. 9.



Fig. 10.



Fig. 11.



Fig. 12.

10/12 '02 14:04 FAX 46 8 31 67 67        GROTH & CO            → NIXON & VANDERHY   @019

4/4



Fig. 13.



Fig. 14.

# PATENT APPLICATION FEE DETERMINATION RECORD
## Effective October 1, 2001

**Application or Docket Number**

10315250

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 18 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 18 minus 20= | * |
| INDEPENDENT CLAIMS | 1 minus 3 = | * |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | | RATE | FEE |
| BASIC FEE | 370.00 | OR | BASIC FEE | 740.00 |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL | | OR | TOTAL | |

\* If the difference in column 1 is less than zero, enter "0" in column 2

## CLAIMS AS AMENDED - PART II

### AMENDMENT A

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT B

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT C

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
  The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

BEST AVAILABLE COPY

| MULTIPLE DEPENDENT CLAIM FEE CALCULATION SHEET *(FOR USE WITH FORM PTO-875)* | SERIAL NO. 10315250 | FILING DATE 12/10/02 |
|---|---|---|

APPLICANT(S)

**CLAIMS**

| | AS FILED | | AFTER 1st AMENDMENT | | AFTER 2nd AMENDMENT | | | | • | | • | | • | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | IND. | DEP. | IND. | DEP. | IND. | DEP. | | | IND. | DEP. | IND. | DEP. | IND. | DEP. |
| 1 | | | | | | | | 51 | | | | | | |
| 2 | | | | | | | | 52 | | | | | | |
| 3 | | | | | | | | 53 | | | | | | |
| 4 | | | | | | | | 54 | | | | | | |
| 5 | | | | | | | | 55 | | | | | | |
| 6 | | | | | | | | 56 | | | | | | |
| 7 | | | | | | | | 57 | | | | | | |
| 8 | | | | | | | | 58 | | | | | | |
| 9 | | | | | | | | 59 | | | | | | |
| 10 | | | | | | | | 60 | | | | | | |
| 11 | | | | | | | | 61 | | | | | | |
| 12 | | | | | | | | 62 | | | | | | |
| 13 | | | | | | | | 63 | | | | | | |
| 14 | | | | | | | | 64 | | | | | | |
| 15 | | | | | | | | 65 | | | | | | |
| 16 | | | | | | | | 66 | | | | | | |
| 17 | | | | | | | | 67 | | | | | | |
| 18 | | | | | | | | 68 | | | | | | |
| 19 | | | | | | | | 69 | | | | | | |
| 20 | | | | | | | | 70 | | | | | | |
| 21 | | | | | | | | 71 | | | | | | |
| 22 | | | | | | | | 72 | | | | | | |
| 23 | | | | | | | | 73 | | | | | | |
| 24 | | | | | | | | 74 | | | | | | |
| 25 | | | | | | | | 75 | | | | | | |
| 26 | | | | | | | | 76 | | | | | | |
| 27 | | | | | | | | 77 | | | | | | |
| 28 | | | | | | | | 78 | | | | | | |
| 29 | | | | | | | | 79 | | | | | | |
| 30 | | | | | | | | 80 | | | | | | |
| 31 | | | | | | | | 81 | | | | | | |
| 32 | | | | | | | | 82 | | | | | | |
| 33 | | | | | | | | 83 | | | | | | |
| 34 | | | | | | | | 84 | | | | | | |
| 35 | | | | | | | | 85 | | | | | | |
| 36 | | | | | | | | 86 | | | | | | |
| 37 | | | | | | | | 87 | | | | | | |
| 38 | | | | | | | | 88 | | | | | | |
| 39 | | | | | | | | 89 | | | | | | |
| 40 | | | | | | | | 90 | | | | | | |
| 41 | | | | | | | | 91 | | | | | | |
| 42 | | | | | | | | 92 | | | | | | |
| 43 | | | | | | | | 93 | | | | | | |
| 44 | | | | | | | | 94 | | | | | | |
| 45 | | | | | | | | 95 | | | | | | |
| 46 | | | | | | | | 96 | | | | | | |
| 47 | | | | | | | | 97 | | | | | | |
| 48 | | | | | | | | 98 | | | | | | |
| 49 | | | | | | | | 99 | | | | | | |
| 50 | | | | | | | | 100 | | | | | | |
| TOTAL IND. | | | 1 | | | | | TOTAL IND. | | | | | | |
| TOTAL DEP. | | | 17 | | | | | TOTAL DEP. | | | | | | |
| TOTAL CLAIMS | | | 18 | | | | | TOTAL CLAIMS | | | | | | |

PTO-1360 (3-78)      *MAY BE USED FOR ADDITIONAL CLAIMS OR AMENDMENTS      U.S. DEPARTMENT of COMMERCE Patent and Trademark Office