**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| NEONODE SMARTPHONE LLC, | |
| Plaintiff, | |
| | Civil Action No. 6:20-cv-00507-ADA |
| v. | |
| SAMSUNG ELECTRONICS CO. LTD, and SAMSUNG ELECTRONICS AMERICA, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ........................................................................................................1

II.   DISPUTED CLAIM TERMS .....................................................................................1

    A.    "the representation consists of only one option for activating the function"...........1

        1.    Neonode's claim language analysis neither supports its
construction nor cures the indefiniteness of the claim.................................1

        2.    Neonode's discussion of the specification supports nothing. ......................2

        3.    The prosecution history neither supports Neonode's new
construction nor cures the indefiniteness of the claim.................................2

        4.    Neonode's discussion of the IPRs also fails to cure the
indefiniteness. ............................................................................................3

        5.    Neonode's response fails to cure the indefiniteness of the claim. ...............4

    B.    "gliding" (claims 1, 12) / "the object gliding along the touch sensitive
area" (claim 1) / "gliding the object along the touch sensitive area" (claim
12) ........................................................................................................................5

        1.    The N2 uses a "drag" and "drag and drop" under Neonode's
criteria. ......................................................................................................5

        2.    The claimed "glide" motion is indefinite...................................................7

III.  CONCLUSION.........................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Hockerson-Halberstadt, Inc. v. Avia Group International, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000)................................................................................8

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc*.,
    540 F.3d 1337 (Fed. Cir. 2008)................................................................................10

*Infinity Computer Prod., Inc. v. Oki Data Americas, Inc.*,
    987 F.3d 1053 (Fed. Cir. 2021)................................................................................4

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014)................................................................................7

*Nautilus, Inc. v. Biosig Instruments, Inc*.,
    134 S. Ct. 2120 (2014)................................................................................7

*Phillips v. AWH Corp*.,
    415 F.3d 1303 (Fed. Cir. 2005)................................................................................10

*Unwired Planet, LLC v. Apple Inc*.,
    829 F.3d 1353 (Fed. Cir. 2016)................................................................................9

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION | BATES Range |
|---|---|---|
| 1 | U.S. Patent No. 8,095,879 ("'879 patent") | NEONODE0002435-44 |
| 2 | Decl. of Andy Cockburn in Support of Defendants' Op. Cl. Constr. Brief | |
| 3 | '879 patent File History ("'879 FH"), 6/30/2010 Amendment | NEONODE0000534-44 |
| 4 | U.S. Patent App. Pub. No. 2002/0027549 ("Hirshberg") | 507SAM_00039805-24 |
| 5 | IPR2021-01041, Paper 29 ("POR") | 507SAM_00062040-126 |
| 6 | IPR2021-01041, Paper 50 ("Record of Oral Hearing") Excerpts | 507SAM_00065058-130 |
| 7 | IPR2021-01041, Paper 44 ("PO Sur-Reply") | 507SAM_00063004-43 |
| 8 | '879 FH, 8/23/2007 Amendment | NEONODE0000148-66 |
| 9 | IPR2021-00144, Paper 49 ("PO Sur-Reply") | 507SAM_00054418-58 |
| 10 | IPR2021-01041, EX1031 ("Rosenberg Tr.") Excerpts | 507SAM_00063686-742 |
| 11 | IPR2021-00144, EX2007 ("Rosenberg Decl.") | |
| 12 | '879 FH, 9/3/2008 Applicant Letter to Examiner | NEONODE0000273-95 |
| 13 | '879 FH, 2/22/2010 Amendment | NEONODE0000490-500 |
| 14 | IPR2021-01041, EX1044 ("Goertz Tr.") Excerpts | 507SAM_00061641-806 |
| 15 | '879 FH, 12/23/2008 Search Notes | NEONODE0000375-83 |
| 16 | '879 FH, 7/8/2009 Search Notes | NEONODE0000443-53 |
| 17 | IPR2021-00144, EX1053 ("Rosenberg Tr.") Excerpts | 507SAM_00054249-394 |
| 18 | U.S. Patent No. 7,240,296 ("Matthews") | 507SAM_00087822-50 |
| 19 | IPR2021-00144, Paper 55 ("Record of Oral Hearing") Excerpts | 507SAM_00052367-419 |
| 20 | Supplemental Decl. of Andy Cockburn in Support of Defendants' Reply Cl. Constr. Brief | |
| 21 | IPR2021-01041, EX2008 ("Shain") | 507SAM_0063756-58 |
| 22 | IPR2021-00144, Paper 55 ("Hr'g. Tr.") Excerpt | 507SAM_00052367-401 |

## I.      INTRODUCTION

Neonode now proposes constructions for the two disputed claim terms, effectively conceding its "plain and ordinary meaning" constructions are incorrect.  But Neonode's multiple and contradictory intrinsic record positions regarding these terms confirm they are indefinite.

## II.     DISPUTED CLAIM TERMS

### A.      "the representation consists of only one option for activating the function"

Neonode now proposes a construction, "the representation consists of only one option for activating one of the one or more functions at any given time," effectively conceding its original "plain meaning" proposal is incorrect. Resp. Br. at 5. But this new construction is both at odds with the intrinsic evidence and confirms the indefiniteness of the claim term.

#### 1.      Neonode's claim language analysis neither supports its construction nor cures the indefiniteness of the claim.

Neonode begins its brief by analyzing the claim language.  Resp. Br. at 6-7.  Neonode's analysis is incorrect, internally inconsistent and incomplete.

First, Neonode tacks "at any given time" onto the end of its construction, thus permitting more than one option for activating a function over time.  However, Neonode never cites anything in the claim language to support that part of its construction (as none exists).

Second, Neonode argues the "consists of" claim language does not limit "the number of ways to activate the represented function."  Resp. Br. at 6.  But that ignores the claim language: "consists of <u>only one</u> *option for activating* the function" (emphasis added).  A POSITA can read the "only one" requirement as limiting the number of ways to activate to one way, with that one option being the touch-and-glide operation recited in limitation 1[c].  Op. Br. at 6-7, Ex. 2 (Cockburn Decl.) at ¶¶ 43-44.  Indeed, Neonode later asserts the "representation" "presents to the user only one option for activating one of those multiple functions . . . ."  Resp. Br. at 7.

Third, Neonode simply asserts—without explanation—that "the representation consists of only one option" cannot be read to "limit[] the number of functions that may be represented." Resp. Br. at 6.  But it can.  Op. Br. at 7, Ex. 2 at ¶ 43.  Neonode states "'consists of' limits 'the representation'" (Resp. Br. at 6), and the claim language itself recites "the representation" is "the representation of a function."  '879 patent at 6:5-52.  A POSITA can thus also read the "only one option" requirement as limiting the representation to one function.  Op. Br. at 7, Ex. 2 at ¶ 43.

In short, nothing in the claim language either dictates that Neonode's construction is correct, or that any of the three possible interpretations identified by Samsung is incorrect.

### 2.      Neonode's discussion of the specification supports nothing.

Neonode's discussion of the specification neither ties its construction to the specification, nor attempts to show how the specification could exclude the three other possible readings of the claim identified by Samsung.  This is not surprising since the "only one option" aspect of the claim is never addressed in the specification, a fact Neonode does not deny.

### 3.      The prosecution history neither supports Neonode's new construction nor cures the indefiniteness of the claim.

Neonode's new construction is not supported by its arguments during original prosecution (*see* Resp. Br. at 7-9) because the applicant did not use that construction to distinguish Hirshberg, nor could it have done so because Hirshberg anticipates the claim under Neonode's construction.  Applying Neonode's construction to Figures 1, 2a and 2b and the accompanying text of Hirshberg, Hirshberg's "representation [the multifunction key] consists of only one option [the touch and glide up gesture] for activating one [typing an "H"] of the one or more functions [typing "H," "I" or "G"] at any given time."  Op. Br. Ex. 4 at Figs. 1, 2a, 2b, ¶¶ [0056]-[0059].  Only one function can be activated at any given time (touch and glide up for "H," touch and glide right for "I," or touch and glide left for "G").  *Id*.; *see also id*. at claim 1 ("(iv) select in a manner conditional upon

2

at least said direction of motion one of a plurality of function associated with said selected key").

Rather than distinguishing Hirshberg based on Neonode's construction, the applicant instead argued the claims were distinguishable because the claimed "representation" corresponds to only one function (as exemplified by the one-function keys described in the specification) while the Hirshberg representation (multifunction key) corresponds to multiple functions (*i.e.*, pressing "H," "I" or "G").  Op. Br. at 9; Resp. Br. at 8 (applicant distinguished claims based on "***how many*** functions could be activated") (emphasis in original), 9 ("'one option' addresses ***how many*** functions could be activated) (emphasis in original).  Contrary to Neonode's current argument (Resp. Br. at 8-9), the applicant never argued the "only one option" claim language further distinguished Hirshberg based upon the number of functions that were "activatable" "at a given time"—and Neonode quotes no such language from the file history.  Moreover, Neonode entirely ignores the fact that the applicant's arguments regarding Hirshberg inconsistently stated that the "only one option" claim language limits the number of functions corresponding to a representation, while at the same time also stating that this language limits the number of options (gestures) available to activate functions.  Op. Br. at 9 (citing Ex. 3 at 10) ("each representation … consists of only one option for activating its corresponding function") (emphasis in original).  A POSITA cannot reconcile these inconsistent statements.  Op. Br. Ex. 2 at ¶ 50.

The "at any given time" language Neonode cites from the file history is unrelated to Hirshberg and instead was used to distinguish the Carlson reference.  Resp. Br. Ex. 5 (FH) at 427.  It was used there to mean "at all times," and should not be used in a contradictory manner now.

### 4.    Neonode's discussion of the IPRs also fails to cure the indefiniteness.

Neonode asserts "Samsung relies on incomplete transcript excerpts" (Resp. Br. at 9), yet Neonode quotes only one sentence from the transcript and that ***same quote*** (regarding hearing slide 65) is included in Samsung's opening brief (along with other quotes Neonode fails to address).

3

Op. Br. at 11 (quoting Ex. 6 at 7:1-3); Resp. Br. at 10 (quoting same sentence). There is thus no dispute what Neonode actually argued to the PTAB.[1]  In this regard, Neonode fails to address (much less dispute) that Neonode's IPR brief argued the claim <u>is limited</u> to one function and that the claim does <u>not limit</u> the number of options (gestures) used to activate a function.  Op. Br. at 10.  This is plainly inconsistent with its argument at the IPR hearing, now quoted by both parties, that "the user is given only <u>one option</u> in terms of what to activate [the function] ***and what option to take*** [the gesture]."  *Id*. at 11 (quoting Op. Br. Ex. 6 at 73:1-3) (emphasis added).[2]  Neonode's response fails to reconcile these inconsistent assertions—where it argued in its IPR brief that the number of gestures is not limited, but argued at the hearing that they are—and such intrinsic evidence fails to provide a POSITA the required reasonable certainty.  Op. Br. Ex. 2 at ¶¶ 51-55; *Infinity Computer Prod., Inc. v. Oki Data Americas, Inc.*, 987 F.3d 1053, 1059, 1062 (Fed. Cir. 2021) ("Indefiniteness may result from inconsistent prosecution history statements").  Indeed, Neonode's current argument—proposing a new "activatable" "at a given time" construction not argued in the IPR—only increases the number of different meanings offered by Neonode.

### 5.    Neonode's response fails to cure the indefiniteness of the claim.

The key question to a POSITA is whether limitation 1[b] limits to one **(1) how many functions** (Samsung meaning 3), **(2) how many ways of activating** (Samsung meaning 2), or **(3) both** (Samsung meaning 1), which are all possible ways to read the claim.  Op. Br. at 6-7, Ex. 2 at ¶¶ 42-44.  Samsung demonstrated that the ambiguity of limitation 1[b], the lack of ***any*** relevant teaching in the specification, and Neonode's inconsistent statements to the Patent Office, fail to provide the requisite clarity as to which reading is correct.  *Id.*  As shown above, Neonode's current

---

[1] Neonode also cites slides 61 and 66 that are never mentioned in the IPR hearing transcript.

[2] Neonode also emphasized the "simplicity" provided by limiting the number of gestures so that when "[y]ou swipe, the device activates what it activates."  Op. Br. Ex. 6 at 73:4-16.

brief does nothing to clarify—based upon evidence—what the claim means.

Neonode's citations to claim limitations 1[a] and 1[c] (Resp. Br. at 6, 11) miss the mark because neither limitation identifies what the "only one option" of limitation 1[b] limits: the number of functions that may be activated, the number of ways to activate the function(s), or both. And while limitation 1[c] describes a way of activating a function, it does not limit the claim to only that one way—it is only limitation 1[b] that can be read by a POSITA to do so. Neonode agrees the "only one option" of limitation 1[b] is limiting, and its construction on its face limits both the number of ways for activating a function ("only one option for activating") and the number of functions that can be activated ("one of the one or more functions"), and then adds the spurious limitation "at any given time." Neonode's misplaced criticisms of Samsung's position based on limitations 1[a] and 1[c] thus apply equally to Neonode's own construction.

The claim language as written, and as variously represented to the Patent Office by the applicant and Neonode, is subject to multiple interpretations without reasonable certainty as to which is correct. Claim 1 should therefore be found indefinite.

**B.** **"gliding" (claims 1, 12) / "the object gliding along the touch sensitive area" (claim 1) / "gliding the object along the touch sensitive area" (claim 12)**

Neonode's response confirms that its contradictory and incorrect statements to the Patent Office render this claim term indefinite.

**1.** **The N2 uses a "drag" and "drag and drop" under Neonode's criteria.**

Neonode's construction excludes a drag-and-drop from a glide, and Neonode cites its N2 phone as a device that performs a glide instead of a drag-and-drop. Resp. Br. at 14. However, the N2 instead illustrates how the two gestures cannot be meaningfully distinguished because the N2 gesture satisfies Neonode's criteria for a "drag and drop," namely "a logical and (typically) visual dragging of a target across a display in order to drop it into a specific area." Resp. Br. at 13.

The N2 (picture to the right) has three "representations" below the display and each representation has its own specific drop area in the display. To activate a function, the user must (1) touch the area corresponding to a representation (the area annotated in yellow), (2) logically drag the representation into its specific drop area in the display (the annotated red arrow) and (3) logically drop the representation in that specific drop area (the area annotated in green). Ex. 21 (Shain) at ¶ 6; Ex. 20 (Cockburn Supp. Decl.) at ¶¶ 6-23. The N2 satisfies Neonode's criteria for a "drag" because the representation is logically dragged and dropped into a "specific



area" to activate the function. Conversely, the N2 fails Neonode's criteria for a "glide" both because: (1) the user must lift their thumb to logically "drop" the representation to activate the function (Resp. Br. at 15 (requiring a "glide" be performed "without lifting the finger" and "without lifting the thumb") (citing Ex. 5 at 348, 425-426)); and (2) the endpoint of the movement is significant. Resp. Br. at 17 (distinguishing a glide from a drag because the "endpoint is not significant" for a "glide"), Ex. 24, ¶ 93 (citing Ex. 18 at 44:6-17; 46:1-8); Ex. 20 (Cockburn Supp. Decl.) at ¶¶ 24-25.

The fact that the representation in the N2 does not visually move during the drag is irrelevant, as Neonode and its expert expressly concede. Resp. Br. at 16 ("visual feedback is typical but is not a necessary element of a drag-and-drop operation."), Ex. 24 at ¶ 86 (visual feedback "not a necessary element of a drag-and-drop"), ¶ 89 (lack of visual movement is irrelevant). Neonode also told the PTAB during the Samsung IPR hearing that "you could have a gliding motion where the icon moves with you." Op. Br. Ex. 19 at 52:23-24 (emphasis added).

Neonode cited the operation of the N2 to the Patent Office to distinguish Hirayama-307, in which the representation is "logically" (and not visually) dragged into the display and dropped to activate the function. Resp. Br. Ex. 24, ¶¶ 86-89.  However, under Neonode's criteria, the allegedly patent-practicing N2 is just like Hirayama-307 because the user logically drags the representation into the display to activate the function in the display.[3]  Ex. 20 (Cockburn Supp. Decl.) at ¶ 26.

The fact that the N2 uses a "drag and drop" exposes the fallacy of the distinction Neonode seeks to impose between a "glide" and a "drag and drop."

## 2.    The claimed "glide" motion is indefinite.

Neonode's response confirms there is insufficient objective guidance for a POSITA to distinguish among "glides," "flicks" and "drags."  The parties agree "absolute precision" is not required, but a claim is indefinite if it "fail[s] to inform, with reasonable certainty" a POSITA of "the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc*., 134 S. Ct. 2120, 2124 (2014); *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (claims "must provide objective boundaries for those of skill in the art.").  That is sorely lacking here.

Neonode relies on extrinsic dictionary definitions to assert a "glide" is "a smooth, continuous movement across or along a surface," while a "flick" is a "sharp, quick movement." Resp. Br. at 12-13.  However, a flick also is a "continuous movement across or along a surface." Ex. 20 (Cockburn Supp. Decl.) at ¶¶ 27-30.  Thus, the only alleged "distinction" between these two gestures based on the dictionary definitions is "smooth" versus "sharp" and "quick."  But this "distinction" fails to provide sufficient guidance to a POSITA.  Op. Br. at 14-15, Ex. 2 at ¶¶ 84-

---

[3] Neonode told the PTAB the N2 representations are "icons [on] the touch sensitive portion of the touch screen." Ex. 22 (Hr'g. Tr.) at 34:22-35:20; Ex. 21 (Shain) at ¶ 6.  Whether this is correct, or whether the representations instead are printed on the housing, does not impact the analysis because the representation drag is a logical rather than a visual movement.  Ex. 20 at ¶ 24.

85, 57, 64.  For example, a smooth gesture can be quick or slow, and there are no objective criteria in the intrinsic evidence from which one can divine whether a given gesture is "smooth" or "sharp."

Neonode cites Figure 2 of the patent and the specification's discussion thereof.  Resp. Br. at 13.  However, the function there is activated by <u>any type</u> of "movement" from "a starting point A" in "direction B" and "to the display area 3."  '879 patent at 4:8-12, Fig. 2.  There is <u>no discussion</u> anywhere in the patent whether that movement is smooth, sharp, or quick.  Neonode also is wrong that the specification uses the term gliding (Resp. Br. at 19) because it never does.

Neonode's assertion that the movement in Figure 2 constitutes an amorphous "appreciable portion of the display" (Resp. Br. at 13) mischaracterizes "B" as an "end point, when "B" instead only shows "direction."  '879 patent at 4:9-10.  Regardless, Figure 2 cannot be relied upon to show a "particular size[]" of movement.  *Hockerson-Halberstadt, Inc. v. Avia Group International, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000).  Furthermore, touch sensitive area 1 only has a <u>diagonal</u> length of 2-3 inches ('879 patent at 6:8), and an "appreciable portion" of such a short distance could be traversed by anything labeled a glide, drag or flick.  Accordingly, the specification does not distinguish among a flick, drag or glide, all of which are continuous movements across a surface.[4]

Finding no support in the specification as filed in 2002, Neonode resorts to relying on the new matter it introduced in a video of the N2 in 2008.  Resp. Br. at 14-15.  But because, as shown above, the gesture in the N2 is a short "drag" and not a "glide" under Neonode's criteria, the N2 offers no support for Neonode's current construction.  Ex. 20 (Cockburn Supp. Decl.) at ¶¶ 27-30.

Neonode next cites the prosecution history regarding the Hoshino reference, claiming the applicant disavowed drag-and-drop operations by distinguishing Hoshino on that basis.  Resp. Br.

---

[4] Neonode argues the specification cannot teach dragging because the representations are printed on an enclosure.  Resp. Br. at 13.  However, that does not preclude dragging, which is a logical operation that does not require visual movement of the representation.  *See* section II.B.1, *supra*.

at 15.  However, not only did the applicant's argument not rise to the level of disclaimer (*Unwired Planet, LLC v. Apple Inc*., 829 F.3d 1353, 1358 (Fed. Cir. 2016)), the applicant merely distinguished Hoshino's "touch-activate-glide" order of operations from the claimed order of "touch-glide-activate."  Op. Br. Ex. 13 at 8.  This does not disclaim all "drag and drop" operations, most of which operate in the claimed order.  More importantly, the applicant's characterization of Hoshino's movement as a "glide" underscores the lack of any meaningful distinction between a "glide" and a "drag."  *Id*.  The applicant's discussion of Hoshino therefore does not tell a POSITA what distinguishes a glide from a drag in any way material to the claims.

Neonode also contends it meaningfully articulated the difference between gliding and dragging in the Samsung IPR regarding the Hirayama-307 reference.  Resp. Br. at 16-17.  However, the only "distinguishing" point identified by Neonode in its brief is that Hirayama includes a "drop" at the end of the drag.  *Id.*  But Neonode points to nothing that distinguishes a drag from a glide, and the claims do not either require or preclude a drop at the end of glide.

Neonode states that its IPR expert distinguished a "glide" as "slower, smoother and longer" than a "flick," but faster and less laborious than a "drag."  Resp. Br. at 17, Ex. 24 at ¶¶ 92-95.  However, none of these purported parameters finds ***any support*** in the claims or the specification, nor are they mentioned in the original prosecution history, and they certainly do not provide the requisite "objective boundaries" that allow a POSITA to have "reasonable certainty" as to whether any given movement is a glide.  Op. Br. 13-17, Ex. 2 at ¶¶ 56-63.  The fact that mathematical precision is not required (Resp. Br. at 19) does not save the claims because the claims and specification provide no criteria whatsoever for where to draw these purported lines.  *Id*.

Neonode points to the PTAB's statements in the Google IPR that the applicant "intended" to distinguish swiping gestures from a drag and drop (Resp. Br. at 18 (citing Ex. 21 at 26)), but,

once again, Neonode cites to nothing that allows a POSITA to determine the boundaries (if any) between a glide and a drag.  Indeed, the only "distinction" cited by Neonode is the PTAB's statement, after referencing the N2 product, that gliding "reflect[s] a swiping gesture that is more specific than merely an on-screen movement from one location to another."  *Id*.  Neonode does not explain how this informs a POSITA of the boundaries between a glide and a drag, and the PTAB's reference to the N2 product undermines any alleged distinction because, as shown above, the N2 performed a drag and drop operation under Neonode's criteria for that term.

Neonode also cites the PTAB's discussion of glide and flick in the Google IPR.  Resp. Br. at 19-20.  However, the only actual "criteria" listed in the passages cited by Neonode are the same extrinsic dictionary definitions addressed above that fail to provide sufficient guidance.  Moreover, the PTAB was not asked to (and did not) determine whether the claim is indefinite, but rather discussed whether there was written description support for gliding.

Finally, Neonode is incorrect that the named inventor's testimony referring to the claimed movement as a "drag" did not pertain to the '879 patent.  Resp. Br. at 18.  Mr. Goertz testified: "If you look at the patents, you have the file icon, where you put your finger and then drag it up, but that's fixed on the printed on the phone."  Op. Br. Ex. 14 (IPR2021-01041, EX1044 ("Goertz Tr.") at 41:8-11).  While Neonode cites a pre-*Philips* case regarding inventor testimony (Resp. Br. at 18), the Federal Circuit held in *Philips* that the court may consider and rely on inventor testimony. *Phillips v. AWH Corp*., 415 F.3d 1303, 1317 (Fed. Cir. 2005); *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc*., 540 F.3d 1337, 1347 n.5 (Fed. Cir. 2008) ("[t]he testimony of an inventor, of course, may be pertinent as a form of expert testimony, for example, as to understanding the established meaning of particular terms in the relevant art.").

## III.    CONCLUSION

For the foregoing reasons the Court should find the disputed terms indefinite.

10

Dated:  June 9, 2023                               Respectfully submitted,

                                                   DLA PIPER LLP (US)

                                         By:  _/s/ John M. Guaragna_
                                              John M. Guaragna
                                              Texas Bar No 24043308
                                              Brian Erickson
                                              Texas Bar No 24012594
                                              DLA PIPER LLP (US)
                                              303 Colorado Street, Suite 3000
                                              Austin, TX 78701-4653
                                              Tel: 512.457.7125
                                              Fax: 512.457.7001
                                              john.guaragna@dlapiper.com

                                              Mark D. Fowler *(Pro hac vice)*
                                              Bar No. 124235
                                              mark.fowler@dlapiper.com
                                              Erik Fuehrer *(Pro hac vice)*
                                              Bar No. 252578
                                              Erik.fuehrer@dlapiper.com
                                              **DLA PIPER LLP (US)**
                                              2000 University Avenue
                                              East Palo Alto, CA  94303-2214
                                              Tel:  650.833.2000
                                              Fax:  650.833.2001

                                              Tiffany Miller *(Pro hac vice)*
                                              Tiffany.miller@dlapiper.com
                                              **DLA PIPER LLP (US)**
                                              4365 Executive Drive, Suite 1100
                                              San Diego, CA 92121-2133
                                              Tel: 858.677.1400
                                              Fax: 858.677.1401

                                              Zachary Loney (*Pro hac vice*)
                                              **DLA Piper LLP (US)**
                                              303 Colorado St., Suite 3000
                                              Austin, TX 78701
                                              Tel: 512.457.7000
                                              Zachary.loney@us.dlapiper.com

                                              Benjamin Mueller *(Pro hac vice)*
                                              Benjamin.mueller@dlapiper.com
                                              **DLA PIPER LLP (US)**
                                              444 West Lake Street, Suite 900

11

Chicago, IL 60606-0089
Tel: 312.368.4000
Fax: 312.236.7516

***ATTORNEYS FOR SAMSUNG
ELECTRONICS CO. LTD. and SAMSUNG
ELECTRONICS AMERICA, INC.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on June 9, 2023 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail on this same date.

*/s/ John M. Guaragna*
John M. Guaragna