**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| NEONODE SMARTPHONE LLC., § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> SAMSUNG ELECTRONICS CO. LTD. § <br> AND SAMSUNG ELECTRONICS § <br> AMERICA, INC., § <br> *Defendants*. § | Civil Action No. 6:20-cv-00507-ADA <br><br> JURY TRIAL DEMANDED |

**NEONODE SMARTPHONE LLC'S SUR-REPLY CLAIM CONSTRUCTION BRIEF**

## **TABLE OF CONTENTS**

I. ARGUMENT ...................................................................................................................1

    A. "the representation consists of only one option for activating the function" ......................................................................................................................1

        1. The Claim Language Conveys Plain Meaning. ............................................1

        2. The Specification, Which Samsung Ignores, Supports Plain Meaning. ........................................................................................................2

        3. The Prosecution File Refutes Samsung's Indefiniteness Argument. ...................................................................................................2

        4. The IPR Record Refutes Samsung's Indefiniteness Argument. ..................4

        5. Samsung Fails to Prove that Limitation 1[b] Renders Claim 1 Indefinite. ....................................................................................................5

    B. "gliding" ..................................................................................................................6

        1. The N2 Does Not Use a Drag-and-Drop, and this Issue is Irrelevant ......................................................................................................6

        2. Samsung Fails to Prove that "Gliding" is Indefinite ...................................8

II. CONCLUSION ..............................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*,
   35 F.4th 1345 (Fed. Cir. 2022) ................................................................................................5

*Hockerson-Halberstadt, Inc. v. Avia Group International, Inc.*,
   222 F.3d 951 (Fed. Cir. 2000) .................................................................................................9

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
   540 F.3d 1337 (Fed. Cir. 2008) .............................................................................................10

*Niazi Licensing Corporation v. St. Jude Medical S.C., Inc.*,
   30 F.4th 1339 (Fed. Cir. 2022) ................................................................................................5

*Sequoia Technology, LLC v. Dell, Inc.*,
   66 F.4th 1317 (Fed. Cir. 2023) ............................................................................................6, 7

*Skinmedia, Inc. v. Histogen Inc.*,
   727 F.3d 1187 (Fed. Cir. 2013) ...............................................................................................7

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
   844 F.3d 1370 (Fed. Cir. 2017) ...............................................................................................9

I.    **ARGUMENT**

    A.    **"the representation consists of only one option for activating the function"**

Samsung fails to prove by clear and convincing evidence that this claim term is indefinite. Neither the claim language, specification, file history, nor IPR record support Samsung's argument. The Court should give the term its plain meaning.

    1.    **The Claim Language Conveys Plain Meaning.**

A POSITA, when viewing this limitation in the context of the surrounding claim language, would plainly understand the scope of the invention. The phrase "consists of" limits <u>only</u> the "representation" immediately preceding it. The language does not limit the number of functions that may be represented, nor does it limit the ways in which to activate the function. To be clear—a "representation" may represent more than one "function," but the user has only one option for activating one (of the multiple) functions. This Court should reject Samsung's attempt to sow confusion into the claim language.

Samsung's arguments are unavailing. First, Samsung complains that Neonode tacks on "at any given time," but a POSITA would understand that this reflects how limitation 1[b] meshes with limitation 1[a] in light of the specification's description of element 21. Dkt. 81-1 at ¶¶38, 41, 46, 58; Dkt. 81-3 at 4:13–34. Second, this Court should reject Samsung's reliance on the conclusory assertions of Prof. Cockburn to argue that the "only one" requirement limits "the number of ways to activate to one way." Dkt. 84 at 1. Neonode's expert, Dr. Rosenberg, explained at length why Dr. Cockburn's conclusory declaration statement on this issue is incorrect. *See* Dkt. 81-1 at ¶¶ 57–65; see also *id.* at ¶¶ 35–38. As Dr. Rosenberg explained, the phrase "consists of" in this limitation limits only the phrase "the representation" that immediately precedes it, and not the word "representation" in limitation 1[a]. Prof. Cockburn's conclusory assertions are divorced from the plain language of the claim.

### 2. The Specification, Which Samsung Ignores, Supports Plain Meaning.

As Neonode explained, the specification provides an example of a representation of a function that consists of only one option for activating one of multiple represented functions at any given time—representation 21, representing an "application dependent" function. Dkt. 81 at 7; Dkt. 81-1 at ¶ 41. As Neonode also explained, the applicant relied on representation 21 to provide support for limitation 1[b] when distinguishing Hirshberg. *See* Dkt. 81 at 8–9; Dkt. 81-1 at ¶¶ 42–47. This supports Neonode's explanation of the plain meaning of limitation 1[b]. Samsung fails to address either point.

### 3. The Prosecution File Refutes Samsung's Indefiniteness Argument.

The prosecution history supports plain meaning. Samsung asserts that Neonode fails to distinguish Hirshberg because "Hirshberg's 'representation [the multifunction key] consists of only one option [the touch and glide up gesture] for activating one [typing an 'H'] of the one or more functions [typing 'H,' 'I' or 'G'] at any given time.'" Dkt. 84 at 2. This is wrong, for multiple reasons. First, Samsung's attempt to read Neonode's plain meaning construction onto Hirshberg is faulty because, as shown above, the transitional phrase "consists of" signals that the "only one option" language pertains to "the representation" rather than to the "gesture" that activates a function. Second, Samsung ignores the grounds on which the applicant actually distinguished Hirshberg, which focused on ***how many*** functions could be activated at a given time and not on ***how*** a function is activated. *See* Dkt. 83-2 at 208. Indeed, on the very next page of its Reply brief, Samsung admits as much:

> [The applicant] argued the claims were distinguishable because the claimed "representation" corresponds to only one function (as exemplified by the one-function keys described in the specification) while the Hirshberg representation (multifunction key) corresponds to multiple functions (i.e., pressing "H," "I" or "G").

Dkt. 84 at 3.  <u>Third</u>, each of Hirshberg's multifunction keys enabled activation of *more* than one of the functions at any given time—that is why Hirshberg referred to them as "*multifunction*" keys.  At any given time, the keys presented the user *multiple* options of functions that could be activated, *e.g.*, an "H," an "I," or a "G."  Dkt. 81-6 at Fig. 1.  Limitation 1[b] requires that the representation consist of only a single option, which is how the applicant distinguished Hirshberg.

Samsung also attempts to manufacture an "inconsistency" in the applicant's arguments distinguishing Hirshberg.  Dkt. 84 at 3.  This purported inconsistency, however, proceeds from Samsung's faulty premise that "option" pertains to a "gesture."  As Neonode has explained, it does not.  *See* Dkt. 81 at 5–11.  The applicant added limitation 1[b] in order to distinguish Hirshberg's multifunction keys, *i.e.*, representations that consisted of more than one option for activating a function.  In describing the support for the amended claim language, the applicant did not look to *how* the functions were activated, but rather to *how many* functions could be activated at a given time.  Dkt. 83-2 at 208.  The examiner issued the claims in view of the applicant's arguments distinguishing Hirshberg.  Samsung contends that "[a] POSITA cannot reconcile" purportedly "inconsistent statements" made by the applicant during prosecution, but there are no inconsistencies to reconcile under Neonode's plain meaning interpretation. Dkt. 84 at 3.

Samsung next asserts that the "at any given time" language Neonode cites from the prosecution file was used to distinguish the Carlson reference.  Dkt. 84 at 3.  Samsung, however, fails to address the applicant's reliance on representation 21 as support for the "only one option" language.  The specification's discussion of representation 21, and the applicant's reliance thereon, indicate that the representation presents one option of a function to activate at any given time.  Dkt. 81 at 8–9.  And there is no support—not even a conclusory statement by its expert—for Samsung's assertion that "at any given time" was used here to mean "at all times."

3

### 4. The IPR Record Refutes Samsung's Indefiniteness Argument.

Samsung next faults Neonode for purportedly failing to address "that Neonode's IPR brief [in the Google IPR] argued the claim is limited to one function and that the claim does not limit the number of options (gestures) used to activate a function." Dkt. 84 at 4. Samsung then posits that this is inconsistent with Neonode's statement at the IPR hearing that "the user is given only one option in terms of what to activate and what option to take." *Id*. As a threshold matter, Neonode did address this purported issue, showing that in the IPR briefing, in its demonstrative exhibits submitted to the Board, and at the hearing, Neonode consistently focused "not on ***how*** the user activates a function, but on ***how many*** functions could be activated at any given time (only one)." Dkt. 81 at 9–10. Beyond that, there is no inconsistency. In the portion of the Google IPR hearing to which Samsung cites, Neonode was distinguishing the Robertson reference on the ground that it disclosed multifunction representations similar to Hirshberg's multifunction keys. Dkt. 81-9 at 71:3–24. Neonode explained that the Robertson representations enabled activation of multiple functions at any given time depending on the particular input, just like Hirshberg's multifunction keys. In contrast, Neonode explained, with the claimed invention of the '879 Patent:

> You swipe, the device activates what it activates. It can be one function or a different function, but the user is given only one option in terms of what to activate and what option to take.

*Id*. at 73:13–16. A POSITA would read this statement at the IPR hearing as consistent with the surrounding context, *i.e.*, that claim 1 limits the user to only one option "in terms of what to activate," *i.e.*, one function that can be activated at a given time, and that is the only "option to take." Dkt. 81-1 at ¶¶51-56.

Samsung's indefiniteness case plucks one statement made during the hearing out of context and invests it with a meaning contrary to all of the surrounding context and to the text itself, then posits that this purported "inconsistency" would be sufficient to deprive a POSITA of reasonable

4

certainty as to the meaning of the claim. But even if Samsung were correct—it is not—this would still be insufficient to prove indefiniteness by clear and convincing evidence. *Niazi Licensing Corporation v. St. Jude Medical S.C., Inc.*, 30 F.4th 1339, 1349–50 (Fed. Cir. 2022) (rejecting defendant's argument that "a single sentence in the written description" created an invalidating inconsistency in light of the intrinsic evidence as a whole).

### 5. Samsung Fails to Prove that Limitation 1[b] Renders Claim 1 Indefinite.

The claim is susceptible to only one meaning, and Samsung's attempt to concoct alternative interpretations should be rejected. Even if the claim could be susceptible to three different meanings (it is not), that would still not render claim 1 indefinite. *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1351 (Fed. Cir. 2022) ("Just because a term is susceptible to more than one meaning does not render it indefinite."). The intrinsic record is clear and does not support any of Samsung's "three meanings." *See* Dkt. 81 at 10–12.

Samsung fails to meaningfully address Neonode's showing that the claim as a whole forecloses Samsung's three proposed meanings. In its Responsive Brief, Neonode explained how limitations 1[a] and 1[c] provide guidance concerning the scope of limitation 1[b]. Dkt. 81 at 6, 10–12. Limitation 1[a] recites "a representation of a function," i.e., one or more functions, while limitation 1[c] recites how the function is activated (by a touch-and-glide operation). Thus, limitation 1[a] forecloses Samsung's "first meaning." The purported second and third meanings are foreclosed by the plain language of 1[b]. The language restricts the number of options for activating a function (to overcome Hirshberg), but does not require that the representation represent a single function.

Samsung asserts that limitation 1[c] does not limit the claim to only one way of activating a function, but this misses the point—it is limitation 1[c] that recites ***how*** a represented function is activated, i.e., by a touch-and-glide operation. If the applicant had intended to limit how a

5

represented function is activated, he would have deleted the open-ended "comprising" transition from *limitation 1[c]* and amended it to recite that the function is activated "<u>only</u>" by the recited touch-and-glide operation. But that is not what the applicant did. Moreover, Samsung fails to even address the numerous additional reasons as to why Samsung's "three meanings" fail.

Accordingly, Samsung fails to prove that limitation 1[b] renders claim 1 indefinite.

**B.      "gliding"**

Rather than addressing the issue at hand—whether a POSITA can understand what "gliding . . . along the touch sensitive area" means with reasonable certainty—Samsung focuses on a tangent, demanding that Neonode point to something in the intrinsic record that articulates precise demarcations between a glide, a flick, and a drag-and-drop. The law imposes no such obligation. Samsung's argument that a POSITA would not know what "gliding . . . along the touch sensitive area" means is meritless.

**1.      The N2 Does Not Use a Drag-and-Drop, and this Issue is Irrelevant.**

Faced with the N2 video submitted during prosecution, Dkt. 81-16, which shows the user activating a series of functions by gliding away from a corresponding icon, Samsung submits new, extrinsic evidence purporting to show that the N2 actually uses a "drag and drop" to activate functions. Dkt. 84 at 5. This new argument is both factually incorrect and legally irrelevant.

First, although the N2 video submitted during prosecution is part of the intrinsic record, Prof. Cockburn's new declaration is not. It is extrinsic evidence, entitled to little if any weight. *Sequoia Technology, LLC v. Dell, Inc.*, 66 F.4th 1317, 1323–24 (Fed. Cir. 2023). Moreover, Samsung provides no explanation as to how it could possibly bear on claim construction, given that nothing in the prosecution file suggests that the examiner obtained an N2 and analyzed its operation independent of the video. Such evidence is irrelevant to claim construction. *Id.* (rejecting reliance on expert testimony directed to patents other than the patent at issue).

6

Second, a user of the N2 cannot drag a representation across the display or "drop" it into a specific area. With respect to the "drag," Samsung leans heavily on the fact that a "drag" may involve a logical dragging that is not visually reflected on the display during the operation. But in order to prove that a logical dragging is taking place, Samsung would have to show that the N2's software causes the device to execute a logical drag. Samsung proffers no such evidence, instead relying on Dr. Cockburn's assertion that a touch-and-glide gesture on the N2 "logically drags" a representation. Dkt. 84-1 at ¶ 14. But there is no basis on which Samsung's expert could arrive at such a conclusion, because he has not reviewed the source code or any other evidence of how the N2's programming causes the device to function. His opinion is conclusory and entitled to no weight. *Skinmedia, Inc. v. Histogen Inc.*, 727 F.3d 1187, 2110 (Fed. Cir. 2013).

With respect to the "drop," Samsung's evidence is similarly deficient. Samsung submits 12 pages of expert testimony purporting to show that the N2 user "drops" a (nonexistent) dragged representation into a specific area. As Dr. Rosenberg explained in the Google IPR, "in a drag-and-drop operation, some form of the item is logically dragged (and behaves as if it is being logically dragged) with the movement of the stylus and is ***dropped at the location where the stylus leaves the screen***." Dkt. 81-15 at ¶ 140 (emphasis added). With the N2, nothing is dropped at the location where the finger leaves the screen. The N2 has three icons in the lower portion of the screen—representing the Start menu, the keyboard, and the Tools menu—each of which may be activated by an upward swipe of the user's finger. Dkt. 84-1 at ¶ 11 ("Below each of the sets of arrows is a symbol, formed in the black plastic below the display."). When activated, each of the functions ***fills the display completely*** rather than a portion of the display at the purportedly "dropped" location. Dkt. 81-16 at 0:26–37. Accordingly, Samsung's assertion that the N2 uses a drag-and-drop operation (and that the N2 is "just like Hirayama-307") is meritless.

7

Samsung also contends that the N2 gesture is not a glide because the user must lift their thumb to activate the function and "the endpoint of the movement is significant." Dkt. 84 at 6. This, too, is a red herring. First, it is immaterial that the user must lift their thumb to activate the function, because claim 1 does not foreclose additional aspects to the multi-step operation ("the function is activated by a multi-step operation *comprising*" the touch-and-glide movement). Dkt. 81-3 at 6:52–57. With respect to the "endpoint," neither Neonode nor Dr. Rosenberg have ever taken the position that a gesture categorically cannot include a "glide" if the endpoint is "significant"; that is merely a characteristic that tends to differentiate a glide from a drag-and-drop. Neonode and Dr. Rosenberg have repeatedly explained that the key distinction is that "in a drag-and-drop operation 'you're selecting an icon then you're moving it to a precise location,'" such that a window displaying the function opens "at the location where the stylus leaves the screen," whereas with a glide, the user is not dragging anything and not *dropping* anything in a specific location. Dkt. 81-1 at ¶¶ 70, 88–90, 93; Dkt. 81-16 at 0:26–37. And Prof. Cockburn's declaration annotating green rectangles onto an N2 display do not illustrate a "drop," because the keyboard function fills the entire display rather than only the green rectangle when activated. So, even assuming that this evidence had some bearing on the construction of "gliding" (which it does not) Samsung fails to prove that the N2 uses a drag-and-drop gesture.

### 2.     Samsung Fails to Prove that "Gliding" is Indefinite.

Samsung attempts to nitpick Neonode's dictionary definitions submitted to show the plain meaning of "gliding" and how it differs from a "flick," but musters nothing in response but the assertion of its expert that a flick may be "continuous." Dkt. 84 at 7. Putting aside whether a flick may be continuous for some infinitesimal period of time, a POSITA could distinguish it from a glide. Dkt. 81-1, ¶¶ 67–69, 72–76, 83–84, 95–101, 103–04; Dkt. 81-15 at ¶¶ 77–86.

Samsung next suggests that Figure 2 of the '879 Patent sheds no light on whether the depicted gesture is smooth, sharp, or quick. Again, Samsung misses the point—Figure 2 is significant because it illustrates a moving thumb that remains in contact with the display from the bottom of the display to near the top of the display. Dkt. 81-3 at Fig. 2. What it illustrates is therefore consistent with a plain meaning understanding of "gliding . . . along the touch sensitive area." It is also clearly not a "flick," in which the object would lift off of the display almost immediately. Dkt. 81-15 at ¶¶ 84–86. Samsung cites *Hockerson-Halberstadt, Inc. v. Avia Group International, Inc*., 222 F.3d 951, 956 (Fed. Cir. 2000) for the proposition that Figure 2 cannot be relied upon. But the case is inapposite because Neonode is not pointing to Figure 2 to demonstrate "precise proportions" or "particular sizes" of anything, but rather simply to show that the illustrated movement is consistent with a glide and inconsistent with a flick.

Samsung next asserts that the N2 video submitted during prosecution "offers no support" for Neonode's construction, because the N2 activates functions using a drag-and-drop gesture. As shown above, however, the N2 does ***not*** use a drag-and-drop gesture. So the significance of the N2 video, showing the gliding movement as an element of the invention's novelty, is unrebutted.

Samsung also contends that the applicant did not distinguish Hoshino on the basis that Hoshino discloses a drag-and-drop operation. Here again, Samsung ignores the most pertinent language, in which the applicant distinguished Hoshino on that very basis: "Hoshino does not teach gliding a finger away from an icon. Instead, Hoshino teaches a drag-and-drop operation for moving an icon." Dkt. 83-2 at 250. (emphasis in original). Samsung asserts that "the applicant merely distinguished Hoshino's 'touch-activate-glide' order of operations from the claimed order of 'touch-glide-activate,'" Dkt. 84 at 9, but here the applicant was making an ***additional*** argument, distinguishing Hoshino on the additional ground that the timing of activation was different in

9

Hoshino: "the claimed invention activates a function after the glide, whereas Hoshino activates the function after the (hard) touch."  Dkt. 83-2 at 249.  Samsung fails to rebut the fact that one of the grounds on which the applicant distinguished Hoshino was that it used a drag-and-drop operation.

The remainder of Samsung's argument simply restates in various ways its demand that Neonode articulate a precise dividing line between a glide, a flick, and a drag-and-drop.  While paying lip service to the Federal Circuit authority rejecting such precision, e.g., *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017), Samsung contends that no POSITA would understand the differences between these terms with reasonable certainty.  Yet, the patent examiner and the PTAB judges all understood what "gliding . . . along the touch sensitive area" meant, and that it did not include either a flick or a drag-and-drop.

Finally, Samsung returns to the snippet from Magnus Goertz's deposition transcript that it cited with its opening brief.  It is undisputed that Goertz was not asked whether a "glide" could be differentiated from a "drag," and that this testimony concerned an early concept for the phone.  Moreover, Goertz's use of the term "drag" most logically applied to "finger" rather than "icon," particularly given his acknowledgement that the latter is "fixed on the printed on the phone."  The Goertz testimony—which is taken out of context and is, at best for Samsung, ambiguous—hardly constitutes clear and convincing evidence that "gliding" as used in the claim is indefinite.[1]

## II.   CONCLUSION

The Court should reject Samsung's meritless indefiniteness arguments and construe the terms at issue as requested by Neonode.

---

[1] Notably, the case Samsung cites, *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337 (Fed. Cir. 2008), found the expert testimony proffered in that case to be "irrelevant to the issue of claim construction."  *Id.*, at 1347.

| | |
|---|---|
| Dated: June 22, 2023 | Respectfully submitted,<br><br>By: /s/ Philip J. Graves<br>Philip J. Graves (Pro Hac Vice)<br>CA State Bar No. 153441<br>Greer N. Shaw (Pro Hac Vice)<br>CA State Bar No. 197960<br>**GRAVES & SHAW LLP**<br>355 S. Grand Ave., Suite 2450<br>Los Angeles, CA 90071<br>Telephone: (213) 204-5101<br>Email: pgraves@gravesshaw.com<br>Email: gshaw@gravesshaw.com<br><br>Brian D. Melton, **Attorney-in-charge**<br>(TX Bar #24010620)<br>Kalpana Srinivasan (CA Bar # 237460)<br>Rocco Magni (TX Bar # 24092745)<br>Bryce T. Barcelo (TX Bar # 24092081)<br>**SUSMAN GODFREY L.L.P.**<br>1000 Louisiana Street, Suite 5100<br>Houston, Texas 77002-5096<br>Telephone: (713) 653-7807<br>Facsimile: (713) 654-6666<br>bmelton@susmangodfrey.com<br>ksrinivasan@susmangodfrey.com<br>rmagni@susmangodfrey.com<br>bbarcelo@susmangodfrey.com<br><br>Craig D. Cherry (TX Bar No. 24012419)<br>ccherry@cjsjlaw.com<br>Mark D. Siegmund (TX Bar No. 24117055)<br>msiegmund@ cjsjlaw.com<br>**CHERRY JOHNSON SIEGMUND JAMES, PLLC**<br>400 Austin Ave., 9th Floor<br>Waco, Texas 76701<br>Telephone: (254) 732-2242<br>Facsimile: (866) 627-3509<br><br>**COUNSEL FOR PLAINTIFF NEONODE SMARTPHONE LLC** |

11

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on June 22, 2023 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail on this same date.

\s\ Philip J. Graves