IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| NEONODE SMARTPHONE LLC,<br>    *Plaintiff,* | § § § | |
| v. | § § | 6:20-CV-00507-ADA<br>6:23-CV-00204-ADA |
| SAMSUNG ELECTRONICS CO. LTD,<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.,<br>    *Defendants.* | § § § § | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Before the Court is Samsung Electronics Co., Ltd.'s and Samsung Electronics America, Inc.'s (collectively, "Samsung") Motion to Dismiss Neonode Smartphone LLC's ("Neonode") claims of willful infringement of U.S. patent Nos. 8,812,993 ("'993 Patent") and 8,095,879 ("'879 Patent") (collectively, "Asserted Patents") and Neonode's claims of indirect infringement and direct infringement of the '993 Patent. ECF No. 12 (in the -00507 action); ECF No. 3 (in the -00204 action).[1] After careful consideration of the parties' briefings, the Court **GRANTS-IN-PART** Samsung's Motion to Dismiss.

### I. BACKGROUND

Neonode filed the Complaint commencing this suit against Samsung on May 11, 2022, accusing Samsung of willfully infringing the Asserted Patents and directly and indirectly infringing the '993 Patent, both pre- and post-suit. ECF No. 1 ¶¶ 37–52, 55–70. Neonode alleges that Neonode entered into a licensing agreement with Samsung on July 13, 2005, where Neonode licensed U.S. Application No. 10/315,250 to Samsung, which eventually issued as the '879 Patent.

---

[1] Unless otherwise noted, all ECF Nos. herein refer to the -00507 action.

*Id.* ¶ 17. The application was allegedly specifically referenced in the agreement. *Id.* The agreement terminated in 2009. *Id.* Samsung was sued by Apple Inc. on February 8, 2012, over claims of patent infringement. *Id.* ¶ 18. Samsung allegedly utilized Neonode's "N1 Quickstart Guide V0.5" in its invalidity defense in *Apple v. Samsung*, which describes how to use the Neonode N1. *Id.* ¶ 25; ECF No. 25 at 3. Multiple outlets covered Neonode's '879 Patent and Samsung's use of the '879 Patent as a defense in the *Apple v. Samsung* litigation. ECF No. 1 ¶¶ 20–22. On September 24, 2015, Neonode allegedly inquired about Samsung's interest in Neonode's patent portfolio, which contained the Asserted Patents, and were told by Samsung's counsel almost a month later that Samsung was uninterested. ECF No. 25 at 5.

## II. LEGAL STANDARD

Evaluating whether to grant a motion to dismiss under Rule 12(b)(6) is a "purely procedural question not pertaining to patent law." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007). Thus, Fifth Circuit law governs. *Id.* In the Fifth Circuit, "all well-pleaded facts" are accepted as true, they are viewed "in the light most favorable to the plaintiff," and "all reasonable inferences" are drawn in the plaintiff's favor. *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021). A complaint must be "plausible on its face" with sufficient factual bases. *Ashcroft v. Iqbal*, 556 U.S. 544, 570 (2007). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Additionally, there must be "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Xiros, Ltd. v. Depuy Synthes Sales, Inc.*, W-21-CV-00681-ADA, 2022 WL 3592449, at *2 (W.D. Tex. Aug. 22, 2022) (citing *Iqbal*, 556 U.S. at 678). Furthermore, specific facts are not required, as long

as the statement gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Discovery should generally proceed when "the relevant information is beyond the access of the plaintiff . . . unless the complaint recites no more than sheer speculation about the plaintiff's entitlement to relief." *Motiva Patents LLC v. Sony Corp.*, 408 F. Supp. 2d 819, 827 (E.D. Tex. 2019) (alteration in original). This is because a plaintiff "need not prove its case at the pleading stage." *Repairify, Inc. v. Keystone Auto. Indus., Inc.*, 610 F. Supp. 3d 897, 900–01 (W.D. Tex. 2022) (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)).

"To state a claim for willful infringement, 'a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.'" *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019) (quoting *Välinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018)). Without pleading that the defendant had knowledge of the alleged infringement, it is impossible to claim willful infringement. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016). Egregiousness is not a requirement to plead willful infringement, but rather a distinct claim to grant enhanced damages. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1329–30 (Fed. Cir. 2021). Egregious conduct can exist without willfulness and willful conduct can exist without egregiousness. *Välinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218, at *9 (D. Del. May 29, 2018).

To allege direct infringement, the complaint must contain facts that "plausibly support the assertion that a defendant 'without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent." *Ruby Sands, LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-cv-1955, 2016 WL 3542430, at *2 (E.D. Tex. June 28, 2016) (quoting 35 U.S.C § 271(a)). Evidence of direct infringement may be text-based or based on visual exhibits. *Repairify, Inc.*, 610 F. Supp. 3d at 901. Although the allegations must show that all claim limitations of at least one claim of the claimed invention are practiced by the accused products to satisfy the *Twombly/Iqbal* pleading standard, *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-06795-EJD, 2017 WL 2311407, at *3 (N.D. Cal May 26, 2017), the complaint satisfies this requirement if it alleges that the accused products, identified both by name and with visual exhibits, satisfy "each and every element of at least one claim of the [asserted] Patent." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, F.3d 1256, 1260 (Fed. Cir. 2018). And although some courts have found *Disc Disease* does not set the minimum requirements for pleading patent infringement, *Pure Parlay, LLC v. Stadium Tech. Grp., Inc*, No. 219CV00834GMNBNW, 2020 WL 569880, at *3 (D. Nev. Feb. 5, 2020), this Court and others have found that it does. *Unification Techs. LLC v. Dell Techs., Inc.*, 6:20-CV-00499-ADA, 2021 WL 1343188, at *3 (W.D. Tex. Jan 28, 2021); *accord Berall v. Pentax of Am., Inc*, No. 10-CV-577 (LAP), 2021 WL 3934200, at *5 (S.D.N.Y. Sept. 2, 2021). The facts used to support the alleged infringement do not need to "mimic the precise language used in a claim." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1343 (Fed. Cir. 2012).

To establish indirect infringement, there must be a showing of induced or contributory infringement. 35 U.S.C. §§ 271(b–c). Both types of infringement require that the accused infringer had actual knowledge or was willfully blind to the existence of the patents-in-suit. *Glob.-Tech*

*Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769 (2011). There are three elements that must be pled for induced infringement according to § 271(b): (1) the defendant had actual knowledge of the patent; (2) the defendant knowingly induced a third-party to infringe the patent; and (3) the defendant had the specific intent to induce infringement. *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014) (citing *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)).

### III. DISCUSSION

**1. Willful Infringement of the Asserted Patents**

Neonode alleges Samsung knew of the '879 Patent both pre-suit and post-suit. ECF No. 25 at 2–4, 6. Samsung argues these allegations are not factually supported. ECF No. 12 at 2. Samsung's primary contention is that Neonode fails to support its claim that Samsung had pre-suit knowledge of the Asserted Patents. *Id.*

Neonode alleges five sets of facts to support their claim. First, Samsung took a license to U.S. Application No. 10/315,250 ("'250 Application") on December 10, 2002, which issued as the '879 Patent on January 10, 2012. ECF No. 25 at 2. The licensing agreement expired sometime during or after 2009. ECF No. 1 ¶ 17. Neonode asserts that because Samsung previously licensed the '250 Application, Samsung was interested in utilizing the technology which ultimately issued in the '879 Patent, indicating their infringement. ECF No. 25 at 8. Although this does suggest that Samsung may have been infringing, it fails to show that Samsung had the requisite knowledge of the '879 Patent's existence as required to plead willful infringement. *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). Just having knowledge of an application is typically insufficient because not all applications issue. *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS, 2012 WL 1831543, at *2–3 (N.D. Cal. May 18, 2012).

5

Furthermore, the claims of a patent application when published may change prior to issuance. Even construing this in the light most favorable to the plaintiff, the license alone does not establish actual knowledge.

Second, Neonode argues that Samsung monitored industry press in preparation of *Apple Inc. v. Samsung Electronics Co., Ltd*, No. 12-CV-00630-LHK (N.D. Cal 2014), providing them with actual knowledge of the '879 Patent. ECF No. 25 at 3. Several articles discussing the '879 Patent were published between the filing of the initial complaint and trial. ECF No. 25 at 3. The patent number was published in at least one article. ECF No. 1 ¶ 21. This again does not plausibly indicate that Samsung gained actual knowledge of the '879 Patent. *State Indus*., 751 F.2d at 1236. This only speculates that Samsung read the articles, and therefore is not sufficiently pleaded to establish actual knowledge.

Third, Neonode argues that Samsung's use of the Neonode N1 as prior art in *Apple v. Samsung* is sufficient to establish knowledge of the '879 Patent. ECF No. 25 at 8, 10. It again is not. Neonode pleads that Samsung used the "Neonode Quickstart Guide V0.5" as a reference in the *Apple* case to support its invalidity contention. ECF No. 1 ¶ 25. Yet Neonode does not allege that the guide contains any statement that the Neonode N1 uses the technology in the '879 Patent necessary to impart actual knowledge on Samsung. Additionally, Neonode pleads that Samsung used the Neonode N1 at a court hearing in August 2011. ECF No. 25 at 10. But this was before the '879 Patent issued and therefore could not have imparted actual knowledge of the subsequently issued patent as required. *State Indus*., 751 F.2d at 1236.

Fourth, Neonode argues is it reasonable to infer that Quinn Emanuel, Samsung's counsel in the *Apple* lawsuit, informed Samsung of the '879 Patent following the deposition Quinn Emanuel took as Motorola's counsel in *Motorola Mobility, Inc. v. Apple, Inc.*, No. 1:10cv023580-

Civ-UU. ECF No. 25 at 4. During that deposition, Neonode's Vice President of Intellectual Property answered questions about the '879 Patent. ECF No. 25 at 4. Neonode argues that Quinn Emanuel would have provided Samsung with information about the '879 Patent to support Samsung's invalidity defense. Samsung argues a law firm representing another client does not impute knowledge on itself. ECF No. 12 at 3–4. Given that Neonode did not specify whether any attorneys were counsel to Motorola and then were counsel to Samsung in the *Apple* suits, this is a speculative conclusion not sufficiently supported.

Fifth, Neonode points to its inquiry with Quinn Emanuel regarding Samsung's interest in purchasing Neonode's patent portfolio. ECF No. 25 at 10. Neonode alleges that "reasonable inferences . . . may be drawn therefrom establish[ing] that Samsung had pre-suit knowledge of the specific patents in suit." ECF No. 25 at 10 n.3. But Neonode does not allege whether it informed Samsung of the issuance of the '879 patent, the contents of Neonode's conversation with Samsung, or whether it specifically informed Samsung of the Asserted Patents as part of the general discussion of Neonode's patent portfolio. *Finjan, Inc. v. Juniper Networks, Inc.*, No. C 17-04659 WHA, 2018 WL 905909, at *3 (N.D. Cal Feb. 14, 2018). Instead, it asks the Court to make unwarranted speculation into Samsung's investigation of the patent portfolio.

Thus, Neonode did not sufficiently plead pre-suit knowledge as required for pre-suit willful infringement for the '879 Patent. Additionally, because Neonode's assertions of pre-suit knowledge for the '993 Patent are identical to the fourth and fifth facts described above, Neonode similarly does not sufficiently plead pre-suit knowledge of the '993 Patent as required for willful infringement.

Samsung did, however, have knowledge of the Asserted Patents post-suit because Neonode served its complaint to Samsung, which listed the Asserted Patents that allegedly infringe. *See*

*BillJCo, LLC v. Apple, Inc.*, 583 F. Supp. 3d 769, 778 (W.D. Tex. 2022). Neonode also alleges that Samsung is continuing the infringing conduct. ECF No. 1 ¶¶ 52, 70 (alleging that the infringement "has been and continues to be willful . . . yet proceeded to engage in such conduct despite a high likelihood that a court would find the products to be infringing"). This is sufficient to satisfy post-suit willful infringement. *BillJCo*, 583 F. Supp. 3d at 778.

**2. Direct Infringement of the '993 Patent**

Neonode asserts that Samsung offered to sell products that infringe the '993 Patent, naming the Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices as the infringing products. ECF No. 1 ¶ 56. To support this assertion, Neonode alleges three of claim 1's limitations in textual form. *Id.* ¶¶ 58–60. The other two claims, regarding the "edge" of the screen and a "strip" along the edge, are not specifically mentioned. *See id.* ¶¶ 55–63. Samsung argues Neonode's failure to specifically mention these limitations indicates the allegation is therefore insufficient. ECF No. 12 at 8–10. These limitations, however, are not "conspicuously" left out, as was the case in *AMS, LLC v. Muzzy, LLC*, No. 18-CV-683-WMC, 2019 WL 1435844, at *1–2 (W.D. Wis. Mar. 29, 2019), but rather visually identified as allowed under *Repairify*, 610 F. Supp. 3d at 900–01, which still provides fair notice to Samsung. *See* ECF 1 ¶ 61. Furthermore, Neonode is not required to use the specific terms of "strip" and "edge" in their infringement allegations. *Bill of Lading*, 681 F.3d at 1343. By stating that the padlock is in the "upper center of the display" in conjunction with the screenshot, Neonode has provided sufficient specification to put Samsung on notice of the allegations, satisfying *Iqbal*. ECF No. 1 ¶ 61. Because all elements and limitations of the claim are alleged, there is sufficient support for the direct infringement claim. *Disc Disease*, F.3d at 1260.

### 3. Indirect Infringement of the '993 Patent

Having found there was direct infringement of the '993 Patent, the remaining question is whether there was also indirect infringement. Neonode pleads induced infringement of the '993 Patent. ECF No. 1 ¶ 64. Neonode has not pleaded pre-suit actual knowledge but has pleaded post-suit knowledge of the '993 Patent as previously discussed.

Samsung argues that Neonode has not made any showing that Samsung specifically intended to cause another party to directly infringe post-suit. ECF No. 12 at 7. In their complaint, Neonode points to Samsung's support page for use of the allegedly infringing technology to encourage infringement. ECF No. 1 ¶ 65. As a result, users of the infringing products allegedly commit direct infringement. *Id.* ¶ 66. This is more than incident to product distribution, as Samsung alleges. ECF No. 12 at 8 (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005)). Instead, Neonode specifies Samsung's instructions on how to infringe the '993 by changing the appropriate setting. ECF No. 1 ¶ 65. By providing instructions of how to infringe, Neonode has met the "low bar required at the pleading stage." *Lexington Luminance LLC V. Lowes Home Centers LLC*, 4:18-cv-301-ALM-KPJ, 2019 WL 1317440, at *2 (E.D. Tex. Mar. 13, 2019); *see also Motiva Patents*, *LLC v. Sony Corp.*, 408 F. Supp. 3d 319, 831–33 (E.D. Tex. 2019). Thus, Samsung has sufficiently pleaded post-suit induced infringement, but failed to sufficiently plead pre-suit induced infringement.

### IV. CONCLUSION

Based on the foregoing analysis of the facts and legal principles, Samsung's motion to dismiss Neonode's claims of post-suit willful infringement regarding both Asserted Patents, post-suit indirect infringement of the '993 Patent, and direct infringement of the '993 Patent is **DENIED**. But Samsung's motion to dismiss Neonode's claims of pre-suit willful infringement of

the Asserted Patents and pre-suit indirect infringement of the '993 Patent is **GRANTED**. However, Neonode is allowed to amend its Complaint and re-plead its pre-suit indirect and willful infringement claims if it is able to elicit sufficient facts during fact discovery to support such allegations.

SIGNED this 27th day of June, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE