```
 1                  UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 2                        WACO DIVISION

 3  NEONODE SMARTPHONE, LLC  ) Docket No. WA 20-CA-507 ADA
                             )
 4  vs.                      ) Waco, Texas
                             )
 5  SAMSUNG ELECTRONICS CO., )
    LTD., SAMSUNG ELECTRONICS)
 6  AMERICA, INC.            ) July 7, 2023

 7

         TRANSCRIPT OF MARKMAN HEARING VIA VIDEOCONFERENCE
 8            BEFORE THE HONORABLE ALAN D. ALBRIGHT

 9

10  APPEARANCES:

11  For the Plaintiff:       Mr. Rocco Magni
                             Mr. Brian D. Melton
12                           Susman Godfrey, LLP
                             1000 Louisiana Street, Suite 5100
13                           Houston, Texas 77002

14                           Mr. W. Jeffrey Melsheimer
                             Susman Godfrey, LLP
15                           1301 Avenue of The Americas,
                             32nd Floor
16                           New York, New York 10019

17                           Mr. Philip J. Graves
                             Mr. Greer N. Shaw
18                           Graves & Shaw, LLP
                             355 South Grand Avenue,
19                           Suite 2450
                             Los Angeles, California 90071
20

21  For the Defendant:       Mr. Brian K. Erickson
                             Mr. John M. Guaragna
22                           DLA Piper, LLP
                             303 Colorado Street, Suite 3000
23                           Austin, Texas 78701

24

25
```

1    **(Appearances Continued:)**

2    For the Defendant:          Ms. Tiffany C. Miller
                                  DLA Piper, LLP
3                                 4365 Executive Drive, Suite 1100
                                  San Diego, California 92121
4
                                  Mr. Mark D. Fowler
5                                 DLA Piper, LLP
                                  2000 University Avenue
6                                 East Palo Alto, California 94303

7    Court Reporter:            Ms. Lily Iva Reznik, CRR, RMR
                                  501 West 5th Street, Suite 4153
8                                 Austin, Texas 78701
                                  (512)391-8792
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Proceedings reported by computerized stenography,
     transcript produced by computer-aided transcription.

| | | |
|---|---|---|
| 09:31:55 | 1 | THE COURT:  Jen, will you call the case, please. |
| 09:31:57 | 2 | THE CLERK:  A civil action in Case 6:20-CV-507, |
| 09:32:01 | 3 | Neonode Smartphone, LLC vs. Samsung Electronics Co., Ltd., |
| 09:32:05 | 4 | Et Al.  Case called for a Markman hearing. |
| 09:32:08 | 5 | THE COURT:  If I can have announcements from |
| 09:32:10 | 6 | counsel, please. |
| 09:32:12 | 7 | MR. MELTON:  Yes, your Honor. |
| 09:32:13 | 8 | Brian Melton and with me from my firm is Rocco |
| 09:32:16 | 9 | Magni and Jeff Melsheimer.  And we have co-counsel Philip |
| 09:32:21 | 10 | Graves and Greer Shaw.  Mr. Shaw, Phillip Shaw and I will |
| 09:32:25 | 11 | do the presentation. |
| 09:32:32 | 12 | MR. GUARAGNA:  Yes, your Honor. |
| 09:32:33 | 13 | John Guaragna from DLA Piper from Samsung.  With |
| 09:32:36 | 14 | me from DLA are Mike Fowler, who will be handling the |
| 09:32:39 | 15 | argument for Samsung, Tiffany Miller and Brian Erickson. |
| 09:32:43 | 16 | Your Honor, we also have a number of representatives on |
| 09:32:45 | 17 | the line from Samsung, including several from Korea, and |
| 09:32:49 | 18 | did want me to pass along they greatly appreciate the Zoom |
| 09:32:52 | 19 | option, given the distance involved, having these Zoom |
| 09:32:55 | 20 | hearings is quite helpful. |
| 09:32:57 | 21 | THE COURT:  I appreciate them attending and I |
| 09:33:02 | 22 | need to find how to do background like yours because I |
| 09:33:05 | 23 | know you're actually on holiday in Maine and you're not |
| 09:33:09 | 24 | really in a courtroom. |
| 09:33:10 | 25 | But be that as it may, we will take up first the |

09:33:21  1   -- let's see, I know it has "option" in it.  Give me one

09:33:24  2   second.  I'm not going anywhere.  I just have to switch

09:33:34  3   screens for a second.  Okay.  The first claim term is

09:33:39  4   "representation consists of only one option for activating

09:33:43  5   the function" and I'll hear from the plaintiff first on

09:33:46  6   this one since the preliminary construction is indefinite.

09:33:50  7          MR. MELTON:  Yes, your Honor.  Again, Brian

09:33:52  8   Melton.

09:33:53  9          Obviously I'd prefer to go second on this term,

09:33:56  10  but I understand your leaning against us on this one based

09:34:02  11  on the preliminary.  Samsung claims that the language --

09:34:07  12         THE COURT:  Mr. Melton, let me explain my world

09:34:09  13  view on this.  Generally speaking, what I have found what

09:34:16  14  you are swimming upstream from is, I think on almost every

09:34:22  15  -- in every situation I found something is indefinite, I

09:34:24  16  find it is a grammatical issue, you know, where one can

09:34:28  17  argue in terms of the grammar, like here, with the word

09:34:32  18  "option," what that means.  And so, that's -- it's not

09:34:37  19  really as much usually a technical issue as it is a

09:34:41  20  grammatical issue.  So you might -- I don't know what

09:34:45  21  you're going say but that's my world view.

09:34:48  22         MR. MELTON:  Your Honor, then I will skip along

09:34:52  23  and get to your world view.  Can you see my screen, your

09:35:06  24  Honor, through a sharing?

09:35:07  25         THE COURT:  Yes, sir, I can.

| | | |
|---|---|---|
| 09:35:08 | 1 | MR. MELTON:  Okay. |
| 09:35:14 | 2 | THE COURT:  Were you up late last night doing |
| 09:35:16 | 3 | these slides? |
| 09:35:17 | 4 | MR. MELTON:  I was and I'll point out the one I |
| 09:35:21 | 5 | actually made so hopefully you're impressed with it. |
| 09:35:25 | 6 | Your Honor, we'll start with the claim language |
| 09:35:28 | 7 | since you're telling us it's a grammatical issue.  We |
| 09:35:35 | 8 | think it's straightforward.  The preamble says we have a |
| 09:35:38 | 9 | user interface.  We color-coded in our brief the three |
| 09:35:42 | 10 | claim elements and I went ahead last night and separated |
| 09:35:48 | 11 | them even further.  Remained the same color-coding and I |
| 09:35:52 | 12 | want to walk through them real quickly so we're talking |
| 09:35:56 | 13 | about the same thing. |
| 09:35:58 | 14 | The user interface is in the preamble.  The 1a is |
| 09:36:02 | 15 | a touch-sensitive area, it's a representation of a |
| 09:36:05 | 16 | function is provided.  So that's the first step.  It's a |
| 09:36:09 | 17 | limitation on the representation of the function.  And as |
| 09:36:14 | 18 | we say, the law is clear that when you use "a," it's one |
| 09:36:19 | 19 | or more, and so, this is a touch-sensitive area in which |
| 09:36:24 | 20 | one or more representations of one or more functions is |
| 09:36:26 | 21 | provided.  I think that's relatively straightforward. |
| 09:36:29 | 22 | 1b is the one we're in dispute about and that |
| 09:36:34 | 23 | one's in green.  Wherein the representation consists of |
| 09:36:41 | 24 | only one option for activating the function.  This |
| 09:36:45 | 25 | limitation states the characteristic of the representation |

| | | |
|---|---|---|
| 09:36:50 | 1 | also. |
| 09:36:50 | 2 | Importantly, the word "consists of" when used in |
| 09:36:53 | 3 | a patent claim like this, it acts to limit what comes |
| 09:36:58 | 4 | immediately before, the representation.  It doesn't limit |
| 09:37:02 | 5 | the one option.  And that's the -- I mean, Samsung tangles |
| 09:37:07 | 6 | it up in their briefs but the law is clear on that.  We |
| 09:37:12 | 7 | cited the <u>Mannesmann vs. Engineered Metal</u> case out of the |
| 09:37:16 | 8 | Federal Circuit, 1986 for that proposition.  And so, it |
| 09:37:20 | 9 | does not limit the number of functions that may be |
| 09:37:23 | 10 | represented.  That's what's claimed in 1a.  And it doesn't |
| 09:37:28 | 11 | limit the number of ways or how to activate the function. |
| 09:37:34 | 12 | That's what's claimed in claim 1 -- in limitation 1c.  And |
| 09:37:39 | 13 | so, we believe it was structured correctly and when it's |
| 09:37:42 | 14 | laid out and followed through, we do believe it's |
| 09:37:47 | 15 | grammatically correct. |
| 09:37:48 | 16 | 1c goes on to explain how to activate the option |
| 09:37:54 | 17 | and it sets forth three steps, the touching, the gliding, |
| 09:38:00 | 18 | and then, what it can't do, a negative.  It's not |
| 09:38:04 | 19 | relocated or duplicated.  I don't think that's any longer |
| 09:38:07 | 20 | in dispute. |
| 09:38:11 | 21 | Now, I'm not putting this next slide up for you. |
| 09:38:14 | 22 | You know the law.  I'm using it for me.  Usually I put |
| 09:38:18 | 23 | one, two, three of what I'm going to talk about, but I'm |
| 09:38:22 | 24 | going to use this statement of the law and just highlight |
| 09:38:24 | 25 | what I'm talking about.  So we're looking at whether the |

09:38:28 1   claims are disclosed, what the invention is with
09:38:32 2   reasonable certainty to one skilled in the art, and not
09:38:37 3   particular claim terms.  Says look at the spec.  So let's
09:38:41 4   look at the spec.  Samsung tells the Court that the
09:38:50 5   specification fails to explain what the representation
09:38:53 6   consists of.  The actual specification proves Samsung
09:38:58 7   wrong.  The spec in figure 1, which is on your screen,
09:39:01 8   discloses an embodiment of the claim.  And to orient the
09:39:05 9   Court, it has six numbers on the right-hand side and three
09:39:09 10  across the bottom.  One discloses the touch-sensitive
09:39:15 11  area.  Two denotes the menu area.  And three denotes the
09:39:21 12  display area.  That's to the right.
09:39:22 13          THE COURT:  Where's the option?
09:39:25 14          MR. MELTON:  The option, your Honor, is when you
09:39:33 15  go to figure 3.  And so, I just showed you figure 1.
09:39:40 16  That's the one in the middle of what is in front of you
09:39:42 17  right now.  And you have 21, which is the function as
09:39:51 18  disclosed in the specification.  The cross is a
09:39:57 19  representation of that function.  And as disclosed, when
09:40:02 20  you put figure 1 and figure 3 together is -- and as
09:40:09 21  described below, that is how we get to the option.
09:40:14 22          And so, from working from left to right, you have
09:40:16 23  a phone, you have available applications on the phone.
09:40:20 24  Here, we say camera, contacts, e-mail, calculator.  What
09:40:26 25  comes next is what is described and we'll read it in a

09:40:31   1   second.  It's the option.  The single app that is

09:40:36   2   currently active.  That is the option.  We don't use the

09:40:42   3   term "option."  They beat us up on, well, the option's not

09:40:45   4   in the spec.  I'll just -- I'll tell you and I'm going to

09:40:49   5   show you where option came from in a moment.  But you

09:40:54   6   asked where's the option.  The option is the single app

09:40:57   7   that is currently active.  It's described in the spec and

09:41:01   8   I'll read it to you.  It's right in front of you.  Figure

09:41:04   9   3 shows that if the first function 21, which is in figure

09:41:07  10   1, is activated, then the display area is adapted to

09:41:12  11   display icons 211 through 216 representing services or

09:41:17  12   functions, depending on the current active application.

09:41:21  13          That is what the option is.  That describes the

09:41:27  14   option.  The word "option" is used in the prosecution

09:41:33  15   history to overcome the Hirshberg reference and we'll

09:41:35  16   discuss that later as to where it came from.  But if

09:41:38  17   you're asking me where's the option, that's where it comes

09:41:41  18   from.  That's where it's disclosed.  And then, only one

09:41:51  19   application can be currently active, and therefore, it can

09:41:56  20   be the only option available when the function 21 is

09:42:03  21   activated.

09:42:04  22          So I believe this slide answers your question as

09:42:11  23   to what is the option.  Figure 3 as the option is act --

09:42:23  24   yeah, as the function 21 is activated, figure 3 tells you

09:42:28  25   in the specification based on the currently active

09:42:33  1  application, based on that single option that's available,

09:42:37  2  figure 3 will change.  Here, it has icon for a certain

09:42:44  3  application but according to the specification, whatever

09:42:50  4  -- if you pick e-mail, you're going to get different icons

09:42:53  5  because that would be the currently active application and

09:42:57  6  the sole option that could be activated by function 21.

09:43:02  7       Now, I know, I don't want to get beat up on this.

09:43:04  8  So figure 3 does not show icons for a camera app.  It's

09:43:08  9  the one that's in the patent and I used it, but I don't

09:43:12 10  want to get -- from the other side, oh, they showed you a

09:43:18 11  figure that doesn't have camera icons.  It's a different

09:43:20 12  app.  But the disclosure in the patent is clear on this

09:43:26 13  that figure 3 will change, depending on which currently

09:43:29 14  active application is the option.

09:43:35 15       So we believe the specification clearly describes

09:43:41 16  the invention for one skilled in the art.  And so, it

09:43:47 17  tells us to look at the prosecution history for how we got

09:43:51 18  here.  And I believe -- we will cover right now about

09:43:57 19  where option came from.  So if the plain language in the

09:44:03 20  spec aren't enough, the file history shows exactly what

09:44:06 21  the examiner was looking at when he allowed the language

09:44:09 22  in dispute.

09:44:11 23       In one of his last office actions, the examiner

09:44:13 24  said, Neonode, basically -- I'm paraphrasing -- I agree

09:44:18 25  what you've disclosed is novel but the way you're claiming

09:44:21  1  it, I'm rejecting it because it runs into this Hirshberg

09:44:26  2  patent.  The resulting amendment to the claim were made to

09:44:30  3  accurately cover this specification and to get around

09:44:34  4  Hirshberg's multifunction keys.  What I've got in front of

09:44:38  5  you, your Honor, is Hirshberg, figure 1 of Hirshberg.  It

09:44:44  6  look like one of those old landline telephones with the

09:44:48  7  numbers and letters and keys on it.  They adapted it to a

09:44:53  8  touchscreen.  It had 13 four-way soft keys, one three-way

09:44:59  9  soft key at the bottom middle, and one single-function

09:45:03  10  key.  The Hirshberg specification explained figure 1 here

09:45:14  11  and the sole one-function key was activated by pushing it

09:45:20  12  the old-fashioned way.  All of the multifunction keys

09:45:26  13  required the user to know a direction, something the

09:45:29  14  Hirshberg patent calls a tilt and where to touch the icon

09:45:32  15  to get the required function out of these multifunction

09:45:36  16  keys.  Squirrely, whatever you had to do, that is what the

09:45:42  17  examiner was looking at in the final office action.

09:45:46  18          In response to the office action, they said

09:45:52  19  you've got something novel, we're going to claim it the

09:45:54  20  right way.  This is the amendment and you can see they

09:46:00  21  weren't hiding anything from the examiner.  They scratched

09:46:03  22  through the parts that he said ran into Hirshberg and

09:46:08  23  inserted the "wherein the representation consists of only

09:46:12  24  one option for activating the function."

09:46:19  25          Their written response that went along with those

09:46:22  1  amendments was very clear.  They were not talking about

09:46:28  2  how the function was activated or how many function --

09:46:32  3  they were talking about how many functions.  And so, they

09:46:38  4  added the only one option language and explained that each

09:46:42  5  of the representations 21 through 23, and these are quotes

09:46:48  6  right out of the document, consists of the one option for

09:46:52  7  activating the corresponding function.  And then,

09:46:56  8  characterized representations 21 and 23 out of that figure

09:47:00  9  1 as these one-option elements before they were stating

09:47:05  10  that they were activated by the touch-and-glide operation.

09:47:11  11  So the amendment the examiner got along with what they

09:47:15  12  told them looked to how many functions could be activated,

09:47:18  13  not how they were activated.

09:47:27  14      And one last thing, before I move on from the

09:47:30  15  file history support for this term, they make a big deal

09:47:33  16  that option's nowhere in the spec, this is -- you know, it

09:47:38  17  has no meaning.  Of course it wasn't.  I mean, the spec

09:47:44  18  was filed years before this examiner threw Hirshberg in

09:47:47  19  their face.  The specification describes the one option,

09:47:52  20  only one option function keys, but it didn't use the

09:47:56  21  language.  I showed you the language, I showed you the

09:47:59  22  spec in figure 3.

09:48:01  23      So where did the word "option" come from?  This

09:48:05  24  is paragraph 82 in front of the Court.  Eighty-two out of

09:48:09  25  the Hirshberg reference.  So the examiner puts Hirshberg

09:48:12  1   in front of him, says you have something novel but you're

09:48:16  2   running into this guy, and so, they read Hirshberg and

09:48:23  3   there it is.  They pulled "option" right out of the

09:48:26  4   Hirshberg spec using the basic principle of having soft

09:48:30  5   key selected by the initial contact point on any location

09:48:34  6   on the key, then selecting one of several options based on

09:48:39  7   the trace.  That came right out of Hirshberg.  So we

09:48:44  8   lifted the word "option" to describe what we were doing

09:48:49  9   differently in our patent.

09:49:02  10          That was the complaint he read that Hirshberg

09:49:05  11  disclosed that the user could choose multiple functions

09:49:07  12  from each representation, the key by selecting one of

09:49:11  13  several options.  So Neonode took the concept examiner

09:49:14  14  rejected based on and put it in the claim language.  Our

09:49:20  15  patent allows only one option of what function -- when the

09:49:28  16  function is activated and it's talking about the

09:49:32  17  application that's attached to the function.  I hope we've

09:49:38  18  solved the mystery of where the word "option" came from.

09:49:41  19          The law says a POSITA would understand.  Let's

09:49:46  20  talk about a POSITA would have known reading these claims

09:49:51  21  back in 2002.  They attached their declaration of Andy

09:49:57  22  Cockburn and 11 pages are dedicated to doing just the

09:50:00  23  opposite of what the Federal Circuit has directed, your

09:50:04  24  Honor.  Rather than look at the claims in light of the

09:50:07  25  spec, file history, he conducts a narrowly focused

| | | |
|---|---|---|
| 09:50:12 | 1 | wordsmithing on various phrases to arrive at his |
| 09:50:15 | 2 | conclusory opinions and there they are.  Let's step back |
| 09:50:21 | 3 | and do what the Federal Circuit said to do, which is think |
| 09:50:25 | 4 | like a POSITA.  What would a skilled artisan have known |
| 09:50:30 | 5 | the state of the telephone art be in 2002?  Only 11 pages |
| 09:50:35 | 6 | for this.  Here's the slide with the best five selling |
| 09:50:38 | 7 | phones from back then.  You can see them.  You remember |
| 09:50:41 | 8 | them.  They were all push button.  There was no touch |
| 09:50:44 | 9 | screen.  And that's Samsung's '02 offering right in the |
| 09:50:50 | 10 | middle.  This was five years before the Apple iPhone came |
| 09:50:56 | 11 | out and about seven before Samsung's offering came out |
| 09:51:03 | 12 | that piggybacked off of Apple. |
| 09:51:05 | 13 | So when the POSITA looked at these phones and the |
| 09:51:08 | 14 | 879 patent, they would understand that the representations |
| 09:51:13 | 15 | represented a sole option for activating the function. |
| 09:51:20 | 16 | And that how it was activated is described in 1c.  It was |
| 09:51:27 | 17 | novel then, it was recognized by the examiner.  Industry |
| 09:51:31 | 18 | publications we've attached to our brief touted it and |
| 09:51:35 | 19 | Samsung, who clearly has POSITAs on staff, hundreds of |
| 09:51:41 | 20 | them, they took a license in 2005, signed it with Neonode |
| 09:51:45 | 21 | for this groundbreaking technology. |
| 09:51:49 | 22 | When we retained to point out the unreliability |
| 09:51:54 | 23 | and inconsistencies with Mr. Cockburn's declarations, we |
| 09:51:59 | 24 | retained Craig Rosenberg.  He's designed user interfaces |
| 09:52:03 | 25 | for Boeing, AT & T, six other companies.  He's a POSITA |

09:52:07    1    under whatever definition has been submitted to the Court.

09:52:09    2    I think there's two competing.  His declaration, Exhibit 2

09:52:13    3    to our brief, goes through each of Mr. Cockburn's

09:52:17    4    assertions and shows how they're wrong.  I'm happy to go

09:52:20    5    into all of them.  I don't think that's a good use of our

09:52:24    6    time.  But there is one that drives Samsung and Mr.

09:52:29    7    Cockburn's opinions that I think I should take on right

09:52:35    8    now and it's this.

09:52:43    9          There are drawings and various interpretations of

09:52:48    10   their drawings to tell the Court, oh, there's three

09:52:51    11   different ways this could be interpreted.  And when I

09:52:55    12   first read their brief, I thought wow, these are good

09:52:59    13   diagrams.  Did these come out of Hirshberg or our patent?

09:53:03    14   And Mr. Rosenberg said no.  Cockburn drew them.  These are

09:53:07    15   all his diagrams.  I said all right.  Well, what about

09:53:12    16   these definitions?  Have we ever used any of these

09:53:16    17   interpretations in front of the examiner, in front of an

09:53:21    18   IPR, any of them?  No.  We've never asserted one of those.

09:53:28    19   And so, I said all right.  Which one do we agree with?

09:53:33    20   Again, none.  We don't agree with any of these.

09:53:36    21          So Samsung sets up these three straw-man

09:53:40    22   arguments to further their argument that, oh, this is just

09:53:44    23   confusing.  Let's go through them.  Take the first one.

09:53:49    24   They say the representation represents a single function

09:53:52    25   and there is only a single option for how to activate the

```
09:53:55   1   function.  Then in parentheses, they say what they really

09:53:59   2   mean.  Example, only one specific input gesture such as

09:54:04   3   tap or drag left will activate function.  As we've

09:54:07   4   discussed previously, that one's wrong because the

09:54:10   5   function language in limitation A means one or more of the

09:54:13   6   recited ways.  So limitation A as would be understood by

09:54:17   7   the examiner and a POSITA would mean a touch-sensitive

09:54:22   8   area in which one or more representations or one or more

09:54:24   9   functions is provided.  So one can't be right.

09:54:28  10        Take the second one.  They say the representation

09:54:31  11   may represent multiple functions, but there is only a

09:54:36  12   single option for how to activate one particular function.

09:54:40  13   And then, they tell you their examples.  It screws it up.

09:54:44  14   Only one specific input gesture will activate one

09:54:49  15   function.  But if the representation also represents a

09:54:52  16   second different function, then only a second different

09:54:55  17   input gesture will activate that function.  That one's

09:54:58  18   wrong because it does not account for the language

09:55:01  19   limitation in 1b, which restricts the options that can be

09:55:05  20   activated at any time.

09:55:12  21        So the third one, they say the representation

09:55:16  22   represents a single function and the claim allows for

09:55:20  23   multiple options for how to activate the function.  And

09:55:24  24   then, there's their example, any input gesture such as tap

09:55:28  25   or drag in any direction will activate the single
```

09:55:31  1  function.  That one's wrong, too.  Limitation 1b does not

09:55:38  2  require that the representation represent a single

09:55:41  3  function for all time.  That is clear in the figures and

09:55:45  4  the spec where it is expressly discussed a representation

09:55:50  5  representing different functionality, depending on which

09:55:53  6  application is open on the phone.  This one's wrong for

09:55:57  7  another reason and this shows how far they'll go to

09:56:01  8  stretch to get three interpretations.  No POSITA would

09:56:05  9  read only one to refer to the activation gesture let alone

09:56:08  10  multiple ones.

09:56:09  11           And, your Honor, because you focused me earlier

09:56:14  12  on your concerns, I blew past this and I want to make sure

09:56:29  13  I cover it because it goes to what I just said.  When

09:56:34  14  we're talking about figure 1, the first function in that

09:56:39  15  second paragraph, it says the first function 21 is a

09:56:41  16  general application-dependent function.  And so, as I

09:56:45  17  showed you in the slide with figure 3, it can be any

09:56:51  18  application on the phone, whichever one's currently

09:56:56  19  active.  And so, by doing that, necessarily the

09:57:06  20  specification -- it's inherent in the specification that

09:57:10  21  what you can activate with the function 21 can change,

09:57:15  22  depending on what is currently active.

09:57:20  23           And so, when we talk about their different -- and

09:57:27  24  they complain, oh, they say it has to stay the same, the

09:57:33  25  specification clearly shows at multiple points that what

09:57:37   1    can be activated, the application can change.  And so,

09:57:44   2    obviously the functionality would change with the

09:57:47   3    application.

09:57:52   4            THE COURT:  Mr. Melton, if you could hold on just

09:57:55   5    one second, I need to check something.  I'll be right

09:57:57   6    back.

09:57:57   7            MR. MELTON:  Okay.

09:58:18   8            THE COURT:  Okay.

09:58:19   9            MR. MELTON:  All right, your Honor.  One minute

09:58:22   10   and I'm going to stop.  I'd like to take on, lastly, their

09:58:25   11   misguided attempts to say IPR counsel contradicted what we

09:58:30   12   told the examiner of the 879 or what we're telling you

09:58:34   13   today.  Best way to do it is not to play games,

09:58:37   14   cherry-pick quotes, phrases out of context.  It's to show

09:58:40   15   you what we presented at the IPR.  Not some out-of-context

09:58:48   16   quote or some potentially vague statement.

09:58:54   17           But when submitted -- when we submitted things in

09:58:57   18   writing to IPR judges, they are consistent with what we

09:59:03   19   told the examiner.  They are consistent with what we're

09:59:06   20   telling you today and it's consistent with what we wrote

09:59:10   21   in our brief.

09:59:10   22           What I've got in front of you is a slide from one

09:59:15   23   of the IPRs that we've shown to the judges that when

09:59:22   24   Samsung and others tried to attack this patent in the IPR,

09:59:28   25   it survived.  It's clear.  You can read it at the top, 879

| | | |
|---|---|---|
| 09:59:32 | 1 | specification.  A representation may represent multiple |
| 09:59:34 | 2 | functions at different times but always provides one |
| 09:59:38 | 3 | option to the user at any time.  And that's just what I |
| 09:59:41 | 4 | told you and that's why I went back to figure 1 in the |
| 09:59:45 | 5 | description of the application-dependent function. |
| 09:59:53 | 6 | Your Honor, the claim language, the |
| 09:59:59 | 7 | specification, file history, and the IPR all support a |
| 10:00:03 | 8 | plain and ordinary meaning construction of this term and |
| 10:00:07 | 9 | they're easy-to-understand words.  I've showed you where |
| 10:00:13 | 10 | the "option" word came from and how it was understood by |
| 10:00:17 | 11 | others in the industry.  This is supported by the |
| 10:00:21 | 12 | declaration of Craig Rosenberg and common sense.  They've |
| 10:00:26 | 13 | failed to meet their burden to prove this is ambiguous or |
| 10:00:32 | 14 | let alone indefinite by clear and convincing evidence.  We |
| 10:00:37 | 15 | would respectfully request the Court to take a couple |
| 10:00:40 | 16 | extra days, go back through our slides, look at slide 10 |
| 10:00:42 | 17 | that I stayed up so late working on, and I think you'll |
| 10:00:46 | 18 | see that the preliminary construction isn't right and |
| 10:00:52 | 19 | should be changed.  And I'll stop now. |
| 10:00:55 | 20 | THE COURT:  I think that's the longest you've |
| 10:00:59 | 21 | ever gone.  You must have had really exceptional |
| 10:01:02 | 22 | associates helping you on this one. |
| 10:01:07 | 23 | Mr. Fowler. |
| 10:01:09 | 24 | MR. FOWLER:  Thank you.  I'd like to share my |
| 10:01:11 | 25 | screen so if we could.  Thank you, your Honor.  Can you |

| | | |
|---|---|---|
| 10:01:27 | 1 | see my screen? |
| 10:01:29 | 2 | THE COURT:  All good. |
| 10:01:31 | 3 | MR. FOWLER:  Thank you. |
| 10:01:33 | 4 | Your Honor, what I'd like to do is, I'd like to |
| 10:01:36 | 5 | start with where you began, which is the grammar issue. |
| 10:01:43 | 6 | Now, what we heard today about the language and about the |
| 10:01:48 | 7 | prosecution history and the specification included |
| 10:01:52 | 8 | statements I've never heard Neonode say before.  They |
| 10:01:55 | 9 | didn't say it during original prosecution.  They didn't |
| 10:01:58 | 10 | say it during the IPR.  They didn't even say it in their |
| 10:02:02 | 11 | papers in front of your Honor.  We've heard some things |
| 10:02:05 | 12 | today that are new that underscore the indefiniteness of |
| 10:02:10 | 13 | this language. |
| 10:02:11 | 14 | And let me start with, if I could, just give me a |
| 10:02:15 | 15 | second, see if I can get this up.  Well, we'll just use |
| 10:02:22 | 16 | this view if it's okay with you.  So I'm going to start |
| 10:02:25 | 17 | with the claim language.  So it says the representation |
| 10:02:27 | 18 | consists of only one option for activating the function |
| 10:02:30 | 19 | and your Honor asked, well, what's the one function?  And |
| 10:02:34 | 20 | one thing that we heard from counsel, which is quite |
| 10:02:37 | 21 | surprising, was he said that this language does not limit |
| 10:02:41 | 22 | the number of functions.  He said this language does not |
| 10:02:46 | 23 | limit the function of gestures.  Well, if that's the case, |
| 10:02:51 | 24 | then what does it limit?  I mean, the implication is that |
| 10:02:54 | 25 | somehow it limits the representation, but that's an |

| | | |
|---|---|---|
| 10:02:57 | 1 | argument that was never made in the prosecution history. |
| 10:03:01 | 2 | It was never made during an IPR.  It's not even made in |
| 10:03:04 | 3 | their papers. |
| 10:03:06 | 4 | If it doesn't limit the functions and it doesn't |
| 10:03:08 | 5 | limit the gestures, then you're not using the language |
| 10:03:11 | 6 | only one option for activating to limit anything.  And |
| 10:03:15 | 7 | then, what we heard today in terms of their response to |
| 10:03:19 | 8 | your question is, the only one option language refers to |
| 10:03:26 | 9 | one application being run at a time.  That's an argument |
| 10:03:29 | 10 | that was never made in prosecution history or in the IPR |
| 10:03:33 | 11 | or in their papers, and it's nowhere to be found in the |
| 10:03:37 | 12 | specification or in the claim language.  There's no way |
| 10:03:39 | 13 | you can stretch this claim language to say that the only |
| 10:03:42 | 14 | one option is to have only one application running at a |
| 10:03:46 | 15 | time.  And I'll show you in a minute, your Honor, why the |
| 10:03:49 | 16 | specification proves that theory to be false.  That can't |
| 10:03:53 | 17 | be what the only one option limits. |
| 10:03:59 | 18 | So let me go in that more.  And, your Honor, I'm |
| 10:04:04 | 19 | mainly going to be just responding to Mr. Melton's |
| 10:04:06 | 20 | comments rather than going through our affirmative |
| 10:04:10 | 21 | argument.  And of course, if your Honor has any questions, |
| 10:04:12 | 22 | let me know.  But I thought that would be the best use of |
| 10:04:14 | 23 | the Court's time. |
| 10:04:15 | 24 | So what I have up now -- |
| 10:04:17 | 25 | THE COURT:  I think so, too. |

| | | |
|---|---|---|
| 10:04:19 | 1 | MR. FOWLER: Sure. Thank you. |
| 10:04:20 | 2 | So I have up slide 6, which I suppose in some |
| 10:04:23 | 3 | ways is the counterpart to slide 10 that Mr. Melton showed |
| 10:04:28 | 4 | you in his deck, and what we see here is the |
| 10:04:31 | 5 | specification. And again, let me just say that there's |
| 10:04:33 | 6 | nothing in the specification that fixes the grammar |
| 10:04:38 | 7 | problem because the specification doesn't use the word |
| 10:04:40 | 8 | "option" as Mr. Melton conceded; and it doesn't talk about |
| 10:04:43 | 9 | this whole idea in any way of activating of -- the claim |
| 10:04:51 | 10 | language one option for activating. That's not in the |
| 10:04:54 | 11 | specification at all. So there's really no help in the |
| 10:04:57 | 12 | specification, but it clearly doesn't say what counsel was |
| 10:05:01 | 13 | saying. |
| 10:05:02 | 14 | Now, what counsel was suggesting is that you have |
| 10:05:05 | 15 | this function key 21 and that that function key is somehow |
| 10:05:11 | 16 | a multifunction -- a multifunction key that's somehow |
| 10:05:15 | 17 | limited to one function at a given time, which by the way, |
| 10:05:19 | 18 | your Honor, is inconsistent with what counsel said at the |
| 10:05:21 | 19 | beginning of his presentation when he says the claim |
| 10:05:24 | 20 | language doesn't limit the number of functions. |
| 10:05:27 | 21 | And what we see here is the full relevant part of |
| 10:05:30 | 22 | the specification, not just the part that Neonode showed |
| 10:05:33 | 23 | you. Function key 21 or icon, whatever you want to call |
| 10:05:37 | 24 | it, it does one thing. If you put your finger on it and |
| 10:05:43 | 25 | you activate it through a movement, it will always put up |

| | | |
|---|---|---|
| 10:05:49 | 1 | figure 3 or some variation of figure 3.  It does one |
| 10:05:53 | 2 | thing.  It is not a multifunction key.  It is something |
| 10:05:57 | 3 | that you can activate and will always put up a version of |
| 10:06:00 | 4 | figure 3 and that's regardless -- and this is what's |
| 10:06:05 | 5 | important, your Honor, because it just tears to shreds, I |
| 10:06:08 | 6 | think, what Mr. Melton said.  It does it regardless of |
| 10:06:11 | 7 | whether there's an application running or not and how do |
| 10:06:13 | 8 | we know that? |
| 10:06:14 | 9 | Well, if you look at the specification cite on |
| 10:06:18 | 10 | the left and this is all from figure 4, the middle |
| 10:06:21 | 11 | language says that if there is -- if there is an |
| 10:06:24 | 12 | application running, then you get these icons 211, 212, |
| 10:06:31 | 13 | 213, 214 and 215, which all represent different functions. |
| 10:06:35 | 14 | But then, it says in the part Neonode didn't show you, if |
| 10:06:38 | 15 | no application is currently active on the computer unit, |
| 10:06:40 | 16 | then you still get a bunch of functionality. |
| 10:06:43 | 17 | So the concept here of that this somehow turns on |
| 10:06:47 | 18 | the application being the option, which is not in the |
| 10:06:51 | 19 | claim language, it's not in the specification, and it |
| 10:06:54 | 20 | can't be read out of the specification because whatever |
| 10:06:56 | 21 | you do to that function icon 21, you're going to get that |
| 10:07:00 | 22 | display.  And, your Honor, the delicious irony of all of |
| 10:07:04 | 23 | this of what they're arguing is that they say somehow that |
| 10:07:08 | 24 | claim limitation 1b, at least in their papers, not today |
| 10:07:11 | 25 | but in their papers, somehow limit the user to the ability |

10:07:14   1   to only exercise one function.

10:07:16   2           But if you look at figures 1 and 3, what happens

10:07:19   3   is if you activate 21, you can pick from six different

10:07:23   4   functions.  It's literally the opposite of what they're

10:07:27   5   arguing in their brief.  And again, none of this deals

10:07:31   6   with the grammar issue because none of this in the

10:07:34   7   specification talks about option or one option for

10:07:38   8   activating and doesn't provide any clarity there.

10:07:40   9           Let's see, the next point I wanted to address in

10:07:44  10   the presentation had to do with what Mr. Melton did on

10:07:49  11   slide 16.  And I don't have his slide in front of me, your

10:07:52  12   Honor, but that's the slide where he characterizes what

10:07:55  13   happened in Hirshberg.  The first thing I would ask the

10:07:59  14   Court to note if we were to look at that slide again is

10:08:01  15   that Neonode tellingly doesn't actually give you any

10:08:05  16   quotes from the prosecution history from Hirshberg and

10:08:10  17   it's all attorney argument.  And respectfully, the bullet

10:08:13  18   points in that slide are wrong.  It's attorney argument

10:08:15  19   that incorrectly characterizes what happened in Hirshberg,

10:08:19  20   and it ignores the inconsistent statements that were made

10:08:23  21   during the prosecution of Hirshberg that are cited in our

10:08:28  22   brief.

10:08:28  23           And that's kind of the point of the prosecution

10:08:30  24   history.  There's no disclaimer here, your Honor.  I've

10:08:33  25   argued disclaimer in front of you a lot and the bar is

| | | |
|---|---|---|
| 10:08:37 | 1 | high for disclaimer. And if they're going to point to the |
| 10:08:40 | 2 | prosecution history as being the cure to the |
| 10:08:42 | 3 | indefiniteness, they're going to have to find something |
| 10:08:44 | 4 | that reaches the bar of disclaimer. And the fact that |
| 10:08:47 | 5 | within Hirshberg, the prosecution history of Hirshberg, |
| 10:08:51 | 6 | you've got different things being said, can't get you to |
| 10:08:54 | 7 | that bar. |
| 10:08:57 | 8 | And equally important, it ignores the fact that |
| 10:09:01 | 9 | whatever happened in Hirshberg, they said different things |
| 10:09:05 | 10 | also during the IPR. And I've got slide 7 up here and |
| 10:09:08 | 11 | this is one of the things that we're pointing to from |
| 10:09:11 | 12 | Exhibit 6. And counsel said, well, let's look at what was |
| 10:09:17 | 13 | shown to the patent office. I think what's important is |
| 10:09:21 | 14 | what the patent office is told. |
| 10:09:23 | 15 | And so, during the hearing, what they told the |
| 10:09:25 | 16 | patent office is what you see on the screen here. This is |
| 10:09:28 | 17 | from our Exhibit 6, pages 72 and 73 of the transcript, and |
| 10:09:33 | 18 | look what they said here. Says the point is at any given |
| 10:09:37 | 19 | time, the user is given only one option. Okay. So that |
| 10:09:42 | 20 | language is not in the specification but it's in the |
| 10:09:45 | 21 | claim. So what did they say it means? Only one option in |
| 10:09:48 | 22 | terms of what gesture to put in. So one gesture and we |
| 10:09:53 | 23 | just heard counsel say, well, that's craziness, but that's |
| 10:09:56 | 24 | not what they told the patent office less than a year ago. |
| 10:09:59 | 25 | They told the patent office that this language |

| | | |
|---|---|---|
| 10:10:02 | 1 | referred to limiting the one gesture and what action to |
| 10:10:05 | 2 | take.  So here, one of the options that they're saying is |
| 10:10:09 | 3 | it means one gesture and one action.  And that wasn't some |
| 10:10:13 | 4 | kind of slip of the lip because look at what he says in |
| 10:10:16 | 5 | the following language.  And I'm just going to paraphrase |
| 10:10:19 | 6 | here, but he's saying the genius at Neonode was that you |
| 10:10:22 | 7 | could limit yourself so you don't have to have a bunch of |
| 10:10:24 | 8 | different gestures.  You can just use one gesture to |
| 10:10:29 | 9 | activate and that's one possible reading.  That's Dr. |
| 10:10:33 | 10 | Cockburn, one possible reading of the claim. |
| 10:10:37 | 11 | In fact, this -- what is on this screen and this |
| 10:10:42 | 12 | is also teased out of Hirshberg is our option one in terms |
| 10:10:46 | 13 | of there's three options that Dr. Cockburn reads and he |
| 10:10:50 | 14 | says this is one way you could read the claim.  I don't |
| 10:10:54 | 15 | have the slide up in front of me. |
| 10:10:55 | 16 | But the other thing I want to say, your Honor, |
| 10:10:57 | 17 | about the slides that were presented is, there was a slide |
| 10:11:01 | 18 | 17 where they pointed to paragraph 82 of Hirshberg and |
| 10:11:06 | 19 | they said, well, look, that's where we got the option |
| 10:11:11 | 20 | language.  Well, first of all, that -- I think that's a |
| 10:11:19 | 21 | new argument.  I don't believe I've heard that before. |
| 10:11:21 | 22 | But regardless of whether it's new or old, this is not |
| 10:11:24 | 23 | something that they said in the file history to the patent |
| 10:11:27 | 24 | office.  They said, well, this is where we got this from |
| 10:11:30 | 25 | and even if they did, what is on this slide shows that the |

| | | |
|---|---|---|
| 10:11:34 | 1 | word "option" is not being used in the same sense that |
| 10:11:37 | 2 | it's being used here. |
| 10:11:39 | 3 | I'll read the sentence.  It says using the basic |
| 10:11:43 | 4 | principle of having soft key selected by the initial |
| 10:11:47 | 5 | contact point on any location on the key, then selecting |
| 10:11:50 | 6 | one of several options based on the trace.  And that's |
| 10:11:53 | 7 | where the highlighting ends.  That's where counsel ended |
| 10:11:55 | 8 | the sentence.  But it goes on to say -- and so, this is |
| 10:11:58 | 9 | what the option's referring to.  One can modify the shape |
| 10:12:02 | 10 | of the key, the labelling logic, the numbers of functions, |
| 10:12:06 | 11 | the definition of the decision zones, and the decision |
| 10:12:09 | 12 | logic in several different ways.  And if you look at the |
| 10:12:13 | 13 | language above what was quoted by counsel, this is talking |
| 10:12:16 | 14 | about how a software engineer would implement the key |
| 10:12:21 | 15 | itself.  It's not talking about the claim language that |
| 10:12:23 | 16 | we're talking about here. |
| 10:12:24 | 17 | So this was not used somehow -- first of all, |
| 10:12:30 | 18 | it's not in the prosecution history as saying we're using |
| 10:12:32 | 19 | option in the same way that it's being used here, but it's |
| 10:12:37 | 20 | certainly not being used in the way that it's being argued |
| 10:12:39 | 21 | by Neonode now. |
| 10:12:40 | 22 | And then, the last thing I'd like to say to your |
| 10:12:42 | 23 | Honor -- forgive me for going on so long -- is I've got up |
| 10:12:45 | 24 | our slide 8 and so, this really goes to the, you know, the |
| 10:12:52 | 25 | nub of the gist.  I'm not even sure what that means, but |

| | |
|---|---|
| 10:12:55 | 1 |
| 10:12:57 | 2 |
| 10:12:59 | 3 |
| 10:13:02 | 4 |
| 10:13:05 | 5 |

it goes the heart of the matter.  And we have here the
language the representation consists of only one option
for activating the function.  So the question is, what
does only one option for activating mean?  And your Honor
puts the finger right on it is this language itself
doesn't make any sense.  It doesn't.  And there's no way
that you can read this language in a way that makes sense
and that's what Samsung has said and that's what Dr.
Cockburn has said.

But, you know, we want to try to see if we can do
something with that language.  And the thing is, you do
three things with it and the first one is the
representation consists of a single function and that's
saying that this option language is limiting the function
and there's only one way to activate it.  And although
counsel said, well, that's just nonsense, that's exactly
what Neonode told the PTAB in 2022.  I showed you on that
slide.

So that's option one.  The second option is,
well, counsel said that can't be right because 1a permits
multiple functions.  Okay.  Well, if that's the case, you
can have multiple functions, but there's only single way
to activate any given function and that gives meaning to
language only one option for activating.  But counsel
says, well, that's wrong, too, and it is inconsistent with

```
10:14:15   1    -- it's consistent with part of what they said during the
10:14:17   2    prosecution history, but it's inconsistent with others.
10:14:20   3           And then, we get to No. 3, which is, you're
10:14:23   4    limited to a single function but multiple options.  And
10:14:26   5    then, I heard counsel say something that was surprising to
10:14:28   6    me there.  He said, well, that can't be right because the
10:14:33   7    claims don't cover the use of multiple gestures.  But just
10:14:39   8    a few minutes before that, he had told you with respect to
10:14:41   9    option one that the claim doesn't cover just using one
10:14:45   10   gesture.
10:14:46   11          So it's not clear to me how those inconsistent
10:14:48   12   statements can be reconciled.  But in any event, the
10:14:51   13   bottom-line point is that language doesn't make any sense
10:14:54   14   on its face.  There are multiple ways you could read it.
10:14:58   15   We've got three of them there.  And then, Neonode comes up
10:15:01   16   with door No. 4 in their brief, which is that you have a
10:15:06   17   multifunction key that at any given time, which is another
10:15:09   18   concept that's nowhere to be found in the specification at
10:15:12   19   any given time will be limited to one function with
10:15:16   20   multiple gestures.
10:15:19   21          Today, we actually heard door No. 5, which is
10:15:23   22   that the option is limited to the one application.  That's
10:15:28   23   the one application running.  So for all of those reasons,
10:15:31   24   your Honor, this language can't with any certainty much
10:15:33   25   less reasonable certainty be determined, then the claim is
```

| | |
|---|---|
| 10:15:37 | 1 |
| 10:15:40 | 2 |
| 10:15:44 | 3 |
| 10:15:44 | 4 |
| 10:15:46 | 5 |
| 10:15:47 | 6 |
| 10:15:49 | 7 |
| 10:16:40 | 8 |

invalid.  So we request that the Court maintain its

preliminary construction.  Does your Honor have any

questions?

           THE COURT:  I don't.

           MR. FOWLER:  Thank you.

           THE COURT:  Mr. Melton.

           MR. MELTON:  Yes, your Honor.  All right, your

Honor, here we go.

           He jacked up a few things I said.  I never said

only one application can be running at a time.  That's --

directly would be contradicting the spec, which I'm

showing you now.  The computer unit is adapted to run

several applications simultaneously and to present an

active application on top of any other application on the

display area.  So I never said that.

           The other thing, it doesn't limit functions.  Let

me see.  That's what he said that I said it doesn't limit

the functions.  Figure 1, your Honor, the spec, it

discloses and shows you can have three representations at

a minimum because they're there, 21, 22 and 23,

representation of functions.  I think what he's doing is

confusing functionality of applications with the word

"functions" as used in the specification and the claims.

He kept using them interchangeably.  That's going to lead

to confusion.  Functionality of an application is not how

10:18:25  1  function is described in the patent.

10:18:27  2       Twenty-one, 22, 23 describe the function as those

10:18:35  3  -- what's behind those icons.  The right one is a file

10:18:41  4  manager, the middle one is a keyboard application, and 21

10:18:45  5  is a application-dependent.  So I showed you the other

10:18:50  6  part of the specification where several applications can

10:18:56  7  run and the one that is currently active will be the one

10:19:02  8  that is associated with the functionality.  The

10:19:06  9  functionality behind the function of representation 21.

10:19:13  10      And then, he made a big deal about, oh, if

10:19:16  11 there's no activate application, then, oh, it does

10:19:19  12 something.  Yeah, the operating system is the default

10:19:22  13 application.  So I don't think that's some novel argument

10:19:29  14 to defeat what I said.  It has a default application if

10:19:33  15 nothing else is running.

10:19:38  16      Let's see.  Your Honor, I want to go back to

10:19:52  17 this.  I knew he'd bring it up.  Mr. Hendifar submitted

10:19:58  18 slides, documents, and he's going to rely on one errant

10:20:02  19 statement possibly that I don't even think that's errant,

10:20:07  20 but let's look at it in context.  It's at the very end of

10:20:10  21 his 45-minute presentation where he had submitted slide

10:20:13  22 after slide putting forth his position.  And he says a

10:20:17  23 representation can at different times have multiple

10:20:20  24 functions.  Yes.  The point is at any given time, user's

10:20:23  25 given only one option in terms of what gesture to put and

| | |
|---|---|
| 10:20:26 | 1 |
| 10:20:30 | 2 |
| 10:20:34 | 3 |
| 10:20:39 | 4 |
| 10:20:43 | 5 |
| 10:20:49 | 6 |
| 10:20:53 | 7 |
| 10:20:58 | 8 |

1  what to -- and look what he does.  He catches himself.  He
2  says so the user, let me step back.  And then, he explains
3  the prior art and then, he follows it up with exactly what
4  is contained in his slides.  He didn't confuse the judges
5  as to his position by whatever that gesture comment was.
6  I mean, they were -- they had all these documents in front
7  of them.  So they keep using this to disparage what
8  Hendifar said.

9          He follows it up and they cut it off after it's a
10 simple one-option activation.  Right there.  They cut it
11 off.  But he goes on to explain exactly what I showed you
12 in his slides.  You swipe, the device activate what it
13 activates, it can be one function or a different function,
14 but the user is given only one option in terms of what to
15 activate and what option to take.

16         So that statement, those slides, that is our
17 position.  That was our position then, it hasn't changed.
18 And we believe if you take slide 10 that I made last
19 night, figure 3, and how we got to the word "option" in
20 the claim using the Hirshberg reference, the rejection and
21 how it made it into the claim, we think the Court can --
22 would find that this is definite and they haven't met
23 their burden of proving it's indefinite.  So...

24         THE COURT:  Okay.  Let me see if I need anything
25 else.  I'll be back in just a few seconds.

| | | |
|---|---|---|
| 10:25:06 | 1 | Okay.  The Court is going to maintain its |
| 10:25:09 | 2 | preliminary construction of indefiniteness, which I don't |
| 10:25:14 | 3 | know the case well enough to know whether that means we do |
| 10:25:18 | 4 | or don't have to take up the second claim term. |
| 10:25:22 | 5 | MR. FOWLER:  Your Honor, that would be |
| 10:25:23 | 6 | dispositive of the case on this patent.  Samsung would be |
| 10:25:27 | 7 | prepared to rest on the other claim limitation in terms of |
| 10:25:31 | 8 | the presentation that we made.  We don't -- I'm sorry, we |
| 10:25:36 | 9 | don't -- respectfully, we don't agree with the Court's |
| 10:25:38 | 10 | preliminary construction on that, but this would be case |
| 10:25:41 | 11 | dispositive. |
| 10:25:42 | 12 | THE COURT:  Let me go ahead then up for the |
| 10:25:44 | 13 | record and say I'm going to enter on the other claim term |
| 10:25:47 | 14 | my preliminary construction, make it the final claim |
| 10:25:50 | 15 | construction just so that's not hanging out there. |
| 10:25:53 | 16 | So is there anything else we need to take up |
| 10:25:56 | 17 | today? |
| 10:25:59 | 18 | MR. FOWLER:  No, your Honor. |
| 10:26:00 | 19 | MR. GUARAGNA:  No, your Honor. |
| 10:26:04 | 20 | MR. MELTON:  Your Honor. |
| 10:26:05 | 21 | THE COURT:  I'm sorry you stayed up late -- |
| 10:26:07 | 22 | MR. MELTON:  My co-counsel and I are not sitting |
| 10:26:09 | 23 | next to each other so I can't slip him a note. |
| 10:26:12 | 24 | THE COURT:  I feel bad about making you stay up |
| 10:26:15 | 25 | late and doing a slide and not prevailing. |

10:26:18    1            MR. MELTON:  Yeah.

10:26:19    2            THE COURT:  Okay.  So you guys have a good

10:26:21    3   weekend.  Take care.

10:26:24    4            MR. MELTON:  Thank you, your Honor.

10:26:25    5            MR. GUARAGNA:  Thank you, your Honor.

10:26:25    6            MR. FOWLER:  Thank you, your Honor.

         7            (Proceedings concluded.)

         8

         9

        10

        11

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

1                          *  *  *  *  *  *

2

3  UNITED STATES DISTRICT COURT  )

4  WESTERN DISTRICT OF TEXAS       )

5

6     I, LILY I. REZNIK, Certified Realtime Reporter,

7  Registered Merit Reporter, in my capacity as Official

8  Court Reporter of the United States District Court,

9  Western District of Texas, do certify that the foregoing

10  is a correct transcript from the record of proceedings in

11  the above-entitled matter.

12     I certify that the transcript fees and format comply

13  with those prescribed by the Court and Judicial Conference

14  of the United States.

15     WITNESS MY OFFICIAL HAND this the 10th day of July,

16  2023.

17                               *Lily Iva Reznik*

18                               ~~~~~~~~~~~~~~~~~~~~~~~~
                                 LILY I. REZNIK, CRR, RMR
19                               Official Court Reporter
                                 United States District Court
20                               Austin Division
                                 501 West 5th Street,
21                               Suite 4153
                                 Austin, Texas 78701
22                               (512)391-8792
                                 SOT Certification No. 4481
23                               Expires: 1-31-25

24

25